**BRYAN WESTERFELD (S.B. # 218253)**
bwesterfeld@walravenlaw.com
**LARRY A. WALRAVEN (S.B #143327)**
lwalraven@walravenlaw.com
**NICOLE E. WURSHER (S.B # 245879)**
nwurscher@walravenlaw.com
**WALRAVEN & WESTERFELD LLP**
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone:   (949) 215-1997
Facsimile:   (949) 215-1999

Attorneys for Defendants UnitedHealth Group, Inc.;
United Healthcare Services, Inc., UnitedHealthcare
Insurance Company; OptumInsight, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company; BAKERSFIELD SURGERY INSTITUTE, LLC, a California limited liability company; INDEPENDENT MEDICAL SERVICES, INC., a California corporation; MODERN INSTITUTE OF PLASTIC SURGERY & ANTIAGING, INC., a California corporation; NEW LIFE SURGERY CENTER, LLC, a California limited liability company, dba BEVERLY HILLS SURGERY CENTER, LLC; ORANGE GROVE SURGERY CENTER, LLC, a California limited liability company; SAN DIEGO AMBULATORY SURGERY CENTER, LLC, a California limited liability company; SKIN CANCER & RECONSTRUCTIVE SURGERY SPECIALISTS OF BEVERLY HILLS, INC., a California corporation; VALENCIA AMBULATORY SURGERY CENTER, LLC, a California limited liability company; WEST HILLS SURGERY CENTER, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC., and DOES 1 through 20, <br><br> Defendants. | Case No. <br><br> **NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** <br><br> **(28 U.S.C. §§ 1331 AND 1441(a))** <br><br> (Superior Court of the State of California, County of Los Angeles, Central District) Number:  BC540056) <br><br> Complaint filed:  March 21, 2014 |

-1-

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

Pursuant to 28 U.S.C. § 1446(a), Defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., United Healthcare Insurance Company, and OptumInsight, Inc. (collectively "United") hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1441(a) and state the following grounds for removal:

1.      On March 21, 2014, Plaintiffs served United with a Summons and Complaint ("Complaint"), a true and correct copy of which is attached hereto as Exhibit A.  The action was filed on March 21, 2014 in the Superior Court of the State of California, County of Los Angeles, Central District, styled and captioned exactly as above, and assigned Case No. BC540056. The Complaint named four, affiliated United entities as the only defendants (along with 20 "Doe" defendants). On April 21, 2014, United filed its answer to Plaintiff's Complaint, a true and correct copy of which is attached hereto as Exhibit B.  On April 17, 2014, Plaintiffs served a copy of a Notice of Case Management Conference, a true and correct copy of which is Exhibit C hereto.  No other pleadings or papers have been filed in this action.  United is informed and believes that none of the (unidentified) Doe defendants have been served in this matter.

2.      This Notice of Removal is timely filed as required by 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a) because it is filed within 30 days after service of the Summons and Complaint was first made on any of the United defendants. Where, as here, the thirtieth day falls on Sunday April 20, 2014, the thirty-day period is extended until Monday April 21, 2014.  *See, e.g., Wells v. Gateways Hosp. and Mental Health Center,* 1996 WL 36184, *1 (9th Cir. Jan. 30, 1996) (using Rule 6(a) to extend removal filing deadline from thirtieth day, which landed on a Sunday, to the following Monday); *Community Housing Partnership v. Byrd,* 2013

WL 6087350, *2 (N.D.Cal.) (thirty-day period for removal fell on Saturday June 29, 2013, so period was extended until Monday July 1, 2013 by Rule 6(a));

*Hernandez v. Menlo Logistics, Inc.,* 2013 WL 5934411, ** 1, 18 (D.N.M.) (collecting cases, and holding that although thirty-day deadline for removal fell on Sunday August 26, 2012, that deadline was extended until Monday August 27, 2012 by Rule 6(a)).

3. All of the United Defendants, the only properly joined and served Defendants, join in the removal of this action.

4. Pursuant to 28 U.S.C. § 1331, Federal District Courts have original jurisdiction over all civil actions arising under the laws of the United States. Pursuant to 28 U.S.C. §§ 84(c), 1331 and 1441(a), this state court action may be removed to this Federal District Court because it is the district and division embracing the place, the County of Los Angeles, California, where such action is pending.

**FEDERAL QUESTION JURISDICTION**

5. The action described in Paragraph 1 above is a civil action of which this Court has original jurisdiction under the laws of the United States, specifically the Employee Retirement Income Security Act ("ERISA"), Title 29, United States Code, §§ 1001 et seq., and therefore removable under 28 U.S.C. § 1441.

6. Ordinarily, whether an action arises under federal law depends on the "well-pleaded complaint" rule, such that if a Complaint purports to assert only state-law claims, it will ordinarily not be removable as arising under federal law. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). An exception to the well-pleaded complaint rule exists where, as here, a federal statute, such as ERISA, wholly displaces one or more state law causes of action through "complete preemption." Accordingly, although Plaintiffs' Complaint purports to assert only five state-law causes of action, since at least some of those causes of actions are

entirely encompassed by § 502(a) of ERISA, 29 U.S.C. § 1132(a) , the Complaint is converted from a state law complaint into a federal claim for purposes of the well-pleaded complaint rule.  *Davila,* 542 U.S. at 207-08.

7.     Complete preemption under § 502(a) is determined under a two-prong test: (1) whether the plaintiff could have brought the claim under § 502(a), and (2) whether the claim is based on duties or obligations independent of any duty under ERISA or an ERISA plan.  *Davila,* 542 U.S. at 210-13.  Both prongs of this test are satisfied here.

8.     The Plaintiff-providers, who allege elsewhere that they have received assignment of their patients' rights to sue for benefits under the terms of their health plans, not only could have brought suit under § 502(a), provided that some of their patients are covered under ERISA-governed health plans, they have already done so.  *See, e.g., Misic v. Bldg. Serv. Employees Health & Welfare Trust,* 789 F.2d 1374, 1378 (9th Cir.1986) (health care providers can sue derivatively under ERISA and § 502(a), asserting assigned claims for benefits under the terms of ERISA plans).  The ten provider-Plaintiffs in this case have alleged in a related Complaint that they filed in this Court on March 20, 2014 against the same United defendants, and also against self-funded ERISA plans and their employer plan sponsors, that they:

> [Each] have standing to pursue these claims as assignees of their patient's benefits.  Prior to receiving treatment, every patient of the Plaintiffs signs an "Assignments of Rights and Benefits" form agreeing to, inter alia, assign his or her health insurance benefits, as well as broad array of related rights, to their providers, who are the Plaintiffs in this case.

Complaint, ¶ 900, in *Almont Ambulatory Surgery Center LLC ("Almont") et al. v. UnitedHealth Group, Inc. et al.,* CV 14-2139 R UBKX.  *See also id.,* ¶ 902 (quoting the language of the assignments given by every patient of the Plaintiffs).

NOTICE OF REMOVAL

This related, federal-court Complaint is over 1,000 pages long, so it is not submitted here as an Exhibit, but it may be accessed as Document 1 in Case 2:14-cv-02139-R-VBK, filed on March 20, 2014.

9.     Based on the assignments received from their patients, the Plaintiff-providers in this case have brought suit against United in the related federal case for benefits due under ERISA plans, and to clarify their rights to benefits under ERISA plans. *See id.,* ¶¶ 1005-16. The Plaintiff-providers did so by alleging that they submitted claims for payment to United as a claims administrator of employee welfare benefits plans governed under ERISA (*id.,* ¶ 21), and then identifying in the body of the Complaint six examples of claims for benefits that had allegedly been wrongly denied by United under six identified ERISA-governed employee welfare benefit plans established by Time Warner Cable Inc., Target Corporation, Apple, Inc., Danaher Corporation, AT&T Corp., and Aegis Media Americas, Inc.. *Id.,* ¶ 982. The federal-court Complaint also contains an Appendix A that purports to identify claims for benefits relating to 411 patients under specifically-identified ERISA plans.

10.     It is also clear from the face of the state-court Complaint that claims asserted therein relate to patients who are covered by the ERISA-governed employee benefit plans identified in the related federal Complaint. In the state-court Complaint, Plaintiffs assert claims, and seek relief, regarding "all" of the claims they have submitted to United, which have been denied. This "all" necessarily includes these same Plaintiffs' claims in the federal-court Complaint that have been denied by United under identified ERISA-governed employee benefits plans. Specifically, in the fifth cause of action (p. 42), and then again in the "Wherefore" clause (p. 43), Plaintiffs seek a declaration that:

> Defendants are required timely re-process all claims that have been submitted by the Plaintiffs since United first began its campaign to deny payments to the Plaintiffs, and to pay those

claims pursuant to the terms of the Plans; * * * [and]
Defendants must conduct a "full and fair review" for all claims
being re-processed, free of dishonest and surreptitious delay
and denial tactics.

The quoted "full and fair review" refers to ERISA, 29 U.S.C. § 1133(2), which requires that every ERISA plan provide adequate notice of claim denials and "a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  This provision, its implementing regulation, 29 C.F.R. § 2560.503–1(h)(1), and the Plaintiffs' desire that United be forced to conduct a "full and fair review" are referred to repeatedly in the related federal Complaint.

11.    Separate from the patients identified in the related federal Complaint and its Appendix A, United has identified seven patients that received lap band or endoscopy services from nine of the 10 Plaintiff-providers in this case (all but Valencia Ambulatory Surgery Center, LLC).  These patients are beneficiaries or participants under ERISA health plans established by their employers or their spouses' employers, and their claims for benefits under these ERISA plans for these services provided by the provider-Plaintiffs have been denied.  *See* Declarations of Vennise D. McCoy, and Jane Stalinksi (including Exhibits 1-5 thereto).  Five of these patients are covered by the Walgreen Health Plan (Major Medical Expense Plan), which is an ERISA-governed employee benefit plan established by Walgreen Co., one of these patients is covered by the AT&T Medical Plan, which is an ERISA-governed employee benefit plan established by AT&T Inc., and the seventh example patient is covered by the SBC Medical and Group Life Insurance Plan – CustomCare (the "SBC Plan"), which, after SBC's acquisition of AT&T Corp. and re-naming itself AT&T Inc., became part of the AT&T Medical Plan Network.  The SBC Plan is an ERISA-governed employee benefit plan established by SBC and now maintained by AT&T.  *See id.* As the SPDs reflect (Stalinksi Decl. Exs. 1-5)

NOTICE OF REMOVAL

Walgreen, SBC and AT&T are also employers engaged in commerce. *See* 29 U.S.C. § 1003(a) (1988).

12.     The seventh United example patient is also a patient that has assigned insurance and ERISA plan benefits to Plaintiffs Orange Grove Surgery Center and Independent Medical Services, Inc. with respect to certain lap band, endoscopy or related services, for which payment has been denied by United. *See* McCoy Declaration ¶ 10 & Ex. I, which has been redacted to delete the name of patient 7.

13.     In short, Plaintiffs, who now seek relief in their state-court Complaint regarding all of their claims that have been denied by United, could have brought suit as assignees under ERISA for the portion of their patients whose claims for benefits are covered under ERISA plans, *i.e.* United example patients one-seven, and the patients identified in the Federal Court Complaint and Appendix A thereto. Indeed, the Plaintiffs have done so in the federal-court Complaint.  Thus, the first prong for removal is satisfied.

14.     Regarding the second removal prong, the third and fifth causes of action set forth in the state-court Complaint are plainly removable because, on their face, (a) interpretation of the terms of ERISA plans forms an essential part of both claims, and (b) the fifth cause of action seeks to enforce obligations imposed by ERISA.

15.     The fifth cause of action, on its face (¶¶ 154-55), seeks a declaration requiring United both to conduct a "full and fair review" of all claims of the Plaintiff-providers that have been denied and then "to pay those claims pursuant to the terms of the Plans."  This exact relief is authorized by ERISA.  A claim for benefits under an ERISA-governed plan may only be brought under ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B). *Davila,* 542 U.S. at 207-08. It is well established that ERISA completely preempts state law breach of contract or declaratory relief claims seeking recovery of benefits. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 41-42 (1987).  The "full and fair review" requirement is

an ERISA requirement, and many of the plans of the Plaintiffs' patients, as reflected in the Federal Complaint, and in the McCoy and Stalinksi Declarations, are ERISA plans.  Thus, the fifth cause of action is not based on duties independent of those imposed by ERISA or the terms of ERISA plans, as necessary to escape complete preemption.

16.     The third cause of action for equitable estoppel, on its face, is likewise not based on duties independent of the terms of ERISA plans.  Indeed, that claim is expressly based on the terms of the plans, and would require the Court to interpret the plans and/or declare them to be ambiguous.  Plaintiffs allege in paragraph 139 that "[t]he language of the plans pertaining to benefits for out-of-network surgery either clearly provided that those benefits would be paid at a UCR rate, or if they did not, the terms of the plan were ambiguous."  Accordingly, Plaintiffs' third and fifth causes of action are completely preempted, such that this action may be removed to this Court.  *See Melamed, M.D. v. Blue Cross of California*, 2014 WL 543409, *2 (9th Cir. 2014) (complete preemption of an individual claim is sufficient for removal to be proper).

17.     Plaintiffs' remaining causes of action, in whole or in part, are also subject to removal as arising under federal law (including the Americans with Disabilities Act) or being completely preempted by ERISA because, among other things, they require plan interpretation and/or implicate ERISA plan administration, *e.g.* the grant of pre-authorization under the terms of the plan, complete with letters confirming that pre-authorization is not a guarantee of payment under the terms of the plan.  *See, e.g.,* Complaint ¶¶ 30, 60 and 97, incorporated into all of Plaintiffs' causes of action.

///

///

///

///

NOTICE OF REMOVAL

1    WHEREFORE, Defendants UnitedHealth Group, Inc., United Healthcare

2  Services, Inc., United Healthcare Insurance Company, and OptumInsight, Inc.

3  request that this action be brought to this Court, and that this Court exercise its

4  jurisdiction over Plaintiffs' Complaint.

5

6    Dated:  April 21, 2014                    WALRAVEN & WESTERFELD LLP

7

8                                        By:    _____
                                                    BRYAN WESTERFELD
9
                                               Attorneys for Defendants UnitedHealth
10                                             Group, Inc., United Healthcare Services,
                                               Inc., UnitedHealthcare Insurance
11                                             Company, and OptumInsight, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC.,
UNITEDHEALTHCARE INSURANCE COMPANY, OPTUMINSIGHT, INC., and
DOES 1 through 20,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALMONT AMBULATORY SURGERY CENTER, LLC, (SEE ATTACHMENT
FOR ADDITIONAL PLAINTIFFS)



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County Of Los Angeles

MAR 21 2014

Sherri R. Carter, Executive Officer/Clerk
By: Amber Hayes, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California -Los Angeles<br>111 N. Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER<br>*(Número del Caso):*<br>**BC540056** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daron L. Tooch (SBN 137269)
Hooper, Lundy & Bookman, P.C.
1875 Century Park East, Suite 1600, Los Angeles, CA 90067
Phone (310) 551-8111 - Fax (310) 551-8181

| DATE:<br>*(Fecha)* | SHERRI R. CARTER | Clerk, by<br>*(Secretario)* | Amber Hayes | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

MAR 21 2014

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: United Health Group, Inc.

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

COPY

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County Of Los Angeles

MAR 2 1 2014

Sherri R. Carter, Executive Officer/Clerk
By: Amber Hayes, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC.,
UNITEDHEALTHCARE INSURANCE COMPANY, OPTUMINSIGHT, INC., and
DOES 1 through 20,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALMONT AMBULATORY SURGERY CENTER, LLC, (SEE ATTACHMENT
FOR ADDITIONAL PLAINTIFFS)

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California -Los Angeles<br>111 N. Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso)*<br>**BC540056** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daron L. Tooch (SBN 137269)
Hooper, Lundy & Bookman, P.C.
1875 Century Park East, Suite 1600, Los Angeles, CA 90067
Phone (310) 551-8111 - Fax (310) 551-8181

| DATE:<br>*(Fecha)* | SHERRI R. CARTER Clerk, by<br>*(Secretario)* | Amber Hayes , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

MAR 2 1 2014

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

COPY

SUM-200(A)

| SHORT TITLE: ALMONT AMBULATORY v. UNITED HEALTHCARE, et al. | CASE NUMBER |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☒ Plaintiff     ☐ Defendant     ☐ Cross-Complainant     ☐ Cross-Defendant

BAKERSFIELD SURGERY INSTITUTE, LLC, a California limited liability company;
INDEPENDENT MEDICAL SERVICES, INC., a California corporation;
MODERN INSTITUTE OF PLASTIC SURGERY & ANTIAGING, INC., a California corporation;
NEW LIFE SURGERY CENTER, LLC, a California limited liability company, dba BEVERLY HILLS SURGERY CENTER;
ORANGE GROVE SURGERY CENTER, LLC, a California limited liability company;
SAN DIEGO AMBULATORY SURGERY CENTER, LLC, a California limited liability company;
SKIN CANCER & RECONSTRUCTIVE SURGERY SPECIALISTS OF BEVERLY HILLS, INC., a California corporation
VALENCIA AMBULATORY SURGERY CENTER, LLC, a California limited liability company;
WEST HILLS SURGERY CENTER, LLC, a California limited liability company

Page <u>2</u> of <u>2</u>

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)
Case Number _____

B C 5 4 0 0 5 6

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT
Your case is assigned for all purposes to the judicial officer indicated below. There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Barbara A. Meiers | 12 | 636 | | Hon. Michael Johnson | 56 | 514 | |
| Hon. Terry A. Green | 14 | 300 | | Hon Rolf M. Treu | 58 | 516 | |
| Hon. Richard Fruin | 15 | 307 | | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Rita Miller | 16 | 306 | | Hon. Mark Mooney | 68 | 617 | |
| Hon. Richard E. Rico | 17 | 309 | | Hon. William F. Fahey | 69 | 621 | |
| Hon. Kevin C. Brazile | 20 | 310 | | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Robert L. Hess | 24 | 314 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. Rafael Ongkeko | 73 | 733 | |
| Hon. Barbara Scheper | 30 | 400 | | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Mary H. Strobel | 32 | 406 | | | | | |
| Hon. Michael P. Linfield | 34 | 408 | | | | | |
| Hon. Gregory Alarcon | 36 | 410 | | **Hon. Emilie H. Elias** | **324** | **CCW** | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | **Hon. Elihu M. Berle\*** | **323** | **CCW** | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | | | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | | | |
| Hon. Mel Red Recana | 45 | 529 | | | | | |
| Hon. Frederick C. Shaller | 46 | 500 | | | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | | | |
| Hon. Deirdre Hill | 49 | 509 | | | | | |
| Hon. John L. Segal | 50 | 508 | | | | | |
| Hon. Mitchell L. Beckloff | 51 | 511 | | | | | |
| Hon. Susan Bryant-Deason | 52 | 510 | | | | | |
| Hon. Steven J. Kleifield | 53 | 513 | | OTHER | | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | | | |

**\*Complex**
All cases designated as complex (other than class actions) are initially assigned to Judge Elihu M. Berle in Department 323 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____  SHERRI R. CARTER, Executive Officer/Clerk
                                                                    By _____, Deputy Clerk

LACIV CCH 190 (Rev09/13)          **NOTICE OF CASE ASSIGNMENT –**          Page 1 of 2
LASC Approved 05-06
For Optional Use                          **UNLIMITED CIVIL CASE**

Page 13  -  Exhibit A

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev09/13)
LASC Approved 05-06
For Optional Use

**NOTICE OF CASE ASSIGNMENT –**

**UNLIMITED CIVIL CASE**

Page 2 of 2

Page 14  -  Exhibit A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DARON L. TOOCH (SBN 137269)<br>HOOPER, LUNDY & BOOKMAN<br>1875 Century Park East, Suite 1600<br>Los Angeles, CA 90067<br>TELEPHONE NO.: (310) 515-8111    FAX NO.: (310) 515-8181<br>ATTORNEY FOR *(Name):* Plaintiffs | **CONFORMED COPY**<br>ORIGINAL FILED<br>Superior Court Of California<br>County Of Los Angeles<br><br>MAR 21 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Amber Hayes, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME: Almont Ambulatory Surgery Center, et al. v. UnitedHealth Group, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| ☒ Unlimited ☐ Limited<br>(Amount         (Amount<br>demanded       demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter  ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **BC540056**<br>JUDGE<br>DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 21 , 2014
DARON TOOCH
_____(TYPE OR PRINT NAME)_____    ►    _____(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_____

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|



## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36) Other
   Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
         or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-
      domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
      harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

---

American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE:<br>ALMONT AMBULATORY v. UNITEDHEALTH GROUP, et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
# STATEMENT OF LOCATION
# (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL?  ☒ YES  CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL   20   ☐ HOURS/☒ DAYS

Item II. **Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 | Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 | Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 | Asbestos Property Damage | 2. |
| | | ☐ A7221 | Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 | Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 | Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 | Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250 | Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 | Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 | Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 | Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4


American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE: ALMONT AMBULATORY v. UNITEDHEALTH GROUP, et al. | CASE NUMBER |
|---|---|

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☒ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels _____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4


American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE: ALMONT AMBULATORY v. UNITEDHEALTH GROUP, et al. I. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151   Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150   Other Writ/Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141   Sister State Judgment | 2., 9. |
| | | ☐ A6160   Abstract of Judgment | 2., 6. |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030   Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121   Civil Harassment | 2., 3., 9. |
| | | ☐ A6123   Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190   Election Contest | 2. |
| | | ☐ A6110   Petition for Change of Name | 2., 7. |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100   Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4



American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE:<br>ALMONT AMBULATORY v. UNITEDHEALTH GROUP, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☐2. ☒3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>269 S. Beverly Drive<br>Suite 1409 | |
|---|---|---|
| CITY:<br>Beverly Hills | STATE:<br>CA | ZIP CODE:<br>90212 |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _____Los Angeles County_____ courthouse in the Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: March 21, 2014_____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
Daron Tooch

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM**<br>**AND STATEMENT OF LOCATION** | Local Rule 2.0<br>Page 4 of 4<br>American LegalNet, Inc.<br>www.FormsWorkFlow.com

Page 20  -   Exhibit A

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAR 21 2014

Sherri R. Carter, Executive Officer/Clerk
By: Amber Hayes, Deputy

1 | DARON L. TOOCH (State Bar No. 137269)
ERIC D. CHAN (State Bar No. 253082)
2 | **HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
3 | Los Angeles, California 90067-2517
Telephone: (310) 551-8111
4 | Facsimile: (310) 551-8181
E-Mail: dtooch@health-law.com
5 |
Attorneys for Plaintiffs
6 |

# BY FAX

7 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8 | **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

9 | ALMONT AMBULATORY SURGERY
CENTER, LLC, a California limited liability
10 | company; BAKERSFIELD SURGERY
INSTITUTE, LLC, a California limited
11 | liability company; INDEPENDENT
MEDICAL SERVICES, INC., a California
12 | corporation; MODERN INSTITUTE OF
PLASTIC SURGERY & ANTIAGING, INC.,
13 | a California corporation; NEW LIFE
SURGERY CENTER, LLC, a California
14 | limited liability company, dba BEVERLY
HILLS SURGERY CENTER; ORANGE
15 | GROVE SURGERY CENTER, LLC, a
California limited liability company; SAN
16 | DIEGO AMBULATORY SURGERY
CENTER, LLC, a California limited liability
17 | company; SKIN CANCER &
RECONSTRUCTIVE SURGERY
18 | SPECIALISTS OF BEVERLY HILLS, INC.,
a California corporation
19 | VALENCIA AMBULATORY SURGERY
CENTER, LLC, a California limited liability
20 | company; WEST HILLS SURGERY
CENTER, LLC, a California limited liability
21 | company,

22 | Plaintiffs,

23 | vs.

24 | UNITEDHEALTH GROUP, INC.; UNITED
HEALTHCARE SERVICES, INC.,
25 | UNITEDHEALTHCARE INSURANCE
COMPANY; OPTUMINSIGHT, INC., and
26 | DOES 1 through 20,

27 | Defendants.

28 |

CASE NO.      **BC540056**

**COMPLAINT FOR:**

1. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, et seq.**
2. **BREACH OF IMPLIED-IN-FACT CONTRACTS**
3. **SERVICES RENDERED**
4. **ESTOPPEL**
5. **DECLARATORY RELIEF**

Trial Date:      None Set

**JURY TRIAL DEMANDED**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

1157465.1

COMPLAINT

1    Plaintiffs Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC,

2    Independent Medical Services, Inc., Modern Institute Of Plastic Surgery & Antiaging, Inc., New

3    Life Surgery Center, LLC dba Beverly Hills Surgery Center, Orange Grove Surgery Center, LLC,

4    San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists

5    Of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, and West Hills Surgery Center,

6    LLC (collectively, the "Plaintiff Providers") bring this action, alleging as follows:

7                              **II.    INTRODUCTION**

8        1.    This lawsuit alleges a deliberate, willful and concerted effort by United Healthcare

9    to indefinitely avoid paying for Lap-Band services for its morbidly obese members.

10       2.    The patients whose claims are at issue in this lawsuit are all morbidly obese

11   individuals who are suffering from serious medical problems associated with their obesity.

12       3.    All of these patients choose Preferred Provider Organization ("PPO") insurance,

13   rather than HMO insurance, through their employers so that they could receive their medical

14   services from the physicians and other medical providers of their choice, regardless of whether

15   those physicians are in-network or out-of-network.  United Healthcare, who administers the PPO

16   insurance for these employers, advertises that the benefits of its PPO policy  include: "The

17   freedom to choose any doctor for your health care needs."

18       4.    All of these patients requested and received authorization from United Healthcare

19   to undergo the extensive pre-operative tests necessary to determine whether they are qualified to

20   receive Lap-Band surgery.  After receiving the authorizations, the patients went through months of

21   pre-operative tests.

22       5.    Despite authorizing the procedures, United Healthcare has refused to pay for the

23   vast majority of the tests.

24       6.    In some cases, United Healthcare authorized the patients to receive the Lap-Band

25   surgery.  However, despite authorizing the surgeries, United Healthcare has refused to pay for the

26   surgeries.

27       7.    United Healthcare has created a number of pretextual excuses for refusing to

28   process or to pay the claims.  The most common excuse is that it needs certain medical records

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1    from the patients' healthcare providers – the plaintiffs in this case. However, the plaintiff

2    healthcare providers have provided all the medical records to United Healthcare on multiple

3    occasions. Nevertheless, United Healthcare continues to falsely claim that it needs additional

4    records.

5          8.      When the healthcare providers call United Healthcare to ask what records are

6    missing, United Healthcare cannot say what records are missing. Instead, the United Healthcare

7    representatives who answer the phones say that United's claims processor, Optuminsight, which is

8    located in the Philippines, says that it is missing records, but cannot tell United Healthcare what

9    records are missing.

10         9.      United Healthcare, on behalf of the employer defendants, therefore delays paying

11   for any of the claims by repeatedly asserting that it needs unspecified medical records, but cannot

12   state what records are missing. In fact, United Healthcare has all the medical records for all the

13   claims at issue in this case.

14         10.     Many patients have been afraid to have the Lap-Band surgeries, even though their

15   insurance covers the surgeries and they are authorized to have them, because they do not want to

16   be saddled with the liability for paying for the surgeries given that United Healthcare has refused

17   to pay for any of the pre-operative tests.

18         11.     Some patients have had the Lap-Band surgeries and need to have their Lap-Bands

19   adjusted because they have lost weight, or require other follow-up medical procedures related to

20   their surgeries. However, these patients are afraid to have these follow-up procedures because

21   they do not want to further increase their liability for payment due to United Healthcare's failure

22   to pay.

23         12.     The refusal of United Healthcare to pay for the Lap-Band procedures for their

24   morbidly obese members and employees constitutes discrimination against morbidly obese

25   individuals and unfair business acts and practices in violation of California Business and

26   Professions Code section 17200, *et seq.*

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

3

1157465.1

1      13.    This case does not involve claims which are governed by the Employee Retirement

2  Income Security Act of 1974 ("ERISA"). Those claims are the subject of a concurrently filed

3  federal court action.

4      14.    Plaintiffs bring these claims in their own right and not based on any assignment of

5  benefits.

6      15.    Millions of dollars are owed by defendants for the services plaintiffs healthcare

7  providers have provided to defendants' members and insureds.

8  **A.    Plaintiffs Provide Much-Needed Health Care to Morbidly Obese Patients.**

9      16.    Plaintiffs Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute,

10  LLC, Independent Medical Services, Inc., Modern Institute Of Plastic Surgery & Antiaging, Inc.,

11  New Life Surgery Center, LLC dba Beverly Hills Surgery Center, Orange Grove Surgery Center,

12  LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery

13  Specialists Of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, and West Hills

14  Surgery Center, LLC are a network of health providers that specialize in providing laparoscopic

15  adjustable gastric band ("Lap-Band") surgery and other surgical procedures and medical services

16  to individuals who are morbidly obese.

17      17.    Lap-Band surgery is a widely used and minimally invasive surgical procedure that

18  involves tying a silicone band around a portion of the stomach pouch. Individuals who receive

19  this procedure experience a feeling of satiety, or fullness, more quickly, and therefore eat less,

20  which in turn promotes weight loss. Compared to other forms of bariatric surgery, such as gastric

21  sleeve surgery or gastric bypass procedures, one expert publicly commented that "Lap-Band really

22  has the fewest complications and is the least invasive."[1]

23      18.    Since 2010, Plaintiffs have helped thousands of morbidly obese individuals to

24  undergo Lap-Band surgery as well as other medical procedures that assist those individuals in

25

[1] ABC News, Christie's Weight-Loss Surgery: Less Invasive but Slower Weight Loss, May 7,
26  2013, http://abcnews.go.com/Health/chris-christies-lap-band-surgery-left-stomach-
intact/story?id=19126013 (comments of Dr. Richard Besser, ABC News' chief health and medical
27  correspondent, regarding the recent announcement by New Jersey governor Chris Christie that he
28  had received Lap-Band surgery).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1  obtaining effective treatment for their disability. Plaintiffs estimate that roughly 90% of their

2  patients are morbidly obese.

3      19.    The Equal Employment Opportunity Commission has formally recognized

4  "severe" or "morbid" obesity as a disability under the Americans with Disabilities Act, 42 U.S.C.

5  §12101 *et seq.* Morbidly obese individuals are therefore protected from discrimination based

6  upon their disability status. This includes discrimination with respect to the provision of health

7  care benefits that those individuals obtain through their employer.

8      20.    Indeed, the morbidly obese, who represent nearly 4% of America's population, are

9  frequently discriminated against in the provision of medical care. This trend was illustrated by a

10  recent blog post in the New York Times, which reported that in a recent study, one out of five

11  doctors' offices in four major cities across the country refused to even book an appointment when

12  researchers attempted to do so on behalf of a hypothetical overweight, disabled patient, and made

13  unfounded assumptions about that patient without even meeting him.[2] The Provider Plaintiffs

14  therefore perform a valuable role in providing much-needed care to an underserved and

15  misunderstood population.

16  **B.    Defendants' Blanket Refusal to Pay for Plaintiffs' Services Continues to Cause**

17  **Serious and Ongoing Harm to Patient Care.**

18      21.    This lawsuit arises from a deliberate, willful and concerted effort by Defendants

19  UnitedHealth Group, Inc., United Healthcare Services, and UnitedHealthcare Insurance Company

20  (collectively, "United") to indefinitely avoid paying for services that Plaintiffs rendered to their

21  largely morbidly obese patient population.

22      22.    Plaintiffs are not members of UnitedHealth Group's in-network health care

23  providers, and they are not signatories to any contracts with UnitedHealth Group. Each of the

24  claims which Plaintiffs submitted was pursuant to an authorization that they obtained from United

25  prior to the procedure being performed. In fact, for nearly every claim, United represented in

26

27  [2] Pauline W. Chen, New York Times Well Blog, May 23, 2013, *Disability and Discrimination at the Doctor's Office*, http://well.blogs.nytimes.com/2013/05/23/disability-and-discrimination-at-

28  the-doctors-office/ (last visited June 3, 2013).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

1   response to inquiries by the various Plaintiff providers that they would reimburse the cost of the

2   procedure at the **provider's** "usual and customary rates" ("UCR").  In reality, however, United

3   had no intention of paying anything at all.

4       **1.    Unitèd Schemed to Withhold All Payment from Plaintiffs, And Then Lied**

5            **About It.**

6       23.    In 2010, Plaintiffs began submitting claims for reimbursement to United.  Initially,

7   United paid such claims.  Beginning in 2010, however, United started to substantially underpay

8   Plaintiffs' claims for reimbursement, and shortly thereafter, began to systematically withhold all

9   payment from Plaintiffs without informing them.  United did so even though for many patients it

10  had expressly given authorization for the procedures at issue to be performed.  In many cases, the

11  providers and surgery centers performed these surgeries in reliance upon United's prior

12  authorizations.  Despite authorizing the procedures, however, United refuses to pay – and in some

13  cases, even refuses to process – virtually any claim that is submitted by the Plaintiffs.

14      24.    United accomplishes this delay in processing claims by using a variety of made-up

15  excuses, all of which are procedurally improper.  Each time the Plaintiffs submit claims for

16  services rendered, United responds with a boilerplate notification that the claim cannot be

17  processed without additional, burdensome documentation, most of which is already in the

18  possession of United, and none of which is needed to process the claims.  In many cases, United

19  asks for numerous categories of medical records which it either already has, or which are not

20  relevant to the claim being processed.  In other cases, pretends not to have received the claim at

21  all, or pretends not to have received medical records that Plaintiffs have submitted, forcing

22  Plaintiffs to re-submit them.  When Plaintiffs follow up to ask what information is required to

23  perfect its claims United refuses to identify which specific records it supposedly needs.  Despite

24  having all the information it needs to process Plaintiffs' valid claim submissions, United almost

25  always denies Plaintiffs' claims for the purported failure to provide all relevant medical records.

26      25.    United also forwards nearly every claim submitted by the Plaintiffs to Defendant

27  OptumInsight, Inc. (also known as Ingenix) for purported further "review," where those claims

28  may languish for months and years without being paid.  Ingenix/OptumInsight makes the same

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1   unintelligible, burdensome and baseless requests for records and documentation as United, even
2   when Plaintiffs have previously provided all of the same medical records and other documents to
3   United in response to the same requests. Ingenix/OptumInsight also refuses to identify what
4   specific records are supposedly necessary to perfect the claims for payment. As a result, Plaintiffs
5   are ping-ponged back and forth between United and Ingenix in what are ultimately futile attempts
6   to understand what further information United supposedly needs to pay the claims.

7       26.    California law requires United to state the specific reason it is asserting for denial
8   of a claim. Insurance Code § 10123.13; Health and Safety Code § 1371. United's denial letters
9   did not advise Plaintiffs of the specific reasons for denial of the claims. United's denial letters
10  also did not advise Plaintiffs of the true reasons for denial of the claims. In other words, United
11  had no intention of paying Plaintiffs' claims, but was simply making up excuses for non-payment
12  of the claims.

13      27.    United's communications with Plaintiffs are not only deceptive, in that they are
14  intended to obfuscate United's true intent, which is to deny any claim submitted by Plaintiffs.
15  After months or years of delay, United ultimately relies on the same intentionally dishonest,
16  inadequate and spurious excuses to deny payment such as the purported failure to provide the
17  "complete" medical records.

18      28.    Through this deliberate and institutionalized abuse of the claims administration
19  process, United has, in effect, successfully managed to avoid paying nearly any of Plaintiffs'
20  claims for the past three years. The amount that United owes Plaintiffs, in the aggregate, on these
21  unpaid claims is in excess of three million dollars.

22      29.    United's scheme of denials and cryptic claim rejections ensure that Plaintiffs never
23  know why their claims are being denied in violation of United's obligations to convey complete
24  and accurate information.

25      30.    On information and belief, the terms of the health benefit plans administered by
26  United do not permit United to deny Plaintiffs' claims, nor do they permit United to obstruct,
27  delay, or draw out the claims process for years at a time.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

31.     Moreover, on information and belief, United was fully aware that roughly 90% of the patients who came to Plaintiffs were morbidly obese, a protected class, and in need of surgical treatment to ameliorate their condition.  United's discriminatory treatment of Plaintiffs' morbidly obese patients was therefore also in violation of applicable state and federal law, including the federal Americans with Disabilities Act and California's Fair Employment and Housing Act.

## 2.     Plaintiffs Will Suffer Irreparable Harm, Including Harm to Their Ability to Care for Existing Patients, Unless United is Ordered to Stop.

32.     Plaintiffs and their morbidly obese patients have been, and continue to be, seriously harmed by United's behavior.  United never directly and unambiguously informed Plaintiffs that it intended to deny payment on each and every claim.  In fact, it continued to verify the availability of benefits whenever Plaintiffs inquired regarding new patients, and continued to authorize medical procedures for those patients to be performed by the Plaintiffs.  In fact, during insurance verification calls, United consistently assured Plaintiffs that they would pay the reasonable and customary fees charged by Plaintiffs for their services.  In reliance upon United's representations that benefits were available and that procedures would be authorized and United's promises to pay their reasonable and customary charges, Plaintiffs reasonably expected their claims would be paid and continued to see United policyholders, to their detriment.

33.     United is the single largest payor for Plaintiffs, such that a very substantial percentage of all Plaintiffs' patients have benefit plans are funded and/or administered by United.  United's surreptitious and dishonest scheme to withhold payment is, quite literally, driving Plaintiffs out of business.

34.     United's actions also threaten the continuity of patient care.  For instance, United frequently authorized initial procedures and the work-up necessary to perform bariatric surgery, and in some cases, even paid for the initial work-up, but then denied payment for surgical procedures that were performed.  This prevents Plaintiffs' morbidly obese patients from receiving the treatment they desperately need to help them lose weight.  Likewise, patients who have received Lap-Band surgery must return to Plaintiffs on a regular basis to receive adjustments to the Lap-Band, yet it is difficult to continue to provide care when United has still failed to pay for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 the initial procedure. For such patients, Plaintiffs cannot simply stop providing care, as that might

2 constitute patient abandonment under California law.

3      35.     United is also depriving its own insureds of the health benefits to which they are

4 entitled. As patients acknowledge when they come to Plaintiffs for treatment, they are financially

5 responsible in the event that United does not pay. Because United authorizes procedures

6 performed by the Plaintiff providers and yet does not paid anything on the resulting claims,

7 Plaintiffs are being placed into an adversarial position with respect to their patients. Of course,

8 this is a costly, unpleasant, and uncertain process, and results in the loss of the peace of mind that

9 insureds are entitled to enjoy.

10      36.     Patient care will continue to be endangered unless this Court enjoins United's

11 behavior, and orders United to cease abusing the claims review process as a way to indefinitely

12 avoid paying Plaintiffs what they are entitled to be paid under the terms of the patients' benefit

13 plans. Injunctive relief is necessary in order to stop United from hiding behind the curtain of

14 arbitrary administrative process, and to force United to process Plaintiffs' claims according to the

15 terms of applicable benefit plans. Otherwise, patient care and peace of mind will continue to be

16 endangered, causing irreparable harm to Plaintiffs' ability to care for its patients.

17 **C.     In Addition to Refusing to Pay, United Imposed Arbitrary and Discriminatory**

18      **Barriers to Patients Obtaining Surgery.**

19      37.     On information and belief, there was an overarching, and undisclosed, policy at

20 United to withhold all payment for submitted by patients who utilized their out-of-network

21 benefits with Plaintiffs, even though Defendants were fully aware that roughly 90% of the patients

22 who came to the Plaintiffs were morbidly obese and in need of surgical treatment to ameliorate

23 their condition.

24      38.     On information and belief, as part of this unwritten policy, Defendants created

25 unreasonable barriers for morbidly obese patients seeking to obtain the weight loss surgery offered

26 by Plaintiffs constituted unlawful discrimination as well as an arbitrary and capricious denial of

27 health benefits. Such benefits could and should have been made available under the health plans

28 administered and/or funded by United.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

9

1157465.1

39. For instance, United began denying approval for certain procedures until the individuals seeking surgery enrolled in, and completed, a six-month weight loss plan and nutrition regimen. United knew that nothing in the terms of many of those individuals' health benefit plans required such draconian steps. It also knew the patients' physicians had already determined that Lap-Band surgery was medically necessary.

40. Studies published in numerous well-regarded scientific journals have found that such weight loss programs were ineffective for the morbidly obese and did not lead to better clinical outcomes than bariatric surgery alone. Individuals who enroll in such arbitrarily imposed six-month plans typically drop out and do not lose weight; in any case, United's weight loss plans typically do not even require a demonstration that weight loss has occurred. Thus, the net effect of this arbitrary and capricious barrier was to prevent morbidly obese plan beneficiaries from acquiring much-needed surgery.

41. Along the same lines, United raised an unreasonable impediment to approval by seeking written proof from a doctor's office of the patient's weight or body mass index (BMI) for each of the preceding five years to be eligible for surgery. If the morbidly obese patient did not visit a doctor and thus did not have a documented weight in just one of the previous 5 years, the request would be denied. Like the preoperative weight loss plans, this was not a requirement of many of the health benefit plan prior to the approval of bariatric surgery, and was an arbitrary and capricious barrier to prevent morbidly obese beneficiaries from obtaining surgery.

42. United, as the designated claims administrator for the plans, exercised sole discretion over claim pricing and payment of Plaintiffs' claims, and was responsible for authorizing medical treatment for its members. On information and belief, however, the terms of many patients' benefit plans did not make surgery benefits contingent upon barriers such as the completion of a six month weight-loss plan, or a five-year documentation of the patient's weight. United's refusal to approve many of these procedures until these arbitrary requirements had been met constituted arbitrary and capricious conduct that went beyond United's fiduciary duties to interpret and administer the terms of the plans.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

43.     As with United's pretextual denials of payment for medical procedures actually performed, United's imposition of such barriers also constituted wrongful discrimination and failure to reasonably accommodate these patients' disabilities under both the federal Americans with Disabilities Act and California's Fair Employment and Housing Act.  As a result, United has also engaged in unfair competition under California's Unfair Competition Law, and should enjoined from denying benefits to its insured based on such conduct.

### III.     THE PARTIES

**A.     Plaintiff Surgery Centers**

44.     The Plaintiff Surgery Centers are Limited Liability Companies and Corporations organized and existing under the laws of the State of California, with their principal places of business in the State of California.  Plaintiff Surgery Centers operate ambulatory surgery centers that provide a variety of surgical services, including but not limited to the Lap-Band procedure.  At all relevant times, none of the Plaintiff Surgery Centers were under contract with any of the Defendants, and none of them participated in any of Defendants' provider networks.

a)     Plaintiff Almont Ambulatory Surgery Center LLC is, and at all relevant times was, a California limited liability company organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Plaintiff Almont Ambulatory Surgery Center operates an ambulatory surgery center in Beverly Hills, California.  At all relevant times, Almont Ambulatory Surgery Center was not under contract with any of the Defendants, and did not participate in any of their provider networks.

b)     Plaintiff Bakersfield Surgery Institute, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Bakersfield, CA.  Plaintiff Bakersfield Surgery Institute, LLC operates an ambulatory surgery center in Bakersfield, California.  At all relevant times, Bakersfield Surgery Institute, LLC was not under contract with any of the Defendants, and did not participate in any of their provider networks.

c)     Plaintiff Modern Institute of Plastic Surgery & Antiaging, Inc. ("Modern Institute") is, and at all relevant times was, a California corporation organized and existing under

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1  the laws of the State of California, with its principal place of business in Beverly Hills, California.

2  Plaintiff Modern Institute operates an ambulatory surgery center in Beverly Hills, California

3  specializing in plastic surgery and also in bariatric surgery, including the Lap-Band procedure.  At

4  all relevant times, Plaintiff Modern Institute was not under contract with any of the Defendants,

5  and did not participate in any of their provider networks.

6          d)     Plaintiff New Life Surgery Center LLC dba Beverly Hills Surgery is, and at

7  all relevant times was, a limited liability company organized and existing under the laws of the

8  State of California, with its principal place of business in Beverly Hills, California.  Plaintiff New

9  Life Surgery Center LLC operates an ambulatory surgery center in Beverly Hills, California

10  specializing in bariatric surgery, including in the Lap-Band procedure.  At all relevant times, New

11  Life Surgery Center LLC was not under contract with any of the Defendants, and did not

12  participate in any of their provider networks.

13          e)     Plaintiff Orange Grove Surgery Center, LLC is, and at all relevant times

14  was, a limited liability company organized and existing under the laws of the State of California,

15  with its principal place of business in Pomona, CA.  Plaintiff Orange Grove Surgery Center, LLC

16  operates an ambulatory surgery center in Pomona, California.  At all relevant times, Orange Grove

17  Surgery Center, LLC was not under contract with any of the Defendants, and did not participate in

18  any of their provider networks.

19          f)     Plaintiff San Diego Ambulatory Surgery Center, LLC is, and at all relevant

20  times was, a limited liability company organized and existing under the laws of the State of

21  California, with its principal place of business in San Diego, CA.  Plaintiff San Diego Ambulatory

22  Surgery Center, LLC operates an ambulatory surgery center in San Diego, California.  At all

23  relevant times, San Diego Ambulatory Surgery Center, LLC was not under contract with any of

24  the Defendants, and did not participate in any of their provider networks.

25          g)     Plaintiff Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills

26  ("Reconstructive Specialists") is, and at all relevant times was, a California corporation organized

27  and existing under the laws of the State of California, with its principal place of business in

28  Beverly Hills, California.  Plaintiff Skin Cancer & Reconstructive Surgery Specialists of Beverly

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

12

1157465.1

1  Hills operates an ambulatory surgery center in Beverly Hills, California. At all relevant times,
2  Plaintiff Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills was not under
3  contract with any of the Defendants, and did not participate in any of their provider networks.

4          h)      Plaintiff Valencia Ambulatory Surgery Center, LLC is, and at all relevant
5  times was, a limited liability company organized and existing under the laws of the State of
6  California, with its principal place of business in Valencia, CA. Plaintiff Valencia Ambulatory
7  Surgery Center, LLC operates an ambulatory surgery center in Valencia, California. At all
8  relevant times, Valencia Ambulatory Surgery Center, LLC was not under contract with any of the
9  Defendants, and did not participate in any of their provider networks.

10         i)      Plaintiff West Hills Surgery Center LLC is, and at all relevant times was, a
11 limited liability company organized and existing under the laws of the State of California, with its
12 principal place of business in West Hills, California. Plaintiff West Hills Surgery Center LLC
13 operates an ambulatory surgery center in West Hills, California. At all relevant times, West Hills
14 Surgery Center LLC was not under contract with any of the Defendants, and did not participate in
15 any of their provider networks.

16 **B.     Plaintiff Independent Medical Service**

17         45.     Plaintiff Independent Medical Service, Inc. ("IMS") is, and at all relevant times
18 was, a California professional corporation organized and existing under the laws of the State of
19 California, with its principal place of business in Beverly Hills, California. IMS is a physicians'
20 medical group that bills for professional services. At all relevant times, IMS was not under
21 contract with any of the Defendants, nor did they participate in any of Defendants' provider
22 networks.

23 **C.     United Defendants**

24         46.     Plaintiffs are informed and believe that Defendant UnitedHealth Group, Inc.
25 ("UnitedHealth") is a Minnesota corporation with its corporate headquarters located in
26 Minneapolis, Minnesota. Defendant UnitedHealth Group is a publicly traded corporation which is
27 not qualified to do business in the State of California, but is engaged in business in the State of
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1  California and County of Los Angeles through its subsidiaries UnitedHealthcare Insurance
2  Company, and United HealthCare Services, Inc.

3      47.    Plaintiffs are informed and believe that Defendant UnitedHealthcare Insurance
4  Company ("UHIC") is a corporation organized and existing under the laws of the State of
5  Connecticut, a wholly owned and controlled subsidiary of Defendant UnitedHealth Group, with its
6  principal place of business in Connecticut. Defendant UHIC is qualified to engage in business in
7  the State of California and engaged in business in the Country of Los Angeles as an insurance
8  company.

9      48.    Plaintiffs are informed and believe that Defendant United HealthCare Services, Inc.
10  ("United HealthCare") is a Minnesota corporation with its corporate headquarters located in
11  Minneapolis, Minnesota. United HealthCare is wholly-owned by UnitedHealth, and serves as
12  UnitedHealth's operating division. United HealthCare is licensed to conduct insurance operations
13  in California and, on information and belief, every other State in the United States, whether it be
14  under the name United HealthCare or some other operating name.

15      49.    Plaintiffs are informed and believes that Defendant OptumInsight, Inc. ("Optum")
16  is a Delaware corporation with its corporate headquarters located in Eden Prairie, Minnesota.
17  Plaintiff is informed and believes that as of April 2011, Ingenix, Inc. also has been doing business
18  under the trade name "Optum."[3] Optum is a wholly-owned subsidiary of UnitedHealth

19      50.    UnitedHealth, United Healthcare, UHIC, and Optum/Ingenix will be collectively
20  referred to herein as "United" or the "United Defendants."

21      51.    With respect to all of the claims at issue herein, Plaintiffs are informed and believe
22  that the United Defendants:

23          a)    drafted and provided plan members with plan documents;

24          b)    operated a centralized verification and authorization telephone number
25  which handled calls for members;

26  _____

27  [3] See OptumInsight News Room, April 11, 2011 press release, UnitedHealth Group Announces
"Optum" Master Brand for its Health Services Businesses, http://www.optuminsight.com/news-
28  events/press-releases/2011/457/

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1     c)  authorized Plaintiffs to provide medical services to beneficiaries;

2     d)  received and processed electronic bills from Plaintiffs;

3     e)  communicated with Plaintiffs regarding authorization of surgical

4 procedures;

5     f)  issued remittance advices and EOBs;

6     g)  priced claims;

7     h)  communicated with Plaintiffs with respect to the processing of claims;

8     i)  processed appeals, and sent appeal response letters; and

9     j)  issued payment.

10      **IV.**  **GENERAL ALLEGATIONS**

11 **A.**  **United's Health Insurance Business**

12   52.  United is one of the nation's largest health insurers. It underwrites and issues

13 thousands of health insurance plans. It also contracts with other entities that provide health

14 benefits in order to provide administrative services for those entities' health plans, such as claim

15 pricing.

16   53.  Individuals who do not receive employer-sponsored health insurance often

17 purchase health insurance policies directly from United, who typically has sole responsibility and

18 discretion to administer and pay claims submitted under such policies.

19   54.  When the plan is insured by United, United not only is responsible for

20 administering a claim brought under the plan, but is also financially responsible for the payment of

21 the claim. United provides plan members with plan documents, interprets and applies the plan

22 terms, makes coverage and benefits decisions, handles appeals of coverage and benefits decisions,

23 and provides for payment in the form of medical reimbursements.

24   **1.**  **Out-Of-Network UCR Reimbursement**

25   55.  Various ambulatory surgery centers in the industry, other than the Provider

26 Plaintiffs, have written contracts with United under which they agree to accept United's set and

27 scheduled reimbursement that is discounted from the centers' total billed charges. In exchange,

28 these "in network" providers receive referrals of patients from United and the associated benefits

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1   of being a participating or "in-network" provider. These benefits typically include an increased

2   volume of business that results because the health plans provide financial incentives to their

3   members to utilize the services of "in-network" providers, such as reduced co-insurance payments

4   and/or deductibles.

5   56.     Conversely, some surgery centers and physicians, such as the Plaintiffs, do not

6   have written contracts with United. They are "out-of-network." As a result, these surgery centers

7   and physicians receive less volume of patients from the plans, but they are not governed by any

8   contractual requirements of defendants' plans and they are not required to accept reduced amounts

9   as payment in full for their charges for the services rendered. They are free to charge whatever

10   amounts they deem appropriate for their services.

11   57.     Typically, United pays benefits to in-network surgery centers at the lower, in-

12   network contract amount charged by those centers. However, benefit plans typically contain

13   provisions for paying out-of-network surgery centers and physicians at an UCR rate or a

14   percentage of the UCR rate. The language varies from plan to plan, and may be described as the

15   "Usual, Customary and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual

16   and Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual Fee," the

17   "Competitive Fee," or some other similar phrase. In the context of the healthcare industry, and in

18   United's own parlance, these phrases are all synonymous with UCR.

19        **2.     Payment Authorizations and UCR Industry Standards**

20   58.     When an out of network surgery center or health care provider has a patient who is

21   insured by United, the standard practice is to request authorization from United to provide out-of-

22   network services to that patient. United has developed a general practice and standard in the

23   industry to grant such authorizations. United does not impose its plan terms on such out-of-

24   network surgery centers and providers, but rather as a standard of custom and industry practice

25   commits to paying UCR no matter what the actual billed amount might be from the surgery center

26   or provider.

27   59.     Whether the claims are from out-of-network or in-network surgery centers or

28   providers, when the claims are submitted to United, they reflect the actual billed charges for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

1157465.1

1   claim. Even though in-network surgery centers and providers are sometimes reimbursed

2   according to contracted rates that include discounts, they still submit their full billed charges on

3   the claim. This is industry standard for all providers, and reflects the well-established fact that

4   charges are not the same as the discounted contract rates. Therefore, United has for many years

5   acquired a wealth of charge data from which it can use to price claims by comparing the prevailing

6   charges for similar healthcare services by similar types of surgery centers within the same

7   geographical market at the time.

8        60.   No provisions in those benefit plans, whether in their Summary Plan Descriptions

9   (SPDs) and Evidences of Coverage (EOCs), justified the failure to pay the usual and customary

10  fees for services charged by outpatient surgical centers such as those managed and operated by the

11  Plaintiffs, and to instead pay nothing. It was arbitrary, capricious and improper for United to do

12  so. In fact, during the insurance verification process for most if not all of the patients in this case,

13  United represented to Plaintiffs that it would pay the Plaintiff Providers' usual and customary fees.

14  Plaintiffs sought information during this process about potential limitations on the reimbursement

15  of Plaintiffs fee each time prior to providing services, and specifically inquired each time prior to

16  providing services as to how United's fee provisions would apply to their situation. Defendants

17  withheld information in response to such requests, and therefore misled plaintiffs into thinking

18  that the entire Plaintiffs' usual and customary fees would be paid.

19       61.   Likewise, no provisions anywhere in those plans justified the failure to issue a final

20  decision or denial on any of Plaintiffs' claims. This was therefore arbitrary, capricious, and a

21  breach of United's fiduciary duties to plan participants. It was also a violation of California

22  statutes which require that claims be adjudicated by United within 30 working days after receipt of

23  the claim. Insurance Code § 10123.13; Health and Safety Code § 1371.

24       62.   Moreover, despite making thousands of requests for plan documents and

25  information about United's UCR methodology, the Defendants failed to provide any of the

26  requested documents or information to Plaintiffs. Therefore, Plaintiffs have been unable to

27  confirm exactly how United purports to administer the terms of the benefit plans, or how United

28  prices Plaintiffs' claims.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

17

1157465.1

1    63.    Even in those rare instances where Defendants paid Plaintiffs' claims, they paid far

2    less than Plaintiffs' usual and customary fees.  On information and belief, United did not

3    uniformly apply UCR to all service providers in the same geographic area, and in fact,

4    discriminated against the Plaintiffs.

5    **B.    United's Systematic, Surreptitious, and Unlawful Withholding of Payment For**

6    **Services Rendered**

7    64.    United did not intend not to pay for the services rendered by Plaintiffs.  Rather than

8    inform Plaintiffs directly of this fact, however, United chose to carry out their intentions through

9    subterfuge and deceit.  Specifically, United manufactured various pretextual rationales unrelated

10   to the actual benefits available under the plans in order to unlawfully prolong the claims

11   administration process and ultimately deny Plaintiffs' claims outright on grounds not justified by

12   the terms of the benefit plans.

13   65.    United knows full well that the terms of Plaintiffs' benefit plans obligated it to pay

14   Plaintiffs for the valuable medical services they had provided to beneficiaries and participants of

15   those plans.  United does not have the ability to substantively change the terms of the plans, or to

16   create  hurdles for beneficiaries to obtain such benefits, or new reasons for denial of such benefits

17   that were contrary to, or inconsistent with, plan terms.  Thus, in making up false reasons to

18   withhold and deny payment from the Plaintiffs, United was acting beyond the scope of its

19   authority, and abused its discretion.

20   66.    In many cases, United conveyed these fabricated rationales to Plaintiffs by issuing

21   Explanation of Benefits ("EOBs") forms, which United typically issues when a claims decision is

22   made, or through appeal denial letters.  Though these forms and letters purported to be claim

23   denials, they contained no actual reasons explaining why the claim was being denied according to

24   the terms of the applicable benefit plan, as required by state law.  Instead, they merely requested

25   additional documentation or suggested that further review was required.

26   67.    Instead of responding to Plaintiffs' requests by providing access to the material that

27   the regulations entitle Plaintiffs to review, Defendants elected to completely ignore and reject the

28   requests, and make spurious and pretextual reasons for refusing to process and pay the claims.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

1157465.1

The spurious and pretextual tactics utilized by United included, but were not limited to, the following:

- Making repeated and redundant requests for medical records, even where records had already been provided on multiple occasions, and then denying in follow-up conversations that records had ever previously been received;

- Routinely requesting physician's orders approving the use of Durable Medical Equipment (DME) that Plaintiffs did not use or provide in connection with the medical services at issue;

- Forwarding all or nearly all of Plaintiffs' claims for "further review" by United's wholly owned subsidiary, Ingenix (also known as OptumInsight), and promising that review by Ingenix / OptumInsight would take 15-30 days, while in fact causing the so-called review to last for months or even years with no payment resulting from the "review";

- Requiring Plaintiffs to separately submit medical records or other documentation to Ingenix / OptumInsight when Plaintiffs had already submitted such documentation directly to United, on the pretextual ground that Ingenix / OptumInsight did not have access to the records that had already been submitted to United;

- Denying claims solely because the patients on whose behalf reimbursement was sought had allegedly failed to "authorize" Plaintiffs to appeal on their behalf, even though Plaintiffs always submitted a proper assignment of benefits demonstrating such authority, and even though Defendants in practice acknowledged that assignment had occurred by dealing directly with Plaintiffs, rather than with the patients;

- Claiming that one or more of the surgical facilities where the surgery was performed was not listed in United's database of health providers as a reason for non-payment, even though claims had previously been paid to those same facilities and even though United sometimes paid the surgeon who selected the facility;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

19

1157465.1

- Demanding surgery center licenses, even though California does not require any such license (surgery centers are "certified" by one or more entities, such as the Joint Commission on Accreditation for Health Care Organizations under Health & Safety Code § 1248 *et. seq.*);

- Denying claims for containing procedures with incorrect "modifier" codes, even though the claims that Plaintiffs submitted never included or required such codes;

- Denying claims because the patient purportedly did not have coverage, for instance, because of a pre-existing condition, when such coverage in fact existed;

- Denying claims on the basis that they were not timely filed, though Plaintiffs' submissions were timely.

68. While the rationale for denying any given claim varied, the outcome was always the same: the complete denial of nearly all payment for surgeries and procedures performed by Plaintiffs. When examined closely, none of United's rationales hold up to scrutiny. Yet they were repeatedly used to withhold payment to Plaintiffs, without informing Plaintiffs at any time of United's true intent to do so.

69. United has admitted that it has received the Patients' medical records, but intentionally uses its corporate structure to obscure the reasons for its failure to properly process and pay for claims. This deliberate and systematic obfuscation opacity has been glaringly apparent each time Plaintiffs have contacted United for guidance in understanding what additional records United supposedly needs to process and pay for the Patients' claims. Plaintiffs have asked again and again for clarification as to what specific medical records United considers necessary to process the claims, and were rebuffed repeatedly. United's responses offered no guidance as to how plaintiffs could perfect their claims. For example, United representatives have responded as follows in response to questions regarding what additional documents United requires to process the Patients' claims:

- "So this claim on this date of service, looks like a different department, Optum Insight[, a.k.a. Ingenix], was requesting treatment records."

- "I do show that it was submitted multiple times,... I'm showing that [Optum Insight, a.k.a. Ingenix] received the information but they're still needing additional

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1   information. They said they received it and are unable to process it, meaning that
one or more items are missing, history and physical, um findings, meaning labs,
2   radiology, pathology, anesthesia, just things of that nature. Any op note, procedure
report, daily progress treatment records, medication notes, physician orders, um,
3   anything of that nature.... [M]aybe they'll be able to give you more, um, elaborate
information."

• "Um, actually, it's not [Optum Insight, a.k.a. Ingenix]... the request actually
5   would be the United Healthcare since technically it's them who has the right to
request those records, and then it would be routed to us [at Optum
6   Insight/Ingenix]."

7   • "[T]he thing is, we just need those medical records. I know you have
submitted them perhaps to a different department of United Healthcare, but as you
8   can see here, whatever goes to us are the only ones that was reviewed, and I do see
here a one page of lap band follow up visits, office visits."

• "The thing is, um, this one, actually, **we are not even communicating
10  directly to them**. We only have, um, certain departments who are handling this
and they're located in the United States, okay.... **[Optum Insight is located] in
11  the Philippines, for your commercial account.**"

12  • "Okay, so it initially shows that the claim was denied for incomplete
medical records. Then it is being indicated here that it was filed for an appeal. But
13  um that was received on 8/14 but basically that appeal is being closed out because
there's no patient authorization here.... So I just checked on the records here on the
14  one and I'm going to have it sent back again to the appeals department about this
information because I can see that, um the... [assignment of] benefits as indicated
15  there. Also the op notes are also indicated there."

16  • "[I]t looks like what they're stating is that information was received but
some of the information was still missing that we needed. Um, and it doesn't tell
17  me specifically, just that it's – the information may have included the history and
physical findings upon examination, labs, radiology, pathology and anesthesia test
18  results, consult report."

19  70.   Contrary to what the United representatives promised, Defendants had no intention

20  of processing or paying the claim even if Plaintiffs re-submitted the requested medical records.

21  71.   Clearly, Defendant Ingenix/OptumInsight, to whom the United Defendants

22  delegated their responsibility for administering Plaintiffs' claims in a timely and accurate manner,

23  was in fact unqualified to do so. The delegation of the United Defendants' responsibilities to its

24  wholly owned subsidiary was not in order to facilitate the processing of Plaintiffs' claims, but to

25  delay it indefinitely, and to obscure from Plaintiffs the real reasons why Plaintiffs' claims were not

26  being paid.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

21

72.     United's repeated requests for additional records, without specifying what particular records were missing, provided no meaningful guidance on what specific further evidence might be required.

## C.     United Received Illegal Commissions In Return For Improperly Denying Plaintiffs' Claims

73.     Plaintiffs strongly suspect that another primary motivation that United had for denying Plaintiffs' claims is that United is substantially compensated by the Plans for doing so. Plaintiffs are informed and believe that when United refuses to pay the Plaintiffs for the services that they have rendered, it is paid a commission by the Plans, that is based upon a percentage of how much money the Plans "save" by not having to pay Plaintiffs their usual and customary fees. Thus, United effectively sets its own commission. This not only violates California law, but also violates the terms of the plans, which require usual and customary payment, as these artificial "savings," which are determined arbitrarily by United, bear no relation to a proper determination of Usual and Customary fees.

74.     Plaintiffs are informed and believed that the Plans make these kickbacks to United pursuant to a program called the "Facility Reasonable Charge Determination Program" or the "Facility Reasonable & Customary Program," which the Plans agree to as part of their agreements with United by which United provides claims adjudication services for the Plans. The goal of the Facility Reasonable Charge Determination Program is to underpay, or even reject outright, claims made by ASCs such as the Plaintiff providers.

75.     United is compensated under the Facility Reasonable Charge Determination Program at a specific percentage of the money that Defendants would otherwise have had to pay to Plaintiffs, had United correctly paid Plaintiffs' claims. This provided a major incentive for United to find ways not to pay Plaintiffs' claims, and to deny those claims on pretextual grounds, such as repeated and unfounded requests for irrelevant and nonexistent medical records.

76.     United's receipt of kickbacks and/or commissions for denying Plaintiffs' claims is a clear and willful violation of California Health & Safety Code § 1399.56 and/or Insurance Code § 796.02, which provide that claims reviewers may not be compensated on the basis of (a) a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1  percentage of the amount by which a claim is reduced for payment; or (b) the number of claims or

2  the cost of services that were denied and not paid. The Facility Reasonable Charge Determination

3  Program is tied to precisely these illegitimate metrics.

4  **D.  United Retaliated Against Plaintiffs and their Patients**

5  77.  Further, United has retaliated against Plaintiffs and their Patients because Plaintiffs

6  exercised the rights to which those participants and beneficiaries were entitled under their

7  insurance policies.

8  78.  Specifically, the patients who were treated by Plaintiffs lawfully attempted to

9  exercise their rights and benefits under their respective plans to receive out-of-network payment.

10  79.  However, for the sole reason that those participants and beneficiaries chose to

11  receive care from the Plaintiffs at the Surgery Centers, United retaliated against the participants

12  and beneficiaries, and by extension, against Plaintiffs.

13  80.  Moreover, United also retaliated against Plaintiffs because Plaintiffs sought to

14  appeal United's determinations denying payment.

15  81.  Among other retaliatory measures, United directed the vast majority of Plaintiffs'

16  claims to its Special Investigations Unit, known variously as Ingenix and/or OptumInsight. The

17  United Defendants, including but not limited to Defendant Ingenix/OptumInsight, further

18  retaliated against the Plaintiffs by generating various pretextual, unsupported, unwarranted and

19  fraudulent reasons for prolonging the claims review process, including by repeatedly asking for

20  medical records that did not exist and/or were not necessary to adjudicate the claims submitted by

21  Plaintiffs.

22  **E.  Defendants Have Discriminated Against Plaintiffs' Morbidly Obese Patients**

23  82.  In addition to arbitrarily and capriciously withholding and/or denying payment,

24  Defendants have actively discriminated against Plaintiffs' other potential patients who were

25  morbidly obese, thus violating both the ADA and FEHA. Since passage of the Americans with

26  Disabilities Act Amendments Act of 2008, which expanded the definition of disability, the EEOC

27  has made clear that "severe" or "morbid" obesity is a recognized disability under the ADA.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

23
COMPLAINT
Page 43  -  Exhibit A

83.     Title I of the ADA expressly prohibits employers from discriminating against a "qualified individual" (e.g., employee) on the basis of disability, including through "participating in a contractual... relationship that has the effect of subjecting a covered entity's... employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs)." 42 U.S.C. § 12112 (emphasis added).

84.     Likewise, California's Fair Employment and Housing Act (FEHA) prohibits discrimination in the provision of such benefits on the basis of "physical disability" except where the discrimination is based upon a "bona fide occupational qualification." Cal. Gov't Code § 12940(a).

85.     Moreover, employers, such as the Plans and their sponsors, must attempt to make good faith, reasonable accommodations for their employees' disabilities, and the failure to do so is discriminatory.  42 U.S.C. § 12112(b)(5)(A); Cal. Gov't Code § 12940(m).  By not even attempting to accommodate morbidly obese individuals in their attempt to receive health benefits through their employers, Defendants have therefore discriminated against Plaintiffs' patients who were morbidly obese, and/or aided and abetted employers in discriminating against their morbidly obese employees, by arbitrarily denying authorization and/or payment for Lap-Band surgery and related services, even though the employees' plans clearly covered these procedures or should have covered those procedures in order to be considered non-discriminatory.  Defendants did not deny authorizations or payment for other, non-morbidly obese patients.

1.     **Defendants Targeted the Morbidly Obese for Discrimination.**

86.     The requirement that patients participate in, and certify compliance with, a preoperative weight loss and diet regimen further constituted a prohibited "examination and inquiry" under the ADA "as to the nature or severity of the [patients'] disability." See 42 U.S.C. § 12112(d)(4)(A).  This is because monitoring compliance with the regimen necessarily requires inquiry into the "nature or severity" of the patients' morbid obesity.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

87.     Similarly, the requirement that patients provide proof from a doctor's office of their weight or BMI for the each of the past five years also presents an unreasonable barrier to the morbidly obese. It is unreasonable to demand that a morbidly patient must have documented his or her weight and BMI in each of the five preceding years before he or she can be approved for treatment.

88.     Indeed, on information and belief, Defendants were fully aware that the overwhelming majority of Plaintiffs' patients were morbidly obese, and that, more likely than not, these patients had come to Plaintiffs seeking treatment for their disability. Nonetheless, in violation of the ADA and FEHA, Defendants elected to apply these heightened and unreasonable tests to Plaintiffs' patients – even though Plaintiffs are informed and believed that other beneficiaries and participants of the plans administered by United were not subjected to this heightened level of scrutiny.

2.      **Defendants Imposed Scientifically Unjustified Requirements on Morbidly Obese Patients Prior to Surgery**

89.     Numerous of scientific studies and formal reviews of the scientific literature have found that insurance-mandated weight loss and diet plans of the sort imposed by Defendants, through United, fail to improve patient outcomes and are less effective than bariatric surgery alone.

90.     For instance, a 2011 study published in the peer-reviewed journal Surgery for Obesity and Related Diseases reviewed outcomes for 440 patients who underwent gastric surgery by the same surgeon. *See* Kuwada TS, Richardson S, El Chaar M, Norton HJ, Cleek J, Tomcho J, Stefanidis D., Insurance-mandated medical programs before bariatric surgery: do good things come to those who wait?, Surg Obes Relat Dis. 2011 Jul-Aug;7(4):526-30. The study concluded: "Patients who underwent a standardized MMP [insurance-mandated medical program] had a significant delay in their time to surgery **and did not experience significant benefit in their preoperative or postoperative weight loss**. Insurance companies should abandon the policy of mandating preoperative medical weight loss programs."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

91.    Likewise, a 2012 meta-analysis of the scientific literature on pre-surgery weight loss programs required by insurance companies concluded that "the insurance-mandated preoperative requirements **confer no appreciable benefit** to bariatric patients. The ultimate goal of such requirements is questionable, particularly considering that no actual weight loss is required." Ochner CN, Dambkowski CL, Yeomans BL, Teixeira J, Xavier Pi-Sunyer F, Pre-bariatric surgery weight loss requirements and the effect of preoperative weight loss on postoperative outcome, International Journal of Obesity (2012) 36, 1380-1387. The article found that requiring a preoperative plan might even be associated with "less-positive postoperative outcomes." It also concluded that preoperative weight loss requirements would have the perverse effect of rendering patients "ineligible to receive a surgical procedure that would have likely improved their health and quality of life." Even if enforcing such a policy might have some small benefit to *some* patients, it might be still "unethical" because it would "exclude otherwise eligible candidates from a beneficial surgical procedure in the hopes of improving the postoperative outcomes of others."

92.    Other sources are in accord. For instance, on March 23, 2011, the American Society for Metabolic & Bariatric Surgery (ASMBS), the largest and most prestigious association of bariatric surgeons, released a Position Statement on Preoperative Supervised Weight Loss Requirements which also reviewed the scientific literature and came to similar conclusions. The scientific evidence, it concluded, simply does not show that preoperative diet and weight loss programs have any effect: "[t]here are no Class I large, adequately powered randomized, prospective trials or meta-analyses to validate the hypothesis that preoperative diet attempts improve bariatric surgery outcomes." ASMBS Position Statement at 5.[4] Based on its review of the literature, the ASMBS concluded that it is "inappropriate, capricious, and counter-productive given the **complete absence of a reasonable level of medical evidence to support such practice**." *Id.* at 6.

---

[4] At the time of filing of this Complaint, this document was available at:
http://asmbs.org/2012/01/preoperative-supervised-weight-loss-requirements/.

1157465.1

1      93.    Likewise, California's Department of Managed Health Care recently commissioned

2 its own review of the literature on this subject, and concluded quite bluntly that "[m]andated

3 weight loss prior to indicated bariatric surgery *is without evidence-based support*." Department

4 of Managed Health Care, Review of Weight Loss Prior to Bariatric Surgery, at 2.[5] The DMHC

5 found that the practice was "not medically necessary" and that [t]he risks of delaying bariatric

6 surgery... are real and can be measured." *Id.*

7      94.    Nor is there any doubt that the benefits of bariatric surgery for morbidly obese

8 individuals are also real, measurable, and significant. A 2004 meta-analysis published in the

9 prestigious Journal of the American Medical Association, for instance, concluded that "bariatric

10 surgery in morbidly obese individuals reverses, eliminates, or significantly ameliorates diabetes,

11 hyperlipidemia, hypertension, and obstructive sleep apnea. These benefits occur in the majority of

12 patients who undergo surgery." Henry Buchwald, Yoav Avidor, Eugene Braunwald, et al.,

13 Bariatric Surgery: A Systematic Review and Meta-analysis, JAMA, 2004; 292(14):1724-1737.

14 Conversely, "diet therapy, with and without support organizations, is relatively ineffective in

15 treating obesity in the long term." *Id.* In addition, "there are currently no truly effective

16 pharmaceutical agents to treat obesity, especially morbid obesity."

17      95.    At least two other studies have found similar results. One is the long-term,

18 Swedish Obese Subjects Study, a longitudinal study which tracks 2,000 subjects who underwent

19 Lap-Band surgery and other kinds of bariatric surgery, along with 2,000 contemporaneously

20 matched obese control subjects receiving usual care, and is still ongoing. L. Sjöström, Review of

21 the key results from the Swedish Obese Subjects (SOS) trial – a prospective controlled

22 intervention study of bariatric surgery, J Intern Med 2013; 273: 219–234. This study is in

23 agreement with the results of the JAMA meta-analysis, and in particular, concludes that current

24 drug-only treatments are insufficient and that "[u]ntil more efficient antiobesity drugs are

25 available, surgical treatment of obesity must be more universally accessible." Results from 2004 to

26

27 [5] At the time of filing of this Complaint, this document was available at:

28 http://www.hmohelp.ca.gov/aboutthedmhc/org/boards/cap/BariatricREV.pdf

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

1157465.1

1   2012 from the SOS study have demonstrated that "maintained effects on risk factors over 10 years

2   require 10%–30% maintained weight loss."[6]  The SOS concluded that "Surgery is the only

3   treatment for obesity resulting in an average of more than 15% documented weight loss over 10

4   years." Id at 8.  Similar to the JAMA analysis, a 2010 review of roughly eight hundred patients in

5   a single Wisconsin hospital during a seven-year span who had either received bariatric surgery, or

6   been denied such surgery by their insurance companies found that those denied obesity surgery

7   had strongly increased incidence of hypertension, diabetes, sleep apnea, and acid reflux, among

8   other disorders.  Harakeh A, Burkhamer K, Kallies K, Mathiason M, Kothari S, <u>Natural history</u>

9   <u>and metabolic consequences of morbid obesity for patients denied coverage for bariatric surgery</u>.

10   Surgery for Obesity and Related Diseases 6 (2010) 591–596.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

11          **3.**     **Defendants' Conduct is a Subterfuge for Discrimination.**

12          96.     The overwhelming scientific evidence drives home the reality that Defendants'

13   denial of the Lap-Band procedure to morbidly obese individuals is outright discrimination which

14   has nothing to do with underwriting risks.  Instead, Defendants' conduct has everything to do with

15   denying benefits to which those individuals were rightfully entitled.  Thus, Defendants' denials, in

16   addition to being a breach of their fiduciary duties to the plans, were nothing more than subterfuge

17   in order to circumvent the policy goals of the ADA and FEHA and discriminate against

18   individuals who participated in various employer-sponsored health benefit plans or other plans

19   that offered both out-of-network benefits and coverage for bariatric surgery.  <u>See</u> 42 U.S.C.

20   § 12201(c).

21          97.     Plaintiffs are also informed and believe that in certain situations, Defendants denied

22   payment for bariatric surgery and related services based upon the purported terms of the patient's

23   benefit plan, which Defendants represented did not cover bariatric surgery, such as the Lap-Band

24   surgery or other procedures.  To the extent that the applicable benefit plans themselves in fact

25

26

27   [6] At the time of filing of this Complaint, this document was available at:

28   http://onlinelibrary.wiley.com/doi/10.1111/joim.12012/pdf.

1   denied coverage for the treatment of obesity, including Lap-Band surgery, however, the design of
2   those plans themselves was discriminatory and violated the ADA and FEHA.

3       98.     Moreover, to the extent that the applicable benefit plans themselves in fact denied
4   coverage, Defendants failed to make any reasonable accommodation for morbidly obese patients
5   under these plans, and failed to have any discussions with the affected individuals and/or with any
6   plan sponsors or employers about making such accommodations. Defendants are thus, at the very
7   least, guilty of aiding and abetting the violation of the ADA and FEHA in this respect.

8       **4.    Plaintiffs Have Suffered Injury In Fact.**

9       99.     As a result of Defendants' violations of FEHA and the ADA, Plaintiffs have
10  suffered injury in fact, because the potential patients who came to them seeking Lap-Band surgery
11  for their disability were directly or indirectly denied that opportunity as a result of Defendants'
12  discrimination. Likewise, Plaintiffs have lost money and/or property as a result of Defendants'
13  denials as alleged above. Indeed, Defendants' outright refusal to pay any claim submitted by any
14  of the Plaintiffs has impaired their ability to carry out their business affairs, to the point that
15  Plaintiffs may be forced to close their doors and cease providing needed medical services to their
16  morbidly obese patient population.

17      100.    The Defendants have unlawfully shifted the full liability of payment for medical
18  services rendered onto the patients, who have been billed for those services. Defendants' unlawful
19  denial of benefits for those services thereby results in injury in-fact to both the patients and to the
20  Plaintiffs.

21      101.    Moreover, Defendants' denials for the various professional and facility claims at
22  issue in this case has interfered with Plaintiffs' physician-patient relationships and the ability of
23  physicians to care for their patients, such as those needing follow-up appointments for adjustments
24  to their Lap-Band (which are necessary after the band is implanted). Defendants' conduct resulted
25  in injuries to its insureds' safety and wellbeing and violated their rights to "security" and "peace of
26  mind," which are protected rights for those who maintain insurance. Defendants' persistent
27  discrimination and failure to pay benefits injured Plaintiffs because it made it impossible for the
28  patients to receive weight loss treatment at Plaintiff's facilities, violated the ADA and FEHA, and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1  constituted unfair competition against Plaintiffs. Defendants' actions also inflict injury on both its

2  insureds and Plaintiffs because they violate fiduciary responsibilities to the beneficiaries in both

3  their role as an insurer and a third party administrator.

4  **F.     Example Patient Claims**

5       102.   The following examples amply illustrate why Plaintiffs' claims must be deemed

6  exhausted and that substantive remedies are warranted. They illustrate the consistency with which

7  United raises, in each example, disingenuous grounds for denial manufactured by United, as well

8  as the ineffectiveness of Plaintiffs' appeals. (To comply with rules regarding protected health

9  information and patient confidentiality, patients' actual names have not been used. A list of all the

10  patient claims at issue will be provided to United.)

11       **Patient A**

12       103.   Patient A, a female who has had a history of over five years of morbid obesity,

13  came to Plaintiffs for a cholecystectomy (surgical removal of the gallbladder) on June 3, 2010 in

14  preparation for receiving Lap-Band surgery. In December 2010, United issued an EOB to

15  Plaintiffs stating that the claim could not be processed because "one or more of the following

16  items are missing. History and physical; findings of examination; lab, radiology, pathology, and

17  anesthesia test results; consult reports; operative/procedure report; daily progress / treatment /

18  medication notes; physician orders for DME [Durable Medical Equipment] along with copy of

19  invoice and delivery statement." The EOB also stated that "we cannot pay this claim because we

20  are unable to verify state licensure of a facility or criteria to support the provider billing time.

21  Proof of facility licensure or hospital affiliation is required."

22       104.   In fact, however, many of the categories of documents that United demanded, such

23  as physician orders for DME, were completely irrelevant to the surgical services provided and did

24  not exist. The request for proof of facility licensure was similarly pretextual, as the identity of the

25  Plaintiffs' facilities was already known to United.

26       105.   After making a follow-up call, Plaintiffs sent all relevant medical records to United

27  the following month. Plaintiffs also provided United with the relevant W-9 forms in response to

28  the request for proof of facility licensure.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

1157465.1

106. However, United referred the claim to Ingenix for further review, incurring additional delay. Ingenix continued to request medical records, even though records had already been sent. Plaintiffs' claims were ultimately denied by United in an EOB dated December 2011 due to a purported failure to provide medical records.

107. United subsequently denied Plaintiffs' appeal only a few months later on the grounds that it was untimely, even though the appeal was not, in fact, untimely. Thus, to this day, United has failed to pay Plaintiffs for its professional and facility charges for valuable medical services that Plaintiffs provided to Patient A.

### Patient B

108. Patient B is a morbidly obese female who came to Plaintiffs for Lap-Band surgery. United authorized various pre-operative tests and procedures for Patient B, including cystoscopy, ultrasounds, esophagogastroduodenoscopy ("EGD"), and polysomnography. These procedures were performed between June and November 2011. To date, United has not paid the claims and has not even issued Explanations of Benefits ("EOBs") for all the claims.

109. For instance, on June 6, 2011, Plaintiffs performed an EGD for Patient B. United refused to pay anything relating to this procedure, including the doctor for performing the procedure; the anesthesiologist for anesthesia services provided during the procedure; or for the use of Plaintiffs' surgical facilities. Plaintiffs billed these claims with the medical reports to United via certified mail. United did not pay Plaintiffs' claims. Plaintiffs called United repeatedly to find out about the status of each the claim, including as late as April and August 2012. Though United confirmed that they had received Plaintiffs' claims and that Plaintiffs had provided medical records, United claimed that the claims were still being processed because additional medical records were still needed. United subsequently denied them claims due to the purported failure to provide medical records. However, other claims submitted by Plaintiffs in connection with Patient B were referred to Defendant OptumInsight for further review; and to this day, United refuses to admit or deny these claims.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1

**Patient C**

2    110.    Patient C, a morbidly obese female, received various medical services, including

3  ultrasound, polysomnography, and an EGD with biopsies, at the facilities of Plaintiff San Diego

4  Ambulatory Surgery Center in early 2011. Immediately after Plaintiffs submitted their claims for

5  reimbursement, their claims were forwarded to Ingenix for "further review." The United

6  Defendants requested, and Plaintiffs provided, medical records and further information about the

7  claims. Some of Plaintiffs' claims regarding the services provided to Patient C were subsequently

8  denied for a variety of pretextual reasons, including the purported failure to provide medical

9  records and/or the purported failure to provide provider W-9 forms. Other of Plaintiffs' claims

10  remained pending due to the purported failure to provide medical records. In addition, United

11  received, and ignored, multiple appeal letters regarding Plaintiffs' claims. Plaintiffs have called

12  United numerous times to request the status of payment, and United has repeatedly stated that the

13  claims are pending or in review.

14

15                            **FIRST CAUSE OF ACTION**
                **(For Unfair Business Practices in Violation of California Business &**
16                            **Professions Code §§ 17200 et seq.)**

17    111.    Plaintiffs incorporate the prior paragraphs as though fully set forth herein.

18    112.    The Unfair Competition Law ("UCL") prohibits "unfair competition," which is

19  defined by California Business & Professions Code Section 17200 as including "any unlawful,

20  unfair or fraudulent business act or practice ...."

21    113.    The United Defendants have engaged in a pattern of unfair, unlawful and/or

22  fraudulent business acts and practices against Plaintiffs as set forth below:

23            a.    The United Defendants have illegally discriminated against patients in the

24  provision of fringe employment benefits on the protected basis of those members' morbid obesity,

25  in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq.

26            b.    The United Defendants have illegally discriminated against patients in the

27  provision of fringe employment benefits on the protected basis of those members' morbid obesity,

28

32
COMPLAINT

1  in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code
2  § 12900 et seq.

3          c.      The United Defendants used arbitrary, capricious and improper methods to
4  improperly deny or underpay Plaintiffs' claims.

5          d.      The United Defendants routinely misrepresented that Plaintiffs' claims
6  would be paid, when in fact Defendants had no intention of paying any of Plaintiffs' claims.

7          e.      The United Defendants routinely requested medical records and provider
8  documentation that had already been provided and were not necessary to adjudicate Plaintiffs'
9  claims, as a way to delay adjudication of the claims.

10         f.      The United Defendants routinely referred Plaintiffs' claims to Defendant
11 Ingenix/OptumInsight for so-called "review."

12         g.      The United Defendants routinely denied Plaintiffs' claims based on flimsy
13 procedural rationales, including that medical records had not been provided or that a provider was
14 not "recognized," that were not grounded in the terms or the language of the insurance plan.

15         h.      For those health plans governed by the DMHC, the United Defendants
16 engaged in an "unfair payment pattern" in violation of California Health & Safety Code
17 § 1371.37, including but not limited, to a demonstrable and unjust pattern of reviewing and
18 processing complete and accurate claims that resulted in payment delays; repeated and improper
19 requests for medical records that are not reasonably relevant or reasonably necessary to determine
20 payor liability; reducing the amount of payment and/or denying payment of claims without
21 justification; and/or failing on a repeated basis to pay the uncontested portions of a claim within
22 the timeframes specified in Health & Safety Code § 1371 et seq.

23         i.      For those health plans governed by the DMHC, the United Defendants
24 failed to correctly and accurately apply the criteria used to calculate UCR rates as set forth in Title
25 28 of the California Code of Regulations ("CCR"), section 1300.71(a)(3)(B), and failed to comply
26 with Health & Safety Code § 1371 and 28 CCR § 1300.71.

27         j.      For those health plans governed by the DMHC, the United Defendants
28 illegally received compensation tied to the denial and/or reduction of amounts due on Plaintiffs'

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  claims in willful violation of Health & Safety Code § 1399.56 (which is a misdemeanor pursuant
2  to Health and Safety Code § 1390).

3       k.    For those health plans governed by the DMHC, the United Defendants
4  illegally received compensation tied to the denial and/or reduction of amounts due on Plaintiffs'
5  claims, in violation of Insurance Code § 796.02.

6       l.    The United Defendants interfered with Plaintiffs' contracts with Third Party
7  Payors, including Multiplan and Three Rivers.

8       q.    The United Defendants made materially false statements and used
9  materially false documents in connection with the payment for health care benefits, items, or
10  services involving a health care benefit program, as detailed in the complaint, at least tens of
11  thousands of times, in violation of 18 U.S.C. § 1035. Pursuant to 18 U.S.C. § 24(b), the definition
12  of "health care benefit program" includes Plaintiffs, as providers to whom payment may be made
13  for medical services under private plans affecting commerce.

14       r.    The United Defendants knowingly and willfully engaged in a scheme to
15  defraud "health care benefit programs" and to obtain, by means of false or fraudulent pretenses,
16  representations, or promises, money or property owned by, or under the custody or control of,
17  health care benefit programs, in violation of 18 U.S.C. § 1347. Pursuant to 18 U.S.C. § 24(b), the
18  definition of "health care benefit program" includes Plaintiffs, as providers to whom payment may
19  be made for medical services under private plans affecting commerce.

20       s.    With respect to health insurance plans promulgated by the United
21  Defendants that are subject to the California Insurance Code and/or regulated by the Department
22  of Insurance, the United Defendants engaged in acts of unfair competition under at least California
23  Insurance Code § 790.03(h), subsections, (1), (2), (3), (4), (5), (6), and (13) by, among other
24  things:

25       • misrepresenting to Plaintiffs and plan beneficiaries that United would pay the
26       providers' reasonable and customary charges;
27       • failing to respond to claim-related inquiries and communications by Plaintiffs
28       in a reasonably prompt manner;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

- failing to affirm or deny Plaintiffs' claims for reimbursement within a reasonable time after all proof of loss requirements had been submitted and liability had become reasonably clear;

- failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies, and instead, illegitimately referring claims to Defendant Ingenix/OptumInsight, Inc. for further review;

- delaying the investigation and/or payment of claims by requiring the repeated submission of medical records and other documents showing entitlement to payment;

- failing to provide promptly a reasonable explanation of the basis relied upon for the denial of Plaintiffs' claims; and

- compelling insureds (and Plaintiffs, acting on behalf of such insureds) to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

114. The conduct alleged violates the UCL. As a result of their business acts and practices in violation of the UCL, Defendants have received and retained and continue to receive and retain monies that rightfully belong to Plaintiffs as compensation for rendering covered, medically necessary services to plan members. Plaintiffs have thus suffered "injury in fact" because Defendants have unlawfully, unfairly, and fraudulently withheld monies from Plaintiffs to which Plaintiffs were entitled as compensation for rendering covered, medically necessary services to plan participants and beneficiaries.

115. Plaintiffs have further suffered "injury in fact" because Defendants obstructed and discriminated against morbidly obese individuals seeking weight loss surgery at Plaintiffs' clinics, thereby both depriving morbidly obese individuals from the benefits of such advantageous and medically necessary surgery *and* harming Plaintiffs' business interests.

35

1157465.1

1    116.    Defendants' conduct in violation of the UCL is likely to continue absent judicial

2  intervention. This conduct threatens not only Plaintiffs' economic well-being and future viability,

3  but also the health of the public and the needs of morbidly obese individuals in California.

4    117.    Business & Professions Code § 17203 provides that any court of competent

5  jurisdiction may enjoin any person from engaging in unfair competition and restore to any person

6  who is a victim of that unfair competition any money acquired thereby. Plaintiffs seek restitution

7  of an amount to be proved at trial, plus applicable statutory interest, which is the amount that the

8  Defendants are obligated to pay Plaintiffs for the services Plaintiffs provided to plan participants

9  and beneficiaries. Plaintiffs further seek an injunction prohibiting Defendants' ongoing conduct in

10  using inappropriate methodologies to deny or underpay Plaintiffs' claims for medical treatment

11  provided to plan members. Furthermore, the injunction should force Defendants to correctly price

12  past and future claims by Plaintiffs by determining UCR based on appropriate UCR data.

13    118.    Plaintiffs' legal remedies are inadequate in that Defendants' unlawful, unfair, and

14  fraudulent conduct is ongoing and repeated litigation to correct Defendants' ongoing actions

15  would be inefficient for the parties and the Court. Plaintiffs' damages cannot be fully

16  compensated by money and are difficult or impossible to ascertain in terms of money alone. The

17  loss of revenue from Defendants' illegal and unfair withholding of claim payments is severely

18  impeding Plaintiffs' ability to provide adequate care for patients.

19

20                      **SECOND CAUSE OF ACTION**

21        **(For Breach of Implied-In-Fact Contract – Authorized Services/No**
           **Authorization Needed Services)**
22

23    119.    Plaintiffs incorporate the prior paragraphs as though fully set forth herein.

24    120.    Plaintiffs and Defendants entered into implied-in-fact contracts through

25  Defendants' course of conduct (i) for services that were authorized by the Defendants, and (ii) for

26  services for which United told the Plaintiffs that no authorization was needed, whereby Plaintiffs

27  then provided the services to the patients, and the Defendants agreed to pay for such services.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1    121.    This course of conduct created implied-in-fact contracts whereby Plaintiffs agreed
2  to provide, and Defendants agreed to pay, for medical services rendered to members and insureds
3  of insurance plans administered and/or funded by United.

4    122.    For each of the claims at issue, Plaintiffs confirmed that the patient was an eligible
5  member of one of the Defendants' plans by contacting United, typically by telephone. When
6  Plaintiffs called Defendants, they also inquired as to which services required prior authorization by
7  United, and which services did not require such authorization.

8    123.    When the Plaintiff providers called United for insurance verification purposes, they
9  also asked United whether United would pay the Providers' reasonable and customary fees. In
10  virtually every instance, the United representative responded that they would pay the reasonable
11  and customary fees charged by the Plaintiffs for their services.

12    124.    At the time when Plaintiffs called United for insurance verification purposes,
13  Plaintiffs made notes of those calls in a database and/or computer system maintained by Plaintiffs.
14  Plaintiffs' notes reflect whether United represented during the call that benefits existed for a given
15  medical service, and whether authorization was necessary. Plaintiffs are informed and believe that
16  United maintained similar notes.

17    125.    For medical services that United indicated required an authorization, Plaintiffs
18  sought, and received, such authorization from United before providing such services to the patient.
19  For medical services not requiring an authorization, Plaintiffs relied on United's representation to
20  Plaintiffs during the initial verification phone call that no explicit authorization was required for
21  Plaintiffs to provide the services to United's members.

22    126.    Either way, Plaintiffs relied upon United's representations that the services were
23  explicitly authorized or did not require authorization, and United's representations that it would
24  pay Plaintiffs' reasonable and customary fees, when Plaintiffs provided medical services to
25  patients. In no instance did the Plaintiffs expect that they would provide their medical services to
26  members and insureds of United for free or at reduced rates. Rather, they expected their
27  reasonable and customary fees to be paid as verified by United.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1  127.  Plaintiffs are informed and believe that United maintains records of all
2  authorizations for medical services in its computer systems and/or databases.

3  128.  Having authorized services, or having confirmed that no authorization was needed,
4  and having represented that they would pay Plaintiffs' reasonable and customary charges,
5  Defendants thereby agreed to pay the Plaintiffs at the reasonable and customary charges.

6  129.  If Defendants did not intend to pay Plaintiffs, they could have withheld
7  authorization for particular services. Defendants also could have informed Plaintiffs during the
8  initial verification of insurance that they did not intend to pay any of the claims submitted by
9  Plaintiff in connection with the services rendered. Defendants failed to do so, however.
10 Therefore, Defendants entered into implied-in-fact contracts with the Plaintiffs to pay Plaintiffs'
11 reasonable and customary charges.

12  130.  At all relevant times, Plaintiffs were not under contract with United, and therefore
13 were never obligated to accept less than their full billed charges. Certainly, Plaintiffs were not
14 obligated to provide their services for free.

15  131.  Plaintiffs have performed all of the obligations required of them under the implied-
16 in-fact contracts with the defendants for the authorized services.

17  132.  Each of the Defendants breached the terms of each of the implied-in-fact contracts
18 by refusing to pay the Plaintiffs for the services according to the terms of the implied-in-fact
19 contracts. The breaches also included, among other things, making material misrepresentations
20 regarding status of Plaintiffs' claims; making unjustified requests for medical records and provider
21 documentation in order to delay the processing of Plaintiffs' claims; subjecting Plaintiffs' claims
22 to an unwarranted, fraudulent and pretextual level of scrutiny by Defendant Optum/Ingenix;
23 denying claims and appeals without justification; and providing an arbitrary and capricious benefit
24 determination and appeal process.

25  133.  As a direct and proximate result of United's breaches of these implied-in-fact
26 contracts, Plaintiffs have been damaged in an amount to be proven at trial, plus applicable
27 statutory interest.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

**THIRD CAUSE OF ACTION**

**(For Equitable Estoppel)**

134.    Plaintiffs incorporate the prior paragraphs as though fully set forth herein.

135.    United was apprised of the facts concerning Plaintiffs' request to provide services to United's members.  When Plaintiffs called United for insurance verification purposes, they asked whether United whether out-of-network benefits were available under the terms of the patients' plans for the medical services that Plaintiff intended to perform.  In virtually every instance, United's representatives responded that they were.

136.    During these calls, Plaintiffs further inquired whether United would pay the Plaintiff Providers' usual and customary charges.  Again, in virtually every instance, the United representative responded that they would pay the usual and customary fees charged by the Plaintiff providers for the services specified.

137.    Furthermore, for medical services that United indicated required an authorization, Plaintiffs sought, and received, such authorization from United before providing such services to the patient. For medical services not requiring an authorization, Plaintiffs relied on United's representation to Plaintiffs during the initial verification phone call that no explicit authorization was required for Plaintiffs to provide the services to United's members.  In providing these responses, United intended that its conduct would be acted upon by Plaintiffs, and/or knew that, after informing Plaintiffs that the services were authorized, or that no authorization was necessary, that Plaintiffs would provide the discussed services to United's members.

138.    Defendants intended that Plaintiffs rely upon the representations described above. It is common practice in the trade of the health care industry for plans to make these statements to tell providers that the providers will get paid for services to the members of the plans.

139.    The language of the plans pertaining to benefits for out-of-network surgery either clearly provided that those benefits would be paid at a UCR rate, or if they did not, the terms of the plan were ambiguous.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1     140.    Plaintiffs were ignorant that United never intended to reimburse Plaintiffs for the
2   services they provided to United's members. Plaintiffs were ignorant that United would create
3   pretextual reasons for refusing to process or to pay the claims.

4     141.    Plaintiffs reasonably and actually relied on the statements by the United Defendants
5   that the services were authorized, or that no authorization was needed.

6     142.    Plaintiff likewise reasonably and actually relied on the statements by the United
7   Defendants that out-of-network surgical benefits were available under the terms of the plans and
8   that the Defendants would pay Plaintiffs' reasonable and customary charges. In reliance on these
9   representations, Plaintiffs rendered medical services to the patients, and did not seek potential
10   avenues of payment other than from the United Defendants.

11     143.    Accordingly, Defendants are estopped from contending that the services it
12   authorized are not payable due to lack of authorization, and are estopped from refusing to pay the
13   reasonable and customary value for these services.

14

15                           **FOURTH CAUSE OF ACTION**

16                        **(For Recovery for Services Rendered)**

17     144.    Plaintiffs incorporate the prior paragraphs as though fully set forth herein.

18     145.    To the extent the causes of action alleged above for any reason do not apply to the
19   services at issue, Plaintiffs allege in the alternative that Defendants are indebted to Plaintiffs at the
20   quantum meruit rate for the services rendered by Plaintiffs to the members and insureds of health
21   plans administered and/or funded by Defendants.

22     146.    Plaintiffs provided medically necessary treatment to each of the members who
23   received health care services from Plaintiffs. By authorizing the Plaintiffs to provide health care
24   services to the members, by verifying the members' coverage under the Health Plan, by
25   misrepresenting, concealing and/or failing to disclose United's intent not to pay Plaintiffs for their
26   services, and by other words and/or conduct, Defendants, on their own behalf and/or as the agent
27   of one or more of the other Defendants, requested that Plaintiffs provide those services.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    147.    Defendants received, accepted, used, enjoyed and benefited from Plaintiffs'

2  valuable health care services. Defendants knew that the services were being provided to the

3  members for the benefit of Defendants, and Defendants promised to pay Plaintiffs for those

4  services.

5    148.    As a result, each of the Defendants became indebted to Plaintiffs for the health care

6  services rendered by Plaintiffs to the members.

7    149.    Each of the Defendants has failed and refused, and continues to refuse, to timely

8  and properly pay Plaintiffs for the reasonable and customary fair market value of the services

9  Plaintiffs provided to the members. Instead, Defendants have decided to delay payment, deny

10  payment, or pay whatever amount they arbitrarily, capriciously, and unilaterally decided was

11  appropriate for such services, at rates far below the services' reasonable and customary fair market

12  value.

13    150.    The reasonable and customary fair market value of the services provided by

14  Plaintiffs to the members for the benefit of Defendants is Plaintiffs' billed charges for the services.

15    151.    Plaintiffs have demanded, on numerous occasions, that the Defendants pay for the

16  health care services Plaintiffs has provided to the members, and has objected to the failure to

17  timely and properly pay Plaintiffs for the services provided to the members.

18    152.    Accordingly, there is now due, owing and unpaid from the Defendants to Plaintiffs

19  an amount to be proven at trial, plus applicable statutory interest.

20    **FIFTH CAUSE OF ACTION**

21    **(For Declaratory Relief)**

22    153.    Plaintiffs incorporate the prior paragraphs as though fully set forth herein.

23    154.    A controversy has arisen between each of the Defendants and Plaintiffs as to

24  Plaintiffs' right to be afforded access to an honest and unbiased claims administration process, and

25  to be paid under the terms of the benefits plans at issue.

26    155.    Accordingly, Plaintiffs seek a declaration that:

27    a.    Defendants' use of the various procedural pretexts described above that are

28  being used to delay and/or deny payment on Plaintiffs' claims, such as repeated requests for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

41

1157465.1

1  medical records and constant referrals to Ingenix for further review, are arbitrary and capricious,

2  and a violation of California law concerning prompt payment of claims;

3         b.    Defendants are now barred from relying upon any rationales for denying

4  Plaintiffs' claims that Defendants did not raise during the administrative process and prior to

5  litigation;

6         c.    Defendants must immediately cease the use of such procedural pretexts;

7         d.    Defendants are required timely re-process all claims that have been

8  submitted by the Plaintiffs since United first began its campaign to deny payments to the

9  Plaintiffs, and to pay those claims pursuant to the terms of the Plans;

10         e.    Defendants must conduct a "full and fair review" for all claims being re-

11  processed, free of dishonest and surreptitious delay and denial tactics;

12         f.    Defendants must render timely benefit decisions on all future claims

13  submitted by Plaintiffs in accordance with all applicable rules and regulations governing the time

14  in which such decisions must be rendered;

15         g.    Defendants must promptly and timely provide Explanation of Benefits and

16  responses to appeals;

17         h.    When denying Plaintiffs' claims, Defendants must disclose with specificity

18  the reasons for the adverse determinations, and cite the specific provisions of the plans that

19  support the determinations;

20

21      **WHEREFORE**, Plaintiffs pray for and demand judgment against the Defendants as set

22  forth above and as follows:

23      1.    An injunction prohibiting Defendants from engaging in the unfair business

24  practices complained of, and requiring Defendants to restore to Plaintiffs, and otherwise to

25  disgorge, any money that has been acquired from Plaintiffs, by means of the unfair business

26  practices being committed by Defendants.

27      2.    The reasonable and customary value of the medical services provided by Plaintiffs

28  to Defendants' insureds and members.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

3.  For actual damages in an amount according to proof at trial.

4.  For a judicial declaration that:

a.  Defendants' use of the various procedural pretexts described above that are being used to delay and/or deny payment on Plaintiffs' claims, such as repeated requests for medical records and constant referrals to Ingenix for further review, are arbitrary and capricious;

b.  Defendants are now barred from relying upon any rationales for denying Plaintiffs' claims that Defendants did not raise during the administrative process and prior to litigation;

c.  Defendants must immediately cease the use of such procedural pretexts;

d.  Defendants are required timely re-process all claims that have been submitted by the Plaintiffs since United first began its campaign to deny payments to the Plaintiffs, and to pay those claims pursuant to the terms of the Plans;

e.  Defendants must conduct a "full and fair review" for all claims being re-processed, free of dishonest and surreptitious delay and denial tactics;

f.  Defendants must render timely benefit decisions on all future claims submitted by Plaintiffs in accordance with all applicable rules and regulations governing the time in which such decisions must be rendered;

g.  Defendants must promptly and timely provide Explanation of Benefits and responses to appeals;

h.  When denying Plaintiffs' claims, Defendants must disclose with specificity the reasons for the adverse determinations, and cite the specific provisions of the plans that support the determinations;

5.  Awarding prejudgment interest and costs; and

6.  Awarding such other relief as the Court deems just and proper.

DATED: March 21, 2014                HOOPER, LUNDY & BOOKMAN, P.C.

By: _____
                DARON L. TOOCH
            Attorneys for Plaintiffs

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1157465.1

1    **DEMAND FOR JURY TRIAL**

2        Plaintiffs demand a jury trial for all claims so triable.

3

4    DATED:  March 21, 2014                    HOOPER, LUNDY & BOOKMAN, P.C.

5

6                                              By: _____

7                                                      DARON L. TOOCH
                                               Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

44
COMPLAINT

1157465.1

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| TELEPHONE NO.:                           FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

   i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2.    The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.    The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR PLAINTIFF)

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR _____)

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR _____)

Date: _____

_____    ►    _____
    (TYPE OR PRINT NAME)               (ATTORNEY FOR _____)

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:

STATE BAR NUMBER

Reserved for Clerk's File Stamp

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding (or demanding or requesting) party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):  E-MAIL ADDRESS (Optional):  ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)
LASC Approved 04/11      **STIPULATION AND ORDER – MOTIONS IN LIMINE**      Page 1 of 2

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____  ►  _____
Date:       (TYPE OR PRINT NAME)            (ATTORNEY FOR PLAINTIFF)

_____  ►  _____
Date:       (TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)

_____  ►  _____
Date:       (TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)

_____  ►  _____
Date:       (TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)

_____  ►  _____
Date:       (TYPE OR PRINT NAME)           (ATTORNEY FOR _____ )

_____  ►  _____
Date:       (TYPE OR PRINT NAME)           (ATTORNEY FOR _____ )

_____  ►  _____
       (TYPE OR PRINT NAME)           (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date:   _____

                              _____
                                    JUDICIAL OFFICER



1  **LARRY A. WALRAVEN (S.B.# 143327)**
   **BRYAN S. WESTERFELD (S.B.# 218253)**
2  **NICOLE E. WURSCHER (S.B.# 245879)**
   **WALRAVEN & WESTERFELD LLP**
3  101 Enterprise, Suite 350
   Aliso Viejo, California 92656
4  Telephone: (949) 215-1990
   Fax: (949) 215-1999
5
   Attorneys for UnitedHealth Group, Inc.; United Healthcare
6  Services, Inc., United Healthcare Insurance Company;
   OptumInsight, Inc.
7

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

APR 2 1 2014

Sherri R. Carter, Executive Officer/Clerk
By: Amber Hayes, Deputy

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **COUNTY OF LOS ANGELES**

10

11  ALMONT AMBULATORY SURGERY          Case No.  BC540056
    CENTER, LLC, a California limited liability
12  company; BAKERSFIELD SURGERY        **DEFENDANTS' ANSWER TO**
    INSTITUTE, LLC, a California limited   **COMPLAINT**
13  liability company; INDEPENDENT
    MEDICAL SERVICES, INC., a California
14  corporation; MODERN INSTITUTE OF
    PLASTIC SURGERY & ANTIAGING,
15  INC., a California corporation; NEW LIFE
    SURGERY CENTER, LLC, a California
16  limited liability company, dba BEVERLY
17  HILLS SURGERY CENTER; ORANGE
    GROVE SURGERY CENTER, LLC, a       COMPLAINT FILED: March 21, 2014
18  California limited liability company; SAN
19  DIEGO AMBULATORY SURGERY
    CENTER, LLC, a California limited liability
20  company; SKIN CANCER &
21  RECONSTRUCTIVE SURGERY
    SPECIALISTS OF BEVERLY HILLS,
22  INC., a California corporation VALENCIA
23  AMBULATORY SURGERY CENTER,
    LLC, a California limited liability company;
24  WEST HILLS SURGERY CENTER, LLC, a
25  California limited liability company,

26              Plaintiffs,

27

28

                                                    ANSWER TO COMPLAINT

1  v.

2  UNITEDHEALTH GROUP, INC.; UNITED
   HEALTHCARE SERVICES, INC.,
3  UNITEDHEALTHCARE INSURANCE
   COMPANY; OPTUMINSIGHT, INC., and
4  DOES I through 20

5              Defendants.

6

7         Defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., United

8  Healthcare Insurance Company, and OptumInsight, Inc. ("United" or "Defendants"), for itself

9  and for no other defendant, answers Plaintiffs ("Plaintiffs'") Complaint as follows:

10 Pursuant to the provisions of section 431.30 of the California Code of Civil Procedure, United

11 denies each and every, all and singular, allegations of said Complaint and further denies that

12 Plaintiff was damaged in the sum alleged or in any sum or at all.

13

14 **AND AS FOR THEIR AFFIRMATIVE DEFENSES TO ALL CAUSES OF ACTION**

15 **PURPORTED TO BE SET FORTH AGAINST DEFENDANTS IN THE COMPLAINT**

16 **HEREIN, DEFENDANTS AVER AS FOLLOWS:**

17

18 **FIRST AFFIRMATIVE DEFENSE**

19      1.      Said causes of action, and each of them, fail to state facts sufficient to constitute

20 a cause of action.

21

22 **SECOND AFFIRMATIVE DEFENSE**

23      2.      Said causes of action, and each of them, fail to state facts sufficient to constitute

24 a cause of action as against these answering defendants.

25

26

27

28

ANSWER TO COMPLAINT

**THIRD AFFIRMATIVE DEFENSE**

3.      Said causes of action, and each of them, are barred, in whole or in part, by the statute of limitations as codified in California Code of Civil Procedure sections 337 and 339.

**FOURTH AFFIRMATIVE DEFENSE**

4.      Some or all of Plaintiffs' claims are completely and expressly preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, *et seq.*, ("ERISA").

**FIFTH AFFIRMATIVE DEFENSE**

5.      Said causes of action, and each of them, are barred by ERISA, in that Plaintiffs have failed to comply with the requirements of ERISA and have failed to exhaust, in whole or in part, the administrative claims procedures pursuant to ERISA.

**SIXTH AFFIRMATIVE DEFENSE**

6.      If Plaintiffs were entitled to recover on these claims, although such is not admitted hereby or herein, Plaintiffs' claims must be reduced in accordance with the respective limitations on the amount of benefits payable under the specific provisions of the relevant patient benefit plan(s), including but not limited to reduction of charges consistent with "eligible expenses" under the provisions of the relevant patient benefit plan(s), application of deductibles and co-payments, and application of lifetime, annual and/or per visit or per occurrence maximums under the plans.

**SEVENTH AFFIRMATIVE DEFENSE**

7.      Plaintiffs' claims are in the nature of benefit claims, and Defendants' actions of which Plaintiffs complain were neither arbitrary nor capricious.

**EIGHTH AFFIRMATIVE DEFENSE**

8.     Said causes of action, and each of them, are barred, in whole or in part, by the defense of unclean hands.

**NINTH AFFIRMATIVE DEFENSE**

9.     Said causes of action, and each of them, are barred in whole or in part by the defense of accord and satisfaction.

**TENTH AFFIRMATIVE DEFENSE**

10.     Said causes of action, and each of them, are barred, in whole or in part, by the defense of waiver.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.     Said causes of action, and each of them, are barred, in whole or in part, by the defense of payment.

**TWELFTH AFFIRMATIVE DEFENSE**

12.     If Defendants did breach a contract with Plaintiffs, although such is not admitted hereby or herein, any failure of Defendants to perform the conditions of the contract resulted from Plaintiffs' failure to perform and such performance by Plaintiffs was a condition precedent to or concurrent with performance by Defendants.

**THIRTEENTH AFFIRMATIVE DEFENSE**

13.     If Defendants did breach a contract with Plaintiffs, although such is not admitted hereby or herein, any failure of Defendants to perform the conditions of the contract was excused by the Plaintiffs' breach of the terms and conditions of the contract.

1

**FOURTEENTH AFFIRMATIVE DEFENSE**

2

      14.     Defendants are informed and believe and on such basis alleges that they may

3

have additional defenses available to them, which are not now fully known and of which they

4

are not now aware.  Defendants reserve the right to raise and assert such additional defenses

5

once such additional defenses have been ascertained.

6

7

**FIFTEENTH AFFIRMATIVE DEFENSE**

8

      15.     Plaintiffs' claims are barred for failure to mitigate damages.

9

10

**SIXTEENTH AFFIRMATIVE DEFENSE**

11

      16.     Plaintiffs' claims are barred because they have failed to raise their claims within

12

the time frame required by ERISA's statute of limitations, or the limitations periods

13

referenced in the various plan documents.

14

15

**SEVENTEETH AFFIRMATIVE DEFENSE**

16

      17.     Plaintiffs' claims are barred because they seek to recover amounts for services

17

reimbursed that are unreasonable or not medically necessary, including, for example, claims

18

that were wrongfully submitted, unnecessary, or claims for which Plaintiffs did not collect

19

copays or coinsurance.

20

21

**EIGHTEENTH AFFIRMATIVE DEFENSE**

22

      18.     To the extent that Plaintiffs have suffered damages, United is entitled to set off

23

and recoupment against any such damages equal to amounts Plaintiffs owe to United (or the

24

plans for which United acts as agent or claims administrator (the "Plans")) for wrongfully

25

submitted claims previously submitted by Plaintiffs and paid by United or the Plans.

26

27

28

ANSWER TO COMPLAINT

**NINETEETH AFFIRMATIVE DEFENSE**

19.     Plaintiffs' alleged reliance on information allegedly provided by United during the telephone calls referenced in the Complaint was neither reasonable nor foreseeable in so far as United made clear that any payment it would provide to the Plaintiffs' was contingent on the patient's qualifying for benefits under the term of his or her health plan.

**TWENTIETH AFFIRMATIVE DEFENSE**

20.     Plaintiffs' claims are barred by laches/estoppel, or as a result of Plaintiffs' wrongful conduct.

**TWENTY FIRST AFFIRMATIVE DEFENSE**

21.     Any loss or damage that Plaintiffs allege is due to the fault or responsibility of persons and entities over whom Defendants have no control, including Plaintiffs.

WHEREFORE, Defendants pray for judgment as follows:

(1)     That Plaintiffs' Complaint and each cause of action thereof be dismissed with prejudice;

(2)     That Plaintiffs take nothing by their Complaint;

(3)     That Defendants be awarded their costs incurred herein, including attorneys' fees; and

(4)     That the Court order such other and further relief for Defendants as the Court may deem just and proper.

Dated:                                      **WALRAVEN & WESTERFELD LLP**

By: _____
**BRYAN S. WESTERFELD**
Attorneys for UnitedHealth Group,
Inc., United Healthcare Services,
Inc., United Healthcare Insurance
Company, and OptumInsight, Inc.

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )  ss
COUNTY OF ORANGE             )

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 101 Enterprise, Suite 350, Aliso Viejo, CA 92656.

On April 18, 2014, I served the foregoing document(s) described as

## ANSWER TO COMPLAINT

on all interested parties in this action as follows (or as on the attached service list):

Daron L. Tooch
Hooper & Lundy & Bookman, P.C.
1875 Century Park East, Suite 1600
Los Angeles, CA 90067

E-Mail:
dtooch@health-law.com
bwoolley@health-law.com

☒    (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows:  I placed true copies of the document(s) in a sealed envelope addressed to each interested party as shown above.  I placed each such envelope with postage thereon fully prepaid, for collection and mailing at Walraven & Westerfeld LLP, Aliso Viejo, California.  I am readily familiar with Walraven & Westerfeld LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 18, 2014, at Aliso Viejo, California.

Jessica M. Ridley

ANSWER TO COMPLAINT

1  DARON L. TOOCH (State Bar No. 137269)
   ERIC D. CHAN (State Bar No. 253082)
2  **HOOPER, LUNDY & BOOKMAN, P.C.**
   1875 Century Park East, Suite 1600
3  Los Angeles, California 90067-2517
   Telephone: (310) 551-8111
4  Facsimile: (310) 551-8181
   E-Mail:   dtooch@health-law.com
5
   Attorneys for Plaintiffs
6



APR 21 REC'D

By_____

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                 **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

9   ALMONT AMBULATORY SURGERY            CASE NO. BC540056
    CENTER, LLC, a California limited liability
10  company; BAKERSFIELD SURGERY         **NOTICE OF CASE MANAGEMENT**
    INSTITUTE, LLC, a California limited  **CONFERENCE**
11  liability company; INDEPENDENT
    MEDICAL SERVICES, INC., a California  Hon. Debre Katz Weintraub, Dept. 47
12  corporation; MODERN INSTITUTE OF
    PLASTIC SURGERY & ANTIAGING, INC.,   Complaint Filed:     March 21, 2014
13  a California corporation; NEW LIFE    Trial Date:          None Set
    SURGERY CENTER, LLC, a California
14  limited liability company, dba BEVERLY
    HILLS SURGERY CENTER; ORANGE
15  GROVE SURGERY CENTER, LLC, a
    California limited liability company; SAN
16  DIEGO AMBULATORY SURGERY
    CENTER, LLC, a California limited liability
17  company; SKIN CANCER &
    RECONSTRUCTIVE SURGERY
18  SPECIALISTS OF BEVERLY HILLS, INC.,
    a California corporation; VALENCIA
19  AMBULATORY SURGERY CENTER, LLC,
    a California limited liability company; WEST
20  HILLS SURGERY CENTER, LLC, a
    California limited liability company,
21
                  Plaintiffs,
22
          vs.
23
    UNITEDHEALTH GROUP, INC.; UNITED
24  HEALTHCARE SERVICES, INC.,
    UNITEDHEALTHCARE INSURANCE
25  COMPANY; OPTUMINSIGHT, INC., and
    DOES 1 through 20, inclusive,
26
                  Defendants.
27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159440.1

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that the court has scheduled a Case Management Conference for

3    July 11, 2014 at 8:30 a.m. in Dept. 47 of the above-entitled court, located at 111 North Hill Street,

4    Los Angeles, California 90012.  A copy of the Court's Notice is attached hereto.

5

6    DATED:  April 17, 2014            HOOPER, LUNDY & BOOKMAN, P.C.

7

8                  By:

9                                ERIC D. CHAN

                             Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159440.1

OTICE SENT TO:

ooper, Lundy & Bookman, P.C.
875 Century Park East, Suite 1600
os Angeles          CA   90067-2517

CONFORMED COPY
ORIGINAL FILED
FILE STAMP Superior Court of California
County of Los Angeles

APR -9 2014

Sherri R. Carter, Executive Officer/Clerk
By Graciela S. Hironaka, Deputy

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | CASE NUMBER |
|---|---|
| LMONT AMBULATORY SURGERY CENTER LLC ET Plaintiff(s), VS. | BC540056 |
| NITEDHEALTH G Defendant(s). | **NOTICE OF CASE MANAGEMENT CONFERENCE** |

**O THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:**

ou are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ torneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

our Case Management Conference has been scheduled for July 11, 2014 at 8:30 am in Dept. 47 : 111 North Hill Street, Los Angeles, California 90012.

**OTICE TO DEFENDANT:**      **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

ursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # M-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement ay be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the ase and be fully prepared to participate effectively in the Case Management Conference.

t the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order stablishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the ase; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay eduction Act (Gov. Code, section 68600 et seq.)

otice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case lanagement Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 77.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 212 et seq.

ate: April 9, 2014

DEBRE KATZ WEINTRAUB
Judicial Officer

## CERTIFICATE OF SERVICE

the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, nd that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

 by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

} by personally giving the party notice upon filing the complaint.
ate:  April 9, 2014

Sherri R. Carter, Executive Officer/Clerk

by _____ , Deputy Clerk
G.S. HIRONAKA

ACIV 132 (Rev. 09/07)
ASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

1

## PROOF OF SERVICE

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3      At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1875 Century

4  Park East, Suite 1600, Los Angeles, CA 90067-2517.

5      On April 17, 2014, I served true copies of the following document(s) described as **NOTICE OF CASE MANAGEMENT CONFERENCE** on the interested parties in this action

6  as follows:

7      Bryan S. Westerfeld                   Attorneys for Defendants,
    Walraven & Westerfeld, LLP           Unitedhealth Group, Inc.;

8      101 Enterprise, Suite 250             United Healthcare Services, Inc.;
    Aliso Viejo, California 92656          Unitedhealthcare Insurance Company;

9      Telephone: (949) 215-1997           and Optuminsight, Inc.
    Facsimile: (949( 215-1999

10

11      **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hooper, Lundy &

12  Bookman, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course

13  of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed

14  in the mail at Los Angeles, California.

15      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16

17      Executed on April 17, 2014, at Los Angeles, California.

18

19                                  Marilyn Briggs

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159440.1