UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITEDHEALTH GROUP, INC.; et al.,<br><br>Defendants. | Case No. 2:14-CV-03053-MWF (VBKx)<br><br>**[PROPOSED] ORDER REGARDING ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY PLAN**<br><br>Judge: Hon. Michael W. Fitzgerald<br><br>Magistrate Judge: Hon. Victor B. Kenton<br><br>Trial Date:         None Set<br>Complaint Filed:   March 21, 2014 |
| UNITED HEALTHCARE SERVICES, INC.; et al.,<br><br>Counterclaim Plaintiffs<br><br>v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company; et al.,<br><br>Counterclaim Defendants. | |

The above-referenced matter came before the undersigned United States Magistrate Judge upon the Parties' efforts to develop a protocol for the preservation and production of electronically stored information ("ESI"). The Court, upon the stipulation submitted by the Parties, now makes and enters the following Order.

IT IS HEREBY ORDERED that, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, all Parties in the above-referenced matter must comply with the following obligations in this litigation:

## I.  GENERAL PROVISIONS

A.   Absent special circumstances, the specifications set forth below shall govern the production of all documents, testimony, exhibits, ESI, and any other materials and information (including, to avoid any ambiguity, any copies, summaries, or derivations thereof) produced by the Parties during discovery in the Action.

B.   Nothing in this Protocol – nor the production of any documents pursuant to this Protocol – is intended to waive any Party's rights with respect to any attorney-client, work product or other applicable privilege, all of which are preserved.

C.   All documents produced hereunder shall be governed by the terms of the Protective Order entered in this action and any other applicable orders entered by the Court in this action.

## II.  PRODUCTION OF HARD COPY DOCUMENTS

A.   <u>TIFFs</u>.  Documents should be produced in the form of single-page, black and white, Group IV TIFFs format image files.  Each TIFF image should be named as its corresponding Bates number.  Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.

B.   <u>OCR Text Files</u>.  Optical Character Recognition ("OCR") text files shall be provided as a single text tile for each document, not one text file per page.  Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt.  OCR text tiles should be provided in a self-identified "Text" directory.  To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.

C. <u>Database Load Files/Cross-Reference Files</u>. Documents should be provided with Concordance-compatible image and data load tiles (i.e., .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (i.e., .OPT and .DAT files) should be provided in a self-identified "Data" folder.

D. <u>Coding Fields</u>. Absent special circumstances, documents should be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; and (5) Custodian. Custodians should be identified using the convention "last name_first name." Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions.

E. <u>Bates Numbering</u>. Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (i.e., padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

## III. PRODUCTION OF ESI

A. <u>TIFFs</u>. Documents should be produced in the form of single-page, black and white, Group IV TIFFs format image files. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.

B. <u>Metadata Fields and Processing</u>. Absent special circumstances, each of the metadata and coding fields set forth in Appendix 1 that can be extracted from a

document shall be produced for that document, to the extent already in existence and reasonably accessible. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any Party to extract, capture, collect or produce such data. The Parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Custodian; and (6) NativeLink fields (which may be populated by the party or the party's vendor).

C. <u>Extracted Text Files</u>. For each document, an extracted text file, created using the extracted full text, should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

D. <u>Database Load Files/Cross-Reference Files</u>. Documents should be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. Concordance-compatible image and data load files (i.e., .OPT and .DAT files) should be provided in a self-identified "Data" folder.

E. <u>Native Files</u>. Absent special circumstances, MS Excel files, .CSV files, MS Access, Quickbooks and other similar spreadsheet files shall be produced in native format ("Native Files"). Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A

"NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in Appendix 1. For documents that contain redacted text, the Parties may either apply the redactions directly on the Native File itself or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image. Each producing party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "###########.") Under these circumstances, all single-page TIFF images shall include row and column headings.

For documents whose native format is PowerPoint, the original native files and single page black and white Group IV TIFF format image files shall be produced.

F. <u>Structured Data</u>. To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may comply with the discovery request by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will, to the extent possible, show the column headers for each field of data included. The Parties shall meet and confer as needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

G. <u>Requests for Other Native Files</u>. Other than as specifically set forth above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format.

Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in Appendix 1. No request may be made for the production of structured data that is the subject of Section H (above) in native format.

      H.    <u>Color</u>. Documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color by providing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests, but need not make such production until the Parties reach agreement regarding the additional costs associated with the production of documents in color.

Documents produced in color shall be produced as JPEG images with Exif compression, 200 dpi or higher and 24-bit color depth. Each color document image file shall be named with the unique Bates number of the first page of the document in question followed by the file extension "JPG."

      I.    <u>De-duplication</u>. The Parties shall make reasonable efforts to deduplicate ESI. ESI may be deduplicated vertically within each custodian or horizontally across custodians. ESI will be considered duplicative if it has the same content excluding metadata. For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians, even if different instances of the file reflect different dates created. Documents with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents identified by such technology are 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

      J.    <u>Document Families</u>. The terms "parent," "child," or "family" have the meaning conventionally applied in the context of e-discovery. If a parent document is

responsive to a discovery request, then all family members of that document will also be deemed responsive and will be produced unless otherwise privileged or exempt from production. To the extent any document in such a family is excluded from production, a slip-sheet shall be included in lieu of the document noting the reason for excluding the document from the production. If a child document is responsive but the parent document is not, the child document will be produced but the party is not obligated to produce the parent document or other child documents in the same family unless those documents are also responsive. Parent and child relationships shall be preserved in that child documents will be sequentially Bates numbered following the respective parent documents.

      K.    <u>Email Threads</u>. Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced. Where an email thread is withheld from production under a claim of privilege, the Party's privilege log should reflect only the most inclusive message.

      L.    <u>Preservation of Potentially Relevant Information</u>. Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

## IV. ENCRYPTION

To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the

producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

## V. PROCESSING OF THIRD-PARTY DOCUMENTS

A. A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-party. To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other Parties within seven days of the non-party's production to the Issuing Party.

C. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

## VI. MISCELLANEOUS PROVISIONS

A. Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents. All productions are subject to the Protective Order entered by the Court in this Action.

B. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of any Discovery Materials that would be protected from disclosure pursuant to the attorney-client privilege; the work product doctrine; state or federal law, rule, or regulation; confidentiality requirements; agreement of the Parties; or any other applicable privilege or doctrine will not constitute a waiver of the applicable privilege, agreement, or doctrine. If any such Discovery Materials are inadvertently produced, the Parties shall follow the procedure set forth in the Stipulated Protective Order entered in this matter.

C. This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admission into evidence of ESI. The Parties are not waiving the right to seek any discovery and are not waiving any objections to any discovery requests.

D. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, a reasonable time before the date of production, such party shall inform the requesting party in writing as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred with other affected Parties. Each Party has identified an e-discovery liaison who is and will be knowledgeable about and responsible for discussing matters related to its ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the e-discovery liaisons, as needed, to meet and confer about matters involving ESI and to help resolve disputes without court intervention. Any attorney representing a Party in the case, including the e-discovery liaison, may participate in meet-and-confer conferences, and it is not required that the e-discovery liaison be present for the Parties to meet and confer about matters involving ESI.

E. The Parties will endeavor in good faith to assure reasonableness and proportionality in ESI-related discovery, and, in so doing, will consider the factors set forth in Federal Rule of Civil Procedure 26(b)(2)(C).

F. Nothing in this Agreement shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents. The Parties shall meet and confer regarding cost sharing or

1  cost shifting for the collection, review, and production of documents from sources that
2  the Party identifies as not reasonably accessible because of undue burden or cost.
3      G.   Nothing in this Agreement shall affect, in any way, a producing party's
4  ability to determine its best course of action for identifying documents, including but
5  not limited to, the use of search terms, clustering, and predictive analysis.

7  IT IS SO ORDERED.

10 Dated: _____          _____
11                                         Victor B. Kenton
                                           United States Magistrate Judge

# Appendix 1
## Fields and Metadata To Be Produced

| Field | Data Type | Paper | Loose Native Files & Attachments | Email |
|---|---|---|---|---|
| BegDoc | TEXT | Start Bates | Start Bates | Start Bates |
| EndDoc | TEXT | End Bates | End Bates | End Bates |
| BegAttach | TEXT | Starting bates number of document family | Starting bates number of document family | Starting bates number of document family |
| EndAttach | TEXT | Ending bates number of document family | Ending bates number of document family | Ending bates number of document family |
| Custodian | TEXT – separate entries with "," | All custodians of the document | All custodians of the document even if de-duplicated prior to production | All custodians of the document even if de-duplicated prior to production |
| Folder | Text | | File path where original file was collected from | Folder where email was collected from. Includes folder locations within email container files such as PST and NSF |
| From | Text | | | Sender of message |
| To | TEXT – separate entries with "," | | | Recipients of message |
| CC | TEXT – separat | | | Copied recipients |

| Field | Type | | | Description |
|---|---|---|---|---|
| | e entries with ";" | | | |
| BCC | TEXT – separate entries with ";" | | | Blind copied recipients |
| Subject | TEXT or MEMO if over 255 characters | | | Subject of message |
| DateSent | Date (dd-mmm-yyyy) – eg 03-Mar-2012 | | | Date message sent |
| Time Sent | Text (hh:mm:ss) | | | Time message sent |
| Date Received | Date (dd-mmm-yyyy) – eg 03-Mar-2012 | | | Date message received |
| Time Recv | TEXT (hh:mm:ss) | | | Time message received |
| File Name | Text (hh:mm:ss) | | Name of original file | Name of original file |

| File Extension | Text | | Extension of original file | Extension of original file |
|---|---|---|---|---|
| DateCreated | Date (dd-mmm-yyyy) – eg 03-Mar-2012 | | Date file was created | |
| DateModified | Date (dd-mmm-yyyy) – eg 03-Mar-2012 | | Date file was last modified | |
| Title | TEXT or MEMO if over 255 characters | | Title from document metadata | |
| Author | Text | | Document author from metadata | |
| Company | Text | | Document company or organization from metadata | |
| Hash | Text | | MD5 or SHA-1 Hash Value | MD5 or SHA-1 Hash Value |
| Text Files | Txt files should be named the same as the beg doc and deliver | Txt files should be named the same as the beg doc and delivered in the same folder as the images (eg, ABC0000001.txt) | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  | ed in the same folder as the images (eg, ABC0000001.txt) |  |  |  |
| Native Files | Native files should be named the same as the beg doc and delivered in the same folder as the images (eg, ABC0000001.xls) |  |  |  |