**BRYAN WESTERFELD (S.B. # 218253)**
bwesterfeld@calemployerlaw.com
**NICOLE E. WURSHER (S.B # 245879)**
nwurscher@calemployerlaw.com
**WALRAVEN & WESTERFELD LLP**
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone: (949) 215-1997
Facsimile: (949) 215-1999

**R.J. ZAYED (MN ID #0309849)**
zayed.rj@dorsey.com
**STEPHEN P. LUCKE (MN ID #151210)**
lucke.steve@dorsey.com
**TIMOTHY BRANSON (MN ID #174713)**
branson.tim@dorsey.com
**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Attorneys for Defendant UnitedHealth Group, Inc.;
and Defendants/Counterclaim Plaintiffs
United Healthcare Services, Inc., UnitedHealthcare
Insurance Company; OptumInsight, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company; BAKERSFIELD SURGERY INSTITUTE, LLC, a California limited liability company; INDEPENDENT MEDICAL SERVICES, INC., a California corporation; MODERN INSTITUTE OF PLASTIC SURGERY & ANTIAGING, INC., a California corporation; NEW LIFE SURGERY CENTER, LLC, a California limited liability company, dba BEVERLY HILLS SURGERY CENTER, LLC; ORANGE GROVE SURGERY CENTER, LLC, a California limited liability company; SAN DIEGO AMBULATORY SURGERY CENTER, LLC, a California limited liability company; SKIN CANCER & | CASE NO. 2:14-CV-03053-DMG-VBK<br><br>**DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY**<br><br>(Superior Court of the State of California, County of Los Angeles, Central District Case Number: BC540056) |

| | |
|---|---|
| 1 | RECONSTRUCTIVE SURGERY SPECIALISTS OF BEVERLY HILLS, INC., a California corporation; VALENCIA AMBULATORY SURGERY CENTER, LLC, a California limited liability company; WEST HILLS SURGERY CENTER, LLC, a California limited liability company, | **Hearing**

Date: Monday, February 2, 2015
Time: 10:00 a.m.
Courtroom: 1600, 16th Floor, 312 N. Spring Street

Discovery cutoff: None set
Pretrial Conference Date: None set
Trial Date: None set |

1  RECONSTRUCTIVE SURGERY
2  SPECIALISTS OF BEVERLY HILLS,
   INC., a California corporation;
3  VALENCIA AMBULATORY
   SURGERY CENTER, LLC, a California
4  limited liability company; WEST HILLS
   SURGERY CENTER, LLC, a California
5  limited liability company,

                        Plaintiffs,
6
7  v.

8  UNITEDHEALTH GROUP, INC.;
   UNITED HEALTHCARE SERVICES,
9  INC., UNITEDHEALTHCARE
   INSURANCE COMPANY;
10 OPTUMINSIGHT, INC., and DOES 1
   through 20,

11                      Defendants.
12

13 UNITED HEALTHCARE SERVICES,
   INC.; UNITEDHEALTHCARE
14 INSURANCE COMPANY;
   OPTUMINSIGHT, INC.,
15
                Counterclaim Plaintiffs
16
17 v.

18 ALMONT AMBULATORY SURGERY
   CENTER, LLC, , a California limited
19 liability company; BAKERSFIELD
   SURGERY INSTITUTE, LLC, a
20 California limited liability company;
   BEVERLY HILLS SURGERY
21 CENTER, LLC; INDEPENDENT
   MEDICAL SERVICES, INC., a
22 California corporation; MODERN
   INSTITUTE OF PLASTIC SURGERY
23 & ANTIAGING, INC., a California
   corporation; NEW LIFE SURGERY
24 CENTER, LLC, a California limited
   liability company, dba BEVERLY
25 HILLS SURGERY CENTER, LLC;
   ORANGE GROVE SURGERY
26 CENTER, LLC, a California limited
   liability company; SAN DIEGO
27 AMBULATORY SURGERY CENTER,
   LLC, a California limited liability

28

**Hearing**

Date: Monday, February 2, 2015
Time: 10:00 a.m.
Courtroom: 1600, 16th Floor, 312 N. Spring Street

Discovery cutoff: None set
Pretrial Conference Date: None set
Trial Date: None set

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

1  company; SKIN CANCER &
   RECONSTRUCTIVE SURGERY
2  SPECIALISTS OF BEVERLY HILLS,
   INC., a California corporation;
3  VALENCIA AMBULATORY
   SURGERY CENTER, LLC, a California
4  limited liability company; WEST HILLS
   SURGERY CENTER, LLC, a California
5  limited liability company, KAMBIZ
   BENJAMIN OMIDI (A/K/A JULIAN
6  OMIDI, COMBIZ OMIDI, KAMBIZ
   OMIDI, COMBIZ JULIAN OMIDI,
7  KAMBIZ BENIAMIA OMIDI, JULIAN
   C. OMIDI); MICHAEL OMIDI, M.D.;
8  ALMONT AMBULATORY SURGERY
   CENTER, A MEDICAL
9  CORPORATION; BAKERSFIELD
   SURGERY INSTITUTE, INC.; CIRO
10 SURGERY CENTER, LLC; EAST BAY
   AMBULATORY SURGERY CENTER,
11 LLC; SKIN CANCER &
   RECONSTRUCTIVE SURGERY
12 SPECIALISTS OF WEST HILLS, INC.;
   VALLEY SURGICAL CENTER, LLC;
13 TOP SURGEONS, INC.; TOP
   SURGEONS, LLC; TOP SURGEONS
14 LLC (NEVADA); WOODLAKE
   AMBULATORY; PALMDALE
15 AMBULATORY SURGERY CENTER,
   A MEDICAL CORPORATION; 1 800
16 GET THIN, LLC; SURGERY CENTER
   MANAGEMENT; DOES 1-200,
17
              Counterclaim Defendants.
18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

RELEVANT PROCEDURAL BACKGROUND ...................................................... 2

I.  Claims Against the Omidis and Their Entities ............................................ 2

II.  United Affirmative Defenses Involving the Omidis ................................... 5

III.  Status of Discovery and Omidi "Alter Ego" Objections .............................. 5

ARGUMENT ........................................................................................................... 8

I.  Bifurcation and Stays of Discovery are the Exception, not the Rule ............. 8

II.  Neither Efficiency Nor the Fifth Amendment Justify The Motion to
     Bifurcate and Stay Discovery .................................................................... 10

     A.  Bifurcation would not remove the Omidis' involvement in the
          case ..................................................................................................... 10

     B.  There is no efficiency gain in bifurcating and staying discovery
          on the conspiracy and alter-ego claims ............................................. 12

     C.  The Omidis' potential criminal liability and Fifth Amendment
          rights do not support bifurcation or a stay ........................................ 14

III.  The Motion to Stay Discovery Should be Denied ...................................... 21

CONCLUSION ...................................................................................................... 23

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baltimore Social Servs. v. Bouknight*,
  493 U.S. 549 (1990) ...................................................................... 21

*Baxter v. Palmigiano*,
  425 U.S. 308 (1976) ...................................................................... 16

*Bellis v. United States*,
  417 U.S. 85 (1974) ........................................................................ 21

*Doe v. United States*,
  487 U.S. 201 (1988) ...................................................................... 21

*eBay, Inc. v. Digital Point Solutions, Inc.*,
  2010 WL 702463 (N.D. Cal. Feb. 25, 2010) ........................... 15, 17, 18

*Fisher v. United States*,
  425 U.S. 391 (1976) ...................................................................... 21

*Glover v. Standard Fed'l Bank*,
  2001 WL 34635708 (D. Minn. Aug. 9, 2001) ............................... 9

*In re Homestore.com, Inc. Securities Litig.*,
  347 F. Supp. 2d 814 (C.D. Cal. 2004) ...................................... 15, 17

*I-Systems, Inc. v. Softwares, Inc.*,
  2004 WL 742082 (D. Minn. Mar. 29, 2004) .................................. 8

*Int'l Bus. Machines, Corp. v. Brown*,
  857 F. Supp. 1384 (C.D. Cal. 1994) ........................................... 20

*Interstate Restoration Grp., Inc. v. Al Copeland Inv., et al.*,
  2009 WL 1870787 (E.D. La. June 25, 2009) ................................. 9

*Keating v. Office of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) ................................................. *passim*

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

ii

*Maxey v. State Farm Fire & Cas. Co.*,
   569 F. Supp. 2d 720 (S.D. Ohio 2008) .................................................. 12

*Mopex, Inc. v. Chicago Stock Exch. Inc.*,
   2003 WL 715652 (N.D. Ill. Feb. 27, 2003) ........................................ 12

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London and
   Arch Specialty Ins. Co.*,
   2010 WL 3199355 (S.D. Tex. Aug. 11, 2010) .................................... 18

*S.E.C. v. Jerry T. O'Brien, Inc.*,
   467 U.S. 735 (1984) ........................................................................... 21

*Tidewater Marine, Inc. v. Sanco Int'l, Inc.*,
   1998 WL 131738 (E.D. La. Mar. 20, 1998) ........................................ 9

*United States v. ERGS, Inc.*,
   2006 WL 778622 (D. Nev. Mar. 27, 2006) ........................................ 9

*United States v. Lucien*,
   347 F.3d 45 (2d Cir. 2003) ................................................................ 19

*Wehling v. Columbia Broadcast System*,
   608. F.2d 1084 (5th Cir. 1979) ................................................... 15, 18

*Wyatt v. Union Mortg. Co.*,
   598 P.2d 45 (Cal. 1979) ..................................................................... 13

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

iii

# **INTRODUCTION**

The Court should deny the motion by Julian and Michael Omidi (the "Omidis"), which seeks to bifurcate the claims against them and to stay all discovery relating to their individual roles in this case.[1]

As an initial matter, it should be remembered that it was effectively the Omidis (using their Provider entities) who started this lawsuit. Although the Omidis will no doubt argue that it was the Providers and not they who sued United, the pleadings make clear that the "Omidis are the Providers" and the "Providers are the Omidis." To try to separate one from the other is to tear a seamless web. It would be perversely unfair and profoundly prejudicial to permit them to proceed with their own claims while disabling the counterclaims that United filed against them. But that would be the impact of granting the motion to stay or bifurcate.

Granting the Omidis' motion will also inject significant inefficiency into this case because the Omidis are implicated not only as alter-egos, but also as direct actors and co-conspirators in a scheme to defraud United and the health plans it administers. Now that they are being called to account for their fraudulent scheme, it is wholly impractical to "bifurcate" the Omidis themselves from the expansive, byzantine and hard-to-follow trail of corporations, bank accounts and other tools of deception that were "designed to obfuscate the true nature of the alleged enterprise." (Dkt. #92 (Order Denying Mot. to Quash 2)).

In any event, besides being baseless, the Omidis' motion is pointless. Nearly all of the discovery they seek to avoid as relating to the alter-ego and conspiracy issues in the counterclaim is *also* relevant to (1) the Omidis' direct liability; (2) the Providers' direct liability; and (3) the affirmative defenses that United asserted in

---

[1]   Both bifurcation and a stay of discovery raise similar issues, since they both attempt to block the litigation against the Omidis. The two forms of relief will thus be discussed together, with additional consideration given to some issues raised by the discovery stay (*See* section IV, *infra*).

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

1

response to the original claims in the Complaint.  This information remains

legitimately discoverable for reasons far beyond the asserted justification for the

stay motion.  Nor should the Omidis be permitted, as they request, to stay discovery

and other proceedings in the related action (No. 14-2039) involving hundreds of

employer/plan defendants who are not even party to this motion.

There is similarly no basis for the Omidis to delay, stay or disrupt this

litigation on Fifth Amendment grounds.  Motions to stay are disfavored; as a rule,

civil cases proceed even when parallel criminal proceedings are pending.  That is

particularly true where, as here, the party seeking a stay has not yet been indicted.

The Omidis seek a wholly indefinite stay, until the final resolution of any and all

criminal investigations.  Moreover, to the extent that the Omidis' motion seeks to

even preclude *third-party* discovery, it is totally inappropriate because the Fifth

Amendment protects only testimonial *self*-incrimination.

This motion is a gambit to frustrate the orderly prosecution of this suit, which

the Omidis themselves instigated even though they already knew that they were

subjects of a grand-jury investigation.  The gamesmanship behind the motion is

illustrated by the fact that the Omidis failed to object on Fifth Amendment grounds

to the very discovery that they now ask the Court to stay because of professed Fifth

Amendment concerns.  The Fifth Amendment provides a specific and limited form

of protection to criminal defendants; it is not intended to give the Omidis strategic

and tactical *advantages* in defending against civil liability, while the Providers

(controlled by the Omidis) pursue claims and explore defenses against United.

## RELEVANT PROCEDURAL BACKGROUND

### I.    Claims Against the Omidis and Their Entities.

United's First Amended Counterclaim ("FACC") currently has six counts:[2]

Count 1 – fraud; Count 2 – UCL violations; Count 3 – Conspiracy to commit fraud;

---

[2]    The precise allegations of the counterclaim may change if the Court orders

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

2

1  Count 4 – intentional interference with contractual relations; Count 5 – restitution

2  under ERISA; and Count 6 – declaratory and injunctive relief under ERISA.  Each

3  cause of action is pleaded against all counterclaim defendants, including the Omidis

4  personally.

5         The Omidis are alleged to be at the center of what Magistrate Judge Kenton

6  described as a "rather massive medical and financial fraud" that, among other

7  things, involved the improper waiver of member responsibility amounts and the

8  submission of false or misleading claims.  (Dkt. #92 (Order Denying Mot. to Quash

9  2.))

10         Through their aggressive 1-800-Get-Thin advertising campaign and the

11  waiver of member responsibility amounts, the Omidis lured more than 1600 United

12  Members into undergoing an assembly line of medical services, in violation of not

13  only the terms of the United Plans but also common law and statutory proscriptions.

14  (*See, e.g.*, FACC ¶¶ 1, 3, 119, Appendix I.)  In addition to illegally waiving such

15  "co-pay" amounts, the Omidis directed clinic staff to pressure patients to undergo

16  unnecessary services simply to increase the amount they could charge United.

17  These services cost United and its Plans millions of dollars.  (*Id.* at ¶¶ 1, 5, 17.)

18         The Omidis also dictated the physicians' medical decisions and treatment

19  recommendations.  (*See, e.g., id.* at  ¶¶ 107-08.)  One physician has testified that the

20  Omidis personally ordered him to sign "pre-printed" form letters seeking insurer

21  approval for surgery, even though the physician had not examined the patients.

22  (*Id.*)  The Omidis personally hired physicians and agreed to pay them illegal

23  referral bonuses, and operated their clinics in violation of California's corporate

24  practice of medicine standards.  (*Id.* at ¶¶ 108-10.)

25

26  United to amend with respect to certain theories.  However, what would *not*
27  *change* in a subsequent version of the counterclaim is the centrality of the
   Omidis in the wrongdoing that supports the causes of action.

28
DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

3

Indeed, the Omidis were personally involved in every aspect of the scheme and artifice to defraud United:  they submitted false claims to United for services they supposedly rendered, called United to obtain prior authorization for Lap Band surgery, were the named payee on checks from United, and personally endorsed checks that were deposited into the Counterclaim Defendants' shared bank accounts.  (*See, e.g.*, *id.* at ¶¶ 97, 232, Ex. C, Appendix I.)  The Omidis carried out this scheme, which has spanned nearly nine years, by working with a network of co-conspirators to establish a web of shell companies that was specifically designed to deceive United by hiding the identity of the provider submitting the claim, and thus, the fraud.  (*See, e.g.*, *id.* at ¶¶ 71-78, 90, Ex. A.)

In summary, United alleges that the Omidis personally devised, orchestrated, and participated in a scheme and artifice to defraud United by (i) luring patients to their Providers through the 1-800-Get-Thin campaign (*Id.* ¶ 1); (ii) waiving member responsibility amounts, including copayments, to induce patients to seek treatment without concern for costs or medical necessity (*id.* ¶¶ 3, 119); (iii) organizing and controlling literally hundreds of corporate entities to pursue and conceal the scheme (*id.* ¶¶ 71-78, Ex. A); (iv) personally treating United members (*id.* Appendix I); (v) directing inappropriate medical decision-making (*id.* ¶¶ 107-08); (vi) calling United to seek pre-authorization for procedures (*id.* ¶ 232; and (vii) endorsing United checks (*id.* ¶ 97).  As such, the Omidis may be held personally liable for their own actions.

In addition, United alleges that the Omidis are liable as co-conspirators because they were part of—indeed, central to—a coordinated scheme by a collection of individuals who agreed to defraud United.  (*See, e.g.*, *id.* ¶¶ 76-78).  Finally, the Omidis are also alleged to be personally liable as the "alter egos" of the corporate counterclaim defendants and other shell entities they engineered to create

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

4

1  a shifting corporate structure as a way to conceal their scheme and artifice to

2  defraud United.  (*See, e.g.*, ¶¶ 72, 115, 116, 126).

3  More broadly, the fraud and other claims *against the Provider defendants*

4  also implicate the Omidis on a factual level.  The Omidis established, owned and/or

5  control each of the Provider entities.  (*See, e.g.*, *id.* ¶¶ 90, 105, 107, Ex. A).  The

6  fraudulent activities of the Providers were directed by the Omidis (*see, e.g.*, *id.* ¶

7  107 (Julian Omidi ordered execution of over 600 blank insurer authorization

8  forms), and in part committed directly by the Omidis.  Discovering and proving the

9  case against the Provider defendants will necessarily involve discovering and

10  proving the role of the Omidis in the fraud and other wrongful conduct.

11  **II.  United Affirmative Defenses Involving the Omidis.**

12  In addition to the causes of action pled against the Omidis, they are factually

13  implicated in virtually all aspects of the case, including the Provider claims against

14  United.  For example, United's Seventeenth Affirmative Defense raises the same

15  specific co-payment and co-insurance fraud that United alleged as a claim in the

16  counterclaim.  United similarly alleges the affirmative defenses of the Providers'

17  unclean hands (Eighth Affirmative Defense), that they caused their own losses

18  (Fourteenth Affirmative Defense), set-off and recoupment against the Providers'

19  claims (Eighteenth Affirmative Defense), and that United told the Providers that

20  payment was contingent on the plan terms (Nineteenth Affirmative Defense).  Each

21  of these implicates the Omidis' fraudulent scheme and other wrongdoing.  United is

22  clearly permitted to explore the viability of its defenses through discovery.

23  **III.  Status of Discovery and Omidi "Alter Ego" Objections.**

24  Consistent with the parties' then-agreement, in their 26(f) Report, that

25  discovery should not be bifurcated, United served its first set of discovery requests

26  on the Providers and Omidis in October 2014.  These requests sought information

27  necessary for United's defenses to the Providers' affirmative claims, as well as

28

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

5

information relevant to United's counterclaims. The requests were designed, in part, to identify the basis for the Providers' claims, including whether the Providers are entitled to the payments they seek, or whether they have voided coverage through, among other things, co-pay waivers. Another purpose was to better understand the scheme and artifice to defraud United that forms a basis for United's affirmative defenses and counterclaims.

The Omidis' response was to stonewall United. A few examples illustrate how the Omidis and the Providers have, as part of a unified strategy, flatly objected to responding to almost all of this discovery—even the most standard litigation documents—as relating to the "alter ego" allegations against the Omidis. (*See* Declaration of Kirsten E. Schubert ("Schubert Decl."), Exs. 1, 2, 3, 4, 5)) For example, both the Providers and the Omidis refused to produce organizational charts (Exs. 1 & 4 at RFP 4), contracts, payroll information, or records identifying employees who participated marketing, treatment and billing of the Lap-Band procedures at issue (*id.* RFP 5, 7); information related to the creation of the corporate entities that have submitted bills to United or have otherwise facilitated the Omidis' scheme, agreements between Counterclaim Defendants, and other corporate documents (*id.* RFP 6, 11; Exs. 2 & 5 at Interr. 9); tax returns (Exs. 1 & 4 at RFP 12); and bank account information[3] (*id.* RFP 16; Exs. 2 & 5 at Interr. 4). The Omidis refused to even admit whether they signed certain corporate documents and checks cited in the FACC (Ex. 3 at RFA 1-4), or even to identify the *mailing*

---

[3] Similarly, United sought in its third-party subpoena to Wells Fargo to track the "proceeds of this alleged fraudulent operation into various common bank accounts" that the Omidis controlled. (Dkt. #92 (Order Denying Mot. to Quash 3.)) The Omidis tried unsuccessfully to quash that subpoena, and are now asking this Court to reverse the decision made by Magistrate Judge Kenton that the Wells Fargo subpoena seeks relevant, discoverable information. That dispute is described in more detail in those motion papers.

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

6

*addresses* they have used over the course of the conspiracy (Ex. 2 at Interr. 5). Further, to the extent the Omidis did not object on "alter ego" grounds, they objected on relevance grounds or stated that they did not have possession, custody, or control of the requested documents and information.  They also incorporated the objections of the Providers—meaning the Omidis provided no substantive responses to United's discovery.  (*See, e.g.*, Schubert Decl., Exs. 1, 2.)  Notably, however, the Omidis did not object to a single request on Fifth Amendment grounds.  (*See id.*)

The Omidis' ongoing refusal to provide responsive information is a discovery dispute that may well require judicial intervention, but for present purposes their broad definition of what is relevant to alter ego significantly undermines their position that "United is free to pursue discovery against the Providers . . . and obtain adjudication of the surviving underlying counts against the[m]."  (Omidi Mot. at 12.)  The Omidis seek to have it both ways: characterizing even the most basic discovery request as relating to alter ego while at the same time contending in their motion that alter ego issues (and, indeed, the Omidis themselves) can be neatly and harmlessly excised from this case.

In fact, what the Omidis characterize as "alter-ego" discovery is relevant to numerous core issues of the case, including who was acting as a conspirator, what they were told by the Omidis, and how they were compensated; whether the Omidis signed fraudulent documents; and what other direct actions the Omidis took to supervise, orchestrate, and directly perpetrate the scheme to defraud United.[4]

---

[4]  Magistrate Judge Kenton correctly recognized the pending discovery as relevant to a wide array of legal issues in the case (not, as the Omidis contend, only to alter ego).  (Dkt. #92 (Order Denying Mot. to Quash 2.))  United anticipates that this Court will reach the same conclusion when ruling on the Omidis' appeal of Magistrate Judge Kenton's ruling.

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY CASE NO. 2:14-CV-03053-DMG-VBK

7

1

## ARGUMENT

2  **I.      Bifurcation and Stays of Discovery are the Exception, not the Rule**.

3              With regard to both bifurcation and a stay of discovery, the Omidis are

4  seeking exceptional relief, not the normal course of proceedings.  The Ninth Circuit

5  recognizes, for example, that the request to stay civil proceedings against a

6  potential criminal defendant should normally be denied.  *See Keating v. Office of*

7  *Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995).  "The Constitution does not

8  ordinarily require a stay of civil proceedings pending the outcome of criminal

9  proceedings."  *Id*.

10             With regard to the Omidis' claims that a stay will enhance efficiency and

11  judicial economy, the weight of authority recognizes that it is normally far more

12  efficient to proceed on all claims at once than to bifurcate or stay alter ego claims.

13  For example, in *I-Systems, Inc. v. Softwares, Inc.*, several defendants facing fraud,

14  deceptive trade practices, and conspiracy claims sought to bifurcate the proceedings

15  into two parts: "the first involving all of plaintiff's claims except the alter ego

16  claim, and the second involving the alter ego claim."  2004 WL 742082, at *18 (D.

17  Minn. Mar. 29, 2004).  The defendants asserted there—as the Omidis do here—that

18  "if plaintiffs do not prevail on their substantive claims at trial, the alter ego issues

19  would become moot."  *Id*.  The district court disagreed, denying the request to

20  bifurcate and explaining:

21                   Initially, the Court does not agree that bifurcation would further
22                   judicial economy and convenience. . . . [A]ll defendants are controlled
                    and managed by the same small group of people.  These people will
23                   undoubtedly be called as witnesses regarding the substantive claims
                    and, because of their involvement in all companies, the alter ego claim.
24                   Maintaining all of the claims in one action allows these people to
                    testify once rather than twice. . . . [H]earing from each person once
25                   seems more efficient and practical than possibly hearing from each
                    witness twice in two separate proceedings.
26

27  *Id*.

28

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

8

1    This reasoning is equally applicable here.  Indeed, the cases denying motions
2   to bifurcate alter-ego claims – due to prejudice to the delayed party and no
3   compensating efficiencies – are legion.  *See, e.g.*, *Interstate Restoration Grp., Inc.*
4   *v. Al Copeland Inv., et al.*, 2009 WL 1870787, at *4-*5 (E.D. La. June 25, 2009)
5   (**denying** motion to bifurcate alter-ego liability from question of underlying
6   liability; observing that "bifurcation of the claims would most likely prejudice the
7   nonmoving party, Interstate, by unnecessarily delaying the final resolution.
8   Moreover, further delay increases the chance that fading memories and lost
9   evidence will prejudice Interstate. The Defendants' argument that litigation of the
10  alter ego claim may not be necessary does not outweigh the harm that Interstate
11  would suffer if bifurcation were ordered."); *United States v. ERGS, Inc.*, 2006 WL
12  778622 (D. Nev. Mar. 27, 2006) (**denying** motion to bifurcate alter-ego liability
13  from question of underlying liability; observing that "[b]ifurcation in this instance
14  will result in two trials that will involve calling a significant number of the same
15  witnesses.  Bifurcation would likely increase the inconvenience to the court and
16  parties"); *Glover v. Standard Fed'l Bank*, 2001 WL 34635708, at *1 (D. Minn.
17  Aug. 9, 2001) (**denying** motion to bifurcate alter-ego liability from question of
18  underlying liability; observing that alter-ego issues can provide circumstantial
19  context and motive evidence); *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 1998 WL
20  131738, at *6 (E.D. La. Mar. 20, 1998) (**denying** motion to bifurcate alter-ego
21  liability; explaining that "[t]he Court believes that the plaintiffs could be severely
22  prejudiced by the considerable delay that would result if the Court ordered separate
23  trials with separate discovery periods").
24      In seeking to bifurcate, the Omidis are asking for extraordinary relief, and
25  their motion does not begin to justify departing from the normal course of litigation.
26
27
28

## II.    Neither Efficiency Nor the Fifth Amendment Justify The Motion to Bifurcate and Stay Discovery

As previously explained, the Omidis are properly joined as Counterclaim Defendants to this action because they are the "hub" for over 200 corporate-entity "spokes."  The Omidis directed the 1-800-GET-THIN marketing campaign, the improper waiver of member responsibility amounts, the unlawful corporate practice of medicine, fraudulent billing, and the deposit of the proceeds of this scheme in hundreds of bank accounts that they controlled.  Although they now seek to detach themselves from the Providers and the other "spokes" through which the fraud was perpetrated, it was the Omidis who created the bewildering array of companies, accounts and other tools of deception "designed to obfuscate the true nature of the alleged enterprise."  (Dkt. #92 (Order Denying Mot. to Quash 2.))  The Omidis are inexorably intertwined with the claims and defenses for both the Complaint and the Counterclaim here, especially those pertaining to the loss of coverage due to the waiver of member responsibility amounts and other fraudulent activity.

Notwithstanding their centrality to the current dispute, the Omidis broadly offer two justifications for their attempt to bifurcate "the issue of Dr. Michael and Julian Omidi's personal liability, whether based on alter ego or conspiracy theories" and to stay discovery.  First, they suggest that it would be more efficient and economical, and second, that it would not require them to choose between complying with their discovery obligations and asserting the Fifth Amendment privilege against testimonial self-incrimination.  As explained below, neither alleged justification supports bifurcation or a stay of this case.

### A.    Bifurcation would not remove the Omidis' involvement in the case.

The premise of the Omidis' motion is that the Omidis themselves (and the claims for "alter ego" and "conspiracy") can be surgically excised from this case

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

10

1    without harming any other parties' litigation rights or impeding the progress of all

2    of United's other counterclaims.  This is simply not true.  The Omidis' are directly

3    and inextricably involved with all of United's counterclaims and, to a significant

4    extent, United's affirmative defenses to the Provider claims.

5           Although the Omidis myopically focus on the alter-ego allegations as the

6    basis for their involvement in this case, in fact they are named defendants in each

7    count of the FACC.  They are alleged to have directly participated in the fraudulent

8    submission of claims and other wrongful conduct.  (*See, e.g.*, FACC ¶¶ 178, 07-

9    109; 121.)  They are alleged to have controlled and directed the entire fraudulent

10   scheme that ultimately led to the submission of millions of dollars of fraudulent

11   claims to United.  This includes not only the *paid claims*, which are the subject of

12   the FACC, but also the *unpaid fraudulent claims*, which are the subject of the

13   Providers' claims in the case.  Finally, the Omidis are alleged to be co-conspirators,

14   acting with other individuals and numerous entities to mastermind the fraudulent

15   scheme.

16          In this context, the alter-ego allegations against the Omidis are merely one

17   basis for their personal liability.  Moreover, their involvement in the activities of the

18   Omidi network is a critical portion of the facts relevant to proving the liability of

19   other Counterclaim Defendants.

20          Whenever a corporate entity, such as a Provider, is alleged to be civilly liable

21   for fraud and other wrongdoing, the fraudulent conduct is committed by and at the

22   direction of human beings, in this case the Omidis.  Even if the alter-ego and

23   conspirator liability of the Omidis as individuals was bifurcated, the Omidis'

24   actions in the case would still have to be litigated as a way of proving the liability

25   of the Providers and other corporate participants in the Omidi Network.

26   Attempting to litigate the liability of the Provider defendants without addressing the

27   actions of the Omidis would be like trying to litigate an airline's fault for a plane

28

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

11

1   crash, without addressing the actions of the pilot, or the maintenance crew, or the

2   executives responsible for overseeing and directing the activities of the pilot and the

3   maintenance crew.  It cannot be done.

4        The proposed bifurcation regarding issues of the Omidis' liability would not

5   in any meaningful way reduce the need for discovery from and about the Omidis'

6   activities, nor would it reduce the relevance of those activities at a trial.

7   ## B.    There is no efficiency gain in bifurcating and staying discovery on

8   the conspiracy and alter-ego claims.

9        Given the impossibility of litigating this matter without addressing the

10  actions of the Omidis and other related facts, there is no efficiency gain whatsoever

11  in bifurcating the "issues" of the Omidi personal liability under alter-ego and

12  conspiracy theories.[5]  The Omidis' argument and the cases they cite focus almost

13  entirely on the question of alter-ego liability.  The substantial case law rejecting an

14  "efficiency" stay of alter-ego issues is addressed above.

15       With respect to conspiracy claims, the law rejecting bifurcation and stays is,

16  if anything, even more emphatic.  *See, e.g.*, *Maxey v. State Farm Fire & Cas. Co.*,

17  569 F. Supp. 2d 720, 722 (S.D. Ohio 2008) (**denying** motion to bifurcate bad-

18  faith/conspiracy claims from breach-of-contract claim; observing that "bifurcating

19  these claims and delaying discovery on this case until after the conclusion of the

20  breach of contract claims could result in unnecessary duplication, delay, and

21  expense and does not serve the interest of judicial economy"); *Mopex, Inc. v.*

22

23  [5]    An additional reason to deny the motion is the vagueness of the requested relief.
24  The "issue" of the Omidis' liability could be stretched to mean almost anything.
     As shown by current ongoing discovery disputes in the case, the Omidis have
25  been highly aggressive in expanding the concept of alter-ego discovery to thwart
     United's legitimate discovery on all issues.  A non-specific bifurcation order
26  such as requested in the motion would have a similar negative effect on case
27  management.

28
DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

12

1  *Chicago Stock Exch. Inc.*, 2003 WL 715652, at *9 (N.D. Ill. Feb. 27, 2003)

2  (**denying** motion to bifurcate tortious-interference and conspiracy claims; observing

3  that "the remaining conspiracy count, overlaps with Count V and involves all of the

4  defendants.  Defendants have not sufficiently raised any other arguments that would

5  warrant bifurcating these remaining claims in light of the increased delay, expense,

6  and inconvenience.").

7       It is particularly ironic that the Omidis seek a stay of the conspiracy claim,

8  given their vigorous assertion of the statute of limitations in this case.  The

9  conspiracy claim is highly relevant to the limitations issues in the case.  As the

10  Court knows, one key basis for holding United's claims to be timely is the accrual

11  rule for *a civil conspiracy claim.  E.g.*, *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 52-

12  54 (Cal. 1979).  The Omidis seek to prevent litigation of a theory, civil conspiracy,

13  that would clearly render United's claims timely.[6]

14       Whereas, in some cases, alter-ego issues may arise in connection with the

15  collection of a judgment already rendered against a judgment-proof corporate

16  entity, conspiracy as a theory is inseparable from the underlying allegations of fraud

17  and other wrongful conduct.  For example, the FACC alleges that the Omidis

18  _____

19  [6]   The Omidis' motion addresses this issue by claiming that the Court's initial

20  assessment of the *Wyatt* case and the accrual rules for conspiracy claims is

21  wrong.  (Omidi Mot. 2, n.2.)  That is not true.  The holding of *Wyatt* (and numerous other California cases) is clear: "when a civil conspiracy is properly

22  alleged and proved, the statute of limitations does not begin to run on any part of

23  a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been

24  completed."  598 P.2d at 53.  The language quoted by the Omidis is not the

25  *holding* of *Wyatt*, but rather an explanation of why the rule of law being applied

26  makes sense under the specific facts of *Wyatt*: "The situation of the respondents,

27  on the other hand, *demonstrates* the equities served by the 'last overt act'

28  doctrine."  *Id*. at 54 (emphasis added).  But *Wyatt* is simply one example of a

"consistent line of cases that have applied the 'last overt act' doctrine to civil

conspiracies."  *Id*. at 53.  That doctrine applies here as well, for reasons already

briefed and argued in detail in connection with the recent motions to dismiss.

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

13

1  perpetrated their conspiracy, in large part, through a universal policy of waiving

2  patient co-pay amounts in order to induce patients to use the Omidi Providers.

3  (*See, e.g.*, FACC ¶ 3.)  Litigating that claim, including engaging in relevant

4  discovery, necessarily involves questions such as whether the Providers were

5  directed by the Omidis to waive copays and whether the complex web of Omidi-

6  related corporate entities was established to conceal the fraud.  If the Providers

7  deny waiving copays, but there is evidence that the Omidis directed them to waive

8  copays, that evidence would be relevant to the Omidis' role in the fraud.  It would

9  *also* rebut the Providers' denials, because if they were directed by the Omidis to

10  waive co-pays, that supports the inference that they acted in accordance with

11  instructions from the individuals who created and control the Provider entities.

12      Since the same facts are relevant to the Omidis' liability, the Providers'

13  liability, and United's affirmative defenses, bifurcation will not save time or create

14  efficiencies.  To the contrary, the same issues will have to be litigated twice.  There

15  would have to be discovery, motion practice and trial on the non-bifurcated claims,

16  and then a subsequent trial, involving largely the same facts, on the alter-ego theory

17  and conspiracy claims against the Omidis.  This massive duplication of effort

18  would waste the Court's and the parties' resources.

19  **C.   The Omidis' potential criminal liability and Fifth Amendment**

20  **rights do not support bifurcation or a stay**.

21      The Omidis raise the specter of their potential indictment for criminal

22  wrongdoing as grounds for bifurcating the claims against them and staying

23  discovery, until such time as that risk is no longer present.  Neither the legal rules

24  governing the Fifth Amendment nor the specific facts of this case justify bifurcation

25  or a stay based on the Omidis' potential criminal liability.

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

14

1    First, the general rule is that civil cases can and do proceed in the face of

2  parallel criminal proceedings.  *Keating*, 45 F.3d at 324.  As the Omidis' motion

3  grudgingly concedes, this general rule is even stronger where, as here, there is no

4  actual indictment, but rather investigations that may – or may not – result in the

5  Omidis being charged with a crime.  *See eBay, Inc. v. Digital Point Solutions, Inc.*,

6  2010 WL 702463, at *3 (N.D. Cal. Feb. 25, 2010)  (acknowledging that when "no

7  indictment" has yet been returned, "the case for a stay is much weaker" in part

8  because the delay to the plaintiff is "potentially indefinite"); *see also In re*

9  *Homestore.com, Inc. Securities Litig.*, 347 F. Supp. 2d 814, 820-21 (C.D. Cal.

10  2004) (denying motion to stay civil securities case pending resolution of related

11  criminal proceedings when there was no indictment and no evidence of the timeline

12  of the government's criminal investigation).

13    The nature of this case (an action started by the Omidis' own Providers) adds

14  a strong fairness component to the reasons for denying the stay.  A plaintiff should

15  not be allowed to start a lawsuit and then use the Fifth Amendment to hamper the

16  party it chose to sue.  *Wehling v. Columbia Broadcast System*, 608. F.2d 1084 (5th

17  Cir. 1979), stresses the importance of this consideration:

18
19    The plaintiff who retreats under the cloak of the Fifth Amendment
     cannot hope to gain an unequal advantage against the party he has
20    chosen to sue. To hold otherwise would, in terms of the customary
     metaphor, enable plaintiff to use his Fifth Amendment shield as a
21    sword. This he cannot do.

22  *Wehling*, 608 F. 2d at 1087-88.  The inequity of the Omidis' "shield/sword" ploy is

23  heightened here, where the Omidis have known since 2012 of at least one criminal

24  investigation into their activities.  (Kriendler Decl., ¶ 9.)  In other words, they

25  already knew about this issue when they directed the Providers to sue United.

26    While it is true that at some point the Omidis may need to choose between

27  providing testimony that incriminates them or asserting the Fifth Amendment and

28
DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

15

1 facing an adverse-inference instruction to the jury, that is simply a result of their

2 underlying activities.  As the *Keating* court pointed out:

> A defendant has no absolute right not to be forced to choose between
> testifying in a civil matter and asserting his Fifth Amendment
> privilege.  Not only is it permissible to conduct a civil proceeding at
> the same time as a related criminal proceeding, even if that
> necessitates invocation of the Fifth Amendment privilege, but it is
> even permissible for the trier of fact to draw adverse inferences from
> the invocation of the Fifth Amendment in a civil proceeding.

8 45 F.3d at 326 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).  If the

9 Omidis had not engaged in conduct of interest to various government investigators,

10 they would not be in the situation of having to elect whether or not to assert Fifth

11 Amendment rights.

12        The factors to be considered in staying a civil proceeding while waiting for

13 criminal proceedings to resolve are set forth in *Keating*, 45 F.3d at 324-25.  They

14 include "the extent to which defendant's Fifth Amendment rights are implicated,"

15 and five additional factors: (1) the interest of the non-moving party in proceeding

16 expeditiously with the civil case and the prejudice caused by delay; (2) the burden

17 on the moving party of proceeding; (3) the convenience of the Court in managing

18 its cases; (4) interests of non-parties to the civil litigation; and (5) the public

19 interest.  In the present case, those factors do not justify a stay.

20        First, contrary to the Omidis' claim, the consideration of the "extent" to

21 which Fifth Amendment rights are implicated does not favor their motion.  There is

22 no actual indictment or other formal charge against the Omidis.    As noted above,

23 courts recognize that the lack of an actual indictment argues against stay of the

24 pending civil litigation.

25        This factor also works against the Omidis because the lack of an indictment

26 makes it impossible to assess the extent of overlap between this civil proceeding

27 and a hypothetical future criminal proceeding.  In support of their motion, counsel

28

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

16

for the Omidis reveals, without further explanation, only the existence, since 2012, of a grand-jury investigation.  (Kriendler Decl., ¶ 9.)  Although United has pointed out the probable overlap between the facts relevant to this civil litigation and publically disclosed government investigations of the Omidis, the *extent* of that overlap (as distinct from potential criminal liability for conduct not implicated by this lawsuit) is best known to the Omidis' counsel, who has elected to provide no information in this regard.  Absent more fulsome disclosure, the extent of the overlap cannot be known without the return of an indictment, which may or may not occur.  Because the Omidis bear the burden of demonstrating entitlement to the extraordinary relief of a stay, this ambiguity about the precise nature of their legal jeopardy cuts against their motion.

The other five *Keating* factors, addressed below, similarly support denial of the motion:

**Prejudice to United and interest in expeditious proceedings:**  This factor strongly favors proceeding with the litigation.  The Omidis seek a stay of unknown and indefinite duration.  By contrast, one of the cases the Omidis rely most heavily on, *Pinnock*, was a limited 90-day stay.  *See* 2014 WL 4679007, at *4.  *See also eBay*, 2010 WL 702463, at *6 (denying stay pending criminal proceedings in part because "proceeding with the civil case will best serve the interests of the public by ensuring that aggrieved parties are made whole as rapidly as possible" (internal quotation marks omitted)); *In re Homestore.com, Inc. Securities Litig.*, 347 F. Supp. 2d at 820-21 (observing that indefinite stays are particularly disfavored).  There is no basis to stop a part of this lawsuit—a lawsuit that the Omidis instigated—for potentially years to come based on generalized concern for possible Fifth Amendment issues.

In addition, United would be gravely prejudiced if it is prevented from pursuing the heart of its case, and, as explained above, key affirmative defenses,

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY CASE NO. 2:14-CV-03053-DMG-VBK

17

1  while the Providers pursue unimpeded their claims for millions in benefits under

2  the self-funded plans that United administers.  The fraud is a defense to the claims

3  the Omidis are bringing, and their motion seeks to prevent United from conducting

4  discovery on this part of its defenses while the Providers pursue their claims.  The

5  asymmetrical nature of the Omidis' request (impose a stay on United but permit the

6  Providers to go full speed ahead) requires denial of the motion: "The stay of

7  discovery Plaintiffs seek is one-sided and would impose an undue hardship on

8  Underwriters.  Plaintiffs seek to continue pursuing relief while depriving

9  Underwriters of information that may be valuable to Underwriters' defense."

10  *Pendergest-Holt v. Certain Underwriters at Lloyd's of London and Arch Specialty*

11  *Ins. Co.*, 2010 WL 3199355, at *3 (S.D. Tex. Aug. 11, 2010).

12      It is precisely this one-sided advantage that makes courts reluctant to grant

13  such relief.  The risk of criminal liability should not constitute a litigation

14  *advantage* for the party whose conduct has subjected him to that risk.  *See*

15  *Wehling*, 608 F. 2d at 1087– 88.  *See also eBay*, 2010 WL 702463, at *6  (denying

16  motion to stay civil-fraud action pending resolution of related criminal

17  proceedings; observing that "potential criminal conduct should not serve as a

18  shield against a civil law suit and prevent plaintiff from expeditiously advancing its

19  claim").

20      **Burden upon defendants:**  The Omidis make the bare, unsupported

21  assertion that participating in this litigation threatens "potential disruption of their

22  banking and other relationships with third parties."  There is no record evidence or

23  further explanation of how or why this is alleged to be true.  Indeed, given the

24  grounds that the Omidis have stated (under seal) to recuse Magistrate Judge

25  Kenton, and the fact that numerous documents responsive to United's discovery

26  requests have been seized by the Government, *see* Schubert Decl. ¶ 7, there is no

27  basis to believe that the continuation of this lawsuit will disrupt these relationships

28
DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

18

1  any more than they have already been disrupted.  The Omidis are parties to civil

2  litigation like anyone else, and they have identified no unique burden that justifies

3  the extraordinary relief they seek.

4  **Case management:**  This factor strongly favors denial of the stay.  Not only

5  would bifurcation (and the accompanying stay of discovery) complicate the Court's

6  task in general, it would require the Court to act as referee to numerous additional

7  disputes over the scope of the "issues" that the Omidis want stayed and numerous

8  discovery disputes.  Among other things, the Omidis' and the Providers' expansive

9  view of what discovery relates to "alter ego" claims, *see supra* at 6, foreshadows

10 the overbroad objections that they will no doubt raise to future legitimate discovery

11 requests, citing the stay as both their "shield" and their "sword."

12 **Interest of non-parties and the public:**  There are numerous non-parties to

13 this case who would benefit from its prompt resolution in full.  In particular, the

14 "Plan Defendants" in case number 14-2139, which are not parties to this action, will

15 be prejudiced because the Omidis attempt to stay discovery involving their personal

16 conduct in that action as well.  They too will benefit from resolution of the claims

17 and counterclaims in this action, particularly insofar as the Omidis provide

18 discovery relevant to the waiver of copay defense and that defense is litigated. The

19 resolution of issues related to that defense will affect whether the Plan Defendants

20 are liable under their self-funded plans.

21 The public interest is, if anything, even clearer.  First, the public is served

22 when healthcare providers repay amounts they wrongfully obtained through

23 fraudulent claims.  *E.g.*, *United States v. Lucien*, 347 F.3d 45, 48 (2d Cir. 2003)

24 (recognizing that "health care fraud drains billions of dollars from public and

25 private payers annually").  Further, the public has an interest in seeing crimes

26 investigated.  If the investigation supports an indictment, the public has an interest

27 in prosecution of the offenders.

28

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

19

1   The Omidis have yet to explain convincingly just what is wrong with an
2   entity such as United cooperating with the government in a lawful manner.  To the
3   extent United cooperates and complies with information requests from government
4   investigators, that furthers the public interest.[7]  *Int'l Bus. Machs., Corp. v. Brown*,
5   857 F. Supp. 1384, 1388-89 (C.D. Cal. 1994) (**denying** motion to stay civil
6   RICO/Fraud action pending resolution of related criminal proceedings; observing
7   that "this court sees no reason why those victims who have the resources and
8   willingness to pursue their own investigation and enforce their own rights should be
9   precluded either from doing so or from sharing the fruits of their efforts with law
10  enforcement agencies.  If the ultimate result of such private investigation is that
11  criminals can be brought to justice with a minimum diversion of public resources,
12  the interests of society are irrefutably served.").  The Omidis' attempt to erect
13  roadblocks and delay discovery is contrary to the public interest.

14      Moreover, the Omidis' attempts to hamper United's investigation go far
15  beyond the legitimate scope of the Fifth Amendment.  The Omidis seek to prevent
16  even third parties from providing relevant discovery to United, on the grounds that
17  United may share it with government agencies.  As discussed in Section III below,
18  that is ***not*** a Fifth Amendment issue.  Nothing in the Fifth Amendment permits the
19  Omidis to thwart third-party discovery.

20      Each of the *Keating* factors strongly favors denial of the motion.

21
22
23
24

---

7   The Magistrate Judge has recently required United to provide the Omidis *notice*
25  when it is supplying materials obtained in discovery to government entities.
26  This in turn will permit the Omidis to raise any lawful objections to that process
27  in an orderly manner, based on the specific materials at issue.

28
DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

20

III.    **The Motion to Stay Discovery Should be Denied**.

The analysis above applies equally to both the Omidis' motion to bifurcate and to the request to stay discovery.  There are also additional aspects of the request for discovery stay which warrant denial of that request.

First, Omidis cannot justify their attempts to stay third-party discovery by citing the Fifth Amendment.  The Fifth Amendment protects only testimonial acts by the Omidis.  *See Baltimore Social Servs. v. Bouknight*, 493 U.S. 549, 556–58 (1990); *Fisher v. United Sta*tes, 425 U.S. 391, 401, 408 (1976).  The privilege does not, however, grant an individual the right to preclude disclosure of third-party information which may ultimately prove to be incriminating.  As the Supreme Court has explained:

> It is also settled that a person inculpated by materials sought by a subpoena issued to a third party cannot seek shelter in the Self–Incrimination Clause of the Fifth Amendment.  The rationale of this doctrine is that the Constitution proscribes only compelled self-incrimination, and, whatever may be the pressures exerted upon the person to whom a subpoena is directed, the subpoena surely does not 'compel' anyone else to be a witness against himself.

*S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (citations omitted).  Thus, a third party's production of documents in that third party's possession is not something the Omidis can block by the assertion of the Fifth Amendment.  The privilege against self-incrimination protects only compelled testimonial self-incrimination by an individual, and is not held by corporations at all.  *Doe v. United States*, 487 U.S. 201, 206 (1988); *Bellis v. United States*, 417 U.S. 85, 90 (1974).

Second, the Omidis have not even interposed a Fifth Amendment objection to the existing discovery.  United served its document requests on the Omidis on October 10, 2014.  They responded on December 8, 2014, and submitted numerous objections, including objections based on various privileges under state and common law.  But they did not assert any Fifth Amendment-based objection.  This

1  absence stands in stark contrast with the Omidis' protestations that proceeding with
2  United's claims put their Fifth Amendment rights in grave jeopardy.  Indeed, if we
3  are to take the Omidis' discovery responses at face value, they did not object on
4  Fifth Amendment grounds so there is literally no pending discovery that even
5  implicates the Omidis' Fifth Amendment rights.

6       Third, in a footnote at the end of their brief, the Omidis seek to extend the
7  stay of discovery to the companion case in this matter, 14-2139.  Substantively, that
8  request should be denied for the same reasons expressed with regard to this case.
9  Procedurally, the request is completely inappropriate.  Requests to stay discovery in
10  case number 14-2139 should be made in case number 14-2139, with service on all
11  interested parties to that case and an opportunity for them to respond as appropriate.

12       Finally, the Court has a perfectly adequate existing mechanism to address
13  specific discovery disputes.  That system (initial reference to the Magistrate Judge
14  with a right of appeal to this Court) has already begun to function in this case.
15  There is no need for the blunt instrument of a blanket stay when individual disputes
16  can be resolved, if necessary, through motion practice.

17       In the appeal currently pending before this Court, for example, the Magistrate
18  Judge reviewed the Omidis' claims that numerous requests were irrelevant to a
19  broad array of issues in the case.  The Omidis claimed that this discovery was either
20  solely for alter-ego issues or part of some imagined scheme to drive the Providers
21  and the Omidis out of business because they are "out-of-network" providers.
22  (Omidi Mot. 1-2.)  As Magistrate Judge Kenton correctly noted, that is simply
23  wrong.  (Dkt. #92 (Order Denying Mot. to Quash 2-4.))  All three subpoenas seek
24  evidence to support United's affirmative allegations concerning the Omidis'
25  personal involvement, their conspiracy to conceal the fraud, and the scope of the
26  fraud.  The Wells Fargo subpoena also seeks evidence to support United's ERISA
27  tracing allegation.  Similarly, all three subpoenas seek evidence to support United's
28

DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

22

1  defenses.  Thus, discovery concerning each of these issues needs to move forward

2  regardless of whether the Omidis are held liable as alter egos of the Providers.

3                                      **CONCLUSION**

4          The Omidis' motion for bifurcation and a stay of discovery should be denied.

5

6

   Dated:  January 12, 2015                    **DORSEY & WHITNEY LLP**

7

8
                                              /s/ RJ ZAYED
9                                       By:  RJ ZAYED

10                                      *Admitted Pro Hac Vice*
                                        Attorneys for Defendant UnitedHealth
11                                      Group, Inc., and Counterclaim
                                        Plaintiffs/Defendants United Healthcare
12                                      Services, Inc., United Healthcare
                                        Insurance Company, and OptumInsight,
13                                      Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO OMIDI MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:14-CV-03053-DMG-VBK

23