1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   BRYAN D. DALY, Cal. Bar No. 117901
3  bdaly@sheppardmullin.com
   CHARLES L. KREINDLER, Cal. Bar No. 119933
4  ckreindler@sheppardmullin.com
   BARBARA E. TAYLOR, Cal. Bar No. 166374
5  btaylor@sheppardmullin.com
   333 South Hope Street, 43rd Floor
6  Los Angeles, California 90071-1422
   Telephone:  213.620.1780
7  Facsimile:   213.620.1398

8  Attorneys for Individual Counterclaim
   Defendants Michael Omidi, M.D. and
9  Julian Omidi

10             UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  ALMONT AMBULATORY                    Case No. 2:14-cv-03053-MWF(VBKx)
    SURGERY CENTER, LLC, a               Honorable Michael W. Fitzgerald
14  California limited liability company, et
    al.,                                 **MICHAEL OMIDI, M.D. AND**
15                                        **JULIAN OMIDI'S:**
                    Plaintiffs,
16                                        **(1) NOTICE OF MOTION AND**
          v.                             **MOTION TO DISMISS SECOND**
17                                        **AMENDED COUNTERCLAIM;**
    UNITEDHEALTH GROUP, INC.;
18  UNITED HEALTHCARE SERVICES,          **(2) NOTICE OF JOINDER AND**
    INC., UNITED HEALTHCARE             **JOINDER IN COUNTERCLAIM**
19  INSURANCE COMPANY;                   **DEFENDANTS ALMONT**
    OPTUMINSIGHT, INC., and DOES 1      **AMBULATORY SURGERY**
20  through 20,                          **CENTER, LLC, ET AL.'S MOTION**
                                         **TO DISMISS SECOND AMENDED**
21                  Defendants.          **COUNTERCLAIM;**

22  UNITED HEALTHCARE SERVICES,          **(3) MEMORANDUM OF POINTS**
    INC., UNITED HEALTHCARE             **AND AUTHORITIES**
22  INSURANCE COMPANY;
    OPTUMINSIGHT, INC.,                  [FRCP Rule 12(b)(6)]
23
                                         [Request for Judicial Notice filed
24                  Counterclaim Plaintiffs,   concurrently]

          v.                             Date:  September 9, 2015
25                                        Time:  3:00 p.m.
    ALMONT AMBULATORY                    Courtroom:  1600, 16th Floor, 312 N.
26  SURGERY CENTER, LLC, a               Spring Street
    California limited liability company; et
27  al.,                                 Complaint Filed:  March 21, 2014
                    Counterclaim Defendants.
                                         Trial Date:  None Set
28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 9, 2015 at 3:00 p.m. in Courtroom 1600, 16th Floor of the United States District Court, Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012-4701, Individual Counterclaim Defendants Michael Omidi, M.D. and Julian Omidi will and hereby do move for an order regarding the Second Amended Counterclaim ("SACC") of Counterclaim Plaintiffs United Healthcare Services, Inc., United Healthcare Insurance Company, and Optuminsight, Inc. (collectively "United") as follows:

(1) Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing, without leave to amend, the First Cause of Action for Fraud, at least with respect to claims for services United paid prior to May 15, 2011, on the ground that such transactions occurred outside the three-year fraud limitations period (Cal. Code Civ. Pro. § 338(d)), and United has failed to meet its burden to demonstrate that the discovery rule applies and renders the claims timely.

(2) Pursuant to FRCP Rule 12(b)(6), dismissing, without leave to amend, the Second Cause of Action for Unfair Business Practices, Cal. Business & Professions Code § 17200 ("UCL"), at least with respect to claims for services United paid prior to May 15, 2010, on the ground that such transactions occurred outside the four-year UCL limitations period (Cal. Bus. & Prof. Code § 17208), and United has failed to meet its burden to demonstrate that the discovery rule applies and renders the claims timely.

(3) Pursuant to FRCP Rule 12(b)(6), dismissing, without leave to amend, the Fourth Cause of Action for Intentional Interference with Contractual Relations, at least with respect to claims for services United paid prior to May 15, 2012, on the ground that such transactions occurred outside the two-year interference limitations period (Cal. Code Civ. Proc. § 339(1); *Trembath v. Digardi*, 43 Cal.App.3d 834,

836 (1974)), and United has failed to meet its burden to demonstrate that the discovery rule applies and renders the claims timely.

(4) Pursuant to FRCP Rule 12(b)(6), dismissing, without leave to amend, the Fifth Cause of Action for Conversion, at least with respect to claims for services United paid prior to May 15, 2011, on the ground that such transactions occurred outside the three-year conversion limitations period (Cal. Civ. Proc. § 338(c)), and United has failed to meet its burden to demonstrate that the discovery rule applies and renders the claims timely.

(5) Pursuant to FRCP Rule 12(b)(6), dismissing, without leave to amend, the Sixth and Seventh Causes of Action under ERISA Section 502(a)(3), at least with respect to claims for services United paid prior to May 15, 2011, on the ground that such transactions occurred outside the three-year limitations period for fraud (Cal. Civ. Proc. § 338(d)), the most analogous state law claim. (*Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge*, 827 F.2d 1324, 1328 (9th Cir. 1987)), and United has failed to meet its burden to demonstrate that the discovery rule applies and renders the claims timely.

## NOTICE OF JOINDER AND JOINDER

PLEASE TAKE FURTHER NOTICE that Individual Counterclaim Defendants Michael Omidi, M.D. and Julian Omidi join in the Motion to Dismiss and arguments in support thereof filed by Counterclaim Defendants Almont Ambulatory Surgery Center, LLC, et al. (the "Providers") in this action to the extent they are applicable to demonstrate that the SACC fails to state facts upon which relief may be granted against Dr. Michael and Julian Omidi.

This Motion is based on this Notice of Motion and Motion and this Notice of Joinder and Joinder, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all other pleadings and papers on file

1  in this action, any oral argument at the hearing on the Motion, and any further

2  matters of which this Court may take judicial notice.

3      This Motion is made following the conference of counsel pursuant to Local

4  Rule 7-3, which took place on June 17, 2015.

5  Dated:  June 25, 2015

6

7                                  Respectfully submitted,

8                                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

9

10                          By      /s/ Charles L. Kreindler

11                                  CHARLES L. KREINDLER
                                    Attorneys for Individual Counterclaim
12                                  Defendants Michael Omidi, M.D. and
                                    Julian Omidi
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:437578179.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................... 1

II.     SUMMARY OF RELEVANT ALLEGATIONS ........................... 2

III.    LEGAL STANDARD ..................................................................... 4

IV.    ARGUMENT .................................................................................. 5

    A.    Relation Back Does Not Apply To The SACC ........................ 5

    B.    United Should Not Be Permitted To Rely On *Wyatt* To Extend
Indefinitely The Statute Of Limitations ................................................. 7

        1.    *Wyatt* Is Inapplicable Because United Failed to Plead Fraud
Substantively and With Particularity .................................... 7

        2.    Even If Fraud Is Adequately Pled, This Court Should Decline To
Apply *Wyatt* Under The Circumstances Here ................................. 7

    C.    United's Discovery Allegations Are Wholly Implausible,
If Not Untrue .................................................................................. 11

V.     CONCLUSION ............................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>Cases</u>

*Allegro Corp. v. Only New Age Music, Inc.*
  (D. Or., Oct. 4, 2002, No. 01-790-HU)2002 WL 32806161 ............................... 6

*American Title Insurance Company v. Lacelaw Corporation*
  861 F.2d 224 (9th Cir. 1988) ................................................................. 5

*Canas v. Citimortgage, Inc.*
  (C.D.Cal., Jul. 2, 2013, No. SA CV 13–0322–DOC)2013 WL 3353877 ........ 4, 5

*Chavez v. U.S.*
  683 F.3d 1102 (9th Cir. 2012) ................................................................. 5

*Duke Gerstel Shearer v. Pursiano*
  (Cal. App., 4th Dist., Oct. 4, 2012, D060374) 2012 WL 4712102 ................ 8, 11

*Employers Ins. of Wausau v. Granite State Ins. Co.*
  330 F.3d 1214 ................................................................................... 9

*GG Capital v. Deutsche Bank AG*
  (C.D. Cal., Apr. 28, 2014, No. SACV 12-02213-JLS (RNBx)) 2014 WL
  1672567 ...................................................................................... 5, 15

*Harris v. Amgen, Inc.*
  (9th Cir., May 26, 2015, No. 10-56014) ___ F.3d ___ [2015 WL 3372373] ....... 5

*Intermedics, Inc. v. Ventritex, Inc.*
  822 F. Supp. 634 (N.D. Cal. 1993) ........................................................ 8

*Mattel, Inc. v. MGA Entertainment, Inc.*
  705 F.3d 1108 (9th Cir. 2013) ............................................................... 6

*North Cypress Medical Center Operating Company, Ltd. v. Cigna Healthcare*
  781 F. 3d 182 (5th Cir. 2015) ............................................................... 6

*Nunez v. City of San Diego*
  114 F.3d 935 (9th Cir. 1997) ............................................................... 9

*Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge*
  827 F.2d 1324 (9th Cir. 1987) ............................................................... 1

*Schessler v. Keck*
    25 Cal.App.2d 827, 271 P.2d 588 (1954).............................................................7

*Siteworks Solutions, Inc. v. Oracle Corp.*
    (W.D. Tenn., Mar. 9, 2010, No. 08-2130) 2010 WL 890941 ..............................8

*State ex rel. Westrick v. Itochu Int'l, Inc.*
    (Cal. App., 2d Dist., May 26, 2011, B223053) 2011 WL 2044167...................8

*Tarsha v. Bank of America, N.A.*
    No. 11-CV-928 W(MDD), 2013 WL 1316682 at *4 (S.D. Cal. Mar. 29. 2013).....................................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007) ............................................................................................5

*Trembath v. Digardi*
    43 Cal.App.3d 834 (1974) ..................................................................................1

*Vail Lake Rancho California, LLC v. Abreu*
    (Cal. App., 4th Dist., Mar. 7, 2014, D061892) 2014 WL 900372 ......................8

*Vari-Build, Inc. v. City of Reno*
    622 F. Supp. 97 (D. Nev. 1985) .........................................................................6

*Villegas v. Wells Fargo Bank*
    (N.D. Cal., Sept. 17, 2012, No. C 12-02004 LB.)2012 WL 4097747 ................7

*Von Saher v. Norton Simon Museum of Art at Pasadena*
    592 F.3d 954 (9th Cir. 2010) ..............................................................................4

*Wyatt v. Union Mortgage Co.*
    24 Cal.3d 773, 157 Cal. Rptr. 392 (1979) ...................................1, 7, 8, 9, 10, 11

*Wyatt—Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*
    157 Fed. Appx. 959 (9th Cir. 2005) ..............................................................8, 10

<u>Statutes</u>

Cal. Bus. & Prof. Code § 17208 ...............................................................................1

Cal. Civ. Proc. § 338(c) ............................................................................................1

Cal. Civ. Proc. § 338(d) ............................................................................................1

Cal. Civ. Proc. § 339(1) ........................................................................................ 1

<u>Other Authorities</u>

FRAP 32.1 ............................................................................................................. 8

Ninth Cir. Rule 36-3(c) ......................................................................................... 8

Rule 8.1115 ........................................................................................................... 8

Rule 12(b)(6) .................................................................................................... 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Although United did not properly file its original Counterclaim until May 15, 2014, United has alleged that it is entitled to recover for almost 30,000 claims paid going back to March 2008—with the vast majority of claims paid prior to May 15, 2011.  It is therefore apparent from the face of the SACC that the bulk of United's causes of action are time-barred given their two, three, and four- year limitations periods.[1]  In an effort to overcome this, United has taken two approaches.  First, United alleges that the submission of fraudulent claims up through the filing of this action effectively suspends the statute of limitations on all state law causes of action because Dr. Michael and Julian Omidi and the Providers are participants in an "ongoing conspiracy" so long as medical services continue to be billed.  (DKT 152-2 ¶477.)  Second, as a fallback in the event that the first approach is rejected and United must therefore meet its burden under the discovery rule, United actually alleges that it did not—and could not—suspect anything until about one month *after* the Providers sued United on March 21, 2014.  (DKT 152-2 [¶¶126-27].)

Neither approach works.  United relies on inapposite California state law authority regarding when the statute of limitations commences on underlying torts in the context of a civil conspiracy—*Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 786, 157 Cal. Rptr. 392 (1979).)  Regardless of whether this Court considers *Wyatt* still to be good law in California, its rationale simply does not fit the circumstances here.  *Wyatt* involved unsophisticated borrowers subjected to "economic duress or undue influence" by a predatory mortgage broker and affiliates who designed a

---

[1] The limitations periods are:  (1) two years for interference with contract (Cal. Code Civ. Proc. § 339(1); *Trembath v. Digardi*, 43 Cal.App.3d 834, 836 (1974)); (2) three years for fraud, conversion, and ERISA (Cal. Code Civ. Pro. § 338(d)); Cal. Civ. Proc. § 338(c)); *Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge*, 827 F.2d 1324, 1328 (9th Cir. 1987) (ERISA borrows the limitations period of the most analogous state law claim); and (3) four years for UCL (Cal. Bus. & Prof. Code § 17208).)

1  scheme that entrapped them in an onerous initial loan and forced them to refinance
2  on equally onerous terms, all with the ultimate purpose of foreclosing on their home.
3  Given the object of the conspiracy, the court concluded that the limitations period
4  did not commence until the last payment was made on the second loan.  In contrast,
5  the instant action involves thousands of discrete and independent transactions with
6  the equities flipped—United, the party seeking relief, is a highly sophisticated health
7  care giant.  Especially, since this Court has already given United the benefit of
8  continuous accrual and the discovery rule (DKT 144 at 25), United should not be
9  permitted to suspend indefinitely the statute of limitations until all of the Providers
10 are put out of business and can no longer bill for medical services.

11        And United's attempt to satisfy its burden under the discovery rule is
12 implausible.  United wants this Court to accept that it paid more than $46 million
13 over the course of six years without ever suspecting that something was amiss until
14 *after* the Providers sued United.  But this is belied by United's own allegations and
15 matters of which this Court can take judicial notice, including public records,
16 newspaper articles, and United's own court filings, which demonstrate that United
17 was on inquiry notice in early 2010 at the latest.  Given the resources at United's
18 disposal, United has no excuse for having waited over four years after that to bring
19 its original Counterclaim.

20        In sum, United should not be permitted to pursue any transactions which,
21 from the face of the SACC, occurred outside the applicable limitations periods.

22 **II.   <u>SUMMARY OF RELEVANT ALLEGATIONS</u>**

23        Just as with the First Amended Counterclaim ("FACC"), United has alleged
24 thousands of transactions that are "facially untimely" given the two, three, and four-
25 year limitations periods for United's causes of action and the alleged dates of

26
27
28

SMRH:437578179.3

payment.[2]  The following chart breaks down the 29,617 claims identified in the SACC's Appendix by alleged date paid in relation to the two, three, and four-year limitations periods:

| Limitations Period | Number of Claims |
|---|---|
| Two-Year (prior to 05/15/2012) | 25,710 |
| Three-Year (prior to 05/15/2011) | 23,552 |
| Four-Year (prior to 05/15/2010) | 10,458 |

In ruling on the Motion to Dismiss the FACC, this Court concluded that United "failed to meet its burden" of  pleading that the discovery rule applies to render timely "facially untimely transactions."  (DKT 144 at 23.)  In the SACC, United added the following paragraphs in an attempt to meet that burden:

126.   United Member 8 filed two lawsuits on September 12, 2011 and November 30, 2012 against 1-800-GET-THIN, et al. for, among other things, medical malpractice and intentional misrepresentation. United became aware of these lawsuits on or about **April 22, 2014** and thereafter learned that Counterclaim Defendants had deceived United Member 8 into believing that she had insurance coverage for Lap Band services.  In particular, the second lawsuit brought by United Member 8 in late 2012 contains the allegations that 1-800-GET-THIN lied to her about her insurance coverage, and that this was part of a pattern of telling prospective patients that they were covered for Lap Band surgery whether or not the patient had coverage for bariatric surgery. United had not previously known of this deception by Counterclaim Defendants, and could not have discovered it through the exercise of reasonable diligence given that the claim forms omitted the material misrepresentations that induced United Member 8 into receiving these services.

127.   As indicated below, at least 11 other members were similarly deceived by the Counterclaim Defendants into believing that they had insurance coverage for a Lap Band or other related services.  United was not aware at the time it processed and paid the claims that these members were misled into believing they had coverage for Lap Band surgery and related services when they did not, nor could United have discovered these claims were false through the exercise of reasonable diligence in evaluating the claim forms, which omitted the material misrepresentations that induced the members into receiving these services.  United only discovered these fraudulent claims after it

---

[2] One difference is that the Appendix to the FACC lists 15,835 claims, while the Appendix to the SACC lists 29,617 claims.  (DKT 45-8; DKT 152-4 & -5.)  In addition, as this Court noted, in the Appendix to the FACC, United identified claims without specifying "when the vast majority of claims were submitted and paid." (DKT 144 at 22-23.)  In the Appendix to the SACC, United alleges a date paid, date bill received, and date of service.  (DKT 152-4 & -5.)

SMRH:437578179.3

learned of the lawsuits brought by United Member 8 after the Plaintiffs' Complaint in this matter was filed, and as part of its investigations in this litigation, *beginning in 2014*, regarding patients who were misled in broadly similar fashion to United Member 8.

(DKT 152-2 [¶¶126-27] [emphasis added].)

## III.   LEGAL STANDARD

The instant Motion challenges the SACC on the ground that the bulk of the transactions underlying United's causes of action are barred by the affirmative defense of statute of limitations.

A pleading will not survive a Rule 12(b)(6) statute of limitations challenge where the allegations, with all reasonable inferences drawn in plaintiff's favor, show that an affirmative defense "is apparent on the face of the complaint." (*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).)  This Court, in ruling on the Motion to Dismiss the FACC, has already determined that for "any transaction" that "manifestly" (from the face of the pleadings) "occurred outside of the limitations period, United bears the burden of pleading that the discovery rule applies and renders the claims timely." (DKT 144 at 23.) [3]  This Court applied this determination to United's fraud, UCL, and interference causes of action.  (DKT 144 at 23, 29, 34.)  It should equally apply to United's ERISA causes of action and new conversion cause of action.

"In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." (*Canas v. Citimortgage, Inc.* (C.D.Cal., Jul. 2, 2013, No. SA CV 13–0322–DOC) 2013 WL 3353877, at *3, *quoting Tarsha v. Bank of America,*

---

[3] This Court has also ruled that under Rule 12(b)(6), part of a claim for relief can be dismissed.  (DKT 144 at 20.)  Thus, even if this Court determines that some of the transactions underlying United's causes of action are within the applicable limitations periods, it can still excise transactions that are not.

Case No. 2:14-cv-03053-MWF(VBKx)

SMRH:437578179.3

1  *N.A.* (S.D. Cal., Mar. 29. 2013, No. 11-CV-928 W(MDD)) 2013 WL 1316682, at *4

2  ("The plaintiff must plead facts demonstrating that she was not negligent in failing

3  to make discovery sooner.").)  Failure to plead facts supporting the discovery rule

4  results in dismissal of claims with prejudice under Rule 12(b)(6).  (*See, e.g., Canas,*

5  2013 WL 3353877, at *4;  *GG Capital v. Deutsche Bank AG* (C.D. Cal., Apr. 28,

6  2014, No. SACV 12-02213-JLS (RNBx)) 2014 WL 1672567, at *8.)

7        On a Rule 12(b)(6) motion, "'[c]ourts must consider the complaint in its

8  entirety, as well as other sources courts ordinarily examine when ruling on Rule

9  12(b)(6) motions to dismiss, in particular, documents incorporated into the

10  complaint by reference, and matters of which a court may take judicial notice.'"

11  (*Harris v. Amgen, Inc.* (9th Cir., May 26, 2015, No. 10-56014) ___ F.3d ___ [2015

12  WL 3372373, at *17], *quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

13  308, 322 (2007).)[4]

14  **IV.    ARGUMENT**

15        **A.    Relation Back Does Not Apply To The SACC**

16        The relevant date for determining timeliness is May 15, 2014, the date on

17  which United properly filed its original Counterclaim.  United is not entitled to

18  relate back to March 21, 2014, the date the Providers' original Complaint was filed,

19  because United seeks affirmative relief, separate and apart from the claims in the

20  Providers' original Complaint.[5]

21        As a threshold matter, for relation back to apply United's claims must be

22  compulsory, which means that they must "arise[ ] from the same aggregate set of

---

23

24  [4] Courts "discount[] conclusory statements, which are not entitled to the
presumption of truth, before determining whether a claim is plausible." (*Chavez v.*

25  *U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012).)  In contrast, "[f]actual assertions in
pleadings … unless amended, are considered judicial admissions conclusively

26  binding on the party who made them." (*American Title Insurance Company v.
Lacelaw Corporation*, 861 F.2d 224, 226 (9th Cir. 1988).)

27

28  [5] The relation back issue was not previously briefed.  (DKT 144 at 25.)

operative facts as the initial claim." (*Mattel, Inc. v. MGA Entertainment, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013).)  United, however, is suing to recover payments it made to the Providers on specific claims for medical services submitted by the Providers, whereas the Providers' original Complaint is primarily based on claims for medical services rejected by United.  It is United's burden to show that the same claims are at issue.

Moreover, even if United's claims were compulsory they would still not relate back because United is seeking affirmative relief—compensatory damages, injunctive relief and declaratory relief.  A recent Fifth Circuit opinion, *North Cypress Medical Center Operating Company, Ltd. v. Cigna Healthcare*, 781 F. 3d 182, 205-07 (5th Cir. 2015), is instructive on this point, particularly in light of the nature of the case.  The plaintiff, a medical provider, sued Cigna for non-payment of claims for medical services.  In response, Cigna brought a counterclaim alleging that the provider was improperly waiving deductibles, copayments, and/or coinsurance amounts for Cigna members, seeking to recover on claims paid.  (781 F.3d at 187.)  At issue was "whether the hospital may discount patients' portion of the bills without affecting the patients' coverage under their insurance plans."  (*Id.* at 186.)  The Fifth Circuit held that even if Cigna's claims were compulsory, "compulsory counterclaims seeking affirmative relief are not tolled," i.e., do not relate back to the date of the provider's original complaint.  (*Id.* at 206.)  District courts in the Ninth Circuit have reached the same conclusion.  (*See Allegro Corp. v. Only New Age Music, Inc.* (D. Or., Oct. 4, 2002, No. 01-790-HU) 2002 WL 32806161, at *16 ("Because defendants' counterclaims are for affirmative relief, they do not relate back to the filing of the complaint."); *Vari-Build, Inc. v. City of Reno*, 622 F. Supp. 97, 99-100 (D. Nev. 1985) ("A counterclaim for affirmative relief . . . is an independent cause of action that is subject to the operation of the statute of limitations.").

SMRH:437578179.3

**B.    United Should Not Be Permitted To Rely On *Wyatt* To Extend Indefinitely The Statute Of Limitations**

**1.    *Wyatt* Is Inapplicable Because United Failed to Plead Fraud Substantively and With Particularity**

In an effort to avoid the bulk of its causes of action being time-barred on the face of the FACC, United relied on *Wyatt's* statement that "when a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." (*Wyatt, supra*, 24 Cal.3d at 786, *citing Schessler v. Keck*, 25 Cal.App.2d 827, 832-33, 271 P.2d 588 (1954).)  This Court determined—without addressing the merits of *Wyatt* or its application to allegations involving thousands of discrete transactions over a six-year period for which damages are sought—that because of "deficiencies in the underlying allegations supporting the purported conspiracy …United cannot benefit from the doctrine to extend the statute of limitations for its fraud claim." (DKT 144 at 26.)  At least one other federal court has rejected the application of *Wyatt* to extend the statute of limitations when faced with pleading deficiencies with respect to conspiracy to commit fraud.  (*See Villegas v. Wells Fargo Bank* (N.D. Cal., Sept. 17, 2012, No. C 12-02004 LB.) 2012 WL 4097747, at *5 (holding that statute of limitations barred all claims).)  Here, for reasons stated in the Providers' Motion to Dismiss, in which Individual Counterclaim Defendants have joined, United's underlying fraud allegations supporting the "purported conspiracy" remain deficient, which again precludes reliance on *Wyatt*.

**2.    Even If Fraud Is Adequately Pled, This Court Should Decline To Apply *Wyatt* Under The Circumstances Here**

Even if this Court were to determine that United has adequately pled fraud, United should still not be permitted to rely on *Wyatt* to escape the consequences of its decision not to bring its claims until after it was sued in 2014 by the Providers.

1    First, in support of its prior argument, United cited only one federal case

2    applying *Wyatt—Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*, 157 Fed.

3    Appx. 959, 962 (9th Cir. 2005) [nonpub. opn.].)  (DKT 63 at 31.)  Under the rules

4    applicable to federal courts, however, *Raceway*, as an unpublished Ninth Circuit

5    opinion issued before January 1, 2007, is not precedent and "may not be cited to the

6    courts of this circuit."  (Ninth Cir. Rule 36-3(c); FRAP 32.1.)  Not surprisingly,

7    *Raceway* has never been cited by any court in support of the argument made by

8    United.  In addition, it is questionable that *Wyatt* would even apply to United's

9    ERISA causes of action, since they arise under federal law.

10    Second, in the years since *Wyatt* was decided, California state and federal

11    courts have reined in *Wyatt*'s reach.  For example, the California Court of Appeal

12    has held that, notwithstanding allegations of civil conspiracy, *Wyatt* did not apply to

13    save otherwise untimely claims under:  (1) the California False Claims Act (*State ex*

14    *rel. Westrick v. Itochu Int'l, Inc.* (Cal. App., 2d Dist., May 26, 2011, B223053) 2011

15    WL 2044167, at *11[nonpub. opn.]); (2) the Uniform Fraudulent Transfer Act (*Vail*

16    *Lake Rancho California, LLC v. Abreu* (Cal. App., 4th Dist., Mar. 7, 2014, D061892)

17    2014 WL 900372, at *8 [nonpub. opn.]); and (3) interference torts (*Duke Gerstel*

18    *Shearer v. Pursiano* (Cal. App., 4th Dist., Oct. 4, 2012, D060374) 2012 WL

19    4712102, at *4 [nonpub. opn.]).[6]  And in *Intermedics, Inc. v. Ventritex, Inc.*, 822 F.

20

21    _____

22    [6] United may complain that it is improper to cite unpublished California appellate decisions under Rule 8.1115 of the California Rules of Court, which states that "an opinion of a California Court of Appeal … that is not certified for publication or

23    ordered published must not be cited or relied on by a court or a party in any other action."  First, this Court is not bound to follow a California rule of procedure.  (*See*

24    *Siteworks Solutions, Inc. v. Oracle Corp.* (W.D. Tenn., Mar. 9, 2010, No. 08-2130) 2010 WL 890941, at *2 n. 8 (relying on unpublished California state court decision

25    because Rule 8.1115 "is a procedural rather than a substantive rule of law").)  Indeed, an authoritative commentator has concluded that "[s]ince a state no-citation

26    rule is purely procedural, federal courts still should consult the substantive portions of unpublished state opinions."  (19 Wright and Miller, et al., Fed. Prac. & Proc. (2d

27    ed. updated Apr. 2015) Juris., § 4508, n. 16, *citing Siteworks Solutions, supra*.)  Second, the Ninth Circuit has recognized that federal courts "may consider

28    unpublished state decisions, even though such opinions have no precedential value."

Case No. 2:14-cv-03053-MWF(VBKx)

SMRH:437578179.3

1    Supp. 634, 648-50 (N.D. Cal. 1993), Magistrate Judge Brazil held that,

2    notwithstanding allegations of civil conspiracy, *Wyatt* did not apply to extend the

3    statute of limitations for misappropriation of trade secrets, primarily because

4    misappropriation is not a "continuing wrong."  As discussed at p. 10 *infra*, this

5    Court has already rejected United's "continuing violation" theory.

6         Third, it is apparent that application of *Wyatt* necessarily depends on the

7    nature of the underlying wrong alleged, and it does not make sense to apply *Wyatt*

8    here given the nature of United's allegations and the relative sophistication of the

9    parties.  Neither *Wyatt* itself nor any other case found that applied *Wyatt* to extend

10   the statute of limitations involved anything even close to "'thousands of discrete

11   transactions for which damages were sought'" by a highly sophisticated health care

12   giant—United has been on the Fortune 500 list for the last twenty-one years.  (DKT

13   144 at 26; Request for Judicial Notice ["RJN"], Exh. E.)  On the contrary, in *Wyatt*,

14   the plaintiffs truly needed and deserved relief from the statute of limitations—they

15   were a married couple who were victims of a predatory mortgage loan broker and

16   affiliated corporations (and their shareholder and officers and directors) who tricked

17   them into signing original loan documents without understanding the high interest

18   rate, late charges, and balloon payment, forced them into refinancing on equally

19   onerous terms when they were faced with the balloon payment and unable to find

20   alternative financing, and repeatedly threatened to foreclose on their home.  (24 Cal.

21   3d at 779-81.)  Given her rationale, it is apparent that Chief Justice Bird was

22   sympathetic to the borrowers' plight and was focused on ameliorating the effect of

23   a "continuing wrong" that resulted in "economic duress or undue influence":

24           There was substantial evidence that appellants were involved in
             perfecting a scheme whose purpose was to trap respondents on a
25           financial "treadmill" from which they could not escape.  Once trapped
             by the unexpectedly large balloon payment due at the end of the first
26

27   (*Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8,
     *citing Nunez v. City of San Diego,* 114 F.3d 935, 943 n. 4 (9th Cir. 1997).)

28

loan, the respondents found themselves forced to refinance the loan, much as appellants planned.  (Efforts to obtain financing from other sources failed.)  This permitted the repetitive collection of brokerage fees and late charges from respondents, depleting their resources and moving foreclosure ever closer.

When, as here, the underlying fraud is a continuing wrong, a convincing rationale exists for delaying the running of the statute of limitations.  Just as the statute of limitations does not run against an action based on fraud so long as the fraud remains concealed, so ought the statute to be tolled *even after the fraud is discovered, for so long as the sheer economic duress or undue influence embedded in the fraud continues to hold the victim in place.*

(24 Cal.3d at 788 [emphasis in original].)[7]  In contrast, United is Goliath to the Providers' David.  United is a highly sophisticated insurer who effectively had the Providers at **its** mercy, unilaterally choosing whether and how much to reimburse claims for medical services.  The Providers simply did not have power over United as the lender had over the borrowers in *Wyatt*.

Moreover, it is highly significantly that this Court rejected United's argument that "allegations of Counterclaim Defendants' 'pattern and practice' of submitting fraudulent claims constitute a continuing violation," which is essentially the equivalent of a "continuing wrong," as a means of extending the statute of limitations.  (DKT 144 at 24-25.)  Any perceived harshness occasioned by that rejection is ameliorated by allowing plaintiffs the benefit of continuous accrual and the discovery rule.  (DKT 144 at 25.)  Unlike in *Wyatt*, which involved a "continuing wrong" in the true sense, i.e., a scheme where the first predatory loan entrapped the borrowers until the "culminating act"—collection of the final payment on the second loan, the alleged fraud here involved "thousands of discrete transactions," not one of which was dependent on any other.  One of the California

---

[7] *Raceway*, the lone federal case United previously cited, albeit improperly, in support of its reliance on *Wyatt*, similarly involved essentially one transaction— "a conspiracy to defraud through a bait and switch scheme where [the defendant] replaced the promise of a joint venture arrangement with a high-interest loan."  (157 Fed. Appx. at 962.)

SMRH:437578179.3

cases refusing to apply *Wyatt* emphasized the interrelated and dependent nature of the first act in furtherance of the conspiracy and the last overt act:

> Thus, the receipt of a victim's payment on a fraudulently induced loan that was part of a lending scheme designed to lock the victim onto a "financial treadmill" of refinancing, brokerage fees, and late charges was an act in furtherance of the original wrong of committing the fraud. The *Wyatt* court emphasized that where a person's wrongful conduct towards another is continuing and serves to "hold the victim in place," the statute of limitations should not serve to bar the victim from bringing a claim that the fraudulent acts effectively prevented him from bringing earlier.

(*Duke Gerstel Shearer, supra*, 2012 WL 4712102, at *4.)  In sum, the rationale underlying *Wyatt* simply does not apply.

Finally, this Court would not be going out on a limb to decline to apply *Wyatt* here given the comprehensive and well-reasoned dissent in *Wyatt*.  (*See* 24 Cal.3d at 791-98 (rejecting "majority's conclusion that the statute of limitations for separate tortious acts committed pursuant to a civil 'conspiracy' is tolled until the 'last overt act' in the conspiracy").)  Indeed, it may well be that the California Supreme Court would take a fresh look at the issue in an appropriate case and provide further guidance.  In the meantime, careful consideration should be given before extending *Wyatt's* holding to reach **every** case alleging conspiracy to commit fraud regardless of the facts.

## C.    United's Discovery Allegations Are Wholly Implausible, If Not Untrue

Although United purports to allege when it discovered that fraudulent claims had been submitted, it allegations are implausible.  Incredibly, United alleges that it did not make discovery until April 22, 2014, about one month **after** this action was filed, when it learned that one of its members had sued certain Counterclaim Defendants.  (DKT 152 [¶¶126-27].)  Not only is this allegation implausible on its face given United's sophistication and claims monitoring resources, but it is belied by United's own allegations and matters of which this Court can take judicial notice.

SMRH:437578179.3

First, United makes a series of allegations that public records—California Medical Board and Secretary of State—reveal negative information about Dr. Michael and Julian Omidi, the interrelationship between Omidi family members and the Providers, and the common addresses from which Providers mailed bills to United.  (DKT 152 [¶¶23-24, 27-56].)

Second, in early 2010 the Los Angeles Times began running a series of significantly negative articles about Lap Band® surgery, 1-800-GET-THIN, Dr. Michael and Julian Omidi, and various Providers.  (RJN, Exhibits A-C.)  The first of those articles, published on February 4, 2010, reported:

- Dr. Michael and Julian Omidi were the owners and operators of TopSurgeons.

- Dr. Michael was placed on probation by the Medical Board in 2008 and Julian Omidi's medical license was revoked in 2009.

- The Los Angeles Times reporter contacted "United Health" regarding "coverage rules" for Lap Band® surgery.

- TopSurgeons was sued by a patient in April 2009 over fees charged and TopSurgeons had sued several Lap Band® patients over fees—as much as $111,000.

- A TopSurgeons administrator—Thomas Cloud —explained that the fees were high because they covered preoperative services and counseling programs.[8]

(RJN, Exhibit A.)

The next article, published on March 4, 2010, in addition to repeating the same negative information about Dr. Michael and Julian Omidi, reported:

---

[8] United alleges that Cloud is a co-conspirator.  (DKT 152 [¶14].)

SMRH:437578179.3

- Suite 106, 9001 Wilshire Blvd., the address of the Beverly Hills Surgery Center, has "for years" been a business address of TopSurgeons.

- "The Omidis formerly operated the Wilshire Boulevard facility as the Almont Ambulatory Surgery Center."

- Almont "lost an important federal certification" because conditions there—detailed in the article—"posed 'immediate jeopardy to the health and safety' of patients."

- Almont's facility was "taken over" by Beverly Hills Surgery Center.

- Public records showed that Dr. Michael and Julian Omidi were connected to Almont and Beverly Hills Surgery Centers.

- Public records showed that Almont and Beverly Hills Surgery Centers had the same address as TopSurgeons.

- Thomas Cloud, a "business associate" of Julian Omidi, was convicted of Medi-Cal fraud and did prison time.

- The "public record shows that one or both Omidi brothers have been doing business out of the same location under various corporate names since at least 2005."

(RJN, Exhibit B.)

The next article, published on April 18, 2010, continued the negative reporting. (RJN, Exhibit C.)[9]

Finally, and perhaps most significant, on November 4, 2013, United filed a declaration in federal court that flatly contradicts its allegation that it was not on

---

[9] The spate of negative reporting by the Los Angeles Times continued through 2013. Although the truth of these articles is not conceded, they do provide insight into the type of information in the public domain available to United. United referred to reporting by the Los Angeles Times in the FACC (DKT 45 [¶74]), but conveniently excised that reference from the SACC.

SMRH:437578179.3

notice of fraudulent claims until April 22, 2014.  (RJN, Exhibit D.)  In that declaration, United's representative states:

> 8.    In 2010, United was made aware of a marketing campaign advertising Lap-Band surgery through the phone number 1-800-GET-THIN.  As public concern over the campaign and its affiliated providers has been raised, United has monitored media reports and other public records regarding these entities.  Beginning in 2010, the Los Angeles Times published a number of articles regarding these entities, their owners, and their services.

(RJN, Exhibit D [¶8].)  This was followed by references to three Los Angeles Times articles, including the one published on April 18, 2010.  (*Id.*, Exhibit D [¶¶9-11 & Exhibits A-C].)  Later in the declaration, United's representative states:

> 18.    Amid the growing public concern over media reports about 1-800-GET-THIN as well as individual members complaints, in or about 2010, United began looking into the bills submitted by providers associated with the 1-800-GET-THIN campaign (the "GET-THIN providers").  United believes that a number of GET-THIN providers have been engaged in a fraudulent billing scheme that includes, among other things, billing for services not actually performed, falsifying diagnoses, altering medical records, upcoding, and grossly inflating their actual charges.  For that reason, United has referred claims submitted by the GET-THIN providers to Optum, which specializes in fraud and abuse investigations, for investigation and review.  Optum's investigation, which has included interviews with many United members, has confirmed significant improprieties in the GET-THIN providers billing practices.

(RJN, Exhibit D [¶18].)  The above statement is highly significant, since it indicates that United members were complaining to United—wrongly or rightly—and that United had begun its investigation as early as 2010.  Moreover, by no later than February 2011, United had put the providers on "prepayment review."  (RJN, Exhibit D [¶21 & Exhibit J].)

The above matters show that United's allegation that it did not have reason to suspect fraudulent claims until April 22, 2014 must be discounted—it simply is not true—leaving United's burden to demonstrate when it made its discovery unmet.

Similarly implausible is United's explanation of why it could not have made discovery earlier—"the claim forms … omitted the material misrepresentations that induced [United's] members into receiving these services" from the Providers.

1   (DKT 152 [¶¶126-27].)  Under United's scenario, nothing short of the Providers

2   proclaiming on the face of their bills that they were defrauding United and its

3   members would do.  But "a plaintiff is on inquiry notice when he at least suspects ...

4   that someone has done something wrong to him, wrong being used, not in any

5   technical sense, but rather in accordance with its lay understanding.  Such

6   reasonable suspicion exists when the plaintiff has notice or information of

7   circumstances to put a reasonable person on inquiry."  (*GG Capital v. Deutsche*

8   *Bank AG, supra*, 2014 WL 1672567, at *6 [internal quotation marks omitted].)

9   Thus, it is evident that since at least early 2010 United was on inquiry notice and

10  had the opportunity to obtain knowledge from sources open to it—such as United's

11  own members—to learn about all of the matters of which it complains. [10]  Under the

12  totality of the circumstances, United should be precluded from relying on the

13  discovery rule to toll the statute of limitations.

14  **V.    CONCLUSION**

15       For the foregoing reasons and the reasons stated in the Providers' Motion to

16  Dismiss, Individual Counterclaim Defendants Michael Omidi, M.D. and Julian

17  Omidi request that the Second Amended Counterclaim be dismissed, without leave

18  to amend, in accordance with the respective Notices of Motion.

19

20

21

22

---

23  [10] Moreover, United previously made specific factual allegations reflecting that it
    should have discovered the basis for its causes of action upon receipt of billings,
24  commencing in 2008, that "were unconscionable in that they are so exorbitant and
    wholly disproportionate to the services performed as to shock the conscience of
25  physicians of ordinary prudence practicing in the same community."  (DKT 45
    [FACC ¶¶201, 273-280, 297].)  Although this Court rejected United's theory that
26  excessive charges are actionable fraud (DKT 144 at 15-16), given United's stated
    belief that such charges were at the very least unusual and highly improper, United
27  certainly had ample basis to investigate.  Moreover, United actually alleged that as
    early as 2010 it began to stop making payment on claims.  (DKT 45 [FACC ¶201].)

28

SMRH:437578179.3

1  Dated:  June 25, 2015

2                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                   By         /s/ Charles L. Kreindler

5                              CHARLES L. KREINDLER
                               Attorneys for Individual Counterclaim
6                              Defendants Michael Omidi, M.D. and
                                         Julian Omidi
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:437578179.3