# EXHIBIT 8

Case 2:14-cv-03053-MWF-VBK Document 168-6 Filed 06/25/15 Page 49 of 68 Page ID #:6041

# WELLS FARGO & COMPANY
# HEALTH PLAN

**Effective January 1, 2011**

## Table of Contents


| CONTENTS | PAGE |
|---|---|
| **Section 1 : Introduction**<br>1.1 History of the Plan<br>1.2 Rules of Interpretation | 4 |
| **Section 2 : Definitions** | 5-8 |
| **Section 3 : Eligibility and Participation**<br>3.1 General Eligibility for Benefits<br>3.2 Enrollment<br>3.3 Modifications of Coverage<br>3.4 Discrimination<br>3.5 Special Rules Regarding Mental Health and Substance Abuse Benefits<br>3.6 Adopted Children<br>3.7 Medical Child Support Orders<br>3.8 Medicare Part D Notice of Creditable Coverage | 9-13 |
| **Section 4 : Benefits**<br>4.1 Schedule of Benefits<br>4.2 Post-Mastectomy Reconstructive Surgery<br>4.3 Coordination of Health Benefits<br>4.4 HIPAA Privacy and Security | 13-19 |
| **Section 5 : Funding and Contributions**<br>5.1 Funding Policy of Trust<br>5.2 Benefit Funding<br>5.3 Participant Contributions<br>5.4 Employer Contributions<br>5.5 Employer Obligation<br>5.6 Mistaken Contributions<br>5.7 Recovery of Improperly Paid Benefits<br>5.8 Right to Suspend Employer Contributions<br>5.9 Lost Participants | 19-21 |
| **Section 6 : Administration of the Plan**<br>6.1 Administration<br>6.2 Rules and Regulations<br>6.3 Method of Executing Instruments<br>6.4 Facility of Payment<br>6.5 Information Furnished by Participants<br>6.6 Indemnity<br>6.7 Service of Legal Process<br>6.8 Third Party Liability | 21-24 |




HOLLY EXHIBIT 8 PAGE 60

WellsFargo_000728

EXHIBIT K - 219

| | |
|---|---|
| **Section 7 : Claims and Appeals** | 24 |
| **Section 8 : Amendment and Termination**<br>8.1 Amendment<br>8.2 Termination of the Plan | 24-25 |
| **Section 9 : Miscellaneous**<br>9.1 Principal Sponsor<br>9.2 Limitation and Authority<br>9.3 Fiduciary Principles<br>9.4 Conflict of Interest<br>9.5 Dual Capacity<br>9.6 Named Fiduciaries<br>9.7 Spendthrift Provision<br>9.8 Construed as a Whole<br>9.9 Plan Identification Number | 25-26 |
| **Section 10 : Disclaimers**<br>10.1 No Employment Rights<br>10.2 No Guarantee<br>10.3 No Co-Responsibility | 26 |
| **EXHIBIT A : Component Programs** | 27 |
| **EXHIBIT B: Merger of the Wachovia Corporation Health and Welfare Plan for Certain Limited Purposes** | 28 |

**WELLS FARGO & COMPANY HEALTH PLAN**
**Effective January 1, 2011**

## SECTION 1
## INTRODUCTION

The Wells Fargo & Company Health Plan is hereby effective January 1, 2011 (the "Plan"). This Plan Statement, together with the applicable Insurance Policies, Summary Plan Descriptions, and rules and regulations of the Administrator shall constitute the written plan document for the Plan. Capitalized terms as used in this document shall have the meanings defined in this Plan Statement.

### 1.1 History of the Plan.

Effective January 1, 2011, the Plan is established to provide group health plan benefits for active employees and employees on approved leaves of absence (collectively "Team Members"), the eligible dependents of Team Members and COBRA participants.

### 1.2 Rules of Interpretation.

**(a)** An individual shall be considered to have attained a given age on the individual's birthday for that age (and not on the day before).

**(b)** The birthday of any individual born on a February 29 shall be deemed to be February 28 in any year that is not a leap year.

**(c)** Whenever appropriate, words used herein in the singular may be read in the plural, or words used herein in the plural may be read in the singular; the masculine may include the feminine; and the words hereof, herein or hereunder or other similar compounds of the word here shall mean and refer to the entire Plan Statement and not to any particular paragraph or section of the Plan Statement unless the context clearly indicates to the contrary.

**(d)** The titles given to the various sections of the Plan Statement are inserted for convenience of reference only and are not part of the Plan Statement, and they shall not be considered in determining the purpose, meaning or intent of any provision hereof.

**(e)** Any reference in the Plan Statement to a statute or regulation shall be considered also to mean and refer to any subsequent amendment or replacement of that statute or regulation.

**(f)** In the event of any inconsistency or conflict in the provisions of this Plan Statement, a Summary Plan Description or an Insurance Policy, the order of precedence shall be as follows:

(1) If there are any inconsistencies or conflicts between the Insurance Policies and this Plan Statement with respect to eligibility for coverage, the Plan Statement shall govern.

(2) If there are any inconsistencies or conflicts between an Insurance Policy and the Summary Plan Descriptions with respect to eligibility for coverage, the Summary Plan Descriptions shall govern

(3) If there are any inconsistencies or conflicts between the Insurance Policies and this Plan Statement with respect to benefits, the Insurance Policies shall govern.

(4) If there are any inconsistencies or conflicts between an Insurance Policy and the Summary Plan Descriptions with respect to benefits, the Insurance Policies shall govern.

**(i)** **<u>Hybrid Entity Designation</u>**. The plan Administrator intends the Plan to be a Hybrid Entity in accordance with 45 C.F.R. § 164.504(b) and only those benefits that would be a covered health plan under 45 C.F.R. § 160.103 (if set forth as a separate plan) will constitute the health care components of the Plan. Any benefit offered by the Plan that would not be a covered health plan under 45 C.F.R. §160.103 if provided through a separate plan is a non-health care component of the Hybrid Entity and is not subject to the Privacy Rule.

**(j)** **<u>Interpretation and Limited Applicability</u>**. This section 4.4 serves the sole purpose of complying with the requirements of HIPAA and shall be interpreted and construed in a manner to effectuate this purpose. Neither this section 4.4 nor the duties, powers, responsibilities, and obligations listed herein shall be taken into account in determining the amount or nature of the benefits provided to any person covered under this Plan, nor shall they inure to the benefit of any third parties. To the extent that any of the provisions of this section 4.4 are no longer required by HIPAA, they shall be deemed deleted and shall have no further force or effect.

**(k) Enrollment and Coverage Information Maintained on Wells Fargo Payroll System and Records.** Any information maintained on the Company's payroll system and records related to an Employee's enrollment and coverage level in the Plan (including an Employee's election to participate in the Plan and the Employee's coverage level under the Plan) shall be information held and maintained by the Company in its capacity as an employer and does not constitute PHI.

## SECTION 5
## FUNDING AND CONTRIBUTIONS

**5.1 Funding Policy of Trust**. The Principal Sponsor, from time to time, shall establish a funding policy and method for the Plan that is consistent with the objectives of the Plan. This funding policy and method, as established and amended from time to time, shall be stated to any person or entity responsible for the investment of any portion of the Trust funds, so that such person or entity may coordinate investment policies of the Trust with such funding policy and method.

**5.2 Benefit Funding.** Plan benefits shall be funded as follows:

**(a) Self-Insured Health Programs**. The Employer shall pay benefits and premiums under the Self-Insured Health Programs from the Trust or the Employer's general assets.

**(b) Insured Health Programs**. The Insurers or HMOs shall pay benefits under the Insured Health Programs (including benefits from an HMO) in accordance with the terms of the Insurance Policies. The Employer shall pay premiums for Insured Health Programs from the Trust or the Employer's general assets.

**5.3 Participant Contributions**. Participants employed by Employer shall be responsible for payment of such contributions to the Plan as may be specified from time to time as determined by the Principal Sponsor and the Premium Payment Rules. Participant contributions shall be paid to the Trust as soon as administratively feasible within a reasonable time (not to exceed 90 days) following receipt by the Employer.

**5.4 Employer Contributions**. The Employer shall pay such contributions to the Plan as may be determined from time to time by the Principal Sponsor to be necessary to pay benefits for Participants in the Self-Insured Health Programs and, where applicable, premiums for Participants in the Self-Insured and Insured Health Programs. All such contributions shall be paid to the Trust or directly to any Insurer or third party administrator within such time as may be determined by the Principal Sponsor.

**5.5 Employer Obligation**. All contributions, including contributions by Participants, shall be paid to the Insurers and HMOs at such time or times as shall be required to maintain the coverage in effect under the Insurance Policies. The liability of the Employer shall be limited to the payment of such

Case 2:14-cv-03053-MWF-VBK Document 168-6 Filed 06/25/15 Page 69 of 68 Page ID #:6060

premiums, and no Employee or Beneficiary shall have any claim or cause of action against the Employer on account of the failure of an Insurer or HMO to pay benefits under the Insurance Policies.

**5.6 Mistaken Contributions**. To the extent that a contribution is made by a Participant pursuant to a mistake in fact or administrative error, the Employer may repay or collect from the Participant the amount necessary to correct such mistaken contribution, provided, however, that in no event shall such a correction be made more than 12 months following the mistake in fact.

**5.7 Recovery of Improperly Paid Benefits.**

**(a) Errors and Mistakes**. The Administrator reserves the right to recover amounts from a Participant that have been improperly paid, directly or indirectly, to or on behalf of a Participant as a result of an error or mistake. To the extent such amounts are to be recovered from a third-party, the Participant is required to cooperate and assist the Administrator in recovering such amounts from the third-party. To the extent the Participant does not cooperate or the amount recovered is incomplete or unsatisfactory to the Administrator, the Administrator has the right to offset the Participant's future benefits under the Plan to recover the amounts that were improperly paid in the past to or on behalf of the Participant. The Administrator reserves the right to perform audits and other investigations to determine whether a Participant, or someone or entity on the Participant's behalf, has been accidentally overpaid engaged and may require the Participant to cooperate in the audit or investigation as a condition for continued participation in the Plan provided such action is permitted by ERISA or other applicable law.

**(b) Misrepresentation, False Claims, or Fraudulent Activity**. The Administrator reserves the right to recover amounts from a Participant that have been improperly paid, directly or indirectly, to or on behalf of a Participant from a Self-Insured Health Program as a result of misrepresentation, false claims, or fraudulent activity by the Participant and/or the Participant's health care provider. The Administrator reserves the right to (i) recoup all of the payments of benefits to the Participant or the Participant's health care provider from a Self-Insured Health Program; (ii) impose sanctions against a Participant (including termination of coverage if permitted by ERISA or other applicable law and/or termination of the Participant's employment with Employer) if the Administrator determines that the Participant engaged in fraud or deceit against the Plan; (iii) perform audits and other investigations to determine whether a Participant has engaged in fraud or deceit; and (iv) require the Participant to cooperate in the audit or investigation as a condition for continued participation in the Plan provided such action is permitted by ERISA or other applicable law.

The Administrator reserves the right to retroactively cancel coverage of a Participant and his or her covered dependents in a Self-Insured Health Program or Insured Health Program if the Participant fails to pay any required premium or contribution or if the Participant: (1) performs an act, practice or omission that constitutes fraud, or (2) makes an intentional misrepresentation of material fact. Under these circumstances, coverage may be retroactively terminated after the plan provides at least thirty (30) days advance written notice to each individual who will lose coverage. If an individual's coverage is retroactively terminated, then the individual may appeal the decision in accordance with the rescission appeal procedures established by the Administrator and communicated in writing to the individual. Wells Fargo Corporate Benefits shall be the named fiduciary and shall have the discretionary authority and responsibility to decide all factual and legal questions with respect to rescission of coverage under a Self-Insured Health Program or Insured Health Program.

**5.8 Right to Suspend Employer Contributions**. It is the expectation of the Employer that it will continue contributions to the Plan, but such continuance is not assumed as a contractual obligation of the Employer, and the right is reserved by the Employer at any time and from time to time to reduce, suspend or discontinue any or all Employer contributions.