# EXHIBIT A

No. ____

IN THE

# Supreme Court of the United States

ROBERT MONTANILE,

*Petitioner,*

v.

BOARD OF TRUSTEES OF THE NATIONAL ELEVATOR
INDUSTRY HEALTH BENEFIT PLAN,

*Respondent.*

On Petition for a Writ of Certiorari to the
United States Court of Appeals
for the Eleventh Circuit

## PETITION FOR A WRIT OF CERTIORARI

SHAUN P. MARTIN
University of San Diego
School of Law
5998 Alcalá Park
San Diego, CA 92110

RADHA A. PATHAK
Whittier Law School
3333 Harbor Boulevard
Costa Mesa, CA 92626

PETER K. STRIS
  *Counsel of Record*
BRENDAN S. MAHER
DANA BERKOWITZ
VICTOR O'CONNELL
Stris & Maher LLP
725 S. Figueroa St., Ste. 1830
Los Angeles, CA 90017
(213) 995-6800
*peter.stris@strismaher.com*

*Counsel for Petitioner*

December 16, 2014

-i-

## QUESTION PRESENTED

This petition presents a single question about the meaning of an important remedial provision of the Employee Retirement and Income Security Act of 1974 ("ERISA"). Eight of the thirteen circuits have squarely and openly disagreed over the question presented. The result is a widely acknowledged 6-2 circuit split. In a recent invitation brief, the United States acknowledged the (then) 5-2 circuit split and endorsed the *minority* position. Brief for the United States as Amicus Curiae, Thurber v. Aetna Life Ins. Co., 134 S.Ct. 2723 (May 6, 2014) (No. 13-130). The government recommended denial, however, solely on vehicle grounds. *Id.* at 15–20. The petition was denied.

The question presented by this petition is:

Does a lawsuit by an ERISA fiduciary against a participant to recover an alleged overpayment by the plan seek "equitable relief" within the meaning of ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), if the fiduciary has not identified a particular fund that is in the participant's possession and control at the time the fiduciary asserts its claim?

-ii-

## TABLE OF CONTENTS

Question presented .................................................................. i

Table of contents .................................................................. ii

Table of authorities ............................................................ iii

Introduction ......................................................................... 1

Opinions below .................................................................... 2

Jurisdiction ......................................................................... 2

Statutory provision involved ............................................. 2

Statement of the case ......................................................... 3

    A.  Statutory background ............................................ 3

    B.  Factual background ............................................. 10

    C.  Proceedings below ............................................... 12

Reasons for granting the petition ................................... 15

I.    As the United States acknowledges, the question presented has divided the circuits ........ 15

II.   The decision below conflicts with this Court's cases and is wrong on the merits. ......................... 17

III.  Immediate review is necessary because the question presented is exceptionally important and requires a uniform national answer.............. 18

Conclusion.......................................................................... 22

Appendices

A — Court of appeals opinion.................................... App. 1

B — District court summary-judgment order ...... App. 19

C — Court of appeals opinion in *AirTran* ............. App. 46

D — Denial of rehearing en banc in *AirTran* ....... App. 77

-iii-

## TABLE OF AUTHORITIES

### Cases

*AirTran Airways, Inc. v. Elem*,
    767 F.3d 1192 (11th Cir. 2014)...............2, 13, 14, 17

*Bilyeu v. Morgan Stanley Long Term Disability
    Plan*, 683 F.3d 1083 (9th Cir. 2012) ........... 9, 15, 16

*Conkright v. Frommert*,
    130 S. Ct. 1640 (2010)............................................. 20

*Cusson v. Liberty Life Assurance Co.*,
    592 F.3d 215 (1st Cir. 2010) ............................... 8, 15

*D & H Therapy Assoc.'s, LLC v. Boston Mut. Life
    Ins. Co.*, 691 F. Supp. 2d 304 (D.R.I. 2010) ......... 20

*Egelhoff v. Egelhoff*,
    532 U.S. 141 (2001)................................................. 21

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989).................................................. 3

*Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1 (1987)..................................................... 21

*Funk v. CIGNA Grp. Ins.*,
    648 F.3d 182 (3d Cir. 2011) ............................... 8, 15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)............................................. 4, 17

*Gutta v. Standard Select Trust Ins. Plans*,
    530 F.3d 614 (7th Cir. 2008).............................. 9, 15

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)................................................ 21

*Longaberger Co. v. Kolt*,
    586 F.3d 459 (6th Cir. 2009).............................. 9, 15

*Mertens v. Hewitt*,
    508 U.S. 248 (1993)................................................. 4

-iv-

*Rush Prudential HMO, Inc. v. Moran*,
    536 U.S. 355 (2002) ................................................. 20

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
    547 U.S. 356 (2006) ................................................... 5

*Thurber v. Aetna Life Ins. Co.*,
    134 S. Ct. 381 (2013) ........................................... 9, 16

*Thurber v. Aetna Life Ins. Co.*,
    134 S. Ct. 2723 (2014) ............................................... 9

*Thurber v. Aetna Life Ins. Co.*,
    712 F.3d 654 (2d Cir. 2013) ............................... 8, 16

*Treasurer, Trustees of Drury Indus., Inc. Health
    Care Plan & Trust v. Goding*,
    692 F.3d 888 (8th Cir. 2012) .............................. 9, 16

*US Airways, Inc. v. McCutchen*,
    133 S. Ct. 1537 (2013) .............................................. 6

**Statutory Provisions**

28 U.S.C. § 1254(1) ................................................... 2

29 U.S.C. § 1002(1) ................................................... 3

29 U.S.C. § 1002(2) ................................................... 3

29 U.S.C. § 1102 ..................................................... 11

29 U.S.C. § 1132(a)(3) ................................................. *passim*

42 U.S.C. § 407(a) .................................................... 8

**Rules**

Sup. Ct. R. 10(a) ...................................................... 1

Sup. Ct. R. 10(c) ...................................................... 1

-v-

**Other Authorities**

Brendan S. Maher & Peter K. Stris,
    *ERISA & Uncertainty*, 88 WASH. U. L.
    REV. 433 (2010)................................................. 21, 22

Brendan S. Maher & Radha A. Pathak,
    *Understanding and Problematizing
    Contractual Tort Subrogation*, 40 LOY. U.
    CHI. L.J. 49 (2008).................................................... 7

Brief for the American Council of Life Insurers,
    America's Health Insurance Plans, and the
    American Benefits Council as Amicus
    Curiae in Support of Petition for Writ of
    Certiorari, First Unum Life Ins. Co. v.
    Bilyeu, 133 S.Ct. 1242 (Nov. 28, 2012) (No.
    12-526) ..................................................................... 19

Brief of Petitioners,
    Sereboff v. Mid Atl. Med. Servs., Inc., 547
    U.S. 356 (Jan. 19, 2006) (No. 05-260) ..................... 5

Brief for Respondents,
    US Airways, Inc. v. McCutchen, 133 S. Ct.
    36 (Oct. 18, 2012) (No. 11-1285).............................. 6

Brief for the United States as Amicus Curiae,
    Thurber v. Aetna Life Ins. Co., 134 S.Ct.
    2723 (May 6, 2014) (No. 13-130) .......... i, 1, 9, 16, 18

COUNCIL FOR DISABILITY AWARENESS, 2014
    LONG TERM DISABILITY CLAIMS REVIEW
    (2014), *available at* http://www.disability
    canhappen.org/research/CDA_LTD_Claim
    s_Survey_2014.pdf.................................................. 19

National Elevator Industry Health Benefit Plan:
    Form 5500 Annual Report (2009),
    *available at* https://efast.dol.gov/portal/
    app/disseminate?execution=e1s1 ......................... 10

-vi-

Petition for a Writ of Certiorari,
First Unum Life Ins. Co. v. Bilyeu, 133
S.Ct. 1242 (October 26, 2012) (No. 12-526)............ 9

Petition for a Writ of Certiorari,
Thurber v. Aetna Life Ins. Co., 134 S.Ct.
2723 (July 26, 2013) (No. 13-130)................ 9, 20, 21

Restatement of Restitution and Unjust
Enrichment § 161 (1936) ....................................... 18

Restatement of Restitution and Unjust
Enrichment § 215 (1936) ....................................... 17

Roy F. Harmon III, *The Conflict Between ERISA
Overpayment Claims and Statutory
Protection of SSDI Benefits*, HEALTH
PLAN LAW (Dec. 22, 2008), http://www.
healthplanlaw.com/?p=1017)................................. 20

Vanessa Fuhrmans, *Accident Victims Face Grab
for Legal Winnings*, WALL ST. J., (Nov. 7,
2007, 11:59 PM), http://www.wsj.com/news/
articles/SB119551952474798582............................. 7

Victor O'Connell & Peter K. Stris, *ERISA &
Equity*, 29 ABA J. LAB. & EMP. L. 125
(2013). ....................................................................... 4

William Pierron & Paul Fronstin, *ERISA Pre-
emption: Implications for Health Reform
and Coverage*, EMP. BENEFIT RESEARCH
INST. (Feb. 2008), *available at* http://www.
ebri.org/pdf/briefspdf/ebri_ib_02a-20082.
pdf............................................................................ 19

-1-

## INTRODUCTION

There is a well-recognized and intractable circuit split involving eight of the thirteen circuits over the question presented. *See infra* 15–17. Certiorari is warranted for that reason alone. Sup. Ct. R. 10(a).

But the question presented is worthy of review for other reasons as well. It turns entirely on the proper interpretation of this Court's line of ERISA section 502(a)(3) cases. Six circuits read those cases one way. Two circuits, joined by the United States Solicitor General and the United States Department of Labor, read those cases to mean precisely the opposite. Thus, one group of circuits has *necessarily* decided "an important federal question in a way that conflicts with relevant decisions of this Court." Sup. Ct. R. 10(c). And for precisely the reasons articulated by the United States in a recent invitation brief, the decision below is on the wrong side of that conflict. *See infra* 17–18 (discussing Brief for the United States as Amicus Curiae, Thurber v. Aetna Life Ins. Co., 134 S.Ct. 2723 (May 6, 2014) (No. 13-130) ("U.S. Br."); *see also infra* 3–6 (discussing this Court's prior ERISA section 502(a)(3) cases).

The time for resolution is now. As leading advocates on both sides of this issue have made clear, the question presented is of extraordinary importance to employers and workers across the country and requires a uniform national answer. *See infra* 18–22. And, unlike in *Thurber*, there is no "logically antecedent issue" or other vehicle problem in this case that "could prevent the Court from deciding the . . . question presented." U.S. Br. 5.

The petition should be granted.

-2-

## OPINIONS BELOW

The opinion of the Eleventh Circuit in this case (Pet. App. 1–18) is unreported. The district court's summary-judgment decision (Pet. App. 19–45) is unreported. The 2-1 decision of the Eleventh Circuit in *AirTran Airways, Inc. v. Elem*, by which the panel in this case was bound, (Pet. App. 46–76) is reported at 767 F.3d 1192. The order denying rehearing and rehearing *en banc* in *AirTran* (Pet. App. 77–78) is unreported.[1]

## JURISDICTION

The judgment of the court of appeals was entered on November 25, 2014. Pet. App. 1. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTORY PROVISION INVOLVED

Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, as amended, provides in relevant part:

(a) Persons empowered to bring a civil action.

A civil action may be brought—

\*\*\*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

---

[1] For the convenience of the Court, Petitioner has reproduced in the Appendix the two relevant *AirTran* decisions.

-3-

redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

\*\*\*\*

## STATEMENT OF THE CASE

This petition presents a single question about the meaning of an important remedial provision of ERISA. That statutory provision, which has already resulted in several published decisions by this Court, authorizes a participant, beneficiary, or fiduciary to obtain an injunction or "other appropriate equitable relief" to redress statutory violations or to enforce the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3).

In an effort to clearly explain the need for further review, this petition first provides some necessary statutory and factual background. It then recounts the relevant procedural history of this case.

### A. Statutory Background

ERISA is a landmark federal statute designed "to promote the interests of employees and their beneficiaries in employee benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted). It was drafted to include not only pension plans, 29 U.S.C. § 1002(2), but also welfare plans, 29 U.S.C. § 1002(1). Today, ERISA welfare plans are the primary source of health, life, and disability insurance for millions of Americans.

Section 502(a) of ERISA sets forth the exclusive remedies that are available to a civil litigant under the statute. *See* 29 U.S.C. § 1132(a). The most controversial part of ERISA's remedies provisions is section

-4-

502(a)(3)(B), which authorizes a civil action to recover "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B).[2] That statutory phrase has already resulted in several decisions by this Court:

1.  In 1993, this Court first interpreted the meaning of the words "appropriate equitable relief" in 29 U.S.C. § 1132(a)(3)(B). *See Mertens v. Hewitt*, 508 U.S. 248 (1993). In a 5-4 decision, the *Mertens* Court held that Congress intended the phrase to refer only to "those categories of relief that were typically available in equity." *Id.* at 256.

In 2002, this Court decided *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). In *Knudson*, an ERISA fiduciary whose plan had paid the medical bills of an injured participant sought "reimbursement" from that participant after she reached a monetary settlement with the responsible tortfeasor. *Id.* at 207. The proceeds of the settlement had been deposited directly into a special needs trust, which was not made a party to the litigation. *Id.* at 208. For that reason, the *Knudson* Court held that the fiduciary had no recourse against the participant personally. *Id.* at 210.

---

[2] The meaning of the phrase "appropriate equitable relief" is not only controversial, but also of unique importance. Section 502(a)(3) is the only provision in ERISA that permits a fiduciary to seek monetary relief from a participant or beneficiary who has violated the terms of her ERISA plan. And it is the only provision in ERISA that permits a participant or beneficiary to seek individualized monetary relief to remedy a statutory violation. *See generally* Victor O'Connell & Peter K. Stris, *ERISA & Equity*, 29 ABA J. LAB. & EMP. L. 125, 133–36 (2013).

-5-

In 2006, this Court decided *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006). *Sereboff* involved the same factual scenario as *Knudson* but with one critical difference: the funds sought by the fiduciary were paid to the named defendants and segregated by agreement of the parties pending the resolution of litigation. *Id.* at 360. The defendants argued that the "reimbursement" sought by the fiduciary was neither available as a restitutionary equitable lien (because the segregated settlement funds could not be traced back to the monies paid by the plan to cover the participant's medical bills), Brief of Petitioners at 17–23, Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356 (Jan. 19, 2006) (No. 05-260), nor as an equitable lien by agreement (because such a contractual remedy was not typically available in pre-merger courts of equity), *id.* at 24–27.

The *Sereboff* Court disagreed. It held that an equitable lien by agreement *was* typically available as a remedy in pre-merger courts of equity. *Sereboff*, 547 U.S. at 368. And, as such, there was no requirement that the fiduciary trace the settlement fund back to the monies paid by the plan to cover the participant's medical bills. *Id.* at 365.

The *Sereboff* Court did not, however, overrule the core teaching of *Knudson*. Indeed, because the settlement funds in *Sereboff* were being held in escrow pending resolution of the litigation, the Court expressly noted that the "impediment to characterizing the relief in [*Knudson*] as equitable [was] not present [because the plaintiff] sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [defendants'] assets generally, as would be the case with a contract action at law." *Id.* at 362–63.

-6-

In 2013, this Court decided *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013). In *McCutchen*, this Court—for a third time—evaluated the viability of a claim by an ERISA fiduciary whose plan had paid the medical bills of an injured participant that sought "reimbursement" from that participant after she reached a monetary settlement with a tortfeasor. *Id.* at 1543. As in *Sereboff* (and unlike in *Knudson*), the funds on which the fiduciary wished to place an equitable lien were indisputably in the possession of the defendants. *Id.*

In *McCutchen*, the defendants pressed an argument left open by the *Sereboff* Court—that the relief sought by the fiduciary was not "appropriate" because it contravened equitable common fund and make whole doctrines. *See* Brief for Respondents, US Airways, Inc. v. McCutchen, 133 S. Ct. 36 (Oct. 18, 2012) (No. 11-1285). The *McCutchen* Court rejected that argument. It held that the default equitable doctrines relied on by defendants will not apply under ERISA if they are disclaimed by the relevant plan documents. *McCutchen*, 133 S. Ct. at 1546.

Like the *Sereboff* Court, the *McCutchen* Court did not purport to overrule the core teaching of *Knudson*. To the contrary, it emphasized that the fiduciary in *McCutchen* (like the fiduciary in *Sereboff*) sought "equitable relief" because it claimed "'specifically identifiable funds' within the [defendants'] control. . . ." *Id.* at 1545 (emphasis added).

2. In the wake of *Mertens*, *Knudson*, *Sereboff*, and *McCutchen*, litigation by ERISA fiduciaries against plan participants often turns almost entirely on one critical question: may an ERISA fiduciary enforce an equitable lien against a defendant's general assets when specifically identified funds are no longer in his or her

-7-

possession? That question is exceptionally important and arises frequently in various types of ERISA cases. To appreciate the magnitude of the stakes involved, it is necessary to understand the three major settings in which the question presented is often, as in this case, outcome determinative: (1) healthcare cases, (2) disability cases, and (3) pension cases.

*Healthcare cases*. ERISA plans often pay the medical expenses of participants or beneficiaries who are injured in an accident. Most plans contain terms requiring those benefits to be repaid if the recipient later obtains a recovery from a responsible third party. Many plans expressly disclaim application of the common fund doctrine (*i.e.*, the plan will free-ride on the work of the participant's personal injury attorney) and authorize first-dollar recovery (*i.e.*, the plan will be reimbursed 100% even if the injured participant will receive nothing).[3] When there is a dispute over the existence or amount of the plan's lien, a fiduciary must act promptly to protect its interest. Otherwise, some or all of the disputed monies may be spent in good faith before resolution of the parties' dispute. In such cases, the question arises: can an "equitable lien" be enforced without showing that the funds on which the lien was placed remain in the defendant's possession?

---

[3] Such provisions can be terribly unfair. *See, e.g.*, Vanessa Fuhrmans, *Accident Victims Face Grab for Legal Winnings*, WALL ST. J., (Nov. 7, 2007, 11:59 PM), http://www.wsj.com/news/articles/SB119551952474798582. As such, they are unenforceable under the law of most states. *See generally* Brendan S. Maher & Radha A. Pathak, *Understanding and Problematizing Contractual Tort Subrogation*, 40 LOY. U. CHI. L.J. 49 (2008).

-8-

*Disability cases.* ERISA plans often wish to require disability benefits to be repaid if a beneficiary receives Social Security Disability Income ("SSDI"). But section 407(a) of the Social Security Act shields SSDI benefits from attachment. *See* 42 U.S.C. § 407(a). To avoid running afoul of that prohibition, many ERISA plans are written to deem disability benefits as "overpayments" subject to recoupment if SSDI is received. Under these plans, when a plan participant becomes disabled, is paid benefits, and—months or years later—receives SSDI, the plan seeks recoupment for its "overpaid" benefits, which by that time have been spent on living expenses. Again, the question arises: can an "equitable lien" be enforced without showing that the funds on which the lien was placed remain in the defendant's possession?

*Pension cases.* A third common fact pattern arises in pension cases. Years after pension benefits are paid, a plan discovers that the benefit payments were too high as a result of a miscalculation by the plan. The plan's terms authorize recoupment. As one can imagine, the result of seeking such recoupment can be extremely harsh for individuals who have exhausted the funds that they honestly believed they were entitled to spend. Once again, the question presented is implicated.

3. Prior to this case, five circuits had held that an ERISA fiduciary may enforce an equitable lien against a defendant's general assets even if the fund has been dissipated, whereas two circuits had held that it may not. *Compare Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215 (1st Cir. 2010) (plan may collect from defendant even though the fund was no longer in the defendant's possession or control), and *Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654 (2d Cir. 2013) (same), and *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182 (3d Cir. 2011) (same),

-9-

and *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009) (same), and *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614 (7th Cir. 2008) (same), *with Treasurer, Trustees of Drury Indus., Inc. Health Care Plan & Trust v. Goding*, 692 F.3d 888 (8th Cir. 2012) (when the defendant is no longer in possession of a fund, a Plan cannot enforce an equitable lien), and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012) (same).

Advocates on both sides have implored this Court to intervene and resolve the circuit split. *See, e.g.*, Petition for a Writ of Certiorari, First Unum Life Ins. Co. v. Bilyeu, 133 S.Ct. 1242 (October 26, 2012) (No. 12-526) (filed by plan fiduciary); Petition for a Writ of Certiorari, Thurber v. Aetna Life Ins. Co., 134 S.Ct. 2723 (July 26, 2013) (No. 13-130) (filed by plan participant).

Last year, this Court called for the views of the Solicitor General. *Thurber v. Aetna Life Ins. Co.*, 134 S. Ct. 381 (2013). In its invitation brief, the government acknowledged the existence of a (then) five-to-two circuit split. U.S. Br. at 6–9. It proceeded to explain in detail why the position of the majority is wrong because it directly contravenes *Knudson*, see U.S. Br. at 9–14, based on a fundamental misinterpretation of *Sereboff*, see U.S. Br. at 14–15.

The government recommended denial, however, on vehicle grounds. *See* U.S. Br. at 6–20 ("The first question presented implicates a conflict in the courts of appeals, but this petition is a poor vehicle for resolving it.") (initial capitalization removed); *id.* at 15–20 (explaining the specific vehicle problems present in *Thurber*). The *Thurber* petition was subsequently denied. *Thurber v. Aetna Life Ins. Co.*, 134 S. Ct. 2723 (2014).

-10-

## B.  Factual Background

On December 1, 2008, Petitioner Robert Montanile was seriously injured when a drunk driver ran a stop sign and struck his automobile. Pet. App. 6. Mr. Montanile underwent lumbar spinal fusion surgery and other treatment to alleviate his pain and loss of function. Pet. App. 6. He requires ongoing medical care and continues to suffer pain and physical limitations. Brief of Appellant at 5, Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan (May 27, 2014) (No. 14-11678) ("Montanile's C.A. Brief"). The National Elevator Industry Health Benefit Plan ("National Elevator Plan" or "Plan"), a billion-dollar multiemployer ERISA plan, paid Mr. Montanile's initial medical expenses in the amount of $121,044.02. Pet. App. 6; National Elevator Industry Health Benefit Plan: Form 5500 Annual Report at \*48–50 (2009), *available at* https://efast.dol.gov/portal /app/disseminate?execution=e1s1 (to access the relevant document, use the Form 5500 Filing Search and search for Acknowledgement ID: 20101027094142P04000062234 3003) (listing approximately $1 billion in assets and over 500 participating employers).

Mr. Montanile retained counsel to sue the drunk driver and eventually settled his claims for a total of $500,000. Pet. App. 6. Out of that amount, Mr. Montanile paid his attorneys a $200,000 contingency fee and $63,788.48 in expenses. Pet. App. 6. Respondent Board of Trustees of the National Elevator Industry Health Benefit Plan ("Trustees"), which operates and administers the Plan, then asserted a right to be reimbursed the $121,044.02 the Plan had paid to Mr. Montanile's medical providers. Pet. App. 7. The Trustees sought reimbursement on a "first dollar" basis—*i.e.*, without any adjustment for Mr. Montanile's fees and

-11-

expenses or for the fact that he was not made whole. Pet. App. 7.

The Trustees relied on the following provision of the Plan's Summary Plan Description (the "Reimbursement Provision"):

> The Plan has a right to first reimbursement out of any recovery. Acceptance of benefits from the Plan for an injury or illness by a covered person, without any further action by the Plan and/or the covered person, constitutes an agreement that any amounts recovered from another party by award, judgment, settlement or otherwise, and regardless of how the proceeds are characterized, will promptly be applied first to reimburse the Plan in full for benefits advanced by the Plan due to the injury or illness and without reduction for attorneys' fees, costs, expenses or damages claimed by the covered person, and regardless of whether the covered person is made whole or recovers only a part of his/her damages.

Pet. App. 5–7.[4]

---

[4] In the lower courts, Mr. Montanile argued that the Reimbursement Provision was not enforceable as a term of the National Elevator Plan because the Summary Plan Description did not qualify as the written instrument required by 29 U.S.C. § 1102. The Court of Appeals disagreed, holding that the terms of the Summary Plan Description "are enforceable, pursuant to § 1132(a)(3) because (1) no other document lays out the rights and obligations of plan participants and (2) the Trust Agreement contemplated the rights and obligations would be set forth in a separate document." Pet. App. 15. Mr. Montanile does not seek further review of the Court of Appeals' decision with respect to the enforceability of the Reimbursement Provision.

-12-

Mr. Montanile retained experienced ERISA attorney Brian S. King, who tried to negotiate a settlement with the Trustees for eight months. Montanile's C.A. Brief 6. When the parties reached an impasse, Mr. King requested that the Trustees either accept his final offer or file suit. Montanile's C.A. Brief 6. Mr. King told the Trustees that he would release the remaining settlement funds to Mr. Montanile if they failed to respond within 14 days. Montanile's C.A. Brief 6. After nearly a month passed with no response, Mr. Montanile asked his lawyer to distribute the rest of the funds to him, and Mr. King complied. Montanile's C.A. Brief 6–7.

Mr. Montanile then used the money to pay Mr. King's legal bills and to care for himself and his 12-year-old daughter. Montanile's C.A. Brief 7. Several months later, when significantly less than the $121,044.02 sought by the Trustees remained in Mr. Montanile's possession, the Trustees filed this lawsuit. Montanile's C.A. Brief 7.

## C.  Proceedings Below

The Trustees sued Mr. Montanile under 29 U.S.C. § 1132(a)(3) seeking reimbursement of benefits that the Plan paid to his medical providers. Pet. App. 7. Section 1132(a)(3) authorizes an ERISA fiduciary to seek "appropriate equitable relief" to "enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). Relying on *Sereboff*, the Trustees sought reimbursement in the form of an equitable lien by agreement to "enforce . . . the terms of the [National Elevator Plan]." Montanile's C.A. Brief 12.

After exchanging Rule 26(a) disclosures, the parties cross-moved for summary judgment. Montanile's C.A. Brief 12–13. Mr. Montanile opposed the Trustees' motion on the grounds that the reimbursement they sought did not constitute "appropriate equitable relief" because the

-13-

funds on which they wished to assert an equitable lien by agreement had been dissipated. Pet. App. 8. The district court acknowledged that "*Sereboff* did not address the issue of a beneficiary's dissipation of assets because the funds there were placed in a separate account through the duration of the case" and that "[t]he Eleventh Circuit has similarly not had occasion to address the issue of dissipation." Pet. App. 40. Nevertheless, believing that it was following "the overwhelming majority of circuit courts," the district court granted summary judgment to the Trustees. Pet. App. 40.

Mr. Montanile timely appealed. Pet. App. 9. He argued, in relevant part, that 29 U.S.C. § 1132(a)(3) authorizes equitable relief only to the extent available at common law. Montanile's C.A. Brief 15. And, at common law, an equitable lien by agreement could be enforced against specific property within the current possession and control of a debtor, but not against his general assets. Montanile's C.A. Brief 15. Because Mr. Montanile's settlement fund was dissipated in good faith prior to the initiation of this lawsuit, the magistrate judge erred in granting summary judgment to the Trustees and should have been reversed. Montanile's C.A. Brief 15.

After the parties had fully briefed Mr. Montanile's appeal, a divided three-judge panel of the Eleventh Circuit issued its decision in *AirTran Airways, Inc. v. Elem*. Pet. App. 46–76. In *AirTran*, the panel majority squarely decided the question presented, expressly adopting the position of the First, Second, Third, Sixth, and Seventh Circuits and rejecting the position of the Eighth Circuit, Ninth Circuit, and federal government. Pet. App. 53–54. Judge Martin dissented. *See* Pet. App. 65 (Martin, J., dissenting) ("Supreme Court precedent

-14-

makes clear that a plaintiff proceeding in equity to recover funds from a defendant must, at a minimum, show that those funds are presently in the defendant's possession.").

Shortly thereafter, the *AirTran* defendants retained undersigned counsel and timely petitioned for rehearing *en banc. See* Petition for Rehearing En Banc, AirTran Airways Inc. v. Elem., 767 F.3d 1192 (October 14, 2014) (No. 13-11738). In that petition, the *AirTran* defendants analyzed the existing circuit split and argued that the panel decision conflicted with both Supreme Court and Eleventh Circuit precedent.

While the *AirTran* petition for rehearing *en banc* was pending, another Eleventh Circuit panel heard oral argument on Mr. Montanile's appeal. Less than one week after hearing oral argument, that panel rejected Mr. Montanile's arguments and affirmed the decision below. Pet. App. 2.

The *Montanile* court noted that Mr. Montanile's primary argument "is now foreclosed by our recent holding in [*AirTran*]." Pet. App. 11. Indeed, after describing the *AirTran* holding, that funds are "specifically identifiable" and dissipation cannot "destroy the lien that attached" beforehand, the court concluded: "This holding binds our decision here. Accordingly, the Board can impose an equitable lien on Montanile's settlement, even if dissipated . . . ." Pet. App. 11.

On December 2, 2014, the petition for rehearing *en banc* in *AirTran* was denied. Pet. App. 77.

This petition followed.

-15-

## REASONS FOR GRANTING THE PETITION

This petition presents a textbook case for further review. There is a widely-recognized and intractable circuit split involving eight of the thirteen circuits over the question presented. *See infra* 15–17. The decision below conflicts with relevant decisions of this Court. *See infra* 17–18. And, as leading advocates on both sides of this issue have made clear, immediate review is necessary because the question presented is exceptionally important and requires a uniform national answer. *See infra* 18–22.

## I.  As the United States Acknowledges, the Question Presented Has Divided the Circuits.

Prior to 2012, four circuits (the First, Third, Sixth, and Seventh) addressed the question presented: may an ERISA plan fiduciary enforce an equitable lien by agreement under 29 U.S.C. § 1132(a)(3) without first identifying a particular fund that is currently in the defendant's possession and control on which the lien may be enforced? Each of the initial four circuits to address the question agreed that its answer is yes. In chronological order, the four relevant decisions are: *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614 (7th Cir. 2008), *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009), *Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215 (1st Cir. 2010), and *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182 (3d Cir. 2011).

In 2012, two additional circuits (the Eighth and Ninth) addressed the question presented. These two circuits determined that the answer to the question presented is no. In chronological order, the two relevant decisions are: *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012), *cert.*

-16-

*denied*, 133 S.Ct. 1242 (2013), and *Treasurer, Trustees of Drury Industries, Inc. Health Care Plan & Trust v. Goding*, 692 F.3d 888 (2012), *cert. denied*, 133 S. Ct. 1644 (2013).

In so holding, they created a square and openly acknowledged 4-2 circuit split. *See, e.g.*, *Bilyeu*, 683 F.3d at 1094 ("We recognize that a number of circuits have [held] that a fiduciary can assert an equitable lien . . . even if the beneficiary no longer possesses the specifically identified funds. . . . We are unpersuaded by the view of those other circuits.").

In 2013, the Second Circuit became the seventh court of appeals to address the question presented. *See Thurber v. Aetna Life Ins. Co*., 712 F.3d 654 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2723 (2014). The Second Circuit expressly "recognize[d] the existence of a Circuit split on the issue," *id*. at 663, and then proceeded to adopt the majority position, *id*. at 663–66, resulting in a 5-2 circuit split.

Upon Ms. Thurber's petition for a writ of certiorari, this Court invited the Solicitor General to file a brief expressing the views of the United States. *Thurber v. Aetna Life Ins. Co.*, 134 S. Ct. 381 (2013). The United States acknowledged that "the courts of appeals are divided on this question," U.S. Br. at 6, and proceeded to endorse the minority position, U.S. Br. at 9–15. Nevertheless, the government recommended against granting certiorari because a "predicate and case-specific question of plan interpretation could prevent the Court from reaching the first question presented." U.S. Br. at 15.

In the decision below and *AirTran*, the Eleventh Circuit joined the First, Second, Third, Sixth, and

-17-

Seventh Circuits in answering the question presented in the affirmative. The *AirTran* majority adopted the positions of "those circuit courts," Pet. App. 54, over a vigorous dissent in favor of the minority rule, Pet. App. 71 (Martin, J., dissenting) ("The majority relies on what I believe is a misapplication of *Sereboff*, accepted by some of our sister circuits, to characterize the recovery of assets no longer in the defendant's possession as equitable relief."). *AirTran* bound the panel in this case and, following denial of rehearing *en banc*, it is now the established law of the Eleventh Circuit.

## II. The Decision Below Conflicts with this Court's Cases and Is Wrong on the Merits.

In the words of the dissenting judge in *AirTran*: "Supreme Court precedent makes clear that a plaintiff proceeding in equity to recover funds from a defendant must, at a minimum, show that those funds are presently in the defendant's possession." Pet. App. 65 (Martin, J., dissenting).

Specifically, the decision below—like each case in the circuit split majority—has taken a position that directly conflicts with the core teaching of *Knudson*: that "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust or an equitable lien upon other property of the [defendant].'" *Knudson*, 534 U.S. at 213–214 (quoting Restatement of Restitution and Unjust Enrichment § 215, cmt. a, at 867 (1936) (brackets in original) ("Restatement").

Moreover, as the United States has explained, the decision below cannot be reconciled with black-letter principles that this Court has held must undergird any

-18-

claim for equitable relief. *See, e.g.*, U.S. Br. at 12 (discussing, *inter alia*, Restatement § 161, cmt. e (an "equitable lien [could] be established and enforced only if there [was] some property which [was] subject to the lien" and where "the property subject to the equitable lien can no longer be traced, the equitable lien cannot be enforced.")).

To reiterate: in its *Thurber* invitation brief, the United States has explained in detail why the position of the First, Second, Third, Sixth, Seventh (and now Eleventh) Circuits is wrong and conflicts with this Court's ERISA section 502(a)(3) cases. *See* U.S. Br. at 9–14 (explaining why the panel majority's holding is wrong and conflicts with this Court's ERISA section 502(a)(3) cases); 14–15 (specifically explaining the misreading of *Sereboff*). This Court should grant the petition and expressly approve or reject the government's formal position. Absent such intervention, the lower courts will continue to be hopelessly divided on this important question of federal law.

## III. Immediate Review Is Necessary Because the Question Presented is Exceptionally Important and Requires a Uniform National Answer.

As explained above, this Court has decided several cases about the meaning of "appropriate equitable relief" in section 502(a)(3) of ERISA. In the wake of those cases, litigation pursuant to that section has focused on the historical conditions that pre-merger equity courts would require for particular forms of relief. Thus, in the context of fiduciaries suing participants, litigation in a wide range of cases now turns almost entirely on the question presented.

-19-

The financial security of millions of Americans hangs on the answer. As of 2006, ERISA plans covered over 132 million people. *See* William Pierron & Paul Fronstin, *ERISA Pre-emption: Implications for Health Reform and Coverage*, EMP. BENEFIT RESEARCH INST., at 11 (Feb. 2008), *available at* http://www.ebri.org/pdf/briefs pdf/ebri_ib_02a-20082.pdf. And it is beyond dispute that billions of dollars are at stake in reimbursement and overpayment disputes. In the disability context alone, 653,000 beneficiaries received more than $9.8 billion in disability replacement income last year. *See* COUNCIL FOR DISABILITY AWARENESS, 2014 LONG TERM DISABILITY CLAIMS REVIEW (2014), *available at* http://www.disabilitycanhappen.org/research/CDA_LTD_Clai ms_Survey_2014.pdf.

Not surprisingly given the stakes, eight of the thirteen circuits have squarely addressed the question presented, and advocates on both sides have urged this Court to intervene. On one hand, insurance industry trade groups have argued that the refusal to permit equitable liens threatens the continued viability of a functioning and affordable private-sector insurance market. *See, e.g.*, Brief for the American Council of Life Insurers, America's Health Insurance Plans, and the American Benefits Council as Amicus Curiae in Support of Petition for Writ of Certiorari, First Unum Life Ins. Co. v. Bilyeu, 133 S.Ct. 1242 (Nov. 28, 2012) (No. 12-526) (arguing that "the question presented is one of pressing nationwide importance" and that the position of the United States "threatens immediate, significant consequences for employee benefit plans nationwide, particularly those providing employees with disability income insurance.").

-20-

On the other hand, advocates for those covered by
ERISA welfare plans have argued that the ability of plan
fiduciaries to enforce an equitable lien on an individual's
general assets is patently unfair and was never intended
by Congress. *See, e.g.*, Petition for a Writ of Certiorari at
20, Thurber v. Aetna Life Ins. Co., 134 S.Ct. 2723 (July
26, 2013) (No. 13-130) (explaining that "disability
benefits are 'designed, by definition, to replace [an
employee's] wages during a period when [she is] unable
to work'" and noting that "[t]hat fact creates 'an
extremely strong presumption' that these benefits are
immediately spent on life necessities—'groceries, rent
and the electric bill.'") (quoting *D & H Therapy Assoc.'s,
LLC v. Boston Mut. Life Ins. Co.*, 691 F. Supp. 2d 304
(D.R.I. 2010)). *See also* Roy F. Harmon III, *The Conflict
Between ERISA Overpayment Claims and Statutory
Protection of SSDI Benefits*, HEALTH PLAN LAW (Dec.
22, 2008), http://www.healthplanlaw.com/?p=1017 (arg-
uing that the imposition of an equitable lien when
disability insurance payments have already been spent
on ordinary living expenses is nothing more than an
unlawful attempt to use ERISA as an end-run around
section 407(a) of the Social Security Act, which shields
SSDI benefits from attachment).

Regardless of one's position on the merits, it should
be clear that the current circuit split is intolerable. In
passing ERISA, Congress sought to implement a
uniform legal regime with predictable entitlements and
liabilities. *See Conkright v. Frommert*, 130 S. Ct. 1640,
1649 (2010); *Rush Prudential HMO, Inc. v. Moran*, 536
U.S. 355, 379 (2002) (ERISA "induc[es] employers to
offer benefits by assuring a predictable set of liabilities,
under uniform standards of primary conduct and a
uniform regime of ultimate remedial orders and awards
when a violation has occurred."). "[A] uniform

-21-

administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits," is desirable for both fiduciaries and beneficiaries because it reduces administrative costs and increases the certainty of benefits. *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)); *see generally* Brendan S. Maher & Peter K. Stris, *ERISA & Uncertainty*, 88 WASH. U. L. REV. 433 (2010).

Uniformity and predictability in the enforcement of reimbursement and overpayment provisions is now impossible. *Cf. Egelhoff*, 532 U.S. at 148 ("Uniformity is impossible . . . if plans are subject to different legal obligations in different States.").

For the many regional and nationwide ERISA plans, the upshot is more expensive and less reliable plan administration. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). An administrator must familiarize herself with the jurisprudence and geographic reach of the various circuits whenever she wants to find out whether she has a valid lien. *See Egelhoff*, 532 U.S. at 148–49.

Meanwhile, ERISA participants and beneficiaries everywhere face heightened uncertainty about long-received benefits. *See, e.g.*, Petition for a Writ of Certiorari, Thurber v. Aetna Life Ins. Co. at 20, 134 S.Ct. 2723 (July 26, 2013) (No. 13-130) ("[W]ith no clear uniform rule governing the standards for equitable overpayment claims, employees who receive disability benefits will be uncertain of whether they may later be subject to reimbursement claims seeking money long since spent on daily life needs."). And such individuals within the Eighth and Ninth Circuits will inevitably face

-22-

unlawful collection efforts. *See* Maher & Stris, *supra*, at
440 ("carelessness by the promisor or its agents can
result in a wrongful refusal to confer a benefit"); *id.* at
442 (complexity of promise increases uncertainty).

## CONCLUSION

The petition for a writ of certiorari should be
granted.

Respectfully submitted,

SHAUN P. MARTIN                PETER K. STRIS
University of San Diego          *Counsel of Record*
School of Law                  BRENDAN S. MAHER
5998 Alcalá Park               DANA BERKOWITZ
San Diego, CA 92110            VICTOR O'CONNELL
                               Stris & Maher LLP
RADHA A. PATHAK                725 S. Figueroa St., Ste. 1830
Whittier Law School            Los Angeles, CA 90017
3333 Harbor Boulevard          (213) 995-6800
Costa Mesa, CA 92626           *peter.stris@strismaher.com*

*Counsel for Petitioner*

December 16, 2014