1  RYAN D. KASHFIAN, ESQ. (SBN: 265293)
      ryan@kashfianlaw.com
2  ROBERT A. KASHFIAN, ESQ. (SBN:  263173)
      robert@kashfianlaw.com
3  OLGA Y. NOVAK, ESQ. (SBN: 298969)
      onovak@kashfianlaw.com
4
5  **KASHFIAN & KASHFIAN LLP**
6  1875 CENTURY PARK EAST, SUITE 1340
   CENTURY CITY, CALIFORNIA 90067-2514
7  (310) 751 – 7578  | TELEPHONE
   (310) 751 – 7579  | FACSIMILE
8
9  *Attorneys for Counterclaim-Defendant*
   CINDY OMIDI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC., and DOES 1 through 20,<br><br>          Defendants. | Case No. 14-CV-03053-MWF (VBKx)<br><br>COUNTERCLAIM DEFENDANT CINDY OMIDI'S:<br><br>(1) NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM;<br><br>(2) NOTICE OF JOINDER AND JOINDER IN THE PROVIDER, PROPERTY CARE INSURANCE, DEVIDA, MICHAEL OMIDI M.D. AND JULIAN OMIDI'S MOTIONS TO DISMISS; AND |
| UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC.,<br><br>          Counterclaim Plaintiffs,<br><br>     v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company; et al.,<br><br>          Counterclaim Defendants. | (3) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS.<br><br>*Hearing Date*:   September 17th, 2015<br>*Hearing Time*:   3:00 p.m.<br>*Courtroom*:      1600<br><br>HONORABLE MICHAEL W. FITZGERALD |

-1-

**COUNTERCLAIM DEFENDANT CINDY OMIDI'S**

**NOTICE OF MOTION AND MOTION TO DISMISS THE**

**SECOND AMENDED COUNTERCLAIM**

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 17th, 2015 or as soon thereafter as the matter may be heard in Courtroom 1600 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California 90012, Counterclaim Defendant Cindy Omidi ("Mrs. Omidi") will move and hereby does move the Court, under Federal Rules of Civil Procedure, Rule 12 (b)(6) and 12(e), for an order dismissing the Second Amended Counterclaim (the "SACC"), Dkt. #152, of Counterclaim Plaintiffs, United Healthcare Services, Inc., Unitedhealthcare Insurance Company, Optuminsight, Inc., ("United").

Mrs. Omidi requests that this Court dismiss the SACC in its entirety or, alternatively, dismiss the first and third causes of action for the following alternative reasons:

*First*, the SACC is a prime example of a "shotgun pleading" and as such it does not provide Mrs. Omidi with a fair opportunity to frame a responsive pleading. Therefore, the Court must dismiss the SACC.

*Second*, the lumping of Mrs. Omidi with "the Omidis," "the Omidi Network," and "Counterclaim Defendants" does not meet the requirements of Rule 8. Therefore, the Court must dismiss the SACC.

*Third*, the alter ego allegations against Mrs. Omidi are insufficient to pierce the corporate veil of Corporate Counterclaim Defendants. Indeed, United should <u>not</u> be permitted to bootstrap its fraud claim into an alter-ego allegation against Mrs. Omidi without showing that the separate personalities of the Corporate Counterclaim Defendants and Mrs. Omidi *no longer exist*.

-1-

**COUNTERCLAIM DEFENDANT CINDY OMIDI'S**
**NOTICE OF MOTION AND MOTION TO DISMISS**
**THE SECOND AMENDED COUNTERCLAIM**

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1    *Fourth*, assuming *arguendo* that the Court does not dismiss the entire SACC
2    for the reasons for the improper "shot gun" pleading or "lumping," the Court must
3    nevertheless dismiss the first and third cause of action because they fail to state a
4    cause of action for fraud and conspiracy to commit fraud.

5    Mrs. Omidi's Motion is based on this Notice of Motion and Motion, the
6    accompanying Memorandum of Points and Authorities in support of the Motion, all
7    matters which the Court must or may judicially, the complete files and records of
8    this Court, and upon such oral and documentary evidence that Mrs. Omidi may
9    present at the hearing of this Motion.

10

11    *Respectfully Submitted,*

12    this 27th day of August, 2015        By:  */s/ Ryan D. Kashfian, Esq.*

13    _____

14    RYAN D. KASHFIAN, ESQ.
      ROBERT A. KASHFIAN, ESQ.
15    OLGA Y. NOVAK, ESQ. *for*

16    **Kashfian & Kashfian LLP**

17    *Attorneys for Counterclaim*
      *Defendant*, CINDY OMIDI

18

19

20

21

22

23

24

25

26

27

28

-2-

COUNTERCLAIM DEFENDANT CINDY OMIDI'S
NOTICE OF MOTION AND MOTION TO DISMISS
THE SECOND AMENDED COUNTERCLAIM

Case No. 2:14-CV-03053-MWF(VBKx)
United States District Court
Central District Of California

**COUNTERCLAIM DEFENDANT CINDY OMIDI'S**

**NOTICE OF JOINDER IN AND JOINDER IN THE PROVIDER,**

**PROPERTY CARE INSURANCE, DEVIDA, MICHAEL OMIDI M.D.**

**AND JULIAN OMIDI'S MOTIONS TO DISMISS**

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE FURTHER NOTICE that Counterclaim Defendant Cindy Omidi ("Mrs. Omidi") hereby joins in the Motions to Dismiss and arguments in support thereof filed by Counterclaim Defendants Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Independent Medical, Medical Services, Inc., Modern Institute Of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC Dba Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists Of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, Bakersfield Surgery Institute, Inc., Ciro Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists Of West Hills, Inc., Valley Surgical Center, LLC, Top Surgeons, Inc., Top Surgeons, LLC, Palmdale Ambulatory Surgery Center, 1-800-GET-THIN, LLC, DeVida, USA, LLC, Property Care Insurance, Inc., Michael Omidi, M.D., Julian Omidi in this action to the extent they are applicable to demonstrate that the Second Amended Counterclaim (the "SACC"), Dkt. #152, of Counterclaim Plaintiffs, United Healthcare Services, Inc., Unitedhealthcare Insurance Company, Optuminsight, Inc., ("United") fails to state facts upon which relief may be granted against Mrs. Omidi.

///

///

-1-

COUNTERCLAIM DEFENDANT CINDY OMIDI'S NOTICE OF JOINDER IN AND JOINDER IN THE PROVIDER, PROPERTY CARE INSURANCE, DEVIDA, MICHAEL OMIDI M.D. AND JULIAN OMIDI'S MOTIONS TO DISMISS

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1    *Respectfully Submitted*,

2        this 27th day of August, 2015        By:  **/s/ *Ryan D. Kashfian, Esq.***

3        _____

4                                    RYAN D. KASHFIAN, ESQ.
                                    ROBERT A. KASHFIAN, ESQ.
5                                    OLGA Y. NOVAK, ESQ. *for*

6                                    **KASHFIAN & KASHFIAN LLP**

7                                    *Attorneys for Counterclaim
                                    Defendant*, CINDY OMIDI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**COUNTERCLAIM DEFENDANT CINDY OMIDI'S NOTICE OF
JOINDER IN AND JOINDER IN THE PROVIDER, PROPERTY
CARE INSURANCE, DEVIDA, MICHAEL OMIDI M.D.
AND JULIAN OMIDI'S MOTIONS TO DISMISS**

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

**INTRODUCTION** ................................................................................................. 1

**STATEMENT OF FACTS** ..................................................................................... 2

A. The Counterclaim Defendants, Corporate Counterclaim Defendants, The Omidis, And The Omidi Network .................................................. 2

B. The SACC's Limited Allegations Against Mrs. Omidi ............................ 3

C. The Court's Prior Allegations Regarding The Sufficiency Of The Fraud Allegations In The FACC .................................................................. 5

**LEGAL STANDARD** ........................................................................................... 5

1. Rule 12(b)(6) ........................................................................................ 5

2. Rule 12(e) ............................................................................................. 6

**ARGUMENTS** ..................................................................................................... 6

**I. The SACC, As A Shotgun Pleading, Does Not Provide Mrs. Omidi With A Fair Opportunity To Frame A Responsive Pleading, And Therefore, The Court Must Dismiss The SACC** ........... 6

**II. The Lumping Of Mrs. Omidi With "The Omidis," "The Omidi Network," and "Counterclaim Defendants" Does Not Meet The Requirements Of Rule 8** ................................................................... 10

**III. The Alter Ego Allegations Against Mrs. Omidi Are Insufficient To Pierce The Corporate Veil Of Corporate Counterclaim Defendants** ............................................................................................. 12

A. The Mere Fact That Corporate Counterclaim Defendants And Mrs. Omidi Have Allegedly Jointly Committed Torts Against United And The "Public" Has No Bearing On The Question Of Alter Ego Liability .................... 13

-i-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE No. 2:14-CV-03053-MWF(VBKx)
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

B.    Intentionally Seeking To Confuse And Mislead United
And The Public As To The Appropriate Entity Against
Whom To Seek Relief Is Not Sufficient To Establish
An Inequitable Result ......................................................... 17

IV.    *Alternatively*, The First Cause of Action Fails To State A Cause
Of Action For Fraud ........................................................................ 19

A.    The Allegations Against Mrs. Omidi Are Too General ................. 19

B.    United Fails To Meet The Heighten Burden In Asserting
Fraud Against A Corporate Counterclaim Defendants .................. 20

C.    The Purported Alter Ego Allegations And Cross Agency
Allegations Are Fundamentally Inconsistent ................................. 22

D.    Damages Have Not Been Sufficiently Pled .................................... 22

V.    *Alternatively*, The Third Cause of Action Fails To State A Cause
Of Action Conspiracy To Commit Fraud ....................................... 23

CONCLUSION ....................................................................................... 25

KASHFIAN

&

KASHFIAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN

KK

KASHFIAN

## TABLE OF AUTHORITIES

CASE(S)                                                                    PAGE(S)

Alfus v. Pyramid Tech. Corp.,
    745 F. Supp. 1511 (N.D. Cal. 1990) ............................................................ 24

Abbot v. Stevens,
    133 Cal. App. 2d 242, 284 P.2d 159 (1955) .................................................. 23

Abrams v. CIBA Specialty Chemicals Corp.,
    2008 U.S. Dist. LEXIS 68897, 2008 WL 4183344 (S.D.Ala. 2008)................ 9

American United Life Ins. Co. v. Martinez,
    480 F.3d 1043 (11th Cir. 2007)...................................................................... 24

Anderson v. District Bd. of Trustees of Cent. Florida Community College,
    77 F.3d 364 (11th Cir. 1996)............................................................................ 9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ................................................................................. 6, 11

Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,
    7 Cal. 4th 503, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994) ........................... 24

Balistreri v. Pacifica Police Dep't,
    901 F.2d 696 (9th Cir. 1988)............................................................................ 5

Barba v. Lee,
    2009 U.S. Dist. LEXIS 132415 (D. Ariz. Nov. 3, 2009)................................. 25

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ................................................................................. 6, 15

Borsellino v. Goldman Sachs Group, Inc.,
    477 F.3d 502 (7th Cir. 2007).......................................................................... 24

Byrne v. Nezhat,
    261 F.3d 1075 (11th Cir. 2001)........................................................................ 7

Cahill v. Liberty Mutual Ins. Co.,
    80 F.3d 336 (9th Cir. 1996).............................................................................. 5

-iii-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Cheery Way (USA), Inc. v. Duong,
    2012 U.S. Dist. LEXIS 67100,
    2012 WL 1670172 (N.D. Cal. May 14, 2012) ................................................. 20

Crook v. San Bernardino County Dep't of Child Support Servs.,
    2014 U.S. Dist. LEXIS 172289 (C.D. Cal. Dec. 11, 2014) ........................... 11

Davis v. Carlton,
    2013 U.S. Dist. LEXIS 174334,
    2013 WL 6512903 (E.D. Cal. Dec. 12, 2013)................................................. 10

Davis v. Coca-Cola Bottling Co. Consol.,
    516 F.3d 955 (11th Cir. 2008)................................................................... 4, 10

Destfino v. Kennedy,
    2009 U.S. Dist. LEXIS 18138, 2009 WL 63566 (E.D. Cal. Jan. 7, 2009).... 6, 7, 8

Doe v. Unocal Corp.,
    248 F.3d 915 (9th Cir. 2001) ....................................................................... 16

First W. Bank & Tr. Co. v. Bookasta,
    267 Cal. App. 2d 910, 73 Cal. Rptr. 657 (1968)......................................... 15

Gauvin v. Trombatore,
    682 F. Supp. 1067 (N.D. Cal. 1988) ........................................................... 11

Gen-Probe, Inc. v. Amoco Corp.,
    926 F. Supp. 948 (S.D. Cal. 1996) .............................................................. 11

Gottschalk v. City and County of San Francisco,
    964 F. Supp. 2d 1147 (N.D. Cal. 2013) ...................................................... 12

Greenspan v. LADT LLC,
    191 Cal. App. 4th 486, 121 Cal. Rptr. 3d 118 (2010).................................. 13

Hoang v. Vinh Phat Supermarket, Inc.,
    2013 U.S. Dist. LEXIS 114475,
    2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ............................................ 17

*///*

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

In re Sunbeam Corp.,
        284 B.R. 355 (Bkrtcy. S.D.N.Y. 2002) ........................................................ 15

Institute of Veterinary Pathology, Inc. v. California Health Labs, Inc.,
        116 Cal. App. 3d 111, 172 Cal. Rptr. 74 (1981)...................................... 16

Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,
        162 F.3d 1290 (11th Cir. 1998).......................................................... 7

Kearns v. Ford Motor Co.,
        567 F.3d 1120 (9th Cir. 2009).......................................................... 19

Kidron v. Movie Acquisition Corp.,
        40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (1995)...................................... 23

Lazar v. Superior Court,
        12 Cal.4th 631, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996) .................... 21, 22

Lovesy v. Armed Forces Benefit Ass'n,
        2008 U.S. Dist. LEXIS 93479,
        2008 WL 696991 (N.D. Cal. Mar. 13, 2008) .................................... 15

Magluta v. Samples,
        256 F.3d 1282 (11th Cir. 2001)........................................................ 7

Masco Contrs. Servs. W. v. N.H. Ins. Co., Inc.,
        2005 U.S. Dist. LEXIS 42998,
        2005 WL 405361 (N.D. Cal. Feb. 17, 2005) .................................... 25

McHenry v. Renne,
        84 F.3d 1172 (9th Cir. 1996)........................................................ 12

Mesler v. Bragg Management Co.,
        39 Cal. 3d 290, 216 Cal. Rptr. 443, 702 P.2d 601 (1985) .......................... 13

Mier v. Owens,
        57 F.3d 747 (9th Cir. 1995)......................................................... 5

Moss v. United States Secret Service,
        572 F.3d 962 (9th Cir. 2009)......................................................... 6

-v-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN

KASHFIAN

Munson v. Fishburn,

    183 Cal. 206, 190 P. 808 (1920) ....................................................... 23

Nat'l Fed'n of Indep. Bus. v. Sebelius,

    132 S.Ct. 2566 (2012) ..................................................................... 1

Nagy v. Nagy,

    210 Cal. App. 3d 1262, 258 Cal. Rptr. 787 (1989) ......................................... 22

Navarro v. Block,

    250 F.3d 729 (9th Cir. 2001) ............................................................. 10

Neilson v. Union Bank of California, N.A.,

    N.A., 290 F.Supp.2d 1101 (C.D. Cal. 2003) ....................................... 14, 15, 18

Newman-Reynolds v. 2010-3 Sfr,

    2015 Cal. App. Unpub. LEXIS 831 (Cal. App. 4th Dist. Feb. 5, 2015) ......... 23

Platt v. Billingsley,

    234 Cal. App. 2d 577 (1965) ............................................................. 15

Payoda, Inc. v. Photon Infotech, Inc.,

    2015 U.S. Dist. LEXIS 100560 (N.D. Cal. July 30, 2015) ............................ 18

Ranza v. Nike, Inc.,

    ---F.3d ---, No. 13-35251,

    2015 U.S. App. LEXIS 12290,

    2015 WL 4282986 (9th Cir. July 16, 2015) ............................................. 16

Riddle v. Leuschner,

    51 Cal. 2d 574, 335 P.2d 107 (1959) .................................................... 16

Roberts v. Balasco (In re Ernie Haire Ford, Inc.),

    459 B.R. 824 (Bankr. M.D. Fla. 2011) .................................................. 11

Rolls-Royce Corp. v. Heros, Inc.,

    576 F.Supp. 2d 765 (N.D. Tex. 2008) ................................................... 15

S. Union Co. v. Southwest Gas Corp.,

    165 F. Supp. 2d 1010 (D. Ariz. 2001) ................................................... 24

-vi-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Sandoval v. Ali,
    34 F.Supp.3d 1031 (N.D. Cal. 2014) ...................................................... 14, 18

Smith v. Rainey,
    747 F. Supp. 2d 1327 (M.D. Fla. 2010) ........................................................ 10

Sonora Diamond Corp. v. Superior Court,
    83 Cal. App. 4th 523, 99 Cal. Rptr. 2d 824 (2000).............................. 12, 13, 18

Stansfield v. Starkey,
    220 Cal. App. 3d 59, 269 Cal. Rptr. 337 (1990)............................................ 16

Stark v. Coker,
    20 Cal. 2d 839, 129 P.2d 390 (1942) ........................................................... 16

Strategic Income Fund, LLC v. Spear, Leeds, & Kellogg Corp.,
    305 F.3d 1293 (11th Cir. 2002)...................................................................... 7

Swartz v. KPMG LLP,
    476 F.3d 756 (9th Cir. 2007) (per curiam).......................................... 19, 20, 25

Tarmann v. State Farm Mut. Auto. Ins. Co.,
    2 Cal. App. 4th 153, 2 Cal. Rptr. 2d 861 (1991)........................................... 21

Vess v. Ciba—Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003)...................................................................... 19

Wagner v. First Horizon Pharm. Corp.,
    464 F.3d 1273 (11th Cir. 2006)..................................................................... 10

West v. Bank of Am., N.A.,
    2011 U.S. Dist. LEXIS 66726,
    2011 WL 2491295 (D. Nev. June 22, 2011) ............................................. 7, 11

Williams v. Prudential Ins. Co. of Am.,
    2007 U.S. Dist. LEXIS 86795,
    2007 WL 3407425 (N.D. Cal. Nov. 13, 2007)............................................... 23

///

///

-vii-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN & KASHFIAN

Yost v. Nationstar Mortg., LLC,

    2013 U.S. Dist. LEXIS 128504,

    2013 WL 4828590 (E.D. Cal. Sept. 6, 2013) .................................................. 11

Zoran Corp. v. Chen,

    185 Cal. App. 4th 799, 110 Cal. Rptr. 3d 597 (2010) .................................... 13


CONSTITUTION(S), STATUTE(S), AND RULE(S)                        PAGE(S)

Fed. R. Civ. P.

    Rule 8 .............................................................. 2, 7, 10, 11, 12, 14, 20

    Rule 8(a) ............................................................................................. 10, 12

    Rule 9 ................................................................................................. 11, 20

    Rule 9(b) ........................................................................... 5, 19, 20, 24, 25

    Rule 12(b)(6) .................................................................. 5, 6, 10, 15, 19

    Rule 12(e) ................................................................................................... 6


SECONDARY SOURCE(S)                                  PAGE(S)

5 B.E. Witkin, Summary of California Law, Torts, (10th ed. 2005)

    § 772 ......................................................................................................... 19

Oxford Dictionaries (Online), Definition: Banker,

    *available at*

    http://www.oxforddictionaries.com/us/definition/american_english/banker

    (accessed on Monday, August 24, 2015) ............................................... 4

-viii-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN & KASHFIAN

# INTRODUCTION

By the years end in December 31, 2014, Counterclaim Plaintiffs, United Healthcare Services, Inc., Unitedhealthcare Insurance Company, Optuminsight, Inc., ("United") had total revenue of $130 billion and net income of $5.6 billion. United's CEO took home over $66 million in 2014 and a staggering $102 million in 2010.

This billion-dollar conglomerate belatedly claims that, apparently, while asleep at wheel, it and the "public" at large were somehow hoodwinked by Counterclaim Defendants through an array of "sham" companies, despite admitting that it had intentionally flagged the providers since 2010 with involvement of its special investigations unit, Optuminsight (also known as Ingenix). The fact that United has hundreds of subsidiary and affiliate companies that it operates at its helm is apparently of no consequence—its practices of setting up various entities is appropriate but Counterclaim Defendants perpetrated a "fraud".

None of United's seven causes of action have any merit, and the purpose of this litigation is nothing but an apparent attempt to deflect its own wrongdoing in improperly failing to pay the claims of hundreds of patients whom licensed medical practitioners duly found were in need of medical services. Given the exorbitant income generated by United, its own complex array of "subsidiary" entities, and the fact the "lack [of] health insurance [and consequently health care] is [a crisis] of national dimension"[1], while the Court reads United conclusory allegations of fraud in a *shotgun style pleading*, the Court should be asking itself, who is really defrauding whom, and who is really defrauding the public.

Indeed, the frivolousness of United's claims are on full display in the Second Amended Counterclaim (the "SACC"), ECF No. 152. While it purports to claim that several agents made false claims and nondisclosures, it does not even allege who these agents are or what authority they had to speak on behalf of any of

---

[1] See Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S.Ct. 2566, 2628 (2012) (J. Ginsburg concurring in part and dissenting in part).

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE No. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Counterclaim Defendants. Moreover, although the prior pleadings did not mention Counterclaim Defendant Cindy Omidi ("Mrs. Omidi") at all, the SACC now names her as purported principal co-conspirator, even though prior pleadings alleged that her two sons, and not she, were real the principals in the prior pleadings. Compare SACC with First Amended Complaint ("FACC"), ECF No. 45. Of course, all the allegations against Mrs. Omidi and her sons are nothing but conclusory in nature and fail to raise even a speculation of belief that relief can be sought.

Thus, Mrs. Omidi requests that this Court dismiss the SACC in its entirety for the following alternative reasons: *First*, the SACC is a prime example of a "shotgun pleading" and as such it does not provide Mrs. Omidi with a fair opportunity to frame a responsive pleading. *Second*, the lumping of Mrs. Omidi with "the Omidis," "the Omidi Network," and "Counterclaim Defendants" does not meet the requirements of Rule 8. *Third*, the alter ego allegations against Mrs. Omidi are insufficient to pierce the corporate veil of Corporate Counterclaim Defendants. United should not be permitted to bootstrap its fraud claim into an alter-ego allegation against Mrs. Omidi without showing that the separate personalities of the Corporate Counterclaim Defendants and Mrs. Omidi *no longer exist*. *Fourth*, assuming *arguendo* that the Court does not dismiss the entire SACC for its "shot gun" approach or "lumping," the Court must nevertheless dismiss the first and third cause of action because they fails to state a cause of action for fraud and conspiracy to commit fraud.

## STATEMENT OF FACTS

### A.    The Counterclaim Defendants, Corporate Counterclaim Defendants, The Omidis, And The Omidi Network.

The SACC lumps all the defendants in this case and calls them "Counterclaim Defendants." SACC, ¶60. Additionally, the SACC lumps all of the Counterclaim Defendants acting as a corporation, limited liability company, or other association, as the "Corporate Counterclaim Defendants." Ibid. Moreover, every Counterclaim

-2-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1   Defendants is named in all seven cause of action. Every Counterclaim Defendants is

2   alleged to have engaged in the every fraudulent activity. Every fraudulent activity is

3   incorporated into every cause of action. In sum, United alleges that each

4   Counterclaim Defendants did everything. However, it is impossible to determine

5   exactly which Counterclaim Defendant did what.

6   Moreover, the SACC further lumps three separate individuals, Mrs. Omidi

7   and her son, Julian and Michael Omidi, as "the Omidi". <u>SACC</u>, ¶1. The SACC

8   further makes several conclusory allegations against "the Omidis", alleging that "the

9   Omidis" apparently acting in unison in committed several acts, <u>SACC</u>, at ¶¶3, 7, 12,

10   14, 22, 26, 76, 77, 106, 307, 316, 338, 401, 402, 404, 406, 407, 408, 413, 414, 423,

11   425, 427, 436, 444, 445, 475, 476, 477, and 516. It is impossible to determine which

12   Omidi, i.e., Cindy, Julian or Michael Omidi, did what. <u>Ibid</u>.

13   The SACC also alleges "[the Omidis] conspired with each other and other

14   confederates to own, control, direct, and manage a sophisticated network of

15   ambulatory surgical centers, billing companies, management companies, and other

16   corporate entities". <u>SACC</u>, at ¶22. This was purportedly part of a scheme "to defraud

17   the public, United, and health plans out of millions of dollars," <u>Ibid</u>.  The SACC

18   refers to this as the "Omidi Network," and again making several conclusory

19   allegations regarding the Omidi Network. <u>SACC</u>, at ¶¶*passim*. This too is impossible

20   to decipher who is being alleged as the actor. <u>Ibid</u>.

21
22   **B.    The SACC's Limited Allegations Against Mrs. Omidi.**

23   Stripped to the omnibus collective pleadings against the Omidis, the Omidi

24   Network, and the Counterclaim Defendants, etc., the SACC only makes the

25   following limited allegations concerning Mrs. Omidi:

26   •    Mrs. Omidi "conspired" with her sons and "other confederates" to own,

27   control, direct, and manage a sophisticated network of ambulatory surgical centers,

28   billing companies, management companies, and other corporate entities to "defraud

-3-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN

KASHFIAN

1  the public, United, and health plans out of millions of dollar," <u>SACC</u>, ¶22;

2  •   Mrs. Omidi, as the "banker,"[2] conspired to "collect and control ill-gotten

3  proceeds obtained from United," <u>SACC</u>, ¶25;

4  •   Mrs. Omidi was "notified" when a patient "sought to pay cash for a

5  procedure," <u>SACC</u>, ¶¶25, 436(b);

6  •   Mrs. Omidi "was convicted of money laundering in violation of 31 U.S.C.

7  § 5324(a)(3)," <u>SACC</u>, ¶¶25, 405;

8  •   Mrs. Omidi is the sole owner of Property Care Insurance, Inc., an

9  insurance company ("PCI"), <u>SACC</u>, ¶57;

10  •   Mrs. Omidi and her sons "caused millions of dollars to be transferred from

11  the Wells Fargo accounts" into PCI's bank account, <u>SACC</u>, ¶58, and they

12  "benefited" from the account, <u>SACC</u>, ¶431(a);

13  •   United paid money to CYCH Medical, Inc. and RASH Medical, Inc.,

14  which were actually "directed, controlled, and owned by" Mrs. Omidi and her sons,

15  <u>SACC</u>, ¶312; had United known the "true ownership and control of these entities,"

16  United would have "likely," but apparently not certainly, denied the claim, <u>SACC</u>,

17  ¶312;

18  •   Mrs. Omidi "set up mailing addresses" for various entities, <u>SACC</u>,

19  ¶406(a)(iii);

20  •   Mrs. Omidi was the "registered agent" for Pacific West Dermatology, Inc.,

21  <u>SACC</u>, ¶406(b);

22  •   Mrs. Omidi or someone else was listed as President, CEO, owner, or

23  operator of various entities, <u>SACC</u>, ¶409, but the SACC does not specificy what she

24  has done in that capacity;

25  •   Mrs. Omidi was the "signatory" on various bank accounts, <u>SACC</u>, ¶420;

26  

27  ───────────────

[2] While the common meaning of the term 'banker, is "[a]n officer or owner of a bank or group of banks," Oxford Dictionaries (Online), Definition: Banker, *available at* http://www.oxforddictionaries.com/us/definition/american_english/banker (accessed on Monday, August 24, 2015), the SACC does not allege what bank Mrs. Omidi owns or is an officer of.

28  

-4-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1    •    Mrs. Omidi violated California's prohibition on the practice of medicine

2  by unlicensed individuals, <u>SACC</u>, ¶439;

3    •    Shawn Pezeshk is Mrs. Omidi's "brother," <u>SACC</u>, ¶475(i).

4    The SACC makes no other allegations regarding Mrs. Omidi, personally.

5

6  **C.    <u>The Court's Prior Allegations Regarding The Sufficiency Of The Fraud Allegations In The FACC.</u>**

7    As noted by the Court, in granting the prior motion to dismiss:

8    United cannot generally assert that everyone did everything on the basis
9    of the examples it presents without specifying the roles that each
     Counterclaim Defendant played in carrying out the purported fraud.
10   While the Court does not anticipate that United should be obligated to
     set forth every detail regarding the activities surrounding each claim line
11   within its FACC, United must allege more than it currently has. The
     Court will not advise United as to how it may fulfil the requirements
12   imposed by Rule 9(b), but provides the following examples of the types
     of allegations that appear to be lacking from the FACC and Appendix I:
13   the category or categories of misrepresentations alleged with respect to
     each claim line; ***the relevant Counterclaim Defendants*** implicated in
14   each purported claim line; and the date of claim submission for each
     claim line.

15   <u>Order Granting In Part Mnt to Dismiss</u>, at 19, ECF No. 144 (emphasis added).

16  However, a review of Appendix I shows that Mrs. Omidi is not implicated in any

17  purported claim lines, SACC, Appendix I, and is not even mentioned in Appendix II

18  or III.

19                        **<u>LEGAL STANDARD</u>**

20   **1.    Rule 12(b)(6).**

21    A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the

22  complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a

23  cognizable legal theory," or "the absence of sufficient facts alleged under a

24  cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th

25  Cir. 1988). The court must accept all factual allegations pleaded in the complaint as

26  true, and construe them and draw all reasonable inferences from them in favor of the

27  nonmoving party. <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir.

28  1996); <u>Mier v. Owens</u>, 57 F.3d 747, 750 (9th Cir. 1995).

-5-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise the right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing Iqbal and Twombly).

**2.    Rule 12(e).**

A Rule 12(e) motion for more definite statement is proper when the complaint is so vague and ambiguous that defendant cannot be reasonably required to frame a responsive pleading. A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted. Destfino v. Kennedy, 2009 U.S. Dist. LEXIS 18138, *9, 2009 WL 63566 (E.D. Cal. Jan. 7, 2009).

## **ARGUMENTS**

**I.    The SACC, As A Shotgun Pleading, Does Not Provide Mrs. Omidi With A Fair Opportunity To Frame A Responsive Pleading, And Therefore, The Court Must Dismiss The SACC.**

-6-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1    "Allegations . . . which incorporate each preceding paragraph, regardless of

2    relevancy, are not permitted." <u>Destfino</u>, 2009 U.S. Dist. LEXIS 18138, at *13-14.

3    Courts have harshly criticized this practice as a form of "shotgun pleading" that

4    violates Rule 8's requirement of a "short and plain statement" and interferes with

5    administration of justice. <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1129-1130 (11th Cir.

6    2001); <u>Strategic Income Fund, LLC v. Spear, Leeds, & Kellogg Corp.</u>, 305 F.3d

7    1293, 1295 (11th Cir. 2002) (a typical "shotgun" pleading "contains several counts,

8    each one incorporating by reference the allegations of its predecessors, leading to a

9    situation where most of the counts (i.e., all but the first) contain irrelevant factual

10   allegations and legal conclusions."); <u>Johnson Enterprises of Jacksonville, Inc. v. FPL</u>

11   <u>Group, Inc.</u>, 162 F.3d 1290, 1333 (11th Cir. 1998) ("[d]istrict courts have the power

12   and the duty to define the issues at the earliest stages of litigation.").

13       In <u>Magluta v. Samples</u>, 256 F.3d 1282 (11th Cir. 2001) (<u>per curiam</u>), a

14   plaintiff filed a *shotgun* complaint; that is,

15   [The complaint] is fifty-eight pages long. It names fourteen defendants,
     and all defendants are charged in each count. The complaint is replete
16   with allegations that "the defendants" engaged in certain conduct,
     making no distinction among the fourteen defendants charged, though
17   geographic and temporal realities make plain that all of the defendants
     could not have participated in every act complained of. Each count
18   incorporates by reference the allegations made in a section entitled
     "General Factual Allegations" — which comprises 146 numbered
19   paragraphs — while also incorporating the allegations of any count or
     counts that precede it. The result is that each count is replete with factual
20   allegations that could not possibly be material to that specific count, and
     that any allegations that are material are buried beneath innumerable
21   pages of rambling irrelevancies.

22       Id. at 1284. On appeal, the Court issued an "order striking the complaint and

23   require[d] a repleading of all claims in a complaint that respects the requirements of

24   Rule 8". <u>Id</u>. at 1284. The Eleventh Circuit asserted that "[t]he complaint is a

25   quintessential 'shotgun' pleading of the kind we have condemned repeatedly,

26   beginning at least as early as 1991." <u>Id</u>. at 1284; <u>see Johnson Enterprises of</u>

27   <u>Jacksonville, Inc. v. FPL Group, Inc.</u>, 162 F.3d at 1333 ("If the trial judge does not

28   quickly demand repleader [of a shotgun complaint], all is lost-extended and largely

-7-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO.:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  aimless discovery will commence, and the trial court will soon be drowned in an
2  uncharted sea of depositions, interrogatories, and affidavits." emphasis added).

3      United's SACC is a prime example of a shotgun pleading—and soon the court
4  will indeed drown in an uncharged sea of discovery if repleading is not demanded.
5  The SACC accuses all the Counterclaim Defendants, among individuals not named
6  as parties, of perpetrating one or more frauds against United and the "public"
7  through various acts. The SACC's general allegations of 445 paragraphs are
8  incorporated by reference into every cause of action. <u>SACC</u>, ¶¶446, 459, 471, 479,
9  492, 497, 517. In addition, each and every allegation of fraudulent conduct,
10 fraudulent statements, fraudulent billing practice, fraudulent concealment, and
11 fraudulent conspiracy, SACC ¶¶92-399, are incorporated into every cause of action,
12 <u>SACC</u>, ¶¶446, 459, 471, 479, 492, 497, 517. In sum, United alleges that each
13 Counterclaim Defendant did everything. However, this is not possible; for instance,
14 the biller does not know what the person at the call center is promising to waive or
15 not waive. Also, it is difficult if not impossible to determine which conduct or what
16 conduct United has specifically attributed to Mrs. Omidi or any of Counterclaim
17 Defendants. This is not proper.

18     These allegations leave no means of determining exactly what Mrs. Omidi or
19 any Counterclaim Defendant is charged with saying or doing and requires dismissal
20 of the SACC. <u>Destfino</u>, 2009 U.S. Dist. LEXIS 18138, at *11-16, is directly on
21 point. There, each defendant was named in each cause of action. <u>Id</u>. at *16. Each
22 defendant was alleged to have engaged in the every fraudulent activity. <u>Id</u>. Every
23 fraudulent activity was incorporated into every cause of action. <u>Id</u>. In essence,
24 "plaintiffs allege[d] that each defendant did everything." <u>Id</u>. The Court dismissed the
25 complaint reasoning that "[t]his case is a prime example of a variation of shotgun
26 pleading." <u>Id</u>. Moreover, the Court rejected the plaintiffs' argument that its shotgun
27 pleading was appropriate, because "every defendant did the exact same conduct". <u>Id</u>.
28 at *18. As the Court indicated,

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN & KASHFIAN

> [P]laintiffs' very allegations belie the possibility of such similarity of conduct. The [complaint] alleges a complicated scheme of fraudulent activity of creating a "shell" tax shelter corporation to hold plaintiffs' properties and inducing plaintiffs to participate in the scheme. In furtherance of the scheme, plaintiffs were induced to transfer their property to the shell corporation. Legal documentation was prepared, tax advice given, mortgage and loan documentation prepared, and church encouragement given, among other activities, in furtherance of the fraudulent scheme. The named defendants run the gambit from church elders to tax advisors to mortgage consultants to car dealers and brokers. . . . The scheme occurred over an extended, three year period. . . .Thus, due to the complexity of the scheme, the varying roles of the defendants, the longevity of the scheme, the Court finds it is not possible that every defendant engaged in every fraudulent statement and every fraudulent alleged act.

Id. at *18-19. Likewise, here, United's very allegations belie the possibility of similar of conduct by all Counterclaim Defendants, including that of Mrs. Omidi. The SACC alleges a complicated scheme of fraudulent activity of creating "shell" corporations to induce Untied to make payments for medical services when United claims it would not have otherwise done so. The purported scheme also includes a call center, various surgery centers, medical professionals, medical documentation, medical consultation with various doctors, billing practices, among other activities, all of which was allegedly done by various "co-conspirators," named and unnamed, and entities in furtherance of the fraudulent scheme. The scheme occurred over an extended period. Thus, because of the complexity of the scheme, the varying roles of Counterclaim Defendants, the longevity of the scheme, it is not possible that every Counterclaim Defendants engaged in every alleged fraudulent alleged act. As such, the motion to dismiss should be granted, as the SACC is an inappropriate use of shotgun pleading.

Indeed, such pleadings are not only unhelpful and poorly drafted, but, as admonished by the Eleventh Circuit, should be avoided because "[e]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Anderson v. District Bd. of Trustees of Cent. Florida Community College,

-9-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1   77 F.3d 364, 367 (11th Cir. 1996). As explained in <u>Abrams v. CIBA Specialty</u>

2   <u>Chemicals Corp.</u>,

> Simply put, then, the problem with a shotgun pleading is that it prevents
> the parties and the court from understanding what the case is really
> about because the pleadings are cluttered with irrelevant and unrelated
> facts. The consequence is that discovery becomes a fool's errand in
> which parties seek out facts relating to claims whose parameters are so
> fuzzy, amorphous and ill-defined as to be utterly indeterminate.

6   2008 U.S. Dist. LEXIS 68897, 2008 WL 4183344, *4 (S.D.Ala. 2008). It is

7   not just for the parties that shotgun pleadings are onerous. <u>Wagner v. First Horizon</u>

8   <u>Pharm. Corp.</u>, 464 F.3d 1273, 1279 (11th Cir. 2006) ("shotgun pleadings wreak

9   havoc on the judicial system"); <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d

10  955, 981 (11th Cir. 2008) (shotgun pleadings inexorably broadens the scope of

11  discovery; shotgun pleadings lessen the time and resources the court has available to

12  reach and dispose of the cases, among other problems).

13  Accordingly, the Court must dismiss the SACC. <u>Davis v. Carlton</u>, 2013 U.S.

14  Dist. LEXIS 174334, *16, 2013 WL 6512903 (E.D. Cal. Dec. 12, 2013) (granting

15  motion to dismiss reasoning that "[w]hile some of plaintiff's allegations may state

16  potentially cognizable legal claims, they are overshadowed by the 'shotgun' manner

17  in which they are presented."); <u>Smith v. Rainey</u>, 747 F. Supp. 2d 1327, 1349 (M.D.

18  Fla. 2010) ("[w]hatever the merits of the underlying claim(s), [p]laintiff[] risk[s]

19  having them overshadowed by the manner in which these claims are alleged").

20  **II.    The Lumping Of Mrs. Omidi With "The Omidis," "The Omidi**
21  **Network," and "Counterclaim Defendants" Does Not Meet The**
    **<u>Requirements Of Rule 8.</u>**

22  Under Rule 12(b)(6), dismissal is proper when a complaint fails to state a

23  claim upon which relief can be granted. Dismissal may be based on the lack of a

24  cognizable legal theory or on the absence of sufficient facts alleged under a

25  cognizable legal theory. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

26  In order for United to survive a 12(b)(6) motion, United must "provide the

27  grounds for [] entitlement to relief [which] requires more than labels and

28  conclusions." <u>Twombly</u>, 550 U.S. at 547. Moreover, "[a] complaint violates Rule

-10-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN ⚖ KASHFIAN

1    8(a) when it fails to provide the defendants with fair notice of the wrongs they have

2    allegedly committed." <u>Crook v. San Bernardino County Dep't of Child Support</u>

3    <u>Servs.</u>, 2014 U.S. Dist. LEXIS 172289, *5 (C.D. Cal. Dec. 11, 2014).

4        Further, "[R]ule 8 prohibits lumping all defendants together in a complaint

5    without distinguishing between them or specifying which defendant is targeted by

6    which allegation." <u>West v. Bank of Am., N.A.</u>, 2011 U.S. Dist. LEXIS 66726, *4,

7    2011 WL 2491295 (D. Nev. June 22, 2011). This was true, even pre-<u>Twombly</u> and

8    <u>Iqbal</u>'s heightened pleading standard. <u>Gen-Probe, Inc. v. Amoco Corp.</u>, 926 F. Supp.

9    948, 960 (S.D. Cal. 1996) (lumping together of multiple defendants in one broad

10   allegation fails to satisfy notice requirement of Rule 8); <u>Gauvin v. Trombatore</u>, 682

11   F. Supp. 1067, 1071 (N.D. Cal. 1988) (plaintiff failed to satisfy notice pleading

12   requirements of Rule 8 by lumping all defendants together in one allegation).

13       As explained in <u>Roberts v. Balasco (In re Ernie Haire Ford, Inc.)</u>,

14       The shortcoming of the Complaint from a Rule 8 perspective is that each
15       defendant's liability is not plausibly demonstrated. There are no factual
         allegations concerning many of the defendants that would tend to show
16       their involvement and participation in the alleged kickback schemes.
         Rather, the defendants are lumped together into classes and are then
17       alleged, collectively, to have engaged in fraudulent conduct. Such a
         manner of pleading does not comport with <u>Iqbal's</u> requirement that there
18       be facial plausibility of the defendants' liability. Without any specific
         factual allegations concerning a particular defendant's participation in
19       the general schemes alleged, the Court is left without a reasonable basis
         from which it can infer such defendant's liability. The Court cannot infer
20       an individual defendant's liability based merely on the collective
         pleading style that Plaintiff has utilized. Indeed, in many instances, the
21       only reference to a particular defendant is the identification of that
         defendant's place of business and the subsequent grouping of that
22       defendant into a collective class. Such allegations raise, at best, a sheer
         possibility that any particular defendant is liable for the alleged
23       misconduct. Accordingly, the Court finds that the Complaint is deficient
         in that it does not satisfy the facial plausibility requirement of Rule 8.

24   459 B.R. 824, 835 (Bankr. M.D. Fla. 2011); <u>Yost v. Nationstar Mortg., LLC</u>,

25   2013 U.S. Dist. LEXIS 128504, *8, 2013 WL 4828590 (E.D. Cal. Sept. 6, 2013)

26   ("Under the pleading standard of either Rule 8 or Rule 9, Plaintiffs must distinguish

27   Defendants' particular roles in the alleged causes of action. Plaintiffs need to provide

28   facts showing how each and every Defendant is involved and enable Defendants to

-11-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN   KASHFIAN

1  know what misconduct or fraudulent representations they are charged with. Because

2  Plaintiffs merely lump Nationstar, Ginnie Mae and DOES 1-10 together,

3  Defendants' motion to dismiss is GRANTED.").

4      It is not clear from the SACC, what it is Mrs. Omidi has allegedly done or

5  which actions in reference to each of the causes of action assert liability against her.

6  United needs to provide facts showing Mrs. Omidi's involvement for Mrs. Omidi to

7  know what conduct has led her to liability. The use of terms "the Omidis," "the

8  Omidi Network," and "Counterclaim Defendants" lumping various persons and

9  entities together is not sufficient in allowing Mrs. Omidis to raise a proper defense,

10 to determine what she is being sued for, for what relief and on what theory with

11 enough detail to guide discovery or respond. Plaintiffs merely state that

12 Counterclaim Defendants (including Mrs. Omidi lumped in with everyone else)

13 committed the alleged wrongful actions, but fail to distinguish between Mrs.

14 Omidi's actions and the actions of the other "Omidis" or Counterclaim Defendants.

15     Dismissal is proper on these grounds. <u>McHenry v. Renne</u>, 84 F.3d 1172, 1175

16 (9th Cir. 1996) (affirming dismissal of complaint under Rule 8(a) when court could

17 not "determine from the complaint who is being sued, for what relief, and on what

18 theory, with enough detail to guide discovery"); <u>Gottschalk v. City and County of</u>

19 <u>San Francisco</u>, 964 F. Supp. 2d 1147, 1156 (N.D. Cal. 2013) (complaint did not

20 satisfy Rule 8(a) when it did not clarify which claims were brought against which

21 defendant and did not articulate specific facts connecting each defendant with the

22 facts underlying the applicable claims).

**III.  The Alter Ego Allegations Against Mrs. Omidi Are Insufficient To Pierce The Corporate Veil Of Corporate Counterclaim Defendants.**

25 "Ordinarily, a corporation is regarded as a legal entity, separate and distinct

26 from its stockholders, officers and directors, with separate and distinct liabilities and

27 obligations." <u>Sonora Diamond Corp. v. Superior Court</u>, 83 Cal. App. 4th 523, 538,

28 99 Cal. Rptr. 2d 824, 836 (2000). "Thus the corporate form will be disregarded only

-12-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  in narrowly defined circumstances and only when the ends of justice so require."

2  Zoran Corp. v. Chen, 185 Cal. App. 4th 799, 810, 110 Cal. Rptr. 3d 597, 606 (2010).

3  "Alter ego is an extreme remedy, sparingly used." Sonora Diamond, 83 Cal. App.

4  4th at 539, 99 Cal. Rptr. 2d at 836. As explained in Greenspan v. LADT LLC,

5
6
7
> Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution.

8  191 Cal. App. 4th 486, 512, 121 Cal. Rptr. 3d 118, 138 (2010). Accordingly,

9  to justify piercing the corporate veil, to hold Mrs. Omidi personally liable for the

10  acts or omissions of Corporate Counterclaim Defendants, United must establish two

11  general requirements: (1) that there be such unity of interest and ownership that the

12  separate personalities of the Corporate Counterclaim Defendants and Mrs. Omidi no

13  longer exist; and (2) that, if the acts are treated as those of the Corporate

14  Counterclaim Defendants alone, an inequitable result will follow. Mesler v. Bragg

15  Management Co., 39 Cal. 3d 290, 300, 216 Cal. Rptr. 443, 702 P.2d 601 (1985).

16  Neither of these two elements have been met.

17
18
19
### A. The Mere Fact That Corporate Counterclaim Defendants And Mrs. Omidi Have Allegedly Jointly Committed Torts Against United And The "Public" Has No Bearing On The Question Of Alter Ego Liability.

20  The SACC does not sufficiently allege concrete factual allegations asserting a

21  unity of interest such that the separate personalities of Corporate Counterclaim

22  Defendants and Mrs. Omidi "no longer exist." Indeed, the test in California for the

23  past 100 years has been that "the corporation is not only influenced and governed by

24  that person [to be held personally liable], but that there is such a unity of interest and

25  ownership that the individuality, or separateness, of the said person and corporation

26  has ceased." Minifie v. Rowley, 187 Cal. 481, 487, 202 P. 673, 676 (1921).

27  United may not "merely aver that [Corporate Counterclaim Defendants were]

28  an instrumentality which was used for the individual benefit of" Mrs. Omidi. Ibid.

-13-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN & KASHFIAN

1  Instead, "in substance and effect," United must "allege that the corporation was but

2  the double, or 'alter ego' of" Mrs. Omidi. <u>Id</u>. at 487-88. United must "allege facts

3  showing the virtual identity of the two defendants." <u>Ibid</u>. This, United has not done.

4  As noted by the Court, the extent of United's allegations regarding a unity of interest

5  is that

6       [T]he Omidis are at the helm of a complex network of shell and sham

7       corporations, over 100 of which use the same executive office, the assets
     of which are pooled, the corporate representatives of which are often the

8       same, the identifying information of which is used interchangeably—all
     of which is purportedly engineered by the Omidis (along with their

9       alleged co-conspirators) to "conceal the true nature of their activities
     (including the fraudulent billing scheme alleged herein), conceal

10      payments, conceal assets, and conceal the Omidis' ownership and
     control of the enterprise."

11 <u>Order Granting In Part Mtn. to Dismiss</u>, at 6 (quoting FACC, ¶ 76), ECF No.

12 144. As noted <u>supra</u> at **II**, lumping "the Omidis," three separate persons, and the

13 conclusory and speculative "Omidi Network" fails to meet the requirements of Rule

14 8. <u>Sandoval v. Ali</u>, 34 F.Supp.3d 1031, 1040 (N.D. Cal. 2014) is directly on point.

15 There, the plaintiffs alleged "that the individual Ali Defendants are the alter egos of

16 the corporate defendants, which Plaintiffs collectively refer to as the 'the Autowest

17 Collision Group' and that the corporate Defendants are underfunded, are not stand

18 alone corporations, have common management and pay practices, share labor and

19 materials, including a distribution and billing system, and operate a common

20 marketing system." <u>Id</u>. The Court granted the motion to dismiss reasoning that

21      Plaintiffs' alter ego allegations are too conclusory to survive a motion to

22      dismiss. "Conclusory allegations of 'alter ego' status are insufficient to
     state a claim. Rather, a plaintiff must allege specifically both of the

23      elements of alter ego liability, as well as facts supporting each."

24      <u>Id</u>. (citing <u>Neilson v. Union Bank of California</u>, N.A., 290 F.Supp.2d 1101,

25 1116 (C.D. Cal. 2003)).

26      Nevertheless, the allegations fail for another reason. Engineering a common

27 scheme to defraud United using various entities is not enough to show that the

28 separate, independent personalities of the Corporate Counterclaim Defendants and

-14-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN  KASHFIAN

1  Mrs. Omidi *no longer exist*. "The question is not whether the alleged alter egos

2  engaged in a common scheme; the question is rather whether there is 'a unity of

3  interest' as to ownership between a corporation and its individual owner." Lovesy v.

4  Armed Forces Benefit Ass'n, 2008 U.S. Dist. LEXIS 93479, *12, 2008 WL 696991

5  (N.D. Cal. Mar. 13, 2008) (quoting Neilson, 290 F. Supp. 2d 1101). Indeed, "[t]he

6  mere fact that two entities allegedly jointly committed torts against [United] has no

7  bearing on the question of alter ego liability." Ibid. As explained in Rolls-Royce

8  Corp. v. Heros, Inc.,

9      If [plaintiff's] allegation that defendants helped each other commit

10      illegal acts were a sufficient factual basis to support an alter ego claim,
       then plaintiffs would be able to state an actionable alter ego claim any

11      time they could adequately allege participation by an owner of a
       company in a company's illegal conduct. Because companies always act

12      through their agents, permitting such allegations to withstand Rule
       12(b)(6) dismissal is inconsistent with Bell Atlantic's requirement that a

13      plaintiff must plead "enough facts to state a claim to relief that is
       plausible on its face."

14  576 F.Supp. 2d 765, 789 (N.D. Tex. 2008). United should not be permitted to

15  bootstrap its fraud claim into an alter-ego allegation against Mrs. Omidi without

16  showing that the separate personalities of the Corporate Counterclaim Defendants

17  and Mrs. Omidi *no longer exist*. First W. Bank & Tr. Co. v. Bookasta, 267 Cal. App.

18  2d 910, 914-15, 73 Cal. Rptr. 657, 659 (1968) ("Before the acts and obligations of a

19  corporation can be legally recognized as those of a particular person, and vice versa,

20  the following combination of circumstances must be made to appear: First, that the

21  corporation is not only influenced and governed by that person, but that there is such

22  a unity of interest and ownership that the individuality, or separateness, of the said

23  person and corporation has ceased. . ." citations omitted).

24      As such, in order to withstand a motion to dismiss, United "must, at a

25  minimum, 'se[t] forth some examples of alleged domination.' " Lovesy, 2008 U.S.

26  Dist. LEXIS, at *12 (citing In re Sunbeam Corp., 284 B.R. 355, 366 (Bkrtcy.

27  S.D.N.Y. 2002)); Platt v. Billingsley, 234 Cal. App. 2d 577, 580-81 (1965) (noting

28  that the complaint must "sets forth additional facts of improper domination of the

-15-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  corporation as a basis for judgment against the individuals.") Without plausible

2  allegations of control and domination by Mrs. Omidi—regardless of the actions of

3  the other Omidis—United cannot hold Mrs. Omidi personally liable.

4       As the Ninth Circuit recently explained with respect to the "unity of interest"

5  prong, "this test requires 'a showing that [an individual] controls [corporate

6  defendants] to such a degree as to render the latter the mere instrumentality of the

7  former'" and "envisions pervasive control over [corporate defendants] such as when

8  [the individual] 'dictates every facet of [corporate defendants] business—from broad

9  policy decisions to routine matters of day-to-day operation.'" Ranza v. Nike, Inc., ---

10 F.3d ---, No. 13-35251, 2015 U.S. App. LEXIS 12290, 2015 WL 4282986, at *9

11 (9th Cir. July 16, 2015) (quoting Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir.

12 2001)).

13      For instance, in Riddle v. Leuschner, 51 Cal. 2d 574, 335 P.2d 107 (1959), a

14 California court disregarded the corporate entity of two corporations, but only found

15 its two managing shareholders to be personally liable. Shares of the stock were also

16 owned by employees of the corporation and various relatives of the two managers,

17 but the Riddle court disregarded the other shareholders because they had no

18 influence in the management of the corporation. Id. at 580. Likewise, in Stark v.

19 Coker, 20 Cal. 2d 839, 129 P.2d 390 (1942), a sham corporation was owned by a

20 husband and wife who managed the corporation and a third party who took no part

21 in management decisions. The court found the husband and wife personally liable,

22 but refused to impose liability on the third party who had no influence or control

23 over the corporation. See also Stansfield v. Starkey, 220 Cal. App. 3d 59, 74, 269

24 Cal. Rptr. 337, 346 (1990) (holding that the allegation "David Miscavige, defendant,

25 currently controls and totally dominates all Church of Scientology monies, assets

26 and property throughout the world" insufficient, because it "fail[s] to include *facts*

27 showing a unity of interest" emphasis in original); Institute of Veterinary Pathology,

28 Inc. v. California Health Labs, Inc., 116 Cal. App. 3d 111, 120, 172 Cal. Rptr. 74

-16-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  (1981) (holding that "[d]irect evidence of manipulative control" is illustrative of an

2  alter ego relationship).

3      In the case at bar, the SACC contains no examples of how Mrs. Omidi

4  dominated, influenced, or controlled the affairs of Corporate Counterclaim

5  Defendants. Instead, United complains that Mrs. Omidi was a "banker," <u>SACC</u>, ¶22,

6  was "notified" of cash payments, <u>id</u>. ¶¶25, 436(b), was "convicted of money

7  laundering," <u>id</u>. ¶¶25, 405, is the sole owner of PCI, <u>id</u>. ¶57, "set up mailing

8  addresses" for various entities, <u>id.</u> ¶406(a)(iii), "caused millions of dollars to be

9  transferred from the Wells Fargo accounts" into PCI's bank account, <u>id</u>. ¶58, was

10  listed as President, CEO, owner, or operator of unspecified entities, <u>id</u>. ¶409, was the

11  "signatory" on various bank accounts, <u>id</u>. ¶420, violated California's prohibition on

12  the practice of medicine by unlicensed individuals, <u>id</u>. ¶439, was the sister of Shawn

13  Pezeshk, <u>id</u>., ¶475(i), and "benefited" from a Wells Fargo account, <u>id</u>. ¶431(a).

14      Accordingly, the SACC allegations do not suffice to show that Mrs. Omidi

15  dominated, influenced, or controlled the affairs of the Corporate Counterclaim

16  Defendants, such that the separateness of the two no longer exists. United's alter ego

17  allegations against Mrs. Omidi simply fail raise a right to relief above the

18  speculative level. <u>Hoang v. Vinh Phat Supermarket, Inc.</u>, 2013 U.S. Dist. LEXIS

19  114475, 2013 WL 4095042, at *14 (E.D. Cal. Aug. 13, 2013) ("To sufficiently

20  allege a theory of alter ego, plaintiffs must provide 'more than labels and

21  conclusions'—'[f]actual allegations must be enough to raise a right to relief above

22  the speculative level.' " quoting <u>Twombly</u>, 550 U.S. at 555).

23      **B.**   **Intentionally Seeking To Confuse And Mislead**

24          **United And The Public As To The Appropriate**

        **Entity Against Whom To Seek Relief Is Not**

25          <u>**Sufficient To Establish An Inequitable Result**</u>.

26      The SACC does not sufficiently allege allegations to satisfy the second

27  component of the alter ego test, i.e., that, if the acts are treated as those of the

28  Corporate Counterclaim Defendants alone, an inequitable result will follow. United

-17-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN &amp; KASHFIAN

1  alleges that the Omidis utilize a number of LLCs and Corporations "to further their

2  conspiracy to defraud patients, claims administrators, health plans, and insurers by

3  using new business organizations in an attempt to evade detection by insurers and

4  claims administrators such as United and to induce United to pay claims that would

5  otherwise not have been paid." <u>SACC</u>, ¶ 59. Similarly, the SACC alleges that "[t]he

6  Counterclaim Defendants were able to use [a] wide network of like-named, shifting

7  entities to submit claims for services to elude detection by United as being

8  fraudulent or not covered." <u>Id.</u>, ¶ 410.

9       However, these allegations are not sufficient. <u>Payoda, Inc. v. Photon Infotech,</u>

10  <u>Inc.</u>, 2015 U.S. Dist. LEXIS 100560, *9-11 (N.D. Cal. July 30, 2015) is directly

11  point. There, the plaintiff alleged that "[d]efendants intentionally seek to 'confuse

12  and mislead customers, competitors, creditors, potential claimants, and other

13  members of the public as to the appropriate entity against whom to seek legal or

14  equitable relief,' " and argued that "this is sufficient under federal law to establish

15  alter ego liability" <u>Id.</u> at *9. The Court rejected that argument, reasoning that

> [I]t is clear that Plaintiff has failed to allege any resulting inequity from permitting Photon U.S. and Photon India to maintain their separate corporate existences. Even if, as Plaintiff suggested at oral argument, Photon India could not satisfy a judgment against it, California courts have consistently rejected this argument, finding that "[t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." <u>Sonora</u>, 83 Cal. App. 4th at 539. "Difficulty in enforcing a judgment or collecting a debt does not satisfy [the inequitable results] standard." <u>Id.</u>; <u>accord</u> <u>Sandoval v. Ali</u>, 34 F. Supp. 3d 1031, 1040-41 (N.D. Cal. 2014).

23  <u>Id.</u> at *10-11. In sum, "[c]onclusory allegations of 'alter ego' status are

24  insufficient to state a claim. Rather, a plaintiff must allege specifically both of the

25  elements of alter ego liability, as well as facts supporting each." <u>Neilson</u>, 290 F.

26  Supp. 2d at 1116. United has failed to do so here, and the motion to dismiss should

27  be granted.

28  ///

-18-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN & KASHFIAN

**IV.** *Alternatively***, The First Cause of Action Fails To State A Cause Of Action For Fraud.**

Assuming *arguendo* that the Court does not dismiss the entire SACC for the reasons set for <u>supra</u> at **I** or **II**, i.e., the improper "shot gun" pleading or "lumping," the Court must nevertheless dismiss the first cause of action because it fails to state a cause of action for fraud. Under California law, "[t]he elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." 5 B.E. Witkin, <u>Summary of California Law</u>, <u>Torts</u> § 772, at 1121 (10th ed. 2005).

A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's compliance with Rule 9(b) where fraud is an essential element of a claim. <u>See</u> <u>Vess v. Ciba—Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b) provides a heightened pleading standard for such claims:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quotation omitted); <u>see also</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." <u>Kearns</u>, 567 F.3d at 1124.

### A. The Allegations Against Mrs. Omidi Are Too General.

In the case at bar, the SACC makes no such allegations against Mrs. Omidi, but instead generally alleges that "Counterclaim Defendants," and not Mrs. Omidi,

-19-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  "execute[d] a scheme and artifice to defraud United," <u>SACC</u> ¶447, "had knowledge"

2  to do so, <u>Id</u>. ¶448, with "intent to induce" United, <u>Id</u>. ¶456, which were "reasonably

3  relied" on by United, <u>Id</u>.  ¶457 and "damages [resulting to United which] will be

4  proven at trial," <u>Id</u>.  ¶¶454, 457. This is improper lumping as noted <u>supra</u> at **I** or **II**,

5  and do not met Rule 8's standard let alone Rule 9's heighten standard.

6      Moreover, these above allegations are insufficient, because they do not allege

7  any specific conduct on the part of Mrs. Omidi constituting fraud. <u>Swartz</u>, 476 F.3d

8  at 764-65 (role of each defendant must be alleged in properly plead fraud); <u>Cheery</u>

9  <u>Way (USA), Inc. v. Duong</u>, 2012 U.S. Dist. LEXIS 67100, *15, 2012 WL 1670172

10  (N.D. Cal. May 14, 2012) (in a fraud case, "[s]pecific allegations must be levied

11  against each individual defendant."). As noted by the Court, in granting the prior

12  motion to dismiss

13      United cannot generally assert that everyone did everything on the basis
       of the examples it presents without specifying the roles that each
14      Counterclaim Defendant played in carrying out the purported fraud.
       While the Court does not anticipate that United should be obligated to
15      set forth every detail regarding the activities surrounding each claim line
       within its FACC, United must allege more than it currently has. The
16      Court will not advise United as to how it may fulfil the requirements
       imposed by Rule 9(b), but provides the following examples of the types
17      of allegations that appear to be lacking from the FACC and Appendix I:
       the category or categories of misrepresentations alleged with respect to
18      each claim line; ***the relevant Counterclaim Defendants*** implicated in
       each purported claim line; and the date of claim submission for each
19      claim line.

20      <u>Order Granting In Part Mnt to Dismiss</u>, at 19, ECF No. 144 (emphasis added).

21  However, a review of Appendix I shows that Mrs. Omidi is not implicated in any

22  purported claim lines, SACC, Appendix I, and is not even mentioned in Appendix II

23  or III. Indeed, the SACC does not contain even a single representation that Mrs.

24  Omidi made to United, United member or *<u>anyone</u> at all*.

25      **B.    United Fails To Meet The Heighten Burden In**
26      **Asserting Fraud Against A Corporate Counterclaim**
       **<u>Defendants</u>.**

27      Moreover, the fraud claim fails because the SACC does not sufficiently allege

28  the particular person who made the allegations on behalf of the Corporate

-20-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KASHFIAN & KASHFIAN

1  Counterclaim Defendants, i.e., it does not name who the agents were, when and

2  where they said what they said, and on what authority the spoke. This makes the

3  fraud claim insufficient. As explained in <u>Lazar v. Superior Court</u>,

> A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.

7  12 Cal.4th 631, 645, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996) (internal

8  quotation marks omitted); <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App.

9  4th 153, 157, 2 Cal. Rptr. 2d 861, 862-63 (1991). Untied has failed to even to meet

10  that requirement.

11      Although the SACC identifies various "agents," purportedly involved in the

12  scheme to defraud, <u>SACC</u>, ¶¶ 14, 475, concerning the actual misrepresentations, the

13  gravamen of the misconduct, the SACC makes only insufficient and conclusory

14  allegations that unidentified "agents" made the key representations forming the basis

15  of the fraud but fails to identify whom they are, in what capacity they made the

16  representations, and where they were. <u>See</u> <u>SACC</u>, at ¶¶ 22, 121, 131, 133 ("agents

17  had told United Member 16 that she would not have to pay anything out of pocket"),

18  168 ("agents had told United Member 20 that she would not have to pay anything"),

19  183 ("agents had told United Member 22 that she would not have to pay anything

20  out of pocket"), 191 ("agents had told United Member 23 that she would not have to

21  pay anything"), 209 ("agents had told United Member that he would not have to pay

22  anything out of pocket"), 217 ("agents had told United Member 26 that she would

23  not have to pay anything out of pocket"), 380 ("United Member 28 . . . was told by

24  the Counterclaim Defendants, Omidi Network providers or their agents [that certain

25  procedures] were necessary to secure a Lap Band,"), 441, 475.

26      What is worse, the SACC does not even mention who are the specific

27  purported agents *who failed to make the alleged non-disclosures* in the claim forms

28  which form the basis of the allegations for non-disclosure.

-21-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  This is insufficient. Lazar, 12 Cal.4th at 645; see e.g. Stansfield, 220 Cal.

2  App. 3d at 74 (granting a demurrer for failure to state a cause of action in part

3  because plaintiffs did not allege "who acted as the agent" for various representations

4  made to induce six persons to join the Church of Spiritual Technology).

### C. The Purported Alter Ego Allegations And Cross Agency Allegations Are Fundamentally Inconsistent.

7  What is more, the purported alter ego allegations, the assertion that Omidis

8  "own, control, direct, and manage" the Omidi Network, SACC, ¶22, and the

9  assertion that "each Counterclaim Defendant was the agent, servant, employee,

10  partner and/or joint venture of each of the other Counterclaim Defendants," SACC,

11  ¶441, are also fatal to United's fraud claim, because they are fundamentally

12  inconsistent. Stansfield, 220 Cal. App. 3d at 74 (granting a demurrer for failure to

13  state a cause of action in part because plaintiffs' "alter ego and cross-agency

14  allegations ('defendants and each of them, are the agents and employees of each

15  other') are inconsistent with other allegations (such as 'L. Ron Hubbard and

16  defendants Norman Starkey . . . are or have been principal officers and/or controllers

17  of all of the defendant corporations' and 'David Miscavige, defendant, currently

18  controls and totally dominates all Church of Scientology monies, assets and property

19  throughout the world'")).

### D. Damages Have Not Been Sufficiently Pled.

21  Additionally, the allegation that damages will be "proven at trial," SACC

22  ¶¶454, 457, is also insufficient, because it does not state a definite pecuniary

23  amount. Nagy v. Nagy, 210 Cal. App. 3d 1262, 1268-69, 258 Cal. Rptr. 787, 790

24  (1989) is directly on point. There, the complaint averred that, because of the

25  fraudulent misrepresentations, "plaintiff was damaged in an amount to be

26  determined at time of trial." Id. at 1268.

27  The Nagy court held that the "complaint was defective in that [it] did not

28  allege a definite amount of damage", reasoning that, because "[f]raud actions are

-22-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1  subject to strict requirements of particularity in pleading", "[a]n allegation of a

2  definite amount of damage is essential to stating a cause of action." <u>Id.</u>, at 1268-

3  1269; <u>see also</u> <u>Munson v. Fishburn</u>, 183 Cal. 206, 220, 190 P. 808, 813 (1920)

4  ("Where the action is for damages, however, the plaintiff must allege and prove that

5  by reason of the fraud he has suffered damage in a definite amount."); <u>Abbot v.</u>

6  <u>Stevens</u>, 133 Cal. App. 2d 242, 247, 284 P.2d 159, 161 (1955) ("an allegation of a

7  definite amount of damage is essential to stating a [fraud] cause of action");

8  <u>Newman-Reynolds v. 2010-3 Sfr</u>, 2015 Cal. App. Unpub. LEXIS 831, *26 (Cal.

9  App. 4th Dist. Feb. 5, 2015) ("Both allegations are insufficient because they are not

10  allegations of pecuniary damages in a definite amount. The trial court properly

11  sustained MERS's and SFR's demurrers to the second cause of action for fraud

12  without leave to amend."); <u>Williams v. Prudential Ins. Co. of Am.</u>, 2007 U.S. Dist.

13  LEXIS 86795, *7, 2007 WL 3407425 (N.D. Cal. Nov. 13, 2007) ("an allegation of a

14  definite amount of damage is essential to stating a cause of action.")

15      Accordingly, the SACC fails to state a cause of action for fraud against Mrs.

16  Omidi.

17  **V.    *Alternatively*, The Third Cause of Action Fails To State A Cause
18  Of Action Conspiracy To Commit Fraud.**

19      Assuming *arguendo* that the Court does not dismiss the entire SACC for the

20  reasons set for <u>supra</u> at **I** or **II**, i.e., the improper "shot gun" pleading or "lumping,"

21  the Court must nevertheless dismiss the third cause of action because it fails to state

22  a cause of action for conspiracy to commit fraud.

23      In the event that the Court dismisses the fraud cause of action, it must also

24  dismiss the conspiracy to commit fraud cause of action. <u>Order Granting In Part Mnt</u>

25  <u>to Dismiss</u>, at 31, ECF No. 144. Moreover, when pleading a conspiracy, the

26  complaint should allege: (1) the formation and operation of the conspiracy; (2) the

27  wrongful act or acts done pursuant thereto; and (3) the damage resulting. <u>Kidron v.</u>

28  <u>Movie Acquisition Corp.</u>, 40 Cal. App. 4th 1571, 1581, 47 Cal. Rptr. 2d 752 (1995).

-23-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1   Civil conspiracy is not an independent tort, but rather a "legal doctrine that imposes

2   liability on persons who, although not actually committing a tort themselves, share

3   with the immediate tortfeasors a common plan or design in its perpetration." Applied

4   Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11, 28 Cal. Rptr. 2d

5   475, 869 P.2d 454 (1994).

6       When alleging a civil conspiracy, Rule 9(b) "requires more than conclusory

7   allegations of the conspiracy." S. Union Co. v. Southwest Gas Corp., 165 F. Supp.

8   2d 1010, 1020 (D. Ariz. 2001) (applying California civil conspiracy law). To meet

9   the stringent civil conspiracy pleading requirements of Rule 9(b), a "plaintiff must

10  allege with sufficient factual particularity that defendants reached some explicit or

11  tacit understanding or agreement." Alfus v. Pyramid Tech. Corp., 745 F. Supp. 1511,

12  1521 (N.D. Cal. 1990). "It is not enough to show that defendants might have had a

13  common goal unless there is a factually specific allegation that they directed

14  themselves towards this wrongful goal by virtue of a mutual understanding or

15  agreement." Id. (citation omitted); 117 Sales Corp. v. Olsen, 80 Cal. App. 3d 645,

16  145 Cal. Rptr. 778, 780 (1978) (a civil conspiracy consists of "a combination of two

17  or more persons to accomplish an evil or unlawful purpose.") (citation omitted).

18      For example, in Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 509

19  (7th Cir. 2007), the court found the complaint defective because it said "nothing

20  about the nature of the purported agreement to defraud the plaintiffs, such as when it

21  was made or which individuals at Goldman Sachs arranged the conspiracy."

22  Likewise, the Eleventh Circuit applied Rule 9(b) in dismissing a civil conspiracy

23  claim that "did not explain how" and "failed to state when" the co-conspirators

24  agreed to engage in fraud. American United Life Ins. Co. v. Martinez, 480 F.3d

25  1043, 1068 (11th Cir. 2007).

26      In the case at bar, the SACC's allegations of civil conspiracy are sparse,

27  conclusory, and unspecific. SACC ¶¶472-78 Rather than offering the Court specific

28  facts to support the inference of an agreement between Mrs. Omidi and even at least

-24-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1   one of the alleged co-conspirators, let alone all of the alleged co-conspirators, to

2   commit the alleged scheme to defraud, United has offered nothing more than

3   conclusory allegations and bald assertions. Id. Also, United fails to allege any

4   specific facts regarding the roles of Mrs. Omidi in the alleged conspiracy, her

5   alleged agreement, and fails meet the requirements of Rule 9(b) in pleading a

6   conspiracy to commit fraudulent acts. Accordingly, the Court must grant the motion

7   to dismiss. See e.g. Barba v. Lee, 2009 U.S. Dist. LEXIS 132415, *31 (D. Ariz.

8   Nov. 3, 2009) (granting a motion to dismiss for civil conspiracy because "Plaintiffs

9   allege no facts showing that the Defendants actually agreed with each other to

10  commit tortious acts" and "Plaintiffs fail to allege specific facts regarding the roles

11  of the individual Defendants in the alleged conspiracy and thus do not meet the

12  requirements of Rule 9(b) in pleading a conspiracy to commit fraudulent acts" citing

13  Swartz, 476 F.3d at 76).

14      Additionally, the SACC does not reference a single document, participant, or

15  conversation that was involved in the alleged agreement between Mrs. Omidi and

16  the other Counterclaim Defendants. For this additional reason, the Court must grant

17  the motion to dismiss the civil conspiracy claim. See Masco Contrs. Servs. W. v.

18  N.H. Ins. Co., Inc., 2005 U.S. Dist. LEXIS 42998, *18-19, 2005 WL 405361 (N.D.

19  Cal. Feb. 17, 2005) (granting a motion to dismiss for civil conspiracy because

20  "Plaintiffs have offered nothing more than conclusory allegations and bald

21  assertions," and "Plaintiffs' complaint does not reference a single document,

22  participant, or conversation that was involved in the alleged agreement between

23  National Union and New Hampshire.")

24

25              **CONCLUSION**

26      Accordingly, the Court must dismiss the SACC in its entirety or, alternatively,

27  dismiss the first and third causes of action.

28  ///

-25-

MEMORANDUM OF POINTS AND AUTHORITIES
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1   *Respectfully Submitted,*

2       this 27th day of August, 2015        *By:* **/s/ *Ryan D. Kashfian, Esq.***

3                                              _____

4                                              RYAN D. KASHFIAN, ESQ.
                                               ROBERT A. KASHFIAN, ESQ.
5                                              OLGA Y. NOVAK, ESQ. *for*

6                                              **KASHFIAN & KASHFIAN LLP**

7                                              *Attorneys for Counterclaim
                                               Defendant,* CINDY OMIDI
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

**MEMORANDUM OF POINTS AND AUTHORITIES**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM

CASE NO. 2:14-CV-03053-MWF(VBKx)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| ☐ **PROOF OF SERVICE** | ☒ **CERTIFICATE OF SERVICE** |
|---|---|

| ☒ **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES** | ☐ DISTRICT OF COLUMBIA |
|---|---|
| *California Code of Civil Procedure* §1013(a)<br>*California Code of Civil Procedure* §2015.5<br>*California Rules of Court, Rule 2.260* | *District of Columbia Superior Court Civil Procedure* Rule 5 *et seq.*<br>*Federal Rules of Civil Procedure* |

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: KASHFIAN & KASHFIAN LLP:

☐ *Culver City Office*: 6023 Bristol Parkway, Suite 100, Culver City, California 90230
☒ *Century City Office*: 1875 Century Park East, Suite 1340, Los Angeles, California 90067

On <u>August 27th, 2015</u>, I served the following listed document(s) herein, by method indicated below, on each interested parties in the within action, listed on the ATTACHED SERVICE LIST:

**COUNTERCLAIM DEFENDANT CINDY OMIDI'S: (1) NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM; (2) NOTICE OF JOINDER AND JOINDER IN THE PROVIDER, PROPERTY CARE INSURANCE, DEVIDA, MICHAEL OMIDI M.D. AND JULIAN OMIDI'S MOTIONS TO DISMISS; AND (3) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS.**

☐ **(BY U.S. MAIL)** By placing ☐ the original / ☐ a true copy thereof enclosed in a sealed envelope(s), with postage fully prepaid, addressed as per the attached service list, for collection and mailing at Kashfian & Kashfian, LLP., ☐ 6023 Bristol Parkway, Suite 100, Culver City, CA 90230 or ☐ 1875 Century Park East, Suite 1340, Los Angeles, CA 90067, following ordinary business practices. I am readily familiar with Kashfian & Kashfian, LLP.'s practice for collection and processing of documents for mailing. Under that practice, the document is deposited with the United States Postal Service on the same day as it is collected and processed for mailing in the ordinary course of business.

☐ **(BY OVERNIGHT DELIVERY)** By delivering the document(s) listed above in a sealed envelope(s) or package(s) designated by the express service carrier, with delivery fees paid or provided for, addressed as per the attached service list, to a facility regularly maintained by the express service carrier or to an authorized courier or driver authorized by the express service carrier to receive documents. **Note**: Federal Court requirement: service by overnight delivery was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.

☐ **(BY PERSONAL SERVICE)** ☐ By personally delivering and handing the document(s) listed above to the person(s) identified on the attached service list. ☐ By personally delivering the document(s) listed above to the office address(es) as shown on the attached service list and leaving said document(s) with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office(s). ☐ By personally delivering the document(s) listed above to the address(es) as shown on the attached service list and leaving said document(s) with someone of suitable age and discretion residing at said address(es).

☐ **(BY FACSIMILE)** By transmitting the document(s) listed above from Kashfian & Kashfian, LLP. in Los Angeles County, California to the facsimile machine telephone number(s) set forth on the attached service list. Service by facsimile transmission was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.

☐ **(BY ELECTRONIC MAIL** [EMAIL]**)** By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list from the email address [*first-name*]@kashfianlaw.com at approximately [*date & time*]. To my knowledge, the transmission was reported as complete and without error. Service by email was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order. *See* Cal. R. Ct. R. 2.260.

☐ **(BY ELECTRONIC SERVICE via electronic filing service provider LexisNexis)** By electronically transmitting the document(s) listed above to LexisNexis File and Serve, an electronic filing service provider at their website address www.fileandserve.lexisnexis.com, from the email address [*first-name*]@kashfianlaw.com, at approximately [*date & time*]. To my knowledge, the transmission was reported as complete and without error. *See* Cal. R. Ct. R. 2.253, 2.255, 2.260.

☒ **(BY ELECTRONIC TRANSFER)** By causing all the pages of the above-entitled document(s) to be uploaded to ☒ the U.S. District Court or ☐ the U.S. Court of Appeals, Ninth Circuit "CM/ECF" System to be sent to the recipients listed herein via electronic transfer at the respective EMAIL addresses indicated herein. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

-1-

**CERTIFICATE OF SERVICE AND SERVICE LIST**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM [ETC.]

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**SERVICE LIST**

1

2

3   Bryan Westerfeld, Esq.
     Nicole Wurscher, Esq.
4   **WALRAVEN & WESTERFELD LLP**
5   101 Enterprise, Suite 350
     Aliso Viejo, CA 92565-2620
6

7   R.J. Zayed, Esq.
     Timothy Branson, Esq.
8   Stephen P. Lucke, Esq
9   **DORSEY & WHITNEY LLP**
     50 S Sixth Street, Suite 1500
10  Minneapolis, MN 55402-1498

*Attorneys for ( or ☐ In Propria Persona):*

UNITED HEALTHCARE
SERVICES, INC.;
UNITEDHEALTHCARE
INSURANCE COMPANY;
OPTUMINSIGHT, INC.

☒ *Counter Plaintiff(s);*
☐ *Counter Defendant(s);*
☐ *Cross-Complainant(s);*
☐ *Cross-Defendant(s);*
☐ *Appellant(s);*
☐ *Appellee(s);* and
☐ *Trial Court.*

13  ☐  (State of California) I declare under penalty of perjury under the laws
14      of the State of California that the above is true and correct.

15  ☐  (District of Columbia) I declare under penalty of perjury under the
16      laws of the District of Columbia that I am at least 18 years of age and
17      not a party to the above entitled case and that the forgoing information
18      contained in this service is true and correct.

19  ☒  (**Federal**)  I declare that I am a member of the bar of this court, or am
20      employed in the office of a member of this court at whose direction the
        service was made.

21
22      Executed on this 27th day of August, 2015, at Century City, California.

23

24      */s/ Robert A. Kashfian*
        _____

25      ROBERT A. KASHFIAN, ESQ.
26      *for* KASHFIAN & KASHFIAN LLP

27

28

-2-

**CERTIFICATE OF SERVICE AND SERVICE LIST**
COUNTERCLAIM DEFENDANT CINDY OMIDI'S MOTION
TO DISMISS THE SECOND AMENDED COUNTER CLAIM [ETC.]

CASE NO. 2:14-CV-03053-MWF(VBKx)
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA