

**BRYAN WESTERFELD (S.B. # 218253)**
bwesterfeld@calemployerlaw.com
**NICOLE E. WURSCHER (S.B. # 245879)**
nwurscher@calemployerlaw.com
**WALRAVEN & WESTERFELD LLP**
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone:  (949) 215-1997
Facsimile:    (949) 215-1999

**R.J. ZAYED (MN ID #0309849)**
zayed.rj@dorsey.com
**TIMOTHY BRANSON (MN ID #174713)**
branson.tim@dorsey.com
**ANDREW HOLLY (MN ID #308353)**
holly.andrew@dorsey.com
*Admitted pro hac vice*
**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:    (612) 340-2868

Attorneys for Defendant UnitedHealth Group Incorporated;
and Defendants/Counterclaim Plaintiffs
United Healthcare Services, Inc., UnitedHealthcare
Insurance Company, OptumInsight, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC; *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INCORPORATED; *et al.*,<br><br>                    Defendants.<br>_____<br><br>UNITED HEALTHCARE SERVICES, INC.; *et al.*,<br><br>                    Counterclaim Plaintiffs,<br><br>v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC; *et al.*,<br><br>                    Counterclaim Defendants. | Case No 2:14-cv-03053-MWF(VBKx)<br><br>**COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM**<br><br>**DATE: Sept. 17, 2015**<br>**TIME: 3:00 pm**<br>**DEPT.: Courtroom 16**<br><br>(Superior Court of the State of California, County of Los Angeles, Central District Case Number: BC540056)<br><br>Complaint filed:  March 21, 2014 |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 3

    I.    The SACC Satisfies The Requirements Of Rules 12(e) And 8(a) ....... 3

        A.    The SACC Enables Cindy Omidi to Form a Responsive
            Pleading ................................................................................. 3

            1.    The SACC is Not a "Shotgun Pleading" ......................... 3

            2.    Dismissal is Not the Proper Remedy to Address a
                Shotgun Pleading .............................................................. 7

        B.    The SACC Properly Distinguishes Cindy Omidi's Role in
            the Fraud ................................................................................ 8

    II.    The Court Should Reject Cindy Omidi's Specific Arguments
        Regarding The Fraud And Conspiracy Allegations ............................. 9

        A.    United Adequately Pleads Cindy Omidi's Role in the
            Fraud and Conspiracy ........................................................... 9

            1.    Cindy Omidi Played a Role in the Scheme in at
                 Least Three Distinct Ways ............................................... 10

            2.    United Alleges the Existence of at Least a Tacit
                Agreement to Form a Conspiracy .................................... 13

        B.    United's Fraud Allegations Need Comply Only With Rule
            9(b) ...................................................................................... 15

        C.    United Adequately Pleads Damages ...................................... 16

    III.    United Plausibly Alleges The Factual Basis For Cindy Omidi's
        Alter-Ego Liability .............................................................................. 17

        A.    United Alleges a Unity of Interest Between Cindy Omidi
            and the Corporate Entities ..................................................... 18

        B.    United Alleges Inequity in the Absence of Personal
            Liability ................................................................................ 21

        C.    United's Alter-Ego Allegations are not Inconsistent .............. 23

CONCLUSION .............................................................................................. 23

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. CIBA Specialty Chems. Corp.*,
 2008 WL 4183344 (S.D. Ala. Sept. 10, 2008) ................................................ 6, 7

*Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*,
 77 F.3d 364 (11th Cir. 1996) ................................................................................ 5

*Argyropoulos v. Mednet*,
 1997 U.S. Dist. LEXIS 10497 (C.D. Cal. Apr. 14, 1997) ................................ 15

*Berson v. Applied Signal Tech., Inc.*,
 527 F.3d 982 (9th Cir. 2008) .............................................................................. 13

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
 683 F.3d 1083 (9th Cir. 2012) ............................................................................. 7

*Boxall v. Sequoia Union High Sch. Dist.*,
 464 F. Supp. 1104 (N.D. Cal. 1979) .................................................................... 4

*Bureerong v. Uvawas*,
 922 F. Supp. 1450 (C.D. Cal. 1996) ..................................................................... 3

*C.B. v. Sonora Sch. Dist.*,
 691 F. Supp. 2d 1170 (E.D. Cal. 2010) ................................................................ 3

*Cooper v. Pickett*,
 137 F.3d 616 (9th Cir. 1997) .............................................................................. 13

*Coward v. JP Morgan Chase Bank, Nat'l Ass'n*,
 2012 WL 2263359 (E.D. Cal. June 15, 2012) ................................................... 16

*Crook v. San Bernardino Cnty. Dep't of Child Support Servs.*,
 2014 U.S. Dist. LEXIS 172289 (C.D. Cal. Dec. 11, 2014) ................................. 8

*Davis v. Coca-Cola Bottling Co. Consol.*,
 516 F.3d 955 (11th Cir. 2008) ......................................................................... 5, 8

*Destfino v. Kennedy*,
 2009 WL 63566 (E.D. Cal. Jan. 8, 2009) ............................................................. 4

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    416 F. Supp. 161 (C.D. Cal. 1976) ................................................................. 8, 13

*First West Bank & Trust Co. v. Bookasta*,
    267 Cal. App. 2d 910 (1968) ........................................................................ 20, 21

*Furia v. Helm*,
    111 Cal. App. 4th 945 (2003) ............................................................................. 17

*Fustok v. UnitedHealth Grp., Inc.*,
    2013 WL 2189874 (S.D. Tex. May 20, 2013) ................................................... 12

*Gen-Probe, Inc. v. Amoco Corp.*,
    926 F. Supp. 948 (S.D. Cal. 1996) ...................................................................... 9

*Gillibeau v. City of Richmond*,
    417 F.2d 426 (9th Cir. 1969) ................................................................................ 3

*Gottschalk v. City & Cnty. of S.F.*,
    964 F. Supp. 2d 1147 (N.D. Cal. 2013) ............................................................... 9

*Greenwood v. Mooradian*,
    137 Cal. App. 2d 532 (1955) ............................................................................. 14

*Hearns v. San Bernardino Police Dep't*,
    530 F.3d 1124 (9th Cir. 2008) .............................................................................. 9

*Hisun Motors Corp. v. Auto. Testing & Dev. Servs.,Inc.*,
    2012 WL 682398 (D. Ariz. Mar. 2, 2012) ........................................................ 15

*Hoang v. Vinh Phat Supermarket, Inc.*,
    2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ................................................... 20

*Hoffman v. Pac. Coast Constr. Co.*,
    37 Cal. App. 125 (1918) ..................................................................................... 17

*Hubbs v. Cnty. of San Bernardino, CA*,
    538 F. Supp. 2d 1254 (C.D. Cal. 2008) ............................................................... 3

*Hunter v. Freeman*,
    105 Cal. App. 2d 129 (1951) ............................................................................. 17

*Institute of Veterinary Pathology v. California Health Labs*,
    116 Cal. App. 3d 111 (1981) ............................................................................. 20

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996)...................................................................... 15

*Longaberger Co. v. Kolt*,
    586 F.3d 459 (6th Cir. 2009) ............................................................ 7

*Lovesy v. Armed Forces Benefit Association*,
    2008 WL 696991 (N.D. Cal. Mar. 13, 2008) ...................................... 20

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ....................................................... 4, 8

*McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*,
    89 Cal. App. 4th 746 (2001) ........................................................... 18, 22

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ........................................................... 4, 8

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir.1989) ............................................................. 12

*Nagy v. Nagy*,
    210 Cal. App. 3d 1262 (1989) ......................................................... 17

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
    2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) .................................... 13

*Paul Haggis, Inc. v. Yari*,
    2014 WL 406828 (Cal. Ct. App. Jan. 31, 2014) ................................. 22

*Payoda, Inc. v. Photon Infotech, Inc.*,
    2015 WL 4593911 (N.D. Cal. July 30, 2015) .................................... 22

*People v. Beaumont Inv., Ltd.*,
    111 Cal. App. 4th 102 (2003) .......................................................... 14

*Platt v. Billingsley*,
    234 Cal. App. 2d 577 (1965) .......................................................... 20, 21

*Estate of Prasad ex rel. Prasad v. Cnty. of Sutter*,
    958 F. Supp. 2d 1101 (E.D. Cal. 2013) .............................................. 3

*Rader Co. v. Stone*,
    178 Cal. App. 3d 10 (1986) ............................................................. 23

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .................................................................. 20

*Riddle v. Leuschner*,
   51 Cal. 2d 574 (1959) ............................................................................ 21

*RRX Indus., Inc. v. Lab-Con, Inc.*,
   772 F.2d 543 (9th Cir. 1985) ............................................................ 18, 21

*San Bernardino Pub. Emps. Ass'n v. Stout*,
   946 F. Supp. 790 (C.D. Cal. 1996) ........................................................ 3

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) .............................................. 20, 22

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
   547 U.S. 356 (2006) ................................................................................ 7

*Stansfield v. Starkey*,
   220 Cal. App. 3d 59 (1990) ............................................................... 20, 23

*Stark v. Coker*,
   20 Cal. 2d 839 (1942) ............................................................................. 21

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,
   305 F.3d 1293 (11th Cir. 2002) ............................................................. 4

*In re Sunset Bay Assocs.*,
   944 F.2d 1503 (9th Cir. 1991) .............................................................. 14

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .......................................................... 10, 13

*Talbot v. Fresno-Pac. Corp.*,
   181 Cal. App. 2d 425 (1960) ........................................................... 21, 23

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
   2 Cal. App. 4th 153 (1991) ............................................................. 15, 16

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305 (2009) ............................................................. 18

*United States v. Summit Healthcare Ass'n, Inc.*,
   2011 WL 814898 (D. Ariz. Mar. 3, 2011) ........................................... 13

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

*Wagner v. First Horizon Pharmaceutical Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ..................................................................... 5, 6, 8

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ..................................................................... 12, 16

**Statutes**

ERISA § 502(a)(3) ......................................................................................... 6, 7

**Other Authorities**

Fed. R. Civ. P. Rule 8(a) ....................................................................... 2, 3, 8, 9

Fed. R. Civ. P. Rule 9(b) ................................................................................ *passim*

Fed. R. Civ. P. Rule 10(b) ............................................................................... 5

Fed. R. Civ. P. Rule 12(b) ........................................................................... 6, 8

Fed. R. Civ. P. Rule 12(e) .............................................................................. *passim*

William W. Schwarzer, *et al.*, *Federal Civil Procedure Before Trial*
   *(The Rutter Group Practice Guide)* § 8:697 ..................................................... 17

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

**INTRODUCTION**

The Second Amended Counterclaim ("SACC") alleges that Counterclaim Defendant Cindy Omidi conspired with her sons and the corporate entities they created, owned, and managed to defraud both United and hundreds of the group health plans it administers.  The SACC alleges that the Omidi-controlled Providers induced 2,000 patients into receiving services from them by promising to waive co-pays, co-insurance, deductibles, and other amounts due under the terms of the participants' plans ("Member Responsibility Amounts").  Omidi-controlled Billing Entities then submitted fraudulent billing statements that affirmatively misrepresented the "total charges" due.  In yet other instances, these same Providers told patients—falsely—that their health plans covered Lap Bands, knowing that their plans provided no such coverage.  Only after these patients endured a battery of preparatory tests, for which the Providers billed United millions, did the Providers finally inform those United Members that they were not covered for Lap Band surgery.  Among the 2,000 members who received co-pay waivers, United has identified 40 specific instances of fraud—to which no Counterclaim Defendant has thus far sought to dismiss—in which these, and other misrepresentations, manipulations, and deceptions have occurred.[1]

As explained below, Cindy Omidi was integrally involved in this fraud, and contrary to her suggestion, United expressly alleges her role in the scheme.  She self-identified on Secretary of State records as the "Executive Director" of at least three named Counterclaim Defendants that United has properly alleged to have submitted false claims; is the registered agent of another; and is the "sole owner" of an offshore entity that is designed to hold the ill-gotten profits of the Omidi Network fraud.  SACC Ex. A; *id*. ¶¶ 57, 406(b).  She took affirmative steps to

---

[1]    The Counterclaim Defendant Providers, Property Care Insurance, Inc., DeVida USA LLC, and Julian and Michael Omidi filed separate motions to dismiss the SACC to which Cindy Omidi joined.  United likewise incorporates its response to these motions, here.

1   further the scheme, like registering and paying for post-office boxes for dozens of

2   shell companies and otherwise directing medical decision-making in violation of

3   California's ban on the corporate practice of medicine.  *Id.* ¶¶ 406(a)(iii), 439.  She

4   was so involved that Michael and Julian Omidi directed their subordinates to

5   personally inform Cindy Omidi of any patient that sought to pay cash for services.

6   *Id.* ¶ 25.  She also serves as the conspiracy's banker, creating and maintaining

7   control over at least ███████████████████████.  *Id.* ¶¶ 25, 420.  And

8   she personally profited from the scheme, ████████████████████████

9   ███████████████████████████████████████

10  ████████████████████████████████████████████

11  ███████████████████ to Property Care Insurance, Inc., the offshore insurer

12  for which she was the sole owner  *Id.* ¶¶ 57, 431(b)-(c).  ████████████████

13  ██████████████████████████  *Id.* ¶ 431(d).

14          United should be permitted to raise claims against Cindy Omidi to rectify this

15  fraud.  United sufficiently alleges, whether measured under the requirements of

16  Rules 8(a) or 9(b) or 12(e), that Omidi and her sons jointly owned and controlled a

17  web of shell companies that were designed to defraud the public, United, and other

18  health plans.  Cindy and her sons designed and controlled the fraud, and then

19  reaped millions of dollars in ill-gotten profits.  Because Cindy played a significant

20  role in defrauding United and the associated health plans, this Court should deny

21  Cindy Omidi's motion to dismiss.

22          In addition, given the allegations about her personal receipt and use of funds

23  paid by United, it is not surprising that she makes no argument regarding the

24  sufficiency of United's ERISA and conversion claims against her.  Accordingly, the

25  SACC's ERISA and conversion claims directed to Cindy Omidi survive regardless

26  of the resolution of her motion to dismiss.

27

28

### ARGUMENT

**I.    The SACC Satisfies The Requirements Of Rules 12(e) And 8(a)**

Cindy Omidi seeks dismissal of the entire SACC as against her because, she claims, it is an improper "shotgun" pleading under Rule 12(e) and because the SACC "lumps" her together with other defendants in violation of Rule 8(a).  C. Omidi Mot. at 6-12.  The Court should reject these arguments, which misapprehend the applicable law, the facts alleged in the complaint, and the relief available to remedy such defects.

**A.    The SACC Enables Cindy Omidi to Form a Responsive Pleading**

**1.    The SACC is Not a "Shotgun Pleading"**

Under Rule 12(e), a party may move for a more definite statement when "a pleading . . . is so vague or ambiguous that [a] party cannot reasonably prepare a response."  Such motions are disfavored and rarely granted.  *See C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010).  In fact, a Rule 12(e) motion "is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, *i.e.*, so vague that the defendant cannot begin to frame a response."  *Id.*; *see also Hubbs v. Cnty. of San Bernardino, CA*, 538 F. Supp. 2d 1254, 1262 (C.D. Cal. 2008) (citing *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (same)).  A Rule 12(e) motion that "does not identify the details desired from the more definite statement is neither effective nor in compliance with Rule 12(e)."  *Estate of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1124-25 (E.D. Cal. 2013) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 & n.5 (9th Cir. 1969) (quotation marks omitted).

Further, a motion for a more definite statement must be denied when the complaint is specific enough to notify the defendant of the substance of the claim or claims being asserted.  *C.B.*, 691 F. Supp. 2d at 1191 (citing *San Bernardino Pub. Emps. Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail,

and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her.")); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1113-14 (N.D. Cal. 1979) (denial likely where the substance of a claim has been alleged even though some details are omitted).

Cindy Omidi fails to show that the SACC is a "shotgun pleading." The caselaw reveals three situations where courts have sometimes required repleading to remedy "shotgun pleading." It is not entirely clear which of these categories Cindy Omidi contends the SACC falls into. In any event, none apply here.

*First*, courts have sometimes required repleading when the plaintiff failed to differentiate between the defendants such that it is impossible to determine which defendant is accused of what. *See Destfino v. Kennedy*, 2009 WL 63566, at *6 (E.D. Cal. Jan. 8, 2009) ("[P]laintiffs . . . allege[d] in the FAC that every defendant did the exact same conduct and said the exact same misrepresentations."); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002) (repleading necessary because the complaint made no distinction among the defendants charged); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (same); *McHenry v. Renne*, 84 F.3d 1172, 1174-75 (9th Cir. 1996) (same). But such cases are rare—and these circumstances are not present here. In *McHenry*, for example, the court emphasized the impossibility of determining which defendants were allegedly liable for which wrongs: "Given the number and diversity of named defendants and the breadth of allegations, claims which vaguely refer to 'defendants' or 'other responsible authorities' will not suffice." 84 F.3d at 1175.

Cindy Omidi claims that "United alleges that each Counterclaim Defendant did everything" and that, therefore, "it is difficult if not impossible to determine which conduct or what conduct United has specifically attributed to Mrs. Omidi." C. Omidi Mot. at 8. This is inaccurate. United has differentiated between the actions of the different groups of Counterclaim Defendants, including Cindy Omidi

acting individually, Julian and Michael Omidi, and "the Omidis" (Cindy, Julian, and Michael, collectively).  For example, the SACC contains at least fourteen paragraphs specifically describing allegations related to Cindy Omidi, five paragraphs alleging actions by Julian and Michael Omidi, and twenty-four paragraphs alleging acts performed by "the Omidis."  Although Cindy Omidi insinuates that there are not enough allegations to withstand scrutiny, she fully grasps the allegations against her.  In fact, her summary of the allegations "concerning Mrs. Omidi" spans three pages of her brief.  C. Omidi Mot. at 3-5.

A *second* reason courts sometimes require repleading under Rule 12(e) is if every claim is combined into one count, contrary to the requirements of Federal Rule of Civil Procedure 10(b).  *See, e.g.*, *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 365-68 (11th Cir. 1996) (repleading necessary under Rule 10(b) because each count claimed that defendants had violated multiple provisions of the U.S. Constitution, the Florida Constitution, federal statutes, and other rules); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 n.57 (11th Cir. 2008) (repleading necessary because the complaint contained "in *one count* a host of claims based on discrete acts of discrimination").[2]  But here, the SACC does not combine all claims in one count—it contains seven, independent legal claims against all Counterclaim Defendants.

*Finally*, courts sometimes require repleading when there are no specific factual allegations—beyond the ubiquitous incorporation clause—described in the counts of a multi-count complaint.   In *Wagner v. First Horizon Pharmaceutical Corp.*, for example, repleading was appropriate because the elements of the claims were "insufficiently linked to the large fact section that precedes the counts."  464 F.3d 1273, 1279 (11th Cir. 2006).  After the usual incorporation clause, the plaintiffs made "[n]o further reference" to the "previous allegations in the

---

[2]  Cindy Omidi relies almost exclusively on 11th Circuit authority for her "shotgun" argument, and fails entirely to cite any 9th Circuit authority addressing this rule.

complaint, leaving the reader to wonder which prior paragraphs support the elements of the fraud claim." *Id.* Here, however, after the incorporation clause of each count, the SACC has multiple paragraphs that provide additional count-specific factual allegations. *See, e.g.*, SACC ¶¶ 446-58 (ten additional paragraphs of fraud-specific factual allegations); SACC ¶¶ 459-70 (eleven additional paragraphs of UCL-specific factual allegations); SACC ¶¶ 471-78 (seven additional paragraphs of conspiracy-specific factual allegations, including sub-paragraphs and well-organized headings such as "conspiracy participants," "manner and means of the conspiracy," and "overt acts of the conspiracy").

Cindy Omidi's claims that the SACC is too vague and ambiguous for her to fairly respond are particularly unpersuasive in light of the fact that—*in the very same document*—she moves to dismiss, with detailed argument, several of the counts. *See* C. Omidi Mot. at 12-18 (alter-ego); 17-18 (intentionally misleading United); 19-23 (engineering a common scheme to defraud); and 23-25 (conspiring to commit fraud). The very arguments laid out in her motion to dismiss belie her claims that the SACC is too vague. *See Abrams v. CIBA Specialty Chems. Corp.*, 2008 WL 4183344, at *5 (S.D. Ala. Sept. 10, 2008) ("Indeed, defendants' own filings in support of their Rule 12(b) Motion reveal that they understand, at least in general terms, the nature of the claims against them."). Just as in *Abrams*, this is "simply not a case in which a defendant is unable to respond to an unintelligible pleading; to the contrary, defendants clearly grasp the claims against them well enough to file an answer." *Id.*

Further, Cindy Omidi's purported confusion about the claims raised against her ignores the clear ERISA claims raised against her in the SACC. United has raised claims under ERISA § 502(a)(3) against the various Counterclaim Defendant medical providers who received erroneous payments from United (in some cases procured by fraud)—claims that the Court previously held stated a claim for relief. *See* Provider FACC Order [Dkt. No. 145] at 54; *see also* SACC ¶¶ 510-16. A claim

to enforce an equitable lien under ERISA § 502(a)(3), however, can only seek "equitable relief," which in this context means that United must either seek to recover the very sums that were paid to the Counterclaim Defendants or assets that can be traced to those originally-paid sums. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363-65 (2006); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092 (9th Cir. 2012). Here, the SACC clearly alleges that the Counterclaim Defendants' wrongful behavior caused United to pay millions of dollars of claims to Providers that were deposited into certain Wells Fargo bank accounts. *Id.* ¶¶ 420, 427. It then alleges that those payments were transferred into accounts controlled by Cindy Omidi, ███████████████████████ ████ *Id.* ¶ 431(c). Thus, because Cindy Omidi has control and possession over assets that are subject to United's equitable lien (again, a claim the Court has already found states a claim), she is a proper defendant to the ERISA § 502(a)(3) equitable lien claim. *Sereboff*, 547 U.S. at 363-65; *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009) (holding that an attorney can be a proper defendant to an ERISA § 502(a)(3) claim where the attorney receives a client's money that is subject to a plan's equitable lien even though he was not a plan beneficiary). The SACC meets Rule 12(e)'s "low threshold." *Abrams*, 2008 WL 4183344, at *4. Accordingly, Cindy Omidi's motion to dismiss should be denied and United should not be required to replead a more definite statement under Rule 12(e).

### 2. Dismissal is Not the Proper Remedy to Address a Shotgun Pleading

Although Cindy Omidi dedicates much of her brief to the idea that the SACC is a shotgun pleading, she then requests that the court *dismiss* the SACC.[3] The Court should reject Cindy Omidi's sleight-of-hand. Even assuming, for the sake of argument, that the SACC failed to meet the low bar set by Rule 12(e), the appropriate remedy for a Rule 12(e) motion is not dismissal. It is to permit the

---

[3] Cindy Omidi lists Rule 12(e) in her Legal Standards section (C. Omidi Mot. at 6) but then never again mentions Rule 12(e) in her brief.

plaintiff to re-plead, as the cases she cites make clear.  *See, e.g.*, *Wagner*, 464 F.3d at 1279-80 (vacating dismissal and remanding with orders to require repleading of "proverbial shotgun pleading" because "these observations sound more clearly in Rule 12(e)'s remedy of ordering repleading for a more definite statement of claim, rather than in Rule 12(b)'s remedy of dismissal for failure to state a claim."); *Magluta*, 256 F.3d at 1284 (noting that "appropriate disposition" is to require plaintiffs to replead their claims); *Coca-Cola*, 516 F.3d at 984 (proper response to shotgun pleading is for defendant to move for a more definite statement under Rule 12(e).  Contrary to Cindy Omidi's suggestion, dismissal is not the appropriate relief to remedy a Rule 12(e) pleading defect.

### B.  The SACC Properly Distinguishes Cindy Omidi's Role in the Fraud

Cindy Omidi claims that the SACC improperly "lumps" her with "the Omidis," the "Omidi Network," and the "Counterclaim Defendants."  C. Omidi Mot. at 10-12.  Although the SACC does at times refer to the concerted conduct of some or all of the Omidis, there is nothing inherently inappropriate about that.  *See In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 181 (C.D. Cal. 1976) (observing that it is unnecessary to plead more than the group conduct of the defendants once the complaint has adequately identified a particular defendant within a category of defendants responsible for some course of conduct).  For example, the SACC properly refers to all three Omidis together because all three of them are currently under investigation by a variety of federal agencies.  SACC ¶ 404.  Moreover, the SACC gives Cindy Omidi more than sufficient notice of which allegations pertain to her, and thus, the SACC should not be dismissed on this ground.  Rule 8(a) simply requires that the complaint "make clear connections between specific allegations and individual defendants."  *McHenry*, 84 F.3d at 1175.

The insufficient pleadings described in the cases Cindy Omidi cites are a far cry from the SACC's detailed allegations.  *See, e.g.*, *Crook v. San Bernardino Cnty.*

*Dep't of Child Support Servs.*, 2014 U.S. Dist. LEXIS 172289, at *7 (C.D. Cal. Dec. 11, 2014) (complaint dismissed under Rule 8(a) because plaintiff failed to specify against which of multiple defendants he was asserting his claims); *Gottschalk v. City & Cnty. of S.F.*, 964 F. Supp. 2d 1147, 1156 (N.D. Cal. 2013) (complaint did not satisfy Rule 8(a) because it did not clarify which claims were brought against which defendant and did not articulate specific facts connecting each defendant with the facts underlying the applicable claims); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996) (dismissing under Rule 8(a) because the complaint accused "each of five defendants of three very different causes of action on two different patents, all in one conclusory sentence").

In contrast to the non-specific, terse pleadings in these cases, the SACC does not violate Rule 8(a). As described in Section I.A., *supra*, the SACC carefully defines the relevant actors and differentiates between allegations of actions by Cindy Omidi herself, Julian and Michael Omidi, all three Omidis, and the other groups of Counterclaim Defendants. The SACC organizes each claim into its own count, and all seven counts state which defendants are accused of that particular claim. Thus, the SACC clearly delineates United's claims and the defendants against whom the claims are made. *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) (complaint did not violate Rule 8(a) when it was intelligible and clearly delineated plaintiff's claims and the defendants against whom the claims were made).

## II.   The Court Should Reject Cindy Omidi's Specific Arguments Regarding The Fraud And Conspiracy Allegations

### A.   United Adequately Pleads Cindy Omidi's Role in the Fraud and Conspiracy

Cindy Omidi contends that United's fraud and conspiracy allegations against her are "too general" because the SACC "do[es] not allege any specific conduct on the part of Mrs. Omidi constituting fraud."[4] C. Omidi Mot. at 20. Similarly, she

---

[4] Other than her claim that the SACC is a "shotgun" pleading, Cindy Omidi does not specifically present new bases to dismiss United's UCL, conversion, tortious

contends that "United fails to allege any specific facts regarding the roles of Mrs. Omidi in the alleged conspiracy." *Id.* at 25.  These arguments are inaccurate.  The SACC is replete with specific allegations of Cindy Omidi's role in the scheme to defraud United.[5]  That is all that the law requires at the pleading stage.  *See* Omidi FACC Order [Dkt. No. 144] at 31 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

### 1. Cindy Omidi Played a Role in the Scheme in at Least Three Distinct Ways

United alleges that "Cindy Omidi conspired . . . to own, control, direct, and manage a sophisticated network of ambulatory surgical centers, billing companies, management companies, and other corporate entities as part of a scheme and artifice to defraud the public, United, and Health plans out of millions of dollars." SACC ¶ 22; *see also id.* ¶ 25.  In particular, United alleges in detail that Cindy Omidi played at least three distinct roles in the scheme.

*First*, she served in leadership or gatekeeper positions for several Omidi Network corporate entities that United alleges perpetrated the fraud.  For example, according to California Secretary of State records, she is the Executive Director of Counterclaim Defendants (1) East Bay Ambulatory Surgery Center, (2) Valley Surgical Center, and (3) San Diego ASC—all entities that submitted to United fraudulent claims.[6]  SACC Ex. A; *id.* ¶ 409.  She is also the registered agent of Counterclaim Defendant Pacific West Dermatology, Inc., an entity to which United

---

interference, or ERISA counts.  Those counts should remain against Cindy Omidi.  For this reason alone, she is not entitled to a full dismissal of all of the claims against her.

[5]  An incomplete summary of United's allegations against Cindy Omidi appears at pages 3 through 5 of her brief.  The fact that even her summary of United's allegations spans three pages is telling.

[6]  Cindy Omidi suggests that the SACC fails to specify her role in various Omidi Network entities.  C. Omidi Mot. at 4.  But this argument simply ignores the SACC's allegations and exhibits, which do precisely that.  *See, e.g.*, SACC Ex. A (identifying Cindy Omidi as the "Executive Director" of three such entities).

made numerous payments as a result of the scheme.[7]  *Id.* ¶¶ 25, 406(b), 417; *id.* Ex. C, D.  Cindy Omidi is also the "sole owner" of and "run[s]" Counterclaim Defendant Property Care Insurance ("PCI"), an offshore captive insurance company that United alleges was used as a depository for her ill-gotten proceeds from the scheme to defraud United.  *Id.* ¶¶ 57, 431.

*Second*, United alleges that Cindy Omidi engaged in specific, affirmative conduct to further the fraud and conspiracy.  For example, she assisted Michael Omidi and co-conspirator Alexander Weisse to create dozens of four-letter physician entities (*e.g.*, "CYCH Medical") that were created as a means to conceal from United the true identity of the payee—an effort specifically designed to evade United's fraud-detection efforts.  *Id.* ¶¶ 307, 406(a)(iii).  In particular, Cindy Omidi "set up mailing addresses for each of these companies by negotiating the terms and paying for the mailboxes."  *Id.* ¶ 406(a)(iii).  United also alleges that she acted as the conspiracy's banker (*id.* ¶ 25), creating and maintaining control over at least ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ (*id.* ¶ 420).  She also caused millions of dollars in payments made by United to various Counterclaim Defendants to be transferred from Wells Fargo accounts to PCI.  *Id.* ¶¶ 58, 420, 431.  Further, United alleges that Cindy Omidi "directed [and] controlled . . . medical decision making and care given to United members who received services from the Counterclaim Defendant Surgery Centers."  *Id.* ¶ 439.  Her involvement in the scheme was so deep that it was Omidi Network policy that she be *personally* notified when any of the thousands of Omidi Network patients sought to pay for services with cash (as opposed to using insurance).  *Id.* ¶ 25.

---

[7]    Notably, Cindy Omidi was recently convicted on federal bank-structuring charges and used Pacific West Dermatology as part of that criminal scheme.  *Id.* ¶¶ 405, 406(b).  United expressly alleges that Pacific West Dermatology—one of the Counterclaim Defendants in the SACC—received United funds.  *Id.* ¶ 25.

*Third*, United specifically alleges that Cindy Omidi directly profited from the fraud.  Together with her sons, she ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ *Id.* ¶ 512.  Those same Wells Fargo accounts received millions of dollars in payments from United.  *Id.* ¶¶ 420, 427.  She "used millions from the Wells Fargo accounts to ████████████████ ████████████████"[8]  *Id.* ¶ 512.  United specifically alleges that ██████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████  *Id.* ¶ 431(c).  Funds were similarly withdrawn and used to pay ████████████████████████████████ ████████████████  *Id.*  Further, United alleges that Cindy Omidi personally withdrew ████████████████████████████████████████ ████████████████████████████.  *Id.* ¶ 431(d).

Notwithstanding these detailed allegations about Cindy Omidi's role in the fraud and conspiracy, and the detailed allegations about the conduct of other co-conspirators—allegations United addressed elsewhere and will not repeat here[9]—Cindy Omidi contends that Rule 9(b) requires more.  She is mistaken.  A "pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989).  A party pleading a scheme to defraud need not "allege all facts supporting every instance when the defendant engaged in fraud."  *Fustok v. UnitedHealth Grp., Inc.*, 2013 WL 2189874, at *5 (S.D. Tex. May 20, 2013); *see also Wool v. Tandem Computers,*

---

[8]  Despite purporting to exhaustively catalogue the allegations against her—a recitation that spans three pages of the brief—Cindy Omidi fails to address this specific allegation.  C. Omidi Mot. at 3-5.

[9]  *See* United's Opposition to the Providers' Motion to Dismiss the SACC [Dkt. No. 184] at 1-12.

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

*Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds*.  In fact, in cases involving an ongoing conspiracy to commit fraud involving multiple transactions over a period of years, Rule 9(b) does not require a complete recitation of *every* alleged fraudulent transaction.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), *superseded by statute on other grounds*; *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. at 181 ("The course of conduct that is the underlying fraud is set out with a description of the allegedly fraudulent mechanisms employed by its perpetrators.  It could hardly be necessary for plaintiffs to enumerate the date of each false entry on the books at EFCA, for example, in order to meet the requirements of Rule 9(b).").[10]

Cindy Omidi also declares that "the SACC does not contain even a single representation that [she] made to United, United member [sic], or anyone at all."  C. Omidi Mot. at 20.  But as the Court explained in resolving the motion to dismiss the FACC filed by Michael and Julian Omidi, "[f]alse statements made by each Counterclaim Defendant *are not necessarily required*, but the role of each Counterclaim Defendant in the alleged scheme must be made clear."  Omidi FACC Order at 31 (citing *Swartz*, 476 F.3d at 764) (emphasis added).

Cindy Omidi improperly asks the Court to interpret Rule 9(b) to "carry more weight than it was meant to bear."  *Cooper*, 137 F.3d at 627.  United's detailed allegations about her role satisfy Rule 9(b).

### 2.    United Alleges the Existence of at Least a Tacit Agreement to Form a Conspiracy

Cindy Omidi's related contention that United's allegations of conspiracy are insufficient—something that no other Counterclaim Defendant has argued in moving to dismiss the SACC—is also flawed.  C. Omidi Mot. at 23-25.  A conspiracy requires "(1) formation of the conspiracy (an agreement to commit

---

[10]  *See also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014); *United States v. Summit Healthcare Ass'n, Inc.*, 2011 WL 814898, at *5 (D. Ariz. Mar. 3, 2011).

wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *People v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 137 (2003).

Cindy Omidi takes issue only with a conspiracy's first requirement, claiming that United has alleged nothing more than "conclusory allegations and bald assertions" of the existence of an agreement between her and her co-conspirators. C. Omidi Mot. at 24-25.  But she ignores that the existence of a conspiracy may "'be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances.'"  *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1517 (9th Cir. 1991) (quoting *Greenwood v. Mooradian*, 137 Cal. App. 2d 532, 538 (1955)).  California does not require an "express agreement" for civil conspiracy, only "a tacit understanding."  *Id.*

Cindy Omidi's contention that United fails to allege such an agreement cannot be reconciled with her concession, elsewhere in her motion to dismiss, that United alleges that she "conspired with her sons and 'other confederates' to own, control, direct, and manage a sophisticated network of ambulatory surgical centers, billing companies, management companies and other corporate entities to 'defraud the public, United, and health plans out of millions of dollar[s].'"  C. Omidi Mot. at 3-4 (quoting SACC ¶ 22).  In any event, as the summary of allegations above attests, United expressly alleges numerous acts (*e.g.*, serving in leadership roles at the various Omidi Network entities, securing mailing addresses for the entities, controlling financial records and proceeds, and profiting directly from the scheme) from which the Court can infer at least a tacit agreement with her sons and other confederates to conspire to defraud United.[11]

---

[11] In ruling on Michael and Julian's motion to dismiss the FACC, the Court concluded that the "allegations in the FACC do support an inference that the Counterclaim Defendants, controlled by the same parties, were engaged in a collective effort—and had at least a tacit agreement—to jointly defraud United." Omidi FACC Order at 30 (internal quotation mark omitted).

**B.    United's Fraud Allegations Need Comply Only With Rule 9(b)**

Cindy Omidi asserts, apparently in the alternative, that the Court should dismiss United's claims against her under a heightened standard sometimes applied to allegations of fraud perpetrated by *corporate* actors.  C. Omidi Mot. at 21-22 (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) and *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)).  In particular, she suggests that the SACC fails to allege the names of "specific purported agents" that submitted false bills to United, "when and where they said what they said and on what authority the [sic] spoke."  *Id*. at 21.

As an initial matter, courts have not uniformly accepted the notion that any California-specific heightened requirement for fraud allegations against corporations even applies to actions in *federal* court.  *See, e.g.*, *Argyropoulos v. Mednet*, 1997 U.S. Dist. LEXIS 10497, at *37 (C.D. Cal. Apr. 14, 1997) (refusing to apply the California rule because "in federal court the Federal Rules of Civil Procedure govern the sufficiency of a pleading, and Federal Rule of Civil Procedure 9(b) governs the sufficiency of an averment of fraud").  And even those federal decisions that recognized such a rule often confine it to allegations of fraud levied by an employee asserted against a corporate employer, like those actually at issue in *Lazar*.  *See, e.g.*, *Hisun Motors Corp. v. Auto. Testing & Dev. Servs., Inc.*, 2012 WL 682398, at *7 (D. Ariz. Mar. 2, 2012) (refusing to apply a heightened standard because the plaintiff there was "not an employee who alleged fraud against its corporate employer").

More fundamentally, even if there were some heightened pleading requirement in all cases of fraud by *corporations*, Cindy Omidi is a *natural person*, and this rule does not even implicate her, much less provide a basis for the Court to dismiss United's claims against her.  In any event, as the Court already observed in analyzing the motions to dismiss filed by both corporate defendants and two other natural persons in this case—Michael and Julian Omidi—the applicable standard

for United's fraud claim is governed by Rule 9(b).  Omidi FACC Order at 18-19 (analyzing motion to dismiss by reference to the requirements of Rule 9(b)); Provider FACC Order at 30-31 (same).

In fact, Cindy Omidi neglects to mention that the specificity required for allegations of fraud against corporate defendants is actually "*relaxed*" when the allegations, like those in the SACC, indicate that "'the defendant must necessarily possess full information concerning the facts of the controversy'" or "the facts lie more in the knowledge of the opposite party."  *Tarmann*, 2 Cal. App. 4th at 158 (emphasis added); *see also Wool*, 818 F.2d at 1439 ("[A] plaintiff fulfills the particularity requirement of Rule 9(b) [in cases of corporate fraud] by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.").  Given the complex corporate structure created by the Omidis to elude detection, it is difficult to imagine a more appropriate set of circumstances to apply the "relaxed" pleading burden.

Nonetheless, and as explained in detail elsewhere,[12] United *has* alleged (1) the categories of misrepresentations with respect to each claim line; (2) the relevant Counterclaim Defendants; and (3) the date of the claim submission for each claim line.  *See* SACC App'x I.  And Cindy's argument that United failed to allege the names of "specific purported agents" of the corporate Counterclaim Defendants is simply wrong.  *Id.* ¶¶ 14, 436, 475 (identifying, by name, numerous agents, including Araminta Salazar, Levi Green, and Yesenia F., who provided billing services for the Counterclaim Defendants).

## C.    United Adequately Pleads Damages

Cindy Omidi argues that the "SACC fails to state a cause of action for fraud" because the SACC does not specify the *precise* amount of the damage that she and her confederates inflicted upon United.  C. Omidi Mot. at 22-23.  But the law does not expect, much less require, such precision.  *See, e.g., Coward v. JP Morgan*

---

[12]    *See* United's Opposition to the Providers' Motion to Dismiss at 1-12.

*Chase Bank, Nat'l Ass'n*, 2012 WL 2263359, at *4 (E.D. Cal. June 15, 2012) (denying motion to dismiss because fraud allegations were sufficient, including the allegation that the plaintiff's damages were "in the amount to [be] proven at trial"); *Furia v. Helm*, 111 Cal. App. 4th 945, 956 (2003) ("[Plaintiff's] failure to ascribe a dollar amount to these elements of damage was not fatal to his pleading."); William W. Schwarzer, *et al.*, *Federal Civil Procedure Before Trial (The Rutter Group Practice Guide)* § 8:697 ("It is *not* essential that specific dollar amounts be alleged for *pleading* purposes." (emphasis in original)).  It has long been the rule that the absence of a specific amount is not fatal so long as the pleaded facts entitle the plaintiff to relief.  *See, e.g.*, *Hunter v. Freeman*, 105 Cal. App. 2d 129, 133 (1951); *Hoffman v. Pac. Coast Constr. Co.*, 37 Cal. App. 125, 131(1918).  Moreover, in *Furia*, the California Court of Appeal recognized that the true pleading defect in *Nagy v. Nagy*—the case relied upon by Cindy Omidi—was that the complaint did not state "'a cause and effect relationship between the fraud and damages sought.'" 111 Cal. App. 4th at 956 (quoting *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1269 (1989)).  There is no such causal defect here.

In any event, United alleges damages "in an amount exceeding $75,000" and that "the total amount of such damage will be proven at trial."  *See* SACC ¶¶ 10, 457, Prayer for Relief ¶ 1, App'x I.  Such allegations are sufficiently precise for pleading purposes, particularly in a case involving a sprawling scheme perpetrated by a constellation of morphing entities that submitted to United over a period of years thousands of claims for thousands of patients.

### III.    United Plausibly Alleges The Factual Basis For Cindy Omidi's Alter-Ego Liability

Under the alter-ego doctrine, individuals who abuse the corporate form, such as Cindy Omidi, cannot escape personal liability.[13]  California applies the alter-ego

---

[13]    To be clear, United alleges that Cindy Omidi is personally liable by virtue of her own conduct, her participation in the conspiracy to defraud United, *and* as the alter ego of the Corporate Counterclaim Defendants.

doctrine when "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545 (9th Cir. 1985). Because United's allegations satisfy both elements, this Court should "*disregard the corporate entity* and treat the acts as if they were done by the individuals themselves." *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 752-53 (2001).

### A. United Alleges a Unity of Interest Between Cindy Omidi and the Corporate Entities

The unity-of-interest prong encompasses a non-exhaustive list of factors such as "commingling of funds and assets . . . , identical equitable ownership . . . , use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one [entity] as a mere shell or conduit for the affairs of the other." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1342 (2009). This Court has already analyzed many of these factors in finding that United has sufficiently alleged that Julian and Michael Omidi are alter egos of the Corporate Counterclaim Defendants. Omidi FACC Order at 8. This Court should come to the same conclusion as to Cindy Omidi because United alleges even more pertinent facts against Cindy in the SACC than it did against Julian and Michael in the FACC. For example, United alleges that:

- Cindy Omidi (jointly with her sons) owns, controls, directs, and manages the Corporate Counterclaim Defendants (SACC ¶ 25), (identical ownership, officers, and directors);

- Provider bank accounts paid ███████████████████████ ████████████████████████████ ████████████████████████ ██████████████████████████████ ██████ (*id.* ¶¶ 420, 431(b)-(c)), (disregarding corporate formalities);

- Providers use names, addresses, TINs, and NPIs interchangeably on medical records and claims forms (*id.* ¶ 410(b)) (disregarding corporate formalities);
- Stationery, business cards, medical records, letters, and assignments-of-benefits are generic forms that identifies the provider only as "Surgery Center" (*id.* ¶ 410(c)) (disregarding corporate formalities);
- As many as 116 Omidi Network entities share a principal executive office at 269 S. Beverly Drive (the "Postal Place" mail-drop), (*id.* ¶¶ 411-16; Ex. B), while over 100 entities and individuals in the Omidi Network have shared an office at 9001 Wilshire Blvd., Ste. 106 (*id.* ¶¶ 408-10; Ex. A) (same office);
- The Providers share personnel, offices, and resources for such corporate functions as medical services, billing, collections, patient scheduling, and records management (*id.* ¶¶ 436(a)-(h)) (same employees); and
- Employees at the centralized billing office work on behalf of various, purportedly independent, Providers (*id.* ¶ 436(h)(iii)) (same employees).

Previously, the Court acknowledged that United had alleged "that the Omidis are at the helm of a complex network of shell and sham corporations . . . all of which is purportedly engineered by the Omidis . . . to 'conceal the true nature of their activities.'" Omidi FACC Order at 6. Notwithstanding that ruling, Cindy Omidi nonetheless maintains that these allegations are insufficient because United has purportedly only "lumped" her and her sons together. But she ignores both the specific instances in which United alleges that she owns, controls, and manages Counterclaim Defendants, (SACC ¶¶ 25, 406, Ex. A), *and* the most salient SACC allegations suggesting that her disregard for corporate formalities is arguably even greater than that of her sons. *See also supra* Section II.A. That is, she withdrew from corporate bank accounts at least ███████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ " *Id.* ¶¶ 57, 431(b)-(c).[14]

---

[14] Cindy Omidi's brief purports to cite a complete list of United's allegations

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS

1    Cindy Omidi cites several cases in support of her argument that are either

2  distinguishable or actually support United's position.  For example, she cites

3  *Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014), to suggest that United's

4  alter-ego allegations are too conclusory.  But this Court has already found that

5  "[t]he factual allegations here are distinguishable from the bare recitals found

6  insufficient in *Sandoval*."  Omidi FACC Order at 7.  She also cites *Lovesy v. Armed*

7  *Forces Benefit Association*, but there, the court rejected alter-ego allegations

8  because the plaintiff "fail[ed] to allege *any* facts" supporting their theory.  2008 WL

9  696991, at *4 (N.D. Cal. Mar. 13, 2008) (emphasis added).  Likewise, in *Stansfield*

10  *v. Starkey*, 220 Cal. App. 3d 59, 74 (1990), and *Hoang v. Vinh Phat Supermarket,*

11  *Inc.*, 2013 WL 4095042, at *14 (E.D. Cal. Aug. 13, 2013), the courts found that

12  "unsupported conclusions" or one-sentence alter-ego allegations were insufficient.

13  And in *Institute of Veterinary Pathology v. California Health Labs*, the court

14  declined to impose alter-ego liability because there was no evidence of

15  manipulative conduct.  116 Cal. App. 3d 111, 120 (1981).  The extensive

16  allegations against Cindy (like those against Julian and Michael), including

17  allegations of manipulative conduct, are quite different than those at issue in

18  *Sandoval*, *Lovesy*, *Stansfield*, *Hoang*, and *Institute of Veterinary Pathology*.[15]

19    Several of Omidi's remaining cases actually support United's position,

20  including *Platt v. Billingsley*, 234 Cal. App. 2d 577 (1965), and *First West Bank &*

21

22  regarding her involvement in the conspiracy to argue that United has not
   identified an act of individual "domination" over the corporation.  C. Omidi

23  Mot. at 17.  But tellingly, her "list" fails to cite SACC ¶¶ 431(a)-(b), where
   United alleges that she controlled company assets.

24

25  [15] Cindy Omidi's citation of *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015), is
   similarly inapposite.  First, that court addressed alter ego in the context of

26  personal jurisdiction—something not at issue here.  *Id*. at 1065.  And second, the
   court acknowledged that the plaintiff made "an unprecedented" request by

27  asking to impute a local parent company's contacts to a foreign subsidiary.  *Id*.
   at 1071.  Here, on the other hand, United simply alleges that Cindy Omidi is the

28  alter ego of the Corporate Counterclaim Defendants—an allegation this Court
   already accepted as to Julian and Michael Omidi.

*Trust Co. v. Bookasta*, 267 Cal. App. 2d 910 (1968).  In *Platt*, the court found in part that the intermingling of corporate and personal funds—similar to what United alleges here—is enough to pierce the corporate veil.  *See* 234 Cal. App. 2d at 584. In *Bookasta*, the court found that allegations regarding the inappropriate diversion of corporate income support an alter-ego finding.  *See* 267 Cal. App. 2d at 915.  In other instances, Cindy Omidi even acknowledges (C. Omidi Mot. at 16) that the managers and controlling shareholders of a corporation (as opposed to passive managers or investors) are more likely to be corporate alter egos.  *See Riddle v. Leuschner*, 51 Cal. 2d 574, 577 (1959) (affirming alter-ego finding because three managing shareholders executed "a large number of personal transactions with the corporations"); *Stark v. Coker*, 20 Cal. 2d 839, 846-47 (1942) (affirming alter-ego finding in part because the majority shareholder commingled personal liabilities and corporate funds).  This unremarkable proposition is entirely consistent with this Court's previous opinion, and United's allegations that Cindy controlled the business (SACC ¶¶ 25, 406, 420, Ex. A), as well as profited handsomely from it (*id.* ¶¶ 431(a)-(d)).  Other California decisions are in accord.  *See, e.g.*, *RRX Indus.*, 772 F.2d at 545-46 (affirming alter-ego liability when individual was officer, director, and shareholder; individual disregarded corporate formalities; and corporation was undercapitalized); *Talbot v. Fresno-Pac. Corp.*, 181 Cal. App. 2d 425, 428 (1960) (individual defendant was the owner of multiple entities, regularly commingled assets, shared personnel and office space, and improperly transferred assets between entities).

### B.    United Alleges Inequity in the Absence of Personal Liability

United's SACC also satisfies the second prong of the alter-ego test: the inequitable result in shielding personal liability.  Here, such inequity follows if Cindy Omidi is not held personally liable for the fraud perpetrated at her behest and for her benefit.  To satisfy the second prong, United must (and does) allege that Omidi engaged in "conduct amounting to bad faith [that] makes it inequitable for

the corporate owner to hide behind the corporate form." *Sandoval*, 34 F. Supp. 3d at 1041. Put differently, "when a corporation 'is used by an individual or individuals . . . to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may *disregard the corporate entity*.'" *McClellan*, 89 Cal. App. 4th at 752-53.[16]

Cindy Omidi counters that it is not enough for United to allege that the Corporate Counterclaim Defendants are insolvent or unable to pay a potential judgment. C. Omidi Mot. at 18 (citing *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911 (N.D. Cal. July 30, 2015)). But, this mischaracterizes United's allegations. *See* Omidi FACC Order at 8. United is not alleging that one or more of the Corporate Counterclaim Defendants are unable to pay a potential judgment. Rather, United alleges that the Corporate Counterclaim Defendants change corporate forms to avoid fraud detection by regulators and insurers, a clear instance of bad faith. SACC ¶¶ 59, 410(a)-(c). The fraud is made possible by the multiplicity of shell corporations and newly-renamed Providers. For example, after the U.S. Department of Health and Human Services uncovered numerous deficiencies at Almont Ambulatory Surgical Center, the Omidis continued operating the center, but under a new name, Beverly Hills Surgery Center, LLC, a/k/a New Life Surgery Center, LLC. *Id.* ¶ 410(a). This shape-shifting corporate structure is precisely what prevents United from securing a just result absent Cindy Omidi's participation in this action. This Court acknowledged this very inequity in denying Michael's and Julian's motion to dismiss the alter-ego allegations from the FACC. Omidi FACC Order at 8-9 ("Equity will lift the corporate mask and identify the person behind it when a business corporation reorganizes under a new

---

[16] The alter-ego doctrine is designed for tort claims, especially fraud. Courts often comment that the "alter ego doctrine should be applied more sparingly in contract cases than in tort or other third-party liability cases" because contracting parties have willfully chosen with whom to contract. *See Paul Haggis, Inc. v. Yari*, 2014 WL 406828, at *2 (Cal. Ct. App. Jan. 31, 2014) (unpublished).

name, with practically the same stockholders and directors, to carry on the former business with the design of avoiding the liabilities of the original company." (quoting *Talbot v. Fresno-Pac. Corp.*, 181 Cal. App. 2d 425, 432 (1960))).  There is no reason to reach a different conclusion here given Cindy Omidi's role in the organization, and certainly her failure to adhere to the corporate form.

### C.   United's Alter-Ego Allegations are not Inconsistent

Cindy Omidi finally argues that United's alter-ego allegations are inconsistent with its "cross-agency" allegations, and thus, the fraud claims must be dismissed.  C. Omidi Mot. at 22.  Setting aside the logical non sequitur underlying this argument, United's allegations are far from inconsistent.  Rather, United alleges that the three Omidis jointly owned, controlled, directed, and managed a sophisticated network of corporate entities, (SACC ¶ 22) and that they ran the business in a way that gives rise to personal liability for the wrongs committed by the Corporate Counterclaim Defendants (*id.* ¶¶ 401-45).  United also alleges that Counterclaim Defendant conspired with each other to defraud United and certain health plans.  *Id.* ¶¶ 441, 471-78.  It is not at all surprising, much less inconsistent, to allege that three individuals created a network of businesses that operated without regard for corporate formalities, and that the principal objective of that network was to defraud United and others.  *Stansfield*'s holding that the plaintiffs failed to offer more than conclusory allegations does not provide otherwise.  220 Cal. App. 3d at 74.  But, even if these allegations were somehow inconsistent— they are not—her argument ignores the basic rule that a "pleading may properly set forth alternative theories in varied and inconsistent counts."  *Rader Co. v. Stone*, 178 Cal. App. 3d 10, 29 (1986).

### CONCLUSION

United respectfully requests that the Court deny Cindy Omidi's Motion to Dismiss.

1

2

Dated:  September 3, 2015

**WALRAVEN & WESTERFELD LLP**

3

4

By:  /s/ BRYAN S. WESTERFELD
BRYAN S. WESTERFELD

5

6

7

Attorneys for Defendant UnitedHealth
Group Incorporated;
and Defendants/Counterclaim Plaintiffs
United Healthcare Services, Inc.,
UnitedHealthcare
Insurance Company, OptumInsight, Inc.

8

Dated:  September 3, 2015

**DORSEY & WHITNEY LLP**

9

10

11

By:  /s/ RJ ZAYED
RJ ZAYED

12

13

14

15

*Admitted Pro Hac Vice*
Attorneys for Defendant UnitedHealth
Group Incorporated;
and Defendants/Counterclaim Plaintiffs
United Healthcare Services, Inc.,
UnitedHealthcare
Insurance Company, OptumInsight, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CINDY OMIDI'S MOTION TO DISMISS