**BRYAN WESTERFELD (S.B. # 218253)**
bwesterfeld@calemployerlaw.com
**NICOLE E. WURSHER (S.B. # 245879)**
nwurscher@calemployerlaw.com
**WALRAVEN & WESTERFELD LLP**
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone:  (949) 215-1997
Facsimile:   (949) 215-1999

**R.J. ZAYED (MN ID #0309849)**
zayed.rj@dorsey.com
**TIMOTHY BRANSON (MN ID #174713)**
branson.tim@dorsey.com
**ANDREW HOLLY (MN ID #308353)**
holly.andrew@dorsey.com
*Admitted pro hac vice*
**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:   (612) 340-2868

Attorneys for Defendant UnitedHealth Group Incorporated; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company, OptumInsight, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC; *et al.*,<br><br>                    Plaintiffs,<br>v.<br>UNITEDHEALTH GROUP, INCORPORATED; *et al.*,<br><br>                    Defendants.<br>_____<br>UNITED HEALTHCARE SERVICES, INC.; *et al.*,<br><br>                    Counterclaim Plaintiffs,<br>v.<br>ALMONT AMBULATORY SURGERY CENTER, LLC; *et al.*,<br><br>                    Counterclaim Defendants. | Case No 2:14-cv-03053-MWF(VBKx)<br><br>**COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PROPERTY CARE INSURANCE'S MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM**<br><br>**DATE: Sept. 17, 2015**<br>**TIME: 3:00 pm**<br>**DEPT.: Courtroom 16**<br><br>(Superior Court of the State of California, County of Los Angeles, Central District Case Number: BC540056)<br><br>Complaint filed:  March 21, 2014 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.    The SACC Properly Distinguishes PCI's Role in the Fraud ................ 2

    II.   The Court Should Reject PCI's Specific Arguments Regarding the Fraud and Conspiracy Allegations ...................................................... 4

        A.    United Adequately Pleads PCI's Role in the Fraud and Conspiracy .................................................................................... 4

        B.    PCI Does Not Dispute That United Has Raised a Conspiracy Claim ...................................................................... 5

CONCLUSION ....................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
  683 F.3d 1083 (9th Cir. 2012) ................................................................................ 3

*de Vries v. Brumback*,
  53 Cal. 2d 643 (1960) ............................................................................................. 5

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  416 F. Supp. 161 (C.D. Cal. 1976) ......................................................................... 4

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ....................................................................... 3

*Gen-Probe, Inc. v. Amoco Corp.*,
  926 F. Supp. 948 (S.D. Cal. 1996) ......................................................................... 3

*Green Wood Indus. Co. v. Forceman Int'l Dev. Grp., Inc.*,
  156 Cal. App. 4th 766 (2007) ................................................................................. 5

*Longaberger v. Kolt*,
  586 F.3d 459 (6th Cir. 2009) .................................................................................. 4

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) .................................................................................. 3

*Sereboff v. Mid Atlantic Medical Services, Inc.*,
  547 U.S. 356 (2006) ........................................................................................... 3, 4

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................................................. 4

*Wool v. Tandem Computers. Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ................................................................................ 4

**Statutes**

ERISA § 502(a)(3) ................................................................................................... 3, 4

**Other Authorities**

Rule 8 ....................................................................................................................... 3, 4

Rule 8(a) ................................................................................................................ 3

Rule 9(b) ......................................................................................................... 2, 4, 5

# INTRODUCTION

The Second Amended Counterclaim ("SACC") alleges that Counterclaim Defendant Property Care Insurance, Inc. ("PCI") conspired with the other individual and Corporate Counterclaim Defendants to defraud both United and hundreds of the group health plans it administers. Among other types of frauds and billing manipulations, the SACC alleges that the Omidi-controlled Providers induced 2,000 patients into receiving services from them by promising to waive co-pays, co-insurance, deductibles, and other amounts due under the terms of the participants' plans ("Member Responsibility Amounts"). Omidi-controlled Billing Entities then submitted fraudulent billing statements that affirmatively misrepresented the "total charges" due. In yet other instances, these same Providers told patients—falsely—that their health plans covered Lap Bands, knowing that their plans provided no such coverage. Only after these patients endured a battery of preparatory tests, for which the Providers billed United millions, did the Providers finally inform those United Members that they were not covered for Lap Band surgery. Among the 2,000 members who received co-pay waivers, United has identified 40 specific instances of fraud—to which no Counterclaim Defendant has thus far sought to dismiss—in which these, and other misrepresentations, manipulations, and deceptions have occurred.[1]

United alleges that PCI played a unique, but no less important role than the other Counterclaim Defendants. In many respects, it played a critical role in the fraud. It was the "bank"; the place where the Omidis deposited significant portions of their ill-gotten proceeds. For example, United alleges that PCI is an offshore captive insurance company owned entirely by Counterclaim Defendant and co-conspirator Cindy Omidi. SACC ¶ 57. And on just one day, just one of the Top

---

[1] The Counterclaim Defendant Providers, Cindy, Julian, and Michael Omidi, and DeVida USA LLC filed separate motions to dismiss the SACC to which PCI joined. United likewise incorporates its responses to these motions, here.

Surgeons Wells Fargo bank accounts transferred more than ▮▮▮▮▮▮. *Id.* ¶ 431(b).

In its motion to dismiss the SACC, PCI fails to offer arguments that Cindy Omidi has not already raised—that is, that United has somehow lumped PCI in with the other Counterclaim Defendants, and that the SACC does not meet Rule 9(b) as to the fraud and conspiracy counts. Accordingly, PCI's motion fails for the same reasons that Cindy Omidi's motion fails. United specifically identified the role PCI played in this fraud, and it should thus be permitted to raise claims against PCI to rectify this fraud. This Court should deny PCI's motion to dismiss.

In addition, given the allegations about PCI's receipt of funds paid by United, it is not surprising that it makes no argument regarding the sufficiency of United's ERISA and conversion claims. Accordingly, the SACC's ERISA and conversion claims directed to PCI survive regardless of the resolution of its motion to dismiss.

## ARGUMENT

### I. The SACC Properly Distinguishes PCI's Role in the Fraud

Like Cindy Omidi, PCI claims that the SACC does not identify its role in the fraud. The SACC is clear, however, PCI was the "bank." United alleges that PCI is an offshore captive insurance company that was used by Michael, Julian, and Cindy Omidi as a depository account for millions of dollars in ill-gotten proceeds paid by United. SACC ¶¶ 57-58. The federal government has apparently identified this same pattern of offshore deposits as it sought and received a seizure warrant related to certain PCI bank accounts because there was "'probable cause to believe that [the assets] represent or are traceable to a long-term fraud scheme run' by the Omidis, including a fraud perpetrated against healthcare benefits plans." *Id.* ¶ 58. A significant portion of the seized cash is traceable to payments United made that were fraudulently induced by misrepresentations made by the other Counterclaim Defendants. *Id.*

Rule 8 does not require anything more. *McHenry v. Renne*, 84 F.3d 1172, 1175 (9th Cir. 1996) (Rule 8(a) simply requires that the complaint must "make clear connections between specific allegations and individual defendants."). United will not restate the deficiencies with the cases PCI cites purportedly in support of its "lumping" argument, *see* United Oppo. to C. Omidi Mot., Section I, but those cases are inapposite. For example, United's well-pleaded complaint bears no resemblance to the pleading in *Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988). There, the plaintiffs lumped all defendants "together in a single, broad allegation" in one paragraph of the complaint. *Id.* at 1071. Nor does the SACC bear any resemblance to the pleading in *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996), where the court dismissed the complaint because it accused "each of five defendants of three different causes of action on two different patents, all in one conclusory sentence." PCI is no doubt on notice of its role in the fraud. Its reliance on inapposite, and in some cases foreign, precedent does not counsel otherwise.

Further, PCI's purported confusion about the claims raised against it ignores the SACC's clear ERISA claims. United has raised claims under ERISA § 502(a)(3) against the various Counterclaim Defendant medical providers who received erroneous payments from United (in some cases procured by fraud)—claims that the Court previously held stated a claim for relief. *See* Provider FACC Order [Dkt. No. 145] at 54; *see also* SACC ¶¶ 510-16. A claim to enforce an equitable lien under ERISA § 502(a)(3), however, can only seek "equitable relief," which in this context means that United must either seek to recover the very sums that were paid to the Counterclaim Defendants or assets that can be traced to those originally paid sums. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 363-65 (2006); *Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1092 (9th Cir. 2012). Here, the SACC clearly alleges that the Counterclaim Defendants' wrongful behavior caused United to pay millions of dollars of claims

to Providers that were deposited into certain Wells Fargo bank accounts. SACC ¶¶ 420, 427. It then alleges that those payments were transferred into accounts controlled by PCI, an entity solely owned by Counterclaim Defendant Cindy Omidi. *Id.* ¶¶ 57, 431(b). Thus, because PCI has control and possession over assets that are subject to United's equitable lien (again, a claim the Court has already found states a claim), it is a proper defendant to the ERISA § 502(a)(3) equitable lien claim. *Sereboff*, 547 U.S. at 363-65; *see also Longaberger v. Kolt,* 586 F.3d 459 (6th Cir. 2009) (holding that an attorney can be a proper defendant to an ERISA § 502(a)(3) claim where the attorney receives a client's money that is subject to a plan's equitable lien even though he was not a plan beneficiary).

## II. The Court Should Reject PCI's Specific Arguments Regarding the Fraud and Conspiracy Allegations

### A. United Adequately Pleads PCI's Role in the Fraud and Conspiracy

PCI adds nothing to its Rule 9(b) argument that it did not already make in its Rule 8 "lumping" argument. To the extent PCI argues that United has not alleged that PCI made a false statement, it misunderstands both Rule 9(b) and civil-conspiracy law.

First, Section I *infra* makes clear that United properly alleges the role PCI played in defrauding United. Rule 9(b) requires nothing more at the pleading stage. *See* Omidi FACC Order [Dkt. No. 144] at 31 ("'False statements' made by each Counterclaim Defendant are not necessarily required, but the role of each Counterclaim Defendant in the alleged scheme must be made clear." (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007))); *see also* United Oppo. to C. Omidi Mot., Section II.A. Once a pleading "has adequately identified a particular defendant with a category of defendants allegedly responsible for some continuing course of conduct," Rule 9(b) permits a plaintiff to plead the collective conduct of the defendants. *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 181 (C.D. Cal. 1976); *see also Wool v. Tandem Computers. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (*overruled on other grounds*).

With Rule 9(b) satisfied, all properly pleaded co-conspirators such as PCI are liable for the actions of the remaining co-conspirators. In fact, "the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor *for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.*" *Green Wood Indus. Co. v. Forceman Int'l Dev. Grp., Inc.*, 156 Cal. App. 4th 766, 771 (2007) (citations omitted). And under long-standing California law, the economic beneficiary in a conspiracy to commit an intentional tort, like PCI here, is civilly liable for all the wrongdoing of its co-conspirators. *See de Vries v. Brumback*, 53 Cal. 2d 643, 650 (1960) (affirming liability against co-conspirator who "actively participated in the overall purpose to convert all of the stolen property to their use and benefit").

### B. PCI Does Not Dispute That United Has Raised a Conspiracy Claim

Unlike Cindy Omidi, PCI does not dispute that the SACC properly alleges that it joined the other Counterclaim Defendants in an ongoing conspiracy to defraud United. It argues only that United has failed to state an underlying fraud claim, PCI Mot. at 6, which for the reasons expressed above, must be rejected.

### CONCLUSION

United respectfully requests that the Court deny PCI's Motion to Dismiss.

| | | |
|---|---|---|
| Dated: September 3, 2015 | | **WALRAVEN & WESTERFELD LLP** |
| | By: | /s/ BRYAN S. WESTERFELD<br>BRYAN S. WESTERFELD |
| | | Attorneys for Defendant UnitedHealth Group Incorporated; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company, OptumInsight, Inc. |
| Dated: September 3, 2015 | | **DORSEY & WHITNEY LLP** |
| | By: | /s/ RJ ZAYED<br>RJ ZAYED |
| | | *Admitted Pro Hac Vice*<br>Attorneys for Defendant UnitedHealth Group Incorporated; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company, OptumInsight, Inc. |