**BRYAN WESTERFELD (S.B. # 218253)**
bwesterfeld@calemployerlaw.com
**NICOLE E. WURSCHER (S.B. # 245879)**
nwurscher@calemployerlaw.com
**WALRAVEN & WESTERFELD LLP**
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone:  (949) 215-1997
Facsimile:   (949) 215-1999

**R.J. ZAYED (MN ID #0309849)**
zayed.rj@dorsey.com
**TIMOTHY BRANSON (MN ID #174713)**
branson.tim@dorsey.com
**ANDREW HOLLY (MN ID #308353)**
holly.andrew@dorsey.com
*Admitted pro hac vice*
**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:   (612) 340-2868

Attorneys for Defendant UnitedHealth Group Incorporated; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company, OptumInsight, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC; *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INCORPORATED; *et al.*,<br><br>               Defendants.<br>_____<br>UNITED HEALTHCARE SERVICES, INC.; *et al.*,<br><br>               Counterclaim Plaintiffs,<br><br>v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC; *et al.*,<br><br>               Counterclaim Defendants. | Case No 2:14-cv-03053-MWF(VBKx)<br><br>**COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CINDY OMIDI'S MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COUNTERCLAIM**<br><br>**DATE: Sept. 17, 2015**<br>**TIME: 3:00 pm**<br>**DEPT.: Courtroom 16**<br><br>(Superior Court of the State of California, County of Los Angeles, Central District Case Number: BC540056)<br><br>Complaint filed: March 21, 2014 |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

    I.    Legal Standard Under Rule 12(f) .......................................................... 1

    II.    The Court Should Deny The Motion To Strike ................................... 2

        A.    Describing Cindy Omidi's Conviction Under 31 U.S.C. § 5324(a)(3) is Not Scandalous ................................................ 2

        B.    United's Allegations Regarding the Government's Ongoing Tax-Fraud Investigation Are Not Scandalous ............. 4

        C.    Cindy Omidi Has Failed to Show Prejudice ............................. 5

CONCLUSION ............................................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Jadwin v. Cnty. of Kern*,
  2007 WL 3119670 (E.D. Cal. Oct. 23, 2007) ................................................... 1, 3

*Lazar v. Trans Union LLC*,
  195 F.R.D. 665 (C.D. Cal. 2000) ........................................................................ 1

*Oracle Am., Inc. v. Micron Tech., Inc.*,
  817 F. Supp. 2d 1128 (N.D. Cal. 2011) .............................................................. 2

*Rippetoe v. Roy*,
  2011 WL 2652131 (E.D. Tex. June 9, 2011) ...................................................... 3

*Robinson v. Managed Accounts Receivable Corp.*,
  654 F. Supp. 2d 1051 (C.D. Cal. 2009) ........................................................... 2, 3

*Sec. & Exch. Comm'n v. Sands*,
  902 F. Supp. 1149 (C.D. Cal. 1995) ................................................................ 2, 5

*United States v. Omidi*,
  No. 13-cr-739 (C.D. Cal.) .................................................................................... 5

**Statutes**

18 U.S.C. § 371 ........................................................................................................ 4

18 U.S.C. § 1035 ...................................................................................................... 4

18 U.S.C. § 1341 ...................................................................................................... 4

18 U.S.C. § 1347 ...................................................................................................... 4

18 U.S.C. § 1349 ...................................................................................................... 4

18 U.S.C. § 1956 ...................................................................................................... 4

21 U.S.C. § 331 ........................................................................................................ 4

26 U.S.C. § 7201 ................................................................................................... 2, 4

26 U.S.C. § 7203 ................................................................................................... 2, 4

26 U.S.C. § 7206 ................................................................................................... 2, 4

31 U.S.C. § 5324 ................................................................................................... 2, 3

Pub. L. No. 99-570, 100 Stat. 3207-18 (1986) ........................................................ 3

Pub. L. No. 103-325, 108 Stat. 2160 (1994) ........................................................... 3

**Other Authorities**

Fed. R. Civ. P. 12(f) ................................................................................................ 1

5C Wright & Miller, *Federal Practice & Procedure* § 1380 (3rd ed. 2014 Supp.) ............................................................................................................ 1

C. Doyle, *Money Laundering: An Overview of 18 U.S.C. § 1956 and Related Federal Criminal Law*, Congressional Research Service, at 1 n.7 (Feb. 8, 2012) *available at* https://www.fas.org/sgp/crs/misc/RL33315.pdf ....................................................... 3

S. Welling, *Smurfs, Money Laundering, and the Federal Criminal Law: The Crime of Structuring Transactions*, 41 Fla. L. Rev. 287, 314 (1989) ................................................................................................................ 3

# INTRODUCTION

Counterclaim-Plaintiffs, United Healthcare Services, Inc., United Healthcare Insurance Company, and OptumInsight, Inc., (collectively "United"), respectfully request that the Court deny Cindy Omidi's motion to strike certain allegations in United's Second Amended Counterclaim ("SACC"). Motions to strike are a tool to eliminate "scandalous matter" from pleadings; they are not a tool to attempt to re-write history. The nature of this case—a complex, multi-million dollar insurance conspiracy to defraud United—justifies United spelling out some specific details about a parallel and ongoing federal investigation, as well as Cindy Omidi's recent criminal conviction that implicated an Omidi Network provider that submitted fraudulent claims to United. Both of these allegations are factually supported and legally relevant (though Omidi does not contest the relevance of these allegations), and there is no basis to strike them.

# ARGUMENT

## I.   Legal Standard Under Rule 12(f)

The Court may strike from a pleading "scandalous matter." Fed. R. Civ. P. 12(f). Matter is "scandalous" only when it "reflect[s] cruelly upon a person's moral character, use[s] repulsive language, or detract[s] from the dignity of the court." *Jadwin v. Cnty. of Kern*, 2007 WL 3119670, at *1 (E.D. Cal. Oct. 23, 2007).

"Motions to strike are generally viewed with disfavor and are not frequently granted." *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000); *see also* 5C Wright & Miller, *Federal Practice & Procedure* § 1380 (3rd ed. 2014 Supp.) (striking allegations in a pleading is a "drastic remedy" that is "often . . . sought by the movant simply as a dilatory or harassing tactic" and, consequently courts view Rule 12(f) motions with "disfavor"). Consistent with this general disfavor, this Court has already rejected the Provider Counterclaim Defendants' similar motion to strike portions of the First Amended Counterclaim. *See* Order Denying Provider Mot. To Strike [Dkt. No. 143].

Not surprisingly, therefore, the rationale underlying the motion must be compelling. The Court must be "*convinced that there are no questions of fact*, that any questions of law are clear and not in dispute, and that *under no set of circumstances could the claim . . . succeed.*" *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051, 1064-65 (C.D. Cal. 2009) (internal quotation marks omitted) (emphasis added); *see also Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011) ("A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action."). Thus, "[w]hen considering a motion to strike, the Court must view the pleading under attack in the light most favorable to the pleader." *Robinson*, 654 F. Supp. 2d at 1065 (internal quotation marks omitted). Further, given the motion's disfavored status, courts often require "a showing of prejudice by the moving party" before granting the requested relief. *Sec. & Exch. Comm'n v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995).

## II. The Court Should Deny The Motion To Strike

Cindy Omidi contends that two portions of the SACC should be stricken as scandalous: (i) reference to her criminal conviction as "money laundering"; and (ii) reference to the government's ongoing investigation into crimes under 26 U.S.C. §§ 7201, 7203 and 7206. Neither contention is persuasive.

### A. Describing Cindy Omidi's Conviction Under 31 U.S.C. § 5324(a)(3) is Not Scandalous

Cindy Omidi first argues that reference to her conviction as money laundering is scandalous—though not immaterial to United's allegations. Her motion focuses almost exclusively on factors that reduced her sentence rather than on whether United misstated the nature of conviction. In any event, nothing in the SACC suggests that Cindy Omidi was convicted for anything other than violating 31 U.S.C. § 5324(a)(3), and her excerpts of SACC ¶¶ 25 and 406(b) do not suggest otherwise. United twice refers to her conduct as money laundering, but that is

neither false nor scandalous. In fact, Congress created the statute under which Omidi was convicted in the Money Laundering Control Act of 1986. *See* Pub. L. No. 99-570, 100 Stat. 3207-18 (1986). And, in 1994, Congress amended § 5324 in the Money Laundering Suppression Act. *See* Pub. L. No. 103-325, 108 Stat. 2160 (1994). This fact alones suggests it is not improper to refer to a § 5324 conviction as money laundering.

Moreover, courts and commentators frequently use the terms "structuring" and "money laundering" interchangeably. *See, e.g.*, *Rippetoe v. Roy*, 2011 WL 2652131, at *1 (E.D. Tex. June 9, 2011) (including § 5324 when describing an indictment for conspiring to launder money); C. Doyle, *Money Laundering: An Overview of 18 U.S.C. § 1956 and Related Federal Criminal Law*, Congressional Research Service, at 1 n.7 (Feb. 8, 2012) *available at* https://www.fas.org/sgp/crs/misc/RL33315.pdf (defining money laundering as including "structuring financial transactions" in violation of 31 U.S.C. § 5324); S. Welling, *Smurfs, Money Laundering, and the Federal Criminal Law: The Crime of Structuring Transactions*, 41 Fla. L. Rev. 287, 314 (1989) (arguing that "[s]murfing"—another term for structuring—"cannot be isolated from the laundering process").

Given that courts are appropriately reluctant to strike pleadings as scandalous, *see Robinson*, 654 F. Supp. 2d at 1064-65, there is no reason to strike these otherwise true allegations from the SACC. In fact, at least one court has declined to strike supposedly scandalous allegations that were at best subjective conclusions about a party's character, rather than objective observations about a verifiable criminal conviction, like those at issue here. *See Jadwin*, 2007 WL 3119670, at *4-5 (declining to strike as scandalous allegations that a party "was arrogant, disagreeable, uncooperative, intimidating, overbearing, self-righteous and unfriendly"). This Court should deny the motion to strike.

### B. United's Allegations Regarding the Government's Ongoing Tax-Fraud Investigation Are Not Scandalous

United alleges that the government is investigating Cindy Omidi and her sons for possible violations of numerous federal offenses, including:

> false advertising in violation of 21 U.S.C. § 331; making false statements to health insurance plans in violation of 18 U.S.C. § 1035; defrauding health insurance plans and patients seeking Lap Band surgery in violation of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1347 (health care fraud), and 18 U.S.C. § 1349 (fraud conspiracy); laundering the proceeds of such fraud in violation of 18 U.S.C. § 1956; numerous tax crimes in violation of 26 U.S.C. §§ 7201, 7203, and 7206(1); and conspiracy to commit the foregoing offenses and to defraud the United States in violation of 18 U.S.C. § 371.

SACC ¶ 404. Cindy Omidi takes issue only with United's allegations regarding the tax-fraud investigation under 26 U.S.C. §§ 7201, 7203, and 7206(1)—again, calling reference to those statutes "scandalous" rather than immaterial. Based on nothing more than her own conjecture, Cindy Omidi surmises that United's knowledge of this portion of the investigation is based only on some supposedly nefarious tip from a federal agent or employee. C. Omidi Mot. to Strike at 5. Her assumption has no relationship to the facts.

There is not and has never been *any* improper collusion between United and federal investigators regarding this litigation. Rather, United's factual investigation into the Omidi Network is based on publicly available information, exchanged discovery and subpoenaed materials, and publicly available court documents, including court filings *in this case*. As relevant to the tax-fraud investigation, United learned about the breadth of the government's investigation when the United States filed, *in this case*, a third-party opposition to Julian and Michael Omidi's Motion For An Order Releasing To Counterclaim Defendants Only For *In Camera* Review Affidavits Filed Under Seal In Support Of Warrants. *See* United States's Opposition Br., [Dkt. No. 122] at 6 n.1.[1] There, and not in some imagined private

---

[1] Omidi states that United "refused to answer" where it learned of the tax investigation. C. Omidi Mot. to Strike at 6. This is untrue. In fact, counsel for United unambiguously told counsel for Cindy Omidi that the source of United's

conference, the Government set forth, publicly, the contours of its investigation. *Anyone* is entitled to view this unsealed information, including counsel for Cindy Omidi, and in no way can reference to a public document that addresses a federal investigation that bears a striking similarity to the allegations at issue in this litigation be considered "scandalous."[2] The Court should decline to strike any reference to the nature of the ongoing Omidi tax investigation.

### C. Cindy Omidi Has Failed to Show Prejudice

Regardless of whether either statement qualifies as scandalous—they do not—Cindy Omidi's Motion to Strike fails for an independent reason. Before granting a motion to strike, courts require a finding of prejudice. *See Sands*, 902 F. Supp. at 1166; *see also* Order Denying Provider Mot. To Strike at 7, 10. Cindy Omidi has failed to carry her burden to show such prejudice here. In fact, her motion fails to mention *any* alleged "prejudice" from these two statements. There is, for example, no claim that United is damaging Cindy Omidi's reputation. Nor could she, as much of her wrongdoing, including a criminal conviction, has been the subject of extensive media coverage. Likewise, Omidi does not argue that the Court will be prejudiced by these allegations. Without a showing of actual prejudice the Court should deny the motion to strike.

---

allegations against Cindy Omidi was either public or pursuant to discovery in the underlying civil action.

[2] Cindy Omidi also questions, but does not move to strike, the allegation that Levi Green is a "biller" for Counterclaim Defendant DeVida USA LLC. C. Omidi Mot. to Strike at 6-7. Again, she wrongly assumes that the Government somehow colluded with United regarding Green's role in the fraud. First, United obtained and read publicly available copies of the *entire* transcript related to Cindy Omidi's criminal trial. *See United States v. Omidi*, No. 13-cr-739, Dkt. 195, 202, 207, & 212 (C.D. Cal.). And second, it should come as little surprise that United was particularly interested in those portions of her trial that focused on the operations of the Omidi Network, and in particular, on Levi Green's testimony given that Green was identified in both the Omidis' and the Providers' initial disclosures.

# CONCLUSION

United respectfully requests that the Court deny Cindy Omidi's Motion to Strike.

Dated: September 3, 2015 **WALRAVEN & WESTERFELD LLP**

By: /s/ BRYAN S. WESTERFELD
BRYAN S. WESTERFELD

Attorneys for Defendant UnitedHealth Group Incorporated; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company, OptumInsight, Inc.

Dated: September 3, 2015 **DORSEY & WHITNEY LLP**

By: /s/ RJ ZAYED
RJ ZAYED

*Admitted Pro Hac Vice*
Attorneys for Defendant UnitedHealth Group Incorporated; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company, OptumInsight, Inc.