ROBERT RICE (State Bar No. 131255)
LAW OFFICES ROBERT RICE
6380 Wilshire Blvd Ste 820
Los Angeles, CA 90048
Telephone: (323) 297- 3700
Facsimile: (323) 591- 0101
E-Mail: Robert@RobertRiceLaw.com


Attorneys for Individual Counterclaim
Defendants Michael Omidi, M.D. and
Julian Omidi

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company, et al.,<br><br>              Plaintiffs,<br>    v.<br><br>UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC., and DOES 1 through 20,<br><br>              Defendants. | Case No. 2:14-cv-03053-MWF(VBKx)<br>Honorable Michael W. Fitzgerald<br><br>**MICHAEL OMIDI, M.D. AND JULIAN OMIDI'S:**<br><br>**(1) NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[FRCP Rule 4(c)(3)(A) et seq]<br><br>Date: February 8, 2016<br>Time: 10:00 a.m.<br>Courtroom: 1600, 16th Floor, 312 N. Spring Street<br><br>Complaint Filed: March 21, 2014<br>Trial Date: None Set |
| UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC.,<br><br>              Counterclaim Plaintiffs,<br>    v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company; et al.,<br><br>              Counterclaim Defendants. | |

-1-

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2015 at 3:00 p.m. in Courtroom 1600, 16th Floor of the United States District Court, Central District of California, located at 312 N. Spring Street, Los Angeles, CA  90012-4701, Individual Counterclaim Defendants Michael Omidi, M.D. and Julian Omidi will and hereby do move for an order Quashing the Subpoenas Duces Tecums served on various banks by Defendants and Counter-Claimants, United Healthcare Group United (collectively "United") as follows:

(1) Pursuant to Rule 45(c)(3)(A)et seq. of the Federal Rules of Civil Procedure ("FRCP"), to quash twelve subpoenas served on non-party financial institutions, on the ground that the subpoena (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies and (iv) subjects a person to undue burden.

This motion is based on this notice, the attached memorandum of points and authorities, the attached exhibits, the files in this case and such oral argument as may be presented at the hearing.

*Respectfully Submitted*,

this 11th day of November, 2015   **LAW OFFICES OF ROBERT J. RICE**

*s/ Robert J. Rice, Esq.*

By: _____

ROBERT J. RICE, ESQ.

*Attorney for*
DR. MICHAEL OMIDI AND JULIAN OMIDI

-i-

# TABLE OF CONTENTS

I.      INTRODUCTION ……………………………………………………    1

II.     STATEMENT OF THE CASE……………………………………….    1

    A.  Almont's Complaint…………………………………………………    1

    B.  Removal and Almont's ERISA claims…………………………….    2

    C.  Defendant's Counter-Claim………………………………………    3

III.    COUNTER-CLAIMANT'S SUBPOENAS…………………………….    4

    A.  The Subpoenas Hide the Identity Of Bank Accounts……………………    4

    B.  Subpoenas For Expenditure Documents Are Irrelevant…………………    6

    C.  The Subpoenas Are An Overbroad Fishing Expedition………………    7

IV.    THE COURT SHOULD QUASH THE SECRET CODED SUBPOENAS
BECAUSE THEY ARE OVERBROAD, IRRELEVANT, AND VIOLATE BANK
PRIVACY REQUIREMENTS…………………………………………….    8

    A.  The Subpoenas Are Unreasonably Vague and Overbroad………………    8

        1.  The Secret Code of Account Numbers is Unintelligible………….    8

            i.  Cross-complainants have hidden the account identities……    8

            ii.  The Subpoenas hide information which shows privilege…..    9

            iii. The subpoenas create an overbroad guessing game………..    9

            iv. "All document pertinent to" an account is vague…………..11

        2.  The Subpoenas Are Irrelevant to the Subject Matter……………...12

            i.   The secret code bank accounts are irrelevant………………12

            ii.  The Subpoenas are an end-run around proper discovery…..13

            iii.  The use of secret code numbers creates an undue burden .. 14

        3.  The Court Should Quash Counter-Defendants Subpoenas………..15

            i.   The Subpoenas Should Quash Counter-Defendants
               Subpoenas................................................................................15

            ii.   The Subpoena invade the rights of unknown persons……..17

iii.  The Court should not permit the unintelligible subpoena…18

V.      CONCLUSION……………………………………...…………………20

**MOTION TO QUASH;**
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. **2:14-cv-03053-MWF(VBKx)**
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# TABLE OF CASES

CASE(S)                                                                                  PAGE(S)

Abbot v. Kidder, Peabody & Co., 1997 WL 337228 (N.D. Ill. 1997) ..................... 9

Benham v. Rice, 238 F.R.D. 15 (D.D.C. 2006) ................................................... 5, 11

Chao v. Community Trust Co., 474 F.3d 75 (3rd Cir. 2007) ........................... 16, 17

Chen v. Hewlett-Packard Co., 2005 WL 1388016 (E.D. Pa. June 8, 2005) .......... 11

Direct TV, Inc., v. Richards, 2005 WL 1514187 (D.N.J. 2005) ....................... 13, 19

Front-Line Promotions & Marketing, Inc. v. Mayweather Promotions, 2009 WL
    928568 (E.D. La. Apr. 2, 2009) ................................................................... 14

Human Service Consultants, Ltd. V. Tamule, 2007 WL 4914050 (D.R.I. Dec. 3,
    2007) ........................................................................................................... 12

In re Duque, 134 B.R. 679 (S.D. Fla. 1991) ......................................................... 10

In re Herald, Primeo and Thema Funds Secs. Litig., 2011 WL 4056819 (S.D.N.Y.
    Sept. 8, 2011) .............................................................................................. 11

In re Lazaridis, 2011 WE 3859919 (D.N.J. Spet. 1, 2011) ................................... 19

Kaufman v. Edelstein, 539 F. 2d 811 (2d Cir. 1976) ............................................ 19

Leon v. County of San Diego, 202 F.R.D. 631 (S.D. Cal. 2001) ........................... 13

Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003) ................. 8

Millwrights' Local 1102 Supplemental Pension Fund v. Merrill Lynch, Pierce,
    Fenner & Smith, 2010 WL 2772443 (E.D. Mich. Jul. 13, 2010) ................ 17

Moon v. SCP Pool Corp., 232 F.R.D. 633 (C.D. Cal. 2005) ................................... 8

Motorola, Inc. v. Lemko Corp., 2010 WL 4781844 (N.D. Ill. Nov. 17, 2010) ...... 11

Positive Black Talk, Inc. v. Cash Money Records, Inc., 394 F.3d 357 (5th Cir. 2004)

............................................................................................................... 19

Pulsecard, Inc. v. Discover Card Servs., Inc., 1995 WL 526533 (D. Kan. 1995) .. 12

S.T. Hudson Int'l, Inc. v. Glennon, 1988 WL 115808 (E.D. Pa. Oct. 28, 2998) .... 12

Thomas v. IEM, Inc., 2008 WL 692530 (M.D. La. Mar. 12, 2008) ...................... 14

Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588 (D. Kan. 2003) .... 13, 18, 19

Trevino v. ACB Am. Inc., 232 F.R.D. 612 (N.D. Cal. 2006) ................................ 11

United States v. American Optical Co., 39 F.R.D. 580 (N.D. Cal. 1966) ............. 19

United States v. Butler, 429 F.3d 140 (5th Cir. 2005) ............................................ 10

United States v. Dakota, 197 F.3d 821 (6th Cir. 1999) ............................................ 9

United States v. Dale, 155 F.R.D. 149 (S.D. Miss. 1994) .................................. 6, 10

Williams v. City of Dallas, 178 F.R.D. 103 (N.D. Tex. 1998) .............................. 10

WIWA v. Royal Dutch Petroleum Co., 392 F.3d 812 (5th Cir. 2004) ..................... 10

Yangtze Optical Fibre and Cable Co., Ltd. V. Ganda, LLC, WL 674893 (D.R.I. Mar.

1, 2007) ................................................................................................... 7, 12

**STATUTE(S)**                                                                                      **PAGE(S)**

Fed. R. Civ. R. 45(c)(3)(A)(iii), ............................................................................ 9

Fed. R. Civ. Proc., 45(c)(3) .................................................................................. 13

Fed. R. Civ. Proc., 45(c)(3)(A) ............................................................................ 13

Graham-Leach-Bliley Act, 15 U.S.C. §6801. ........................................................ 15

12 C.F.R. Part 30 Appendix B ................................................................................. 15

15 U.S.C. §6801(a) ................................................................................................. 15

15 U.S.C. §6802 ...................................................................................................... 15

15 U.S.C. §6802(b) ................................................................................................. 16

15 U.S.C. §6102(e)(8) ........................................................................................ 16, 17

Fed. R. Civ. P. 45 (c)(3)(A) ................................................................................... 18

Fed. R. Civ. P. 26(c) .............................................................................................. 18

**SECONDARY SOURCE(S)**                                                                            **PAGE(S)**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2008

  (2002) ............................................................................................................ 13

Matter of Bevill, Bressler & Schulman Asset Managements Corp., 805 F.2d 120 (3rd

  Cir. 1986) .................................................................................................................. 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs and Cross-defendants, Almont Ambulatory Surgery Center, LLC., and eight (8) other surgical facilities and medical groups, along with Julian, Michael, and Cindy Omidi (hereinafter sometimes "Almont"), submit this Memorandum in support of their Motion to Quash Subpoenas Duces Tecums served on various banks by Defendants and Counter-Claimants, United Healthcare Group United and its insured welfare benefit plans, along with individual health and welfare benefit plans (hereinafter sometimes "Defendants" or Counter-claimants").  Almont's Motion is based on the following:

(1)  The Subpoenas' use of secret coded account numbers make an end-run around proper discovery and create an undue burden by seeking irrelevant information from unknown accounts;

(2)  The Court should quash the Subpoenas because they are unreasonably vague and overbroad, and the secret code of account numbers are unintelligible and designed to hide the account identities;

(3)  The Subpoenas invade the rights of unknown persons and violate statutory bank privacy requirements by failing to identify the account names or give notice to the account holders subject to the Subpoenas.

### II.    STATEMENT OF THE CASE

#### A.  Almont's Complaint

Plaintiff, Almond Ambulatory Surgery Center, and eight (8) other surgical facilities, along with a doctor's medical group, filed this action on March 21, 2014, against United Healthcare Group and many of its insured welfare benefit plans, along with individual health and welfare benefit plans.  The Complaint alleged violation of the California Business and Professions Code section 17200, breach of implied-in-fact contracts, common count of services rendered, estoppel, and declaratory relief arising out of defendants failure to pay insurance claims.  The Complaint alleges that

-1-

before the out-of-networks physicians rendered services to patients defendants insured, Almont contacted defendants, verbally verified that the services were approved for insurance coverage, and obtained an implied-in-fact agreement the defendants would pay for the services.

When Almont submitted claims for services rendered, defendants engaged in a scheme to use pre-textual responses where defendants asked for more documentation, refused to acknowledge the submission of claims, and denied claims based on insufficient medical records were no such failure to submit medical records existed.  Almont provided all requested records.  Nevertheless, defendants continued to falsely claim that it needs additional records.

Defendants utilized their pre-textual demands for documents to discriminate against out of network doctors and to impose unreasonable conditions for obesity surgery.  Defendants adopted requirements of nutritional counseling, waiting periods, preoperative weight loss plans, and requirements for a five (5) year history of obesity which effectively denied medical treatments to obese patients.  Defendants approved these patients for medical services and then reneged on their promise to pay while claiming the absence of counseling, 5-year history, or the patient's compliance with a preoperative weight loss plan.  Each time the Almont submit claims for services, Defendants responded with a boilerplate false notifications demanding more records, pretending not to have received the claim or records, or that the claim cannot be processed because of non-coverage, purportd lack of records which were never specified, or failure to meet conditions.

## B. <u>Removal and Almont's ERISA claims</u>

Defendants removed the action to the federal Court on April 21, 2014.  After removal, Almont amended its complaint to allege, which in addition to the state law claims, includes violations of the Employee Retirement Income Security Act, 28 U.S.C. section 1132 et seq.  The Amended complaint alleged ERISA requires the defendants to provide the specific reasons for non-payment of claims, to state

explicitly what additional records are needed to perfect the claims, and to provide all requested plan and other documents used to deny the claims. Defendants failed to comply with any of these requirements, which subject them to penalties.

The First Amended Complaint alleged that at first defendants paid all such claims.  However, commencing in 2010, defendants began underpaying claims and then systematically began to withhold payment asserting there was no insurance coverage for the out-of-network services or there was insufficient documentation which specifying what was required to perfect the claim as required by ERISA. When Almont followed-up to ask what information was required, defendants refused to identify which specific records it supposedly needs and engaged in subterfuge excuses of boilerplate false notifications in violation of ERISA.  Under a Second Amended Complaint filed on June 1, 2015, Almont alleged defendants violated (1) 28 U.S.C. section1132 (a)(1)(B) by withholding plan benefits; (2) section 1132(a) by breaching their fiduciary duties; (3) section 1132(a)(3) by having unfair review of claims; (4)  section 1132(a)(3) by misrepresenting coverage creating an estoppel; (5) section 1132(a)(3) for plan reformation; (6) section 1132(a)(3) which requires a surcharge for improper claims handling, (7) section 1024(B) for requiring penalties; and (8) Unfair Business Practices.

**C. Defendants' Counter-Claim**

On May 12, 2014, defendants filed a Counterclaim, followed by an Amended Counterclaim, and finally on April 30, 2015, a Second Amended Counterclaim which alleged (1) fraudulent health insurance billing for services; (2) Unfair Business Practices; (3) Conspiracy; (4) interference with contract; (5) conversion; (6) restitution under section 502(a)(3); and (7) declaratory relief under section 502(a)(3). Counter-claimant alleged an implausible conspiracy whereby Almont submitted insurance billings for surgeries which were not performed, unnecessary surgeries, and false claims for medical services.  In this vast conspiracy which purportedly involved several hundred doctors, all of whom committed repeated felonies according to

-3-

Counter-claimants, not one of the doctors have ever owned-up to been proven to have ever committed such activities. Counter-claimants allege that Julian, Michael, and their mother, Cindy Omidi, engaged in actively hiding improper insurance billings through the use of sham/shifting business names. What the various corporations have to do with unnecessary surgeries or improper bills have never been identified, nor could they be identified because the accuracy of the billing has nothing to do with the number of corporations involved in this matter. The participation of several hundred doctors in issuing false billings also has nothing to do with whether there are one or many corporations.

Counter-claimants claim the out-of-network doctors waived co-pays for out-of-network-services to their insured. However, how the waiver of co-pay constituted a fraud escapes rational explanation. This case is deeply involved in accusations of little substance and an effort by insurance companies to find any excuse not to pay for services actually rendered to patients.

## III.   COUNTER-CLAIMANTS' SUBPOENAS

### A. The Subpoenas Hide The Identify Of Bank Accounts

On October 7, 2015, Counter-claimants issued a subpoena for business records to twelve (12) banks.[1]  Each Subpoena was identical and sought "For the years January 1, 2008 to the present, produce all records pertaining to the following [name of bank] account."[2]  The subpoenas provided a series of account numbers to each of the different banks without any identifying information making the request for all

---

[1] (A1) First Century Bank, N.A.; (A2) Alliance Bank; (A3) America Business Bank; (A4) Bank of America, N.A.; (A5) Citibank, N.A.; (A6) Deutsche Bank; (A7) Fremont Bank; (A8) Hanmi Bank; (A9) JP Morgan Chase Bank, N.A.; (A10) Manufacturers Bank; (A11) Union Bank, N.A.; and  (A12) Wells Fargo, N.A.

[2] The subpoenas consist of more than 500 pages of explanation, attached documents, and instructions.  In order to avoid undue confusion, attached as Exhibit "A" are only pages 5-7 of each of the 12 subpoenas which constitutes the operative request for each of the banks, and which contain the description of the extraordinary number of documents sought.

-4-

document pertaining to them an intolerable overbroad request.  *Benham v. Rice*, 238 F.R.D. 15, 19 (D.D.C. 2006) on reconsideration in part, 2007 WL 8042488 (D.D.C. Sept. 14, 2007) (request for "All documents relating to the incidents" is vague, overbroad, and not sufficient to warrant discovery; "All documents relating to employment decisions" is vague, overbroad, and not capable of a response).  See pp. 11-12 infra.  It is impossible to know who the account owner might be, what interest the owner might have in this litigation, whether the account was of a friend, family member, attorney, or person connected to any Cross-defendant, and what possible relevance the account might have to this case.  Almont has conducted a search of the Subpoenaed accounts and they have been unable to identify 85% of the account numbers contained in the Subpoenas and have no idea who the owners might be.

While it is Counter-claimants who claim without any supporting facts that Almont is hiding behind corporate identities, the party hiding the identity of entities is Counter-claimants who intentionally seek to deceive both the Court and all of the parties by issuing subpoenas to a dozen banks to obtain confidential bank records of unknown persons by using account numbers only where names and identities are never stated.  There is no justification for the vague, ambiguous, and unintelligible subpoenas which use account numbers as if they were a secret code no one else can decipher.

For example, Counter-claimants have issued a subpoena to First Century Bank for account number 2100036140.  (See Exhibit "A1").   Almont has no records of having conducted any business at First Century Bank and they do not know whose account number 2100036140 might be.  Some 85% of the accounts being subpoenaed are unrecognized, and whoever the owners might be, they have no notice of this subpoena.  There is no conceivable way to identify the relevance, privilege, privacy, or overbreadth of the subpoena because of the secret and concealed coded bank account where Counter-claimants deliberately concealed account information.

## B. <u>Subpoenas For Expenditure Documents Are Irrelevant</u>

Each of Counter-claimant's subpoenas seek extensive records for the expenditures of funds and ask for "all records pertaining to" Julian, Michael, and Cindy Omidi's loan applications, credit card information, Letters of Credit, correspondence, all meetings, credit investigation, background checks, loan collateral, notes, mortgages, contracts, safe deposit boxes statements, and every conceivable document associated with them. (Exhibit "A," pp. 5-7 for each of the 12 Subpoenas). What Cindy Omidi's personal credit cards in 2008 have to do with this alleged fraud in 2010 and thereafter escapes explanation. Counter-Claimants seek credit card information for years before the alleged fraudulent scheme, and there is not one plausible claim that her or any of the counter-defendants' credit card purchases had anything to do with the claimed scheme. More important, there is not one allegation that any money went directly to Mrs. Omidi from Counter-claimants, and therefore any money which she might have received in the relevant years of 2010 and thereafter would be shown by the bank records of the corporate counter-defendants, and not Mrs. Omidi's credit card purchases.

On October 23, 2015, this Court stated that Counter-claimants have alleged that "the Counter-Defendants have dissipated millions of dollars on personal and business expenses. (Mot. at 23). As a matter of course, funds are no longer traceable if they were spent on services and non-tangible expenses." (10-23-15 Order Granting and Denying Motion to Dismiss Second Amended Counter-claim, Dkt. 239, p. 79 ¶ 3). Because there is no issue in this case about monies expended and no longer in existence, any subpoena for documents showing expended funds would be irrelevant to this proceeding.

Counter-claimants' overbroad and irrelevant Subpoenas are a classic fishing expedition because no issue exists about expended funds and any monies the Omidis received would be shown by the accounts for the various corporations. *United States v. Dale,* 155 F.R.D. 149, 152 (S.D. Miss. 1994) (quashing document subpoena to

State insurance commissioner in part because it constituted an impermissible fishing expedition, which "is generally insufficient to justify the pretrial production of documents"). Counter-claimants can make no showing of why that evidence is not sufficient to establish relevant allegation because Mrs. Omidi's hairdresser, medications, groceries, dry cleaning, and other expenditures for sundries have nothing to do with this lawsuit.

## C. <u>The Subpoenas Are An Overbroad Fishing Expedition</u>

What Mrs. Omidi's loans or lines of credit might have with this supposed fraud defies explanation. Counter-claimants are engaged in an enormous fishing expedition where they cannot show either the relevance or plausibility of their improper claims. *Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda, LLC*, 2007 WL 674893, at *2 (D.R.I. Mar. 1, 2007). Counter-claimants know any such evidence would neither be relevant nor lead to admissible evidence, and no document produced pursuant to such a request would have anything to do with the allegations contained in Counter-claimants' rambling and prolix complaint.

The Court's October 23, 2015, Order found "The Court is mindful that United will not be able to recover against Counter-Defendants' general assets under a § 502(a)(3) claim, as this would be "quintessentially legal, rather than equitable, relief." (10-23-15 Order, p. 79, ¶ 3, to p. 80 ¶ 1). The court also found it could not impose an equitable lien by any agreement under ERISA (10-23-15 Order, p. 86 ¶ 2). Consequently the only funds which are relevant to this case are those funds which are in existence and can be traced to improper payments. Expended funds are irrelevant to this proceeding. (10-23-15 Order, p. 80 ¶ 2).

Counter-claimants seek any account information regarding accounts on which any Omidi is a signatory. However, Counter-Claimants have not notified any entity where the Omidis are a signatory on an account, and there is no showing that third parties who have nothing to do with this lawsuit who might have an Omidi as a signatory, such as a mother, father, charity, friend, or relative, should have their

MOTION TO QUASH;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE No. **2:14-cv-03053-MWF(VBKx)**
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

private information disclosed because of the implausible connection of Cindy Omidi being a signatory on an account.

## IV. THE COURT SHOULD QUASH THE SECRET CODED SUBPOENAS BECAUSE THEY ARE OVERBROAD, IRRELEVANT, AND VIOLATE BANK PRIVACY REQUIREMENTS

### A. The Subpoenas Are Unreasonably Vague And Overbroad

#### 1. The Secret Code of Account Numbers is Unintelligible

##### i. Cross-complaints have hidden the account identities

Counter-claimant has issued a series of subpoenas to numerous banks where they identify account numbers and nothing more, and then request all documents concerning those account numbers. It is not possible for Almont to know which accounts are being subpoenaed, and an examination of the accounts show that fully 85% of the accounts do not belong to any of the Counter-defendants. Counter claimants have engaged in an unreasonably overbroad, vague, and calculated deceptive effort to use secret code bank account numbers to conceal deliberate fishing expedition into unrelated bank accounts.

A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of the litigation. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (holding subpoenas properly quashed where their overbreadth led the court to conclude that subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information"). Additionally, federal courts have incorporated relevance as a factor to be considered when ruling on motions to quash. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal.2005). The "evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" and mandates the court's consideration of such factors as relevance, the serving party's need for the requested documents, the breadth of the discovery request, the particularity with which the

-8-

documents are described, and the burden imposed. *Id*. at 636.

Notice should be given to people, not coded account numbers.  The concept that coded bank accounts is all that is necessary to be identified in a subpoena violates fundamental concepts of relevance, privacy, notice, and permitting the assertion of privileges.  The Subpoenas are unintelligible and should be quashed.

### ii.  <u>The Subpoenas hide information which show privilege</u>

The use of the secret code numbered bank account makes it impossible for Almont to assert privilege.  They do not know if the accounts are attorney-client privileged, privacy privilege, Bank Secrecy Act privilege, or other appropriate privileges.  Counter-defendants misconduct has been extreme and deliberately calculated to create a severe fishing expedition which has no place in this litigation.

The party seeking to claim privilege holds the burden of proof. *Matter of Bevill, Bressler & Schulman Asset Management Corp*., 805 F.2d 120, 123 (3rd Cir. 1986).  *See also United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (the party asserting the discovery privilege has the burden of establishing its existence). However, because the Subpoenas do not identify the names of the accounts it is not possible for Almont to provide the information necessary to claim privilege. Counter-claimants' conduct of concealment was deliberate to create an unreasonably vague and ambiguous subpoena where knowing which privilege to assert is impossible.

Almont cannot divine what privileges might be involved in Counter-claimants secret use of code numbers.  A district court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter and no exception or waiver applies."  Fed. R. Civ. R. 45(c)(3)(A)(iii); *Abbott v. Kidder, Peabody & Co*., 1997 WL 337228 * 2 (N.D. Ill. 1997).  The use of code numbers with no identifying name, ownership, or relationship to this case was calculated to frustrate the claim of privilege, and the subpoena should be quashed.

### iii.  __The subpoenas create an overbroad guessing game__

Counter-defendants do not know if the accounts are their personal bank accounts, the trust accounts of their attorneys, or the accounts of friends, family, or strangers.  The guessing game in this case is unreasonable and designed to be overwhelmingly burdensome and overbroad.  The overbroad use of account numbers without any accompanying description of who the account owners or associated persons might be is a deliberate act to support a far ranging fishing expedition designed to violate privacy, attorney client privileges, and innumerable other potential rights and privileges.

Even if the documents do have some marginal relevance to this case, that relevance is significantly outweighed by the over breadth and burdensomeness of the vague Subpoenas.  *United States v. Butler*, 429 F.3d 140 (5th Cir. 2005) (finding subpoena was properly quashed as unduly burdensome and overly broad where it sought documents in twenty-eight categories over a period of seventeen years); *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998) (document subpoena was facially overbroad where not limited by reasonable restrictions on time); and *In re Duque*, 134 B.R. 679, 683 (S.D. Fla. 1991), on remand, 154 B.R. 93 (S.D. Fla. 1993) (determination of subpoena's reasonableness requires court to balance interests served by complying with subpoena against those served by quashing it). For these reasons, Almont requests the Subpoenas be quashed.

Almont doesn't know whether these secret accounts are personal to them or to total strangers.  *United States v. Dale*, 155 F.R.D. 149, 152 (S.D. Miss. 1994) (quashing document subpoena to State insurance commissioner in part because it constituted an impermissible fishing expedition, which "is generally insufficient to justify the pretrial production of documents").  Counter-defendants have insufficient information to assert privilege claims to these overbroad Subpoenas.  *WIWA v. Royal Dutch Petroleum Co*., 392 F.3d 812, 820-21(5th Cir. 2004) (subpoena deuces tecum was overly broad where it sought the production of personal information, such as tax

forms, which were irrelevant to the Plaintiff's claims at issue).  The hidden identity of the bank accounts involved was designed to conceal identity of ownership, the relationship the accounts might have to this litigation, and to create a hide and seek game of overbroad Subpoenas, which is inexcusable.

### iv.   **"All documents pertinent to" an account is vague**

Each of Counter-claimants' unreasonable Subpoenas seek "For the years January 1, 2008 to the present, produce all records pertaining to the following" bank account.  (Subpoena, Exhibit "A" p. 4).  However, the Courts have repeatedly held that such requests are vague and unintelligible.  The fishing expedition of an "all documents pertaining" to a subject is an illegitimate effort to obtain irrelevant documents having nothing to do with the subject of the proceeding and not likely to lead to relevant or admissible evidence.  *Benham v. Rice*, 238 F.R.D. 15, 19 (D.D.C. 2006) on reconsideration in part, 2007 WL 8042488 (D.D.C. Sept. 14, 2007) (request for "All documents relating to the incidents" is vague, overbroad, and no sufficient to warrant discovery; "All documents relating to employment decisions" is vague, overbroad, and not capable of a response).

The use of "all documents relating to" or "all documents pertaining" to is overbroad, vague, and objectionable in discovery proceedings.  Such requests are improper.  *Trevino v. ACB Am., Inc*., 232 F.R.D. 612, 618 (N.D. Cal. 2006) (interrogatory requesting "all communications" between two co-defendant corporations are "overly broad"); *Benham v. Rice*, 238 F.R.D. 15, 26 (D.D.C. 2006) (sustaining overbroad objection to interrogatory requesting "all communications relating to the complaint"); *In re Herald, Primeo and Thema Funds Secs. Litig*., 2011 WL 4056819, at *3 (S.D.N.Y. Sept. 8, 2011) (finding interrogatories requesting all communications between defendants to be "vastly overbroad" where the issue was establishing in personam jurisdiction and the requests were not limited to parties located in the relevant state); *Motorola, Inc. v. Lemko Corp*., 2010 WL 4781844, at *2 (N.D. Ill. Nov. 17, 2010) (interrogatory seeking all communications between

plaintiff and third party concerning the trade secrets at issue in the case was "vastly overbroad"); *Chen v. Hewlett-Packard Co.*, 2005 WL 1388016, at *1 (E.D. Pa. June 8, 2005) (interrogatory requesting "all communications . . . related to power supply problems" was "hopelessly over-broad"); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 1995 WL 526533, at *4 (D. Kan. 1995) (interrogatory requesting all communications with persons from whom responding party received advice on a certain topic was overly broad on its face); *S.T. Hudson Int'l, Inc. v. Glennon*, 1988 WL 115808, at *1 (E.D. Pa. Oct. 28, 1988) (interrogatory seeking all communications with an individual was "overly broad").

On top of the inexcusable secret code of account numbers designed to hide what Counter-claimants are doing in their fishing expedition, Counter-claimants use overbroad and vague language of "all document pertaining" to the secret accounts. "If this Court permitted discovery on this flimsy showing, then [Counter-claimants] would be entitled to limitless discovery regarding communications between [defendants] and any past or current business associate. Such a fishing expedition is not permitted under Fed. R. Civ. P. 26(b)(1)." *Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda, LLC*, 2007 WL 674893, at *2 (D.R.I. Mar. 1, 2007); *Human Service Consultants, Ltd. V. Tamule*, 2007 WL 4914050 (D.R.I. Dec. 3, 2007)

## 2. <u>The Subpoenas Are Irrelevant To The Subject Matter</u>

### i. <u>The secret coded bank accounts are irrelevant</u>

There is no possible means by which the relevance to the subject matter can be assessed because of the secret code numbers of the bank accounts.  Counter-claimants have practice a deliberate deception in concealing ownership and the relationship of these accounts to this case, and it will not be sufficient to Counter-claimants to now provide the information because the deception has cause undue burden, harassment, and prejudice.  It is not sufficient for Counter-claimants to now provide the information because third parties have not received notice because of the hidden identities of accounts. and the banks have been precluded from giving

-12-

adequate notice.

A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed. R. Civ. Proc. 26(b)(1). *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan.2003). If a subpoena falls outside the scope of permissible discovery, the Court has authority to Quash or modify it upon a timely motion by the party served. Fed. R. Civ. Proc. 45(c)(3). A subpoena should be quashed where it seeks disclosure of privilege or protected matters or subjects any person to undue burden. Rule 45(c)(3)(A); *Direct TV, Inc. v. Richards*, 2005 WL 1514187 at *1 (D.N.J. 2005)(citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir.1984) (a subpoena is considered unduly burdensome when the Court finds that it "is unreasonable or oppressive."). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2008 (2002) (the present standard, "relevant to the claim or defense of any party is still a very broad one"). *See Leon v. County of San Diego*, 202 F.R.D. 631, 634 (S.D. Cal. 2001).

All documents related to secret code bank accounts cannot possibly be relevant to the subject matter of this litigation. There is no connection of these accounts to this litigation. Counter-defendants should never be permitted to issue this type of deceptive subpoena, and whether or not Counter-claimants attempt to identify the ownership or relationship of these subpoenas to this case, they cannot purge themselves from the overt deception practiced in this matter.

### ii. The Subpoenas are an end-run around proper discovery

The bank information, if it were relevant, would be discoverable though a request for production of documents. The subpoenas are designed to make an end-run around ordinary discovery techniques to obtain non-party bank accounts thorough a secret subpoena which will produce no relevant information in this proceeding. The burden and harassment on the counter-defendants is overwhelming, and the

-13-

violation of the privacy of unknown secret account holders is extreme. The only possible purposes of these subpoenas are harassment and a fishing expedition.

"Rule 45 subpoenas . . . are generally used to obtain documents from non-parties and are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Thomas v. IEM, Inc*., 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (internal quotations omitted) (quoting *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. Jun. 4, 2007)). Here, Cross-complainants' to evade through a subpoena the receipt of documents that should be requested through a request for production. The subterfuge represents an attempt at precisely such an "end-run." Counter-complainant cannot circumvent the rules of discovery in this manner. See, e.g., *Front-Line Promotions & Marketing, Inc. v. Mayweather Promotions*, 2009 WL 928568, at *5 (E.D. La. Apr. 2, 2009) (quashing a subpoena for documents served by one party upon the other when similar documents had already been requested by the issuing party in a previous untimely request for production, and determining that a Rule 45 subpoena "is an improper mechanism for seeking discovery from a party to the litigation.").

Had Counter-complainants made this same request using secret coded account numbers in a normal Request for Documents, the Court and all parties would have responded the request was unintelligible. Counter-claimants should not be allowed to evade normal discovery with their coded account number Subpoenas. They cannot now mitigate their failure to request these documents in the nearly nineteen (19) months provided by this Court through an improper use of a subpoena.

### iii.   <u>The use of secret code numbers creates an undue burden</u>

Counter-defendants cannot possibly decipher the unreasonable use of secret code in which Counter-claimants have engaged. The use of code numbers instead of the names and identities of the account numbers makes it impossible for Almont to know the scope, purpose, relevance, cost, or burden created by the deceptive conduct. It is not enough for Counter-claimants to now provide the names of the accounts

-14-

because the deception practiced in these Subpoenas is inexcusable and it was designed to create an undue burden which cannot be cured.

Counter-defendants issued the Subpoenas to harass counter-defendants thorough secret code numbers the use of which has no excuse. The deceptive effort was designed to place an undue burden on Counter-defendants, and there is no possible means to determine whose accounts are being subpoenaed or whether the owners of the account have anything to do with this litigation. The burden of divining the account holders is overwhelming not only on defendants, but also on the subpoenaed banks.

### 3. **The Court Should Quash Counter-Defendants Subpoenas**

#### i. **The Subpoenas violate bank privacy requirements**

Pursuant to the Gramm-Leach-Bliley Act ("the GLBA") at 15 U.S.C. § 6801 et seq., U.S. financial institutions protect bank account information from public disclosure. The financial institutions do this through the "information security program[s]" they are required to have by U.S. Treasury's Comptroller of the Currency, pursuant to 12 C.F.R. Part 30 Appendix B, (highlighting added). Documentary evidence like a bank customer's financial account numbers; monthly account statements; account opening documents and bank signature cards can only be disclosed by a U.S. financial institution as mentioned by 15 U.S.C. § 6802 (e) (1)-(8): to effect a transaction requested by the consumer (i.e. bank customer); with the consent of the bank customer; for the protection or confidentiality of the financial institution's records pertaining to the customer, etc.

15 U.S.C. section 6801(a) provides:
> Privacy obligation policy:
> It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those custome62rs' nonpublic personal information.

15 U.S.C. § 6802 provides:

> Obligations with respect to disclosures of personal information:
>
> (a) Notice requirements
>
> Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

Section 6802(b) provides:

> (b) Opt Out.
>
> (1)  In general. A financial institution may not disclose nonpublic personal information to a nonaffiliated third party unless—
>
> (A) such financial institution clearly and conspicuously discloses to the consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 504, that such information may be disclosed to such third party;
>
> (B) the consumer is given the opportunity, before the time that such information is initially disclosed, to direct that such information not be disclosed to such third party; and
>
> (C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

None of the exception provided for in the Act apply to this proceeding.  A financial institution is prohibited from releasing subpoenaed information without notice to the consumer unless one of the exemptions under the GLBA applies.  *Chao v. Community Trust Co*., 474 F.3d 75, 84 (3d Cir. 2007).  Section 6102(e)(8) provides an exception where the financial institutions may provide nonpublic financial information "to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as

-16-

authorized by law.

These exceptions have no application in this proceeding.  Because their account ownerships have been kept secret and Counter-claimant has engaged in deliberate concealment of the nature and relationship of these accounts to this action, it cannot be verified that any notice was provided to anyone. "Financial information relating to non-parties is entitled to protection." *Millwrights' Local 1102 Supplemental Pension Fund v. Merrill Lynch, Pierce, Fenner & Smith*, 2010 WL 2772443, *3 (E.D. Mich. Jul. 13, 2010).

Counter-claimants have not satisfied the Graham-Leach-Bailey Act, nor could they with the unintelligible subpoenas they have issued.  It is not possible to know who the accounts belong to or who is being subpoenaed.  There is no notice to the owners and the Subpoenas violate their privacy rights under the Act.

### ii.  The Subpoena invade the rights of unknown persons

There is no way to know whose rights are being invaded and violated under the secret code Subpoenas.  There is no justification for the cryptic and unintelligible descriptions contained in the Subpoenas designed to violate the Graham-Leach-Bailey Act. The subpoenas should be quashed.

In *Chao v. Community Trust Co*., 474 F.3d 75, 87 (3d Cir. 2007), the Department of Labor issued a subpoena deuces tecum to a welfare benefits plan and financial trust company pursuant to an investigation it was conducting into possible violations of the Employee Retirement Income Security Act (ERISA). The Trustee refused to comply with the subpoena claiming that it was a financial institution which was covered by the Graham-Leach-Bliley Act (GLBA), 15 U.S.C. section 6801 et seq., and the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. section 3401 et seq., and the Department therefore had to give notice to the beneficiaries of the plan. The Department had not given notice to beneficiaries that their financial records were being sought which rendered the subpoena invalid. The Department claimed the subpoena for beneficiary financial records came within the exception contained in

-17-

6802(e)(8) where the notice provisions were not required by a "properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities...." *Id.* at 867, quoting 15 U.S.C. § 6802(e)(8).  The District Court found that the plan beneficiaries were not "customers" of the trustee under the RFPA, and therefore the Act did not prohibit the subpoena.  The District Court also held that while the beneficiaries were "consumers" under the GLBA and notice should ordinarily be given, the subpoena was exempt under section 6802(e)(8) as being from a governmental investigation.  The Court of Appeals reversed and remanded. The Court upheld the subpoena against attack under the RFPA, but reversed the holding under the GLBA. The Court held that before it could be determined that the subpoena was exempt from the GLBA notice requirements, it was first necessary to determine if the Department of Labor had jurisdiction to properly issue the subpoena or conduct an investigation into the welfare benefits plan. *Id.* at 687.  The Trust's role as a legal representative of beneficiaries was sufficient to qualify trust as a "consumer" of trustee, under Gramm–Leach–Bliley Act (GLBA), and the District Court must determine whether it has jurisdiction to issue the subpoena in view of the prohibitions contained in GLBA. *Id.*

None of the GLBA exceptions apply in his case.  There can be no notice to secret coded unknown account holders.  The Subpoenas should be quashed.

### iii.  <u>The Court should not permit the unintelligible subpoena</u>

This Court has the authority to "make any order which justice requires to protect a party," including an order to quash or modify a subpoena. *See* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(c)(3)(A).  Specifically, Rule 45 provides that "on timely motion, the issuing court must quash or modify a subpoena that... requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45 (c)(3)(A)(iii). A party to an action has standing to quash or modify a non-party subpoena when it claims a privilege or privacy interest in the information sought from the nonparty. *Transcoro, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588,

-18-

590 (D. Kan. 2003); Fed. R. Civ. Proc. Rule 45 (c)(3)(A).  Personal rights claimed with respect to bank account records give a party sufficient standing to challenge a third party subpoena served upon financial institutions holding such information. DirectTV. Inc. v. Richard, 12005 WL 1514187 at 1 (N. 1 June 27, 2005).  See Transco, Inc. 212 F.R.D. at 591.

When a party objects to enforcement of deposition subpoena deuces tecum, the burden is on the party seeking production of documents to show good cause that the requested documents are necessary to establish his claim or defense, or that denial of production will unduly prejudice preparation of his case or cause him hardship or injustice. *United States v. American Optical Co.*, 39 F.R.D. 580, 582 (N.D. Cal.1966).

Counter-claimants subpoenas to secret coded bank account numbers are not reasonable. "The reasonableness of a subpoena depends on the balance of the interest served by demanding compliance with the subpoena against the interests served by quashing it." *Positive Black Talk, Inc. v. Cash Money Records*, Inc. 394 F.3d 357, 377 (5th Cir. 2004).  Courts have held that the determination of the reasonableness of a discovery request is left to the court's broad discretion. *See Kaufman v. Edelstein*, 539 F.2d 811, 814 (2d Cir. 1976).

In determining a subpoena's reasonableness, the court may consider: (1) a party's need for production; (2) the nature and importance of litigation; (3) the material's relevance; (4) the breadth of request for production; (5) the time period covered by the request; and (6) the particularity with which documents are described; and (7) burden imposed on subpoenaed party.  Fed. R. Civ. Proc. Rule 45; *In re Lazaridis*, 2011 WE 3859919, *2 (D.N.J. Sept. 1, 2011). In this case Almont has been forced to guess who and what is being subpoenaed. Counter-complainants have failed to show the need for secret coded bank account information that it has deliberately hidden from the parties, and the burden, relevance, and breath of the subpoenas are inherently and irremediably unreasonable because of Counter-defendants bad faith

-19-

deliberate misconduct.

### V.    CONCLUSION

Plaintiffs and Cross-defendants, Almont Ambulatory Surgery Center, LLC., and eight other surgical facilities and medical groups, along with Julian, Michael, and Cindy Omidi request their Motion to Quash Subpoena be granted.

*Respectfully Submitted*,

this 11th day of November, 2015   LAW OFFICES OF ROBERT J. RICE

*s/ Robert J. Rice, Esq.*

*By*: _____

ROBERT J. RICE, ESQ.

*Attorney for*
DR. MICHAEL OMIDI AND JULIAN OMIDI

-20-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF LOS ANGELES
Case No. 2:14-cv-03053-MWF(VBKx)
CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Diego, State of California. My business address is 6380 Wilshire Bld Ste 820 Los Angeles, California 90048. On December 11, 2015, I served true copies of the following document(s) described as

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS ISSUED BY DEFENDANT  UnitedHealth Group Inc. MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER GRANTING MOTION TO QUASH SUBPOENAS ISSUED BY DEFENDANT United Health Group Inc.

on the interested parties in this action as follows:

See Attached Service List

XX BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a copy of the document(s) to be sent from e-mail address Robert@RobertRiceLaw.com to the persons at the e-mail addresses listed in the Service List.

The document(s) were transmitted at 4:00 p.m. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

…BY MAIL: I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

XX  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 11, 2015, at Los Angeles, California.


_____/s/ Robert Rice


UNITED STATES DISTRICT COURT

-1-

CERTIFICATE OF SERVICE AND SERVICE LIST
MOTION TO SUPPRESS AND RETURN SEIZED PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ATTORNEY RYAN D. KASHFIAN  [ETC.]

CASE NO. CR Misc. 14-1030
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DISTRICT OF LOS ANGELES
Case No. 2:14-cv-03053-MWF(VBKx)

---

**SERVICE LIST**

---

BRYAN WESTERFELD (S.B. # 218253)
bwesterfeld@calemployerlaw.com
NICOLE E. WURSHER (S.B # 245879)
nwurscher@calemployerlaw.com
WALRAVEN & WESTERFELD LLP
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone: (949) 215-1997
Facsimile: (949) 215-1999


R.J. ZAYED (MN ID #0309849)
zayed.rj@dorsey.com
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868


Attorneys for Defendant UnitedHealth Group, Inc.; and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company; OptumInsight, Inc.

-2-

CERTIFICATE OF SERVICE AND SERVICE LIST
MOTION TO SUPPRESS AND RETURN SEIZED PROPERTY; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION OF ATTORNEY RYAN D. KASHFIAN  [ETC.]

CASE NO. **CR Misc. 14-1030**
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT A-1

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that 1st Century Bank, N.A. ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means 1st Century Bank, N.A., its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of 1st Century Bank, N.A.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

i.      The date of the Document;

ii.     The number of pages, attachments, and appendices;

iii.    The names of its author or preparer and an identification by employment and title of each such person;

iv.     The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.      The present custodian; and

vi.     The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.      This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.      For the years January 1, 2008 to the present, produce all records pertaining to the following 1st Century Bank, N.A. account:

A.      2100036140

B.      All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.      These records should include, but are not limited to:

A.      Signature cards;

B.      Bank statements;

C.      Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.   Deposit slips;

E.   Checks deposited;

F.   Withdrawal slips;

G.   Checks issued for withdrawals;

H.   Form 1099s issued;

I.   Records of certified checks;

J.   Records of wire transfers;

K.   Bonds and securities purchased through your bank;

L.   Savings bond transactions;

M.   Letters of credit

N.   All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.   All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.     Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.     For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment

records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.    Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-2

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Alliance Bank ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.      "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.      "You" or "Your" means Alliance Bank, its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Alliance Bank.

3.      "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.      "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.     "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.     "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.     The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

i.    The date of the Document;

ii.    The number of pages, attachments, and appendices;

iii.    The names of its author or preparer and an identification by employment and title of each such person;

iv.    The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.    The present custodian; and

vi.    The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following Alliance Bank accounts:

A.    1058258

B.    1065558

C.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

A.    Signature cards;

B.    Bank statements;

C.    Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.    Deposit slips;

E.    Checks deposited;

F.    Withdrawal slips;

G.    Checks issued for withdrawals;

H.    Form 1099s issued;

I.    Records of certified checks;

J.    Records of wire transfers;

K.    Bonds and securities purchased through your bank;

L.    Savings bond transactions;

M.    Letters of credit;

N.    All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.    All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.    Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.    For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited

to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.    Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-3

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that American Business Bank ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.     "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.     "You" or "Your" means American Business Bank, its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of American Business Bank.

3.     "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.     "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

     5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

     6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

     7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

      i.     The date of the Document;

      ii.    The number of pages, attachments, and appendices;

     iii.   The names of its author or preparer and an identification by employment and title of each such person;

     iv.   The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

     v.    The present custodian; and

     vi.   The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following American Business Bank account:

    A.    3110893

    B.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

    A.    Signature cards;

    B.    Bank statements;

    C.    Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.  Deposit slips;

E.  Checks deposited;

F.  Withdrawal slips;

G.  Checks issued for withdrawals;

H.  Form 1099s issued;

I.  Records of certified checks;

J.  Records of wire transfers;

K.  Bonds and securities purchased through your bank;

L.  Savings bond transactions;

M.  Letters of credit;

N.  All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.  All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.  Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.  For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment

records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.    Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-4

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Bank of America, N.A. ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Bank of America, N.A., its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Bank of America, N.A.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

### INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

i.     The date of the Document;

ii.    The number of pages, attachments, and appendices;

iii.   The names of its author or preparer and an identification by employment and title of each such person;

iv.    The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.     The present custodian; and

vi.    The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following Bank of America, N.A. accounts:

A.    324111864

B.    429628588

C.    914304268

D.    1127311593

E.    1154863190

F.    1154863195

G.    1499650103

H.    6260540584

I.    44607162819

J.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

A.    Signature cards;

B.    Bank statements;

C.    Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.    Deposit slips;

E.    Checks deposited;

F.    Withdrawal slips;

G.    Checks issued for withdrawals;

H.    Form 1099s issued;

I.    Records of certified checks;

J.    Records of wire transfers;

K.    Bonds and securities purchased through your bank;

L.    Savings bond transactions;

M.    Letters of credit;

N.    All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.    All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.    Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans,

repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.    For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.    Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and

bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

# EXHIBIT A-5

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Citibank, N.A. ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Citibank, N.A., its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Citibank, N.A.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.     The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.     The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.     This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

i.    The date of the Document;

ii.   The number of pages, attachments, and appendices;

iii.  The names of its author or preparer and an identification by employment and title of each such person;

iv.   The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.    The present custodian; and

vi.   The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following Citibank, N.A. accounts:

A.    200752010

B.    201855756

C.    202205902

D.    204502256

E.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

A.    Signature cards;

B.      Bank statements;

C.      Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.      Deposit slips;

E.      Checks deposited;

F.      Withdrawal slips;

G.      Checks issued for withdrawals;

H.      Form 1099s issued;

I.      Records of certified checks;

J.      Records of wire transfers;

K.      Bonds and securities purchased through your bank;

L.      Savings bond transactions;

M.      Letters of credit;

N.      All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.      All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.      Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.    For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.    Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-6

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Deutsche Bank ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Deutsche Bank, its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Deutsche Bank.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.     The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.     The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.     The terms "include" or "including" shall be construed as "including without limitation."

11.     The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.     The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.     The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.     Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.     This subpoena is directed to all information currently in your possession, custody, or control.

2.     If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.     In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.     In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.     In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.     Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.     A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.     A brief description of any Document withheld, including:

      i.       The date of the Document;

      ii.      The number of pages, attachments, and appendices;

      iii.     The names of its author or preparer and an identification by employment and title of each such person;

      iv.     The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

      v.      The present custodian; and

      vi.     The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.     This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.     For the years January 1, 2008 to the present, produce all records pertaining to the following Deutsche Bank accounts:

      A.    5XL066365

      B.    5XL066605

      C.    5XL069104

      D.    5XL069112

      E.    5XL069120

      F.    5XL878025

      G.    5XL878033

      H.    5XL878264

I.      5XL878272

J.      5XL878579

K.      A3V943232

L.      A3V943240

M.      All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.  These records should include, but are not limited to:

A.      Signature cards;

B.      Bank statements;

C.      Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.      Deposit slips;

E.      Checks deposited;

F.      Withdrawal slips;

G.      Checks issued for withdrawals;

H.      Form 1099s issued;

I.      Records of certified checks;

J.      Records of wire transfers;

K.      Bonds and securities purchased through your bank;

L.      Savings bond transactions;

M.      Letters of credit;

N.      All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.      All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.    Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.    For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

EXHIBIT A-7

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Fremont Bank ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Fremont Bank, its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Fremont Bank.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

    5.     "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

    6.     "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

    7.     The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.      The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.      The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.     The terms "include" or "including" shall be construed as "including without limitation."

11.     The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.     The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.     The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.     Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.      This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

      i.      The date of the Document;

      ii.     The number of pages, attachments, and appendices;

      iii.    The names of its author or preparer and an identification by employment and title of each such person;

      iv.    The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

      v.     The present custodian; and

      vi.    The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following Fremont Bank accounts:

    A.    11906235

    B.    121107882

    C.    1190623512

    D.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

    A.    Signature cards;

    B.    Bank statements;

EXHIBIT A

C. Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D. Deposit slips;

E. Checks deposited;

F. Withdrawal slips;

G. Checks issued for withdrawals;

H. Form 1099s issued;

I. Records of certified checks;

J. Records of wire transfers;

K. Bonds and securities purchased through your bank;

L. Savings bond transactions;

M. Letters of credit;

N. All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O. All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3. Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4. For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited

EXHIBIT A-8

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Hanmi Bank ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Hanmi Bank, its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Hanmi Bank.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

i.     The date of the Document;

ii.     The number of pages, attachments, and appendices;

iii.     The names of its author or preparer and an identification by employment and title of each such person;

iv.     The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.     The present custodian; and

vi.     The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.     This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.     For the years January 1, 2008 to the present, produce all records pertaining to the following Hanmi Bank accounts:

A.     500263369

B.     500263385

C.     All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.     These records should include, but are not limited to:

A.     Signature cards;

B.     Bank statements;

C.  Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.  Deposit slips;

E.  Checks deposited;

F.  Withdrawal slips;

G.  Checks issued for withdrawals;

H.  Form 1099s issued;

I.  Records of certified checks;

J.  Records of wire transfers;

K.  Bonds and securities purchased through your bank;

L.  Savings bond transactions;

M.  Letters of credit;

N.  All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.  All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.  Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.  For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited

to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.    Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.    Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.    Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.    Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-9

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that JP Morgan Chase Bank, N.A. ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means JP Morgan Chase Bank, N.A., its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of JP Morgan Chase Bank, N.A.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2. If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3. In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4. In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5. In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6. Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A. A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B. A brief description of any Document withheld, including:

i.      The date of the Document;

ii.     The number of pages, attachments, and appendices;

iii.    The names of its author or preparer and an identification by employment and title of each such person;

iv.    The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.     The present custodian; and

vi.    The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following JP Morgan Chase Bank, N.A. accounts:

A.    406656095

B.    466377541

C.    476137828

D.    806002234

E.    844934919

F.    888632148

G.    3411933084

H.    3418154344

  I.  All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

 2. These records should include, but are not limited to:

  A.  Signature cards;

  B.  Bank statements;

  C.  Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

  D.  Deposit slips;

  E.  Checks deposited;

  F.  Withdrawal slips;

  G.  Checks issued for withdrawals;

  H.  Form 1099s issued;

  I.  Records of certified checks;

  J.  Records of wire transfers;

  K.  Bonds and securities purchased through your bank;

  L.  Savings bond transactions;

  M.  Letters of credit;

  N.  All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

  O.  All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

 3. Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of

repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

      4.     For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

      5.     Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

      6.     Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

      7.     Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

      8.     Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-10

**EXHIBIT A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Manufacturers Bank ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

**DEFINITIONS**

1.    "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Manufacturers Bank, its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Manufacturers Bank.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

     5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

     6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

     7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.      The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.      The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.     The terms "include" or "including" shall be construed as "including without limitation."

11.     The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.     The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.     The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.     Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.      This subpoena is directed to all information currently in your possession, custody, or control.

2.    If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.    In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.    In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.    In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.    Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.    A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.    A brief description of any Document withheld, including:

      i.      The date of the Document;

      ii.     The number of pages, attachments, and appendices;

     iii.    The names of its author or preparer and an identification by employment and title of each such person;

     iv.    The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

     v.     The present custodian; and

     vi.    The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.     This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

### DOCUMENTS TO BE PRODUCED

1.     For the years January 1, 2008 to the present, produce all records pertaining to the following Manufacturers Bank account:

     A.    13225812

     B.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.     These records should include, but are not limited to:

     A.    Signature cards;

     B.    Bank statements;

     C.    Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

EXHIBIT A

D.   Deposit slips;

E.   Checks deposited;

F.   Withdrawal slips;

G.   Checks issued for withdrawals;

H.   Form 1099s issued;

I.   Records of certified checks;

J.   Records of wire transfers;

K.   Bonds and securities purchased through your bank;

L.   Savings bond transactions;

M.   Letters of credit;

N.   All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.   All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.     Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.     For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment

records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.      Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.      Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.      Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.      Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

EXHIBIT A-11

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs hereby request that Union Bank, N.A. ("you" or "your") produce the documents described below, in accordance with the definitions and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.      "Litigation" means the above-captioned action pending in the United States District Court for the Central District of California at case number 14-cv-03053.

2.      "You" or "Your" means Union Bank, N.A., its agents, employees, representatives, experts, investigators, attorneys, or anyone acting on behalf of Union Bank, N.A.

3.      "Corporate Counterclaim Defendants," refers to Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons, Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC, Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.      "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi, Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.    "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.    "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.    The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.    The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.    The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.    The terms "include" or "including" shall be construed as "including without limitation."

11.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.    The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.    Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

## INSTRUCTIONS

1.    This subpoena is directed to all information currently in your possession, custody, or control.

2.      If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.      In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.      In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.      In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.      Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.      A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.      A brief description of any Document withheld, including:

     i.     The date of the Document;

     ii.    The number of pages, attachments, and appendices;

     iii.   The names of its author or preparer and an identification by employment and title of each such person;

     iv.   The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

     v.    The present custodian; and

     vi.   The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following Union Bank, N.A. account:

     A.    2240419109

     B.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

     A.    Signature cards;

     B.    Bank statements;

     C.    Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.    Deposit slips;

E.    Checks deposited;

F.    Withdrawal slips;

G.    Checks issued for withdrawals;

H.    Form 1099s issued;

I.    Records of certified checks;

J.    Records of wire transfers;

K.    Bonds and securities purchased through your bank;

L.    Savings bond transactions;

M.    Letters of credit;

N.    All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.    All memoranda, notes, files, or records relating to meetings or conversations concerning the Omidis and/or any other Corporate Counterclaim Defendant.

3.    Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

4.    For any credit card account for which Julian, Michael, or Cindy Omidi is a signatory, produce all documents related to such accounts, including but not limited to applications, signature cards, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment

records disclosing the dates, amounts, and method of repayment, and checks used to make repayments.

5.      Produce all documents related to Julian, Michael, or Cindy Omidi's purchase of bank, cashier, teller, or travelers' checks or money orders, including but not limited to check registers, file copies of the checks of money orders, and records revealing the date and source of payment for each such check.

6.      Produce all documents related to any safe deposit box opened by Julian, Michael, or Cindy Omidi, including but not limited to applications, contracts, access records, and records of rental fees paid.

7.      Produce all documents related to any certificate of deposit or money market certificate obtained by Julian, Michael, or Cindy Omidi, including but not limited to applications, records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, correspondence, Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, and checks issued for interest payments.

8.      Produce all documents related to any U.S. Treasury note or bill purchased by Julian, Michael, or Cindy Omidi, including but not limited to the purchase and sale of such instruments, interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, and records of interest paid or accumulated revealing the dates and amount of interest paid and accumulated.

# EXHIBIT A-12

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure,
Defendants/Counterclaim Plaintiffs hereby request that Wells Fargo Bank N.A. ("you"
or "your") produce the documents described below, in accordance with the definitions
and instructions contained herein, within thirty (30) days.

### DEFINITIONS

1.    "Litigation" means the above-captioned action pending in the United
States District Court for the Central District of California at case number 14-cv-03053.

2.    "You" or "Your" means Wells Fargo Bank, N.A., its agents, employees,
representatives, experts, investigators, attorneys, or anyone acting on behalf of Wells
Fargo Bank, N.A.

3.    "Corporate Counterclaim Defendants," refers to Almont Ambulatory
Surgery Center, LLC, Bakersfield Surgery Institute, LLC, Beverly Hills Surgery
Center, LLC, Modern Institute of Plastic Surgery & Antiaging, Inc., New Life Surgery
Center, LLC,  d/b/a Beverly Hills Surgery Center, LLC, Orange Grove Surgery Center,
LLC, San Diego Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive
Surgery Specialists of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC,
West Hills Surgery Center, LLC, Almont Ambulatory Surgery Center, A Medical
Corporation, Bakersfield Surgery Institute, Inc., CIRO Surgery Center, LLC, East Bay
Ambulatory Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists
of West Hills, Inc., Valley Surgical Center, LLC, Palmdale Ambulatory Surgery
Center, A Medical Corporation, Independent Medical Services, Inc., Top Surgeons,
Inc., Top Surgeons, LLC, Top Surgeons, LLC (Nevada), 1 800 Get Thin, LLC,
Surgery Center Management, DeVida USA, LLC, and Property Care Insurance, Inc.

4.    "The Omidis" refers to Kambiz Benjamin Omidi (A/K/A Julian Omidi,
Combiz Omidi, Kambiz Omidi, Combiz Julian Omidi, Kambiz Beniamia Omidi,

Julian C. Omidi), Michael Omidi, M.D., Cindy Omidi, and any of their attorneys, agents, assigns, or any persons or entities acting on their behalf.

5.     "Counterclaim Defendant," refers to any Counterclaim Defendant named in the Litigation, including the Corporate Counterclaim Defendants and the Omidis, as those terms are defined in these Requests, Does 1–200, and their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting on their behalf, including any billing services or other persons or entities that Counterclaim Defendants may have used to create and/or submit bills for services to any managed care company or health insurance company.

6.     "United" refers to United Healthcare Services, Inc., United Healthcare Insurance Co., and OptumInsight, Inc. or any of their direct and indirect parents, affiliates, subsidiaries, predecessors, successors, divisions, and their present and former officers, directors, employees, attorneys, agents, representatives, assigns, and all persons acting or purporting to act on their behalf.

7.     The term "document" is defined as broadly as permitted by the Federal Rules of Civil Procedure and includes, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither. The term includes, but is not limited to, all communications, correspondence, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, voice recordings, computer print-outs, computer files, email, computer disks, tapes and records of all types, and any other writing, data form,

compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form. The term shall include copies or drafts of documents which are not identical duplicates of the originals.

8.     The terms "communicate" and "communication" means any transfer of information, including but not limited to, conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or any other media that may be used to exchange or transmit information.

9.     The terms "relating to" or "concerning" mean relating to, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, analyzing, or pertaining to in any way.

10.     The terms "include" or "including" shall be construed as "including without limitation."

11.     The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each."

12.     The words "and" and "or" shall be construed either conjunctively or disjunctively (meaning "and/or") so that the document requests are as inclusive as possible.

13.     The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

14.     Unless otherwise specifically stated, the time period applicable to each Request is January 1, 2008 to the present.

### INSTRUCTIONS

1.     This subpoena is directed to all information currently in your possession, custody, or control.

2.    If any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

3.    In the event that electronically stored information is produced in response to this subpoena, any such information shall be produced in accordance with the Order Regarding Electronically Stored Information (ESI) Discovery Plan entered by Magistrate Judge Victor Kenton on November 21, 2014 (ECF 84) and attached as Exhibit B with this subpoena, except as such protocol is modified by agreement or by Court order.

4.    In the event that confidential documents are produced in response to this subpoena, the confidentiality of such a production is governed by the Stipulated Protective Order entered by Magistrate Judge Victor Kenton on January 28, 2015 (ECF 137) and attached as Exhibit C with this subpoena.

5.    In producing documents, all documents that are physically attached to each other in files or other means of storage must be left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated. Documents are to be produced in the order in which they are maintained.

6.    Pursuant to Federal Rule of Civil Procedure 45(e)(2), where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting privilege shall provide the following information in a written privilege log:

A.    A statement of the basis for the ground of privilege, work product or other ground of nondisclosure;

B.    A brief description of any Document withheld, including:

i.    The date of the Document;

ii.   The number of pages, attachments, and appendices;

iii.  The names of its author or preparer and an identification by employment and title of each such person;

iv.   The name of each person who was sent, shown, or carbon or blind copied the Document, or has access to or custody of the Document, together with an identification of each such person;

v.    The present custodian; and

vi.   The subject matter of the Document, and in the case of any Document referring or relating to a meeting or conversation, identification of such meeting, or conversation, in sufficient detail to enable Defendants to assess the claim.

7.    This subpoena shall be deemed to be continuing and you are required to supplement your production in the event that additional responsive documents are discovered.

## DOCUMENTS TO BE PRODUCED

1.    For the years January 1, 2008 to the present, produce all records pertaining to the following Wells Fargo accounts:

A.    835360002

B.    1101588026

C.    1359171244

D.    1659375149

E.    2016027688

F.    2681391476

G.    3330000021

H.    4320121400

I.    5077204526

J.    5307619717

K.    6301220890

L.    6605851929

M.    7169072811

N.    7682756726

O.    7684043024

P.    7684043305

Q.    7684043362

R.    7684046613

S.    7810934989

T.    8353459622

U.    8353459723

V.    8353459731

W.    8353459822

X.    8353459889

Y.    8353460044

Z.    8353460085

AA.    8353460135

BB.    8353460226

CC.    8353460317

DD.    8353460408

EE.    8353480226

FF.    8813335471

GG.    8813335844

HH.    8813335935

II.    8813336008

JJ.    9991051484

KK.    All other accounts where Julian, Michael, or Cindy Omidi are identified as an account signatory.

2.    These records should include, but are not limited to:

A.    Signature cards;

B.    Bank statements;

C.    Ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos;

D.    Deposit slips;

E.    Checks deposited;

F.    Withdrawal slips;

G.    Checks issued for withdrawals;

H.    Form 1099s issued;

I.    Records of certified checks;

J.    Records of wire transfers;

K.    Bonds and securities purchased through your bank;

L.    Savings bond transactions;

M.    Letters of credit;

N.    All correspondence with any Counterclaim Defendant in relation to any above-listed account; and

O.    All memoranda, notes, files, or records relating to meetings or conversations concerning The Omidis and/or any other Corporate Counterclaim Defendant.

3.    Produce all documents related to any application for issuance of a loan or line of credit to any Counterclaim Defendant, including but not limited to applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans,