1  Robert J. Rice, Esq. (SBN 131255)
2  LAW OFFICES OF ROBERT J. RICE
       rjriceesq5@gmail.com
3  6380 Wilshire Boulevard, Suite 820
4  Los Angeles, California 90048
   Telephone (323) 297-3700
5
6  *Attorney for Respondent*,
   JULIAN OMIDI
7
8
9              **UNITED STATES DISTRICT COURT**
10             **CENTRAL DISTRICT OF CALIFORNIA**
11

12  ALMONT AMBULATORY              | CASE NO.: **2:14-CV-03053-MWF-AFM**
13  SURGERY CENTER LLC. et. al.,   | **and related cases 14-CV-02139-MWF**
14                                 | **and 14-CV-01277-MWF**
            Plaintiff,
15
                                   | **JULIAN OMIDI'S MOTION AND**
16                                 | **NOTICE OF MOTION TO RECUSE**
                                   | **JUDGE MICHAEL FITZGERALD;**
17       vs.                       | **MEMORANDUM OF POINTS AND**
                                   | **AUTHORITIES IN SUPPORT**
18                                 | **THEREOF; DECLARATION OF**
19  UnitedHealth Group Inc. et. al.,| **ROBERT J. RICE IN SUPPORT**
                                   | **THEREOF**
20
21       Defendants.               | Date:        TBD
                                   | Time:        TBD
22                                 | Courtroom:   1600
23
                                   | The Honorable Michael W. Fitzgerald
24
25  ///
26  ///
27  ///
28

-1-
**NOTICE OF MOTION AND MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

Declaration of Robert J. Rice ............................................................... 2

I. INTRODUCTION ..................................... 9

II. ARGUMENTS ........................................... 9

**A.** Newly Discovered Evidence Regarding Undisclosed Conflicts of Interest With First Assistant Patrick Fitzgerald Warrants Recusal of Judge Michael Fitzgerald.................................................................................. 9

**B.** The Failure To Disclose Is An Independent Basis For Recusal ............... 12

**C.** The "Appearance of Bias" Requires Recusal ........................................... 14

**D.** Case Law Supports Refusal ...................................................... 17

**E.** The Judge Had An Obligation to Disclose ................................. 18

**F.** There is No Ambiguity in The Standard For Disqualification ................. 19

**G.** Judge Fitzgerald Must Disclose All Information Relating to Conflict ...... 22

**H.** This Motion Is Timely ............................................................... 22

III. CONCLUSION ......................................... 24

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

Aetna Life Ins. Co. v. Lavoie,
    475 U.S. 813 (1986) ................................................................... 15

Am. Textile Mfrs. Inst., Inc v. The Ltd., Inc.,
    190 F.3d 729 (6th Cir. 1999) ....................................................... 12

Barksdale v. Emerick,
    853 F.2d 1359 (6th Cir. 1988) ..................................................... 12

Blixseth v. Yellowstone Mr. Club, LLC,
    742 F.3d 1215 (9th Cir. 2014) ..................................................... 10

Clemens v. U.S. Dist. Court,
    428 F.3d 1175 (9th Cir. 2005) ..................................................... 10

Chase Manhattan Bank v. Affiliated FM Ins. Co.,
    343 F.3d 120 (2d Cir. 2003) ....................................................... 15

Cheeves v. S. Clays,
    797 F. Supp. 1570 (M.D. Ga. 1992) ............................................ 12

Commonwealth Coatings Corp. v. Continental Cas. Co.,
    393 U.S. 145 (1968) ............................................................ 13, 14

County of Cook v. Midcon Corp.,
    574 F. Supp. 902 (M.D. Ill. 1983) ............................................. 2, 9

In re Muller,
    851 F.2d 916 (7th Cir. 1988) ....................................................... 22

In re Romero,
    668 P.2d 296 (N.M. 1983) ........................................................... 16

In re Complaint of Judicial Misconduct,
    756 F.3d 1143 (9th Cir. 2014) ............................................... 16, 17

In re W.T. Grant Co.,
    85 B.R. 243 (Bankr. S.D.N.Y. 1988) ......................................... 2, 9

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1   Kulas v. Flores,
2       255 F.3d 780 (9th Cir. 2001) ........................................................ 10
3   Liteky v. U.S.,
4       510 U.S. 540 (1994) ............................................................. 13, 19
5   Liljeberg v. Health Serv. Acquisition Corp.,
6       486 U.S. 847 (1988) ......................................................... 15, 20, 21
7   Marshall v. Jerrico, Inc.,
8       466 U.S. 238 (2980) ................................................................... 24
9   Mills v. United States,
10      713 F.2d 1249 (1983) ................................................................. 20
11  Moran v. Clarke,
12      296 F.3d 638 (8th Cir. 2002) .................................................... 14
13  Ortega Melendres v. Arapaio,
14      No. CV-07-2513-PHX-MHM, 2009 WL 2132693
15      (D.Ariz. July 15, 2009)......................................................... 17, 18
16  Pepsico, Inc. v. McMillen,
17      764 F.2d 458 (7th Cir. 1985) .................................................... 16
18  Potashnick v. Port City Constr. Co.,
19      609 F.2d 1101 (5th Cir. 1980)........................................... 10, 11, 12
20  Porter v. Singletary,
21      49 F.3d 1483 (11th Cir. 1995)..................................................... 12, 22
22  Salmeron v. United States,
23      742 F.2d 1357 (9th Cir. 1983) .................................................. 22
24  Scott v. United States,
25      559 A2d 745 (D.C. 1989) ......................................................... 24
26  Tumey v. Ohio,
27      273 U.S. 510 (1927) ............................................................. 14, 20
28  United States v. Bosch,
        951 F.2d 1546 (9th Cir. 1991)................................................... 12

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

United States v. Brown,

     539 F.2d 467 (1976) ...................................................................... 20

United States v. Cooper,

     283 F. Supp. 2d 1215 (D. Kan. 2003) ....................................... 12

United States v. Kelly,

     888 F.2d 732 (11th Cir. 1989).................................................... 16

Ward v. City of Monroeville,

     409 U.S. 57 (1972) ......................................................................... 24

York v. United States,

     785 v. A. 2d 651 (D.C. 2001) ........................................................ 24

**STATUTES AND RULES**                                       **PAGE(S)**

Justice Department.

     CFR § 0.137 ........................................................................................ 6

5 U.S.C.

     5 U.S.C. § 3345(a) ........................................................................... 6

28 U.S.C.

     28 U.S.C. § 455(a) ............1, 2, 7, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 24

     28 U.S.C. § 144 ................................................... 1, 2, 7, 10, 17, 19

**SECONDARY SOURCES**                                   **PAGE(S)**

State Bar of California Standing Committee on Professional Responsibility and

Conduct Formal Opinion,

     No. 1970-22 (1970) ........................................................................ 2


Disqualification When Relative Is An Assistant United States Attorney,

     U.S. Advisory Opinion 38................................5, 6, 7, 9, 10, 14, 18

1

Guide on Application of Federal Vacancies Reform Act of 1998 .............................. 6

2

3

Judicial Conduct and Ethics,

4        Shaman, J.M. Lubet, S., Alfini, J.J. Michie Law Pub, Charlottesville, VA p.

5    97 (1995).................................................................................................. 12, 17, 19

6

7

Judge Disqualification Under Canon 3 of the Code of Judicial Conduct,

8        Leslie W. Abramson, 10 (2d Ed. 1992) .................................................... 18, 19

9

10

Code of Judicial Conduct of the American Bar Association,

11        28 U.S.C. § 455 ............................................................................................ 19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  **JULIAN OMIDI'S MOTION AND NOTICE OF MOTIONTO RECUSE**
2  **JUDGE MICHAEL FITZGERALD**
3  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

4        **PLEASE TAKE NOTICE** that on a date and time to be set by the Honorable

5  Court assigned to hear this matter, to be designated by the recusal statutes and local

6  rules on adjudicating recusal, in front of a Judge to be randomly assigned, pursuant

7  to General Order No. 14-03, § II.E, attorney for Julian Omidi will, and hereby moves

8  to recuse the Judge Michael Fitzgerald pursuant to 28 U.S.C. sections 144 and 455.

9        This motion is based upon this notice of motion and motion, the attached

10  memorandum of points and authorities, the attached declaration of Robert Rice, all

11  pleadings and files in this matter, and upon such other and further oral or

12  documentary evidence as may be presented to the Court at or prior to the hearing on

13  this motion.

14

15  Dated:  January 20, 2016          Respectfully submitted,

16

17

18                          /s/ Robert J. Rice

19                          Robert J. Rice

20                          *Attorney for Respondent,*
                        JULIAN OMIDI

21

22

23

24

25

26

27

28

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

## DECLARATION OF ROBERT J. RICE

I, ROBERT J. RICE, DECLARE AS FOLLOWS:

1.      I am representing Defendant Julian Omidi in this matter.  I am relatively new to this case.  I became the attorney of record for defendant on November 23, 2015.  I submit this declaration for recusal of Judge Michael Fitzgerald pursuant to 28 28 U.S.C. § 455 and 28 U.S.C. §144.

2.      *The State Bar of California Standing Committee on Professional Responsibility and Conduct Formal Opinion* No. 1970-22 (1970), states:  "[A]s a matter of law, the courts have held that it is incumbent upon the attorney to inform … the court of a potential conflicting interest when he becomes aware of it." As such, I am obligated to bring to the Court new information I have learned which indicates the Court should recuse itself from further proceedings. I make this request in good faith.  I am ethically and legally obligated to request the Court to recuse itself due to the conflicts of interest which I just discovered in the last 4 days in this case before it proceeds further with any matter.  As an officer of the court, I am obligated to request recusal when there is a conflict of interest.

3.      In the case 2:14-cv-03053-MWF-AFM, on 1-15-15 Judge Fitzgerald granted the USAO's motion to intervene, Dkt 123.1 Thus, the USAO is a party in this case. The related cases under Judge Fitzgerald are 14-CV-02139-MWF and 14-CV-01277-MWF. From 1-15-15 forward, both Judge Fitzgerald and the USAO were obligated to provide notice if any potential conflicts of interest arose or it there might be an appearance of impropriety.  No such record was ever provided.

4.      Furthermore, in several meetings with the United States Attorney's Office, the USAO through AUSA Evan Davis has confirmed the issues in the United Healthcare complaint are essentially the same as its purported healthcare criminal investigation

---

[1] "An intervenor is a party to a suit and is bound by a judgment to the same extent as original plaintiffs and defendants." *In re W.T. Grant Co.*, 85 B.R. 243, 247 (Bankr. S.D.N.Y. 1988) (citing *County of Cook v. Midcon Corp.*, 574 F. Supp. 902, 913-14 (M.D. Ill. 1983), aff'd, 773 F.2d 892 (7th Cir. 1985).

-2-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  of the Omidis and companies.

2  5.      In fact, according to the FDA and government investigators, the investigation

3  into the Omidis and 1 800 Get Thin started improperly at the behest of insurance

4  companies such as United Healthcare, and had continued at the behest of the

5  insurance companies.  A federal edict was issued, without evidence, charges or a

6  trial, "to shut them [1 800 Get Thin and Omidis] down" using the " 'angle' "

7  (emphasis in original") "the advertising campaign is misleading":

8

| From: | John Kades |
| To: | Craig Harvey; Edward Winter |
| Sent: | 12/22/2011 4:10:04 PM |
| Subject: | RE: FDA and LAP Band |

My contact has been with Special Agent Keith Hadley, U.S. Food and Drug Administration, Office of Criminal Investigations, 201 Avenida Fabricante, San Clemente, CA  92672, (949) 940-4229.

According to him, the FDA has been receiving multiple complaints about 1800GETTHIN.  Most of the complaints have been from insurance companies, but some from patients.  The issue seems to be inappropriate billing, along the lines of being overbilled for something or the other.  The FDA's "angle" is that the advertising campaign is misleading, there is some misrepresentation of the device, and that the Lap Band is not being used in accordance with the manufacturers guidelines.  Since the Lap Band device is FDA approved, they have the authority to investigate any misuse of the medical item.  The company is run by two brothers (their name escapes me) and they would very much like to shut them down.

I offered the FDA our assistance.  I invited them to come on our scene visit, but they were not interested.  I am keeping him up to date on the Rojeski case and I provided the names and case numbers of the other Lap Band related deaths we have had in the last 12 months.

-Kades

19  Exhibit "A" - Discovery obtained on October 7, 2015 (Email from John Kades,

20  Captain LA Coroner's Office, to Craig Harvey, Chief Coroner Investigator, and Ed

21  Winter, Assistant Chief Coroner regarding communications with the FDA).  The

22  government's primary law enforcement purpose was *not* to determine whether there

23  was violation of a crime, but instead to "shut them down."

24  6.      Moreover, at court hearings in this United Healthcare case, a representative of

25  the United States Attorney's Office has almost always been present in Judge

26  Fitzgerald's courtroom, and, at a recent hearing, six (6) members of the USAO team

27  were present in the courtroom to include AUSAs Evan Davis and Kristen Williams.

28

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

7.      It has come to my attention that Judge Michael Fitzgerald has a conflict of interest requiring recusal because his twin brother with whom he co-owns a single family residence, Patrick Fitzgerald, is First Assistant United States Attorney of the Central District of California, http://www.justice.gov/usao-cdca/front-office, supervising the AUSAs in this United Healthcare case and the criminal investigation. Moreover, Patrick Fitzgerald will also act as Acting United States Attorney in the event the United States Attorney is unavailable.

8.      Michael and Patrick Fitzgerald are not only twin brothers, but also own a single family residence as joint tenants located at ████████████, Los Angeles, California 90027 based on the Exhibits "B" to "E" indicated below. The record indicates that they are also business partners and have borrowed money together creating not only a familial relationship, but also a business and financial relationship. The record shows they are jointly liable on business and personal loans and owe to one another the fiduciary duties which come with their business partnership relationship:

a)      On January 14, 1994 Patrick Raymond Fitzgerald purchased the real property located at ████████████, Los Angeles California 90027, from Charles and Monique Breen for $349,909 (Documentary transfer tax $384.90 / 1.10 per thousand = $349,909) (Exhibit "B", Grant Deed recorded 6-14-94 as document number 1994 0095114).

b)      On August 22, 2002, Patrick Fitzgerald granted the ████████████ property to Patrick Raymond Fitzgerald, a single man, and Michael W. Fitzgerald, a single man, as joint tenants.   (Exhibit "C", Grant Deed recorded 8-22-02 as document number 2002 1973568).  This transaction made Patrick and Michael business partners in addition to the fact they are twin brothers.

c)      On September 11, 2003, Michael and Patrick Fitzgerald refinanced the property with HSBC Mortgage Corporation by taking out a loan in the amount of $275,000.  (Exhibit "D", Deed of Trust recorded 9-11-03 as document

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  number 2013 2664482).  Both brothers were financially liable for the loan.

2  The relationship was one of business partners and joint tenants in the real

3  property, along with co-borrowers who were jointly and severally responsible

4  for the loan.  They were business partners with fiduciary duties toward one

5  another.

6       d)    On May 28, 2015, Patrick and Michael Fitzgerald once again borrowed

7  money together form Bank of America in the amount of $200,000 and secured

8  it with a Deed of Trust on the ▉▉▉▉▉▉ real property.  (Exhibit "E", Deed

9  of Trust recorded 5-28-15 as document number 2015 0618900)

10  9.    Judicial Conference of the United States Advisory Opinion[2] 38

11  "Disqualification When Relative Is an Assistant United States Attorney", states in

12  relevant part:

13          38-2. Acting as a supervisor. Recusal is also necessary if
14  the relative has supervisory responsibility over the
        attorney handling a case before the judge, even if the
15  relative is not personally involved and has no knowledge
        of the case. Such a circumstance falls within Canon
16  3C(1)'s "catch-all" provision requiring disqualification in
        a proceeding "in which the judge's impartiality might
17  reasonably be questioned." Disqualification under this
        catch-all provision is subject to remittal under Canon 3D.
18  38-3. Acting United States Attorney. If the relative serves
        as either the United States Attorney or Acting United
19  States Attorney, the judge should recuse in all cases in
        which the office appears.

20  10.    Here, recusal is required under Judicial Conference of the United States

21  Opinion 38-2: A judge whose relative serves as an assistant U.S. attorney with

22  supervisory responsibility over an attorney handling a case is disqualified even if the

23  relative is not personally involved and has no knowledge of the case. As Patrick

24  Fitzgerald, the First Assistant United States Attorney, supervises the AUSAs in the

25  Central District of California underneath him to include the AUSAs involved in this

26  United Healthcare case and the criminal investigation, and Mr. Fitzgerald is Judge

27  _____

28  [2] http://www.uscourts.gov/rules-policies/judiciary-policies/code-conduct/published-advisory-opinions

-5-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  Fitzgerald's twin brother with whom he co-owns a single family residence, recusal of

2  Judge Fitzgerald is required.

3  11.    Furthermore, recusal is required under Judicial Conference of the United States

4  Opinion 38-3 because in the event of absence, disability, or vacancy of the United

5  States Attorney, the First Assistant United States Attorney, here Patrick Fitzgerald,

6  "shall perform the functions and duties of and act as such head". *See* Justice

7  Department CFR §0.137 "Designating officials to perform the functions and duties of

8  certain offices in case of absence, disability or vacancy", subsection (c); *see also*,

9  DOJ Guide on Application of Federal Vacancies Reform Act of 1998;[3] DOJ

10  Vacancies Act;[4] and 5 U.S.C.  §3345 ((a) "If an officer of an Executive agency. . . is

11  otherwise unable to perform the functions and duties of the office— (1) the first

12  assistant to the office of such officer shall perform the functions and duties of the

13  office temporarily in an acting capacity".)

14  12.    Review of the record shows that at no time did Judge Fitzgerald or the Office

15  of the United States Attorney disclose that Patrick Fitzgerald had been promoted to

16  First Assistant United States Attorney, thus creating a conflict. This is especially

17  relevant as both the Office of the United States Attorney and Judge Fitzgerald was

18  fully cognizant of the possibility of conflict of Judge Fitzgerald with AUSA Patrick

19  Fitzgerald.  *See* Exhibit "F", 7-6-12 USAO Memorandum, where Judge Fitzgerald

20  and the Office of the United States Attorney demonstrate awareness of the potential

21  conflict posed by AUSA Patrick Fitzgerald even before he became First Assistant

22  United States Attorney.

23  13.    Separately, Counsel for Julian Omidi will move for the disqualification of the

24  AUSAs for violations of 26 U.S.C. section 6103 in this United Healthcare case. It is

25  not possible for Judge Fitzgerald to rule on this issue or any other issue because of

26  this conflict of interest which permeates the entire case and was not previously

27  _____

28  [3] http://www.justice.gov/sites/default/files/olc/opinions/1999/03/31/op-olc-v023-p0060_0.pdf
    [4] http://www.justice.gov/sites/default/files/olc/opinions/1998/03/31/op-olc-v022-p0044_0.pdf

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  disclosed. Indeed, the serious violations of conduct by the United States Attorney's

2  Office are voluminous, and there have been multiple complaints to the Department of

3  Justice from multiple different attorneys on a whole host of documented violations.

4  *See in camera* submission, Exhibit "G". The United States Attorney's Office's

5  interest and, that of Patrick Fitzgerald, is to avoid any and all citations for the

6  violations by a court. The appearance of impropriety for Patrick Fitzgerald's twin

7  brother, Judge Fitzgerald, to rule on any claim of government impropriety, is glaring.

8  14.    Title 28, United States Code, Section 455(a) provides, in part, as follows:

9
10
> Any justice, judge, or magistrate judge of the United
> States shall disqualify himself in a proceeding in which
> his impartiality might reasonably be questioned.

11  Judicial Conference of the United States Opinion 38-2 specifically incorporated the

12  provision from 455(a) "in which the judge's impartiality might reasonably be

13  questioned." Under the standards set forth in 28 USC section 455, an average person,

14  knowing the above facts that exist, would reasonably question the impartiality of the

15  Judge, not only because of the lack of disclosure of the potential conflict created by

16  the promotion of Patrick Fitzgerald to First Assistant United States Attorney, but also

17  for the violation of Judicial Conference of the United States Opinions 38-2 and 38-3.

18  The lack of disclosure falls with 28 USC section 144 as well.

19  15.    I respectfully ask the Honorable Judge Michael Fitzgerald to recuse himself in

20  this and associated cases. The undisclosed conflict of interest taints the entire

21  proceeding.  A party may waive a conflict, but cannot do so without being informed

22  of it.  In such a situation, bias may be presumed and a judge's impartiality would

23  reasonably be questioned because of the above facts, the conflicts of interest, and also

24  the non-disclosure of the conflicts.

25  16.    Mr. Omidi has not and cannot receive a fair hearing before Judge Fitzgerald

26  because of these matters.  The request is timely and made with due diligence

27  following discovery of the conflicts because they were concealed from Mr. Omidi.

28  17.    I have brought this issue to Judge Fitzgerald's attention in good faith because I

-7-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1   am ethically and legally obligated to do so.  I do not want to this motion to adversely

2   affect my client because of my ethical and legal duties to disclose this issue to the

3   Court.

4         I declare under penalty of perjury that the foregoing is true and correct.

5   Executed on January 20, 2016 at Los Angeles, California.

6

7                                              /s/ Robert J. Rice

8                                              Robert J. Rice

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

I.     **INTRODUCTION**

This Memorandum supplements the Motion for Recusal of Judge Michael Fitzgerald.

II.    **ARGUMENTS**

A.     **Newly Discovered Evidence Regarding Undisclosed Conflicts Of Interest With First Assistant Patrick Fitzgerald Warrants Recusal Of Judge Michael Fitzgerald**

Recusal issue is predicated on the two facts: (1) the non-disclosure of the conflicts of interest with First Assistant Patrick Fitzgerald and (2) violations of Judicial Conference of the United States Opinions 38-2 and 38-3, which state:

> 38-2. Acting as a supervisor. Recusal is also necessary if the relative has supervisory responsibility over the attorney handling a case before the judge, even if the relative is not personally involved and has no knowledge of the case. Such a circumstance falls within Canon 3C(1)'s "catch-all" provision requiring disqualification in a proceeding "in which the judge's impartiality might reasonably be questioned." Disqualification under this catch-all provision is subject to remittal under Canon 3D.

> 38-3. Acting United States Attorney. If the relative serves as either the United States Attorney or Acting United States Attorney, the judge should recuse in all cases in which the office appears.

Here, recusal is required under Judicial Conference of the United States Opinion 38-2: A judge whose relative serves as an assistant U.S. attorney with supervisory responsibility over an attorney handling a case is disqualified even if the relative is not personally involved and has no knowledge of the case. Indeed, there is no dispute that the Office of the United States Attorney ("USAO") is a party to this litigation because they have intervened into the matter. *In re W.T. Grant Co.*, 85 B.R. 243, 247 (Bankr. S.D.N.Y. 1988) ("An intervenor is a party to a suit and is bound by a judgment to the same extent as original plaintiffs and defendants.") (citing *County of Cook v. Midcon Corp.*, 574 F. Supp. 902, 913-14 (M.D. Ill. 1983), aff'd, 773 F.2d 892 (7th Cir. 1985). Neither Judge Fitzgerald nor the USAO disclosed the conflict of interest issue with First Assistant Patrick Fitzgerald though both were aware of the

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1   possible issue since July 6, 2012. *See* Declaration of Robert Rice ¶ 12, and Exhibit
2   "F".

3        In addition to the violation of Judicial Conference of the United States
4   Opinions 38-2 and 38-3, the conflict of interest and the failure to disclose are each an
5   independent basis for recusal, since each creates an appearance of impartiality.
6   *Blixseth v. Yellowstone Mt. Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014)
7   ("[a]ctual bias isn't required; the appearance of impropriety can be a sufficient basis
8   for judicial recusal."). The lack of disclosure falls with 28 U.S.C. section 144 as well.

9        The question of whether there is an "appearance of impropriety" turns on
10  whether Judge Fitzgerald's "impartiality *might* reasonably be questioned", which has
11  been interpreted to mean questioned by a "reasonable person," *Kulas v. Flores*, 255
12  F.3d 780, 787 (9th Cir. 2001) (emphasis added), and, in particular, by a "well-
13  informed, thoughtful" one, as opposed to a "hypersensitive or unduly suspicious"
14  one, *Clemens v. U.S. Dist. Court*, 428 F.3d 1175, 1178 (9th Cir. 2005).  Accordingly,
15  the conflict of interest and the failure to disclose are each an independent basis for
16  recusal.

17       Moreover, defense counsel has just learned of an additional undisclosed
18  partnership interest between Judge Fitzgerald and Patrick Fitzgerald in which they
19  co-own a single family residence and on which they have obtained loans. See
20  Declaration of Robert Rice ¶ 8, and Exhibits "B" to "E". The evidence presented is
21  sufficient to prove an undisclosed partnership interest between Judge Fitzgerald and
22  Patrick Fitzgerald sufficient to warrant recusal. A business partnership between a
23  supervising AUSA and the Judge is of paramount importance to assess impartiality
24  by any reasonable observer.

25       *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir. 1980) is directly
26  on point. There, the Fifth Circuit held it was reversible error, and hence clear error,
27  for a judge not to recuse himself under section 455(a), where the judge was involved
28  in business dealings with an attorney appearing before him. Specifically, prior to his

-10-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1    appointment, the judge and the attorney would occasionally invest with clients in real

2    estate to be held for future development. 609 F.2d at 1106-07. Most of these

3    purchases occurred several years prior to the judge's appointment. *Id.* at 1107.

4    Professional managers or developers always managed the properties with no active

5    management by the judge or the attorney. *Ibid.*

6    During the period of time the *Potashnick* case was before the judge, the judge

7    and the attorney did not make any additional joint investments. *Ibid.* Moreover, while

8    the case was pending, the attorney represented the real estate entities in two lawsuits:

9    the first one did not name the judge; and the second one did not originally name the

10   judge but was amended later to name the judge. *Ibid.* The attorney temporarily

11   stepped in to represent the judge pending insurance to pick up the defense. *Ibid.*

12   In finding an abuse of discretion in refusing the recusal request, the Fifth

13   Circuit held that it was irrelevant that the interest was not "connected." In fact, the

14   Fifth Circuit condemned the district court judge's reasoning " 'it is indeed difficult to

15   imagine that [the Judge] would be impartial (sic) because of any interest he shares

16   with [the party's attorney] or others in investments ***unconnected*** with this litigation'

17   " was clearly *erroneous*. *Id.* at 1110 (quoting the district court's opinion emphasis

18   added). As the *Potashnick* court reasoned,

19   
20   
21   
22   
23   
24   

> Any question of a judge's impartiality threatens the purity of the judicial process and its institutions. Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street. Use of the word "might" in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.

25   *Id.* at 1111 (citing Note, Disqualification of Judges and Justices in the Federal

26   Courts, 86 Harv.L.Rev. 736, 745 (1973)). As such, "[a] reasonable person with

27   knowledge of the business investments of" Judge Fitzgerald and his brother, as a

28   supervisor of the USAO "might very well question the judge's impartiality in a trial

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1 involving" the USAO or a matter and controversy that is of the utmost importance to

2 the USAO. *Ibid*.

3 **B.      The Failure To Disclose Is An Independent Basis For Recusal**

4          Moreover, the issue is not just the interfamily property interests but also the

5 undisputed failure to give full disclosure of these interests, and that his brother is the

6 supervising attorney at the USAO, which creates the appearance of impartiality,

7 mandating recusal. Whereas in *Potashnick*, there was full disclosure, in this case,

8 disclosure was not made.

9          In this regard, it is well settled "a judge should disclose on the record

10 information which the judge believes the parties or their lawyers might consider

11 relevant to the question of disqualification." *Porter v. Singletary*, 49 F.3d 1483, 1489

12 (11th Cir. 1995); *United States v. Bosch*, 951 F.2d 1546, 1555 n.6 (9th Cir. 1991)

13 (noting that section 455(a) "has a de facto disclosure requirement."); *American*

14 *Textile Mfrs. Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999)

15 (holding that "judges have an ethical duty to 'disclose on the record information

16 which the judge believes the parties or their lawyers might consider relevant to the

17 question of disqualification.'" (quoting *Porter*, 49 F.3d at 1489)); *United States v.*

18 *Cooper*, 283 F. Supp. 2d 1215, 1223 (D. Kan. 2003) (same); *Cheeves v. S. Clays*, 797

19 F. Supp. 1570, 1582 (M.D. Ga. 1992) ("whenever it appears that disqualification may

20 be required pursuant to § 455(a), the judge must either withdraw from the case or

21 make 'a full disclosure on the record' so that the parties may consider a waiver.")

22 (quoting *Barksdale v. Emerick*, 853 F.2d 1359 (6th Cir. 1988).

23          Indeed, "litigants (and, of course, their attorneys) should assume the

24 impartiality of the presiding judge, rather than pore through the judge's private affairs

25 and financial matters." *Am. Textile Mfrs.*, 190 F.3d at 742; *see also* Shaman, J.M.,

26 Lubet, S., Alfini, J.J., Judicial Conduct and Ethics, at p. 97 Michie Law Pub.,

27 Charlottesville, VA (2 ed. 1995) ("It is not the duty of the parties to search out

28 disqualifying facts about the judge ... it is the judge's obligation to disclose all

-12-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  possibly disqualifying facts.").

2       However, in the case at bar, neither Judge Fitzgerald nor Patrick Fitzgerald

3  disclosed their shared financial interest. They further did not disclose Patrick

4  Fitzgerald was the supervising attorney at the USAO. The failure to disclose is of

5  utmost relevance, since the disclosure requirement is not merely aspirational—it is an

6  ethical imperative. *Liteky v. United States*, 510 U.S. 540, 548 (1994) (stating that

7  most recent revision of section 455 "placed the obligation to identify the existence of

8  those grounds upon the judge himself, rather than requiring recusal only in response

9  to a party affidavit").

10      Therefore, the failure to disclose creates an appearance of impartiality, even if

11 Judge Fitzgerald is ultimately fair. *Commonwealth Coatings Corp. v. Continental

12 Cas. Co.*, 393 U.S. 145 (1968), is directly on point. There, the arbitrator failed to

13 disclose that he had engaged in business relations with one of the parties to the

14 arbitration. *Id*. at 146. The party that lost the arbitration challenged the award,

15 asserting that the failure of the arbitrator to disclose his business relationship resulted

16 in "evident partiality" under 9 U.S.C. § 10, warranting vacatur of the award. (Counsel

17 submits that the "evident partiality" standard under 9 U.S.C. § 10 is similar if not

18 more stringent than the "appearance of impartiality" standard under 28 U.S.C. § 455

19 (a).)

20      In *Commonwealth Coatings*, the district court held that "the arbitrator . . . was

21 entirely fair and impartial," 393 U.S. at 151 n.*, and refused to vacate the award.

22 Without disturbing the finding that the arbitrator was not biased, *id*. at 147-50 & 151

23 n.*, the Supreme Court reversed and vacated the award. The Court held that an

24 arbitrator's nondisclosure of facts showing a potential conflict of interest creates

25 evident partiality warranting vacatur even when no actual bias is present. The

26 Supreme Court articulated a standard indicating what facts show evident partiality

27 when not disclosed by an arbitrator. The Court described facts that must be disclosed

28 as those that "might create an impression of possible bias," *id*. at 149, those that show

-13-

1  the "appearance of bias," *id.* at 150, and those that indicate that arbitrators "might

2  reasonably be thought biased against one litigant and favorable to another," *id.*

3  　　　In support of its analysis, the Supreme Court noted that its holding was *not just*

4  *limited to arbitrators but judges in general. Id.* at 148 ("We have no doubt that if a

5  litigant could show that a foreman of a jury or a judge in a court of justice had,

6  unknown to the litigant, any such relationship, the judgment would be subject to

7  challenge."). The Supreme Court even cited to *Tumey v. Ohio*, 273 U.S. 510 (1927), a

8  recusal motion, noting that:

9  　　　　Although in *Tumey* it appeared the amount of the judge's
10 　　　　compensation actually depended on whether he decided for
         one side or the other, that is too small a distinction to allow
11 　　　　this manifest violation of the strict morality and fairness
         Congress would have expected on the part of the arbitrator
12 　　　　and the other party in this case. Nor should it be at all
         relevant, as the Court of Appeals apparently thought it was
13 　　　　here, that "the payments received were a very small part of
         [the arbitrator's] income . . . ." For in *Tumey* the Court held
14 　　　　that a decision should be set aside where there is "the
         slightest pecuniary interest" on the part of the judge, and
15 　　　　specifically rejected the State's contention that the
         compensation involved there was "so small that it is not to
16 　　　　be regarded as likely to influence improperly a judicial
         officer in the discharge of his duty . . . ."

17 *Commonwealth Coatings*, 393 U.S. at 148. Accordingly, the failure to disclose

18 the interfamily business relationships (no matter how small) and also the fact that

19 Judge Fitzgerald's brother is the supervising attorney USAO creates an appearance of

20 impartiality warranting recusal, even if the Court is ultimately fair, and it would be

21 clear error not to recuse Judge Fitzgerald based on the non-disclosures alone.

22 　　**C.** 　　**The "Appearance Of Bias" Requires Recusal**

23 　　　A court should recuse itself where an "appearance" of bias exists – even in the

24 absence of actual bias –when viewed from the perspective of an "average person on

25 the street." *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir.2002) (en banc) (quoting *In*

26 *re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir.1996) (Section 455(a) sets

27 forth an objective standard for assessing a judge's duty to recuse; the question is "

28 'whether the judge's impartiality might reasonably be questioned by the average

-14-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  person on the street who knows all the relevant facts of a case.' "); *Liljeberg v.*

2  *Health Serv. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (even when a judge is

3  "pure in heart and incorruptible" he must "enter a recusal order when there is an

4  appearance of partiality."); *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343

5  F.3d 120, 127 (2d Cir. 2003) (potentially disqualifying circumstances must be viewed

6  from the perspective of a reasonable person aware of all the facts).

7      Whenever a judge may be tempted to favor one side over another, an

8  appearance of partiality arises. Here, the United States Attorney's Office has stated

9  the issues in its investigation are essentially the same as in this case, and the judge's

10  twin brother and business partner is the First Assistant United States Attorney

11  supervising the AUSA's in the United Healthcare case and in the government

12  investigation. Thus, any ruling Judge Fitzgerald might make in favor of Mr. Omidi

13  would be contrary to the interests of his twin brother, First Assistant Patrick

14  Fitzgerald, and such a ruling would cause Patrick Fitzgerald professional and

15  personal conflict because it is contrary to his advocacy, professional supervisory role,

16  and financial, professional, and reputational interests with the US Attorney's Office.

17  Indeed, United Healthcare Group claims it is a victim entitled to a portion of the

18  $100,000,000.00 the government seized and which the government paid a portion to

19  Stroz Friedberg. *See*, *Almont Ambulatory Surgery Center, LLC, et al, v. UnitedHealth*

20  *Group, Inc., et al.*, Case No 2:14-cv-03053 (C.D. Cal.) ECF No. 152, at pp. 16-17,

21  ¶58 (noting that PCI's bank account was "lawfully seized by the federal government

22  after it established 'probable cause to believe that [the assets] represent or are

23  traceable to a long-term fraud scheme run' by the Omidis, including a fraud

24  perpetrated against healthcare benefits plans," and PCI's bank "accounts held

25  millions that had originally been deposited from payments made by [United

26  Healthcare Group], including sums that were received by the Counterclaim

27  Defendants as a result of their wrongful behavior").

28      In the very same matter, the parties in the action before Judge Fitzgerald are

-15-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1    accusing the United States Attorney's Office, which includes its supervising First

2    Assistant United States Attorney Patrick Fitzgerald, of supervising and thereby

3    adopting and participating in serious and grievous misconduct which has been

4    brought to the attention of the United States Attorney's Office in multiple formal

5    complaints by multiple firms and lawyers. *See* Exhibit "G".  Such misconduct

6    includes the intent of the government to "shut them [the Omidis] down" at the behest

7    of the insurance companies from the very start of the investigation, with due process

8    not so much as an afterthought.

9        The government misconduct also includes the misuse of seized funds,

10   contempt of court, and the intentional destruction of invaluable attorney client

11   relationships. The parties in this case and related cases are complaining against the

12   AUSAs and their supervisors. *See* under seal exhibits of complaints to the Office of

13   the United States Attorney, Exhibit "G".  These extra-judicial circumstances in the

14   case at bar are exactly those that may create an "appearance of bias" where a judge

15   might favor one side over another – his twin brother who is the supervising First

16   Assistant United States Attorney and with whom he had business relationships. *Aetna*

17   *Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986) (holding that an appearance of

18   partiality exists when the circumstances "offer a possible temptation to the average ...

19   judge ... not to hold the balance nice, clear and true."); *Pepsico, Inc. v. McMillen*, 764

20   F.2d 458, 461 (7th Cir. 1985) (requiring recusal where "[a]n objective observer might

21   wonder whether Judge McMillen might not at some unconscious level favor the

22   firm"); *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989) (where judge faces

23   "personal dilemma" likely to create the appearance of partiality, recusal is

24   required). Here, the "personal dilemma" involves ruling against the judge's twin

25   brother and business partner.

26       "The conduct prescribed for judges and justices is more stringent than conduct

27   generally imposed on other public officials." *In re Romero*, 668 P.2d 296, 299, 100

28   N.M. 180, 183 (N.M., 1983). Further, the Ninth Circuit noted in *In re Complaint of*

-16-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  *Judicial Misconduct,* "an allegation that a judge presided in a case knowing that he

2  was subject to a conflict of interest may present a viable claim of judicial

3  misconduct." 756 F.3d 1143, 1144 (9th Cir. 2014). To a reasonable man on the street,

4  recusal in such a situation would be mandatory. To the reasonable observer, disregard

5  of disclosure principles are especially serious requiring recusal. As Shaman, *et al.*

6  wrote:

> [A] judge will be subject to discipline (as distinct from reversal on appeal) for incorrectly failing to disqualify himself only where the failure was willful. The test is an objective one, and therefore a willful failure to disqualify may be present even though a judge states on the record that he does not believe disqualification is necessary. This approach has the advantage of requiring judges to look to an external standard in addition to their subjective feelings to decide if disqualification is necessary. It thus takes into account that disqualification is required if there is an appearance of partiality to the reasonable observer, and it precludes a judge from avoiding recusal merely by avowing his or her impartiality.

15  *Judicial Conduct and Ethics,* 2 ed,, Shaman, J.M., Lubet, S., Alfini, J.J.;

16  Michie Law Pub., Charlottesville, VA (1995), p. 97.

17  **D.    Case Law Supports Recusal**

18  A similar situation, which is not as severe as the present case, occurred in

19  *Ortega Melendres v. Arpaio,* No. CV-07-2513-PHX-MHM, 2009 WL 2132693 (D.

20  Ariz. July 15, 2009) where the judge's twin sister was advocating a position against

21  the defendants, analogous to Patrick Fitzgerald advocating a position against the

22  Omidis in this matter. *Id.* at \*12  ("[T]he Court recognizes its somewhat unique

23  position, in that the Court's twin sister plays a prominent public role in advocating

24  policy positions that diametrically oppose those taken by Defendants."). The court in

25  *Ortega Melendres* disqualified itself because of the "objective standard of § 455(a)".

26  *Id.* at \*15.  The *Ortega Melendres* court concluded:

> The United States Court of Appeals for the Ninth Circuit has instructed that when a case is close, the balance should tip in favor of recusal. *United States v. Holland,* 519 F.3d 909, 911 (9th Cir.2008) (quoting *United States*

-17-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1

*v. Dandy*, 998 F.2d 1344, 1349 (6th Cir.1993)). No Court should tolerate even the slightest chance that its continued participation in a high profile lawsuit could taint the public's perception of the fairness of the outcome. Certainly, this Court is unwilling to take such a risk. Thus, because at the district court level all doubts should be resolved in favor of recusal when the issue is close, strictly on the sole issue remaining—whether the Court's impartiality might reasonably be questioned under Section 455(a)—the Court, in an abundance of caution, will recuse itself from this matter.

2

3

4

5

6

*Id*. at *15-16.

7

In the case at bar, Judge Fitzgerald's twin brother is diametrically opposed to

8

the position taken by the Omidis in the very same matters which are in front this

9

Court. Furthermore, the Judicial Conference of the United States Advisory Opinion

10

38 requires recusal in this scenario which was not present in *Ortega Melendres*.

11

Moreover, Judge Fitzgerald co-owns a single family residence with First Assistant

12

United States Attorney Patrick Fitzgerald and documents show that Judge Fitzgerald

13

is business partners with Patrick Fitzgerald. Were Judge Fitzgerald to rule against

14

Patrick Fitzgerald, his subordinates, or a position they maintain, there may be

15

significant interpersonal, family and financial conflicts to any reasonable observer. In

16

addition, Patrick Fitzgerald is much more than an advocate. He supervises the

17

attorneys who are adverse to the Omidis and are who appearing in front of Judge

18

Fitzgerald. Recusal is necessary.

19

### E.    The Judge Had And Obligation To Disclose

20

The language of the Judicial Code leaves no doubt that the recusal process is to

21

be self-executing, as the judge should not wait for a recusal motion to be filed. "It is

22

intended to be used by a judge at the start of each case as a checklist to assist in

23

deciding whether at that point he should disqualify himself from any participation in

24

the proceedings … [E]ven before appraising participation in the case under the

25

[Judicial Code], the judge should first consult his own emotions and conscience, and

26

pass an 'internal test of freedom' from disabling conflicts." Leslie W. Abramson,

27

Judicial Disqualification Under Canon 3 of the Code of Judicial Conduct 10 (2d ed.

28

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1992).

According to Shaman, *et al.*, and the case law cited to support his determination, "...it is the obligation of a judge to disclose all facts that might be grounds for disqualification." Judicial Conduct and Ethics, 2 ed., Shaman, J.M., Lubet, S., Alfini, J.J.; Michie Law Pub., Charlottesville, VA (1995), p. 146.

Further, Canon 3C of the Code of Judicial Conduct of the American Bar Association, which was codified with modifications as 28 U.S.C. § 455 and extensively reviewed by Abramson, states, in part, "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned...." Judicial Disqualification under Canon 3 of the Code of Judicial Conduct, 2 ed., Abramson, L.W., American Judicature Soc., Chicago, IL (1992), pp. 1-48.

Under Canon 3 of the Code of Judicial Conduct, Judge Fitzgerald had a duty to disclose. Judge Fitzgerald's non-disclosures appear to have infringed the principle, elaborated by Shaman, *et al.* and supported by case law that, "[i]t is not the duty of the parties to search out disqualifying facts about the judge ... it is the judge's obligation to disclose all possibly disqualifying facts." Judicial Conduct and Ethics, 2 ed,, Shaman, J.M., Lubet, S., Alfini, J.J.; Michie Law Pub., Charlottesville, VA (1995), p. 97. As Justice Scalia stated in *Liteky v. United States*, 510 U.S. 540 (1994):

> ...[T]wo paragraphs of the [most recent] revision [of § 455] brought into § 455 elements of general 'bias and prejudice' recusal that had previously been addressed only by § 144. Specifically, paragraph (b)(1) entirely duplicated the grounds of recusal set forth in § 144 ('bias or prejudice'), but (1) made them applicable to *all* justices, judges and magistrates (and not just district judges), and (2) placed the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit.

*Id*. at 548. To a reasonable observer, the non-disclosure is self-implicating violation of 28 U.S.C. § 455 requiring recusal.  It also implicates 28 U.S.C. § 144.

**F.   <u>There Is No Ambiguity In The Standard For Disqualification</u>**

It is submitted that the plain ordinary meaning of § 455(a) is that if a judge's

-19-

1  impartiality can reasonably be questioned he must recuse himself, and that no actual

2  partiality need be shown for § 455(a) to be operative. Further, the plain ordinary

3  meaning of the word "also" in § 455(b), and the language of § 455(e), also require

4  that § 455(a) be read as providing grounds for disqualification independent of §

5  455(b). Additionally, even if there were some ambiguity in the language, the

6  Congressional Committee Reports leave no doubt that the legislative intent was to

7  require recusal not only when there is actual impartiality but where a judge's

8  impartiality might reasonably be questioned. *See Liljeberg*, 510 U.S. 540.

9      Congressional Committee Reports constitute the most persuasive source of

10  legislative intent, beyond the words of a statute itself. *Mills v. United States*, 713 F.2d

11  1249, 1252 (1983). The correct analysis of § 455(a) and § 455(b) was also discussed

12  in *United States v. Brown* (1976) 539 F.2d 467:

13      The Supreme Court *in re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 945, said:

14      "A fair trial in a fair tribunal is a basic

15  requirement of due process. Fairness of course requires an absence of actual bias in

16  the trial of cases. But our system of law has always *endeavored to prevent even the*

17  *probability of unfairness*. Circumstances and relationships must be considered. This Court

18  has said, however, that 'Every procedure which would offer a possible temptation to

19  the average man as a judge, not to hold the balance nice, clear, and true between the

20  State and the accused, denies the latter due process of law.' *Tumey v. Ohio*, 273 U.S.

21  510, 532 [47 S.Ct. 437, 444, 71 L.Ed. 749]. [T]o perform its high function in the best

22  way "*justice must satisfy the appearance of justice*.' *Offutt v. United States* 348 U.S. 11

23  14 [75 S.Ct. 11, 13, 99 L.Ed. 11].'

24      *Id*. at 469 (emphasis added). The Court of Appeals then went on to discuss the

25  different standards for recusal under § 455(a) and § 455(b), i.e., when a judge's

26  impartiality might reasonably be questioned, and when a judge has a personal bias or

27  prejudice:

28      "In *Rapp v. Van Dusen*, 3 Cir., 350 F.2d 806, 812, the court declared that:

-20-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1
2
3
4
5
6
7
8

> 'For the proper administration of justice requires of a judge not only actual impartiality, but also the appearance of a detached impartiality.' Like statements of the principle as to the 'appearance of justice,' within the fair trial concept, are found in many other decisions and have now been codified in the new recusal statue, which requires mandatory disqualification of a judge 'in any proceeding in which his impartiality *might reasonably be questioned*, 'or 'where he has a personal bias or prejudice concerning a party.' To say more will unduly lengthen this decision.''

9
10
11
12
13
14
15
16
17
18
19
20

*Id.* at 469 (emphasis added).  Moreover, the United States Supreme Court has put this issue to rest in that it has expressly held that § 455(a) provides grounds for disqualification independent of the grounds contained in § 455(b). In *Liljeberg v. Health Services Acquisition Corp.*, *supra*, the Supreme Court decided that the judge should have been disqualified and used § 455(a) as a ground for disqualification, independent of any of the grounds contained in § 455(b). In Liljeberg a judge was recused under § 455(a) because there was an appearance of impartiality because of an appearance of a possible conflict of interest. The petitioner, inter alia, argued that § 455(a) had to be read in conjunction with 28 U.S.C. § 455(b)(4), which provides specific grounds for disqualification for conflicts of interest. The Supreme Court found that § 455(a) provided grounds for disqualification by itself independent of the conflict of interest provisions of § 455(b)(4). The Supreme Court made short shrift of petitioner's contention, stating:

21
22
23
24
25
26
27
28

> To read § 455(a) to provide that the judge must know of the disqualifying facts, requires not simply ignoring the language of the provision - which makes no mention of knowledge - but further requires concluding that the language in subsection (b)(4) - which expressly provides that the judge must know of his or her interest - is extraneous. A careful reading of the respective subsections makes clear that Congress intended to required knowledge under subsection (b)(4) and not to require knowledge under subsection (a). Moreover, advancement of the purpose of the provision - to promote public confidence in the integrity of the judicial process, see S Rep No. 93-419, p 5 (1973); HR Rep. No. 93-1453, p 5 (1974) - does not depend upon whether or not the judge actually knew of facts creating an appearance of

-21-

1  impropriety, so long as the public might reasonably believe that he or she knew."

2  *Id*. at 859-60 (emphasis added).

3  **G.    Judge Fitzgerald Must Disclose All Information Relating To Conflict**

4  It is a judge's duty to inquire and disclose. As the court stated in *Porter v.*

5  *Singletary*, 49 F.3d 1483 (11th Cir. Fla. 1995):

6  [A] judge should disclose on the record information
7  which the judge believes the parties or their lawyers
   might consider relevant to the question of
8  disqualification. We conclude that both litigants and
   attorneys should be able to rely upon judges to comply
9  with their own Canons of Ethics. ***A contrary rule would
   presume that litigants and counsel cannot rely upon an
10  unbiased judiciary, and that counsel, in discharging
   their Sixth Amendment obligation to provide their
11  clients effective professional assistance, must
   investigate the impartiality of the judges before whom
12  they appear***. Such investigations, of course, would
   undermine public confidence in the judiciary and hinder,
13  if not disrupt, the judicial process -- all to the detriment
   of the fair administration of justice.

14  *Id.* at 1489 (emphasis added).

15  Moreover, a prospective appellant has an obligation to develop the factual

16  record to support his claim, and where he fails to meet that obligation in the trial

17  court, effective appellate review is usually not possible. *See In re Muller,* 851 F.2d

18  916, 920 (7th Cir. 1988) (appellant must develop factual record in trial court to

19  support claim of judicial bias under 28 U.S.C. § 455), *cert. denied,* 490 U.S. 1007

20  (1989); *see also Salmeron v. United States,* 724 F.2d 1357, 1365 n.5 (9th Cir.

21  1983); Fed. R. App. P. 10(b)(2) (appellant must develop factual record for appeal).

22  The facts of this case require a full hearing and disclosure on the relationship,

23  financial entanglements, and potential conflicts between Judge Fitzgerald and his

24  brother as it relates to this case.  Anything less leaves the public shaking their heads.

25  **H.    This Motion Is Timely.**

26  As explained in *Preston v. United States*,

27  While no per se rule exists regarding the time frame in
   which recusal motions should be filed after a case is
28  assigned to a particular judge, if the timeliness requirement

-22-

1
2
3

is to be equitably applied, recusal motions should be filed with reasonable promptness after the ground for such a motion is ascertained. Cf. *United States v. Furst*, 886 F.2d 558, 581-82 n. 30 (3d Cir.1989) (motion to recuse judge from sentencing timely where movant "did not unreasonably delay in filing ... motion").

4   923 F.2d 731, 733 (9th Cir. 1991). In this regard, Counsel for Omidi recently

5   discovered the issues related to this motion, making it timely. *See* Declaration of

6   Robert Rice ¶2. See e.g., *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 294 (3d Cir.

7   2004) ("Because the Petitioners did not themselves learn about the Advisors' conflict

8   of interest . . . until shortly before they moved for disqualification, their motions were

9   timely.")

10   *Preston*, 923 F.2d 731 is directly on point. There, the Ninth Circuit reversed

11   the denial of motion for recusal based on the judge's association with a law firm and

12   specifically finding that the recusal motion was timely, despite being filed eighteen

13   months after assignment to judge, because "counsel asserts that he did not learn of

14   this association until ten days before the first recusal motion was filed" and "this

15   allegation is uncontroverted". 923 F.2d at 733.

16   Here, Counsel for Omidi recently discovered the issues related to this motion,

17   making it timely. *See* Declaration of Robert Rice ¶2. Hence, the motion was timely

18   filed. *See Preston*, 923 F.2d at 733 ("The government suggests it is more than mere

19   coincidence that the 'discovery' was made shortly after Judge Letts denied the heirs'

20   motion to extend discovery. While we note the close chronological relationship

21   between the adverse ruling by Judge Letts and the heirs' motion for his recusal, the

22   government offers us nothing but speculation that the heirs were 'utiliz[ing] a

23   disqualification issue as part of [their] trial strategy.'"); *Kensington Int'l*, 368 F.3d,

24   313-14 (rejecting the district court's attempt to impute constructive knowledge on the

25   petitioners, reasoning that "[i]n the recusal context, we are satisfied that if there is to

26   be a burden of disclosure, that burden is to be placed on the judge to disclose possible

27   grounds for disqualification," and that "[i]t is undisputed, however, that [the district

28   court] never disclosed to the parties, either on or off the record," of the conflict of

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

1  interest).

2  **III.    <u>CONCLUSION</u>**

3      An impartial judiciary is a fundamental component of the system of justice in

4  the United States. The right to a "neutral and detached judge" in any proceeding is

5  protected by the Constitution and is an integral part of maintaining the public's

6  confidence in the judicial system. *Ward v. City of Monroeville,* 409 U.S. 57, 61-62

7  (1972). *See also Marshall v. Jerrico, Inc.,* 446 U.S. 238, 243 (1980) ("powerful"

8  constitutional interest in fair adjudicative procedure). Congress has sought to secure

9  the impartiality of judges by requiring them to step aside, or in some instances,

10  disqualify themselves.

11      "In order to preserve the integrity of the judiciary, and to ensure that justice is

12  carried out in each individual case, judges must adhere to high standards of conduct."

13  *York v. United States,* 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify

14  himself in a proceeding in which his impartiality might reasonably be questioned.…"

15  ABA Code of Judicial Conduct Canon 3(C)(1); *see also Scott v. United States,* 559

16  A2d 745, 750 (D.C. 1989) (en banc).

17      We hereby request a full hearing with complete disclosure of the potential

18  conflicts between Judge Fitzgerald and his brother First Assistant United States

19  Attorney Patrick Fitzgerald. The mandatory disclosure requirements in section 455

20  and self-executing provisions of the rules should not be ignored.  Recusal in this case

21  is required.

22

23

24  Dated:  January 20, 2016                  Respectfully submitted,

25

26                                              /s/    Robert J. Rice
                                                Robert J. Rice

27
                                               *Attorney for Respondent,*
28                                              JULIAN OMIDI

-24-

EXHIBIT A

| From: | John Kades |
|---|---|
| To: | Craig Harvey; Edward Winter |
| Sent: | 12/22/2011 4:10:04 PM |
| Subject: | RE: FDA and LAP Band |

My contact has been with Special Agent Keith Hadley, U.S. Food and Drug Administration, Office of Criminal Investigations, 201 Avenida Fabricante, San Clemente, CA 92672, (949) 940-4229.

According to him, the FDA has been receiving multiple complaints about 1800GETTHIN. Most of the complaints have been from insurance companies, but some from patients. The issue seems to be inappropriate billing, along the lines of being overbilled for something or the other. The FDA's "angle" is that the advertising campaign is misleading, there is some misrepresentation of the device, and that the Lap Band is not being used in accordance with the manufacturers guidelines. Since the Lap Band device is FDA approved, they have the authority to investigate any misuse of the medical item. The company is run by two brothers (their name escapes me) and they would very much like to shut them down.

I offered the FDA our assistance. I invited them to come on our scene visit, but they were not interested. I am keeping him up to date on the Rojeski case and I provided the names and case numbers of the other Lap Band related deaths we have had in the last 12 months.

-Kades

**From:** Craig Harvey
**Sent:** Thursday, December 22, 2011 3:55 PM
**To:** Edward Winter; John Kades
**Subject:** FDA and LAP Band
**Importance:** High

Do we have a name and/or contact information for the FDA contact. Did the guy say what type of investigation they are mounting?

Craig R. Harvey, F-ABMDI
Chief Coroner Investigator & Chief of Operations
Department of Coroner
County of Los Angeles
1104 North Mission Road
Los Angeles, CA 90033
FAX (323) 224-3920
charvey@coroner.lacounty.gov

**"Some people spend an entire lifetime wondering if they made a difference in the world. But the U.S. ARMED FORCES and VETERANS don't have that problem."**

COUNTY OF LOS ANGELES EMAIL DISCLAIMER:
This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the County of Los Angeles or the intended recipient is strictly prohibited.

If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

03386

EXHIBIT B

RECORDING REQUESTED BY
~~~EQUITY TITLE CO.~~~

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO

NAME ⌐ Patrick Fitzgerald
STREET
ADDRESS ███ ████ ███    ███
CITY
STATE
ZIP   └

94    95114

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

JAN 14 1994 AT 8 A.M.

FEE
$5
A

SPACE ABOVE THIS LINE FOR RECORDER'S USE

| 587 23 | 7 | ALL PTN |
| --- | --- | --- |

Title Order No. _93 09846-60_
Escrow or Loan No. _73848_

## GRANT DEED

"Total $1,954.40"

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX IS $ _183.90 (8U)_    CITY TAX $ _1,570.50_  (4)
X☒ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale.
☐ Unincorporated area    City of _____, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Charles Breen and Monique Breen, husband and wife as Joint Tenants

hereby GRANT(S) to

Patrick Raymond Fitzgerald, a single man

the following described real property in the    City of Los Angeles

County of    Los Angeles    State of California

████████████████████████████████████████████████

Dated _January 10, 1994_

State of ___ **CALIFORNIA** ___

County of ___ **LOS ANGELES** ___ } SS.

On _JANUARY 12, 1994_    before me,
_Ivonne Aldrich_

personally appeared ___ CHARLES BREEN AND
MONIQUE BREEN------------------------
 (aka Monique Charles)---------

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the
instrument.
WITNESS my hand and official seal.

Signature _Ivonne Ald___

_Charles Breen_
_Monique Breen_

OFFICIAL SEAL
IVONNE ALDRICH
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
JULY 29, 1994

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE.    _9309846-60_

EXHIBIT C

AUG 22 2002

STEWART

200148578

RECORDING REQUESTED BY
STEWART TITLE OF CALIFORNIA, INC.
WHEN RECORDED MAIL TO:
PATRICK R. FITZGERALD
MICHAEL W. FITZGERALD

02 1973568

MAIL TAX STATEMENTS TO

COUNTRYWIDE HOME LOANS
910 CAMPISI WAY, SUITE 1-D
CAMPBELL, CA. 95008

ESCROW NO. ___01046764___

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

A.P.N.: _____

The undersigned grantor(s) declare(s):
Documentary transfer Tax is $ **ADDING BROTHER TO TITLE**
City Conveyance Tax is $_____
Monument Preservation Fee is $_____ "This is a bonafide gift and the grantor received nothing in return. R & T 11911."
(   ) computed on full value of property conveyed, or
(   ) computed on full value less value of liens and encumbrances remaining at time of sale.
(   ) Unincorporated area:   (**xx**) City of ____LOS ANGELES____ , and
FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
PATRICK R. FITZGERALD, AN UNMARRIED MAN WHO ACQUIRED TITLE AS
PATRICK RAYMOND FITZGERALD, A SINGLE MAN

hereby GRANTS to
PATRICK RAYMOND FITZGERALD,   A SINGLE MAN   AND  MICHAEL W.
FITZGERALD, A SINGLE MAN AS JOINT TENANTS

the following described real property in the **City of LOS ANGELES**
County of **LOS ANGELES** , State of California.

DATE: **August 16, 2002**

FOR SIGNATURES SEE PAGE 2 ATTACHED HERETO
AND MADE A PART HEREOF
MAIL TAX STATEMENTS AS DIRECTED ABOVE

AUG 2 2 2002

STEWART

ESCROW NO.:   01046764

Page 2

## GRANT DEED

PATRICK R. FITZGERALD

STATE OF CALIFORNIA       }
                          } ss.
COUNTY OF _Los Angeles_   }

On _8/17/02_ , before me _PETER J. HORAK_

personally appeared _Patrick R. Fitzgerald_

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s), whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/ her/ their authorized capacity (ies), and that by
his/ her/ their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instru-
ment.

WITNESS my hand and official seal.

Signature _Peter J. Horak_



PETER J. HORAK
Commission # 1278301
Notary Public - California
Los Angeles County
My Comm. Expires Oct 23, 2004

(This area for official notarial seal)

02 1973568

EXHIBIT D

▲   **This page is part of your document - DO NOT DISCARD**   ▲



03  2664482

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
SEP  11  2003  AT 8 A.M.

**TITLE(S) :** _____

▲



L E A D   S H E E T

**FEE**                                                    D.T.T

FEE $ 52 SS  /6

**CODE
20**          D.A. FEE Code 20      $ 2.00

**CODE
19**

**CODE
9**___



NOTIFICATION SENT $4 ◎

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.        **Number of Parcels Shown**

▲        **THIS FORM NOT TO BE DUPLICATED**        ▲

*Old Republic*

Recording Requested By:

**03  2664482**

Return To:
HSBC MORTGAGE CORPORATION
(USA)
2929 WALDEN AVENUE, DEPEW,
NY  14043

Prepared By:
SMITH, ASHTON, ,

2607013461.55

——————————————— [Space Above This Line For Recording Data] ———————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **August 28, 2003**
together with all Riders to this document.
(B) "Borrower" is **PATRICK RAYMOND FITZGERALD, A SINGLE MAN AND MICHAEL W.
FITZGERALD, A SINGLE MAN, AS JOINT TENANTS**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **HSBC MORTGAGE CORPORATION (USA)**

Lender is a **DELAWARE CORPORATION**
organized and existing under the laws of **DELAWARE**

CA 3111                                                                                      0359647316

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01

-6(CA) (0005)
Page 1 of 15                      Initials
        VMP MORTGAGE FORMS · (800)521-7291

*3*

Lender's address is **2929 WALDEN AVENUE, DEPEW, NY  14043**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **PHILLIP A. LAGRASSO**

**(E) "Note"** means the promissory note signed by Borrower and dated**August 28, 2003**
The Note states that Borrower owes Lender **TWO HUNDRED SEVENTY FIVE THOUSAND and NO/100**
                                                                                                              Dollars
(U.S. $**275,000.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 01, 2018**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider          ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider               ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

CA 3111                                                                               0359647316

⬤ -6(CA) (0005)              Page 2 of 15         Initials:              Form 3005  1/01

**03 2664482**



to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                              of                    LOS ANGELES                      :
[Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]
**SEE SCHEDULE A ATTACHED HERETO**

Parcel ID Number: ▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓

("Property Address"):

which currently has the address of
[Street]
[City], California 90027          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

CA 3111                                                                0359647316

Ⓥ -6(CA) (0005)                    Page 3 of 15          Initials: ▓▓▓          Form 3005   1/01

03 2664482

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

CA 3111

-6(CA) (0005)

Page 4 of 15

Initials: [handwritten initials]

0359647316

Form 3005   1/01

03 2664482

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.
Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply
the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the
Funds as required by RESPA.

If there is 'a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund
to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions
attributable to the Property which can attain priority over this Security Instrument, leasehold payments or
ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To
the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless
Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable
to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith
by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to
prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings
are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating
the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien
which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

CA 3111

-6(CA) (0005)                              Page 5 of 15                         Form 3005   1/01

Initials

0359647316

03 2664482

9/11/03

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

CA 3111

VMP®-6(CA) (0005)

Page 6 of 15

Initials [signature]

0359647316

Form 3005  1/01

03  2664482

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

CA 3111

-6(CA) (0005)                    Page 7 of 15                    Initials: _____

0359647316

Form 3005  1/01

03 2664482

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

CA 3111

-6(CA) (0005)          Page 8 of 15          Initials          0359647316          Form 3005   1/01

03 2664482

*10*

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

CA 3111

VMP®-6(CA) (0005)

Initials: _____

PRF

Page 9 of 15

0359647316

Form 3005   1/01

03 2664482

*(i*

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

CA 3111

-6(CA) (0005)          Page 10 of 15          Initials: _____   0359647316

*P RLF*          Form 3005   1/01

03 2664482

*12*

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

CA 3111

-6(CA) (0005)                    Page 11 of 15

Initials: _____

0359647316

Form 3005   1/01

03 2664482

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CA 3111

-6(CA) (0005)

Page 12 of 15

Initials

0359647316

Form 3005 1/01

03 2664482



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CA 3111

VMP®-6(CA) (0005)

Page 13 of 15

Initials:

0359647316

Form 3005  1/01

**03 2664482**

*9/11/03*

*15*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   PATRICK RAYMOND FITZGERALD    -Borrower

_____          _____ (Seal)
                                                                 -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower          MICHAEL W. FITZGERALD        -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                        -Borrower

CA 3111                                          0359647316

VMP -6(CA) (0005)          Page 14 of 15         Form 3005  1/01

03 2664482

16

State of California
County of *Los ANGELES*                                    } ss.

On  *9-4-2003*              before me, *E. RAUL HERNANDEZ*
                                                   personally appeared

*PATRICK RAYMOND FITZGERALD AND*
*MICHAEL W. FITZGERALD*

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed
to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their
authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*E. ril Ki*
_____ (Seal)
*E. RAUL HERNANDEZ*

E. RAUL HERNANDEZ
COMM. # 1381350
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires NOV 21, 2006

CA 3111

VMP®-6(CA) (0005)                Page 15 of 15          Initials          0359647316
                                                                          Form 3005   1/01

03 2664482

EXHIBIT "A"

*9/11/03*

*17*

ORDER NO. 2607013461-55

SCHEDULE "A".

03 2664482

EXHIBIT E

**This page is part of your document - DO NOT DISCARD**



# 20150618900





**Pages:
0007**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/28/15 AT 09:09AM**

| | |
|---|---|
| FEES: | 40.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 40.00 |





**L E A D S H E E T**



201505282880010

00010546736



006817270

**SEQ:
01**

DAR - Mail (Intake)

**THIS FORM IS NOT TO BE DUPLICATED**

E485912

Temp Doc Number:10546736

Batch Number:6817270

Recording requested by and
When recorded return to:

American Title Inc.
PO Box 641010
Omaha, NE 68164-1010

ATI # 201503091680

**SHORT FORM DEED OF TRUST**

Recording Requested By:
BANK OF AMERICA, N.A.
Consumer Post Closing Review FL9-700-04-21
9000 Southside Blvd, Bld. 700
Jacksonville, Florida 32256

And After Recording Return To:
BANK OF AMERICA, N.A.
ReconTrust, Co. NA, FL9-700-04-21
9000 Southside Blvd., Bld. 700
Jacksonville, Florida 32256

———— [Space Above This Line For Recording Data] ————

# SHORT FORM DEED OF TRUST
## (EQUITY MAXIMIZER® ACCOUNT)

This Deed of Trust is made on APRIL 11, 2015    by MICHAEL W FITZGERALD, PATRICK R FITZGERALD

(collectively and individually "Trustor"); ReconTrust Company, N.A. ("Trustee"); and the beneficiary, Bank of America, N.A. ("Bank"). Trustee is a subsidiary of Bank. Any non-titleholder signs below as Trustor solely for the purpose of subjecting any community property interest in the property described below to this Deed of Trust. The words "I," "me," and "my" in this Deed of Trust refer to the Trustor, whether one or more.

**BANK AND I AGREE:**

**1. Property Security.** For the purpose of securing the obligations described below, I irrevocably grant, convey, transfer and assign to Trustee, in trust with power of sale, the property located in LOS ANGELES County, California described as follows:
SCHEDULE A ATTACHED HERETO AND MADE A PART OF.

with the street address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
and with Parcel No. ▮▮▮▮▮▮▮▮▮▮  and including all improvements and fixtures now or later erected on the property, and all easements, rights, appurtenances and fixtures now or later a part of or related to the above described property (collectively the "Property").

Trustor's address is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

MICHAEL W FITZGERALD/995150681838010

CALIFORNIA SHORT FORM DEED OF TRUST
(EQUITY MAXIMIZER® ACCOUNT)
CAHESISF.BOA 01/02/15                    Page 1 of 4



DocMagic EForms
www.docmagic.com

2. **This Deed of Trust secures:**
   - All of the obligations of the borrowers under the Bank of America Equity Maximizer Agreement and Disclosure Statement dated APRIL 11, 2015             , and namingMICHAEL W FITZGERALD, PATRICK R FITZGERALD

     as borrowers, for a revolving line of credit account (the "Agreement"), as well as any modifications and renewals of the Agreement. The Agreement provides for a Total Credit Commitment (as defined in the Agreement) of $ 200,000.00        , allows for repeated credit advances drawn against the Total Credit Commitment, and provides for a variable interest rate. By mutual agreement, Bank may increase the Total Credit Commitment ("Increased Credit Commitment"); and
   - Trustor's performance of each obligation in this Deed of Trust.

This Deed of Trust will not secure borrowers' obligations under the Agreement in excess of the Total Credit Commitment or Increased Credit Commitment, except for any amounts due to: (a) unpaid interest, or (b) expenses that Bank incurs because obligations of a borrower under the Agreement are not fulfilled (including without limitation, any advances that Bank makes to perform borrowers' duties to pay taxes, insurance, etc.)

**To Protect the Security of this Deed of Trust, I Agree:** By the execution and delivery of this Deed of Trust and the Equity Maximizer Agreement and Disclosure secured hereby, that provisions (3) to (20), inclusive of the fictitious deed of trust recorded in LOS ANGELES            CountyJULY 19, 1999            , as Instrument No. 99-1334924            in Book            and at Page        of the Official Records of the County Recorder of that county, (which provisions, identical in all counties, are printed on the following pages) hereby are adopted and incorporated herein and made a part hereof as though set forth at length; and I will observe and perform such provisions; and that the reference to Property, obligations, and parties in such provisions shall be construed to refer to the Property, obligations, and parties set forth in this Deed of Trust.

Trustor requests that a copy of **ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE** under this Deed of Trust be mailed to Trustor at the Trustor's address shown below, or if no address is shown, then at the address of the Property.

Mailing Address for Notices:

BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Trustor and recorded with it.

_____ (Seal)
MICHAEL W FITZGERALD      -Trustor

_____ (Seal)
PATRICK R FITZGERALD      -Trustor

_____ (Seal)
                          -Trustor

_____ (Seal)
                          -Trustor

_____ (Seal)
                          -Trustor

_____ (Seal)
                          -Trustor

MICHAEL W FITZGERALD/995150681838010
CALIFORNIA SHORT FORM DEED OF TRUST
(EQUITY MAXIMIZER® ACCOUNT)
CAHESISF.BOA  01/02/15                Page 3 of 4

DocMagic eFarms
www.docmagic.com

———————— [Space Below This Line For Acknowledgment] ————————

> **A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.**

State of California        )
                           ) ss.
County of LOS ANGELES      )


On APRIL 11, 2015 ____ (date) before me, J. L. AKOPYAN ,

a Notary Public, personally appeared MICHAEL W FITZGERALD, PATRICK R FITZGERALD

_____

_____

_____

_____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

J.L. AKOPYAN
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMMISSION # 2014723
MY COMM. EXPIRES MARCH 25, 2017

NOTARY SEAL

J.L.A.
_____
NOTARY SIGNATURE

J. L. AKOPYAN
_____
(Typed Name of Notary)

## SCHEDULE A

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE CITY OF LOS ANGELES COUNTY OF LOS ANGELES, STATE OF CALIFORNIA:

SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENTS, COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY.

BEING THE SAME PREMISES CONVEYED TO PATRICK RAYMOND FITZGERALD, A SINGLE MAN AND MICHAEL W. FITZGERALD, A SINGLE MAN AS JOINT TENANTS FROM PATRICK R. FITZGERALD, AN UNMARRIED MAN WHO ACQUIRED TITLE AS PATRICK RAYMOND FITZGERALD, A SINGLE MAN BY GRANT DEED DATED 8/16/2002, AND RECORDED ON 8/22/2002, DOCUMENT # 02 1973568, IN LOS ANGELES COUNTY, CA.

**ASSESSORS PARCEL NUMBER:**

**ATI ORDER NUMBER:**   201503091680

EXHIBIT F

## *Memorandum*

| | |
|---|---|
| Subj: | Date: |
| UNITED STATES V. TIFFINY BURROWS | July 6, 2012 |
| | CR12-0636 |

| | |
|---|---|
| To: | From: |
| TERRY NAFISI<br>Clerk, United States District Court<br>Central District of California | DAVID L. KIRMAN<br>Assistant United States Attorney<br>Criminal Division |

FILED

2012 JUL -6 AM 11:16

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES

For purposes of determining whether the above-referenced matter being filed on July 6, 2012 should be assigned to the Honorable Michael W. Fitzgerald, it

    [ ] is

    [X] is not

(1) a matter pending in the National Security Section or one in which the National Security Section has previously been involved; or (2) a matter in which current Assistant United States Attorney Patrick Fitzgerald is or has been personally involved or on which he has personally consulted while employed in the USAO.

DAVID L. KIRMAN
Assistant United States Attorney
Criminal Division

# PROOF OF SERVICE

I am employed and a resident of the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 6380 Wilshire Boulevard, Suite 820, Los Angeles, California, 90048.

On January 19, 2016, I served the document described as:

**JULIAN OMIDI'S MOTION IN SUPPORT OF RECUSAL OF JUDGE MICHAEL FITZGERALD; MEMORANDUM OF POINTS AND AUTHRORITIES; DECLARATION OF ROBERT J. RICE**

Upon the interested parties in this action in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

_____ (By Mail)  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing contained in affidavit.

_____(By Facsimile Transmission)  I caused the foregoing document to be served by facsimile transmission to each of the interested parties at the facsimile machine telecopy number shown in the service list attached hereto.

___X___ (By Electronic Mail/ECF) On 1/19/2016, I checked the ECF docket for this case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated in the attached service list below:

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on this 20th day of January, 2016, at Los Angeles, California.

/s/ Robert J. Rice_____
Robert J. Rice

-25-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**

## SERVICE LIST

| | |
|---|---|
| Eileen M. Decker, Esq.<br>United States Attorney<br>Lawrence S. Middleton, Esq.<br>Assistant United States Attorney<br>Chief, Criminal Division<br>Consuelo S. Woodhead, Esq.<br>Assistant United States Attorney<br>Deputy Chief, Major Frauds Section<br>Evan J. Davis, Esq.<br>Kristen A. Williams, Esq.<br>Assistant United States Attorneys Major Frauds Section<br>1100 United States Courthouse<br>312 North Spring Street<br>Los Angeles, California 90012<br>Telephone: (213) 894-3987/ 0526<br>Facsimile: (213 ) 894-6269<br>Consuelo.Woodhead@usdoj.gov<br>Kristen.Williams@usdoj.gov<br>Evan.Davis@usdoj.gov | *Attorneys for Respondent,*<br>UNITED STATED OF<br>AMERICA |
| Robert Kashfian, Esq.<br>Ryan Kashfian, Esq.<br>KASHFIAN & KASHFIAN, LLP<br>1875 Century Park East, Suite 1340<br>Los Angeles, California 90067<br>Telephone (310)751-7578<br>robert@kashfianlaw.com<br>ryan@kashfianlaw.com | *Attorneys for Defendant,*<br>CINDY OMIDI |
| Daron Tooch, Esq.<br>Eric Chan, Esq.<br>1875 Century Park East<br>Suite 1600<br>Los Angeles, CA 90067<br>Telephone (310) 551-8192<br>dtooch@health-law.com<br>echan@health-law.com | *Attorneys for Plaintiff/Cross-Defendant,*<br>Almont Ambulatory Surgery<br>Center LLC, et. al. |

-26-

**MOTION TO RECUSE JUDGE MICHAEL FITZGERALD**