Robert J. Rice, Esq. (SBN 131255)
LAW OFFICES OF ROBERT J. RICE
rjriceesq5@gmail.com
6380 Wilshire Boulevard, Suite 820
Los Angeles, California 90048
Telephone (323) 297-3700

*Attorney for Respondent*,
JULIAN OMIDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC., and DOES 1 through 20, <br><br> Defendants. <br> ———————————— <br> UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY; OPTUMINSIGHT, INC., <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company; et al., <br><br> Counterclaim Defendants. | Case No. 14-CV-03053-MWF (VBKx) <br><br> **COUNTERCLAIM DEFENDANT JULIAN OMIDI'S OBJECTION TO THE COURT'S TRANSFER ORDER (Dkt. 262)** <br><br> Case assigned to: Hon. Michael W. Fitzgerald <br><br> Disqualification Motion Referred to: Judge Otis D. Wright II |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

    A.    The Government's Intervention Motion As A Matter Of Right ............ 2

    B.    Counterclaim Incorporates The Government's Improper Allegations Into Its Second Amended Counterclaim .................................................. 3

    C.    Counterclaimant Alleges That The Government Seized The Money That Stems From The Fraud Alleged In Its Second Amended Counterclaim ............................................................................................ 3

    D.    Mrs. Omidi Motion to Strike .................................................................. 4

    E.    Mr. Omidi's Motion to Recuse And Motion to Strike ........................... 6

    F.    The Court's Transfer Order ..................................................................... 6

ARGUMENTS ....................................................................................................... 7

    I.    The *Court's Order* Is Inconsistent With Its Prior Ruling Which The Court Addressed Striking Pleadings Placed Before This Court Related To The Documents To Be Stricken ....................................................... 7

    II.    As A Matter Of Fact The Government Has Not Withdrawn From This Case And Has Intervened As A Matter Of Right Under Rule 24(a) ..... 9

    III.    The Primary Relief Sought Is To Strike The Improper Pleadings *In This Case* ............................................................................................. 10

    IV.    The Relief Sought Is To Disqualify The AUSA's Appearing *In This Case* ...................................................................................................... 12

CONCLUSION ..................................................................................................... 13

-ii-

COUNTERCLAIM DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION TO STRIKE THE GOVERNMENT'S IMPROPER DISCLOSE OF TAX RETURN INFORMATION

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE(S)</u>

<u>American Textile Mfrs. Institute, Inc. v. The Limited Inc.</u>,

    190 F.3d 729 (6th Cir. 1999) ................................................................ 8

<u>Cheeves v. S. Clays</u>,

    797 F. Supp. 1570 (M.D. Ga. 1992) ..................................................... 8

<u>City of Santa Clara v. Kleppe</u>,

    428 F.Supp. 315 (N.D. Cal. 1976) ..................................................... 10

<u>Hudnall v. Payne</u>,

    No. 6:14CV133, 2015 WL 163917 (E.D. Tex. Jan. 12, 2015) ......................... 9

<u>In re Smith</u>,

    656 F.2d at 1101 (5th Cir. 1981) ....................................................... 11

<u>Lapin v. Shulton</u>,

    333 F.2d 169 (9th Cir. 1964) ............................................................ 11

<u>Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.)</u>,

    462 B.R. 615 (Bankr. S.D. Miss. 2011) ............................................. 11

<u>Local No. 93, Int'l Asso. Of Firefighters, etc. v. Cleveland</u>,

    478 U.S. 501 (1986)) ....................................................................... 12

<u>Organized Kake v. United States Dep't of Agric.</u>,

    795 F.3d 956 (9th Cir. 2015) ............................................................ 10

<u>Porter v. Singletary</u>,

    49 F.3d 1483 (11th Cir. 1995) ............................................................ 8

<u>United States v. Bosch</u>,

    951 F.2d 1546 (9th Cir. 1991) ............................................................ 8

<u>United States v. Cooper</u>,

    283 F. Supp. 2d 1215 (D. Kan. 2003) ................................................. 8

<u>United States v. Holland</u>,

    519 F.3d 909 (9th Cir. 2008) ............................................................ 14

-iii-

COUNTERCLAIM DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION TO STRIKE THE GOVERNMENT'S IMPROPER DISCLOSE OF TAX RETURN INFORMATION

United States v. Kordel,

　　　397 U.S. 1 (1970) ................................................. 8

United States v. State of Or.,

　　　657 F.2d 1009 (9th Cir. 1981) ................................. 9, 13

U.S. ex rel. Eisenstein v. City of New York, New York,

　　　556 U.S. 928 (2009) ................................................. 12, 13

Williams v. Smith,

　　　No. 1:10CV501, 2010 WL 2816714 (M.D.N.C. July 15, 2010) .................... 11

**OTHER(S)**

Judicial Disqualification – Recusal and Disqualification of Judges,

　　　Richard E. Flamm, 170 (2007)................................................ 13, 14

COUNTERCLAIM DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION TO STRIKE THE GOVERNMENT'S IMPROPER DISCLOSE OF TAX RETURN INFORMATION

## **INTRODUCTION**

Counterclaim Julian Omidi ("Mr. Omidi") hereby objects Judge Michael W. Fitzgerald's order (Dkt. 262 ("*Court's Order*")) transferring of Mr. Omidi's motion to strike (Dkt. 259 ("*Motion to Strike*")) the Government's opposition (Dkt. 122 ("*Government's Opp.*")) to Counterclaim Defendants' motion for an order release *in camera* documents. The grounds for the objection are as follows:

***First***, the *Court's Order* is inconsistent with its prior ruling which the Court addressed striking pleadings placed before this Court related to the documents to be stricken. (Dkt. 243 ("*Order Denying Ms. Omidi's Motion to Strike*"). In fact, the Government's conduct in this very case has been litigated post-Mr. Patrick Fitzgerald's appointment to First Assistant United States Attorney in this District on August 3, 2015. (See Dkt. 203. ("*Ms. Omidi's Motion to Strike*").) However, no disclosure was made on the record of Mr. Patrick Fitzgerald's appointment.

***Second***, the Government has not withdrawn from this case and has intervened as a matter of right under Federal Rules of Civil Procedure, ("Rule") Rule 24 (a), and has never filed a motion to withdraw from this case.

***Third***, the *Court's Order* asserts that "the primary relief Mr. Omidi requests is disqualification of 'the prosecution team' that is conducting a criminal investigation." (*Court's Order*, at 1.) This is not correct. The primary relief sought is to have documents filed *in this case* be stricken for violation of 26 U.S.C. §§ 6103, 7213 (a felony). (*Motion to Strike*, at p. 1.) The Court transferring this matter to another judge—of the same level, i.e., another district court judge—for determination of striking documents filed in the docket of this Court has effectively deprived Mr. Omidi of his requested remedy, because under the rules of comity only this Court can strike documents filed in its docket.

***Fourth***, the Court's assertion that the *Motion to Strike* "requests . . . [the] disqualification of 'the prosecution team' that is conducting a criminal investigation," *Court's Order*, at 1, is not correct. The *Motion to Strike* request that this Court

-1-
COUNTERCLAIM DEFENDANT JULIAN OMIDI'S OBJECTION TO THE COURT'S TRANSFER ORDER (Dkt. 262)

1   disqualify the AUSA's appearing *in this case*, because the Government "has not

2   withdrawn from the case and is an active party as per Pacer.gov." (*Motion to Strike.*,

3   at 7.)

4

5   ## STATEMENT OF FACTS

6   ### A. The Government's Intervention Motion As A Matter Of Right

7          On January 15, 2015, the Court granted the Government's Unopposed Ex Parte

8   Request to Intervene. (Dkt. 123, ("*Request to Intervene*").)[1] In its *Request to*

9   *Intervene*, the Government intervened under Rule 24(a)(2), stating:

10               Rule 24 of the Federal Rules of Civil Procedure provides
                 the standards governing an application to intervene. It states
11               that "upon timely application anyone shall be permitted to
                 intervene in an action... when the applicant claims an
12               interest relating to the property or transaction which is the
                 subject of the action... ." Fed. R. Civ. P. 24(a)[2].
13

14          (*Request to Intervene*, p. 2, lines 14-19.) Rule 24(a) is an intervention as a

15   matter "of right," which this Court granted.

16          After being allowed to intervene, the Government's filed an opposition to

17   Counterclaim Defendants' motion for an order to release *in camera* documents, or

18   portions thereof. (*Government's Opp.*) The *Government's Opp.* improperly stated:

19               [E]vidence a scheme on the part of Julian Omidi, Michael
                 Omidi, Cindy Omidi, the entities listed on Exhibit 1 thereto,
20               and others to recruit patients for Lap-Band surgery by false
                 and misleading advertising in violation of 21 U.S.C. § 331
21               (misbranding a medical device); make false statements to
                 health insurance plans in violation of 18 U.S.C. § 1035;
22               defraud health insurance plans and patients seeking Lap-
                 Band surgery in violation of 18 U.S.C. § 1341 (mail fraud),
23               18 U.S.C. § 1347 (health care fraud), and 18 U.S.C. § 1349
                 (fraud conspiracy); launder the proceeds of such fraud in
24               violation of 18 U.S.C. § 1956 (money laundering); evade
                 the payment of income taxes, knowing fail to file income
25

26   _____
     [1] The USAO represents the USA in this matter, as denoted on the caption page of its
27   opposition, "THIRD PARTY UNITED STATES OF AMERICA'S OPPOSITION,"
     see Dkt 122, at p. 1, as well as the fact that the USAO states on the first page that it is
28   "Attorneys for Plaintiff UNITED STATES OF AMERICA," *id.*, a similar
     designation is mentioned on page 2 and 8, "Attorneys for Third Party UNITED
     STATES OF AMERICA," *id.* at p. 2 and 8. See also, *Request to Intervene*.

1

tax returns and file false income tax returns in violation of 26 U.S.C. §§ 7201 7203, and 7206(1), and evidence and instrumentalities of a conspiracy to commit the foregoing offenses and to defraud the United States in violation of 18 U.S.C. § 371.

2

3

4

(*Government's Opp.*, at 6-7 n.1.)

5

6

### B. Counterclaimant Incorporates The Government's Improper Allegations Into Its Second Amended Counterclaim

7

8

On April 20, 2015, Counterclaimants filed a Second Amended Counterclaim.

9

(Dkt. 152 ("*SACC*").) In its its *SACC*, Counterclaimants assert a conspiracy claim

10

premised on the allegations that the Government improperly inserted in

11

*Government's Opp.*, at 6-7 n.1:

12

The Omidis are currently the subject of investigations by numerous government enforcement agencies, including the FBI, the U.S. Food and Drug Administration, the California Department of Insurance, and the Los Angeles Police Department. United is informed and believes that the ongoing federal investigation concerns numerous federal crimes, including false advertising in violation of 21 U.S.C. § 331; making false statements to health insurance plans in violation of 18 U.S.C. § 1035; defrauding health insurance plans and patients seeking Lap Band surgery in violation of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1347 (health care fraud), and 18 U.S.C. § 1349 (fraud conspiracy); laundering the proceeds of such fraud in violation of 18 U.S.C. § 1956; numerous tax crimes in violation of 26 U.S.C. §§ 7201, 7203, and 7206(l); and conspiracy to commit the foregoing offenses and to defraud the United States in violation of 18 U.S.C. § 371.

13

14

15

16

17

18

19

20

(*SACC*, at ¶404.)

21

22

### C. Counterclaimant Alleges That The Government Seized Money That Stems From The Fraud Alleged In Its Second Amended Counterclaim

23

24

Counterclaimants allege (as a form of relief in this case) that based on the

25

allegations of fraud, they are entitled to a portion of money that the Government

26

seized in relation to its criminal investigation. (*SACC*, at ¶404 ("In furtherance of this

27

investigation, a federal court in this district found probable cause for multiple

28

searches, the seizure of various documents, and the seizure of funds for forfeiture.

-3-

1   More specifically, the federal government seized at least $107 million in assets from

2   Omidi Network entities, including Bank of America accounts into which the Omidis

3   transferred assets they wrongfully received from United.”))

4        Moreover, Counterclaimants see “the imposition of a constructive trust over”

5   the seized funds. (*SACC*, at ¶513.) Specifically, Counterclaimants assert that the

6   Counterclaim Defendants committed a scheme to defraud Counterclaimants and

7   funneled money to a bank account in the name of Property Care Insurance, (“PCI”),

8   held at Bank of America, which the government seized, based on a fraud perpetrated

9   against Counterclaimants:

> For many years, Julian, Michael, and Cindy Omidi caused
> millions of dollars to be transferred from the Wells Fargo
> accounts identified below (*see infra* ¶ 419) into an account
> established in PCI’s name (specifically, a Bank of America
> account ending 90). ***This Bank of America account along
> with several other accounts established in PCI’s name
> were lawfully seized by the federal government after it
> established “probable cause to believe that [the assets]
> represent or are traceable to a long-term fraud scheme
> run” by the Omidis, including a fraud perpetrated against
> healthcare benefits plans.*** One such transfer was in the
> amount of $13,742,743, which the Omidis transferred from
> the Wells Fargo accounts referenced below into PCI’s Bank
> of America account. As described below, prior to this
> transfer, those Wells Fargo accounts held millions that had
> originally been deposited from payments made by United,
> including sums that were received by the Counterclaim
> Defendants as a result of their wrongful behavior.

20   (*SACC*, at ¶58.) Moreover, based on their allegations of fraud,

21   Counterclaimants “request[ed] that the Court impose an equitable lien or constructive

22   trust over the accounts, assets, or property that can be traced from these accounts,

23   including but not limited to accounts or property controlled by PCI” i.e., the monies

24   seized by the Government. (*SACC*, at ¶516.)

25

26        **D. Mrs. Omidi’s Motion to Strike**

27        On August 3, 2015, Mr. Patrick Fitzgerald (Judge Fitzgerald’s twin brother

28   and business partner which whom he shares a single family residence) was

-4-

1    appointed First Assistant United States Attorney in this District.

2         On August 27, 2015, Counterclaim Defendant Cindy Omidi moved to strike

3    the portions of *SACC*, at ¶404. (Dkt. 203. "*Ms. Omidi's Motion to Strike*").) Ms.

4    Omidi's motion to strike (filed post-Mr. Fitzgerald's appointment) was premised on

5    the improper collusion of the Government and Counterclaimants. (*Id.* at p. 6 ("how

6    does [Counterclaimants] know that the specific tax sections at issue and additionally

7    that the United States is investigating the Omidis for "defraud[ing]" the United States

8    in violation of 18 U.S.C. § 371" other than from the United States, itself."))

9    Counterclaimants vehemently denied the allegations of collusion, asserting "[t]here

10   is not and has never been any improper collusion between United and federal

11   investigators regarding this litigation." (Dkt. 210 ("*United's Opp. to Ms. Omidi's*

12   *Motion to Strike*"), at p. 4.)

13        The Court, however, did not make any disclosures about the relationship of

14   his brother to the Government or the Court's business relationship and the Courts'

15   sharing of a single family residence with Patrick Fitzgerald, and instead ruled that:

16            **B. Allegations About The United States**
             **Government's Ongoing Investigation Into Tax Matters**

17

18            Mrs. Omidi contends that certain allegations
         regarding federal investigations into tax matters should be
19       stricken because "[t]hese allegations (particularly the
         specific code sections at issue) are possibly the product of a
20       felony committed by federal agents and/or employees, and
         therefore, are scandalous because they 'detract from the
21       dignity of the court.'" (Mot. at 4-5 (quoting *Jadwin*, 2007
         WL 3319670, at *1)). The code sections at issue are 26
22       U.S.C. §§ 7201, 7203, and 7206(1). (SACC ¶ 404).

23                        *        *        *

             [T]he Court is nonetheless concludes that United's
24       allegations are proper. Mrs. Omidi's argument is based on
         either conjecture regarding improper collusion or attacks on
25       United's use of publicly available information (the Court
         does not presently address whether the information was
26       properly filed in the public record). In either scenario, the
         Court does not find the argument persuasive. United's
27       allegations are not impertinent or scandalous, and are
         therefore appropriately included in the pleading.

28       (*Order Denying Ms. Omidi's Motion to Strike*, at p. 9-11.)

1

2    **E.  Mr. Omidi's Motion to Recuse And Motion To Strike**

3    On January 20, 2016, Counterclaim Defendant Julian Omidi ("Mr. Omidi")

4    filed a motion to recuse Judge Michael Fitzgerald. (Dkt. 256 ("*Recusal Motion*")).

5    The *Recusal Motion* noted that Mr. Omidi "move for the disqualification of the

6    AUSAs for violations of 26 U.S.C. section 6103 in this United Healthcare case."

7    (*Recusal Motion*, *Rice Decl.*, at 6.)

8    On the same day, the *Recusal Motion* was transferred to Judge Otis D. Wright,

9    II, for determination. (Dkt. 257.) Thereafter, as indicated, on January 25, 2016, the

10    *Motion to Strike* was filed on the basis that the Government has improperly filed with

11    this Court tax return information in violation of 26 U.S.C. §§ 6103, 7213 (a felony).

12    (*Motion to Strike*, at p. 1.) Additionally, the *Motion to Strike* also noted that the

13    outing of Mr. Omidi—in this Court's docket—as being investigated for purported

14    criminal activity, see *Government's Opp.*, at p. 6-7 & n. 1, was in violation of well-

15    settled precedent, *In re Smith*, 656 F.2d 1101 (5th Cir. 1981), and the United States

16    Attorney's Manual, § 9-27.760. (*Motion to Strike*, at p. 8-9.) The *Motion to Strike*

17    also requested that the Court disqualify the Assistant United States Attorneys

18    ("AUSA") representing the United States of America ("USA") *from this case*, see

19    *Motion to Strike*, at p. 8, noting that the Government "has not withdrawn from the

20    case and is an active party as per Pacer.gov," *id.*, at 7.

21

22    **F.  The Court's Transfer Order**

23    January 26, 2016, the Court, *sua sponte*, issued an order asserting that:

24          Although the Motion is noticed to be heard in this civil
          action, the primary relief Mr. Omidi requests is

25          disqualification of "the prosecution team" that is
          conducting a criminal investigation. (Motion at 10). The

26          government appeared in this action only for the limited
          purpose of opposing the unsealing of certain search warrant

27          affidavits (Docket No. 123), and is not expected to play any
          role in this civil action. This Court has only been assigned

28          the ERISA civil action and related actions; this Court has

no involvement in the government's criminal investigation or other actions that might involve Mr. Omidi or his brother.

(*Court's Order*, at 1.)

# **ARGUMENTS**

## I. **The *Court's Order* Is Inconsistent With Its Prior Ruling Which The Court Addressed Striking Pleadings Placed Before This Court Related To The Documents To Be Stricken.**

The *Court's Order* is inconsistent with its prior ruling which the Court addressed striking pleadings placed before this Court related to the documents to be stricken. (*Order Denying Ms. Omidi's Motion to Strike*, at 9-11.) Indeed, as noted above, on August 27, 2015, Counterclaim Defendant Cindy Omidi motion (filed post-Patrick Fitzgerald's appointment) to strike was premised on the improper collusion of the Government and United. (*Ms. Omidi's Motion to Strike*, at 6 ("how does Untied know that the specific tax sections at issue and additionally that the United States is investigating the Omidis for 'defraud[ing] the United States in violation of 18 U.S.C. § 371' other than from the United States, itself."))

At that moment, when Mrs. Omidi moved to strike, and Counterclaimants opposed, the issue of the federal investigation, and Counterclaimants' collusion with federal investigators regarding this litigation, became an issue. At that moment, the Court should have fully disclosed on the record—prior to its ruling—that his twin brother and business partner with who the Court shares a single family residence, was supervising the investigation, in which Ms. Omidi is alleged to be in improper collusion. However, the Court did not make any disclosures and instead asserted:

> [T]he Court is nonetheless concludes that United's allegations are proper. Mrs. Omidi's argument is based on either conjecture regarding improper collusion or attacks on United's use of publicly available information (**the Court does not presently address whether the information was properly filed in the public record**). In either scenario, the Court does not find the argument persuasive. United's allegations are not impertinent or scandalous, and are therefore appropriately included in the pleading.

(*Order Denying Ms. Omidi's Motion to Strike*, at p. 9-11.)

It should be noted that counsel is not asserting that the merits warrant a finding of recusal but rather that Judge Fitzgerald should recuse himself for failing to disclose that his twin brother was supervising the USAO—alleged to have colluded with the federal government. In this regard, it is well settled "a judge should disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification." *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995); *United States v. Bosch*, 951 F.2d 1546, 1555 n.6 (9th Cir. 1991) (noting that section 455(a) "has a de facto disclosure requirement."); *American Textile Mfrs. Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999) (holding that "judges have an ethical duty to 'disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification.'" (quoting *Porter*, 49 F.3d at 1489)); *United States v. Cooper*, 283 F. Supp. 2d 1215, 1223 (D. Kan. 2003) (same); *Cheeves v. S. Clays*, 797 F. Supp. 1570, 1582 (M.D. Ga. 1992) ("whenever it appears that disqualification may be required pursuant to § 455(a), the judge must either withdraw from the case or make 'a full disclosure on the record' so that the parties may consider a waiver.") (quoting *Barksdale v. Emerick*, 853 F.2d 1359 (6th Cir. 1988).

What is more, since this is merely a preliminary motion the issue of the Government and Counterclaimants colluding will be brought up in the future. *United States v. Kordel*, 397 U.S. 1, 9 (1970).

In any event, the fundamental issue is that the Court's transfer order is inconsistent from the Court's *Order Denying Ms. Omidi's Motion to Strike*, filed on October 23, 2015. Indeed, the Court said that it "does not presently address whether the information was properly filed in the public record," and now that issue is again before the Court, the Court is transferring the matter to another Court. However, the Court did not transfer *Ms. Omidi's Motion to Strike*.

**II.    As A Matter Of Fact The Government Has Not Withdrawn From This Case And Has Intervened As A Matter Of Right Under Rule 24(a).**

Without citation to facts or any prior confirmation by the government, the Court alleges that the Government "is not expected to play any role in this civil action," *Court's Order*, at 1. However, the Government has never *filed motion to withdraw as interveners*, see Dkt., which is customary and may be denied. See, e.g., *Hudnall v. Payne*, No. 6:14CV133, 2015 WL 163917, at *1 (E.D. Tex. Jan. 12, 2015) ("Intervenors' Motion to Withdraw Motions to Intervene (docket no. 130) is **DENIED**." (emphasis in original)).

What is more, the assertion that the Government "is not expected to play any role in this civil action," *Court's Order*, at 1, is not supported by the record. As noted above, in its *Request to Intervene*, the Government intervened under Federal Rules of Civil Procedure, Rule 24(a)(2), stating:

> Rule 24 of the Federal Rules of Civil Procedure provides the standards governing an application to intervene. It states that "upon timely application anyone shall be permitted to intervene in an action... when the applicant claims an interest relating to the property or transaction which is the subject of the action... ." Fed. R. Civ. P. 24(a)[2].

(*Request to Intervene*, p. 2, lines 14-19.) Rule 24(a) is an intervention as a matter "of right," which this Court granted. In this regard, in *United States v. State of Or.*, the Ninth Circuit held that

> Intervenors under Fed.R.Civ.P. 24(a)(2), such as the [USA in the case at bar], **enter the suit with the status of original parties** and are fully bound by all future court orders. *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir. 1978); 7A C. Wright & A. Miller, Federal Practice and Procedure s 1920 (1972); 3B Moore's Federal Practice P 24.16(6), at 24-671 to 24-673 (2d ed. 1981). **By successfully intervening, a party "makes himself vulnerable to complete adjudication by the federal court of the issues in litigation between the intervener and the adverse party."** *Id.* at 24-671.

657 F.2d 1009, 1014 (9th Cir. 1981) (emphasis added); see also *United States v. Oregon,* 657 F.2d at 1017 n. 18 (9th Cir.1981) (holding that "[t]he court below

COUNTERCLAIM DEFENDANT JULIAN OMIDI'S OBJECTION TO THE COURT'S
TRANSFER ORDER (Dkt. 262)

1  gained personal jurisdiction over [the intervenor] when it intervened as of right");

2  *Organized Kake v. United States Dep't of Agric.*, 795 F.3d 956, 963 (9th Cir. 2015)

3  ("[I]ntervenors are considered parties entitled . . . to seek review"); *City of Santa*

4  *Clara v. Kleppe,* 428 F.Supp. 315, 317 (N.D.Cal.1976) (holding that "[b]y

5  voluntarily intervening in this action under Rule 24, F.R.C.P., [the intervenor] has

6  submitted to the jurisdiction of this court"). Indeed, the Government has never

7  indicated that it will no longer participate in this matter, and, to the contrary, ***the***

8  ***Government (numbering at times in excess of five (5) representatives from the***

9  ***DOJ) is present at almost every single hearing.*** Thus, by deed and action, the

10  Government has indicated that it is fully participating in this matter. In fact, at a

11  prior hearing, former counsel for the Omidis brought the government's ubiquitous

12  and ominous presence in the courtroom and involvement to Judge Fitzgerald's direct

13  attention.

14      What is more, Counterclaimants have repeatedly relied on the Government's

15  criminal investigation in their pleadings to support their allegations to the detriment

16  of the Omidis—such as the very pleading that Mr. Omidi moves to strike. In fact,

17  Counterclaimant asserts a conspiracy claim premised specifically on the

18  Government's investigation. (*Supra* at **B**; *SACC*, at ¶404.) Indeed, Counterclaimants'

19  counterclaim is premised on the notion that the Government prepared a search

20  warrant allowing the Government seized at least $107 million from

21  Counterclaimants and now Counterclaimants seek to place a constructive trust on

22  those seized assets. (*Supra* at **C**.)

23

24  **III.    The Primary Relief Sought Is To Strike The Improper Pleadings *In This Case*.**

25      The *Court's Order* asserts that "the primary relief Mr. Omidi requests is

26  disqualification of 'the prosecution team' that is conducting a criminal investigation."

27  (*Court's Order*, at 1.) This is not correct. The primary relief sought is to have

28  documents filed *in this case* be stricken for violation of 26 U.S.C. §§ 6103, 7213 (a

-10-

1  felony). (*Motion to Strike*, at p. 1.) The Court transferring this matter to another

2  judge—of the same level, i.e., another district court judge—for determination of

3  striking documents filed in the docket of this Court has effectively deprived Mr.

4  Omidi of his requested remedy, because only this Court or another court can strike its

5  documents filed in its docket. See *Lentz v. Cahaba Disaster Relief, LLC (In re CDP*

6  *Corp.)*, 462 B.R. 615, 627 (Bankr. S.D. Miss. 2011) (noting that "a court's inherent

7  power to control its own docket" is "a far different proposition" than "request[ing]

8  that this Court exert authority directly over another court"); *Williams v. Smith*, No.

9  1:10CV501, 2010 WL 2816714, at *1 (M.D.N.C. July 15, 2010) *report and*

10  *recommendation adopted*, No. 1:10CV501, 2011 WL 1212812 (M.D.N.C. Mar. 28,

11  2011) ("This Court does not have control over another court's cases or judges.")

12    *Lapin v. Shulton*, 333 F.2d 169 (9th Cir. 1964) is instructive. There, the Ninth

13  Circuit affirmed a judgment of the District Court for the Southern District of

14  California, Central Division, dismissing an independent action brought to dissolve an

15  injunction issued by the United States District Court of Minnesota. The Ninth Circuit

16  reasoned that "considerations of comity and orderly administration of justice

17  demanded that the nonrendering court should decline jurisdiction of such an action

18  and remand the parties for their relief to the rendering court, so long as it is apparent

19  that a remedy is available there," see *id*. at 172.

20    As such, the *Court's Order* effectively deprives Mr. Omidi to have this Court

21  strike improper pleadings. Indeed, this issue is of the utmost importance, as explained

22  in *In re Smith*, 656 F.2d at 1107 ("The presumption of innocence, to which every

23  criminal defendant is entitled, was forgotten by the Assistant United States Attorney

24  in drafting and reading aloud in open court the factual resumes which implicated the

25  Petitioner in criminal conduct without affording him a forum for vindication.") In

26  fact, the recital of the factual resumes which implicated Mr. Omidi in criminal

27  conduct without affording him a forum for vindication is precisely what has

28  happened *in this case*, and this Court is declining to provide Mr. Omidi with fair

COUNTERCLAIM DEFENDANT JULIAN OMIDI'S OBJECTION TO THE COURT'S
TRANSFER ORDER (Dkt. 262)

1  redress of his grievances.

2

3  **IV.    The Relief Sought Is To Disqualify The AUSA's Appearing *In This Case*.**

4          Additionally, the Court's assertion that the *Motion to Strike* "requests . . . [the]

5  disqualification of 'the prosecution team' that is conducting a criminal

6  investigation," *Court's Order*, at 1, is not correct. The *Motion to Strike* request that

7  this Court disqualify the AUSA's appearing in this case, because the Government

8  "has not withdrawn from the case and is an active party as per Pacer.gov." (*Motion*

9  *to Strike.*, at 7.)

10          In fact, an intervener, such as the Government in this case, is a party to a case

11  in which they have intervened. The issue was conclusive decided in *Diamond v.*

12  *Charles*, which the United States Supreme Court specifically held that "**intervenors**

13  **are considered parties**". 476 U.S. 54, 68 (1986) (emphasis added) (citing *Mine*

14  *Workers v. Eagle-Picher Mining & Smelting Co.*, 325 U.S. 335, 338 (1945)).

15  Likewise, in *Local No. 93, Int'l Asso. of Firefighters, etc. v. Cleveland*, the Supreme

16  Court noted that a "party" includes "an original party, a party that was joined later,

17  or an intervenor." 478 U.S. 501, 528-29 (1986).

18          Similarly, the Supreme Court recently held in *U.S. ex rel. Eisenstein v. City of*

19  *New York, New York*, 556 U.S. 928 (2009) that *by definition* intervention occurs

20  when "a third party is allowed to become a party to the litigation":

21                  A "party" to litigation is "[o]ne by or against whom a
22          lawsuit is brought." Black's Law Dictionary 1154 (8th
            ed.2004). An individual may also become a "party" to a
23          lawsuit by intervening in the action. See *id.,* at 840
            (defining "intervention" as "[t]he legal procedure by which
24          ... a third party is allowed to become a party to the
            litigation"). As the Court long ago explained, " [w]hen the
25          term [to intervene] is used in reference to legal proceedings,
            it covers the right of one to interpose in, *or become a party*
26          *to,* a proceeding already instituted." *Rocca v. Thompson,*
            223 U.S. 317, 330, 32 S.Ct. 207, 56 L.Ed. 453 (1912)
27          (emphasis added). The Court has further indicated that
            intervention is the requisite method for a nonparty to
28          become a party to a lawsuit. See *Marino v. Ortiz,* 484 U.S.
            301, 304, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (*per*

-12-

1  *curiam*) (holding that "when [a] nonparty has an interest
2  that is affected by the trial court's judgment ... the better
   practice is for such a nonparty *to seek intervention* for
3  purposes of appeal" because "only parties to a lawsuit, or
   those that properly become parties, may appeal an adverse
4  judgment" (internal quotation marks omitted; emphasis
   added)). The United States, therefore, is a "party" to a
5  privately filed FCA action only if it intervenes in
   accordance with the procedures established by federal law.

6  *Id.*, at 932-33.

7  Here, under *U.S. ex rel. Eisenstein*, it is beyond dispute that the USAO has

8  intervened on behalf of the United States in the case at bar and has become "a party

9  to [the] lawsuit." *United States v. State of Or.*, 657 F.2d at 1014 "By successfully

10 intervening, a party makes himself vulnerable to complete adjudication by the

11 federal court of the issues in litigation between the intervener and the adverse party."

12 (internal quotations and citation omitted). As such, the AUSAs should be sanctioned,

13 *in this case*, by disqualification from any further representation of the USA in the

14 case at bar.

15                        **<u>CONCLUSION</u>**

16 Counterclaim Mr. Omidi hereby objects Judge Michael W. Fitzgerald's order

17 transferring of Mr. Omidi's motion to strike the Government's opposition (to

18 Counterclaim Defendants' motion for an order release *in camera* documents. By his

19 1-26-16 Order to referring the disqualification issue to be heard by another judge,

20 Judge Fitzgerald has conceded that his conflict of interest precludes him from

21 adjudicating any sanctions or adverse actions against the AUSAs who have

22 intervened in this case and are supervised by the Judge's twin brother and business

23 partner with whom he shares a single family residence, First Assistant United States

24 Attorney Patrick Fitzgerald. "Generally, the more intimate relationship between a

25 judge and a person who is interested in a proceeding pending before him, the more

26 acute concern that the judge may be tempted to depart from the expected judicial

27 demeanor or to reasonably appear to have done so." Richard E.  Flamm, Judicial

28 Disqualification—*Recusal and Disqualification of Judges* 170 (2007).  "In fact,

-13-

where a judge does not voluntarily recuse himself from a case which implicates the interests of his close relatives, not merely disqualification but disciplinary action may be in order." *Id.*, at 171.Thus, the substantial admitted conflict of interest and the appearance of impropriety in this case are both glaring. Further, per binding Ninth Circuit authority of *United States v. Holland*, 519 F.3d 909 (9th Cir. 2008), [if] it is a close case, the balance tips in favor of recusal." *Id.*, at 912 There is no other option than the recusal of Judge Fitzgerald.

Dated:  January 27, 2016                            Respectfully submitted,


                                                   /s/ Robert J. Rice
                                                   Robert J. Rice, Esq.
                                                   LAW OFFICES OF ROBERT J. RICE
                                                   rjriceesq5@gmail.com
                                                   6380 Wilshire Boulevard, Suite 820
                                                   Los Angeles, California 90048
                                                   Telephone (323) 297-3700

                                                   Attorney for Respondent,
                                                   JULIAN OMIDI

COUNTERCLAIM DEFENDANT JULIAN OMIDI'S OBJECTION TO THE COURT'S TRANSFER ORDER (Dkt. 262)

# PROOF OF SERVICE

I am employed and a resident of the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 6380 Wilshire Boulevard, Suite 820, Los Angeles, California, 90048.

On January 27, 2016, I served the document described as:

**COUNTERCLAIM DEFENDANT JULIAN OMIDI'S OBJECTION TO THE COURT'S TRANSFER ORDER (Dkt. 262)**

Upon the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

_____ (By Mail)  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing contained in affidavit.

_____(By Facsimile Transmission)  I caused the foregoing document to be served by facsimile transmission to each of the interested parties at the facsimile machine telecopy number shown in the service list attached hereto.

___X___ (By Electronic Mail/ECF) Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/4/2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated in the attached service list below:

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 27, 2016, at Los Angeles, California.

/s/ Robert J. Rice_____
Robert J. Rice

1

## SERVICE LIST

2

Barbara E Taylor     asotelo@sheppardmullin.com, btaylor@sheppardmullin.com,
3
pchand@sheppardmullin.com

4

Stephen P Lucke     wolfe.susan@dorsey.com, lucke.steve@dorsey.com

5

Timothy E Branson     skwiera.linda@dorsey.com, branson.tim@dorsey.com
6

7

Daron L Tooch     grodriguez@health-law.com, hlbdocket@health-law.com,
dtooch@health-law.com

8

9

Michelle S Grant     skwiera.linda@dorsey.com, grant.michelle@dorsey.com,
vallant.katherine@dorsey.com

10

11

Ryan Daniel Kashfian     ptokar@kashfianlaw.com, ecf-filings@kashfianlaw.com,
onovak@kashfianlaw.com, ryan@kashfianlaw.com

12

13

Bryan David Daly     bdaly@sheppardmullin.com

14

Michael E Rowe     rowe.michael@dorsey.com

15

Rabea Jamal Zayed     motzko.sheila@dorsey.com, zayed.rj@dorsey.com
16

17

Bridget A Gordon     grodriguez@health-law.com, bgordon@health-law.com

18

Evan J Davis     evan.davis@usdoj.gov, susan.cavallone@usdoj.gov

19

Eric David Chan     grodriguez@health-law.com, echan@health-law.com
20

21

Kirsten Schubert     hilgers.sheri@dorsey.com, schubert.kirsten@dorsey.com

22

Olga Novak     ecf-filings@kashfianlaw.com, onovak@kashfianlaw.com

23

Robert J Rice     rjriceesq@aol.com, rjriceesq5@gmail.com
24

25

Katherine Markowski Dru     kdru@health-law.com, hlbdocket@health-law.com,
greese@health-law.com

26

27

Nicole Elizabeth Wurscher     kls@walravenlaw.com, new@walravenlaw.com

28

Consuelo S Woodhead     usacac.criminal@usdoj.gov,
consuelo.woodhead@usdoj.gov

Maureen Jaroscak    maureenjaroscak@live.com

Bryan Scott Westerfeld    bwesterfeld@walravenlaw.com

Larry A Walraven    jridley@calemployerlaw.com, bwesterfeld@calemployerlaw.com, ksullivan@calemployerlaw.com, lwalraven@calemployerlaw.com

Andrew J Holly    kaemmer.lori@dorsey.com, holly.andrew@dorsey.com

Kristen A Williams    kristen.williams@usdoj.gov, usacac.criminal@usdoj.gov

Charles L Kreindler    aanguiano@sheppardmullin.com, ckreindler@sheppardmullin.com

Robert Adam Kashfian    anna@kashfianlaw.com, ecf-filings@kashfianlaw.com, robert@kashfianlaw.com

PROOF OF SERVICE