1  **BRYAN WESTERFELD (S.B. # 218253)**
   bwesterfeld@calemployerlaw.com
2  **NICOLE E. WURSHER (S.B # 245879)**
   nwurscher@calemployerlaw.com
3  **WALRAVEN & WESTERFELD LLP**
   101 Enterprise, Suite 350
4  Aliso Viejo, CA 92656
   Telephone:  (949) 215-1997
5  Facsimile:   (949) 215-1999

6  **R.J. ZAYED (MN ID #0309849)**
   zayed.rj@dorsey.com
7  **STEPHEN P. LUCKE (MN ID #151210)**
   lucke.steve@dorsey.com
8  **TIMOTHY BRANSON (MN ID #174713)**
   branson.tim@dorsey.com
9  *Admitted pro hac vice*
   **DORSEY & WHITNEY LLP**
10 Suite 1500, 50 South Sixth Street
   Minneapolis, MN 55402-1498
11 Telephone:  (612) 340-2600
   Facsimile:   (612) 340-2868
12
   Attorneys for Defendant UnitedHealth Group Incorporated;
13 and Defendants/Counterclaim Plaintiffs
   United Healthcare Services, Inc., UnitedHealthcare
14 Insurance Company; OptumInsight, Inc.

15                    UNITED STATES DISTRICT COURT

16                    CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, *et al.*, | Case No 2:14-cv-03053-MWF(AFMx) |
| Plaintiffs, | **DEFENDANTS' AND COUNTER-PLAINTIFFS' OPPOSITION TO COUNTER-DEFENDANT JULIAN OMIDI'S MOTION TO RECUSE JUDGE MICHAEL W. FITZGERALD** |
| v. | |
| UNITEDHEALTH GROUP INCORPORATED, *et al.*, | |
| Defendants. | |
| | Case assigned to: Hon. Michael W. Fitzgerald |
| UNITED HEALTHCARE SERVICES, INC., *et al.*, | |
| | Magistrate Judge: Hon. Alexander F. MacKinnon |
| Counter-Plaintiffs, | |
| v. | Disqualification Motion Referred to: Judge Otis D. Wright II |
| ALMONT AMBULATORY SURGERY CENTER, LLC, *et al.*, | |
| Counter-Defendants. | |

## I. INTRODUCTION

Defendant and Counterclaim Plaintiffs (collectively "United") are nearing the second anniversary of Plaintiffs' lawsuits seeking to recover allegedly unpaid medical claims.[1] In this removed action, United filed a counterclaim alleging that the Counterclaim Defendants, led by brothers Julian and Michael Omidi and their mother Cindy Omidi, conspired to defraud United and hundreds of the group health plans it administers into paying fraudulent medical claims. United alleges that the Omidis own, control, or manage dozens of ambulatory surgical centers, billing entities, and management companies, among others, and through this maze of corporate entities, Counterclaim Defendants fraudulently induced approximately 2,000 patients into receiving medical treatment by promising to waive co-pays, co-insurance, deductibles, and other amounts due under the terms of the members' plans. The Counterclaim Defendants then submitted fraudulent medical claims to United after failing to account for these waivers. In yet other instances, the Providers told patients—falsely—that their health plans covered Lap Band treatment knowing that their plans provided no such coverage. Then, after the patients endured preparatory tests, for which the Providers billed United, the providers finally informed their patients they did not have coverage for Lap Band surgery. Nearly the entire Second Amended Counterclaim ("SACC"), including claims for fraud and conspiracy, intentional interference with contractual relations, conversion, and ERISA § 502(a)(3) remains viable even following Counterclaim Defendants' successive motions to dismiss. Dkts. 238-39; 241-42; 244. Judge Michael Fitzgerald has presided over this action since the beginning.

---

[1] On March 20, 2014, Plaintiffs filed suit against United and hundreds of other employers and employee-benefit plans in Case No. 14-cv-2139. One day later, Plaintiffs filed a similar suit against United only in California state court. On April 21, 2014, United successfully removed this case, Case No. 14-cv-3053. Dkt. 1.

After nearly two years of litigation and more than one year since federal prosecutors intervened solely to oppose a discovery motion filed by Counterclaim Defendants, Julian Omidi now seeks to remove Judge Fitzgerald;[2] the second such recusal motion brought by Counterclaim Defendants. *See* Dkt. 110. Omidi wrongly questions Judge Fitzgerald's impartiality because his brother, Patrick Fitzgerald, was appointed First Assistant U.S. Attorney for the Central District of California in August 2015, over six months after Judge Fitzgerald ruled on the one issue to which the government had an interest. Specifically, Omidi contends that the government's participation as a limited intervenor creates a conflict of interest because Judge Fitzgerald cannot fairly rule on matters in which his brother may supervise other federal prosecutors. The premise to Omidi's argument, however, is flawed. The government is not and has never been a party to this action, nor was Judge Fitzgerald's brother a supervisory attorney when the government intervened. There is no actual or perceived conflict. Like the previous and unsuccessful motion to recuse Magistrate Judge Kenton, this Court should deny Julian Omidi's motion to recuse Judge Fitzgerald.

## II. PROCEDURAL HISTORY

This removed action was previously assigned to Magistrate Judge Victor Kenton. Prior to his involvement in this case, Magistrate Judge Kenton issued warrants related to the government's criminal investigation of the Omidis and their related business interests. Magistrate Judge Kenton disclosed this to all parties during a discovery hearing on December 12, 2014. Dkt. 97, at 17:25-20:16. On January 5, 2015, Counterclaim Defendants, including Julian Omidi, moved for (1) an order releasing to Counterclaim Defendants only sealed affidavits related to the government's seizure warrants; and (2) in the alternative, the recusal of Magistrate Judge Kenton. Dkt. 110. They argued that Magistrate Judge Kenton's review of the

---

[2] Prior to bringing his current motion, counsel for Julian Omidi failed to meet and confer with opposing counsel as required under L.R. 7.3.

affidavits supporting the warrants may create a conflict with his duties in this civil action. But before asking for his removal, Counterclaim Defendants argued that they needed to first review the sealed affidavits to determine whether a conflict existed. In other words, Counterclaim Defendants put the related criminal investigation at issue by seeking access to the affidavits.

The government quickly sought to oppose Counterclaim Defendants' motion. On January 15, 2015, the government moved to intervene to oppose Counterclaim Defendants' "clever" attempt to gain access to federal investigators' otherwise sealed materials. *See* Dkt. 121; 258. The government argued that it "should be permitted to intervene to protect its own interests in the ongoing criminal investigation by opposing any effort to allow viewing of the sealed affidavits." Dkt. 121, at 2. The Court granted the motion, Dkt. 123, and the government filed its opposition to Counterclaim Defendants' motion that same day, Dkt. 122. In its opposition brief, the government identified the specific offenses that comprised its Omidi-related investigation. *Id.* at 6 n.1. Notwithstanding that a protective order was in place, neither Omidi, his brother Michael, nor the other Counterclaim Defendants objected to the government's disclosure of the specific offense under investigation or sought to have it placed under seal.

On February 11, 2015, Judge Fitzgerald held a hearing regarding Counterclaim Defendants' motion to review the sealed affidavits, as well as other motions. Dkt. 258, at 4. Judge Fitzgerald ultimately denied Counterclaim Defendants' motion. Dkt. 146.

Omidi makes no allegation that Patrick Fitzgerald had any involvement in the government's intervention opposing Counterclaim Defendants' motion to gain access to the sealed affidavits. At the time, Patrick Fitzgerald's position at the U.S. Attorney's Office was as Chief of the National Security Section. *See* http://www.justice.gov/usao-cdca/front-office. He had no supervisory responsibility over the prosecutors that filed to intervene. *Id.; see also* Dkt. 258, at 1. Omidi makes

no allegation that Judge Fitzgerald was obligated in any way to disclose his relationship to Patrick Fitzgerald when the government appeared before him in January and February 2015 (prior to Patrick Fitzgerald's promotion) for the limited purpose to object to the unsealing of the affidavits in support of the seizure warrants, or that there was any basis for recusing Judge Fitzgerald at that time.

Since its limited intervention and appearance in January and February 2015, the government has filed nothing further or otherwise appeared on behalf of the government at any hearing in this matter. On August 3, 2015, almost six months after the government last appeared in this case, Judge Fitzgerald's brother, Patrick Fitzgerald, was appointed First Assistant U.S. Attorney for the Central District of California. Dkt. 258; *see also* http://www.justice.gov/usao-cdca/front-office. It is this appointment that Omidi cites as the basis for filing the instant motion.

### III. ARGUMENT

#### A. The government is not a party to this litigation.

Julian Omidi's argument that Judge Fitzgerald's "impartiality might reasonably be questioned" rests squarely on the premise that the United States is a party to this litigation. *See* Dkt. 256 at 9. But, the government is not now, nor has it ever been a party. The government has asserted no claims or cross-claims against Counterclaim Defendants, nor does it have an interest in any future judgment issued in this matter. Simply, the government is not a party.[3]

The Ninth Circuit has long recognized that a district court maintains "discretion to limit intervention to particular issues." *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974) (limiting how the EEOC may intervene under Rule 24); *see also* Wright & Miller, *Fed. Practice & Procedure* § 1922 (3d ed. 2012). In fact, non-

---

[3] Julian Omidi's continued reference to real estate jointly owned by Judge Fitzgerald and Patrick Fitzgerald is a red herring. Because Patrick Fitzgerald and the rest of the U.S. Attorneys' Office is not a party to this litigation, Judge Fitzgerald has no obligation to disclose the personal or business relationship he may have with his brother.

parties routinely seek to intervene where they assert no claim or cross claim. For example, in *San Jose Mercury News, Inc. v. U.S. Dist. Court - N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999), a newspaper moved to intervene for the limited purpose of modifying a protective order. Despite its motion, the newspaper did not become a party in interest to the sexual-harassment case brought by two former police officers against the city merely because of its limited participation. Other courts have similarly granted motions for limited interventions. *See, e.g.*, *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (finding that "[i]]ntervenors do not ask the district to rule on additional claims or seek to become parties to the action"); *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309, 312 (E.D.N.Y. 2000) (permitting U.S. Department of Justice to intervene for limited purpose of modifying the protective order). These types of limited Rule 24 motions do not otherwise transform the intervenor into a party to the litigation

Here, the government sought, with the Court's approval, to intervene solely to oppose Counterclaim Defendants' attempt to review sealed investigatory materials. Dkt. 121. The government requested that it "be permitted to intervene to protect its own interests in the ongoing criminal investigation *by opposing any effort to allow viewing of the sealed affidavits.*" *Id.* at 2 (emphasis added). The government did not intervene to protect an interest in the ultimate outcome of the case; rather, its intervention was only to protect an interest that was at issue in one specific motion pending at that time—the unsealing of the government affidavits in support of the seizure warrants. *Id.* ("since the government has a strong interest in the *outcome of Counterclaim Defendants' motion to unseal* the affidavit at issue . . . the government respectfully requests that the Court grant this request") (emphasis added). Indeed, the government specifically noted that it took no position on the alternative relief sought in the motion, an order recusing Magistrate Kenton, who signed the warrants. *Id.* This

limited intervention did not make the United States a party to this civil dispute.[4] It opposed the motion to unseal the affidavit at issue and has had no part in the litigation since then. In other words, the government's appearance was "temporary." Dkt. 258 at 2.

Julian Omidi cites no authority disputing the ability of a non-party to move for limited intervention. To the contrary, Omidi cites only two inapposite cases for the unremarkable proposition that third-party intervenors that assert their own claims or cross-claims are entitled to fully litigate the merits of those claims. *See, e.g.*, *In re W.T. Grant Co.*, 85 B.R. 243, 247 (Bankr. S.D.N.Y. 1988) (addressing a named intervenor in a bankruptcy proceeding); *Cook Cnty. v. Midcon Corp.*, 574 F. Supp. 902, 905 (N.D. Ill. 1983) (addressing an intervenor as a defendant and counter-plaintiff). Unlike the intervenors in *Grant* and *Midcon*, the government in this case has asserted none of its own claims against Counterclaim Defendants, or United for that matter. *Grant* and *Midcon* do not alter the conclusions that the court may limit a third-party's intervention, or that Judge Fitzgerald so limited the government's involvement in this case.

Because the premise of Omidi's recusal motion is that Judge Fitzgerald's brother represents a "party," the government's status as a non-party in this civil litigation is fatal to his argument.

### B. The government's intervention for limited purposes and subsequent inactivity do not provide grounds for recusal.

Further, nothing about the government's intervention for limited purposes in January and February 2015 raises any basis for recusal. Omidi makes no allegation that Patrick Fitzgerald had any involvement—supervisory or otherwise—with this case *at that time*.[5] Nor does he argue that that there was anything for Judge Fitzgerald to

---

[4] When filing its opposition brief to the motion to unseal affidavits, the government specifically noted it was doing so as a "third party." Third Party United States of America's Opposition, Dkt. 122.

[5] Specifically, Omidi asserts that under the Judicial Conference's Advisory Opinion 38, he may seek

disclose *at that time* about his relationship with his brother, who was not the First Assistant.

That appointment did not occur until August 3, 2015, but by then nearly six months had passed since the government intervened or otherwise appeared in this matter. In his motion, Omidi cites no event or circumstance in the case *after* Patrick Fitzgerald became First Attorney that would have occasioned any disclosure or recusal by Judge Fitzgerald.

It is simply undisputed that when the government intervened in this case, there was no reason to question Judge Fitzgerald's impartiality based on his relationship with his brother, and when Judge Fitzgerald's brother held a position that Omidi claims would be grounds for recusal if the government appeared before Judge Fitzgerald, the government has not appeared before Judge Fitzgerald. There has never been a time in this case when it would have been appropriate, practical or necessary for Judge Fitzgerald to disclose his relationship with his brother, or for any party to request his recusal. (Even if the government appeared before Judge Fitzgerald at a time when Patrick Fitzgerald was First Assistant, this does not mean that Judge Fitzgerald cannot hear the matter. As the government notes, it is the United States Attorney's policy that for any case before Judge Fitzgerald, Patrick Fitzgerald is recused from participating in the case. *See* Declaration of Michelle Grant ("Grant Decl."), Ex. 1. The United States Attorney's Office informed Omidi's counsel of this policy. *Id.*)

Notwithstanding this clear chronology, Omidi persists in his attempt to dislodge Judge Fitzgerald from this case.[6] He suggests that the government did indeed remain a

---

recusal of a judge whose relative is employed as an assistant U.S. attorney when the relative is (1) "acting as an attorney" or (2) "acting as a supervisor," but he does not claim that either circumstance applied when the government intervened for limited purposes.

[6] Although Omidi only moves to recuse Judge Fitzgerald from the above matter, it is by Order dated May 9, 2014 related to case 14-cv-02139-MWF (VBKx) (Dkt. 13), because, among other things, it raises many of the same claims and involves the same parties. Insofar as Omidi seeks recusal in other

"party" through the present because it continued after the conclusion of its business before the Court to observe hearings. This does not support recusal. Occasionally sitting in the courtroom gallery during public hearings does not trigger an obligation to disclose or recuse, and Omidi cites no authority that it does. To argue otherwise not only places impractical burdens on the judiciary, but undermines the purpose of open courtrooms that are fundamental to our system of justice.

Omidi cites numerous cases that recite the general rule requiring judges to disclose information that may call into question the judge's impartiality, but his motion cites no facts that would support such a recusal under the circumstances alleged here. Contrary to Omidi's argument, the fact that he is under criminal investigation (a fact that *he* first injected into these proceedings when he sought to stay them, Dkt. 102) does not suggest that a judge presiding over a *civil* lawsuit against him would not be impartial and he cites no authority that it does.[7]

Nor is the possibility that the government may appear as a party in the future in these proceedings grounds for ordering Judge Fitzgerald's recusal at this time. Omidi suggests that in the event of a vacancy in the U.S. Attorney position, Patrick Fitzgerald may be called upon to serve as Acting U.S. Attorney, creating a situation under

---

"associated" cases, Rice Decl. ¶ 15, United notes that no motion has been made in case 14-cv-02139-MWF (VBKx), which also involves hundreds of health plans and their sponsoring employers, as well as over 40 law firms that have not been given notice. Given the number of defendants and counsel, 14-cv-02139-MWF (VBKx) has presented significant case management issues, and indeed, was assigned to Judge Fitzgerald only after 6 other judges recused themselves due, presumably, to the large number of corporate defendants.

[7] Omidi argues in a related motion to disqualify the government attorneys from further participation in this case, that the argument of his mother and Counterclaim Defendant Cindy Omidi in August 2015 that the government broke the law when it revealed certain specific offenses for which the government was investigating the Omidis should have triggered Judge Fitzgerald's duty to disclose his relationship to the First Assistant. Dkt. 263. Because Omidi does not raise that argument in this motion to recuse Judge Fitzgerald, it is not a ground for doing so. In addition, Julian did not move to strike a part of United's counterclaim that referenced the government's allegedly improper disclosure about the nature of its investigation; any failure on the part of Judge Fitzgerald to disclose his family relationship at that time only affected Cindy Omidi—not Julian. Further, Judge Fitzgerald never reached the merits of Cindy Omidi's accusation about government misconduct, relying instead on the publically-available nature of the facts that she sought to strike from United's counterclaim in denying her motion.

Advisory Opinion 38 in which Judge Fitzgerald's impartiality might be questioned, but in addition to such an event being entirely speculative, he cites no foreseeable circumstance necessitating the government's involvement in this case. In addition, in matters in which it appears before Judge Fitzgerald, the government routinely recuses Patrick Fitzgerald from participating in the case, *see* Grant Decl., Ex. 1, and there would be no basis for questioning Judge Fitzgerald's impartiality in such a future matter either.

The one circumstance that Judge Fitzgerald identified as a potential reason for the government to appear again in this matter—to seek a stay in the event there is a criminal indictment—also does not require recusal. Dkt. 258 at 6. Not only is the outcome of a criminal investigation speculative, but the chance that the government would move to stay these proceedings in such an event is speculative as well. Should those events occur, the question whether the trial judge's impartiality can reasonably be questioned based on a family relationship where the family member is recused from appearing before the trial judge or involvement in the case can be evaluated at that time. *See In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) ("A 'remote, contingent, or speculative interest' does not reasonably bring into question a judge's impartiality."); *In re Trujillo*, 2009 WL 5218421, at *3 (D. Ariz. Dec. 22, 2009) ("recusal is not required when the debtor's claim is based on unsupported, irrational or highly tenuous speculation") (internal quotation marks omitted). In the meantime, no grounds exist for interrupting the work that has been done in the last two years on this case, and potentially disrupting the management of the related matter, by granting Omidi's motion to recuse Judge Fitzgerald.

## IV. CONCLUSION

Julian Omidi's recusal motion rests on the mistaken assumption that the United States is a party to this civil litigation. It is not. Further, because Patrick Fitzgerald never acted in a supervisory role over any federal prosecutor when the government

intervened for limited purposes, and the government has not appeared before him since that time, there is no basis for Judge Fitzgerald to have disclosed his relationship to Patrick Fitzgerald or recused himself from this matter. This Court should deny Julian Omidi's motion.

Dated: February 2, 2016    **WALRAVEN & WESTERFELD LLP**

By: /s/ Bryan S. Westerfeld
BRYAN S. WESTERFELD

Attorneys for Defendant UnitedHealth Group Incorporated;
and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company; OptumInsight, Inc.

Dated: February 2, 2016    **DORSEY & WHITNEY LLP**

By: /s/ R.J. Zayed
R.J. ZAYED

*Admitted Pro Hac Vice*
Attorneys for Defendant UnitedHealth Group Incorporated;
and Defendants/Counterclaim Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company; OptumInsight, Inc.