Exhibit 3

```
 1  STEPHANIE YONEKURA
    Acting United States Attorney
 2  ROBERT E. DUGDALE
    Assistant United States Attorney
 3  Chief, Criminal Division
 4  STEVEN R. WELK
    Assistant United States Attorney
 5  Chief, Asset Forfeiture Section
    California Bar No. 149883
 6       Federal Courthouse, 14th Floor
 7       312 North Spring Street
         Los Angeles, California 90012
 8       Telephone: (213) 894-6166
         Facsimile: (213) 894-7177
 9       E-mail: Steven.Welk@usdoj.gov
10
    Attorneys for
11  United States of America
```

| | |
|---|---|
| 12 | UNITED STATES DISTRICT COURT |
| 13 | FOR THE CENTRAL DISTRICT OF CALIFORNIA |
| 14 | WESTERN DIVISION |

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF ALL FUNDS ON DEPOSIT IN DEUTSCHE BANK SECURITIES, INC., ACCOUNT NUMBERS<br><br>**REDACTED**<br><br>AND<br><br>UP TO $11,666,645.00 ON DEPOSIT IN BANK OF AMERICA ACCOUNT NUMBER **REDACTED**, AND UP TO $5,630,385.00 ON DEPOSIT IN BANK OF AMERICA ACCOUNT NUMBER **REDACTED**. | CASE NO. CV 15-389 ODW (VBKx)<br><br>**GOVERNMENT'S NOTICE OF MOTION AND MOTION TO DISMISS MOTION FOR RETURN OF PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF AUSA STEVEN R. WELK**<br><br>DATE: April 13, 2015<br>TIME: 1:30 pm<br>CTRM: 11 (Spring St.) |

Notice is hereby given that on April 13, 2015, in Courtroom 11 of the United States Courthouse located at 312 No. Spring

1

Street in Los Angeles, Respondent United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California, will and hereby does move to dismiss the Motion for Return of Property filed by Movants Cindy Omidi, Asset Management Irrevocable Trusts via Trustee Asiatrust Nevis Ltd, aka Asiatrust Ltd., and Property Care Insurance, Inc. (collectively, "Movants") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Motion fails to state a claim upon which relief can be granted. This motion is based upon the memorandum of points and authorities, declaration and exhibits attached hereto, the pleadings on file in this matter, and whatever additional evidence and argument may be presented at the hearing on the matter.

    This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on and before February 20, 2015.

DATED: March 13, 2015    STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

    /s/ Steven R. Welk
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for
United States of America

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES..................................................ii

I.   INTRODUCTION.....................................................1

II.  STATEMENT OF FACTS...............................................2

III. ARGUMENT.........................................................4

     A.  Movants' Motion is Procedurally Improper....................4

     B.  Section 983 is Procedurally and Factually
         Inapplicable Here...........................................5

     C.  The Instant Motion is A Motion for Return of
         Property Under Federal Rule of Criminal Procedure
         41(g) and Must Be Treated As a Civil Complaint..............9

     D.  Movants Have Failed to State a Claim For Which
         Relief Can Be Granted......................................10

     E.  Movants Are Not Entitled to the Return of the
         Seized Assets..............................................12

IV.  CONCLUSION......................................................14

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                           PAGE

Balistreri v. Pacifica Police Department,
    901 F.2d 696 (9th Cir. 1990)................................10

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).........................................11

Campanelli v. Bockrath,
    100 F.3d 1476 (9th Cir. 1996)...............................11

In re Daou Systems, Inc.,
    411 F.3d 1006 (9th Cir. 2005)...............................11

DeSoto v. Yellow Freight System, Inc.,
    957 F.2d 655 (9th Cir. 1992)................................11

Gompper v. VISX, Inc.,
    298 F.3d 893 (9th Cir. 2002)................................11

In re Intermagnetics America, Inc.,
    101 B.R. 191 (C.D. Cal. 1989)...............................10

Miranda v. Anchando,
    654 F.3d 911 (9th Cir. 2011)................................7

Mission Power Energy Co. v. Continental Casualty Co.,
    883 F. Supp. 488 (C.D. Cal. 1995)...........................10

Pareto v. FDIC,
    139 F.3d 696 (9th Cir. 1998)................................11

Pieper v. United States,
    604 F.2d 1131 (8th Cir. 1979)...............................10

United States v. $8,850,
    461 U.S. 555 (1983).........................................9

United States v. Ibrahim,
    522 F.3d 1003 (9th Cir. 2008)...............................9

United States v. Ritchie,
    342 F.3d 903 (9th Cir. 2003)................................9

**FEDERAL STATUTES AND RULES**

18 U.S.C. § 981(g)(1) .................................................. 13
18 U.S.C. § 983 ................................................. 5, 9, 12
18 U.S.C. § 983(a) ................................................ 1, 4, 5
18 U.S.C. § 983(a)(1) ............................................ 5, 8, 11
18 U.S.C. § 983(a)(1)(A) ......................................... 6, 8, 11
18 U.S.C. § 983(a)(1)(A)(i) ....................................... 5, 7, 8
18 U.S.C. § 983(a)(1)(B) ................................................ 6
18 U.S.C. § 983(a)(1)(C) ................................................ 6
18 U.S.C. § 983(a)(1)(D)(v) ............................................ 13
18 U.S.C. § 983(a)(1)(F) ........................................... passim
18 U.S.C. § 983(a)(2) .................................................. 5
18 U.S.C. § 983(a)(3) .................................................. 6
18 U.S.C. § 983(a)(3)(A) ............................................ 8, 13
18 U.S.C. § 983(a)(3)(B) ............................................ 9, 13
19 U.S.C. § 1607 ....................................................... 7
19 U.S.C. § 1607(a)(1) ................................................. 7
19 U.S.C. § 1607(a)(4) ................................................. 7
31 U.S.C. § 5312(a)(3) ................................................. 7
Fed. R. Civ. P. 12(b)(6) .............................................. 10
Fed. R. Crim. P. 41(g) ........................................ 1, 5, 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Movants Cindy Omidi ("Omidi"), Property Care Insurance, Inc. ("PCI"), and Asset Management Irrevocable Trusts via Trustee Asiatrust Nevis Ltd, aka Asiatrust Ltd ("the Trusts") (collectively, "Movants") have filed a motion, purportedly pursuant to 18 U.S.C. § 983(a), for the return of property seized pursuant to two federal seizure warrants ("Motion for Return"). The property at issue consists of monies and securities seized from several accounts held at Deutsche Bank Securities, Inc. ("Deutsche Bank") and Bank of America ("BofA"). For the reasons explained below, the Motion for Return must be dismissed because it is both procedurally insufficient and fails to state a claim upon which relief can be granted.

First, § 983(a) is not a basis for a motion for return of property. The Motion for Return is in fact a motion for return of property under Federal Rule of Criminal Procedure 41(g). Where, as here, there is no pending criminal case involving the property at issue, such a motion must be treated for all purposes as a civil complaint for equitable relief. Under the applicable standards, it must be dismissed because it fails to state a claim upon which relief can be granted.

Substantively, Movants' claims fail because they are based upon carefully-selected provisions of statutes that have no application to the underlying facts. Movants' arguments are based on a patently erroneous reading of the authority relied upon and a gross misstatement of the facts. For example, they argue that they are entitled to the immediate return of the

seized assets because the government failed to provide them with notice of the seizure of the assets within sixty days. As explained below, the 60-day notice requirement does not apply to these seizures but – if it did – the undisputed evidence establishes that the government did in fact give Movants notice of the seizures well within the 60 days following the seizures.

As further explained below, the defects in the Movants' moving papers cannot be remedied by amendment. The government requests that the Motion to Return be dismissed without leave to amend.

**II.   STATEMENT OF FACTS**

On May 23, 2014, the Honorable Victor B. Kenton, United States Magistrate Judge, issued a seizure warrant for all funds on deposit in twelve accounts held at Deutsche Bank Securities, Inc. ("Deutsche Bank"). See exhibit B to Motion for Return. That warrant was executed on June 4, 2014, resulting in the seizure of approximately $92,000,000.00 in funds and securities held in the targeted accounts.

On the day of the seizures, Assistant United States Attorney Steven Welk received a telephone call from attorney Charles Kreindler, who was inquiring about the seizures. AUSA Welk responded to Mr. Kriendler in an email at 11:18 am on June 4, 2014, advising that before he could provide Mr. Kriendler with any information concerning the seizures, Mr. Kriendler would have to confirm in writing that he represented the accountholders for the seized accounts. See exhibit A to the Welk Decl. Mr. Kriendler replied in an email at 3:12 pm on June

Case 2:14-cv-03053-MWF-AFM Document 295-3 Filed 02/25/16 Page 9 of 20 Page
Case 2:15-cv-00389-ODW-VBK Document 13 Filed 03/13/15 Page 8 of 19 Page ID #:148
ID #:10419

1  4, 2014, indicating that he needed to "check on representation."
2  Welk Decl., exhibit B.
3       On June 5, 2014, at 1:33 pm, AUSA Welk received an email
4  from attorney Robert Klueger in which Klueger stated that he was
5  authorized to speak with AUSA Welk concerning the seized
6  accounts. Welk Decl., exhibit C. Attached to the email was a
7  letter from Mr. Klueger to AUSA Welk listing nine of the seized
8  accounts and advising that Mr. Klueger was representing Asia
9  Trust Ltd., the trustee/account holder for those accounts. Welk
10 Decl., exhibit D. At 5:19 pm on June 5, 2014, AUSA Welk
11 received an email from attorney Roger Diamond in which Diamond
12 advised that he was representing Property Care Insurance
13 ("PCI"), the accountholder of the remaining three accounts that
14 had been seized. Welk Decl., exhibit E.
15      On June 6, 2014 at 9:21 am, AUSA Welk sent an email to Mr.
16 Klueger with copies of the seizure warrant used to seize the
17 Deutsche Bank accounts and a further order obtained by the
18 government on June 3, 2014, addressing how Deutsche Bank should
19 process the seizure. Welk Decl., exhibit F. The copy of the
20 seizure warrant included the completed return, indicating that
21 the contents of the targeted accounts had been seized. Welk
22 Decl., exhibit G. On June 6, 2014 at 9:39 am, Mr. Klueger sent
23 an email to AUSA Welk authorizing the government to discuss with
24 Mr. Diamond all aspects of the seizure of the Asia Trust
25 accounts. Welk Decl., exhibit H. On June 6, 2014, at 10:23 am,
26 AUSA Welk sent Mr. Diamond an email attaching the seizure
27 warrant and further order. Welk Decl., exhibit I.
28

On June 24, 2014, Judge Kenton issued a seizure warrant for funds held in two separate accounts at BofA in the name of PCI. See exhibit C to Motion for Return. That warrant was executed that same day, resulting in the seizure of an additional $17,297,000.00. On July 2, 2014, at 9:18 am, AUSA Welk sent an email to Mr. Diamond advising him of the seizures and attaching a copy of the seizure warrant. Welk Decl., exhibit J.

Several months later, on November 3, 2014 at 12:40 pm, attorney James Spertus (counsel for Movants here) sent an email to AUSA Welk asking about the "Omidi seizure," and purporting to represent "the entities from whom the funds were seized." Welk Decl., exhibit K. In a reply email, AUSA Welk asked for and received confirmation from Mr. Spertus that he had been retained by the accountholders, as AUSA Welk's most recent communications had been with Mr. Diamond. Id. Mr. Spertus confirmed that he and Mr. Umhofer had replaced Mr. Diamond as the attorneys for the accountholders. Id. Since that time, government counsel have had numerous conversations with Spertus and Unhoffer in which the seized assets were discussed. There was also an in-person meeting at the offices of the U.S. Attorney on November 14, 2014, attended by AUSA Welk and Mr. Umhoffer, during which there was detailed discussion of the seized assets. Welk Decl., ¶13.

### III. ARGUMENT

#### A. Movants' Motion is Procedurally Improper

Movants have titled their motion as one for "return of property pursuant to 18 U.S.C. § 983(a)." See Notice of Motion at 1, Memorandum at 1. They contend that the cited statute

4

requires the government to "give notice of the seizure to all interested parties 'as soon as practicable, and in no case more than 60 days after the date of the seizure.'" Motion at 1, quoting 18 U.S.C. § 983(a)(1)(A)(i). They further contend that where the government fails to provide such notice, "there is only one remedy: the government must 'return the property' to those from whom the property was seized." Id., quoting 18 U.S.C. § 983(a)(1)(F). Finally, Movants contend that "the government has not only failed to give notice [of the seizures] to Movants within 60 days of the seizure – it has failed to give any notice as of the filing of this Motion, more than six months later." Id.

Movants are wrong on the law and the facts. They begin by attempting to disguise what is in fact a motion for return of property under Federal Rule of Criminal Procedure 41(g) ("Rule 41") as a motion under § 983(a). Beyond that, their contentions rest entirely upon their misplaced reliance upon carefully parsed phrases of § 983 that apply only to administrative forfeiture proceedings, which are unavailable here as a matter of law. Finally, they conveniently omit indisputable facts that demonstrate that even if their motion was procedurally sound, it has no viable basis in fact.

  **B. Section 983 is Procedurally and Factually Inapplicable Here**

Section 983 is titled "General Rules for Civil Forfeiture Proceedings." Subsection (a)(1) and (2), relied upon by Movants here, sets out the general rules applicable to <u>nonjudicial</u> civil forfeiture proceedings (also known as "administrative"

forfeiture proceedings).[1] Subsection (a)(3) sets out the general rules applicable to the initiation of <u>judicial</u> civil forfeiture proceedings that are triggered by the filing of a claim in administrative forfeiture proceedings. Movants seek to rely upon the provisions in subparagraph (a)(1)(A), governing administrative forfeiture proceedings, which provide, in pertinent part,

> in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.

Subparagraph (a)(1)(B) provides that a supervisory official in the headquarters office of the seizing agency may extend for up to 30 days the period for sending the notice required by subparagraph (A) if certain specific conditions are present, and subsection (a)(1)(C) provides that the Government may move the court <u>ex parte</u> to extend that same notice period for up to 60 days at a time as long as any of the above-referenced specific conditions are present. Subparagraph (a)(1)(F), also relied upon by Movants (and also relating only to administrative forfeiture proceedings), provides that

> if the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time

---

[1] Nonjudicial or administrative forfeiture takes its name from the fact that there is no judicial involvement whatsoever in the process. The seizing agency initiates the process by sending notice to all known interested parties of its intent to forfeit the seized asset and, if no person comes forward to contest the forfeiture, the property is forfeited to the government.

6

is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time.

The first step in determining the meaning and application of a statute is to consider the words used in the statute itself. See Miranda v. Anchando, 654 F.3d 911, 915-16 (9th Cir. 2011) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says. Thus, statutory interpretation begins with the statutory text.").

Section 983(a)(1)(A)(i) provides that the government is required to give notice within 60 days of seizure "in any <u>nonjudicial civil forfeiture proceeding</u> under a civil forfeiture statute, with respect to which the government is required to send written notice to interested parties." (Emphasis added). Thus, it is plain from the language of the statute that the provision applies only to nonjudicial forfeiture proceedings. Administrative (<u>i.e.</u>, nonjudicial) forfeiture proceedings are governed by 19 U.S.C. § 1607, which does in fact require the government to provide notice of such proceedings. However, administrative forfeiture proceedings may only be initiated against personal property valued at $500,000.00 or less. 19 U.S.C. § 1607(a)(1). The seized assets here are worth far more than that amount, making it legally impossible for the government to have initiated administrative forfeiture proceedings against them.[2]

---

[2] Movants may argue that the seized funds and securities are "monetary instruments" under § 1607(a)(4), but that provision uses the definition of monetary instruments set out in 31 U.S.C.

7

Because the initiation of administrative forfeiture proceedings was not even possible here, much less effected, the notice provision of § 983(a)(1)(A)(i) has no application, as there was no "nonjudicial civil forfeiture proceeding . . . with respect to which the government [was] required to send written notice to interested parties." Since the notice provision was inapplicable as a matter of law, the remedy for a purported violation of that provision (§ 983(a)(1)(F)) is also inapplicable.[3]

There is no basis for an argument that Congress, in enacting the notice provision of § 983(a)(1)(A), intended it to apply to anything other than administrative forfeiture proceedings. It clearly understood that there was a difference between administrative and judicial forfeiture proceedings. Section 983 not only addresses them separately (as discussed above), it includes separate provisions setting out, for example, the procedure for how the deadlines applicable to each may be extended (§ 983(a)(1) (administrative) and (3)(A) (judicial)) and the remedies available in the event a

---

§ 5312(a)(3). That definition includes coins and currency and certain categories of bearer instruments, including stock certificates for which title is passed on delivery. None of the assets seized here are monetary instruments within the meaning of that section.

[3] Again, this is demonstrated by the plain language of the statute, which explicitly references the earlier notice requirement. See § 983(a)(1)(F) ("If the government does not send notice of a seizure of property in accordance with subparagraph (A) . . ., the government shall return the property without prejudice to the right of the government to commence a forfeiture proceeding at a later time." (Emphasis added)).

8

statutorily-imposed deadline is not met (§ 983 (a)(1)(F) (administrative) and (3)(B) (judicial)).

Moreover, there is nothing in § 983 to suggest that the statute was intended to give rise to an affirmative motion for return of seized property. The proper procedural vehicle for such a request is a motion under Federal Rule of Criminal Procedure 41(g), which governs claims that a party is aggrieved by an unlawful search or seizure or deprivation of his property.

### C. The Instant Motion is A Motion for Return of Property Under Federal Rule of Criminal Procedure 41(g) and Must Be Treated As a Civil Complaint

While Rule 41(g), by its inclusion in the criminal rules, contemplates the bringing of a motion in a pending criminal case, it also may be invoked in situations where the return of property is sought in the absence of a pending criminal action. See United States v. $8,850, 461 U.S. 555, 569-70 (1983) (recognizing such motions under former Rule 41(e)). Here, the Movants do not allege that they are defendants in any pending criminal prosecution.

Under these circumstances, the Motion must be treated as a civil complaint governed by the Federal Rules of Civil Procedure. United States v. Ibrahim, 522 F.3d 1003, 1007 (9th Cir. 2008); United States v. Ritchie, 342 F.3d 903, 906-07 (9th Cir. 2003). The civil rules "apply to each stage of the proceedings, the same way they would in a civil context." Ibrahim, 522 F.3d at 1008. Rule 41(g) motions for return of property are extraordinary devices because, if properly invoked, they enable a movant to commence a district court action without

filing a formal complaint.  Moreover, like <u>ex parte</u> applications, they require the Court and the respondent to drop everything else and address the motion on an accelerated basis. <u>See</u> <u>Mission Power Energy Co. v. Continental Casualty Co.</u>, 883 F. Supp. 488, 491 (C.D. Cal. 1995)(<u>ex parte</u> applications require court to "drop[] everything except other urgent matters").  The district court's equity jurisdiction to entertain a motion for the return of property is "extraordinary . . . [and] is to be exercised with caution and restraint."  <u>Pieper v. United States</u>, 604 F.2d 1131, 1133 (8th Cir. 1979).  Thus, Rule 41(g) relief should be granted only where it is clearly appropriate to do so. <u>In re Intermagnetics America, Inc.</u>, 101 B.R. 191, 193 (C.D. Cal. 1989) (litigants should not use <u>ex parte</u> applications to "cut in line").

Because the Motion for Return must be treated as a civil complaint for equitable relief, the government's response to Movants' "complaint" by this motion to dismiss under Rule 12(b)(6) is appropriate.

### D. Movants Have Failed to State a Claim For Which Relief Can Be Granted

A motion to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted should be granted where the complaint fails to assert a cognizable legal theory or contains insufficient factual allegations to support a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).  While a court determining a Rule 12(b)(6) motion must "accept the [petitioner's] allegations as true and construe them in the

light most favorable to [petitioner]" (In re Daou Systems, Inc., 411 F.3d 1006, 1013 (9th Cir. 2005)), conclusory allegations alone are insufficient. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998) (citing Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996)); see also Gompper v. VISX, Inc., 298 F.3d 893, 896 (9th Cir. 2002) (reviewing the "totality of facts and inferences" from the complaint). Dismissal is proper where the complaint fails to give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Leave to amend is properly denied where it is clear that the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

Movants' claim here is that the government failed to give them notice as required by § 983(a)(1)(A), triggering the "remedy" of § 983(a)(1)(F). Their claims are foreclosed both legally and factually. Legally, Movants' claims state no cognizable legal theory -- the notice provision upon which they depend does not apply to either of the seizures here because they did not (and could not) result in the initiation of administrative forfeiture proceedings.

Their claims are foreclosed factually because even if the notice provision of § 983(a)(1) did apply to these seizures, the government provided Movants with written notice of the seizures either on the day they occurred or within a few days of their occurrence. Government counsel confirmed the Deutsche Bank seizures on the day they were made (Welk Decl., exhibit A), and provided copies of the seizure warrant and further order

relating to the Deutsche Bank accounts two days later (Welk Decl., exhibit F). Counsel for Movants were advised of the BofA seizures approximately one week after the seizures were made. See exhibit C to the Motion for Return and Welk Decl., exhibit J. The "complaint" here is obviously deficient, and the defects cannot be remedied by amendment. Dismissal without leave to amend is therefore proper.

### E. Movants Are Not Entitled to the Return of the Seized Assets

Another critical aspect of the statutory forfeiture scheme ignored by the Movants is the recognition by Congress in enacting the scheme that seizures of property for forfeiture often arise in the context of federal criminal investigations. This case presents that scenario. The assets at issue were seized based on the government's demonstration of probable cause to believe that they represent or are traceable to a long-term fraud scheme run by the account holders (or the beneficiaries of the Trust Movants). There is currently ongoing litigation before Magistrate Judge Kenton about whether the sealed affidavits offered in support of the search and seizure warrants in this matter should be unsealed. What is indisputable is that the government investigation of the federal violations underlying the seizure of the assets at issue is still ongoing.

As explained above, § 983 sets out specific deadlines for the initiation of forfeiture proceedings following many seizures of property.[4] In addition, § 983 sometimes requires the

---

[4] As explained above, those deadlines apply only where the government actually initiates administrative forfeiture proceedings, which it was unable to do here as a matter of law.

12

government to return property when those deadlines, where applicable, are not met. See § 983(a)(1)(F) and (3)(B). However, those deadlines are not absolute, and may be extended by a court upon agreement of the parties or at the government's request under certain circumstances. The most common reason that courts extend the forfeiture deadlines is because requiring the government to move forward with formal forfeiture proceedings would have an adverse effect on an ongoing criminal investigation or prosecution. See § 983(a)(1)(D)(v) (extension of administrative notice deadline allowed upon showing of potential "adverse result," including "seriously jeopardizing an investigation") and (a)(3)(A) (extension of deadline for filing of civil forfeiture complaint allowed "for good cause shown").

There is also specific authority providing that judicial forfeiture proceedings, once commenced, may be stayed by a court pending the conclusion of an ongoing criminal investigation or prosecution. § 981(g)(1) ("Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.")

This matter is still an ongoing criminal investigation. Return of the seized funds is not justified by either the facts or the law. Proceeding with a civil forfeiture complaint at this time would obligate the government to make certain

---

Section 983 does not set out any deadlines for the commencement of forfeiture proceedings where administrative forfeiture is unavailable or not pursued.

13

disclosures that would jeopardize the ongoing investigation, and would subject the government to discovery that would have an obvious adverse effect. It is clear that the relief requested by the Movants is simply not available to them.

### IV. CONCLUSION

For all of the reasons stated above, the government respectfully requests that this action be dismissed without leave to amend for failure to state a claim upon which relief can be granted.

DATED: March 13, 2015

STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

/s/ Steven R. Welk
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for
United States of America