SANDRA R. BROWN
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515[1]
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0526
    Facsimile: (213) 894-6269
    E-mail: Kristen.Williams@usdoj.gov

Attorneys for Movant
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTH GROUP, INC., et al., <br><br> Defendants. | No. CV 14-3053-MWF-AFM <br><br> <u>RESPONSE IN SUPPORT OF APPLICATION FOR PROTECTIVE ORDER</u> <br><br> **Hearing Scheduled** <br> **Date:**     **March 13, 2018** <br> **Time:**     **11:00AM** <br> **Location:**  **Courtroom of Hon.** <br>                 **Alexander F. MacKinnon** |

    Movant United States of America, by and through its counsel of record, Assistant United States Attorneys Kristen A. Williams, in accordance with the Court's request in its February 13, 2018 Order (CV 762), hereby files its response in support of its application for a protective order as requested by the Court (CV 762).

//

---

[1] As the citation here makes clear, Sandra Brown is acting as Attorney for the United States in light of United States Attorney Nicola T. Hanna's recusal from this matter.

This response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 23, 2018          Respectfully submitted,

                                         SANDRA R. BROWN
                                         Attorney for the United States
                                         Acting Under Authority Conferred by
                                         28 U.S.C. § 515

                                         LAWRENCE S. MIDDLETON
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                                 */s/ Kristen A. Williams*
                                         KRISTEN A. WILLIAMS
                                         Assistant United States Attorney

                                         Attorneys for Movant
                                         UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

The government hereby responds to the Court's request for further briefing on the use restriction in its proposed protective order and the government's role with respect to this filing. (CV 762.) Pursuant to the Court's request in its December 2017 Order re Document Review and Production ("Order") (CV 674), the government has spent considerable time over the last two months attempting to provide Counterclaim Defendants[1] access to (or, in some instances, additional access to[2]) records seized years ago in a separate criminal investigation. The government did so, not as a party to this litigation or in connection with its limited intervention in the case more than three years ago, but as part of an informal effort to assist the Court at the Court's request. (11/29/17 RT 5 (attached as Exhibit 1 to Counterclaim Defendant's Opposition at docket number 743); Order at 1.) The government did so after attending a hearing that focused on what Counterclaim Defendants supposedly needed in

---

[1] The term "Counterclaim Defendants" is used herein to refer to Kambiz Benjamin Omidi; Michael Omidi, M.D.; Almont Ambulatory Surgery Center; Bakersfield Surgery Institute, Inc.; CIRO Surgery Center, LLC; East Bay Ambulatory Surgery Center, LLC; Skin Cancer & Reconstructive Surgery Specialists of West Hills, Inc.; Valley Surgical Center, LLC; Top Surgeons, Inc.; Top Surgeons, LLC; Palmdale Ambulatory Surgery Center; 1 800 Get Thin, LLC; Almont Ambulatory Surgery Center, LLC; Bakersfield Surgery Institute, LLC; Independent Medical Services, Inc.; Modern Institute of Plastic Surgery & Antiaging, Inc.; New Life Surgery Center, LLC; Orange Grove Surgery Center, LLC; San Diego Ambulatory Surgery Center, LLC; Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills, Inc.; Valencia Ambulatory Surgery Center, LLC; West Hills Surgery Center, LLC; Top Surgeons LLC Nevada; Woodlake Ambulatory; Surgery Center Management; Beverly Hills Surgery Center LLC; Devida, USA, LLC; Cindy Omidi; Property Care Insurance, Inc.; and Does 1-200.

[2] As this Court is aware, the government provided copies of 20 of the seized digital devices to Counterclaim Defendant Surgery Center Management ("SCM") over three years ago following representations in June 2014 that SCM owned the items. (CV 657; 11/27/17 RT 8-9, 11.) The government understands that ownership is now disputed.

1  order to respond to discovery requests in this case (see, e.g.,
2  11/29/17 RT 12-15, 18, 41, 43-44, 50, 67, 71), and after the Court
3  made findings that Counterclaim Defendants had "asserted a need" to
4  review certain designated items "in order to respond to pending
5  discovery requests in this civil action" (Order at 1).
6      In an effort to facilitate the access the Court has requested,
7  the government proposed a protective order that affords protection to
8  the individually identifiable health information contained in the
9  seized materials while restricting use to the grounds on which this
10 Court found the Counterclaim Defendants needed to access the
11 materials in the first place--namely, to respond to pending discovery
12 requests.  (App. for Protective Order, Prop. Order; CV 740-6.)
13 Similar restrictions are typically included in the protective orders
14 routinely entered in criminal health care fraud cases, even where the
15 documents to be protected were obtained via search warrant from the
16 defendant or the defendant's company, because the documents contain
17 sensitive personal information turned over pursuant to case-specific
18 discovery obligations.  (See, e.g., United States v. Richard Ciampa,
19 et al., CR 15-474-PSG, Dkt. 258; United States v. Shirley Soriano, CR
20 14-377-CAS, Dkt. 21; United States v. Adeline Ekwebelem, et al., CR
21 12-1170-MWF, Dkt. 35.)  See Fed. R. Crim. P. 16(d) (permitting
22 restrictions on discovery and inspection based on a showing of good
23 cause).  The government is obligated to handle such sensitive
24 materials carefully and not allow them to be unnecessarily
25 disseminated or used, particularly when they were seized based on a
26 court's probable cause finding that the materials are evidence of,
27 and have been used in, the commission of crimes.  See 5 U.S.C.
28

§ 522a(b)(11) (permitting disclosure of personal identification and medical information upon court order).

While the proposed protective order is arguably broader in its use restriction than the standard protective orders routinely used in criminal health care fraud cases--restricting the use of all of the accessed materials as opposed to just those designated as containing confidential health information--it is not clear that the distinction will be a significant one here. The vast majority of the records seized contain individually identifiable health information because they are patient medical records or records relating to medical claims, billing, or collection. Indeed, all of the 28 boxes Counterclaim Defendants asked the government to prioritize appear to include primarily patient medical information. (App. Decl. of Kristen A. Williams ¶ 4; CV 740.) Moreover, the government has agreed to provide access based on the Court's finding that Counterclaim Defendants need access to these documents in order to respond to pending discovery obligations in this case, making a use restriction tailored to that finding reasonable.

A tailored-use restriction is all the more appropriate here in light of conflicting representations from Counterclaim Defendants as to whether the materials even belong to them. Following their initial request for materials to respond to discovery in this case in October 2017, Counterclaim Defendants did not provide the government with specifics about which entities were requesting which items, even though the government requested that information numerous times. (See Reply in Support of Request for Sanctions, Declaration of Michelle Grant, Exh. 1 at 2; CV 549-2.) At the November 2017 hearing and in filings before and after it, Counterclaim Defendants admitted

3

1  that some of the items might have been seized from other parties.
2  (See, e.g., 11/29/17 RT 12; Decl. of Kamille Dean In Support of
3  Response to Court Order ¶ 15; CV 640-1; Opp. to App. for Protective
4  Order ("Opp.") at 14 n.7; CV 743.)  They specifically declined to
5  take positions as to ownership.  (See, e.g., 11/29/17 RT 35, 43; Obj.
6  to Order and Assertion of Fifth Amendment at 2 (individual
7  counterclaim defendants' objections to any requirement that they
8  claim ownership interest); CV 645).)  Subsequently, with respect to
9  the large volume of documents previously produced to the government--
10 documents that likely overlap with the seized materials (see 11/29/17
11 RT 52-53)--Counterclaim Defendants claimed their review has been
12 slowed by obtaining "written authorizations from persons and entities
13 that may have a claim to ownership over the million-plus documents
14 prior to copying," which were not "under the control of counterclaim
15 defendants."  (App. for Extension on Status Reports at 4; CV 711.)
16 Therefore, although Counterclaim Defendants have claimed on other
17 occasions that the seized materials are their own (usually in
18 arguments unsupported by declarations from any of the Counterclaim
19 Defendants (see, e.g., Opp. at 14, 21)), on the record here and for
20 the limited purpose of responding to the Court's request in this
21 case, the question of ownership remains unsettled.
22     It was these conflicting representations that led the government
23 to request that the Court make findings as to which parties were
24 entitled to access which materials in this civil case.  (11/29/17 RT
25 12, 40, 50.)  The Court made such findings, but did not address
26 ownership.  (Order at 1.)  Thus, the Court's request that the
27 government focus this briefing on the question of "what a party can
28 do with its own documents" is, respectfully, premature--no

4

Counterclaim Defendant has presented evidence that the materials actually belong to it. (CV 762 at 1.)

Nor are Counterclaim Defendants without recourse if they should seek to use the documents they access for broader purposes. The proposed protective order permits them to seek leave of court to do so (App. for Protective Order, Prop. Order ¶ 1), a process that would likely mean that questions of use would arise only with respect to specific documents that Counterclaim Defendants accessed related to their discovery obligations in this case. Requiring Counterclaim Defendants to seek leave of court would also likely discourage Counterclaim Defendants from using the access provided to conduct a fishing expedition for materials that might be helpful in other litigation. Those other cases have their own, separate discovery processes, and, despite Counterclaim Defendants' representations, do not "present identical issues."[3] (Opp. at 8.) If Counterclaim Defendants view the access provided by the government as a license to search for materials relevant to those other cases, they will almost inevitably request access to and spend time reviewing more documents than they would if they remained focused on the discovery obligations and issues present in this case. That will require additional government time and resources beyond those already committed to this project. Indeed, such overreach may already be present: some of the items marked by Counterclaim Defendants for access appear to relate

---

[3] Valley Surgical Center, LLC v. Los Angeles County, for example, concerns alleged civil rights violations by the Los Angeles County Coroner's Office related to the autopsy of a single former Valley patient. (See CV 13-2265-DDP, Dkt. 238.)

5

solely to matters involving insurance companies other than Counterclaimants.[4]

Additionally, Counterclaim Defendants remain free to approach the government for access to materials separately on the terms the government previously laid out in its October 2017 correspondence or file a Rule 41(g) motion, both of which would require them to make specific representations as to ownership of the materials, representations they have been unwilling to make here.

Under these circumstances, the government's proposed protective order appropriately balances (1) the need to protect patient privacy and use government resources efficiently with (2) the Court's rationale in finding the need for access.

The government does not need to be a party or intervene to make this request. Third parties routinely move the court for relief related to the production of documents. See Fed. R. Civ. P. 45(d)(3), (e)(2)(B). Indeed, third party Imperium has recently done so in this case, without having become a party to or intervening in the action, as far as the government can determine from the docket. (See CV 576, 577, 587, 589, 609, 611, 639, 660, 737, 746.) The government does not want to be a party to this case. The Court has repeatedly found that it is not a party and has not been one since the issue for which it intervened was resolved. (See, e.g., CV 258 at 2 (finding that the government "is not a party to this civil action and the United States Attorney's Office represents no one");

---

[4] For example, see control numbers 38, 88, and 90 (Call Center 1 Index); control numbers 22 and 149 (Call Center 2 Index); and control numbers 140-41, 151-54 (Call Center 3 Index). All references are to control number and inventory from the marked inventories Counterclaim Defendants lodged with the Court, and are based on the description of contents provided on the inventories.

6

CV 291 at 4, 7 ("[T]he government is not a party to this litigation."); CV 458 at 2 ("The United States of America is not a party to these related actions.").)  There is no need for the government to become a party now merely because it is trying to assist the Court with the Court's request.

Finally, a central complaint in Counterclaim Defendants' opposition--and the basis for their counsel's request to withdraw contained therein--concerns the time and resources that will be involved in reviewing the seized materials for potentially responsive documents.  (See Opp. at 11-12; id. Decl. of Kamille Dean ¶¶ 14-19.)  That concern has little to do with the proposed protective order.  The volume of review necessary will not change, whether or not the proposed protective order is entered.  Moreover, Counterclaim Defendants' (1) request to use access to the seized materials to carry out "collateral litigation discovery" (Opp. at 8) and (2) recent efforts to use a notice of deposition and request for production of documents addressed to the "person most knowledgeable" for the United States of America (broadly defined) to seek a wide range of communications between Counterclaimants and the government undermine any claims by Counterclaim Defendants that they have been overwhelmed by the task of responding to long-outstanding discovery obligations.  Instead, they appear to be attempting to leverage the government's response to the Court's request to further their other litigation aims and draw the government further into a case to which it is not a party, things that have little to do with the Court's orders relating to their tardy discovery responses.

For all the above reasons, as well as those provided in the government's application, the Court should enter the protective order proposed by the government.[5]

---

[5] The government has endeavored to confine its response to the issues noted by the Court. (CV 762.) As such, the government will not here address the numerous other meritless claims Counterclaim Defendants have made regarding the government's conduct; its decision not to address those other claims should not be interpreted as agreement with them.

8