1 | **BRYAN WESTERFELD (S.B. # 218253)**
    bwesterfeld@calemployerlaw.com
2 | **NICOLE E. WURSCHER (S.B # 245879)**
    nwurscher@calemployerlaw.com
3 | **WALRAVEN & WESTERFELD LLP**
    20 Enterprise, Suite 310
4 | Aliso Viejo, CA 92656
    Telephone:  (949) 215-1997
5 | Facsimile:   (949) 215-1999

6 | **TIMOTHY BRANSON (MN ID #174713)**
    branson.tim@dorsey.com
7 | **MICHELLE S. GRANT (MN ID #0311170)**
    grant.michelle@dorsey.com
8 | **MICHAEL ROWE (MN ID #0392598)**
    rowe.michael@dorsey.com
9 | *Admitted pro hac vice*
    **DORSEY & WHITNEY LLP**
10 | Suite 1500, 50 South Sixth Street
     Minneapolis, MN 55402-1498
11 | Telephone:  (612) 340-2600
     Facsimile:   (612) 340-2868

Attorneys for Counterclaim Plaintiffs
United Healthcare Services, Inc.; UnitedHealthcare
Insurance Company; and OptumInsight, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITEDHEALTH GROUP INCORPORATED, *et al.*, <br><br> Defendants. | Case No 2:14-cv-03053-MWF(AFMx) <br><br> **COUNTERCLAIM PLAINTIFFS' OPPOSITION TO KAMILLE DEAN'S MOTION TO WITHDRAW** <br><br> Judge Michael Fitzgerald <br><br> <u>Hearing</u> <br> Time:  10:00 a.m. <br> Date:   March 19, 2018 <br> Place:  Courtroom 5A |
| UNITED HEALTHCARE SERVICES, INC., *et al.*, <br><br> Counterclaim Plaintiffs, <br> v. <br><br> ALMONT AMBULATORY SURGERY CENTER, LLC, *et al.*, <br><br> Counterclaim Defendants. | Discovery Cut-off:  Sept. 14, 2018 <br> Pretrial Conference:  Jan. 7, 2019 <br> Trial Date:  Jan. 29, 2019 |

**TABLE OF CONTENTS**

I.    BACKGROUND ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 7

      A.    A Discovery Dispute Does Not Constitute Good Cause To Withdraw ................................................................................................ 8

      B.    Ms. Dean's Withdrawal Will Prejudice United And Delay The Resolution Of This Litigation ............................................................. 13

III.  CONCLUSION ............................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adair v. EQT Prod. Co.*,
   2012 U.S. Dist. LEXIS 90250 (D. W. Va. June 29, 2012) .................................. 10

*Beard v. Shuttermart of Cal., Inc.*,
   2008 U.S. Dist. LEXIS 10575 (C.D. Cal. Feb. 13, 2008) ..................................... 7

*Cal. Native Plant Soc'y v. United States E.P.A.*,
   2008 U.S. Dist. LEXIS 95167 (N.D. Cal. Nov. 14, 2008) .................................. 13

*Darby v. Torrance*,
   810 F. Supp. 275 (C.D. Cal. 1992) ..................................................................... 11

*Emp. Painters' Trust v. Ethan Enters., Inc.*,
   480 F.3d 993 (9th Cir. 2007) .............................................................................. 16

*Hershey v. Berkeley*,
   2008 U.S. Dist. LEXIS 110402 (C.D. Cal. Oct. 24, 2008) ................................ 13

*Irwin v. Mascott*,
   2004 U.S. Dist. LEXIS 28264 (N.D. Cal. Dec. 1, 2004) ..................................... 8

*Israel Travel Adv. Serv. v. Israel Identity Tours*,
   1993 U.S. Dist. LEXIS 7433 (N.D. Ill. June 1, 1993) ....................................... 13

*Pini USA, Inc. v. NB Glob. Commodities, LLC*,
   2017 U.S. Dist. LEXIS 181282 (C.D. Cal. Nov. 1, 2017) ................................... 7

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*,
   506 U.S. 194 (1993) ........................................................................................... 15

*Smith v. Swarthout*,
   2016 U.S. Dist. LEXIS 5060 (N.D. Cal. Jan. 13, 2016) ...................................... 8

*U.A. Local 342 Joint Labor-Mgmt. Comm. v. S. City Refrigeration, Inc.*,
   2010 U.S. Dist. LEXIS 42700 (N.D. Cal. Mar. 31, 2010) ................................. 13

**Other Authorities**

Cal. Code Prof'l Conduct 3-700 ................................................................. 7, 8 11, 12

This case is approaching its fourth anniversary, and in that time, Counterclaim Defendants[1] have been represented by no fewer than sixteen attorneys from nine law firms. In what looks like an attempt to leave the 28 Counterclaim Defendants without outside counsel, their current attorney, Kamille Dean, is now threatening to withdraw unless Magistrate Judge MacKinnon orders United to pay for Ms. Dean's attorney's fees and costs in reviewing documents for production in discovery. Not coincidently, this transparent attempt to extract compensation from United comes at a time when Magistrate Judge MacKinnon has compelled Counterclaim Defendants to search for, review, and produce responsive documents—something they have successfully avoided for nearly three years. This is an improper basis for withdrawal, but entirely consistent with Counterclaim Defendants' strategy to evade their discovery obligations and to disrupt any progress toward a January 2019 trial date. Because Ms. Dean's proffered reasons for withdrawal do not establish "good cause," this Court should deny Ms. Dean's motion.

## I. BACKGROUND

On March 21, 2014, Plaintiff Providers, represented by the Hooper Lundy law firm, initiated this action (as well as a related—but now dismissed—action against United and several hundred plans and plan sponsors, *i.e.,* the "Main Action," Case No. 14-cv-2139) for millions of dollars owed for Lap Band services allegedly provided to patients through numerous affiliated entities. Dkt. 1. Shortly thereafter, United Healthcare Services, Inc., UnitedHealthcare Insurance Company, and OptumInsight, Inc. (collectively "United") brought a Counterclaim in this "Removed Action" (14-cv-3053) alleging that Counterclaim Defendants, led by

---

[1] "Counterclaim Defendants" herein refers to all Counterclaim Defendants except AsiaTrust Nevis and Asset Management Irrevocable Trust, both of whom were added in United's Third Amended Counterclaim and neither of whom have answered or otherwise appeared in this case.

brothers Julian and Michael Omidi, conspired to defraud United and hundreds of group health plans it administers into paying fraudulent medical claims. Dkt. 15. Counterclaim Defendants initially consisted of all Plaintiffs, various other related corporate entities, and brothers Michael and Julian Omidi. Sheppard Mullin represented the Omidi brothers and Hooper Lundy represented all other corporate Counterclaim Defendants. On April 30, 2015, United served its Second Amended Counterclaim ("SACC"), adding three new Counterclaim Defendants (Cindy Omidi, Property Care Insurance, Inc., and DeVida USA, LLC) all of whom were represented by the Kashfian & Kashfian law firm. Dkt. 152.

On September 16, 2015—the day before the Court held a hearing on Counterclaim Defendants' motion to dismiss the SACC—Sheppard Mullin moved to withdraw from representing Julian and Michael Omidi. Dkt. 223. United took no position on that motion, and the Court granted it. Dkts. 230, 240. Robert Rice then appeared on behalf of Michael and Julian Omidi. Dkt. 246. Five months later, Hooper Lundy moved to withdraw from representing the corporate Counterclaim Defendants because it had not been paid and its clients were not cooperating. Dkt. 270. United did not oppose Hooper Lundy's motion, but asked that Counterclaim Defendants be required to retain substitute counsel before the time Hooper Lundy was permitted to withdraw so that such withdrawal would not delay the resolution of outstanding discovery obligations. Dkt. 290. The Court granted Hooper Lundy's motion but ordered the Plaintiff Providers to show cause on or before May 11, 2016 why its affirmative claims against United in the Main Action and Removed Action should not be dismissed for failure to prosecute. Dkt. 318 at 5. Counterclaim Defendants failed to retain new counsel before the deadline, and this Court dismissed their claims with prejudice. Dkt. 335.

Since their affirmative claims were dismissed, Counterclaim Defendants have been represented by a revolving door of attorneys, including:

1. Robert Rice (Law Offices of Robert Rice): Actively represented only

|   |   |
|---|---|
| 1 | Michael and Julian Omidi from November 23, 2015 until May 27, |
| 2 | 2016, when he then appeared as counsel of record for eight of the |
| 3 | corporate Counterclaim Defendants. Dkts. 246, 341. On June 1, 2016, |
| 4 | Mr. Rice appeared as counsel for nine additional Counterclaim |
| 5 | Defendants. Dkt. 347. Mr. Rice continued in this role until |
| 6 | approximately September 30, 2016, when United was told that he is no |
| 7 | longer counsel on this matter although he has never formally |
| 8 | withdrawn and is still identified as a "lead attorney" on the docket. |
| 9 | Dkts. 246, 341, 347.[2] |

2. Dmitriy Aristov (Aristov Law): First appeared on May 31, 2016, and withdrew on September 30, 2016. Dkts. 345, 388.

3. Roger Diamond (Roger J Diamond Law Offices): First appeared on June 3, 2016 and moved to withdraw on February 16, 2018. Dkts. 350, 764.

4. Imre Ilyes (Law Office of Imre Ilyes): First appeared on March 1, 2017. Mr. Ilyes has never actively participated in this litigation, though he is still identified as a "lead attorney" on the docket. Dkt. 449.

5. Mark Jubelt (Law Office of Mark Jubelt): First appeared on September 30, 2016 and withdrew on September 8, 2017. Dkts. 388, 518.

6. Kamille Dean (Law Offices of Kamille Dean, PLC): First appeared on September 8, 2017 for all Counterclaim Defendants and moved to withdraw on February 9, 2018. Dkts. 518, 757.

7. Kashfian & Kashfian LLP: Have represented Cindy Omidi, Property

---

[2] During a June 22, 2017 status conference with Magistrate Judge MacKinnon, Mr. Jubelt indicated that he believed that Mr. Rice had withdrawn, although he had not and still has not done so.

|   |   |
|---|---|
| 1 | Care Insurance, Inc. and DeVida USA, LLC since July 15, 2015. |
| 2 | Dkts. 177-79.  Although Kashfian & Kashfian has never formally |
| 3 | withdrawn and is still identified as a "lead attorney" on the docket for |
| 4 | these three parties, it has not actively participated in this litigation |
| 5 | since approximately April 2017.  Recently, Ryan Kashfian has |
| 6 | indicated to United that he "has not been a part of this case" and that |
| 7 | Ms. Dean "took over" representation of each of his clients. |

Notably, Ms. Dean has *not* moved to withdraw as counsel in matters pending before the Ninth Circuit in which certain Counterclaim Defendants are still appealing several orders, including the denial of their motions to recuse and motions for reconsideration of the Court's May 16, 2016 dismissal of Plaintiffs' claims.

Throughout all of these changes, the one constant has been Counterclaim Defendants' refusal to engage in discovery.  Despite United serving four sets of discovery requests, Counterclaim Defendants have not produced a *single* document or responded substantively to an interrogatory or request for admission since their April and May 2015 document productions that consisted of 3,900 pages of independent-contractor agreements and a subset of medical records for fifteen exemplar patients identified in United's First Amended Counterclaim.  One of Counterclaim Defendants' attorneys even acknowledged their refusal to participate in discovery by conceding that at least three prior lawyers "all withdrew or refused to take charge of discovery."  *See* Dkt. 448, ¶ 6.

After nearly eighteen months of attorney changes and unfulfilled promises about future document productions, on February 21, 2017, United moved to compel responses to its First Set of Discovery.  Dkt. 441.  Counterclaim Defendants did not oppose United's motion, and instead, Mr. Jubelt filed a declaration documenting his "diligent" work to comply with United's discovery requests.  Dkt. 448, ¶ 3.  On March 22, 2017, the court found that Counterclaim Defendants had waived any previously asserted objections and ordered Counterclaim Defendants "to promptly

review and produce all responsive documents and to prepare and serve substantive interrogatory answers." Dkt. 462. Since the Order granting United's motion to compel nearly a year ago, Counterclaim Defendants have failed to produce one document or provide substantive answers to any interrogatory, and instead, have been sanctioned for their failure to comply with the court's March 22, 2017 Order. Dkts. 573, 753.

As United sought to enforce the court's order, Counterclaim Defendants failed to make any meaningful progress towards producing responsive documents. After months of fruitless conversations, on August 21, 2017 Counterclaim Defendants finally committed to searching for, reviewing, and producing documents from one of four relevant locations: (i) former attorney files; (ii) NexTech database;[3] (iii) other electronic files; and (iv) "litigation binders." Dkt. 504 at 2. On the verge of finally complying with the court's Order, Mr. Jubelt unexpectedly moved to withdraw two weeks later. Dkt. 518. Mr. Jubelt's withdrawal appears to have been a tactical move to thwart discovery and renege on his promises to produce documents, not the result of some permanent fracture in the relationship between Counterclaim Defendants and Mr. Jubelt. Indeed, Magistrate Judge MacKinnon noted in his February 9, 2018 Order denying Counterclaim Defendants' motion for relief from sanctions, Mr. Jubelt continues to represent Counterclaim Defendant Valley Surgical Center in its lawsuit against the Los Angeles Coroner's office. *See* Dkt. 753 at 4 ("It is unusual that Providers would authorize a lawyer to continue to appear on their behalf—while simultaneously asserting that this same lawyer was grossly negligent in representing them in a different case.").

---

[3] NexTech is an electronic medical records database used by Counterclaim Defendants during all times relevant to this litigation. Counterclaim Defendants admit that NexTech contains responsive documents, but deny they have possession, custody, or control of them.

On October 7, 2017—after more than three years of litigation—Counterclaim Defendants, now represented by Ms. Dean, argued for the first time that in May 2014, Counterclaim Defendant Surgery Center Management, LLC ("SCM") assigned the NexTech software license to a supposedly unrelated third-party named Imperium Medical Services, Inc., and thus, Counterclaim Defendants could not comply with the Court's March 22, 2017, Order compelling production of patient records.[4]  See Dkt. 544.

In November and December 2017, the court also ordered Counterclaim Defendants to review for responsiveness to United's outstanding discovery requests (1) seized materials made available by the government for review and production; (2) documents that prior counsel had previously produced to the government; and (3) documents previously seized by the government but since returned to Counterclaim Defendants.  Dkts. 655, 674, 676.  No progress has been made in complying with these orders.  It appears that Ms. Dean spent just three-and-a-half hours at a storage facility to review certain materials seized by the government. Dkt. 758-1, ¶ 10.  As to the approximately 1.2 million pages that Sheppard Mullin produced to the government in response to subpoenas, Ms. Dean states only that it is "not physically possible" for her to examine these documents without any indication as to why or what effort, if any, she has undertaken to do so.  Dkt. 757, ¶ 15.

Again on the verge of having to review and produce documents responsive to United's discovery requests, Ms. Dean unexpectedly moves to withdraw.  Ms. Dean

---

[4] To consider the propriety of the supposed NexTech assignment—which Counterclaim Defendants concede occurred *after* the Plaintiff Providers filed suit against United—Magistrate Judge MacKinnon held a three-day evidentiary hearing at which he considered whether Imperium Medical Services, Inc. is an alter-ego of Counterclaim Defendants or whether Counterclaim Defendants otherwise maintained possession, custody, or control of NexTech.  Following the hearing, the parties submitted proposed findings of fact and conclusions of law and this issue is still under consideration by Magistrate Judge MacKinnon.  *See* Dkts. 725, 748.

notes that on February 5, 2018, she sent written notice to "the Clients" alerting them of her intention to withdraw. Dkt. 757 at 2.[5] This was only four days before she filed the motion. Ms. Dean further provides no indication as to who she notified, particularly for the corporate Counterclaim Defendants. Ms. Dean should be required to disclose the identity of the person or persons for each of the corporate Counterclaim Defendants she notified.

On the same day as Ms. Dean filed her motion to withdraw, Counterclaim Defendants filed a Motion for Protective Order asking Magistrate Judge MacKinnon to issue an order requiring United to pay Counterclaim Defendants' attorney's fees and costs incurred in reviewing and producing any and all documents in discovery in this action. Dkt. 758. Ms. Dean notes in her motion to withdraw that *if* the court were to grant Counterclaim Defendants' Motion for Protective Order and require United to pay her attorney fees, then she will *not withdraw*. Dkt. 757, ¶ 20.

## II. ARGUMENT

"The decision to grant or deny counsel's motion to withdraw is within the discretion of the trial court." *Pini USA, Inc. v. NB Glob. Commodities, LLC*, 2017 U.S. Dist. LEXIS 181282, at *5 (C.D. Cal. Nov. 1, 2017); *see also* L.R. 83-2.3.2. The moving party must demonstrate "good cause" before they are permitted to withdraw, *see* L.R. 83-2.3.2, and to determine what constitutes good cause, courts weigh these factors: "(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." *Beard v. Shuttermart of Cal., Inc.*, 2008 U.S. Dist. LEXIS

---

[5] Curiously, while the Motion refers to a February 5, 2018 written notice to the Clients, in Ms. Dean's supporting Declaration, she states that "On January 31, 2018, I notified each of my clients of my intention to seek Mandatory Withdrawal from this proceeding." Dkt. 757 at 17.

10575, at *6-7 (C.D. Cal. Feb. 13, 2008) (citing *Irwin v. Mascott*, 2004 U.S. Dist. LEXIS 28264, at *4 (N.D. Cal. Dec. 1, 2004)).

Because the California Rules of Professional Conduct govern termination of an attorney-client relationship, *see* Cal. Code Prof'l Conduct 3-700, district courts look to that rule to determine the circumstances in which an attorney may withdraw. Here, Ms. Dean's motion is premised entirely on her assertion that the California Rules of Professional Conduct *require* that she seek "mandatory withdrawal." Dkt. 757 at 4 (citing Cal. Code Prof'l Conduct 3-700(B)). Her argument misconstrues the law and facts regarding mandatory withdrawal, and it further fails to adequately acknowledge the prejudice that will inure to United for what could be the seventh change of counsel since this Court dismissed Plaintiffs' claims on May 16, 2016.

### A. A Discovery Dispute Does Not Constitute Good Cause To Withdraw

Cal. Code Prof'l Conduct 3-700(B)(3) requires withdrawal if the attorney's "mental or physical condition renders it unreasonably difficult to carry out the employment effectively." Here, Ms. Dean claims that it is "physically impossible" for her to review and produce documents in compliance with various court orders, and thus, this rule compels her withdrawal. *See* Dkt. 757 at 4.[6] But courts interpret the rule's reference to "mental or physical condition" in the context of physical *health*, and not in the context of an attorney's professed inability to comply with court orders and discovery rules. *See, e.g.*, *Smith v. Swarthout*, 2016 U.S. Dist. LEXIS 5060, at *6 (N.D. Cal. Jan. 13, 2016). Ms. Dean has provided no evidence suggesting that her mental or physical health or impairment prevents her continued

---

[6] Ms. Dean separately complains of the "impenetrable physical barrier" and the "extraordinary physical impracticality" of complying with "the Court's instructions and fulfilling United's discovery requests. Dkt. 757 at 4, 6. Hyperbole aside, none of her complaints constitute the "mental or physical condition" contemplated by Cal. Code Prof'l Conduct 3-700(B)(3).

representation.[7]  In fact, to the contrary Ms. Dean states that *if* the court were to grant Counterclaim Defendants' Motion for Protective Order and require United to pay her attorney fees, then she will not withdraw.  Dkt. 757, ¶ 20.  Proving that it is not "physically impossible" for her to continue representation, rather her motion to withdraw is an attempt to preempt the court's orders on Counterclaim Defendants' pending fee-shifting motion as well as whether they will be required to produce responsive patient documents from the NexTech database.

      Even if Ms. Dean's interpretation of "physical condition" had any grounding in the law, she has no factual basis on which to claim her review and production of responsive documents is "impossible" or even unduly burdensome.[8]  Ms. Dean's complaints about the burdens of civil discovery essentially boil down to "it's too hard."  This is not enough to shift attorney fees and costs onto United, *see* Dkt. 767, and it is not enough to establish good cause for withdrawal.  First, Ms. Dean's motion offers no evidence for her claim that United's discovery request necessitates review or production of "millions of documents."  Dkt. 757 at 4-5.  United has not requested *all* documents relating to *all* 1,300 patients at issue in the counterclaim, and instead, it has consistently offered to meet-and-confer with Counterclaim Defendants regarding the scope of production and to prioritize certain records or patients.  *See* Dkt. 441-2 at 20-21; Dkt. 604 at 12 n.16.  Counterclaim Defendants have never engaged in this process.  Second, Ms. Dean fails to acknowledge that there are steps she can take to reduce any conceivable burden, including the use of

---

[7] Ms. Dean's failure to address any mental or physical impairment stands in stark contrast to the motion and declaration filed by Roger Diamond in which he describes a series of medical treatments, and then offers to further describe his health condition *in camera*.  Dkt. 764.  United takes no position on Mr. Diamond's motion.

[8] Counterclaim Defendants make an identical argument in support of their pending motion for protective order and cost shifting.  Dkt. 758.  United separately opposes that motion, *see* Dkt. 767.  Magistrate Judge MacKinnon will hear this motion on March 13, 2018.

Case 2:14-cv-03053-MWF-AFM   Document 769   Filed 02/26/18   Page 14 of 20   Page ID #:27306

search terms for electronically stored information or the use of a Fed. R. Evid. 502 clawback agreement. *See Adair v. EQT Prod. Co.*, 2012 U.S. Dist. LEXIS 90250, at *13-14 (D. W. Va. June 29, 2012) (finding "costs could be mitigated by the use of electronic searching and production, together with the protections of the Protective and Clawback Order"). Third, her claim that complying with Magistrate Judge MacKinnon's discovery orders is too overwhelming for her and her clients is belied by their ability to submit torrents of prodigious, repetitive and unnecessary briefings—even on short notice—when it serves their interests to do so. For example, they recently filed seven motions (totaling nearly 125 pages) to dismiss the Third Amended Counterclaim, containing nearly identical arguments this Court has already rejected. *See* Dkts. 705-08, 710, 712, 728. And on January 29, 2018, Counterclaim Defendants filed 100 pages of "objections" to United's proposed Findings of Fact regarding the NexTech/Imperium hearings even though the court never authorized or called for such briefing. Dkts. 733-36, 747. In addition to this and related work,[9] the appeal to the Ninth Circuit of Certain of this Court's orders in the litigation that this Court described as "gargantuan" against over 300

---

[9] Similarly, Counterclaim Defendants have filed in this action multiple motions to stay discovery (Dkts. 102, 390, 437, 561); multiple motions in limine regarding a pre-trial evidentiary hearing (Dkts. 615, 661); multiple "objections" or sur-replies that the court never requested (Dkts. 555-60, 562, 600, 640); serial motions to reconsider the Court's Order dismissing Plaintiffs' Claims (Dkts. 349, 398, 401, 405), and multiple, frivolous appeals to the Ninth Circuit on non-appealable orders (Dkts. 321, 359, 433, 633). Many of these motions have been repetitive, such as when Mr. Jubelt sought on behalf of Plaintiffs to recuse Your Honor on the same grounds that Robert Rice argued before him (and the Ninth Circuit) on behalf of Counterclaim Defendant Julian Omidi a year earlier. Dkts. 256, 423. Notably, the "sole practitioner" status of Ms. Dean and her predecessors has not inhibited their ability to file lengthy submissions on short notice, suggesting that Counterclaim Defendants can access the necessary resources when it suits them. As one recent example illustrates, Counterclaim Defendants immediately marshal the necessary resources when they perceive a benefit to their litigation position. *See* Dkt. 684 (filing a 21-page opposition less than 24 hours after United's *ex parte* application to stay a Rule 30(b)(6) deposition—an application Magistrate Judge MacKinnon nevertheless granted).

-10-                             2:14-CV-03053-MWF (AFMx)
COUNTERCLAIM PLAINTIFFS' OPPOSITION TO KAMILLE DEAN'S MOTION TO WITHDRAW

defendants is still being handled solely by Ms. Dean, suggesting that her withdrawal reflects her clients' desire to reallocate resources rather than any incapacity on her part.

Ms. Dean's burden argument also fails because United's First Set of Discovery—the requests about which she complains—have been pending for more than three years, or long before she became involved in this case. In fact, these requests were the subject of significant discussion among the parties in the months prior to her appearance. In other words, nothing has changed about the discovery demands such that it is now impossible for Ms. Dean to continue the representation in a way that was not apparent when she agreed to represent Counterclaim Defendants. Magistrate Judge MacKinnon had granted United's motion to compel five months earlier and there was a string of status conferences with the Court regarding Mr. Jubelt's attempts to comply with the discovery order. Ms. Dean willingly assumed this representation as a solo practitioner knowing the case's complexities, Hooper Lundy's withdrawal as prior counsel based on her clients' failure to pay their attorney fees, and presumably, the well-publicized seizure of some portion of her clients' assets. Just six months after appearing, she should not be permitted to use a discovery dispute—one that plainly existed prior to her involvement—as an excuse to withdraw. *Cf. Darby v. Torrance*, 810 F. Supp. 275, 276 (C.D. Cal. 1992) (denying motion to withdraw because moving attorney knew of the possibility of not getting paid at the time he agreed to the representation).[10] It is clear that Ms. Dean's motion to withdraw—as well as Mr. Jubelt's before her—is obvious gamesmanship when Counterclaim Defendants' past history have made

---

[10] Ms. Dean also appears to seek mandatory withdrawal on the basis that she will violate a Rule of Professional Conduct or the State Bar Act. Dkt. 757 at 6-7 (citing Cal. Code Prof'l Conduct 3-700(B)(2)). She never identifies the rule her continued representation will force her to violate, and thus, United is unable to adequately respond. To the extent she argues that the so-called burden of civil discovery will force her to violate such a rule, she is still unable to establish that the discovery requests at issue are as burdensome as she claims.

clear that they will not participate in discovery on United's counterclaim,[11] yet have not ceased their affirmative claims against United by continuing to proceed with multiple appeals in which Ms. Dean is still counsel of record.

Moreover, Ms. Dean's burden argument presupposes that she is the only person capable of assisting Counterclaim Defendants with discovery. But recent sworn testimony suggests that Ms. Dean is far from alone. For example, Brian Oxman has been the self-described "litigation coordinator" for Counterclaim Defendant Surgery Center Management and related Omidi entity Golden State Practice Management, LLC, and in that role, he has "coordinated litigation . . . for each one of the counterclaim defendants." Nov. 14, 2017 Tr. 16:5-9. Indeed, Ms. Dean paid Mr. Oxman for this work. *Id.* at 16:19-17:14. And more recently and at Ms. Dean's invitation, Mr. Oxman has even attended meet-and-confer sessions among counsel (pursuant to L.R. 37-1), despite being disbarred in July 2012. Similarly, Mr. Oxman's wife, Maureen Jaroscak, has represented various Counterclaim Defendants including all three of the individual Omidis and SCM. Dec. 12, 2017 Tr. 149:17-25; 152:2-7; 205:17-22. Although she has not filed an appearance in this case, she maintains an office at 9100 Wilshire Blvd., Suite 800 along with several other Counterclaim Defendants including SCM, DeVida USA, LLC, and various other Omidi entities (Dec. 12, 2017 Tr. 194:25-195:5); has assisted with setting-up dozens of Omidi-affiliated entities, including many Counterclaim Defendants; and has assisted in filing motions and other submissions in this matter (*see, e.g.*, Dkts. 234; 247; 332; 333; 351; 368; 471; 479). Though Ms. Dean has been the only attorney to sign filings on behalf of Counterclaim Defendants over the last six months, the sheer volume of briefing and Mr. Oxman's and Ms. Jaroscak's relationship with Counterclaim Defendants

---

[11] The individual Counterclaim Defendants have invoked the Fifth Amendment in attempting to avoid all discovery, including an improper objection to producing any documents. *See* Dkt. 758 at 10, n.3.

suggests Ms. Dean has plenty of help, and she should be able to turn to these same individuals for purposes of document discovery.

Finally, Ms. Dean does not request permissive withdrawal under Cal. Code Prof'l Conduct 3-700(C), though she cites several cases addressing instances in which a court has granted permissive withdrawal. *See, e.g.*, *U.A. Local 342 Joint Labor-Mgmt. Comm. v. S. City Refrigeration, Inc.*, 2010 U.S. Dist. LEXIS 42700 (N.D. Cal. Mar. 31, 2010); *Hershey v. Berkeley*, 2008 U.S. Dist. LEXIS 110402 (C.D. Cal. Oct. 24, 2008); *Cal. Native Plant Soc'y v. United States E.P.A.*, 2008 U.S. Dist. LEXIS 95167 (N.D. Cal. Nov. 14, 2008). Instead she wants to continue with this representation, and seeks *only* mandatory withdrawal *if* Magistrate Judge MacKinnon denies Counterclaim Defendants' motion requiring United to pay Counterclaim Defendants' attorney's fees (in an untold amount) to review and produce *any* documents in this litigation. Dkt. 757 at 17, ¶ 20. Indeed, Ms. Dean has offered no other explanation for her motion, including common reasons such as a communication breakdown with her clients or some other irreparable disagreement.

**B.    Ms. Dean's Withdrawal Will Prejudice United And Delay The Resolution Of This Litigation**

There is apparently no dispute among the parties that Ms. Dean's withdrawal will further delay this litigation. *See* Dkt. 757 at 11 (acknowledging "Ms. Dean's withdrawal will likely delay" certain previously scheduled hearings and depositions); *see also Israel Travel Adv. Serv. v. Israel Identity Tours*, 1993 U.S. Dist. LEXIS 7433, at *6 (N.D. Ill. June 1, 1993) (stating, "the repeated substitution of counsel prevented [the parties] from taking orderly discovery"). This case has been delayed enough because of Counterclaim Defendants' numerous attorney changes, unnecessary motion practice, and abject failure to engage in meaningful discovery. Any further delay because of yet another attorney change will prejudice United.

1    Left unsaid by Ms. Dean's motion is the true reason for seeking withdrawal: to further delay the production of documents critical to United's counterclaim. United long ago served discovery requests seeking Patient Notes, superbills, and insurance-verification forms, among other internal billing documents.  Often, these documents provide critical information about a patient's lack of coverage for bariatric surgery, Counterclaim Defendants' knowledge of that lack of coverage, and in some instances, the lies Counterclaim Defendants told to patients about their coverage.  *See* Dkt. 531, ¶ 125.

The case of United Member 8 illustrates why Counterclaim Defendants might prefer the loss of counsel over the disclosure of documents that the Court has ordered produced.  Patient Notes of United Member 8 provide powerful evidence that in the days before her surgical procedure, Counterclaim Defendants knew that the patient had no bariatric benefits—even with medical necessity—and despite that Counterclaim Defendants assured her that she had such coverage, and they then performed medical procedures whose only purpose was to clear her for Lap Band surgery that she was never going to have.  *See* Dkt. 549-3, Ex. 2.  United Member 8's Insurance-Verification form similarly indicates that Counterclaim Defendants knew that she did not have bariatric-surgery benefits.  *See* Dkt. 531, Ex. G. Notably, United has possession of these documents through independent witnesses, not discovery in this case; indeed, Counterclaim Defendants have *never* produced a complete set of Patient Notes for United Member 8 or any other patient at issue, and evidently are doing whatever they can to forestall those productions.  Instead, in a declaration previously filed in this case Counterclaim Defendants attached a cherry-picked excerpt of United Member 8's Patient Notes that actually excludes the entries showing that they knew United Member 8 lacked bariatric-surgery benefits, and that they put her through a battery of preparatory tests for a Lap Band despite knowing that she would never get one. *Compare* Dkt. 55, ¶ 22 Ex. F. *with*

Ex. 549-3, Ex. 2.[12]  In other words, Ms. Dean's transparent effort to withdraw in the face of imminent orders to produce documents—like Mr. Jubelt's before her—is really designed to delay the day in which Counterclaim Defendants are forced to answer for the fraud they perpetrated on United and the health plans it administers.

Even absent the apparently bad faith reasons for seeking withdrawal, United will be prejudiced if Ms. Dean is allowed to withdraw.  This case has already been pending for nearly four years and United has tried in vain to move discovery along.  Currently, the fact discovery deadline is September 14, 2018 and the trial is scheduled for January 29, 2019.  Dkt. 468.  Yet seven months from the close of fact discovery, United is still waiting for production of documents responsive to its requests served three years ago.  This has caused delays in United's ability to take depositions and even when it has attempted to schedule depositions without the benefit of documents, Counterclaim Defendants have thrown up roadblock after roadblock based on the claimed unavailability of counsel and a revolving door of attorneys.  Ms. Dean's motion makes no indication that any Counterclaim Defendant is willing to retain substitute counsel and in fact suggests that no counsel could to the work necessary.

Under the Local Rules, "no organization or entity . . . including corporations may appear in any action or proceeding unless represented by an attorney permitted to practice before this Court."  L.R. 83-2.2.2; *see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the

---

[12] United obtained United Member 8's Patient Notes only through communications with United Member 8's attorney and Dr. Marvin Perer, one of her treating physicians.  Based on the excerpted Patient Notes attached to an October 2014 declaration—months after *both* the government seizure and the supposed assignment of the NexTech software license—it is clear that Counterclaim Defendants have access to these critical documents, and they have chosen instead to conceal them from United and the Court in an attempt to avoid liability for their fraud.

federal courts only through licensed counsel."). As such, this case will grind to a halt even more should Ms. Dean be allowed to withdraw, especially given that there is no indication that her clients are seeking to obtain substitute counsel. To the extent Counterclaim Defendants use this change of counsel as yet another delay tactic, this Court should enter default judgment in favor of United. *See* L.R. 83-2.2.4; *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) (upholding default judgment after corporation failed to hire an attorney following withdrawal).

### III.   CONCLUSION

Based on the foregoing, the Court should deny Ms. Dean's Motion to be Relieved as Counsel for Counterclaim Defendants.[13]

Dated: February 26, 2018

By: */s/ Bryan S. Westerfeld*

Bryan S. Westerfeld
Nicole E. Wurscher
**WALRAVEN & WESTERFELD LLP**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Telephone: (949) 215-1990
Facsimile: (949) 215-1999

*Attorneys for United Healthcare Services, Inc. United Healthcare Insurance Company, and OptumInsight, Inc.*

By: */s/ Michelle S. Grant*

Timothy Branson
Michelle S. Grant
Michael Rowe
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

---

[13] United has attempted for some time to schedule various depositions in this matter. It is currently working with Ms. Dean to schedule a handful of depositions in March. Ms. Dean has indicated that even if her motion to withdraw is granted she will continue on the case to complete depositions scheduled shortly after this hearing. Today, Ms. Dean requested that the hearing on motion to withdraw be rescheduled from March 19. If the Court grants Ms. Dean's motion, United requests an order requiring her to continue as counsel to complete any depositions scheduled in March or April.