Kamille Dean, Esq.  #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendant
Julian Omidi

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Almont Ambulatory Surgery Center, LLC, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>Unitedhealth Group, Inc., et al.,<br><br>            Defendants.<br><hr><br>United Healthcare Services, Inc., et al.,<br><br>            Counterclaim Plaintiffs,<br><br>    v.<br><br>Almont Ambulatory Surgery Center, LLC, et al..<br><br>            Counterclaim Defendants. | Case No: 2:14-cv-03053-MWF(AFMx)<br><br>**COUNTER-DEFENDANTS' REPLY TO UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER; DECLARATION OF KAMILLE DEAN**<br><br>**Hon. Magistrate Judge MacKinnon**<br><br>**TIME:    10:00 a.m.**<br>**DATE:    March 13, 2018**<br>**PLACE:   Courtroom 780**<br>Hon. Magistrate Judge MacKinnon<br><br>Hearing:<br>Date: March  19, 2018<br>Time: 10:00 a.m.<br>Courtroom: #780- 7th Floor<br><br>Discovery Cut-off: Sept. 14, 2018<br>Pretrial Conference: Jan. 7, 2019<br>Trial Date: Jan. 29, 2019 |

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................1

II.   ARGUMENT ...................................................................4

      A.    Counter-defendants have not violated Rule 37 in filing the motion for protective order for costs. ...........................................................4

      B.    Counter-defendants have not waived their request for a protective order requiring cost-shifting.................................................................8

      C.    United should bear the costs of its burdensome discovery requests which request information already in its possession and control.............................8

      D.    The counter-defendants are entitled cost-shifting. ...............................9

III.  APPLYING THE ZUBULAKE THREE-STEP ANALYSIS HERE, UNITED SHOULD BEAR THE COSTS OF PRODUCTION.................................................10

      A.    United's Document Requests are Unduly Burdensome................................10

      B.    Shifting Discovery Costs to United is Proper. ..................................13

            1.    The remaining *Zubulake* factors are met and justify cost-shifting. ......................14

                  a.    The Marginal Utility Test of the First Two Factors require cost-shifting ..........................................................14

                  b.    The remaining requests are not specific or narrowly tailored...................14

                  c.    The information is already in the custody and control of United or is readily available from other sources. ..................................15

                  d.    The 3rd, 4th and 5th Factors regarding how expensive will the review be and who can handle that expense demonstrates that review and production fees are appropriate for cost-shifting ....................................15

                  e.    The Counterclaim defendants are out of business and exist for litigation only. ...........................................................17

                  f.    United has not attempted to control discovery costs and instead, is using discovery to overly harass and burden the counter-defendants.......18

                  g.    A 502(d) agreement violates numerous patients' and non-parties' interests and privacy. ................................................19

IV.   CONCLUSION....................................................................20

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Cases**

*Playboy Enterprises, Inc. v. Welles*,
    60 F. Supp. 2d 1050 (S.D. Cal. 1999)................................................................17

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
    305 F.R.D. 225 (S.D. Cal. 2015) ...................................................................14

*Zubulake v. UBS Warburg LLC*,
    217  F.R.D. 309 (S.D.N.Y 2003) .....................................................................9

*Zubulake v. UBS Warburg LLC*, S.D.N.Y.,
    216 F.R.D. 280 (2003) ...................................................................14

 **Rules**

Federal Rules of Civil Procedure
    Rule 26(b)(1)....................................................................10

Federal Rules of Civil Procedure
    Rule 37 ...................................................................4

Federal Rules of Civil Procedure
    Rule 37(2)(C) ...................................................................8

Federeal Rules of Evidence
    Rule 502(d) ...................................................................4

 **Constitutional Provisions**

Fifth Amendment
    United States Constitution ...................................................................6

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

# I.    INTRODUCTION

The Motion for Protective Order regarding cost-shifting has nothing to do with counter-defendants' acclaimed dissatisfaction with the motion to compel ruling from a year ago.  The Motion for Protective Order is not frivolous and in fact, is necessary due to the Court's recent orders that are impossible to comply with, in addition to United's discovery requests being over-burdensome to the counter-defendants.  It is readily apparent in files reviewed by undersigned counsel held by the government, in addition to the disclosure by United that United should have all of the patient records and billing regarding the patients at issue.  Whenever the corporate counter-defendants requested payment on a claim or submitted an appeal, the records and billing were submitted to United.

Therefore, the documents requests by United are within the provision of being overly burdensome requiring a protective order.  Further, if this Court requires the counter-defendants to assist Imperium with NexTech, the counter-defendants do not have the means and resources to do so for the 33,000 claims at issue.  The counter-defendants also do not have the resources to go through more than 1.2 million documents owned by non-corporations at issue.  While undersigned counsel has spent numerous hours and days, she can only read and decipher the documents so fast with an average of 1,400 documents per hour without a compilation of a privilege log or preparation of said documents for disclosure.

In light of recent developments and new information to this Court, this Court should consider the discovery requests and shift the burden in costs to United.  The documents requested are inaccessible to counter-defendants and are accessible and in the control of United.  United's discovery requests have intentionally created an undue burden.  The government has assisted United in creating this inaccessibility and undue burden by seizing the documents and records without just cause and mandating access based on a façade that prohibits effective access and still withholds documents held by a "taint team".  The government mandates ownership claims to further its criminal

investigation and has requested undersigned counsel not to effectively and competently represent her clients if she comes across a document that assists any of the Counter-defendants in another matter, but instead petition this Court for each instance of a need to use the information elsewhere.  The government's requirement of this sort of protective order forces undersigned counsel to rely on this Court to allow her to effectively and competently represent her clients.  The Intervenor USA knows full-well that undersigned counsel represents many of the counter-defendants in other matters. The government's request that this Court mandate a protective order with a limitation on documents found is without just reason and has made the documents inaccessible as undersigned counsel will not enter into said protective order.

The sheer volume of United's requests and the availability of the information from more convenient sources require the Court to shift the costs of production to United to avoid an undue burden and prejudicially oppressive result cost to counter-defendants. In the absence of a Protective Order to require United to pay the reasonable costs of production, counter-defendants' Counsel, Ms. Kamille Dean, will be forced to withdraw from representation because the unnecessary and overly burdensome discovery obligations create an unreasonably oppressive physical inability to comply with discovery requests thereby mandating her withdrawal.

Contrary to United's claims, United has continuously refused to cooperate with counter-defendants and undersigned counsel to limit discovery[1].  In fact, United itself has withheld patient records and requires simultaneous exchange of patient records.  United has not provided patient notes it its possession as clearly provided in its disclosure to the

---

[1] If United would truly do as it claims jt has been willing to do and limit the discovery to documents not already in its possession, or documents available more readily from other sources such as third parties with easy access, the responses would be much more attainable. Billing, claims or insurance forms for any of the patients at issue should not need to be disclosed as United should already have said documents in its possession. United has also subpoenaed the bank account information and has been provided with all bank account numbers known to Counter-defendants.

government.  Further, undersigned counsel met with United's counsel multiple times and the sole request was to concentrate on the responses to the first set of interrogatories, which counter-defendants complied and provided Second Supplemental Responses to the First Set of Interrogatories to United on December 14, 2017.  Counter-defendants will file make a request to provide a copy of said responses under seal to this Honorable Court due to the sensitive nature of the data provided in said responses.

Now, without notice to Counter-defendants or their counsel of any issue with the Second Supplemental Interrogatory Responses produced in violation of Rule 37-1, United frivolously claims to the Court that Counter-defendants have not provided all bank account information which was encompassed nearly two and a half (2.5) pages of the supplemental responses served on United on December 14, 2017.  United knows full-well that counter-defendants are working from the minimal information available to them.  For United to fault counter-defendants and make this false claim that counter-defendants willfully withheld bank records and cancelled checks is offensive and a flat-out unfounded and bold untruthful statement to the Court.  United is fully aware that undersigned counsel was not allowed to take notes, let alone take photographs or make copies for disclosure.  Based on the inability to take notes, undersigned counsel did not try to memorize the names of patients or the identification of what account records were in the boxes. In fact, since the bank record boxes were not part of the requested boxes, and undersigned counsel was estopped from taking notes or photographs, all undersigned counsel did was confirm the boxes contained bank records.  To now claim fault to undersigned counsel is insulting and an egregious frivolous claim.

Further and of extreme importance, United continuously withholds information from this Court that it has served multiple third-party subpoenas to banks and has more information available to it than counter-defendants. (Undersigned counsel has tried to confirm with United on multiple occasions what third-party subpoenas have been served from the start of this litigation and United refuses to provide an answer and claims that a list is not easily accessible.  Clearly throughout the Imperium-NexTech evidentiary

hearings, United had copies of bank account applications and processed checks for some of the counter-defendants.)  United also falsely claims that counter-defendants have still withheld relationship information which was encompassed nine (9) pages of the supplemental responses served on United on December 14, 2017.

United's only solution, a claw back provision, is one that cannot be considered without extraordinary violations to numerous individual patients, non-patients and corporate entities not at issue, in addition to violations of attorney-client privileged communications and work product privileges.  The claw back provision not only shifts the costs to United, as United will have to have resources to review the documents, but is a valid reason to shift the costs so that counter-defendants can protect patients not at issue, individuals and entities not at issue, attorney-client communications, and work product privileged information. Otherwise, there would be vast violations of the Health Insurance Portability and Accountability Act ("HIPAA").

## II.   ARGUMENT

### A.   Counter-defendants have not violated Rule 37 in filing the motion for protective order for costs.

United's claims that counsel did not meet and confer regarding this motion is blatantly false.  The parties met and conferred in person following depositions in November on November 6 and 9, 2017, in addition to numerous meet and confers via phone call regarding discovery.  United adamantly denied any cost-shifting authority and refused to consider any cost-shifting agreement.  On November 8, 2017, the parties filed a Joint Status Report (Dkt. 601) with this Court regarding the government seized documents which further addresses the cost shifting requests of counter-defendants.  In the Joint Status Report, United stated that it remained skeptical even if it has paid for copies that counter-defendants will actually provide discovery.  United also claimed that "[t]he Providers offer no legal support to justify their position that United bears the cost of any privilege review." United further claimed that "[i]n any event, Fed. R. Evid. 502(d) permits "a federal court may order that the privilege or protection is not waived by

disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." United claimed this rule was designed to address the very concerns raised by the Providers: the "excessive costs of pre-production review for privilege and work product."

While United claimed in the Joint Status Report that it would consider practical solutions that address the concerns of all parties and non-parties involved, United refused to entertain any offer by Counter-defendants and refused to provide any practical solution whatsoever with regards to cost shifting and instead insisted on a claw-back provision.

United now falsely states: "Nor have Counterclaim defendants at any time in the last two years – either before or after the Court's granting the motion to compel—met and conferred with United to substantively discuss the actual documents requests at issue, the scope, burden, prioritization, or potentially narrowing of the requests". Said statement is blatantly false. Not only is undersigned counsel dumbfounded by this egregious falsehood United is proclaiming, but undersigned counsel had her former assistant, Phil Escolar, present during most, if not all, numerous meet and confer telephonic conferences with United. Litigation Coordinator Brian Oxman also assisted undersigned counsel with a meet and confer with United for over an hour on January 4, 2018. United's claims of failing to meet and confer at any time regarding narrowing discovery is an untruthful statement, and is sanctionable and a reportable ethical violation for lacking candor to the court and opposing counsel.

Due to United's false claims and falsehoods regarding undersigned counsel, undersigned counsel requests that this Court hold status discovery conferences again in lieu of meet and confers, or in the alternative order that the meet and confers can be audio recorded. To continue the frivolous meet and confers, which United then creates falsehoods to attempt to prejudice this Court, with United is against undersigned counsel's and her clients' interests. United's false statements and claims regarding undersigned counsel are extremely offensive and will also be added to undersigned counsel's reasons for requesting withdrawal.

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

Further, undersigned counsel offered to proceed via joint stipulation with United concerning this matter after receiving its Opposition.  Undersigned counsel emailed United's counsel on February 26, 2018 and indicated that if United required to proceed via joint stipulation, that a joint stipulation would be prepared and sent to United. Undersigned counsel prepared the joint stipulation, and United never responded to undersigned counsel's offer to go forward via joint stipulation.  (See Exhibit 1, email to United's counsel and Exhibit 2, preparation of a word document and pdf version of a joint stipulation).  Therefore, United has waived its objection to a joint stipulation regarding this matter.

The cost-shifting issue has also been before the Court previously.  On October 19, 2018, undersigned counsel made it clear to the Court and United that there are not resources to access NexTech or to pay for copies of documents in the government's control.  The lack of resources was also addressed on November 29, 2018 during the Court hearing with the government. During this hearing, undersigned counsel indicated that she had addressed this with the court before – that her clients have absolutely no money to go and make copies or scans of all the documents.  (See Tr 11-29-17, pp. 37, 6-20 and pp. 59, 21-23).  Instead of addressing the lack of resources, the Court has repeatedly stated the counter-defendants have the Omidis,[2] Brian Oxman, undersigned counsel's assistant (who is no longer available), and Jamie Hidalgo.  The Court also indicated that the counter-defendants would be "under court order" and that undersigned counsel "can then use whatever means [she] need[s] to go in and review those documents in order to respond to discovery."  (pp 50, 18-20).  The only person available is undersigned counsel who is physically unable to complete the review without 4 to 5 years

---

[2] The individual counterclaim defendants have a valid Fifth Amendment privilege and assisting the corporate counter-defendants in providing discovery would be against this privilege. Additionally, the Motion to Compel was requested (Dkt. 441) and granted for the First Set of Discovery against "providers" – not any of the individual counter-defendants.

of time unless additional resources are made available to her.  Undersigned counsel's office does not have the resources and the Counter-defendants are unable to provide undersigned counsel with additional resources, hence, undersigned counsel's pending motion to withdraw from this matter.  (Note: Any recent delay in reviewing and producing discovery is due to undersigned spending time assisting in the care of her elderly ill grandmother who passed away recently.  Undersigned counsel has now requested extensions of time from United for this reason and United has refused to cooperate.)

Further, the Court is still considering the NexTech Imperium issue. In light of the vast majority of documents outside the custody and control of the Counter-defendants, the motion to shift costs is not untimely.  While the motion may have been ripe to file previously, and prior counsel did not do so, the counter-defendants should not now be punished for failing to previously request a protective order and shift costs.  The issue first arose at the beginning of October and this Court has not yet determined if United will have to compensate a non-party entity Imperium for the patient records within the NexTech database.  It is clear that the majority of patient records should be in the NexTech data base. In addition, the vast amount of orders that undersigned counsel is physically unable to comply with were ordered by this Court after the November 29, 2017 hearing.  Therefore, this motion is now ripe for consideration in light of the court orders.

The government's seizure has interfered with the counter-defendants' abilities to produce discovery regarding hard copy patient files, bank records, and corporate records, and therefore the Court should determine that the documents are in the custody and control of a third party.  This court should consider this motion for protective order now and shift the costs to United to review and produce any documents held by the government, or otherwise needing production to United.  If United wants to lower its costs, United should limit the discovery.

Further, any documents previously disclosed to the Intervenor, United States, was done so pursuant to a Grand Jury Subpoena on behalf of over 200 entities, many entities which are not at issue in this litigation and/or are not represented by undersigned counsel.

7

For ease of production, prior counsel from Sheppard Mullin bate stamped the production "SCM" for Surgery Center Management even though the majority of documents were transferred and held by Golden State Practice Management[3] at the time of productions. While this Court agreed that United could have objected to the subpoenas they were served with by the government, the counterclaim defendants could not make any said objections, as they were under investigation and it was in their best interests to provide the documents to defend any claims of wrongdoing or criminal activity.

Not only are sanctions not justified herein, but to further consider United's request to grant sanctions is against FRCP 37(2)(C). The corporate defendants are not willfully not complying with discovery and all counter-defendants are without resources making an award of expenses unjust.

### B. Counter-defendants have not waived their request for a protective order requiring cost-shifting

United claims that the counter-defendants have waived any objections that the records are inaccessible because said objections were waived a year ago when prior counsel failed to respond to the Motion to Compel. The objections were clearly not waived as the inaccessibility of documents was not yet at issue. Counter-defendants' prior counsel was not aware the government would grant access to records, and the access to NexTech was revoked after counter-defendants could no longer compensate Imperium for extensive record access required. Therefore, United's argument that the objections were waived fails.

### C. United should bear the costs of its burdensome discovery requests which request information already in its possession and control.

Regardless of any alleged waiver of objections, there is no ignoring the fact that the discovery is an undue burden, that United has most, if not all, of the requested information

---

[3] Golden State Practice Management is not a party to this litigation. The assignment and transfer to Golden State Practice Management was made on March 15, 2012, more than two years prior to the start of this litigation and cannot be said to have occurred to avoid discovery.

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

in its own possession and control, and that Counter-defendants have no possession, custody, or control over the documents with the government and in NexTech system which belongs to Imperium Medical Services.  The counter-defendants could have access NexTech if they had the resources and ability to pay Imperium for its time and resources, however, counter-defendants do not have the resources to do so.  The counter-defendants also do not have the resources to copy and/or review 1,700 boxes of documents with the government.  The government is also now refusing to provide an electronic version of the documents if counsel requests to review any physical files.

It is not physically possible for counter-defendant's counsel to examine these documents, and the counter-defendants' do not have the physical, financial, or manpower ability to undertake such an examination.  It is unquestionable that it is physically impossible for counter-defendants to gather, review and produce documents from the government or from non-parties to this proceeding without compensation.  Without compensation to add resources, it is unquestionable that it is physically impossible for counter-defendants to gather, review and produce documents from the government or from non-parties to this proceeding.  Without cost shifting, counter-defendants do not have the means of complying with the Court's discovery orders.

### D. The counter-defendants are entitled cost-shifting.

United's requests are unduly burdensome and regardless what case law or test if used, the counter-defendants are entitled to cost-shifting.  United asks the Court to rely on a seven-factor test in *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y 2003) which is a case about inaccessible electronic data, which is only half of the issue present here (the government documents are hard copy physical files).

Nevertheless, the Court in *Zubulake* acknowledges "By and large, the solution has been to consider cost-shifting: forcing the requesting party, rather than the answering party, to bear the cost of discovery."  *Id*. at 316.  United criticizes *Rowe*, yet both the Plaintiff and Defendant in *Zubulake* agreed that the eight-factor *Rowe* test should be used to determine whether cost-shifting is appropriate.  *Id.*  The *Zubulake* court decided

however that there should be a three-step analysis (not just a seven-factor test as claimed by United), with the first step indicating cost-shifting should be considered when data is inaccessible as it is here. *Zubulake* also does not make any conclusion without determining what can be found from an exemplar list and considering the time and money spent on doing so. Said factor makes it easily determinable that United should bear the costs. An exemplar of the data reviewed by counsel thus far of the Sheppard Mullin documents demonstrates hundreds of thousands of non-relevant documents after numerous hours or review. (See attached Declaration of Kamille Dean). Clearly, many of the documents will be irrelevant, as the government seized documents from over 265 entities and the government subpoenaed documents from the same entities.

## III. APPLYING THE ZUBULAKE THREE-STEP ANALYSIS HERE, UNITED SHOULD BEAR THE COSTS OF PRODUCTION.

First, the *Zubulake* case is about electronic data, thus United appears to agree and waives its objection to the cost-shifting request of the physical files located in the government's possession and control.

According to the Zubulake court, cost-shifting should be considered *only* when **electronic** discovery imposes an "undue burden or expense" on the responding party. According to the *Zubulake* court, the burden or expense of discovery is, in turn, "undue" when it "outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues". See FRCP 26(b)(1).

### A. United's Document Requests are Unduly Burdensome.

Here, United's discovery is unduly burdensome because the documents are inaccessible to counter-defendants and United has the documents in its possession and control either because the counter-defendants have previously submitted the documents to United during claim processing and/or United has subpoenaed third-party persons and entities, including banks, and has received the information. Requiring counter-defendants

to search and produce documents United already has is simply a tactic by United to use its resources to out-paper the counter-defendants.

United claims counter-defendants' determination that review is physically and financially impossible, is meritless.  However, it is not for United to judge.  First, it is physically impossible for counter-defendants and their current counsel to complete said review.  While three and a half (3.5) hours were spent for the initial review, this was completed by not just undersigned counsel, but Imperium's attorney was present as well. To continue to conduct said review is financially impossible without additional resources. This is why Imperium will no longer allow access to NexTech because counter-defendants do not have the resources to gain access.  With regards to the government seized documents, even if undersigned counsel and Imperium's counsel for that matter spent all day, the average review daily would consist of approximately 11,000-14,000 documents daily per counsel.  United fails to address the years it will take to do the review required.

It is also ludicrous for United to insist on the assistance of Maureen Jaroscak, who is not paid to assist with this case, or Brian Oxman, to conduct document review or production.  Further, there are not enough hours in the day for Brian Oxman to conduct his radio show and assist counter-defendants part-time as a litigation coordinator in addition to reviewing documents held by the government.   For United to suggest so is humorous at best.  Moreover, it was difficult enough to get undersigned counsel access and required a court order to do so.  Prior to that, only a copy service was allowed.

Further, United has continuously suggested that other attorneys assist, when clearly no other attorney other than undersigned counsel is available to work on this matter. All other attorneys who may still be docketed as counsel have all left years ago or abandoned the counter-defendants due to inability to pay, other than Roger Diamond who is withdrawing for personal reasons.

The documents in the possession and control of the government are inaccessible, and third-party subpoena to banks and to the Internal Revenue Service, or even the

individual contractors United has requested information regarding.  Therefore, United should be forced to seek these other means versus forcing the counter-defendants to enter into a protective order with the government which results in undersigned counsel being ineffective to her clients.

Finally, undersigned counsel has not been willing to rely on search terms to review the documents given to counsel by Sheppard Mullin without a court order or agreement to do so from United. Undersigned counsel refuses to be caught in a game of cat and mouse with United and the government, which is clearly being attempted here.  Not only did this Court order that undersigned counsel review each page of the 1.2 million pages but undersigned counsel cannot verify she has done so without actually completing the task. Therefore, each document must be reviewed unless and until there is an agreement by United or order from this Court to only search for certain terms.  If United expects counsel to search for the names of all patients at issue in addition to all other relevant terms, the time to do so would make reviewing every document more reasonable.  Again, the average review is 1,400 pages per hour.  Undersigned counsel has more than this one matter and has other requirements to meet her obligations in this case than to just respond to discovery.  This is the reasons for undersigned counsel's request to withdraw.  She cannot physically meet the requirements of this case.

United has consistently refused to give undersigned counsel a prioritization list of patients at issue, or to remove discovery requests for information already obtained via subpoena.  The parties have met and conferred numerous times regarding discovery and United has refused to cooperate in lessening the burden of the discovery requests. Regardless, this Court should require United to limit discovery to documents not already in its possession and control from processing the original claims, in addition to documents secured via third-party subpoenas and documents that could be secured via third-party

subpoenas to additional corporations, government entities and/or individual contractors[4], especially considering the inaccessibility of the documents to counter-defendants.

United subpoenaed the information and fails to provide undersigned counsel with the third-party requests despite numerous requests to do so.  It is apparent United is intentionally withholding this information from the Court as well and fails to acknowledge to this Honorable Court that the majority of documents are already within its possession and control and the documents are available from other sources.

**B.    Shifting Discovery Costs to United is Proper.**

Shifting discovery costs to United must occur.  Without cost shifting and resources, this Court would need to stay this matter for 4 to 5 years to allow undersigned counsel and the counter-defendants to complete the current discovery review and production.

Counter-defendants have more than described what costs are needing shifted—any costs to review and produce discovery from NexTech, the government or the 1.2 million documents previously produced to the government on behalf of numerous corporations including numerous non-party corporations.

United claims that attorney fees for review are not appropriate for cost shifting but then states that only the costs of restoration or searching should be shifted.  It is unbeknownst who United believes should be doing the searching, but if undersigned counsel is not involved in said review or search, she will not be providing declarations as to others' reviews and searches.

United claims that the electronic data provided in ESI format from back-ups the government or Sheppard Mullin has is accessible and not considered inaccessible data. Not only is said back-up data the exact form of data that is deemed inaccessible, if the sheer number of electronic documents cannot be reviewed due to lack of physical time or

---

[4] The document requests remaining require tax returns which could be subpoenaed from the Internal Revenue Service and Franchise Tax Board, bank cancelled checks and statements which can be obtained from the banks directly, in addition to 1099 and payroll documents from independent contractors which can be obtained from those individuals directly.

resources, they too are clearly inaccessible.

United also fails to address that ESI sought by plaintiff was not "reasonably accessible" because of undue burden and cost; *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 239 (S.D. Cal. 2015) and undue burden and cost renders information sought in discovery reasonably inaccessible.  Therefore, United has clearly waived any argument to the contrary.

        **1.**    **The remaining *Zubulake* factors are met and justify cost-shifting.**

            **a.**    **The Marginal Utility Test of the First Two Factors require cost-shifting**

Factors 1 and 2 comprise the Marginal Utility Test and as applied here require cost-shifting. *Zubulake v. UBS Warburg LLC,* S.D.N.Y., 216 F.R.D. 280 (2003).  The more likely that the backup contains information that is relevant to a claim or defense, the fairer that it is that the responding party search at its own expense.  The less likely it is, the more unjust it would be to make the responding party search at its own expense.  Here, not only do the back-ups not contain much relevant information but United already has the information in its custody and control or can get said information from other sources that have said information readily available.

            **b.**    **The remaining requests are not specific or narrowly tailored.**

Here, based on the initial searches of both the Sheppard Mullin documents and the documents held by the government, the majority of documents that will be reviewed will not contain responsive documents.

The *Zubulake* case was regarding a **single** request for emails from 5 individuals in a short period of time (August 1999 to December 2001).  The requests here are vast and require several requests and for a much longer period of time.  The requests ask for all communications, not just email correspondence like *Zubulake*, between the 28 counter-defendants and numerous individuals, in addition to corporate structure documents for over 20 corporations, tax records for 28 individuals and/or corporations, in addition to 1099s and pay for numerous individuals and bank account record information.  Therefore,

United's First Set of Discovery Requests are clearly not narrowly tailored like in *Zubulake* and the likelihood of coming across relevant information is hit or miss with many more misses than hits as demonstrated by the review thus far of the Sheppard Mullin documents and the government seized documents.

### c. The information is already in the custody and control of United or is readily available from other sources.

United fails to acknowledge how readily available the information is from other sources, including itself.  United has available to itself the medical records, claim and billing information already exchanged in the normal course of business for claim processing.  United also fails to acknowledge that it has subpoenaed and has in its possession many, if not all, bank records, including cancelled checks and bank account statements. United further fails to address its availability to subpoena additional documents and individuals for the information needed, for example, the individual "co-conspirators" for their 1099 information.  The patient and billing records could also be more readily available from the patients or doctors directly than the counter-defendants who are without resources.  United can also subpoena the tax records from the government and subpoena other banks for the remaining bank account information.

The Court should stop the review and analysis here and require United to bear the costs to review the remaining 1.2 million documents, in addition to reviewing the government seized documents. The Court should further require cost shifting for any NexTech documents other than patient notes as all other documents have been previously produced to United it the course of ordinary business in processing claims and appeals. For United to now claim that no documents were ever produced to it in the ordinary course of business or otherwise is a complete fabrication.  Said fabrication is apparent in a review of the documents United freely gave to the government.

### d. The 3rd, 4th and 5th Factors regarding how expensive will the review be and who can handle that expense demonstrates that review and production fees are appropriate for cost-shifting

While counter-defendants believe the inquiry into the remaining factors is not

15

necessary, the factors remaining also support cost-shifting.  While United claims undersigned counsel has done nothing to lessen the burdensome burden of culling millions of documents, United has also not been willing to agree on a limited use of search terms.

United also pretends as if it is not sure what costs are needing to be shifted. Counter-defendants have more than described what costs are needing shifted—any costs to review and produce discovery from NexTech, the government or the 1.2 million documents previously produced to the government on behalf of numerous corporations including numerous non-party corporations.

United claims that attorney fees for review are not appropriate for cost shifting but then states that only the costs of restoration or searching should be shifted.  It is unbeknownst who United believes should be doing the searching, but if undersigned counsel is not involved in said review or search, she will not be providing declarations as to others' reviews and searches.  If United is willing to pay numerous document review persons to search these billions of documents, then that would suffice, however, said persons need to be qualified to know what they are looking for.  United would need to agree to a reasonable protocol list of search terms and pay the invoices for said document review persons directly.

United has never proposed an agreement that only certain search terms would need to be conducted, nor are search terms available when reviewing 1,700 boxes of physical files. United appears to have zero clue what any review will take and should likely contact its own administration e-discovery staff to determine how ludicrous said search is and the extensive amount of time it would take to provide similar discovery to counter-defendants.  Notably, it has taken United nearly two months to disclose documents readily available that were disclosed to the government and create a three (3) line privilege log. This is for documents United knew were already relevant.

A claw back provision to save counter-defendants money and time required for review seems to be the same as a cost-shifting to United, but with numerous breaches of

privacy, privilege, work product and confidentiality. Even if the counterdefendants disclose to United 654 plus billion documents, then United has the expense of going through said documents, and the issues of privacy, privilege, work product and confidentiality, especially of the documents not belonging to counter-defendants, would still remain unaddressed.

### e.    The Counterclaim defendants are out of business and exist for litigation only.

United's claims that there is no competent evidence establishing the counter-defendants are without financial resources is beyond comprehension.  Not only are none of the counter-defendants currently operating, but Jamie Hidalgo, the acting manager for the majority of the corporate counterclaim defendants and acting corporate representative for all corporate counterclaim defendants was deposed on November 6, 2017 and testified before this Honorable Court on November 14, 2017 that the corporate counter-defendants were out of business and existed for litigation purposes only. Litigation Coordinator, Brian Oxman, similarly was deposed on November 9, 2017 and testified on November 14, 2017 and December 12, 2017 that the counter-defendants were all out of business and existed for litigation purposes only.  Otherwise, the corporations in this lawsuit would dissolve and not exist. None of these corporate counter-defendants have employees.

United's claim the corporate defendants are solvent, otherwise they would file bankruptcy is completely unfounded.  The corporate counter-defendants have no creditors other than United's alleged claims.  There is no need to file bankruptcy.

It is well-known that United is a multi-billion dollar business, whose stock has soared approximately 40% in the last year, that has spent unlimited money on 10 attorneys to battle this case, billing at hundreds of thousands of dollars monthly.  The disparity of resources and overwhelming burden of United's discovery requests require a Protective Order requiring United to pay reasonable costs to Counter-defendants. *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1058 (S.D. Cal. 1999) (party requesting unduly burdensome and expensive information should pay the responding party's costs of

production of such information).

United further claims that it has no evidence of the counter-defendants' cancelled checks or bank account activity, however, as the Court could see during the NexTech-Imperium evidentiary hearings, United has cancelled checks.  Untied continuously hides from this court that it has subpoenaed the information from the banks and has the information regarding the bank accounts readily accessible to it. United is also fully aware that the counter-defendants lost their rightful $90 million dollar claims against United for lack of counsel due to lack of payment. United is also fully aware that the individual counter-defendants used to have their own counsel and now rely on the same counsel as the corporate entities.  This is due to lack of resources.  To suggest otherwise that counter-defendants have not demonstrated a lack of resources is ignorant and naïve.

**f.    United has not attempted to control discovery costs and instead, is using discovery to overly harass and burden the counter-defendants.**

United has not once attempted to control discovery costs and instead, continuously requests sanctions, takes advantage of the counter-defendants' lack of resources and is using the discovery process to harass and overly burden the counter-defendants.  The counter-defendants ask at this time that United be mandated to secure the discovery from more readily available sources and to limit the discovery to requests which it truly does not already have in its custody and control.  To date, United has been unwilling to produce billing and claim documents to undersigned counsel and has mandated a mutual exchange of information.   The counter-defendants served United with a Second Set of Interrogatories on October 19, 2017 requesting for United to "Identify each and every claim that Counter-Claimants alleges involved fraud of any kind committed by any Counterdefendant or its agents or employees. For each claim identified, please state: a. the date(s) of the fraud, b. the nature of the fraud, c. the name of any and all person(s) allegedly involved in the fraud, d. the name of any and all company or corporate entities allegedly involved in the fraud, and, e. the amount of money you allege was fraudulently requested, and f. the amount of money you allege was fraudulently obtained by

Counterclaim Defendants with respect to that claim". "Identify all communications between any Counter-claimant and any other person or entity acting on their behalf pertaining to the claims identified in your response to Interrogatory #3." Now United for the first time claims that the 3,000 documents produced by Hooper Lundy for the first 15 patients does not include any Patient Notes or Claims History files. Previously, undersigned counsel was informed United received comprehensive discovery for these patients at issue.

It further appears the attorney(s) for United drafting its motions are attorneys who were present at recent evidentiary hearings or have read the transcripts. United claims that counter-defendants have not addressed how many documents are at issue. This is unknown without pulling up the patient in NexTech or finding the patient's file. Numerous individuals testified regarding accessing NexTech and the time it took and the different tabs of documents available. For United to now claim that it has no information is absurd. Further, counter-defendants have repeatedly raised the issue of attorney involvement in the appeal of claims. This is readily apparent from United's disclosure as well. There were many attorneys involved in the collections of claims in addition to the appeals of coverage.

United further attempts to mingle in the criminal investigation and again blames fault for not seeing the inventory despite the counter-defendants' counsel describing the inventory in detail. Regardless, United has not been willing to pay for copies of any documents held by the government or for review of said documents. Additionally, as previously stated, the documents are readily available from other sources and/or the documents are already in the custody and control of United.

### g. A 502(d) agreement violates numerous patients' and non-parties' interests and privacy.

A claw back provision cannot be considered without the extraordinary violations to numerous individual patients and non-patients not at issue, in addition to corporations not at issue. The claw back provision would also, in essence, shift the costs to United and is

a valid reason to shift the costs so that counter-defendants can protect individuals,

corporations and patients not at issue and uphold HIPAA.

**IV.     CONCLUSION**

For the foregoing reasons, Counter-defendants request their Motion for Protective

Order be granted.

*Respectfully Submitted*,

this 27th day of February, 2017          *By*:  *s/ Kamille Dean*
_____

KAMILLE DEAN, ESQ. *for*

**LAW OFFICES OF
KAMILLE DEAN**

# DECLARATION OF KAMILLE DEAN

I, Kamille Dean, declare and say:

1.  I am an attorney at law admitted to practice before this Court, and I am counsel for Counter-defendants in the above-entitled action.  I submit the following declaration based on my own personal knowledge, and if called as a witness I would testify as follows.

2.  I offered to do the joint stipulation. Attached as Exhibit 1 and Exhibit 2 are the offer I sent via email and the joint stipulation documents I prepared in pdf and word format.  However, United never responded.

3.  United never made any effort to meet and confer regarding the Second Supplemental Responses to the First Set of Interrogatories.  United for the first time indicates that it has not received bank account information or relationship information – both which were provided in the Second Supplemental Response to the First Set of Interrogatories.

3.  Due to the government seizing documents relating to over 265 entities, there are numerous irrelevant documents seized by the government that would need to be reviewed in order to find relevant documents.

4.  The disclosure by Sheppard Mullin was also on behalf of the same entities so the documents will also contain many irrelevant documents.

5.  I have declared before that the review is extremely difficult due to the number of documents.  There is no agreement or order by the court that search terms only can be utilized.  Please see my Declaration filed at Dkt. 758 and Okorie Okorocha's Declaration filed at Dkt. 758-1 filed on February 9, 2018.  The majority of the documents reviewed thus far do not seem to be relevant.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

Executed this 27th day of February, 2018, at Los Angeles, California.

Dated: February 27, 2018


/s/ Kamille Dean

Kamille Dean

COUNTERCLAIM DEFENDANTS' REPLY RE: MOTION FOR PROTECTIVE ORDER

**PROOF OF SERVICE**

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On February 27, 2018, I served the documents described as:

**COUNTER-DEFENDANTS' REPLY TO UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER; DECLARATION OF KAMILLE DEAN**

upon the interested parties in this action as follows:

    x    (By ECF) The foregoing document was served via the ECF of the Court.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on Feberuary 27, 2018.


/s/ Kamille Dean
_____
KAMILLE DEAN ESQ.