Kamille Dean, Esq.  #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendant
Julian Omidi

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Almont Ambulatory Surgery Center, LLC, et al., | Case No: 2:14-cv-03053-MWF(AFMx) |
| Plaintiffs, | |
| v. | **MR. JULIAN OMIDI'S REPLY IN SUPPORT OF COUNTER-DEFENDANTS' MOTION FOR PROTECTIVE ORDER RE: COSTS; DECLARATION OF JULIAN OMIDI** |
| Unitedhealth Group, Inc., et al., | |
| Defendants. | Hon. Magistrate Judge MacKinnon |
| United Healthcare Services, Inc., et al., | Hearing: Date: March 19, 2018 |
| Counterclaim Plaintiffs, | Time: 10:00 a.m. Courtroom: #780- 7th Floor |
| v. | |
| Almont Ambulatory Surgery Center, LLC, et al.. | Discovery Cut-off: Sept. 14, 2018 Pretrial Conference: Jan. 7, 2019 Trial Date: Jan. 29, 2019 |
| Counterclaim Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

    A.   The Government Used an Expired Subpoena Against Sheppard Mullin ...........................1

    B.   United and the Government Have Forced Ms. Dean to Withdraw........................2

    C.   Absent Cost Shifting Mr. Omidi's Counsel Will be Irreparably Injured...........................3

II.  THE COURT SHOULD ENTER AN ORDER SHIFTING COSTS FOR DISCOVERY IN ORDER TO PREVENT INJUSTICE AND ELEVATE THE UNDUE BURDEN UNITED AND THE GOVERNMENT HAVE CREATED........................................................................4

    A.   United Has Sought to Take Advantage of the Government's Misconduct........................4

        1.   United's Opposition has made material misstatements ...........................4

        2.   The discovery dispute has eclipsed the underlying complaint................................6

        3.   Brittany Whitman is the elephant in the room who will not go away ...................7

    B.   The Documents United Seeks in Discovery are Inaccessible .................................9

        1.   Ms. Dean cannot physically access the requested documents ................................9

        2.   United cannot ignore the Declaration of Okori Okorocha....................................10

        3.   There has been no waiver of the inaccessibility of the documents.......................11

        4.   Mr. Jubelt had no ability to access the documents United sought ........................12

    C.   The Government Has Assisted United With a Rule 6(e) Violation................................13

        1.   The government disclosed grand jury secrets to benefit United...........................13

        2.   The government misled the Court to assist United.................................15

        3.   United has seized upon and taken advantage of the Rule 6(e) violation ...............16

    D.   The Almont Counter-Defendants Do Not Have Access to the Documents.......................17

        1.   The discovery burden is too great to undertake for free .......................17

        2.   United seeks to take advantage of the government interference..........................19

        3.   1,000 attorneys working over 650 days is not a matter of "too hard" .................20

        4.   Cost shifting is appropriate to facilitate search and retrieval...............................21

    E.   United's Unsworn Testimony and Claims Lack Foundation............................22

        1.   United's claim of working with Counter-defendants is without merit .................22

MR. OMIDI'S REPY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE COSTS

# TABLE OF AUTHORITIES

2.   United already has the patient records in its possession .........................................23

3.   United has subpoenaed all of Counter-defendants' bank accounts .......................24

4.   A cost shifting Order is essential in this case ........................................................25

III.   CONCLUSION.............................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Adair v. EQT Prod. Co.*,
2015 U.S. Dist. WL 505650 (W.D. Va. Feb. 6, 2015).........................................13

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
244 F.3d 189 (1st Cir. 2001)...........................................................................23

*Application of State of* Cal.,
195 F. Supp. 37 (E.D. Pa. 1961) ....................................................................14

*Associated Press v. United States Dist. Court*,
705 F.2d 1143 (9th Cir. 1983) ........................................................................15

*Barry v. United States*,
865 F.2d 1317 (D.C. Cir. 1989).......................................................................13

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
2007 U.S. Dist. LEXIS 7580, 2007 WL 333987 (D. Min. Feb. 1, 2007)..............12

*Chen v. Cincinnati Inc.*,
No. 06-3057, 2007 WL 1191342 (E.D.N.Y. Apr. 20, 2007),..............................23

*City of Ann Arbor Employees' Ret. Sys. v. Gecht*,
2007 WL 760568 (N.D. Cal. Mar. 9, 2007)......................................................9

*Cochran v. Caldera Med., Inc.*,
2014 U.S. Dist. LEXIS 55447 2014 WL 1608664 (E.D. Pa. Apr. 22, 2014) .........8

*Comty. Dental Servs. v. Tani*,
282 F.3d 1164 (9th Cir.2002) .........................................................................18

*Gibbs v. Legrand*,
767 F.3d 879 (9th Cir. 2012) ..........................................................................19

*Green Isle Partners, Ltd., S.E. v. The Ritz Carlton Hotel Co.*,
2001 WL 491077 (Del. Ch. May 1, 2001) ........................................................19

*Green v. Motorola, Inc.*,
998 WL 142356 (N.D. Ill. Mar. 20, 1998).........................................................7

*Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*,
222 F.R.D. 594 (E.D. Wis.2004) .....................................................................17

*Hill v. Norfolk & Western Ry.*,
814 F.2d 1192 (7th Cir.1987) ...........................................................................7

*Holland v. Florida*,
560 U.S. 631 (2010)......................................................................................18

*In re Atlantic Int'l Mortgage Co. v. Solomon Tropp Law Group*,
352 B.R. 503 (Bankr. M. D. Fla. 2006) ............................................................6

*In re Grand Jury Subpoenas*,
454 F.3d 511 (6th Cir. 2006) ..........................................................................15

# TABLE OF AUTHORITIES

*In re Motions of Dow Jones & Co., Inc.*,
   142 F.3d 496 (D.D.C. 1998) ................................................................................14, 15

*In re: The Special February 1975 Grand Jury (Baggot)*,
   662 F.2d 1232 (7th Cir. 1981) ....................................................................................14

*In the Matter of Electronic Surveillance*,
   596 F. Supp. 991 (E.D. Mich.1984)............................................................................16

*In the Matter of Grand Jury Investigation (90-3-2)*,
   748 F. Supp. 1188 (E.D. Mich. 1990)........................................................................15

*INS v. Phinpathya*,
   464 U.S. 183 (1984).............................................................................................22, 24

*Jamison v. Lockhart*,
   975 F.2d 1377 (8th Cir. 1992) ...................................................................................18

*Kramer v. N. Coast Vill.*,
   2007 WL 2120221 (D.P.R. June 5, 2007)..................................................................25

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
   285 F.R.D. 481 (N.D. Cal. 2012)........................................................................23, 24

*Manning v. Foster*,
   224 F.3d 1129 (9th Cir. 2000) ...................................................................................18

*Matter of Application of O'Keeffe*,
   184 F. Supp. 3d 1362 (S.D. Fla.) ...............................................................................23

*Matter of March 1981 Special Grand Jury*,
   753 F.2d 575 (7th Cir 1985) ......................................................................................14

*McPeek v. Ashkroft*,
   202 F.R.D. 31 (D.D.C. 2001) ....................................................................................17

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir.1994).........................................................................................24

*People v. Johnson*,
   62 Cal. App. 4th 608 (1998) .........................................................................................8

*People v. Sapp*,
   31 Cal. 4th 240 (2003) ..................................................................................................3

*Rouse v. Lee*,
   339 F.3d 238 (4th Cir. 2003) .....................................................................................18

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
   205 F.R.D. 421 (S.D.N.Y. 2002) ........................................................................10, 20

*S. Ute Indian Tribe v. Amoco Prod. Co.*,
   2 F.3d 1023 (10th Cir.1993) ...................................................................................4, 12

*Sahu v. Union Carbide Corp.*,
   262 F.R.D. 308 (S.D.N.Y. 2009) ........................................................................23, 24

# TABLE OF AUTHORITIES

*Schoch v. First Fidelity Bancorporation*,
  912 F.2d 654 (3d Cir.1990)..................................................................................25

*Smith v. United States*,
  992 F. Supp. 743 (D.N.J. 1998) ..........................................................................16

*Szabo Food Service, Inc. v. Canteen Corporation*,
  823 F.2d1073 (7 th Cir. 1987) ..............................................................................7

*Technical Sales Assocs., Inc. v. Ohio State Forge Co.*,
  2009 WL 1212809 (E.D. Mich. May 1, 2009)......................................................6

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 225 (S.D. Cal. 2015) ...................................................................12, 17

*United States ex rel. Guardiola v. Renown Health*,
  2015 U.S. Dist. LEXIS 112511 (D. Nev. Aug. 25, 2015) ...................................21

*United States v. Eisenberg*,
  711 F.2d 959 (11th Cir.1983) ..............................................................................13

*United States v. Northrop Corp.*,
  746 F. Supp. 1002 (C.D. Cal. 1990) ....................................................................15

*United States v. Rutherford*,
  509 F.3d 791 (6th Cir. 2007) ...............................................................................15

*United States v. White Ready-Mix Concrete Co.*,
  509 F. Supp. 747 (N.D. Ohio 1981).....................................................................14

*United. U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 225 (S.D. Cal. 2015) .....................................................................8, 20

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)................................................................................................19

*Zeller v. S. Cent. Emergency Med. Servs.*,
  2014 WL 2094340 (M.D. Pa. May 20, 2014) ........................................................8

*Zubulake UBS Warburg LLC.*,
  327 F.R.D. 309 (S.D.N.Y. 2013) .........................................................................10

**Other Authorities**

Rest. (Third) Law Governing Lawyers
  § 32(2)(b) ...............................................................................................................3

Shira A. Scheindlin & Daniel J. Capa,
  Electronic Discovery and Digital Evidence 314 (2009) ........................................8

**Rules**

ABA Model Rules of Professional Conduct,
  Rule 1.16(b) ...........................................................................................................3

# TABLE OF AUTHORITIES

California Rules of Professional Conduct,
   Rule 3-700(B) ...........................................................................................................3

Federal Rules of  Criminal Procedure
   Rule 6(e)(2)(B)..........................................................................................................15

Federal Rules of Civil Procedure
   Rule 26(b)(2).............................................................................................................23

Federal Rules of Criminal Procedure
   Rule 6(e)...............................................................................................3, 13, 15, 19

Federal Rules of Criminal Procedure
   Rule 6(e)(2) ...............................................................................................................14

# I.    INTRODUCTION

Counter-defendant Julian Omidi, submits this Memorandum in Reply to the Opposition to Motion for Protective Order filed by Counter-claimants United Healthcare Group (sometimes "United"). Mr. Omidi has submitted a separate Reply from the other Counter-defendants because of the effort by United Healthcare Group to repeatedly injure and force his attorneys to withdraw from this case.  See Declaration of Julian Omidi, attached.  It has happened repeatedly in this case.  Each time the government has acted with United to injure Mr. Omidi's attorneys, and the undeniable fact is that the injuries to Mr. Omidi's attorneys have been a material aid and assistance to United in this case.

## A.    The Government Used an Expired Subpoena Against Sheppard Mullin

The first time, the government acted to assist United by inflicting an injury on Mr. Omidi's attorneys, and, thereby forcing them to withdraw from this case, occurred when the government filed a Motion to Compel compliance with an expired subpoena on September 6, 2015 in the case of *In re Grand Jury Investigation*, USDC Central District of California Case No. 01014 PSG.  Unknown to Mr. Omidi, the subpoena had expired months earlier in January, 2015, and the Motion to Compel was designed to conceal the faux subpoena and to force Sheppard Mullin to withdraw, to include this case, Almont v. United.  Immediately after the Motion to Compel the faux subpoena, Sheppard Mullin filed a Motion to Withdraw from this case because of **the false conflicts of interest the government created in this case** for Mr. Omidi's attorneys, Sheppard Mullin.

Mr. Omidi complained to this Court on October 19, 2015, about the conflict the government and United had created for his attorneys.  However, the Court still allowed Sheppard to withdraw without any inquiry.  That was then followed by Hooper, Lundy, and Bookman seeking withdrawal from this case because their co-counsel, Shepard Mullin was no longer involved and they did not wish to proceed without Sheppard as their co-counsel.  That was then followed by Counter-defendants' inability to find replacement counsel and defaults being entered in this case on May 16, 2016 (Dkt 335), all because the government created a false conflict with a faux subpoena forcing Mr. Omidi's attorneys to

withdraw as attorneys in this case.

Mr. Omidi has set forth in his Declaration the details of the false subpoena and the creation of a false conflict to eliminate Sheppard Mullin from this case. While the Court seemed unconcerned with these events when they occurred, there is no denying that the subpoena was expired and the improper Motion to Compel was deliberately targeted to force Sheppard to withdraw form this action. This is a serious matter of extraordinary misconduct where the government used a faux subpoena to injure Mr. Omidi's attorneys, forcing their withdrawal in this case, all to the benefit of United Healthcare.

### B.     United and the Government Have Forced Ms. Dean to Withdraw

The destruction of Mr. Omidi's attorney client relationship, forcing his attorney to withdraw form this case based on the creation of a false conflict, is once again being repeated with Attorney Kamille Dean. The government, with the complicity of United, disclosed grand jury information and witnesses before this Court on November 29, 2017. (11-29-17 Tr. p. 52, line 12, to p. 53, line 6). That misconduct was severe and designed to obtain an order that benefited United where Ms. Dean has been ordered by this Court to inspect 1,700 boxes and 100 terabyte of materials the government seized on June 4, 2014, along with 1,200,000 documents subpoenaed before the grand jury, disclosed by the AUSA in violation of Rule 6(e) of the Federal Rules of Criminal Procedure.

The government disclosed Surgery Center Management as a witness before the grand jury in order to assist United in this case. The Court entered an Order for Ms. Dean (1) to examine 1,200,000 documents belonging to other companies, (2) to examine 1,700 boxes and 100 terabyte in the government's possession, (3) to examine dozens of returned computer hard drives from the government, and (4) make arrangements to examined Nextech which belongs to someone else. When Ms. Dean went to San Clemente to examine the seized materials, the government blocked her efforts, refused to permit her to take notes, photographs, or copies, and did everything it could to prevent discovery in this case. (Dean Dec. Dkt 758 p. 26-32; Okorocha Dec., Dkt 758-1).[1]

---

[1]   In a transparent defense of the government's misconduct which was undertaken for

The undue burden which United and the government have created has forced Ms. Dean to file a Motion to Withdraw as Attorney of Record.  (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, line 17, to p. 5, line 5).  The government's interference with (1) her duties as an attorney, (2) disclosure of grand jury secrets in violation of Rule 6(e), and repeated creations of conflicts of interest between Counter-defendants and their counsel has forced her withdrawal.  Ms. Dean cannot physically undertake that examination which Mr. Okorie Okorocha declared under penalty of perjury would take 1,000 lawyers 650 workdays to complete.  *Id*.  No attorney is physically capable of complying the orders which have taken place in this case.  *People v. Sapp*, 31 Cal. 4th 240, 256 (2003) (court must relieve counsel from representation where attorney is "incapable of competently handling" the case); Rest. (Third) Law Governing Lawyers § 32(2)(b).  No attorney is capable of handling the discovery in this case.  California Rules of Professional Conduct, Rule 3-700(B) (mandatory withdrawal where attorney cannot handle litigation or representation will result in violation of ethical rules); ABA Model Rules of Professional Conduct, Rule 1.16(b) (attorney must withdraw where representation will result in violation of rules of ethics or attorney cannot properly handle the litigation).

The joint effort between United and the government to once again force Julian Omidi's attorney to withdraw in the midst of an unforgivable Rule 6(e) violation of disclosing matters before the grand jury has created a situation that shocks the conscience.

### C.    Absent Cost Shifting Mr. Omidi's Counsel Will be Irreparably Injured

Absent an order shifting fees in this case, Mr. Omidi will not be able to locate any attorney to handle the discovery in this case.  The massive amounts involved and compliance with the Court's Orders are so extreme that no attorney without adequate

United's benefit, United has stated to this Court in its Opposition: "Apparently, Counterclaim Defendants are permitted to take notes and photographs regarding patient information identified on the seized documents as long as they execute a protective order with the government—something they have failed to do. Dkt. 744 at 3-4."  (United Opp, p. 6, lines 20-23).  The transparent and blatant effort to make discovery in this case impossible is overwhelming, and United's complicity with the government in obtaining an Order from this Court to examine documents only to prevent that examination followed by the statement quoted above leaves one to shake their head in distain.

compensation will undertake the effort.  Only with a cost shifting order can this Court mitigate what has been an illegitimate and unethical effort to force Mr. Omidi's attorneys to repeatedly withdraw from this case.  *S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (discussing both the old presumption and the courts' powers to grant protection against "undue burden and expense" by shifting costs of discovery to the requesting party as a condition of discovery).

## II.   THE COURT SHOULD ENTER AN ORDER SHIFTING COSTS FOR DISCOVERY IN ORDER TO PREVENT INJUSTICE AND ELEVATE THE UNDUE BURDEN UNITED AND THE GOVERNMENT HAVE CREATED

### A.   United Has Sought to Take Advantage of the Government's Misconduct

#### 1.   United's Opposition has made material misstatements

Counter-claimant United states:

"Shockingly, Counterclaim Defendants' Motion states that "[t]he majority of the **[seized documents]** the government made available to Counter-defendants' attorney were numerous pages of bank account and bookkeeping records." Dkt. 758 at 19.  These documents are responsive to United's discovery requests, were plainly accessible to Counterclaim Defendants, and no production has been forthcoming despite this Court's March 22, 2017 Order demanding production, see Dkt. 462." (United Opp., p. 11, lines 24-27).

However, United's claim is incomprehensible in the face of Ms. Dean's and Mr. Okorocha's Declarations of the extraordinary misconduct the government engaged in on February 5, 2018, in San Clemente.  (Dean Dec. Dkt 758 p. 26-32; Okorocha Dec., Dkt 758-1).  Further, United has deliberately inserted words in the brackets ("[]") which are false because that is not what the Motion says.  United has created substituted words by creating a claim from whole cloth, and United has engaged in a fiction of substituting false words to pretend something that does not exist.

The Motion for Protective Order which United purports to quote states:

"The majority of the **incorrect boxes** the government made available to Counter-defendants' attorney were numerous pages of bank account and bookkeeping records."  (Motion Protective Order, p. 19, lines 10-12) (emphasis added).

It is unethical for United to create matters from whole cloth.  The government produced twelve (12) incorrect boxes which Ms. Dean never asked for, and the owner of the documents in those boxes is unknown.  (See Dean Dec., Dkt 758 ¶ 4).  For United to substitute material false statements using brackets is a fabrication that is unforgivable. These bank statements and records were never available for Ms. Dean to copy or photograph, or even take notes regarding what documents were in the boxes.

Apparently, United wishes for the Court to close its eyes and pretend the sham inspection never happened.  Ms. Dean testified that the view "was a facade where the government refused to permit me to take any notes, photos, or obtain copies regarding contents of the boxes I scheduled to view." (Dean Dec. Dkt 758 p. 26, lines 13-15) Instead, United accuses Ms. Dean of not copying bank statements from seized documents, where her testimony was the statements were from wrong boxes.  United's misconduct in changing Ms. Dean's testimony is unforgivable.[2]

---

[2]  This Court cannot ignore Ms. Dean's testimony.  It is unrefuted when she states:
  "4.  Attorney Steven Li, Special Agent for the Food and Drug Administration, monitored my inspection and informed me that of the 28 boxes I had requested, he brought what he could find.  Sixteen (16) of the boxes were the boxes I requested, where twelve (12) were incorrect.  Forty-three percent (43%) of the boxes were the wrong boxes, and the mishandling of the examination turned the event into a fiasco. "5.  The examination of the materials was impossible, and there is no possible means by which I am able to access the information contained in 1,700 boxes and 100 terabyte of electronic data without extensive time, resources, and costs which was physically impossible.  For the government to then ask this court to heap on Counter-defendants an unjustified Protective Ordered is a violation of due process of law.  There is no justification for the government's request."  (Dean Dec. Dkt 758 p. 26, lines line 25, to p. 27, line 7)
Ms. Dean continued by stating:
  "8.  The disorganization of the materials was extensive.  Many of the materials and things inside the boxes did not coincide with the labels, and the inventory description and labels on the boxes were confusing, misleading, and/or incomplete. A majority of the materials inside the box were in total disarray and not reasonably accessible because the pages were out of order, materials were bundled in an incomprehensible grouping, and pages were missing from numerous documents." (Dean Dec. Dkt 758 p. 27, lines 8-12)
Ms. Dean concluded:
  "11.  The method and manner of storage of the boxes rendered them inaccessible.  The government's refusal to permit me to take notes, photographs, or photocopies, along with the haphazard manner of mixed boxes containing different subjects, rendered the entire effort futile.  Given the extraordinary amount of time to reprieve a box, inability to tell what boxes contained what materials, incomplete contents of the boxes, missing pages and documents from the boxes, the presence of a monitor that made it impossible to do any reasonable work, and the

## 2. The discovery dispute has eclipsed the underlying complaint

The discovery dispute in this case has taken on a life of its own where the total absence of evidence to support United's allegations has been lost. It should not escape this Court that United has alleged that the basis for fraud is that its Plans did not cover LapBand or Bariatric surgery, and therefore the Almont counter-defendants defrauded hundreds of patients by undertaking 30,254 procedures designed to qualify them for LapBand surgery which they knew United would not cover. However, when the Almont Counter-defendants presented to this Court four (4) approvals from United where LapBand surgery was approved for medical necessity under United's Plans when United claimed exclusion, the response was stunned and dead silence because United's claim of fraud is a hoax. (See Objection to Affidavit of Marvin Perer; Supplemental Declaration of Kamille Dean Regarding United Healthcare's Fraud on this Court Dkt. 559-2).

There are other approvals if the Almont Counter-defendants could access the records seized by the federal government or if they had the funds to access the NexTech system to conduct a highly expensive search for such approvals. This Court can rest assured that the Almont Counter-defendants seek to dispose United's specious claims and expose the fraudulent nature of its pleadings if they had access to the documents because the real fraud here is United's allegations which no reasonable person would have made except in the hopes that the Almont Counter-defendants could not access their records.

This discovery issue has eclipsed the real issue of United's fraudulent pleadings. See *Technical Sales Assocs., Inc. v. Ohio State Forge Co.*, 2009 WL 1212809, at *1 (E.D. Mich. May 1, 2009) ("Now an electronic discovery dispute has become the sideshow that eclipses the circus."); *In re Atlantic Int'l Mortgage Co. v. Solomon Tropp Law Group*, 352 B.R. 503, 505 (Bankr. M. D. Fla. 2006) ("The matter before this court presents a deplorable scenario under which the ultimate issues raised by the pleadings are completely overcome by discovery disputes which have gained their own life"). If United

government's refusal to permit me to take notes, photos, or copies, the materials are inaccessible beyond a reasonable doubt." (Dean Dec. Dkt 758 p. 26, lines 11-18)

can succeed in its unduly burdensome discovery requests and unreasonable Orders requiring Counter-defendants to have 1,000 attorneys expend 650 days searching documents, all of which ignore the fraud United has perpetrated on this Court, then and only then can United prevail.

All of the discovery which United seeks is available, and none has been destroyed. However, the materials are inaccessible to the Almont Counter-defendants because of extreme undue burden, not having the materials in their possession and control, and the voluminous nature of the materials that must be examined.  No matter what Court order is entered to compel the Almont Counter-defendants to produce discovery, they do not have the means or access to the materials which can supply the answers.

### 3.   Brittany Whitman is the elephant in the room who will not go away

United argues that the initial production of 3,700 documents from the Almont Counter-defendants was made in April and May, 2015, United claims:

> "Notably, the productions and promises to produce additional documents were made more than nine months after the government executed its search and seizure warrant against certain Counterclaim Defendants and nearly a year after Counterclaim Defendant Surgery Center Management, LLC ("SCM") purportedly assigned the Nextech software license to a related non-party.  (United Opp., p. 1 lines 21-26).

However, United ignores the unrefuted evidence that this production was made from documents Attorney Brittany Whitman printed out over the course of almost eight (8) months with the help of two (2) full time assistants prior to filing the Complaint in April, 2014.  Almont's attorneys, Hooper, Lundy, Bookman copied the documents in preparation for the filing of the lawsuit.  It defies explanation how United can repeated the same obtuse claim knowing that the documents were given to Almont's counsel before the lawsuit was filed and before the June 4, 2014, seizure.  *Green v. Motorola, Inc*., 998 WL 142356, at *5 (N.D. Ill. Mar. 20, 1998) ("In fact, she does not address it all.   But ignoring it does not make it go away.").[3]

---

[3]   An attorney simply may not adopt "ostrichlike behavior" to avoid facts. *Szabo Food*

7

The documents Ms. Whitman collected were in hundreds of binders and boxes stacked on the 8th floor of 9100 Wilshire Blvd. in Los Angeles until June 4, 2014, when the government seized them. The cost of Ms. Whitman's almost eight (8) month effort with two (2) full time assistants cannot be duplicated by Counter-defendants. They are out of business and do not have the manpower or resources to undertake such a task again.

The inventory the government left shows the documents are in the government's possession, but that the government refuses to return them. Instead of acknowledging that neither Imperium Medical Services, who purchased the NexTech system on May 1, 2014, after Ms. Whitman completed her work, nor any Counter-defendant had any conspiratorial intention to defeat discovery, United has asked this Court to ignore the hundreds of thousands, if not millions of pages Ms. Whitman printed out regarding everything concerning United in the NexTech system. *People v. Johnson*, 62 Cal. App. 4th 608, 623 (1998) (condemning attorney's ostrich-like tactic of ignoring facts and evidence). Ms. Whitman printed out these documents to preserve them for litigation, not to destroy them or hinder discovery. United's claim that the Almont Counter-defendants engaged in some kind of improper discovery avoidance is nonsensical, and the undisputed fact is that the Almont Counter-defendants cannot duplicate Ms. Whitman's efforts which renders the information necessary to answer United's discovery requests inaccessible.[4]

---

*Service, Inc. v. Canteen Corporation*, 823 F.2d1073, 1081 (7th Cir. 1987) ("A litigant may not adopt the "ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist."), *quoting Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir.1987).

[4] The Almont Counter-defendants are entitled to reasonable compensation for having to duplicate the work of Ms. Whitman and her two (2) full tine assistants eight (8) months in order to provide documents in response to United's discovery requests. *United. U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("'Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C).'") (*quoting* Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009), *and citing Zeller v. S. Cent. Emergency Med. Servs.*, 2014 WL 2094340, at *9 n. 6 (M.D. Pa. May 20, 2014); *Cochran v. Caldera Med., Inc.*, 2014 U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014)).

**B.    The Documents United Seeks in Discovery are Inaccessible**

**1.    Ms. Dean cannot physically access the requested documents**

Counter-claimant United's poor efforts at sarcasm rings hollow.  United stated:

"Evidently unsatisfied with a nearly year-old opinion compelling the review and production of documents in response to Counterclaim Plaintiffs United Healthcare Services, Inc.'s, United Healthcare Insurance Company's, and OptumInsight, Inc.'s (collectively "United") First Set of Discovery—discovery that itself is more than three years old—Counterclaim Defendants belatedly seek a protective order shifting the expense of complying with that Order onto United."  (United Opp., p. 1, lines 1-6).

United's unwarranted sarcasm which ignores the Okorocha and Dean Declaration is an unacceptable litigation tactic this Court should condemn.  *City of Ann Arbor Employees' Ret. Sys. v. Gecht*,  2007 WL 760568, at *8 (N.D. Cal. Mar. 9, 2007) (the court condemned a party's gamesmanship of ignoring evidence and the rules).  The facts of this case will not go away, and they demonstrate that the discovery the United Counter-claimants have sought were made inaccessible on June 4, 2014, and that undeniable fact has not changed.  It is physically and financially impossible for Ms. Dean to undertake this effort which will take at least eight (8) months full time and likely cost $1,750,000, which is the unrebutted testimony in this case.  (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9) See also Okorocha 2-9-18 Dec. Dkt 758-1, p. 5, lines 6-8: "I am aware that Brian Oxman previously submitted a declaration that it would take approximately $1,750,000 to redo the work that Brittany Whitman and two assistants did from Nextech. I believe Brian Oxman's estimate to redo this work is quite low."

United claims that the Almont Counter-defendants' "ill-timed motion is just a distraction from the real issue: their failure to produce a single document in the eleven months since this Court ordered them to do so."  (United Opp., p. 1, lines 9-10).  However, the discovery United seeks is inaccessible, and no Court Order or harping on an alternative universe of facts can made those documents accessible to the Almont Counter-defendants.  United's statements in the face of the unrefuted Okorocha Declaration stand as mute testimony to claims' lack of merit.

### 2.     United cannot ignore the Declaration of Okorie Okorocha

United has ignored the Declaration of Okorie Okorocha submitted in support of the Motion for Protective Order (Dkt 768-1).  Mr. Okorocha's declaration cannot be ignored, and pretending that the billions of documents he identifies as having to be reviewed in this case don't exist is inexplicable.  *Zubulake UBS Warburg LLC.,* 327 F.R.D. 309, 321 & n. 68 (S.D.N.Y. 2013) ("Whether the data is kept for a business purpose or for disaster recovery does not affect its accessibility," and the cost of production should not be fairly borne by the responding party.).  The Okorocha Declaration establishes that the data United Counter-claimants seek is inaccessible and an order shifting costs is appropriate in this case.  *Rowe Entm't, Inc. v. William Morris Agency, Inc*., 205 F.R.D. 421, 431 (S.D.N.Y. 2002) (a party that happens to retain vestigial data for no current business purposes, but only in case of an emergency or simply because it has neglected to discard it, should not be put to the expense of producing it.").

Mr. Okorocha stated:

"14. I am aware that the government seized 1,700 boxes and over 100 terabyte of electronic data. The AUSA Kristen Williams sent Attorney Kamille Dean an email that each box contains approximately 2,500 pages per box, which amounts to 4,250,000 documents. Some of the boxes we viewed were completely full, which would amount to 4,000 pages per box. This does not include the 1,200,000 documents from Sheppard Mullin ordered by the court to be reviewed for disclosure. If an attorney could review 10,000 pages per day which is a maximum and zealous estimate depending on the quality of scan due to the requirement of a privilege log, these tasks alone would take 545 days, or 109 weeks, for one lawyer. Upon reflection such a task is impossible. (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, lines 6-14).

Mr. Okorocha continued by stating:

"16. The consideration of documents stored electronically alone, is 100 terabyte, which is the equivalent of a mere 100,000 GB. Each GB, contains the equivalent of 64,782 pages in word documents, so the electronic data at issue, is presumably 100,000 GB x 64,782 pages is 6,478,200,000. See LexisNexis Discovery Services, How Many Pages in a Gigabyte?, (2008), available at http://www.lexisnexis.com/applieddiscovery/ lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf.

"17. The enormity of roughly 6.5 billion pages of documents in electronic

format alone, and without considering the 1,700 boxes of documents and 1,200,000 documents Attorney Dean has begun reviewing, is astounding. Even if Counter-Claim defendants hired 1,000 lawyers to review the electronic documents alone, that is evenly split the 6.5 billion pages of documents would call for each of the 1,000 lawyers to review 6.5 million pages.

"18. If each lawyer reviews a zealous amount of 10,000 maximum pages a day, it would take the 1000 attorneys, 650 days of work days to complete. Working 6 days a week, these 1000 hypothetical lawyers would need to spend over two years [or 108 weeks] to complete the electronic discovery alone." (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, line 17, to p. 5, line 5).

However, United ignored Mr. Okorocha's testimony.  It has engaged in ostrich like behavior to the point it has become an unacceptable tactic this Court should not permit. The undisputed evidence is that the information necessary to answer United's discovery requests is inaccessible, and United has not presented any evidence to the contrary.

### 3. There has been no waiver of the inaccessibility of the documents

Counter-claimant United argues:

"On March 22, 2017, this Court found that Counterclaim Defendants had waived any previously asserted objections to United's First Set of Discovery, (United Opp., p. 2, lines 7-9).

However, that is not accurate.  The Court acknowledged that there was a remaining question of whether the Almont Counter-defendants could access the documents to facilitate discovery responses.  The Court stated:

"Instead, Providers explain that they intend to comply with United's discovery requests, but their current counsel has been unable to locate, procure or review the responsive records.  In a declaration, Providers' counsel states that he believes he has now located the pertinent files in an outside storage facility and hopes to find an index to those files." (ECF No. 455-1 at ¶5.)  (3-22-17 Order dkt 562 ¶ 1).

However, Attorney Mark Jubelt could not access the volume of documents which belonged to Imperium Medical Services even if Imperium permitted him to so because of the undue burden and costs involved.  United recognized in its Opposition that the Almont Counter-defendants had informed the Court within days of the February 21, 2017 Motion to Compel (Dkt. 441) that they could not access the documents.  United admitted that

"on February 28, 2017, Mark Jubelt, then-counsel to Counterclaim Defendants,

filed a declaration stating that he is unable to (I) produce documents because he cannot "ascertain the identity of the documents seized by the government," and the "high turnover rate" among Counterclaim Defendants' staff complicated the document collection; or (ii) respond to interrogatories because he cannot locate relevant files and key employees are unwilling to help. Dkt. 448." (United Opp., p. 2, lines 1-6).

The documents are not accessible to the Almont Counter-defendants. *S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (court has the power to protect against "undue burden and expense" by shifting costs of discovery to the requesting party as a condition of discovery). No amounts of wishing and hoping can make millions of documents accessible without a cost shifting order in this case. The Court cannot order the impossible to take place. *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 2007 U.S. Dist. LEXIS 7580, at *2, 2007 WL 333987, at *1 (D. Min. Feb. 1, 2007) (affirming magistrate judge's decision that ESI sought by plaintiff was not "reasonably accessible" because of undue burden and cost); *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 239 (S.D. Cal. 2015) (undue burden and cost renders information sought in discovery reasonably inaccessible).

### 4.    Mr. Jubelt had no ability to access the documents United sought

United argue that Attorney Jubelt committed to searching "other electronic files," (Dkt. 504), and when he couldn't perform but was "on the verge of finally complying," he withdrew as attorney of record. (United Opp., p. 2, lines 22-25). United claims:

> "Despite promises to produce responsive documents spanning several iterations of counsel, on October 7, 2017 - after more than three years of litigation—Counterclaim Defendants represented for the first time that SCM had assigned the Nextech software license to what it asserted was an unrelated third party in 2014, and thus, they were unable to comply with the Court's March 22, 2017, Order compelling production of patient records." (United Opp. P. 2, lines 23-28).

However, not only was there never a foolish "promise to produce responsive documents spanning several iterations of counsel," but also Mr. Jubelt was never "on the verge of finally complying." The issue of NexTech being unavailable to the Almont Counter-defendant did not arise until Mr. Jubelt asked for access and was told it was an

undue burden to the system's owner, Imperium Medical Services.  (Dkt. 544, p. 5).  The

undisputed fact is this case has little to do with who owns Nextech, but rather the extreme

burden created by United's discovery requests no matter who owns the Nextech system.

*Adair v. EQT Prod. Co.*, 2015 U.S. Dist. WL 505650, at *5 (W.D. Va. Feb. 6, 2015)

("defendants have advanced compelling arguments that the burden and expense of further

discovery would not be justifiable.  With an appropriate cost shifting Order Counter-

defendants will be able to produce all documents required of them, and all of United's

irrelevant arguments ignore the Court who mandate a cost shifting where there is an

undue burden or documents are inaccessible to a responding party as in this case.  *U.S. ex*

*rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 237 (S.D. Cal. 2015) (where

discovery request is unduly burdensome the Court should shift the costs of compliance).

### C.    The Government Has Assisted United With a Rule 6(e) Violation

#### 1.    The government disclosed grand jury secrets to benefit United

United argues:

> "And in another first, during a November 29, 2017, discovery conference with the
> Court, the government stated that SCM had previously produced 300,000
> documents (consisting of 1.2 million pages) to the government when it was
> represented by Sheppard Mullin. Nov. 29, 2017 Tr. 52:18-54:17; Dkt. 663, ¶ 4."

However, the gratuitous disclosure of the existence of grand jury subpoenaed

materials by AUSA Williams is a violation of Rule 6(e) of the Federal rules of Criminal

Procedure.  (Williams 11-29-17 Tr. p. 52, line 12, to p. 53, line 6).  The AUSA without

cause or prompting violated her ethical and statutory duty to keep matters before the

grand jury secret, and not only did she disclose that the party producing records to the

grand jury was Surgery Center Management, but also she disclosed the existence of

documents produced before the grand jury which "overlap with what it [the government]

seized" on June 4, 2014." (Williams 11-29-17 Tr., p. 53, lines 2-4).

There was a prima facie violation of Rule 6(e) which occurred right in front of the

Court because the disclosure involved "information about 'matters occurring before the

grand jury' and indicated that the sources of the information included attorneys and agents

of the Government." *Barry v. United States*, 865 F.2d 1317, 1322 (D.C. Cir. 1989), *Id*. at 1322, *quoting United States v. Eisenberg*, 711 F.2d 959, 963 (11th Cir.1983). The AUSA is prohibited from making any disclosure of subpoenas, witnesses, or materials produced before the grand jury. *Matter of March 1981 Special Grand Jury*, 753 F.2d 575, 580 (7th Cir 1985)(subpoenaed documents before the grand jury should remain confidential and not be publically disclosed "but only so they can keep it out of the hands of an antagonist."). These subpoenaed documents constituted matters before the grand jury which the prosecutor knew of only because they were produced to the grand jury. *Application of State of* Cal., 195 F. Supp. 37 (E.D. Pa. 1961) (grand jury subpoenas and names of witnesses are "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure.").

AUSA Williams was obligated to keep confidential grand jury subpoenaed information and the identities of grand jury witnesses. *United States v. White Ready-Mix Concrete Co.*, 509 F. Supp. 747 (N.D. Ohio 1981) (production of subpoenas that pertained to grand jury investigation were confidential because subpoenaed materials would reveal "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure.). In order to assist United and violate the law so that United could make a claim regarding these documents, the government acted in concert with United to disclose information which it cannot by law disclose. See *In re Motions of Dow Jones & Co., Inc*., 142 F.3d 496, 504 (D.D.C. 1998) (government prosecutors who are involved with the grand jury are under a strict obligation of secrecy, and under Rule 6(e)(2) they may not disclose documentary information given to investigators by witnesses subpoenaed to appear before the grand jury, whether such information is given before or after their testimony); *In re: The Special February 1975 Grand Jury (Baggot)*, 662 F.2d 1232, 1238 (7th Cir. 1981), aff'd on other grounds, 463 U.S. 476 (1983); *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999) ("Information actually presented to the grand jury is core Rule 6(e) material that is afforded the broadest protection from disclosure.").

### 2.      The government misled the Court to assist United

Not only did the government commit a violation of Rule 6(e) on November 29, 2017, but also the government misled the Court to obtain an unduly burdensome discovery Order which the Court entered on December 20, 2017 (Dkts. 674 & 676).  The documents that were produced under the grand jury subpoena did not all belong to Surgery Center Management, but instead belong to 265 different companies.  However, Surgery Center Management was a subpoenaed witness before the grand jury.   These documents belong to other persons, businesses, and entities who are not involved in this proceeding, and the government AUSA has intentionally mislead this court.[5]

Documents produced pursuant to grand jury are "matters occurring before the grand jury." *United States v. Rutherford*, 509 F.3d 791, 795 (6th Cir. 2007) ("[d]ocuments obtained by the grand jury such as the documents here are presumed to be 'matters occurring before the grand jury' and therefore protected from disclosure.") (*citing In re Grand Jury Subpoenas*, 454 F.3d 511, 521 (6th Cir. 2006) and F. R. Crim. P. 6(e)(2)(B)); *United States v. Northrop Corp.*, 746 F. Supp. 1002, 1003 n.3 (C.D. Cal. 1990) ("Documents relating to [grand jury] proceedings have also received [Rule 6(e)] protection.") (*citing Associated Press v. United States Dist. Court*, 705 F.2d 1143, 1145 (9th Cir. 1983)).  In *United States v. Northrop Corp.*, 746 F. Supp. 1002, 1003 n.3 (C.D. Cal. 1990), the Court found "To the extent that the remainder of Exhibit B may implicate grand jury proceedings, the government asserts that disclosure will reveal the identity of witnesses who have testified and may yet testify.").

AUSA Williams gratuitously offered secret grand jury information, including Surgery Center Management's identity and the nature of the evidence subpoenaed documents.  *In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 504 (D.D.C. 1998)

---

[5]  Ms. Dean has filed a Declaration which identifies her review of the documents the government disclosed in violation of Rule 6(e).  These documents do not belong to the Counter-defendants.  Instead of seeking to take advantage of the government violation of Rule 6(e) this Court should be more concerned with the gratuitous and uncalled for violation of Rule 6(e) in the government acting in concert with United to assist it through a Rule 6(e) violation.

(identities of subpoenaed grand jury witnesses are matters before the grand jury and protected by Rule 6(e)). In *In the Matter of Grand Jury Investigation (90-3-2)*, 748 F. Supp. 1188 (E.D. Mich. 1990), the Court found that matters occurring before the grand jury under Rule 6(e) include "information which reveals the identities of witnesses or jurors, the substance of the testimony or evidence, and the deliberations or questions of the grand jury. *In the Matter of Electronic Surveillance*, 596 F. Supp. 991, 995–96 (E.D. Mich.1984)." *Id.* at 1207. AUSA Williams was obligated to keep these matters secret, yet gratuitously disclosed them in public. *Smith v. United States*, 992 F. Supp. 743, 753 (D.N.J. 1998) ("it is undisputed that an AUSA is a person subject to Rule 6(e).").

### 3.   United has seized upon and taken advantage of the Rule 6(e) violation

Counter-claimant United argues:

"[W]ithout any elaboration or details in the supporting attorney declaration, Counterclaim Defendants claim that "[i]t is not physically possible" to review the 1.2 million pages they previously produced to the government. Dkt. 758 at 5. But notably, Counterclaim Defendants never describe whether they have actually attempted to review any of these documents that are unquestionably accessible and in their possession.  (p. 6, lines 13-16).

However, United has engaged in transparent efforts to take advantage of the government's unlawful grand jury secrets disclosure.  These documents represent the government unforgivable Rule 6(e) violation in disclosing information before the grand jury and which do not belong to Counter-defendants.   They belong to 265 other companies, and both the government and United know it.

The unlawful nature of the government's gratuitous disclosure of these documents, along with the misrepresentation that the documents belonged to Surgery Center Management, is a fraud on the Court designed to assist United in a complicit activity violating Rule 6(e).  United immediately jumped on the Rule 6(e) violation to obtain an Order requiring Ms. Dean to obtain the 1,200,000 documents, review them, and produce responsive document.  (12-20-17 Orders Dkts 674 & 676).

Because the documents belong to other entities, the privilege review is difficult and

time consuming.  The undue burden of going through other people's emails, documents, and private communications creates an undue burden.  It cannot be done without a cost shifting Order.  *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 601 (E.D. Wis.2004) ("A number of district courts have recognized the unique burden of producing documents stored on backup tapes and, by invoking Rule 26© to fashion orders to protect parties from undue burden or expense, have conditioned production on payment by the requesting party."); *McPeek v. Ashkroft*, 202 F.R.D. 31, 34 (D.D.C. 2001) ("The more likely it is that the backup tape contains information that is relevant to a claim or defense, the fairer it is that ... [the requested party] search at its own expense.").

### D.    The Almont Counter-Defendants Do Not Have Access to the Documents

#### 1.    The discovery burden is too great to undertake for free

Counter-claimant United states:

"Counterclaim Defendants also fail to address Brian Oxman's or Maureen Jaroscak's availability to assist with the document review and production, or the other attorneys who are still listed on the docket as "lead attorney," including Imre Ilyes, Robert Rice, Roger Diamond, Ryan Kashfian, and Robert Kashfian."  (United Opp., p. 5, lines 14-17).

However, the issue is the undue burden of United's discovery requests and the lack of resources to review millions of documents, not the availability of Attorneys.  With a cost shifting Order the Almont Counter-defendants will hire and pay for personnel to undertake the review.  United's position that attorneys are available to work for free to undertake unduly burdensome tasks smacks of sophistry.  *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 237 (S.D. Cal. 2015) (where discovery request is unduly burdensome the Court should shift the costs of compliance).

Brian Oxman and Maureen Jaroscak have testified they are not retained by any Counter-defendant, and absent payment they cannot provide services for review of any documents.  (11-14-17 Tr. p. 12, 11-24; Oxman Dec., 10-16-17 Dec. Dkt 557; Oxman 10-31-17 Dec. Dkt 576-2).  They are both independent contractors, and neither of them are employed by or available to any Counter-defendant without adequate payment for their

services.   Counter-defendants are unable to pay for their services.

Ryan Kashfian is an attorney who is unavailable to Counter-defendants.  The same as in the case of Mr. Oxman and Ms. Jaroscak, Counter-defendants do not have the resources to permit Mr. Kashfian to undertake the review or production of the enormous amounts of materials involved in the United discovery requests.  United's effort to pretend that because Ms. Dean cannot physically undertake the task of retrieving the millions of documents that somehow Mr. Kashfian can do it is nonsensical.

Roger Diamond has severe health problems and has moved to withdraw.  Mr. Diamond's Motion to withdraw was filed on February 17, 2018 (Dkt 764).  It is improper that three (3) days later United would argue that Mr. Diamond should be forced to endanger his health by reviewing millions of documents when not only he is severely ill, but also the Counter-defendants do not have the resources to facilitate that review.

Imre Ilyes and Robert Rice have left the Counter-defendants years ago and United knows it.  The Courts have repeatedly held that a client is not responsible for the conduct of an attorney where the attorney effectively abandons the client.  *Rouse v. Lee*, 339 F.3d 238, 250 n.14 (4th Cir. 2003) (en banc), cert. denied, 541 U.S. 905 (2004) (procedural default caused by counsel's "utter abandonment" of petitioner "constituted extraordinary circumstances external to the party's conduct" and established cause.); *Comty. Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir.2002) (where attorney abandons client the client is not changeable for attorney's negligence and default judgment should set aside); *Manning v. Foster*, 224 F.3d 1129, 1135 (9th Cir. 2000) (attorney's errors are not attributable to client when attorney "does not actually represent the client."); *Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir. 1992).  As set forth in the accompanying Declaration of Kamille Dean, while these attorneys remain attorneys of record, these attorneys have abandoned their client.  They remain of record only because they have failed to request withdrawal. As Justice Alito explained in his concurrence in *Holland v. Florida*, 560 U.S. 631, 659 (2010) that "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any

meaningful sense of that word." (Alito, J., concurring).

United knows Mr. Ilyes and Mr. Rice have abandoned their clients and provide no work, labor, or services for Counter-defendants. Yet, Counter-claimant United makes the claim that these attorneys who United knows have abandoned their clients are somehow available to review documents when they are not. *Gibbs v. Legrand*, 767 F.3d 879 (9th Cir. 2012) (client should not be prejudiced where counsel abandoned client).

### 2. United seeks to take advantage of the government interference

The United Counter-claimants argue:

"Apparently, Counterclaim Defendants are permitted to take notes and photographs regarding patient information identified on the seized documents as long as they execute a protective order with the government—something they have failed to do. Dkt. 744 at 3-4." (United Opp, p. 6, lines 20-23).

However, with a wink and a nod of concerted activity with the government, and as if what the government did on February 5, 2018, was perfectly acceptable, United has not only seized upon and used the Rule 6(e) violation, but also it has employed the government to impose a protective order against use of the documents the Court Ordered reviewed on December 20, 2017 (Dkts 674 & 676), without any limitation or Protective Order. The Protective Order was an after the fact concealed ex post factor effort to prevent the Almont Counter-defendants from complying with the Court's Order. In *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 32 n.6 (1997), court warned of ex post facto changing the rules of the game that subvert the Court's Orders and process in a case involving the Patent and Trademark Office. That warning is equally applicable here.

When the government offered to permit Ms. Dean to inspect the seized documents, there were not conditions or a Protective Order involved. (11-29-17 Tr., p. 50, lines 10-20). But when Ms. Dean appeared for the inspection she was blocked by an unreasonable demand from the government which was designed to favor United and prevent Ms. Dean from representing her clients. United's argument that Ms. Dean was obligated to sign that Protective Order after the Court Ordered her to inspect and copy the seized documents

when that Protective Order was ever once mentioned to the Court is nonsensical.

In *Green Isle Partners, Ltd., S.E. v. The Ritz Carlton Hotel Co.*, 2001 WL 491077, at *2 (Del. Ch. May 1, 2001), the Court stated:

> "By changing the procedural "rules of the game," the plaintiff has thrown the procedural posture of this case into a cocked hat. As a consequence, the Court is uncertain as to how to proceed, because it is presently unclear what issues are left for the Court to adjudicate and what procedures are to be followed as a result of the plaintiff's change of direction."

United should not be allowed to change the rules of the game or throw this case "into a cocked hat."  It argument that it and the government can ex post fact change the rules is offensive to common sense.  United's claim is transparent in its illegitimacy.

### 3.   1,000 attorneys working over 650 days is not a matter of "too hard"

Counter-claimant United argues:

> "Ultimately, Counterclaim Defendants appear to claim that their review of the seized documents is too hard. That is not enough. See United States ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 238 (S.D. Cal. 2015) ("Thus, 'it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary.'") (citation omitted)).  (United Opp., p. 6, lines 7-12).

However, the undue burden in this case is overwhelming, and neither Ms. Dean nor any other attorney has the ability to undertake the effort that Mr. Okorocha testifies will take 1,000 attorneys 650 days to accomplish.  Ms. Dean does not have the physical ability to duplicate what Attorney Whitman did over almost eight (8) months with two (2) full time assistants.  The burden here is not merely "too hard," but rather undue.

The *Carter* case does not stand for what United claims.  *Carter* says that "'Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(c).  *United.  U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015).  The *Carter* court held that while the difficulty of searching and producing documents does not relieve a party of the discoverability of the documents, who must bear the costs of the document requests was a totally different matter. *Id.* at

238-39.  The shifting of costs is based on the factors identified in *Rowe Entm't, Inc. v. The William Morris Agency, Inc*., 205 F.R.D. 421, 431 (S.D.N.Y.2002)) which are:

> "'(1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.' *Rowe*, 205 F.R.D. at 429." Id. at 238.

The *Carter* court concluded that where there is an undue burden the Court is obligated to shift the costs and order the plaintiff to bear the costs of searching and retrieval of difficult to access electronically stored information (ESI).  *Id.* at 247.

The Almont Counter-defendant have demonstrate (1) the Court has ordered the inspection of millions of documents which Mr. Okorocha has testified will take 1,000 attorneys 650 days to accomplish  (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, line 17, to p. 5, line 5); (2) there is little likelihood of discovering anything of relevance to this case and United already has all checks, banking information, and patient records in its own possession, custody, and control; (3) the information sought is inaccessible; (4) the information is in the hands of third parties; (5) the benefit of giving united materials it already has is non-existent; (6) the costs associated with production exceed a minimum of $1,700,000 or more; (7) the Almont Counter-defendant have no ability to control the costs involved; and (8) the Almont Counter-defendants have no resources available because they are out of business while United is a multi-billion dollar company who is abusing its large size in creating an improper discovery issue.

### 4.    Cost shifting is appropriate to facilitate search and retrieval

United cites the case of *United States ex rel. Guardiola v. Renown Health*, 2015 U.S. Dist. LEXIS 112511, at *10 (D. Nev. Aug. 25, 2015), for the proposition that "where cost-shifting is appropriate, only the costs of restoration and searching should be shifted.") (*quoting Zubulake II*, 216 F.R.D. at 290)."  (United Opp., p. 20, to p. 13, line 2).  However, that is not what *Renown Health* states.  However, the federal rules of Civil

Procedure were amended in 2015, after the *Zubulake* decision. The *Renown Health* Court states "It is true that the ESI amendments to the Rules of Civil Procedure did not adopt the *Zubulake* approaches wholesale." *U.S. ex rel. Guardiola v. Renown Health*, 2015 WL 5056726, at *9 (D. Nev. Aug. 25, 2015). Further, the *Renown Health* case involved a request for attorney's fees where the attorney was doing ordinary search and retrieval which were otherwise compensable at non-attorney rates.

Whether it was Attorney Whitman or her two (2) full time staff, or some other non-attorney, it took eight (8) months for three people to reprieve materials from Nextech. Mr. Okorocha states it will take 1,000 attorneys, or for that matter anyone, 654 days to search for and examine the electronic data. United's claims are without merit.

### E.   United's Unsworn Testimony and Claims Lack Foundation

#### 1.   United's claim of working with Counter-defendants is without merit

The United Counter-claimants argue:

"To the extent Counterclaim Defendants' complaint regarding the scope of discovery relates to patient notes, medical and billing records related to the approximately 1,300 patients at issue, United has always indicated that it remains willing to discuss with Counterclaim Defendants a discovery plan to manage such production." (United Opp., p.15, lines 8-12).

However, the unreasonable and undue burden United's discovery in this case exists because there are 30,254 procedures which are involved in this case. Appendix "A," Third Amended Counterclaim Dkt. 532-2). There has been no effort to limit discovery, and what United was willing to do is in direct contravention of what the Court has Ordered. The Court's Order that the Almont Counter-defendants review (1) 1,200,000 documents belonging to other companies, (2) examined 1,700 boxes and 100 terabyte in the government's possession, (3) examined dozens of returned computer hard drives from the government, and (4) make arrangements to examined Nextech which belongs to someone else create an undue burden which Mr. Okorocha testifies will take 1,000 lawyers 650 workdays to complete. (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, line 17, to p.

5, line 5).  United's claim of working with Counter-defendants is nonsensical.  United's unsworn claims form its attorney that it is working with the Almont Counter-defendants to lessen the burden is without foundation.  *INS v. Phinpathya*, 464 U.S. 183, 189 n.6 (1984) (unsworn arguments and statements by counsel in a brief are not evidence and entitled to no evidentiary weight).

## 2.    United already has the patient records in its possession

United Counter-claimant argues:

> "Counterclaim Defendants have never submitted to United—in the normal course of business or otherwise—any copies of Nextech Patient Notes, Claims History, or insurance-verification forms."  (United Opp., p. 11, lines 4-6).

However, every patient claim submitted to United was accompanied by the patient's full medical record, Claims History, and Insurance Verification forms.  United's claims are untrue.  United's request for documents is unduly burdensome because it is cumulative and duplicative.  Rule 26(b)(2); *Sahu v. Union Carbide Corp*., 262 F.R.D. 308, 314 (S.D.N.Y. 2009) (discovery requests which are duplicative or cumulative of information already obtained by a party should not be permitted).; *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (the court has an obligation to prevent a party from using discovery to harass the opposing party or to subject the opposing party to unreasonably burdensome or cumulative discovery); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc*., 244 F.3d 189, 192 (1st Cir. 2001) (Rule 26(b)(2) limits discovery where the court "determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive").

In *Chen v. Cincinnati Inc.*, No. 06-3057, 2007 WL 1191342, at *2 (E.D.N.Y. Apr. 20, 2007), the Court found that where the discovery sought is voluminous and requires additional and substantial attorney pre-production review time, courts are more likely to find that the associated burden of wholesale discovery outweighs any marginal relevance.  This is particularly true where the producing party has already provided the requesting

party with the information sought through less formal means. *Id.* At *2.

In *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1370 (S.D. Fla.), aff'd sub nom. In re O'Keeffe, 660 F. App'x 871 (11th Cir. 2016), the Court stated:

"As provided under Rule 26(b)(2), otherwise discoverable requests may be limited if the discovery sought is "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(I), (iii). As discussed above, the Court concludes that the discovery sought is not unreasonably cumulative or duplicative, and there has been an insufficient showing that the burden or expense, if any, of the proposed discovery outweighs the likely benefits of the discovery, considering the factors set forth in Rule 26(b)(2). Accordingly, the Court concludes that the Magistrate Judge's Order (DE 18) is clearly erroneous and contrary to law."

Counter-defendants have testified repeatedly that each of the claims they submitted to United had the medical records for that patient attached to the request.  United's request is unreasonably duplicative and cumulative because United already has the requested information in its possession.  *Sahu v. Union Carbide Corp*., 262 F.R.D. 308, 312–13 (S.D.N.Y. 2009) ("'A plaintiff must also show "that the material sought is germane to the defense, and that it is neither cumulative nor speculative."' *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994).")

### 3.    United has subpoenaed all of Counter-defendants' bank accounts

United argues:

"And although United has made some independent progress in identifying Omidi-related bank accounts, significant work remains, and indeed, Counterclaim Defendants have never produced a complete list of bank accounts, or even a single bank statement or cancelled check."  (United Opp., p. 11, lines 10-13).

However, there is no evidence or testimony to support this unsworn statement.  *INS v. Phinpathya*, 464 U.S. 183, 189 n.6 (1984) (unsworn arguments and statements by counsel in a brief are not evidence and entitled to no evidentiary weight).   The Almont Counter-defendants have provided United with every known bank account, and United has subpoenaed each of those accounts. *Sahu v. Union Carbide Corp*., 262 F.R.D. 308,

314 (S.D.N.Y. 2009) (discovery requests which are duplicative or cumulative of information already obtained by a party should not be permitted); *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (the court has an obligation to prevent a party from using discovery to harass the opposing party or to subject the opposing party to unreasonably burdensome or cumulative discovery). United already has in its possession all of the cancelled checks and bank statements from every account of which Counter-defendant are aware, and the unsworn statement of its counsel is untrue. *Kramer v. N. Coast Vill.*, 2007 WL 2120221, at *4 (D.P.R. June 5, 2007) ("Unsworn arguments of counsel and "unsupported allegations in [the non-moving party's] memorandum or pleadings are insufficient." *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990).").

### 4.    A cost shifting Order is essential in this case

United Counter-claimants argue:

"Counterclaim Defendants have provided no credible evidence of any costs for review other than fees for attorney time." (United Opp., p. 12, lines 18-19).

However, Mr. Oxman testified that it cost the government $4.3 million to review the electronic data involved in this case, and that wasn't enough. He estimated that it would cost $1,700,000 to review Nextech. (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9). Mr. Okorocha testified it will take 1,000 attorneys 650 days to accomplish the document search in this case. (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, line 17, to p. 5, line 5). He further stated: "I am aware that Brian Oxman previously submitted a declaration that it would take approximately $1,750,000 to redo the work that Brittany Whitman and two assistants did from Nextech. I believe Brian Oxman's estimate to redo this work is quite low." (Okorocha 2-9-18 Dec. Dkt 758-1, p. 5, lines 6-8).

United's claim that there is no credible evidence of any cost is nonsensical. Whether it be attorney time, or the two (2) full time assistants Attorney Whitman had for almost eight (8) months, their time is compressible. The attorney's time to review and examine the documents is also a reasonably compensable expense in this case. *In re*

*General Instrument Corp. Securities*, 1999 WL 1072507, at *6 (N.D. Ill. Nov. 18, 1999).

**III.    CONCLUSION**

For the foregoing reasons, Counter-defendant Julian Omidi requests the Motion for Protective Order be granted.


DATED: February 27, 2018

KAMILLE DEAN


By: _/s/*Kamille Dean*_____

Kamille Dean

Attorney for Julian Omidi

## DECLARATION OF JULIAN OMIDI

I, Julian Omidi, declare and say:

1.  I am a Counter-defendant in this proceeding.  I have personal knowledge of the following events, and if called as a witness I would competently testify as follows.

2.  I submit this declaration because of the effort by United Healthcare Group to repeatedly injure and force my attorneys to withdraw from this case.  It has happened repeatedly, and each time the government has acted with United to injure my attorneys.  The undeniable fact is that the government's unwarranted injuries to my attorneys have been a material aid and assistance to United in this case.

3.  The first time the government acted to assist United by inflicting an injury on my attorneys thereby forcing them to withdraw from this case occurred when the government filed a Motion to Compel compliance with an expired grand jury subpoena on September 6, 2015 in the case of In re Grand Jury Investigation, USDC Central District of California Case No. 01014 PSG.  Unknown to me, the subpoena which was directed to Sheppard Mullin Richter Hampton LLP and Attorney Peter Reichertz, a partner in the firm, had expired months earlier in January, 2015.  The Motion to Compel was designed conceal the faux subpoena and to force Sheppard Mullin to withdraw from the *Almont v. United* case by creating an immediate and irreconcilable conflict the government knew would force Sheppard's withdrawal.  Immediately after the Motion to Compel the faux subpoena, Sheppard Mullin filed a Motion to Withdraw on September 16, 2015 (Dkt 223) from this case because of the conflicts of interest the government created with the non-existent subpoena.

4.  Knowing that the subpoena was expired and unenforceable, the government filed the Motion to Compel against Sheppard Mullin and Attorney Peter Reichertz anyway while it concealed the expiration of the subpoena from me and the Court.  The attorneys handling the matter for the government were Assistant US Attorney Kristin Williams and Consuelo Woodhead, the very same attorneys who have once again

appeared in this case claiming the government is an intervenor in this case.  (See government filing of 12-1-17 Dkt 659 and 2-2-17 Dkt 750).  AUSA Williams has declared under penalty of perjury the government is an intervenor in this case. Dkt. 740. Their actions on September 9, 2015, destroyed my invaluable years long attorney-client relationship with Sheppard Mullin and created an immediate conflict of interest which forced Sheppard to withdraw from this proceeding in Almont v. United on September 16, 2015 (Dkt 223).  Whether or not the government had intervened in this case on January 15, 2015 (Dkt. 190), the government's actions were designed to benefit United by destroying my attorney-client relationship and forcing my attorneys to withdraw from this action.

5.  Sheppard Mullin had been representing me since 2011, and was my main counsel in responding to both United and the government's investigation since early 2012. Counter-defendants in this proceeding had spent over eight (8) millions of dollars and five years of effort on the representation of Sheppard Mullin which was destroyed with the government's improper enforcement of the expired Subpoenas. Only six (6) days after the government filed its September 10, 2015, Motion to compel, on September 16, 2015, Sheppard Mullin filed its motion to withdraw its representation (Dkt 223).

6.  I complained to this Court on October 19, 2015, about the conflict the government and United had created for my attorneys.  However, the Court would not inquire and instead allowed Sheppard to withdraw.  (Order 10-23-15 Dkt. 240).  That was then followed by Hooper, Lundy, Bookman seeking withdrawal from this case because their co-counsel, Shepard Mullin was no longer involved and they did not wish to proceed without Sheppard as their co-counsel.  That was then followed by Counter-defendants' inability to find replacement counsel and defaults being entered in this case on May 16, 2016 (Dkt 335) all because the government created a false conflict with a faux subpoena forcing my attorneys to withdraw as attorneys in this case.

7.  When I complained at the October 19, 2015, hearing to this Court, I informed the Court that at the time of Sheppard Mullin's Motion to Withdraw that the government

was interfering with my counsel.  I did not know at that time the subpoena was expired and the Motion to Compel which created the conflict for Sheppard was based on a faux non-existent grand jury subpoena.  I asked this Court to inquire into the government's misconduct, and yet the Court did not do so.

8.  The evidence was overwhelming on October 19, 2015, the government, whether they were a party to this proceeding or not, created through the use of an expired grand jury subpoena a conflict of interest for Sheppard Mullin which resulted in Counter-defendants' loss of their counsel.  Had the Court inquired at that time concerning the government's misconduct, the existence of the faux expired subpoena would have been discovered.  I am once again requesting this Court to now, after exposure of the government's misconduct, to inquire into that prior misconduct and the current misconduct involving my Attorney Kamille Dean described below.

9.  The government's flagrant misuse of the grand jury process to injure a party to this proceeding was then followed by Counter-defendants' loss of their Counsel Hooper Lundy Bookman when they no longer had a co-counsel in Sheppard with whom they worked hand and hand.  There is no denying that the subpoena was expired, and the Motion to Compel was deliberately targeted to force Sheppard to withdraw form this action to the benefit of United.  This is a serious matter of extraordinary misconduct where the government used a faux subpoena to injury my attorneys forcing their withdrawal followed by a default on May 26, 2016, all to the benefit of United Healthcare.

10.  The destruction of my attorney client relationship forcing my attorneys to withdraw from this case based on the creation of a false conflict is once again being repeated with Attorney Kamille Dean.  The government, with the complicity of United, disclosed grand jury subpoenas and witnesses before this Court on November 29, 2017.  (11-29-17 Tr. p. 52, line 12, to p. 53, line 6).  The repeated presence of the government in this case where the government has engaged in misconduct should be of grave concern to the Court, and in no other case before the Court has the government engaged in this kind

of behavior.

11.  The government also promised this Court on November 29, 2017, that it would make available for Ms. Dean's inspection and copying the 1,700 boxes and 100 terabyte of data it had seized on June 4, 2014, so that she could provide discovery responses in this case.  That promise was a sham, but nevertheless resulted in the Court issuing an Order on December 20, 2017 (Dkt. 674 & 676), requiring Ms. Dean to travel to San Clemente, California to inspect and copy the documents.  Once again, unknown to me and Ms. Dean, the government had no intention to permit the examination and copying of the documents, and when Ms. Dean arrived at the facility in San Clemente, California, on February 4, 2018, to copy the documents, she was not permitted to copy them, take notes, or take photographs.  (See Dean Dec. Dkt 758 p. 26-32; Okorocha Dec., Dkt 758-1).

12.  The misconduct of November 29, 2017, was severe and designed to obtain an Order from this Court that not only would benefit United, but also force my attorney to withdraw from this case following the sham inspection in San Clemente on February 5, 2018.  (See 2-9-18 Motion to Withdraw Dkt 757).  The government disclosed Surgery Center Management as a witness before the grand jury in order to assist United in this case.  The Court entered an Order for Ms. Dean to examine (1) 1,200,000 documents belonging to other companies which the grand jury had subjoined and were matters before the grand jury, (2) 1,700 boxes and 100 terabyte in the government's possession, (3) dozens of returned computer hard drives from the government, and (4) make arrangements to examined Nextech which belongs to someone else.  When Ms. Dean went to San Clemente on February 5, 2018, to examine the seized materials, the government blocked her efforts, refused to permit her to take notes, photographs, or copies, and did everything it could to prevent discovery in this case.  (Dean Dec. Dkt 758 p. 26-32; Okorocha Dec., Dkt 758-1).1

13.  The undue burden which United and the government have created has forced Ms. Dean to file a Motion to Withdraw as Attorney of Record.  (Okorocha 2-9-18 Dec. Dkt 758-1, p. 4, line 17, to p. 5, line 5).  The government's interference with her duties as

an attorney, disclosure of grand jury secrets, and repeated creations of conflicts of interest between Counter-defendants and their counsel has forced her withdrawal.  No attorney is capable of handling the orders which have been made in this case.  The joint effort between United and the government to once again force my attorney to withdraw in the midst of an unforgivable Rule 6(e) violation of disclosing matters before the grand jury has created a situation that shocks the conscience.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.  Executed this 27th day of February, 2018, at Los Angeles, California

/s Julian Omidi

_____

Julian Omidi

## PROOF OF SERVICE

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On February 27, 2018, I served the documents described as:

### MR. JULIAN OMIDI'S REPLY IN SUPPORT OF  COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

upon the interested parties in this action as follows:

____x____ (By ECF) The foregoing document was served via the ECF of the Court.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 27, 2018.


/s/ Kamille Dean
_____
KAMILLE DEAN ESQ.