Kamille Dean, Esq.  #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Almont Ambulatory Surgery Center, LLC, et al., | Case No: 2:14-cv-03053-MWF(AFMx) |
| | EXHIBIT 2 TO DEAN DECLARATION |
| Plaintiffs, | **COUNTER-DEFENDANTS' REPLY TO UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER; DECLARATION OF KAMILLE DEAN** |
| v. | |
| Unitedhealth Group, Inc., et al., | |
| Defendants. | |
| | **Hon. Magistrate Judge MacKinnon** |
| United Healthcare Services, Inc., et al., | **TIME:    10:00 a.m.** |
| | **DATE:    March 13, 2018** |
| Counterclaim Plaintiffs, | **PLACE:  Courtroom 780** |
| v. | Hon. Magistrate Judge MacKinnon |
| Almont Ambulatory Surgery Center, LLC, et al.. | |
| | Hearing: |
| Counterclaim Defendants. | Date: March  19, 2018 |
| | Time: 10:00 a.m. |
| | Courtroom: #780- 7th Floor |
| | |
| | Discovery Cut-off: Sept. 14, 2018 |
| | Pretrial Conference: Jan. 7, 2019 |
| | Trial Date: Jan. 29, 2019 |

i

Kamille Dean, Esq.  #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL., | Case No: 2:14-cv-03053-MWF(AFMx) |
| Plaintiffs, | |
| v. | **JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER FOR SHIFTING DISCOVERY COSTS** |
| UNITEDHEALTH GROUP, INC., ET AL., | |
| Defendants. | |
| | TIME:         10:00 a.m. |
| UNITED HEALTHCARE SERVICES, INC., ET AL., | DATE:        March __, 2918 |
| | PLACE:      Courtroom 780 |
| Counterclaim Plaintiffs, | Hon. Magistrate Judge MacKinnon |
| v. | Discovery Cut-off: Sept. 14, 2018 |
| ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL.. | Pretrial Conference: Jan. 7, 2019 |
| Counterclaim Defendants. | Trial Date: Jan. 29, 2019 |

The following is the Joint Stipulation re: Counterclaim Defendants' Motion for Protective Order for Shifting Discovery Costs filed pursuant to Rule 37-2 of the Local Rules of the U.S. District Court, Central District of California.

1

## JOINT STIPULATION TABLE OF CONTENTS

2

3   Almont Counter-Defendants' Notice of Motion and Motion for Protective Order ......................... 3

4       Almont Counter-defendants' Table of Contents .................................................... 6

5       Almont Counter-defendants' Table of Authorities ................................................. 8

6       Almont Counter-defendants' Memorandum in Support of  Protective Order ...................... 12

7   United Counter-Claimant Opposition to Motion for Protective Order ................................ 38

8       United Counter-Claimants' Table of Contents ..................................................... 39

9       United Counter-Claimants' Table of Authorities .................................................. 40

10      United Counter-Claimants' Memorandum in Opposition to Protective Order .................... 42

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kamille Dean, Esq.  #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL., <br><br>    Plaintiffs, <br>  v. <br><br> UNITEDHEALTH GROUP, INC., ET AL., <br><br>    Defendants. <br><br> _____ <br><br> UNITED HEALTHCARE SERVICES, INC., ET AL., <br><br>    Counterclaim Plaintiffs, <br>  v. <br><br> ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL. <br><br>    Counterclaim Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No: 2:14-cv-03053-MWF(AFMx)

**COUNTERCLAIM DEFENDANTS'
NOTICE OF MOTION AND MOTION
FOR PROTECTIVE ORDER**

Hon. Magistrate Judge MacKinnon

TIME:  10:00 a.m.
DATE:  March 13, 2018
PLACE: Courtroom 780

Discovery Cut-off: Sept. 14, 2018
Pretrial Conference: Jan. 7, 2019
Trial Date: Jan. 29, 2019

**TO UNITED STATES OF AMERICA ("USA"), UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, INC., ANDOPTUMINSIGHT, INC., AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 13, 2018, at 10:00 a.m. in Courtroom 780 of the above-entitled court located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable Magistrate Alexander MacKinnon, Counterclaim Defendants will move the Court for a Protective Order permitting the assessment of reasonable costs to be determined upon billings for services as they are completed for compliance with Counterclaimants' discovery requests in the above-entitled action. Counter-defendants' Motion will be made pursuant to Rule 26 of the Federal Rules of Civil Procedure and based on the following:

(1) The Court should issue a Protective Order and shift the costs of discovery to United because the documents requested are inaccessible and the undue burden United's discovery requests have created;

(2) The volume of United's requests and the availability of the information from more convenient sources require the Court to shift the costs of production to United to avoid an undue burden and prejudicially oppressive result cost to Counter-defendants;

(3) In the absence of a Protective Order to require United to pay the reasonable costs of production, Counter-defendants' Counsel, Ms. Kamille Dean, will be forced to withdraw from representation because the unnecessary and overly burdensome discovery obligations create an unreasonably oppressive physical inability to comply with discovery requests thereby mandating her withdrawal.

This Motion is made after Counter-defendants' counsel, Kamille Dean, has met and conferred with United's attorney, Michelle Grant, at least a dozen times in the past 90 days regarding Counter-defendants' demand that 1) United admit that it already has the documents it is compelling; 2) United is attempting to gain a windfall from Counter-defendants' previous counsel, Mark Jubelt, failing to substantively respond and appropriately provide objections on behalf of the counter-defendants, to the Motion to

Compel; and 3) United pay reasonable costs for United's discovery request due to the unnecessary disclosures in addition to the fact that the requested information is creating an undue burden and oppressive result to counter-defendants. These meetings are far too numerous and detailed to recount to the Court. Counter-defendants' requests have been met with a flat refusal, and any further meeting and conferring with United would be futile.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities submitted in Support of the Motion, the Declaration of Kamille Dean, such other evidence as may be presented prior to the hearing on this matter, and all of the records, papers, and pleadings on file with the Court.

*Respectfully Submitted,*

this 9th day of February, 2017          By: **s/ *Kamille Dean***

_____

KAMILLE DEAN, ESQ. *for*

**LAW OFFICES OF
KAMILLE DEAN**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................... 1

   A. Statement of the Case .......................................................................... 1

      1. Ms. Dean inspected the government's facility as the Court Ordered ........................................................................................ 1

      2. Examination of the materials was impossible ............................ 2

      3. The disorganization of the materials was extensive ................. 3

      4. The government's demand for a Protective Order was unreasonable ............................................................................. 4

   B. Basis for Motion for Protective Order ................................................ 5

      1. United's claims and demands for discovery create an undue burden ......................................................................................... 5

      2. The evidentiary showed the documents are inaccessible ......... 6

      3. Ms. Dean must withdraw because of the undue burden ........... 8

II. THE COURT SHOULD ISSUE A PROTECTIVE ORDER AND SHIFT THE COSTS OF DISCOVERY BECAUSE THE DOCUMENTS REQUESTED ARE INACCESSIBLE AND THE UNDUE BURDEN UNITED HAS CREATED ............................................................................. 9

   A. United's Discovery Requests Have Created an Undue Burden .......... 9

      1. The documents United seeks are inaccessible ......................... 9

      2. The volume of United's requests makes the information inaccessible ............................................................................. 11

      3. Most information is readily available from a convenient source ....... 13

   B. The Court Should Require United to Pay Reasonable Expenses ....... 14

      1. The cost of discovery compliance is undue and overwhelming ......... 14

      2. Counter-defendant have satisfied the Rowe factors for fee shifting ..................................................................................... 16

         a. Rowe Factor No. 1 - United seeks excessive documents ......... 17

         b. Rowe Factor No. 2 - the information sought is non-critical ..... 19

         c. Rowe Factor No. 3 - information available from other sources ....... 21

          d.       Rowe Factor No. 4 - purposes that date was maintained ......... 22

          e.       Rowe Factor No. 5 - relative benefit to obtaining the information .............................................................................. 22

          f.       Rowe Factor No. 6 - the total cost associated with production ..................................................................................... 24

          g.       Rowe Factor No. 7 - ability of each party to control costs....... 24

          h.       Rowe Factor No. 8 - resources available to each party ............ 25

III.     CONCLUSION...................................................................................... 25

DECLARATION OF KAMILLE DEAN .......................................................... 26

PROOF OF SERVICE ..................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Adair v. EQT Prod. Co.*,
2015 U.S. Dist. WL 505650 (W.D. Va. Feb. 6, 2015) ................................. 12

*Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*,
2017 WL 80248 (D. Haw. Jan. 9, 2017) .................................... 13, 18

*Ameristar Jet Charter v. Signal Composites, Inc.*,
244 F.3d 189 (1st Cir.2001) .............................................. 10

*Baker v. Gerould*,
2008 WL 850236 (W.D.N.Y. Mar. 27, 2008) ............................... 15

*Baker v. State Bar*,
49 Cal. 3d 804 (1989) ..................................................... 8

*Benham v. Rice*,
238 F.R.D. 15 (D.D.C. 2006).............................................. 21

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
2007 U.S. Dist. LEXIS 7580, 2007 WL 333987 (D. Min. Feb. 1, 2007) ............ 11

*Bottoms v. Liberty Life Assurance Company of Boston*,
2011 WL 6181423 (D. Colo. Dec. 13, 2011) ................................. 12

*Chen v. AMPCO System Parking*,
2009 WL 2496729 * *2–3 (S.D.Calif. Aug.14, 2009) .......................... 18

*Chen v. Hewlett-Packard Co.*,
2005 WL 1388016 (E.D. Pa. June 8, 2005)................................... 21

*Cochran v. Caldera Med., Inc.*,
2014 U.S. Dist. LEXIS 55447, 2014 WL 1608664 (E.D. Pa. Apr. 22,
2014) ................................................................. 6, 14

*Crosby v. La. Health Serv. & Indem. Co.*,
647 F.3d 258 (5th Cir.2011) .......................................... 10, 11

*Edwards v. Gordon & Co.*,
94 F.R.D. 584 (D.D.C. 1982).............................................. 17

*Ford v. Wildey*,
No. 1:10–cv–01024 LJO SAB (PC), 2014 WL 4354600 (E.D.Cal. Sept. 2,
2014) ................................................................... 17

*Freese v. FDIC*,
837 F. Supp. 22 (D.N.H. 1993)............................................ 18

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
898 F.Supp.2d 171 (D.D.C.2012)........................................... 15

**TABLE OF AUTHORITIES:** (continued)                                          Page(s)

*Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.,*
  222 F.R.D. 594 (E.D. Wis.2004) ................................................................ 14

*In re General Instrument Corp. Securities,*
  1999 WL 1072507 (N.D. Ill. Nov. 18, 1999) ............................................... 20

*Jackson v. Unisys, Inc.,*
  No. 08-3298, 2009 U.S. Dist. LEXIS 121716 (E.D. Pa. Dec. 31, 2009) ..................... 18

*McPeek v. Ashkroft,*
  202 F.R.D. 31 (D.D.C. 2001)....................................................................... 14

Midwest Gas Servs. Inc. v. Ind. Gas Co. Inc.,
  2000 WL 760700 (S.D. Ind. Mar. 7, 2000) ................................................. 18

*Moore v. Morgan Stanley & Co., Inc.,*
  2008 WL 4681942 (N.D.Ill. May 30, 2008)................................................. 18

*Murphy v. Deloitte & Touche Grp. Ins. Plan,*
  619 F.3d 1151, 1163 (10th Cir.2010) ......................................................... 10

*Nehad v. Mukasey,*
  535 F.3d 962 (9th Cir. 2008) ........................................................................ 8

*Nicholas v. Wyndham Int'l, Inc.,*
  373 F.3d 537 (4th Cir.2004) ...................................................................... 10

*Oklahoma v. Tyson Foods, Inc.,*
  2006 WL 2862216 (N.D.Okla.2006) ........................................................... 18

*OpenTV v. Liberate Technologies,*
  219 F.R.D. 474 (N.D. Cal.2003).................................................................. 14

*Payne v. Howard,*
  75 F.R.D. 465 (D.D.C.1977)........................................................................ 19

*Playboy Enterprises, Inc. v. Welles,*
  60 F. Supp. 2d 1050 (S.D. Cal. 1999).......................................................... 23

*Pulsecard, Inc. v. Discover Card Servs., Inc.,*
  1995 WL 526533 (D. Kan. 1995) ................................................................ 22

*Quezada v. Lindsey,*
  No. 1:10–cv–01402 AWI SAB (PC), 2014 WL 5500800 (E.D.Cal. Oct.
  30, 2014) .................................................................................................. 17

*Regan–Touhy v. Walgreen Co.,*
  526 F.3d 641 (10th Cir.2008) ..................................................................... 12

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.,*
  205 F.R.D. 421 (S.D.N.Y.2002) .................................................................. 16

**TABLE OF AUTHORITIES:** (continued)  Page(s)

*S. Ute Indian Tribe v. Amoco Prod. Co.*,
  2 F.3d 1023 (10th Cir.1993) ............................................................... 12, 15

*S.T. Hudson Int'l, Inc. v. Glennon*,
  1988 WL 115808 (E.D. Pa. Oct. 28, 1988) ................................... 22

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 225 (S.D. Cal. 2015) .......................................... passim

*United States v. Legal Svcs. for New York City*,
  249 F.3d 1077 (D.C. Cir. 2001) ................................................. 12

*United. U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240
  (S.D. Cal. 2015) ....................................................................... 6

*Valenzuela v. Smith*,
  No. S 04–cv–0900 FCD DAD P, 2006 WL 403842 (E.D.Cal. Feb.16,
  2006) ............................................................................................ 17

*Washington v. Essex*,
  2015 WL 814527 (E.D. Cal. Feb. 25, 2015) ................................... 17, 19, 20

*Wiginton v. CB Richard Ellis, Inc.*,
  229 F.R.D. 568 (N.D. Ill.2004) .................................................... 14

*Wollam v. Wright Medical Group, Inc.*,
  2011 WL 1899774 (D. Colo., 2011) .............................................. 18

*Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda*, LLC,
  2007 WL 674893 (D.R.I. Mar. 1, 2007) ....................................... 21, 22

*Zeller v. S. Cent. Emergency Med. Servs.*,
  2014 U.S. Dist. LEXIS 68940, 2014 WL 2094340 (M.D. Pa. May 20,
  2014) ........................................................................................... 6, 14

*Zubulake v. UBS Warburg, L.L.C.*,
  216 F.R.D. 280 (S.D.N.Y. 2003) ................................................. 14, 16

**Other Authorities**

7A Cal. Jur. 3d Attorneys at Law
  § 318 (2016) ................................................................................ 7

C. Wright & A. Miller, Federal Practice & Procedure, Civil
  § 2008.1 (3d ed.) ....................................................................... 13

E. Younger & D Bradley, Younger on California Motions,  Mandatory
  Withdrawal—Inability to Proceed
  §17:4. (2d ed. 2017) .................................................................... 7

Shira A. Scheindlin & Daniel J. Capa,
  Electronic Discovery and Digital Evidence 314 (2009) ..................... 6, 14

## **Rules**

California Rules of Professional Conduct,
   Rule 3-700(B) .................................................................................. 7

Federal Rules of Civil Procedure,
   Rule 26(b)(2)(B) ............................................................................ 15

Federal Rules of Civil Procedure
   Rule 26(b)(2)(C)(i) ......................................................................... 10

Federal Rules of Civil Procedure
   Rule 26(b)(2)(C)(ii) ........................................................................ 10

Federal Rules of Civil Procedure
   Rule 26(b)(2)(C)(iii) ....................................................................... 10

Federal Rules of Civil Procedure,
   Rule 16(b)(2).................................................................................. 15

Federal Rules of Civil Procedure,
   Rule 26(b)(2)(c) ............................................................................. 10

Federal Rules of Civil Procedure,
   Rule 26(b) ..................................................................................... 10

Federal Rules of Civil Procedure,
   Rule 26(b)(1)............................................................................. 12, 23

Federal Rules of Civil Procedure,
   Rule 26(b)(2)................................................................................. 10

Federal Rules of Civil Procedure,
   Rule 26(b)(2)(C) ............................................................................ 13

Federal Rules of Civil Procedure,
   Rule 26(c)...................................................................................... 10

Federal Rules of Civile Procedure,
   Rule 26(c)(1).................................................................................. 10

# I. INTRODUCTION

Counter-defendants submit this Memorandum in Support of their Motion for Protective Order against the discovery issued by United Healthcare Group, Inc., and the Court's December 17, 2017, Order. Counter-defendants' Motion is based on the following:

(1) The Court should issue a Protective Order and shift the costs of discovery to United because the documents requested are inaccessible and the undue burden United's discovery requests have created;

(2) The volume of United's requests and the availability of the information from more convenient sources require the Court to shift the costs of production to United to avoid an undue burden and prejudicially oppressive result cost to Counter-defendants;

(3) In the absence of a Protective Order to require United to pay the reasonable costs of production, Counter-defendants' Counsel, Ms. Kamille Dean, will be forced to withdraw from representation because the unnecessary and overly burdensome discovery obligations create an unreasonably oppressive physical inability to comply with discovery requests thereby mandating her withdrawal.

## A. Statement of the Case

### 1. Ms. Dean inspected the government's facility as the Court Ordered

On February 5, 2018, Attorney Kamille Dean, Counsel for Counter-defendants, traveled to the Food and Drug Administration storage facility in San Clemente, California, to view the materials the government seized on June 4, 2014. This viewing was ordered by the Court on December 20, 2017, where the Court Ordered the government to make available the materials it had seized on June 4, 2014, for Ms. Dean to review, and for Ms. Dean to obtain documents to produce which are responsive to United's discovery requests. (12-20-17 Order Dkt. 674). However, not only was the viewing a facade where the government refused to permit Ms. Dean to take any notes, photos, or obtain copies, but also upon viewing the materials, Ms. Dean confirmed it is physically and financially

impossible for Ms. Dean or Counter-defendants to comply with the Court's Order.

The actual storage facility where the 1,700 boxes and 100 terabytes of information the government seized on June 4, 2014, is not located in San Clemente. Rather, it is located in Los Angeles, and the government forced Ms. Dean to travel more than 100 miles round trip to view documents that were located in a facility in Los Angeles where the boxes are stacked one on top of another in total unorganized disarray. The government's attorney, Ms. Kristin Williams, informed Ms. Dean that the government would only permit her to examine 20 to 25 boxes each time. Nevertheless, Ms. Dean requested 28 boxes.

Attorney Steven Li, Special Agent for the Food and Drug Administration, monitored Ms. Dean's inspection and informed her that of the 28 boxes Ms. Dean had requested, the government had not been able to locate all of them. He therefore brought what he could find. He brought only 16 of the correct boxes, and he brought 12 incorrect boxes from the wrong inventory which did not match Ms. Dean's request. However, nearly all of the 12 boxes contained materials not described on the inventories which Counter-defendants were forced to pick from in requesting access to the materials seized by the government. Forty-three percent (43%) of the boxes were not the boxes counter-defendants requested to view.

### 2. Examination of the materials was impossible

There was no possible means by which Ms. Dean was able to access the information contained in 1,700 boxes and 100 terabytes of electronic data without extensive time, resources, and costs which is physically impossible. Ms. Dean and her clients do not have the physical ability or resources to examine these materials or to provide the information the Court has ordered.

The government has made the information inaccessible for all practical purposes because at all times, there was an attendant, Mr. Li, present who examined every move and activity in which Ms. Dean engaged. Ms. Dean was accompanied by Attorney Okorie

Okorocha, Counsel for Imperium Medical Services, Inc., and it was impossible to hold any discussions or otherwise communicate with Mr. Okorocha because of the constant presence of the attendant. Ms. Dean was not allowed to take any notes, photographs, or copies, and the government informed Ms. Dean that the presence of the attendant was mandatory despite the fact the monitor's presence destroyed Ms. Dean's ability to conduct the review.

Most of the descriptions on the labels on the boxes do not match the inventory. The labels do not match the contents, and the boxes contain numerous items than the description. There were numerous documents showing attorney-client communication between company employees and Attorney's Alex Weiss and Konrad Trope regarding legal matters. There was numerous correspondence to the clients by Attorney Brittany Whitman about amending the Complaint in this *Almont v. United* lawsuit, all of which were attorney client privileged.

### 3. The disorganization of the materials was extensive

The labeling of the boxes was useless. Many of the materials and things inside the boxes did not coincide with the labels, and the labels were confusing, misleading, and incomplete. Many of the materials inside the box were in total disarray and not reasonably accessible because the pages were out of order, materials were bundled in an incomprehensible grouping, and pages were missing from numerous documents.

There was no index system available for Ms. Dean to utilize. There was no means by which to determine the contents of the boxes. The boxes were labeled at random with some patient records in one box and then other records of the same patient in another box.

The time consuming nature of the examination was unreasonable. If Ms. Dean requests additional boxes, the one designated attendant will have to retrieve them from stacks and stacks of boxes in the Los Angeles facility and transport them to the San Clemente facility. It will be days or weeks before other boxes can be retrieved and made available to Counter-defendants' counsel. Any boxes which Ms. Dean might designate will be hit or miss where 43% of the retrieved boxes will likely be wrong, and they may or

may not have relevant materials because the labeling is incomprehensible.    The method and manner of storage of the boxes rendered them inaccessible.  The government's refusal to permit Ms. Dean to take notes, photographs, or photocopies, along with the haphazard manner of mixed boxes containing different subjects, rendered the entire effort futile.  Given the extraordinary amount of time to retrieve the boxes and have the boxes made available to Ms. Dean, the inability to tell what boxes contained what materials, the incomplete contents of the boxes, the missing pages and documents from the boxes, the presence of a monitor that made it impossible to do any reasonable work, and the government's refusal to permit Ms. Dean to take notes, photos, or copies, the materials are inaccessible beyond a reasonable doubt.

### 4.    The government's demand for a Protective Order was unreasonable

Prior to Ms. Dean's arrival at the facility, the US Attorney demanded that she sign a protective Order, or she would be prohibited from copying any of the materials which she might view.  The proposed Protective Order provided that Ms. Dean would utilize the materials which might be copied solely for the *Almont v. United* proceeding, and she could not utilize any of the materials for any collateral litigation or any purpose other than the *Almont v. United* case[1].  Ms. Dean was prohibited from disclosing the information to any accountant, business associate, or other person outside the *Almont v. United* matter, and she could not utilize any document or information for any purpose, such as other collateral matters with the United patients in other ongoing civil litigation, tax matters or to complain of the extreme violation of attorney-client privilege which was obvious from

---

[1] Notably, AUSA Kristen Williams played bait and switch on Counterclaim Defendants. The protective order AUSA Williams proposed to Counterclaim Defendants was not the same one the USA filed with this Court for consideration as Exhibit 6 to the USA's Ex Parte Application for Protective Order.  The USA filed a different protective order which Counterclaim Defendants had not previously seen. The new protective order that was never seen previously by Counterclaim Defendants allows Counterclaim Defendants to use the materials for "any criminal case the government may file against any of the Counterclaim Defendants".

the correspondence between the client and Attorneys Weiss, Trope, and Whitman. (See Opposition to Ex Parte Application for Protective Order Dkt 743).

The demands placed on Ms. Dean by the US Attorney made the examination of materials at the facility impossible. Ms. Dean was not allowed to copy or photograph any of the materials. She could not utilize any of the information in any reasonable fashion because of the undue burden which the US Attorney placed on her.

## B. Basis for Motion for Protective Order

### 1. United's claims and demands for discovery create an undue burden

The Court's December 17, 2017, Order requiring Ms. Dean to examine the materials in the government's possession is unreasonable and an undue burden. The Court has also ordered that Ms. Dean review 1,200,000 documents that Sheppard Mullin produced to the government in response to subpoenas to non-parties in other proceeding, and that counter-defendants produce to United any documents responsive to their discovery requests. (Dkt. 676). It is not physically possible for Ms. Dean to examine these documents, and the counter-defendants'[2] do not have the physical, financial, or manpower ability to undertake such an examination. Counter-defendants do not have the means of complying with the Court's discovery orders.

The Court now has under consideration United's 2-21-17 Motion to Compel responses to its discovery requests (Dkt. 441). The counter-defendants' attorney, Kamille Dean and litigation coordinator, Brian Oxman submitted declarations indicating the document were in the custody and control of Imperium, or the government.

At United's request and claim counter-defendants had control and possession of Imperium' records, the Court held an evidentiary hearing in November and December,

---

[2] The individual Counter-defendants, Michael, Julian and Cindy Omidi, have invoked their Fifth Amendment Right and refuse to provide discovery. This Honorable Court cannot default or compel them while there is an active criminal investigation occurring. Clearly, the criminal investigation is turning into a future case based on AUSA Kristen Williams' indication that the documents gathered and reviewed that were seized from the government can be used in a criminal case.

2017, and the parties have submitted proposed Findings of Fact and Conclusions of Law regarding the Counter-defendants lack of access to NexTech. (Dkt.725 and 726). In the meantime, the Court has also required Counter-defendants' Attorney Ms. Dean examine the government's storage facility (in addition to reviewing over 1,200,000 documents from government subpoenas to non-parties to this proceeding (Dkt 676)), and it is now unquestionable that it is physically impossible for Counter-defendants to gather, review and produce documents from the government or from non-parties to this proceeding.

Counter-defendants have submitted Objections to the Proposed Findings of Fact and Conclusions of Law. (Dkt. 734 to -37). These Objections are highly relevant to Counter-Defendants' current Motion for Protective Order because they demonstrate that none of the Counter-defendants have possession, custody, or control over the NexTech system. That system is owned and controlled by Imperium Medical Services, who is not a party to this proceeding. While both Imperium and Counter-defendants are willing to utilize NexTech to provide discovery in this case, they can only do so with reasonable compensation which the Court should both understand and mandate. *United. U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("'Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C).'") (*quoting* Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009), and *citing Zeller v. S. Cent. Emergency Med. Servs*., 2014 WL 2094340, at *9 n. 6 (M.D. Pa. May 20, 2014); *Cochran v. Caldera Med., Inc*., 2014 U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014)).

**2. The evidence at the evidentiary hearings demonstrated the documents are inaccessible**

Counter-defendants recognize the Court stated it did not call for Objections to the Findings of Fact. However, these Objections demonstrate the improper nature of the discovery demand which United has sought in this case, and Counter-defendants request the Court, as a part of this Motion for Protective Order, to examine each of those objections. (Dkt 734-37). There is no ignoring the fact that the discovery is an undue

burden, that United has most, if not all, of the requested information in its own possession and control, and that Counter-defendants have no possession, custody, or control over the NexTech system which belongs to Imperium Medical Services. It is also clear the government seized over 1700 boxes and terabytes upon terabytes of information. It is also clear United's discovery requests are meant to annoy and harass the Counter-defendants with the unnecessary examination and production of several million documents.

United's accusation that Counter-defendants parted with the NexTech system on May 1, 2014, to defeat or interfere with discovery is without merit and lacks evidence. There is no denying that Counter-defendants retained Attorney Brittany Whitman print out from the NexTech system all documents related to United, its Plan Members, and every claim ever made to United in any manner. Ms. Whitman did this with two (2) full time assistants for almost eight (8) months prior to the filing of the lawsuit back in April, 2014. Hundreds of binders and boxes were stacked up on the 8th floor of 9100 Wilshire Boulevard with information readily available for this lawsuit, only to experience the government seizing them on June 4, 2014, followed by their refusal to return them. Now the government is making a farce of their examination and preventing reasonable access while demanding Counter-defendants spent an enormous amount of money to get back the documents they need to defend this matter and respond to discovery.

There was no effort by Counter-defendants to hinder discovery because the government seizure was unforeseeable, and the transfer to Imperium occurred prior to the government seizure. The accusation from United not only lacks evidence but ignores the obvious effort to preserve all documents Attorney Whitman printed out from NexTech. Attorney Whitman printed out and stored every relevant document regarding United claims. Each of the Counter-defendants' Objections (Dkt 734-37) are incorporated into this Motion for Protective Order because of the undue burden United has created with its unreasonable discovery requests and improper accusation.

### 3. Ms. Dean must withdraw because of the undue burden

Counter-defendant cannot comply with United's discovery request because the documents United seeks are inaccessible. The physical, financial, and unreasonable burden created by the discovery requests and the Court's 12-17-17 Order have placed Ms. Dean in the untenable position of being unable to comply with the Court's Order. She does not have the ability to meet United's discovery request or the Court's Order of reviewing 1700 boxes, terabytes upon terabytes of information and reviewing 1,200,000 documents. Not only are these court's demands unreasonable but Ms. Dean cannot physically get this accomplished. She does not have the resources to hire more staff and there are not enough hours in the day to complete this request by the Court in addition to Ms. Dean's other obligations.

California Rules of Professional Conduct, Rule 3-700(B) provides:

> A member representing a client before a tribunal shall withdraw from employment with the permission of the tribunal, if required by its rules, and a member representing a client in other matters shall withdraw from employment, if:
> "....

"(2) The member knows or should know that continued employment will result in violation of these rules or of the State Bar Act;…"

United's gamesmanship has placed Ms. Dean in a position requiring her mandatory withdrawal from this case because Ms. Dean knows that continued representation of Counter-defendants because of the above cited rules of professional Conduct. It is improper for the Court to place Ms. Dean in this position. The undue burden United has created is destroying Ms. Dean's ability to represent her clients because she cannot comply with the Court's Orders regarding discovery. She does not have the physical, financial, or manpower capacity to comply with the discovery obligation, and her further representation of Counter-defendants is not possible. *Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008). ("the rule provides that a lawyer must withdraw if the lawyer's '[]condition renders it unreasonably difficult to carry out the employment effectively.'

Cal. Rules of Prof'l Conduct R. 3–700(B)(3)").

This litigation should not be a charade or game to force Ms. Dean into the unreasonable position of being unable to comply with the Court's Order. *Baker v. State Bar*, 49 Cal. 3d 804, 816 (1989) ("The rule also requires an attorney to withdraw from employment if a []condition make it unreasonably difficult to carry out the employment effectively"). Ms. Dean must withdraw from representation because she cannot physically complete the court's orders and the lack of assistance makes it impossible to carry out the representation of counterclaim defendants effectively. Ms. Dean and Counter-defendants' physical inability is not a pretense, and the unrebutted evidence of the overwhelming nature of the undue burden from the examination of millions of documents and extreme cost caused by United's fishing expedition and useless discovery requests demand a Protective Order be implemented.

In the absence of an Order shifting the costs of discovery compliance to United, Ms. Dean must withdraw from her representation of Counter-defendants, and she is preparing to file a Motion with the Court requesting relief because of the undue burden discovery and the Court has ordered. The Court should not permit open-season on Counter-defendants' attorneys because of unreasonable discovery requests. This is an appropriate case for the Court to enter a protective Order shifting the cost of compliance with United's unreasonable and unnecessary requests. The information sought is inaccessible to Ms. Dean and Counter-defendants, and the physical burden of production is so extreme as to mandate a Protective Order.

## II. THE COURT SHOULD ISSUE A PROTECTIVE ORDER AND SHIFT THE COSTS OF DISCOVERY BECAUSE THE DOCUMENTS REQUESTED ARE INACCESSIBLE AND THE UNDUE BURDEN UNITED HAS CREATED

### A. United's Discovery Requests Have Created an Undue Burden

#### 1. The documents United seeks are inaccessible

United's discovery requests have placed an extreme and undue burden on Counter-defendants, and neither the counter-defendants or the Counter-Defendants' attorney Ms.

Dean are physically or financially able to access the documents or comply with the discovery requests.3  Not only is the information at the US government's facility inaccessible to Counter-defendants (as there is no resources or means to review 1700 boxes and terabytes upon terabytes of information), but also the NexTech system is inaccessible as well due to the lack of resources and means to provide discovery on over 30,000 claims. .  Counter-defendants do not have possession, custody, or control of any of this information, and the undue burden on them in complying with United's discovery requests renders the information inaccessible.  *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (where discovery request is unduly burdensome the Court should shift the costs of compliance).

The Court may issue a Protective Order regarding discovery for any one of three reasons: "the discovery sought is unreasonably cumulative or duplicative;"; it is "obtainable from some other source that is more convenient, less burdensome, or less extensive"; or "the burden or expense of the proposed discovery outweighs the likely benefit." Fed. R. Civ. P., Rule 26(b)(2)(C)(i) - (iii); *see also, e.g., Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir.2004) (citing the factors enumerated in Rule 26(b)(2) and adding, "[t]he simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had"); *Ameristar Jet Charter v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir.2001) (once more quoting Rule 26(b)(2) and adding, "[t]he district court has the discretion to limit discovery")."  "In determining whether an "undue burden" exists, a court must consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the

---

[3] While this Court has inferred that the individual Counter-defendants can assist counsel, to have the individual Counter-defendants go to the government facility and experience the charade Ms. Dean experienced is improper. Further, the individuals Counterclaim Defendants have invoked the Fifth Amendment Rights.  The Court also indicated that counsel should obtain additional help. Counsel is also not able to retain additional help because her clients, the counterclaim defendants, are out of business with no ability to provide additional help.

action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P., Rule 26(b)(2)(c); *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir.2011). Rule 26(c) also authorizes strictures on discovery's extent for "good cause" and so as "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P., Rule 26(c)(1). "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir.2010)."

The evidence is overwhelming that (1) United is a large solvent company where Counter-defendants are out of business; (2) there are 1,200,000 documents belonging to other businesses the Court has ordered Ms. Dean to review; (3) the NexTech system contains millions of documents; and (4) Attorney Whitman and two (2) full time assistants spent almost eight (8) months to print out, collate, and organize the materials from the NexTech system. It will take a similar effort to comply with United's discovery requests. The testimony is unrebutted that the government attempted to review the seized materials at the expense of $3,450,000, and failed, and that at least one-half of these materials are requested in United's discovery leading to a cost of $1,750,000, which the Counter-defendants do not have. (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9). Counter-defendants and their attorney, Ms. Dean, are not physically or financially able to undertake that effort. The burden in this case is undue, oppressive, and so extensive that there is no possible means of Ms. Dean complying with United's discovery requests.

### 2. The volume of United's requests makes the information inaccessible

The sheer volume of information in the NexTech system renders it inaccessible. The 1,200,000 documents the Court ordered Ms. Dean to review are inaccessible because of their sheer volume. This Court has unrebutted testimony and evidence that it will cost $1,750,000 to provide United with the information it seeks in its discovery requests, and it will take Ms. Dean far longer than the eight (8) months Attorney Whitman expended to do only a portion of the discovery United has requested. The undue burden on Counter-

defendants of complying with United's requests is extreme, and it is not possible to go through the enormous volumes of documents to meet the discovery requests. *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 2007 U.S. Dist. LEXIS 7580, at \*2, 2007 WL 333987, at \*1 (D. Min. Feb. 1, 2007) (affirming magistrate judge's decision that ESI sought by plaintiff was not "reasonably accessible" because of undue burden and cost); *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 239 (S.D. Cal. 2015) (undue burden and cost renders information sought in discovery reasonably inaccessible).

While many documents may be discoverable, "in determining whether a [particular] discovery request is overly costly or burdensome in light of its benefits, ... [a] court ... [must] ... consider the necessity of discovery," *Crosby*, 647 F.3d at 258, "properly encouraged to weigh the expected benefits and burdens posed by particular discovery requests (electronic other otherwise)," *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir.2008); *see also S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (discussing both the old presumption and the courts' powers to grant protection against "undue burden and expense" by shifting costs of discovery to the requesting party as a condition of discovery). The balancing approach encoded in Rule 26(b)(2) thus applies regardless of a document's original medium, whether it is code or pulp.[4]

The discovery requests in this case are unduly burdensome. *United States v. Legal Svcs. for New York City*, 249 F.3d 1077, 1084 (D.C. Cir. 2001) (requests are deemed unduly burdensome where "compliance threaten[s] to unduly disrupt or seriously hinder

---

[4] Much of United's discovery requests are unnecessary to prosecute its Counterclaim. The documents in the government's control contain payroll, contract records, financial records, and hundreds of thousand, if not millions of items that are unrelated to this case. NexTech. NexTech contains most, but not all, of the patient records. Some patient records were not completely scanned into the NexTech system. All of these irrelevant documents must be examined to comply with discovery requests. The examination will be extremely time consuming and require an extensive amount of costs and resources. The nature of discovery in this case requires a Protective Order.

normal operations [of a business,]" or in this case, a small government agency). The documents in question are unavailable by their sheer volume. *Adair v. EQT Prod. Co.*, 2015 U.S. Dist. WL 505650, at *5 (W.D. Va. Feb. 6, 2015) ("defendants have advanced compelling arguments that the burden and expense of further discovery would not be justifiable."). A Protective Order shifting the cost of discovery is appropriate.

### 3. Most information is readily available from a convenient source

The improper nature of the Court ordering Ms. Dean to rummage through 1,200,000 documents belonging to non-parties, alone with 1,700 boxes and 100 terabytes of information in the possession of the US government is overwhelming in the undue burden it creates on Ms. Dean and Counter-defendants. *Bottoms v. Liberty Life Assurance Company of Boston*, 2011 WL 6181423, at *4 (D. Colo. Dec. 13, 2011) (Rule "places an obligation on the trial court to limit the frequency or extent of discovery otherwise permitted by Rule 26(b)(1) based on a balancing analysis" that is "written in mandatory terms."). United has most if not all of the patient information and the remaining patient information requested is readily available through the NexTech system upon the payment of reasonable expenses to Imperium Medical Services. Imperium will undertake the effort upon payment of reasonable expenses. Instead of doing that and fulfilling its obligations created under Rule 45 when United subpoenaed Imperium, United has asked the Court enforce an extreme burden on Ms. Dean who does not have the resources from her own firm or from the counter-defendants that she has been forced to ask this Court for leave to withdraw from the case.

Instead of entertaining the acrobatics of forcing Ms. Dean to go through inaccessible, disorganized, and massive boxes to obtain the materials United has requested, all that is required is that this Court 1) order that the Counter-defendants do not have disclose any documents and information already in United's custody and possession and 2) order payment of reasonable expenses where Counter-defendants will pay Imperium for the documents, which is the same payment United should make were Counter-defendants to do the NexTech search themselves. *Am. Auto. Ins. Co. v. Hawaii*

*Nut & Bolt, Inc.*, 2017 WL 80248, at *2 (D. Haw. Jan. 9, 2017) ("District courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)."). There is no basis to force the extreme burden on Ms. Dean and Counter-defendants in the face of the disproportional ease of obtaining the information with the payment of reasonable expenses or from a subpoena with reasonable expense payment. 8 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 2008.1 (3d ed.) ("In general, it seems that the proportionality provisions should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for counsel to undertake complex analysis.").

### B. The Court Should Require United to Pay Reasonable Expenses

#### 1. The cost of discovery compliance is undue and overwhelming

The costs and burden that United's discovery requests have placed on Ms. Dean and Counter-defendants cannot be reasonably justified, and it is essential that the Court order the costs and fees be shifted on to the requesting party. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("'Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C).'") (*quoting* Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009), and *citing Zeller v. S. Cent. Emergency Med. Servs*., 2014 WL 2094340, at *9 n. 6 (M.D. Pa. May 20, 2014); *Cochran v. Caldera Med., Inc*., 2014 U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014)). Ms. Dean cannot comply with the onerous and oppressive discovery requests United has made, and the undue burden it has created has forced Ms. Dean to request the Court relieve her as counsel rather than force her into a position of not being able to comply with the Court's orders. This is an appropriate case to shift the costs and fees of discovery because of United's extreme and unduly burdensome requests

Where the information sought in discovery creates an undue burden on the

responding party, not only is the material thereby reasonably inaccessible, but also shifting the cost of production to the requesting party has been considered appropriate. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 239–40 (S.D. Cal. 2015) (fee shifting appropriate where undue costs and burden exists); *Zubulake v. UBS Warburg, L.L.C.*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 477–78 (N.D. Cal.2003) (relying on *Zubulake*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003). To obtain this ESI at the other's expense, the requesting party must demonstrate need and relevance that outweigh the costs and burdens of retrieving and processing this provably inaccessible information. The Sedona Principles at 139; accord, *e.g., Wiginton v. CB Richard Ellis, Inc*., 229 F.R.D. 568, 577 (N.D. Ill.2004) (splitting costs, with plaintiffs responsible for 75% of the discovery cost of restoring the tapes, searching the data, and transferring it to an electronic data viewer); *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp*., 222 F.R.D. 594, 601 (E.D. Wis.2004) ("A number of district courts have recognized the unique burden of producing documents stored on backup tapes and, by invoking Rule 26(c) to fashion orders to protect parties from undue burden or expense, have conditioned production on payment by the requesting party."); *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001) ("The more likely it is that the backup tape contains information that is relevant to a claim or defense, the fairer it is that ... [the requested party] search at its own expense."). In fact, though rooted in case law, this approach is now compelled by Rule 26(b)(2)(B), which recognized a whole new category of discoverable ESI that is "not reasonably accessible because of undue burden or cost," Fed. R. Civ. P, Rule 26(b)(2)(B); *FTC v. Boehringer Ingelheim Pharm., Inc*., 898 F.Supp.2d 171, 174 (D.D.C.2012), and embraced the logic in *Zubulake* and *Rowe*, see Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendments ("Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible...."); *Baker v. Gerould*, 2008 WL 850236, at *2 (W.D.N.Y. Mar. 27, 2008) (construing Fed. R. Civ. P., Rule 16(b)(2), *Zubulake*, and *Rowe* together in elaborating a party's obligation to produce inaccessible data).

This is an appropriate case for the Court to Order fees and costs to be shifted on to United. *S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (courts have the power to grant protection against "undue burden and expense" by shifting costs of discovery to the requesting party as a condition of discovery).

### 2. Counter-defendant have satisfied the Rowe factors for fee shifting

Counter-defendants have presented unrebutted evidence that United's discovery requests seek information that will cost $1,750,000 to produce and already took Attorney Whitman and two (2) full-time assistants almost eight (8) months to produce. The patient information is readily available from the NexTech system with the payment of reasonable costs rather than the inappropriate exercise of forcing Ms. Dean to rummage through 1,200,000 million documents owned by non-parties, and 1,700 boxes containing millions of documents in the government's possession. Even with the use of the NexTech system, the cost of producing the documents United seeks is excessive, oppressive, and an undue burden which requires fee shifting where United should pay for the reasonable costs of its discovery requests. Further, United already has most if not all non-patient information as well from their third-party subpoenas.

In *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225 (S.D. Cal. 2015), the Court found that the eight (8) factors identified in *Rowe Entertainment, Inc. v. William Morris Agency, Inc*., 205 F.R.D. 421, 431 (S.D.N.Y.2002), are relevant for this shifting analysis: "(1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 238 (S.D. Cal. 2015), *citing Rowe*, 205 F.R.D. at 429).

The *Rowe* factors were refined in *Zubulake v. UBS Warburg, L.L.C.*, 217 F.R.D. 309, 322 (S.D.N.Y.2003), to expanded *Rowe's* fourth factor and evaluated production

costs in relation to the specific parties' resources rather than objectively or absolutely. The *Zubulake* Court noted that "of the handful of reported opinions that appl[ied] *Rowe* or some modification thereof, all of them have ordered the cost of discovery to be shifted to the requesting party." *Zubulake*, 217 F.R.D. at 320. This standard says nothing as to whether the ESI at issue is discoverable but rather seeks to apportion the costs for the production of ESI already discoverable under the language of Rule 26(b). In cases governed by this rule's pragmatism, therefore, upon the requesting party lies the burden of first showing the ESI's discoverability and then, depending on the circumstances, the requested party showing their physical inability for its recovery or production. Relevance remains the touchstone for discoverability, but it is not the sole determinant of the rightful cost bearer's identity.

An analysis of the eight (8) Rowe factors shows this is an appropriate case in which to shift on to United the undue burden of complying with its discovery requests.

### a. Rowe Factor No. 1 - United seeks excessive documents

The first Row factor is the specificity of the discovery request, and in this case United has engaged in an excessive request for documents. Many of the documents United seeks are already in United's possession.

Every time Counter-defendants submitted claims to United the claims were accompanied by the supporting medical records. United has played an improper game with this Court and counter-defendants of refusing to acknowledge that most, if not ***all***, of the medical records they have requested are already in their possession, custody, and control, and that the gamesmanship being played is an illegitimate attempt to seek excessive discovery.

In *Washington v. Essex*, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015), the Court stated:

> "Nor will the court order the defendant to produce documents that are equally accessible to plaintiff in his medical or central file. *See, e.g., Quezada v. Lindsey*, No. 1:10–cv–01402 AWI SAB (PC), 2014 WL 5500800 at *3 (E.D.Cal. Oct. 30, 2014) ("Since any ordinances and laws governing health and safety are public

documents, which are equally available to Plaintiff, Defendants cannot be compelled to produce them."); *Ford v. Wildey*, No. 1:10–cv–01024 LJO SAB (PC), 2014 WL 4354600 at *4 (E.D.Cal. Sept. 2, 2014) ("Defendant indicates that any such documents are located in his central file for which Plaintiff has equal access. This response complies with Rule 34 of the Federal Rules of Civil Procedure ...."); *Valenzuela v. Smith*, No. S 04–cv–0900 FCD DAD P, 2006 WL 403842 at *2 (E.D.Cal. Feb.16, 2006) (defendants will not be compelled to produce documents that are "equally available to plaintiff in his prison medical file or in the prison law library.").

Not only has United made no showing that that counter-defendants have control over the documents United seeks (and clearly counter-defendants do not, as the documents are in the custody and control of Imperium and the government).

United has also not indicated that they do not have access to the medical and billing records they seek. Every time a patient was billed, the medical records accompanied the billing, and United has every single patients' medical records in its possession. Under these circumstances, the court should not compel counter-defendants to produce further documents in response to these discovery requests.

United's RFP #1 requests an excel spreadsheet listing all claims, amounts received, date of service, CPT code, billed charge, provider's name, provider's tax id number and group plan, etc. United's Appendix I and Appendix II to the Third Amended Counterclaim (TACC) already includes an excel spreadsheet and includes all of this information other than payment. United already knows the payment information paid by United, therefore, the only issue remaining is how much the patient paid. United has the tax id numbers for each provider and there is no reason to provide this information again.

United's RFP #2 requests all documents for billing records, medical records, claim records, scheduling records, patient sign in logs, benefit coverage, request for authorization, patient assignments, correspondence, email, call recording and transcripts, settlement or compromises, etc. United has most, if not all, of this information in their possession. Prior to this Court forcing Counter-defendants to pay again to provide discovery that is already in United's possession, Counter-defendants request this Court

issue a protective order and require United to pay for this overly burdensome and request meant to harm and harass the counter-defendants.

Further, United has served subpoenas on numerous third-parties, including Banks, in this matter. Therefore, United's RPPs #14-16 and IROGs 4 request compensation and bank account information are overly burdensome and are already in United's possession and control. There is absolutely no just reason for counter-defendants to review 1700 boxes in the government's possession to produce to United without United compensating counter-defendants for doing so. Due to the government seizure, United has more bank account information from statements they received from serving these third-party subpoenas than the Counter-Defendants have. The majority of the incorrect boxes the government made available to Counter-defendants' attorney were numerous pages of bank account and bookkeeping records.

**b.** **Rowe Factor No. 2 - the information sought is non-critical**

United's request for information is an extreme fishing expedition having little to do with the issues of this case. *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982) ("[d]iscovery thus should be confined to developing facts underlying the plaintiffs claim or claims and not used as a 'fishing expedition ....'"). United's requests are an unreasonable invasion seeking financial information (Requests Nos. 13, 15, 16) from individuals which has nothing to do with this litigation. Courts have routinely denied access to personal financial records in civil discovery . . ." *Freese v. FDIC*, 837 F. Supp. 22, 24 (D.N.H. 1993), vacated as moot, 70 F.3d 1252 (1st Cir. 1994). *See American Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, 2017 WL 80248, at *7–8 (D. Haw. Jan. 9, 2017) (a company's financial information was not discoverable until requesting party has made a showing of entitlement to punitive damages). As one example, United's request for tax returns and 1099's for individuals is a useless fishing expedition because the tax returns will show nothing relevant to this litigation. *Jackson v. Unisys, Inc.*, 2009 U.S. Dist. LEXIS 121716, at *4-5 (E.D. Pa. Dec. 31, 2009) (court denied production of tax returns finding there was no showing of need for the returns or that any issue would be

determined by the contents of tax returns).   United's request for compensation to contractors is also a fishing expedition, unless United wants to include the indispensable parties, the physicians, into this lawsuit. Other requests re also clearly non-relevant and a fishing expedition and information sought by the government and not required for this civil litigation.

United's cloned piggy backed request for documents produced in government investigations (Request Nos. 17-18)  are not only irrelevant, but also a useless fishing expedition. *Midwest Gas Servs. Inc. v. Ind. Gas Co. Inc.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("Cloned discovery", requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial"); *id*. at *1 (S.D. Ind. Mar. 7, 2000) (if the requesting party is interested in the contents of the documents from a criminal investigation, it must "do [its] own work and request the information [it] seek[s] directly.").

In *Wollam v. Wright Medical Group, Inc*., 2011 WL 1899774, at *1 (D. Colo., 2011), the Court stated:

> "I agree with the many courts that have considered the question and have held that cloned discovery is not necessarily relevant and discoverable.  *See Chen v. AMPCO System Parking*, 2009 WL 2496729 * *2–3 (S.D.Calif. Aug.14, 2009) (denying motion to compel production of all discovery taken in state court cases without a sufficient showing of relevance); *Moore v. Morgan Stanley & Co., Inc*., 2008 WL 4681942 * *2, 5 (N.D.Ill. May 30, 2008)(holding that "[a] party's requested discovery must be tied to the particular claims at issue in the case" and that "just because the information was produced in another lawsuit ... does not mean that it should be produced in this lawsuit"); *Oklahoma v. Tyson Foods, Inc*., 2006 WL 2862216 * *1–2 (N.D.Okla.2006)(denying motion to compel production of documents made available "in a similar poultry waste pollution lawsuit previously brought in this Court" absent a showing of more than "surface similarities" between the cases); *Midwest Gas Services Inc. v. Indiana Gas Co., Inc.,* 2000 WL 760700 *1 (S.D.Ind. March 7, 2000 (in a private antitrust action, refusing to compel production of documents provided to the United States in response to a civil investigation demand absent a showing of relevance); and *Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C.1977)(stating that "[w]hether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit is far from clear" and that such a determination requires consideration of "the nature of the

claims, the time when the critical events in each case took place, and the precise involvement of the parties, among other considerations").

There is no utility, relevance, or relationship between United's cloned discovery request for irrelevant investigations and this case. The information which United seeks is non-critical. It also has little to no relevance in this case.

An examination of all of United's requests reveal the extreme fishing expedition and the undeniable fact that United has in its own possession all documents relating to patient billing, medical records, Forms 1500, and all information relating to patients. *Washington v. Essex*, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015) ("Nor will the court order the defendant to produce documents that are equally accessible to plaintiff in his medical or central file."). The following requests are not critical to this case in any manner: patient information, billing codes utilized , a spread sheet of patients who were billed to United, (Request No. 1); patient sign in logs, copies of Form CMS 1500 (Request No. 2); amounts paid by United (Request No. 3); organizational structure of counter-defendants (Request No. 4); contracts with attorneys and nurses (Request No. 5); corporate formation documents (Request No. 6); communications with attorneys and nurses (Request No. 7); independent contractor agreements (Request No. 8); communications with advertisers and budgets (Request No. 9); tax returns for individuals (Request No. 13); compensation to attorneys and nurses (Request No. 15); communications to financial institutions (Request No. 16); subpoenas form government authorities (Request No. 17); documents produced in a government investigation (Request no. 18); communications with Allergen (Request No. 19); documents intended to be relied upon at trial (Request No. 20).

### c. Rowe Factor No. 3 - information available from other sources

Not only does United have in its own possession, custody, and control all of the patient and billing information the Requests for Documents seeks, but most all of the patient specific records United seeks are available and accessible through the

computerized NexTech system owned and Imperium Medical Services. United has subpoenaed these records, but refuses to pay the reasonable costs for their production. United is engaged in an improper game which led the Court to force Counter-defendants to go through 1,200,000 documents, along with 1,700 boxes held by the government, when the NexTech system is equally accessible to the parties through the payments of reasonable expenses to Counter-defendants or to Imperium. *Washington v. Essex*, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015) (court will not require production of documents equally accessible to the requesting party).

### d. Rowe Factor No. 4 - purposes that data was maintained

Counter-defendants formerly maintained most, if not all of the records sought by United in the NexTech system. Attorney Brittany Whiteman and two (2) full time assistants printed out those records during an approximately eight (8) month period prior to April, 2014, to be utilized for this litigation. Those documents were seized by the government on June 4, 2014, and the government refuses to return them.

While the government has offered to let Counter-defendants' attorney, Ms. Dean, to inspect the records, it turned the inspection into a fiasco and has mandated she sign an unduly restrictive Protective Order. It is impossible for Ms. Dean to undertake this effort which will take at least eight (8) months full time and likely cost $1,750,000, which is the unrebutted testimony in this case. (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9). The attorney's time to review and examine the documents is also a reasonably compensable expense in this case. *In re General Instrument Corp. Securities*, 1999 WL 1072507, at *6 (N.D. Ill. Nov. 18, 1999).

### e. Rowe Factor No. 5 - relative benefit to obtaining the information

The relative benefits of obtaining the information weighs heavily for Counter-defendants. United's request for a spreadsheet of patients, their sign in logs, and CMS 1500 forms is irrelevant. (Requests Nos. 1 & 2). United has the information in its possession to make its own spreadsheet and United's spreadsheets attached to the TACC

have the majority, if not all, of the information United seeks. The request for the amount paid by United is improper because United already knows that amount. (Request No. 3).

This is a case involving United's claim for billing fraud. Contracts with attorneys and nurses (Request No. 5), and communications with attorneys and nurses (Request No. 7, have nothing to do with this case. *Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda*, LLC, 2007 WL 674893, at *2 (D.R.I. Mar. 1, 2007) (discovery may not be used as a fishing expedition to request irrelevant materials.

United's request No. 1 for a spread sheet requires Counter-defendants to create a document which is an improper request for a non-existent document. Request No. 2 seeks "all documents and communications relating to such claims" in Request No. 1. However, the overbroad request asks Counter-defendants to create a spreadsheet that does not now exist and then produce the work-product documents used to create it. *Benham v. Rice*, 238 F.R.D. 15, 19 (D.D.C. 2006) on reconsideration in part, 2007 WL 8042488 (D.D.C. Sept. 14, 2007)(request for "All documents relating to the incidents" is vague, overbroad, and no sufficient to warrant discovery; "All documents relating to employment decisions" is vague, overbroad, and not capable of a response)

The relative benefit of these useless documents weighs heavily for Counter - defendants. United's requests are overbroad and irrelevant. There is no basis for United to request all communications to financial institutions (Request No. 15, subpoenas form government authorities (Request No. 17), and irrelevant documents produced in government investigations (Request No. 18), all of which have nothing to do with this case. *Chen v. Hewlett-Packard Co.*, 2005 WL 1388016, at *1 (E.D. Pa. June 8, 2005) (interrogatory requesting "all communications . . . related to power supply problems" was "hopelessly over-broad"); *Pulsecard, Inc. v. Discover Card Servs., Inc*., 1995 WL 526533, at *4 (D. Kan. 1995) (interrogatory requesting all communications with persons from whom responding party received advice was overly broad on its face); *S.T. Hudson Int'l, Inc. v. Glennon*, 1988 WL 115808, at *1 (E.D. Pa. Oct. 28, 1988) (interrogatory seeking all communications with an individual was "overly broad").

###### f.    Rowe Factor No. 6 - the total cost associated with production

The costs associated with production weigh heavily in Counter-defendants' favor. The unrebutted testimony is that the government twice attempt to review, catalogue, and organize the seized documents with two (2) contractors for $3,450,00, and was unable to do so.  It will cost $1,750,000 to undertake the same review pursuant to the United Requests.  (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9).

The unrebutted testimony in this case is that Ms. Dean has no ability to review the 1,200,000 documents belonging to non-parties or to review 1700 boxes and terabytes upon terabytes of information without additional assistance and resources, which the counter-defendants are unable to provide.  Attorney Whitman expended almost (8) months with two (2) full time assistants to print out, catalogue, and organize the NexTech documents relating to United.  The cost of such an effort is enormous.  Given the fact that each of the Counter-defendants are out of business and have no ability to undertake such a review, United's requests constitute an extreme physical and financial burden which cannot be fulfilled. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (where discovery requests are unduly burdensome the Court should shift the costs of compliance).

###### g.    Rowe Factor No. 7 - ability of each party to control costs

United is engaged in an unmitigated fishing expedition of irrelevant and improper requests such as creating a spreadsheet of all patients who were United related and then producing any possible document relating to that spreadsheet. *Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda, LLC*, 2007 WL 674893, at *2 (D.R.I. Mar. 1, 2007) ("If this Court permitted discovery on this flimsy showing, then [Counter-claimants] would be entitled to limitless discovery regarding communications between [defendants] and any past or current business associate. Such a fishing expedition is not permitted under Fed. R. Civ. P. 26(b)(1)."). United has the exclusive ability to control the costs because its requests are overbroad and useless.  United seeks to impose unreasonable costs on Counter-defendants which they cannot possibly meet, and a protective Order to prevent

such an abuse is essential.

**h.     Rowe Factor No. 8 - resources available to each party**

Each of the Counter-defendants' companies are out of business and have no employees.  United has spent unlimited money on specious claims that they have no truth or validity to them.  United claims that its insurance policies never covered the LapBand, yet Counter-defendants have produced four (4) samples of United approving LapBand surgery for its members, and those samples are among dozens upon dozens of additional approvals in United's possession. (Dean 10-16-17 Dec., Dkt 559-2).

Each of the Counter-defendants' companies are out of business and have no employees.  United is a multi-billion dollar business, whose stock has soared approximately 40% in the last year, that has spent unlimited money on specious claims which have no truth or validity.  United claims involve the assertion that its insurance policies never covered the LapBand, and yet Counter-defendants have produced four (4) samples of United approving LapBand surgery for United members, and those samples are among dozens upon dozens of additional approvals in United's possession. (Dean 10-16-17 Dec., Dkt 559-2).  The disparity of resources and overwhelming burden of United's discovery requests require a Protective Order requiring United to pay reasonable costs to Counter-defendants.  *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1058 (S.D. Cal. 1999) (party requesting unduly burdensome  and expensive information should pay the responding party's costs of production of such information).

## III.     CONCLUSION

For the foregoing reasons, Counter-defendants request their Motion for Protective Order be granted.

*Respectfully Submitted*,

this 9th day of February, 2017          *By*:  **s/ *Kamille Dean***

_____

KAMILLE DEAN, ESQ. *for*

**LAW OFFICES OF
KAMILLE DEAN**

# PROOF OF SERVICE

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On February 8, 2018, I served the documents described as:

**COUNTERCLAIM DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

upon the interested parties in this action as follows:

_____x_____ (By ECF) The foregoing document was served via the ECF of the Court.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 8, 2018 at Los Angeles, California.


/s/ Kamille Dean
_____
KAMILLE DEAN ESQ.

**BRYAN WESTERFELD (S.B. # 218253)**
bwesterfeld@calemployerlaw.com
**NICOLE E. WURSCHER (S.B # 245879)**
nwurscher@calemployerlaw.com
**WALRAVEN & WESTERFELD LLP**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Telephone: (949) 215-1997
Facsimile: (949) 215-1999

**TIMOTHY BRANSON (MN ID #174713)**
branson.tim@dorsey.com
**MICHELLE S. GRANT (MN ID #0311170)**
grant.michelle@dorsey.com
**MICHAEL ROWE (MN ID #0392598)**
rowe.michael@dorsey.com
*Admitted pro hac vice*
**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Attorneys for Counterclaim Plaintiffs
United Healthcare Services, Inc.; UnitedHealthcare
Insurance Company; and OptumInsight, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, *et al.*,<br><br>Defendants.<br>_____<br>UNITED HEALTHCARE SERVICES, INC., *et al.*,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC, *et al.*,<br><br>Counterclaim Defendants. | Case No 2:14-cv-03053-MWF(AFMx)<br><br>**UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND COST SHIFTING**<br><br>Magistrate Judge MacKinnon<br><br>Hearing:<br>Date: March 13, 2018<br>Time: 10:00 a.m.<br>Courtroom: #780<br><br>Discovery Cut-off: Sept. 14, 2018<br>Pretrial Conference: Jan. 7, 2019<br>Trial Date: Jan. 29, 2019 |

# TABLE OF CONTENTS

BACKGROUND ........................................................................................ 1

ARGUMENT ........................................................................................... 3

I.    Counterclaim Defendants' Motion Violates Local Rule 37 ........................... 3

II.   Counterclaim Defendants Waived Their Objections To United's First
      Set Of Discovery .................................................................................. 4

III.  Counterclaim Defendants Fail To Establish Any Basis For Cost
      Shifting .................................................................................................. 4

      A.    United's Document Requests Are Not Unduly Burdensome ............... 5

      B.    Shifting Counterclaim Defendants' Discovery Costs To United
            Is Improper .................................................................................. 7

            1.    United's Document Requests Are Relevant ........................... 10

            2.    The Documents Requested Are Not Available From Other
                  Sources .......................................................................... 11

            3.    The Amount In Controversy Dwarfs The Cost Of
                  Production ...................................................................... 12

            4.    There Is No Competent Evidence Establishing
                  Counterclaim Defendants' Financial Resources ................... 14

            5.    United Has Attempted To Control Discovery Costs .............. 15

            6.    The Issues At Stake For Patients And Health Plans Favors
                  Production ...................................................................... 16

            7.    According To Counterclaim Defendants, Any Document
                  Production Will Support Their Defenses ............................ 17

      C.    As A Last Resort, This Court Should Compel Counterclaim
            Defendants To Execute A Fed. R. Evid. 502(d) Agreement .............. 17

CONCLUSION ....................................................................................... 17

UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adair v. EQT Prod. Co.*,
2012 U.S. Dist. LEXIS 90250 (D. W. Va. June 29, 2012) .................................. 14

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp., DDR GLH, LLC.*,
2007 U.S. Dist. LEXIS 7580 (D. Minn. Feb. 1, 2007)........................................ 9

*United States ex rel. Carter v. Bridgepoint Educ., Inc.*,
305 F.R.D. 225 (S.D. Cal. 2015).................................................................. 6, 9, 10

*Cochran v. Caldera Med., Inc.*,
2014 U.S. Dist. LEXIS 55447 (E.D. Pa. Apr. 22, 2014) ......................... 8, 14, 15

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
898 F. Supp. 2d 171 (D.D.C. 2012) ........................................................ 9

*United States ex rel. Guardiola v. Renown Health*,
2015 U.S. Dist. LEXIS 112511 (D. Nev. Aug. 25, 2015)............................... 8, 12

*McPeek v. Ashcroft*,
202 F.R.D. 31 (D.D.C. 2001) ................................................................. 9

*Medina v. Cnty. of San Diego*,
2014 U.S. Dist. LEXIS 135672 (S.D. Cal. Sept. 25, 2014) ................................ 4

*Oppenheimer Fund v. Sanders*,
437 U.S. 340 (1978) ................................................................................. 9

*Peskoff v. Faber*,
244 F.R.D. 54 (D.D.C. 2007) ................................................................... 8

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.*,
205 F.R.D. 421 (S.D.N.Y. 2002).............................................................. 9

*Wiginton v. CB Richard Ellis, Inc.*,
229 F.R.D. 568 (N.D. Ill. 2004) ............................................................. 9

*Zeller v. S. Cent. Emergency Med. Servs.*,
2014 U.S. Dist. LEXIS 68940 (M.D. Pa. May 20, 2014) ..................................... 8

*Zubulake v. UBS Warburg LLC*,
    216 F.R.D. 280 (S.D.N.Y. 2003)..................................................................... 8, 13, 16

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003)............................................................. 5, 9, 10, 17

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2009 U.S. Dist. LEXIS 47636 (D. Minn. June 5, 2009) ...................................... 13

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 7

Fed. R. Civ. P. 45..................................................................................................... 12

Fed. R. Evid. 502(b) ................................................................................................ 17

L.R. 37 ......................................................................................................... 1, 3, 4, 18

Evidently unsatisfied with a nearly year-old opinion compelling the review and production of documents in response to Counterclaim Plaintiffs United Healthcare Services, Inc.'s, UnitedHealthcare Insurance Company's, and OptumInsight, Inc.'s (collectively "United") First Set of Discovery—discovery that itself is more than three years old—Counterclaim Defendants belatedly seek a protective order shifting the expense of complying with that Order onto United. In so doing, Counterclaim Defendants failed to meet-and-confer, failed to comply with L.R. 37, and ignored this Court's previous decision finding that they waived any objections to United's First Set of Discovery. Counterclaim Defendants' ill-timed motion is just a distraction from the real issue: their failure to produce a *single document* in the eleven months since this Court ordered them to do so. This Court should deny Counterclaim Defendants' motion, and award United its costs and fees for opposing this frivolous motion.

## BACKGROUND

The history of Counterclaim Defendants' ongoing refusal to engage in discovery has been well-chronicled. *See, e.g.*, Dkts. 441; 448; 462; 472; 481; 504; 516; 544; 549; 573. In short, on October 10, 2014, United served its First Set of Discovery, and Counterclaim Defendants responded on December 10, 2014. In April and May 2015, Counterclaim Defendants produced an initial batch of approximately 3,900 pages of records. Following these productions, Counterclaim Defendants promised to produce additional documents. Notably, the productions and promises to produce additional documents were made more than nine months *after* the government executed its search and seizure warrant against certain Counterclaim Defendants and nearly a year *after* Counterclaim Defendant Surgery Center Management, LLC ("SCM") purportedly assigned the NexTech software license to a related non-party.

Following another eighteen months of attorney changes and broken promises regarding further document productions, United moved to compel. Dkt. 441. In

response, on February 28, 2017, Mark Jubelt, then-counsel to Counterclaim Defendants, filed a declaration stating that he is unable to (i) produce documents because he cannot "ascertain the identity of the documents seized by the government," and the "high turnover rate" among Counterclaim Defendants' staff complicated the document collection; or (ii) respond to interrogatories because he cannot locate relevant files and key employees are unwilling to help. Dkt. 448. Counterclaim Defendants did not otherwise oppose United's motion. On March 22, 2017, this Court found that Counterclaim Defendants had waived any previously asserted objections to United's First Set of Discovery, and ordered Counterclaim Defendants "to promptly review and produce all responsive documents and to prepare and serve substantive interrogatory answers as sought by the motion." Dkt. 462. Since this Court's Order granting United's motion to compel nearly a year ago, Counterclaim Defendants have failed to produce one document and Counterclaim Defendants have been sanctioned for failing to comply with the Court's March 22, 2017 Order. Dkts. 573, 753.

After months of excuses, delays, and deflections, on August 21, 2017, Counterclaim Defendants finally committed to searching for, reviewing, and producing documents from one of four relevant locations: (i) former attorney files; (ii) NexTech; (iii) other electronic files; and (iv) "litigation binders." Dkt. 504 at 2. Although Counterclaim Defendants acknowledged that discovery will be "time consuming," they did not object to producing documents from these sources. *Id.* On the verge of finally complying with the Court's Order, Mr. Jubelt unexpectedly moved to withdraw two weeks later. Dkt. 518. Despite promises to produce responsive documents spanning several iterations of counsel, on October 7, 2017— after more than three years of litigation—Counterclaim Defendants represented for the first time that SCM had assigned the NexTech software license to what it asserted was an unrelated third party in 2014, and thus, they were unable to comply with the Court's March 22, 2017, Order compelling production of patient records.

*See* Dkt. 544. And in another first, during a November 29, 2017, discovery conference with the Court, the government stated that SCM had previously produced 300,000 documents (consisting of 1.2 million pages) to the government when it was represented by Sheppard Mullin. Nov. 29, 2017 Tr. 52:18-54:17; Dkt. 663, ¶ 4.

Counterclaim Defendants' explanations regarding the location of responsive documents have shifted dramatically in the three years of discovery, but it appears they now concede that responsive documents are located in at least these three places: (i) NexTech; (ii) government-seized documents and data; and (iii) SCM's 1.2 million-page document production to the government. Although Counterclaim Defendants have not produced a single document in almost three years, they now effectively claim that discovery is too hard. Aside from long-ago waiving such an objection, their complaint is without legal basis.[1]

## ARGUMENT

## I. COUNTERCLAIM DEFENDANTS' MOTION VIOLATES LOCAL RULE 37

Rather than proceed with a joint-stipulation as required under Local Rule 37 for any discovery-related motion, Counterclaim Defendants bring this standalone discovery motion. This is improper, and notably, not the first time Counterclaim Defendants have failed to comply with Local Rule 37. *See* Dkts. 254; 573 at 2. In addition, and despite their claims to the contrary, counsel for Counterclaim Defendants *did not* meet-and-confer with United regarding this anticipated motion for a protective order.[2] *See* L.R. 37-1. Counterclaim Defendants also failed to

---

[1] Kamille Dean also threatens to withdraw if this Court denies Counterclaim Defendants' motion for cost shifting. Dkt. 758 at 1. Because Ms. Dean filed a separate motion to withdraw, Dkt. 757, United will respond to that motion within the time permitted by the Local Rules.

[2] Without elaborating, Kamille Dean's declaration vaguely claims only that she "met and conferred with United's attorney . . . at least a dozen times in the past 60 days regarding my demand that United pay reasonable costs for United's discovery

serve on United a letter "identify[ing] each issue and/or discovery request in dispute." L.R. 37-1. Nor have Counterclaim Defendants at any time in the last two years—either before or after the Court's order granting the motion to compel—met and conferred with United to substantively discuss the actual document requests at issue, the scope, burden, prioritization, or potentially narrowing of the requests. Rather, Counterclaim Defendants have repeatedly asserted only vague complaints regarding scope and burden to justify their position of categorically refusing to produce *any* documents.

## II. COUNTERCLAIM DEFENDANTS WAIVED THEIR OBJECTIONS TO UNITED'S FIRST SET OF DISCOVERY

Nearly one year ago, this Court found that Counterclaim Defendants waived any objections to United's First Set of Discovery because they "fail[ed] to assert or discuss specific objections to specific United discovery requests (other than possibly privilege)." Dkt. 462. This includes any objections that Counterclaim Defendants now bring, including their claims that (i) NexTech records are inaccessible, Dkt. 758 at 10; (ii) the government has made reviewing seized documents too onerous, *id.*; and (iii) the 1.2 million pages previously produced to the government are too voluminous to review, *id.* at 5. All of these objections could and should have been asserted during meet-and-confers prior to United brining its motion to compel or, at the very least, in opposition to United's motion to compel. *See Medina v. Cnty. of San Diego*, 2014 U.S. Dist. LEXIS 135672, at *42 (S.D. Cal. Sept. 25, 2014) ("If a party fails to continue to assert an objection in opposition to a motion to compel, courts deem the objection waived.").

## III. COUNTERCLAIM DEFENDANTS FAIL TO ESTABLISH ANY BASIS FOR COST SHIFTING

Even had Counterclaim Defendants preserved their burden objection, they are still not entitled to cost shifting. At the threshold, United's requests are not

---

request." Dkt. 758, Dean Decl., ¶ 23. This is untrue.

2:14-CV-03053-MWF (AFMx)

UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

unduly burdensome, and even if there was some conceivable burden—stated in an objection not previously waived—the seven-factor cost-shifting test outlined in *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003), demands that Counterclaim Defendants incur their own expenses.

## A.    United's Document Requests Are Not Unduly Burdensome

Counterclaim Defendants principally claim that any document review and production is "physically and financially impossible" apparently due to various government restrictions on their review of seized documents and the volume of documents otherwise in their possession, custody, and control.[3]  Dkt. 758 at 1-2. Both contentions are meritless.

First, one attorney for Counterclaim Defendants spent just three-and-a-half hours performing the initial review of the government-seized materials, *see* Dkt. 758-1, ¶ 10, hardly enough time to definitively conclude that any further review is "impossible."  Counterclaim Defendants also fail to address Brian Oxman's or Maureen Jaroscak's availability to assist with the document review and production, or the other attorneys who are still listed on the docket as "lead attorney," including Imre Ilyes, Robert Rice, Roger Diamond,[4] Ryan Kashfian, and Robert Kashfian. Moreover, Counterclaim Defendants cannot be heard to complain about any government-imposed restrictions regarding the review of seized documents when those restrictions are effectively self-imposed.  Apparently, Counterclaim Defendants are permitted to take notes and photographs regarding patient information identified on the seized documents as long as they execute a protective order with the government—something they have failed to do.  Dkt. 744 at 3-4.  In

---

[3] United disagrees that Counterclaim Defendants do not have possession, custody, or control of NexTech, but because this Court is currently considering the evidence presented regarding this issue, it does not address that issue here.

[4] On February 16, 2018, a week after Counterclaim Defendants filed this Motion, Roger Diamond moved to withdraw.  Dkt. 764.

addition, they have no basis to complain about the presence of an FDA agent during their review of the seized documents when that agent's presence is required to ensure an adequate chain of custody should any of this evidence be needed in a subsequent trial. *See* Dkt. 674 (requiring the presence of a monitor "to ensure the integrity of the materials"). Finally, any disarray in which the seized documents are kept is apparently a function of how they were maintained at the locations from which they were seized. Dkt. 744 at 3. Ultimately, Counterclaim Defendants appear to claim that their review of the seized documents is too hard. That is not enough. *See United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 238 (S.D. Cal. 2015) ("Thus, 'it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary.'" (citation omitted)).

Second, without any elaboration or details in the supporting attorney declaration, Counterclaim Defendants claim that "[i]t is not physically possible" to review the 1.2 million pages they previously produced to the government. Dkt. 758 at 5. But notably, Counterclaim Defendants never describe whether they have actually attempted to review *any* of these documents that are unquestionably accessible and in their possession. Nor do they describe whether they attempted to use search terms to narrow the population of potentially responsive documents. They have also repeatedly failed to meet and confer with United regarding any search-term protocol.

Third, any claim that Counterclaim Defendants do not have the financial resources to engage in civil discovery is belied by their conduct in this litigation. As has now been evident since their affirmative claims were dismissed in May 2016, Counterclaim Defendants are always willing to spend time and resources in support of a motion perceived to *benefit* their litigation position.[5] For example,

---

[5] Counterclaim Defendants admitted as much in opposing United's motion for sanctions, saying it would be reasonable to engage in discovery for a "willing

they recently filed seven motions (totaling nearly 125 pages) to dismiss the Third Amended Counterclaim, containing nearly identical arguments that Judge Fitzgerald already rejected. *See* Dkts. 705-08, 710, 712, 728. Similarly, on January 29, 2018, Counterclaim Defendants filed 100 pages of "objections" to United's proposed Findings of Fact regarding the Imperium/NexTech issue even though this Court never authorized or called for such objections. Dkts. 733-36. They then filed an *ex parte* motion for leave to file those same objections. Dkt. 747. In sum, Counterclaim Defendants have filed hundreds of pages of briefing on issues of questionable merit all while they have failed to produce a single document.[6]

Finally, Counterclaim Defendants continue to ignore United's repeated offers to prioritize patients or the types of documents it seeks. United has always been and remains willing to meet and confer with Counterclaim Defendants regarding the scope of production and to prioritize certain records and/or patients. *See* Dkt. 441-2 at 20-21; Dkt. 604 at 12 n.16. Counterclaim Defendants' complete refusal to engage in any meaningful meet-and-confer process on discovery issues is alone a basis for denying their motion.

**B.    Shifting Counterclaim Defendants' Discovery Costs To United Is Improper**

Without a viable burden objection, Counterclaim Defendants' motion for cost

---

litigant with funds desiring to advance its *own* claims," but it should not bear the expense when "this discovery strictly relates to United's Counterclaims." Dkt. 544 at 3 (emphasis added).

[6] Other examples include twice seeking to recuse Judge Fitzgerald (Dkts. 256; 423); multiple motions to reconsider the Court's Order dismissing Plaintiffs' claims (Dkts. 349; 398; 401; 405); multiple motions to stay discovery (Dkts. 102; 390; 437; 561); multiple motions in limine regarding a pre-trial evidentiary hearing (Dkts. 615; 661); multiple "objections" or sur-replies that the court never requested (Dkts. 555-60; 562; 600; 640); and multiple, frivolous appeals to the Ninth Circuit on non-appealable orders (Dkts. 321; 359; 433; 633). And as one recent example illustrates, Counterclaim Defendants immediately marshal the necessary resources when they perceive a benefit to their litigation position. *See* Dkt. 684 (filing a 21-page opposition less than 24 hours after United's *ex parte* application to stay a Rule 30(b)(6) deposition—a motion this Court granted).

shifting necessarily fails.  But even if Counterclaim Defendants could demonstrate that United's requests were somewhat burdensome, there is still no support to shift their discovery costs to United.  First, Counterclaim Defendants never explain what "costs" they want shifted—only vaguely referring to attorney fees for review of the documents.  But, such fees are not appropriate for cost-shifting.  *See, e.g.*, *United States ex rel. Guardiola v. Renown Health*, 2015 U.S. Dist. LEXIS 112511, at *10 (D. Nev. Aug. 25, 2015) ("[W]here cost-shifting is appropriate, only the costs of restoration and searching should be shifted.") (quoting *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003)); *Cochran v. Caldera Med., Inc.*, 2014 U.S. Dist. LEXIS 55447, at *6-7 (E.D. Pa. Apr. 22, 2014) (Costs "attributable to retrieving accessible data, or to time reviewing the documents for privilege materials [are] tasks . . . typically not subject to cost sharing.").

Second, Counterclaim Defendants appear to argue that because responsive documents are practically impossible to review, they must be "inaccessible," and if the documents are inaccessible, United must bear the cost of the retrieval, review, and production of such documents.  Dkt. 758 at 11-12.  But, inaccessibility is almost always considered when one party seeks costs related to the restoration of archived back-up tapes containing electronically stored information ("ESI").  And many courts have found that the cost-shifting analysis does not apply to accessible data.  *See, e.g.*, *Zubulake II*, 216 F.R.D. at 284 ("It is worth emphasizing *again* that cost-shifting is potentially appropriate *only when* inaccessible data is sought.  When a discovery request seeks accessible data—for example, active on-line or near-line data—it is typically inappropriate to consider cost-shifting.") (emphasis added); *see also Zeller v. S. Cent. Emergency Med. Servs.*, 2014 U.S. Dist. LEXIS 68940, at *24-25 (M.D. Pa. May 20, 2014) ("[C]ost-shifting does not even become a possibility unless there is first a showing of inaccessibility." (quoting *Peskoff v. Faber*, 244 F.R.D. 54, 62 (D.D.C. 2007))).  Counterclaim Defendants ignore that distinction, and rely almost exclusively on inapposite authority that focuses on

inaccessible back-up tapes. *See, e.g.*, *Best Buy Stores, L.P. v. Developers Diversified Realty Corp., DDR GLH, LLC.*, 2007 U.S. Dist. LEXIS 7580, at *2-3 (D. Minn. Feb. 1, 2007) (*denying* party's request to modify the date of production of back-up tapes); *Bridgepoint Educ., Inc*., 305 F.R.D. at 234 ("[D]isaster recovery backup tapes . . . are generally considered inaccessible." (citation omitted)); *see also FTC v. Boehringer Ingelheim Pharm., Inc.,* 898 F. Supp. 2d 171, 173 (D.D.C. 2012); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004); *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001). But there is no similar argument here, and instead, Counterclaim Defendants concede that potentially responsive documents are located on a hard drive previously maintained by Sheppard Mullin, within hardcopy and electronically stored documents seized by the government, or in NexTech.

With no inaccessible back-up tapes at issue, Counterclaim Defendants are left to argue that the multi-part test for inaccessible ESI should apply to the undoubtedly accessible documents previously produced by Sheppard Mullin or seized by the government.[7] When courts address inaccessible ESI, they examine the following factors to determine whether costs should be shifted to the requesting party:

> (1) [t]he extent to which the request is specifically tailored to discover relevant information; (2) [t]he availability of such information from other sources; (3) [t]he total costs of production, compared to the amount in controversy; (4) [t]he total costs of production, compared to the resources available to each party; (5) [t]he relative ability of each party to control costs and its incentive to do so; (6) [t]he importance of the issues at stake in the litigation; and (7) [t]he relative benefits to the parties of obtaining the information.

---

[7] Rather than rely on the seven-part test outlined in *Zubulake I*, Counterclaim Defendants instead cite to *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D.N.Y. 2002), a case that has been roundly criticized for ignoring the presumption that discovery costs should be borne by the responding party. *See Zubulake I*, 217 F.R.D. 309, 316, 320 (S.D.N.Y. 2003) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 358 (1978) ("[T]he responding party must bear the expense of complying with discovery requests.")).

*Bridgepoint Educ.*, 305 F.R.D. at 242 (citing *Zubulake I*, 217 F.R.D. at 322. Importantly, these factors are not weighted equally, but instead are listed in the order of importance, with "[t]he first two factors—comprising the marginal utility test—[as] the most important." *Zubulake I*, 217 F.R.D. at 323. Even if such test was appropriate here, Counterclaim Defendants' request for United to pay their attorney fees in responding to discovery should be denied.

### 1. United's Document Requests Are Relevant

United's First Set of Discovery requests are undeniably relevant and narrowly tailored, and Counterclaim Defendants have waived any such objections. Among others, United requested patient-centric documents such as Patient Notes, Claims History, or insurance-verification forms, among other patient and billing records. Such documents are critical to United's fraud, UCL, conversion, and tortious-interference claims regarding Counterclaim Defendants' systematic waiver of Member Responsibility Amounts and the lies they told patients about the scope of that patient's insurance coverage. In the nearly four years of litigation, Counterclaim Defendants have *never* produced a single, complete set of Patient Notes despite the outsized relevance such documents have to United's claims. *See* Dkt. 531, ¶ 125. United also requested documents regarding their corporate structure, management, or ownership as such information is plainly relevant to United's alter-ego and conspiracy claims. As one final example, United requested bank statements, cancelled checks, tax returns, and other relevant financial information, none of which has been produced. As Judge Fitzgerald has already found, any suggestion that Counterclaim Defendants' financial records are irrelevant to United's counterclaim "is obviously wrong and borders on the frivolous . . . no matter how many times it is repeated." *See* Dkt. 364 at 7.[8]

---

[8] Contrary to Counterclaim Defendants' assertion, tax returns may show, among other things, ownership information, financial data, or banking information, and their relevance is all the more important because of Counterclaim Defendants'

Although Counterclaim Defendants long ago waived any relevancy objection, they continue to erroneously claim that United "has most, if not all, of the requested information in its own possession and control." Dkt. 758 at 7. This is objectively false. To begin, Counterclaim Defendants have never submitted to United—in the normal course of business or otherwise—any copies of NexTech Patient Notes, Claims History, or insurance-verification forms.[9] Nor have Counterclaim Defendants produced any corporate records establishing the ownership, management, and control of Counterclaim Defendants, and instead, have consistently and deliberately hid the interrelationships between Counterclaim Defendants and various related entities. And although United has made some independent progress in identifying Omidi-related bank accounts, significant work remains, and indeed, Counterclaim Defendants have never produced a complete list of bank accounts, or even a single bank statement or cancelled check.[10]

### 2. The Documents Requested Are Not Available From Other Sources

Counterclaim Defendants argue that certain requested documents are available from NexTech, which in their mind is a more convenient source of information. Dkt. 758 at 25.[11] But this appears to be nothing more than a ploy to

---

refusal to produce any other documents.

[9] Contrast this failure to the speed with which Counterclaim Defendants assembled four excerpted Patient Notes to oppose the Dr. Marvin Perer declaration. *See* Dkt. 559. Notably, Counterclaim Defendants have never produced these Patient Notes excerpts during discovery, nor have they explained from where these documents were located. United demands that Counterclaim Defendants review this unnamed cache of documents responsive to its First Set of Discovery.

[10] Shockingly, Counterclaim Defendants' Motion states that "[t]he majority of the [seized documents] the government made available to Counter-defendants' attorney were numerous pages of bank account and bookkeeping records." Dkt. 758 at 19. These documents are responsive to United's discovery requests, were plainly accessible to Counterclaim Defendants, and yet no production has been forthcoming despite this Court's March 22, 2017 Order demanding production, *see* Dkt. 462.

[11] Counterclaim Defendants contradict themselves by stating on the one hand that

UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

extract compensation for reviewing and producing documents that would have been unquestionably in the possession, custody, and control of Counterclaim Defendants *but for* the improper NexTech assignment that occurred after this litigation began. To shift costs on this basis, or to otherwise require United to compensate Imperium, a party that by all accounts is an alter ego of Counterclaim Defendants, would embolden future fraudsters to move documents to a related non-party for the sole purpose of obtaining compensation under Fed. R. Civ. P. 45. In any event, this argument is premature pending the Court's ruling on the NexTech/Imperium issue.

Counterclaim Defendants also ignore the many requested documents not contained in NexTech, including records regarding corporate ownership and control, tax returns, banking documents such as account statements and cancelled checks, contracts between Counterclaim Defendants, and co-conspirator communications. Counterclaim Defendants have made no attempt to argue that these documents are available from other sources, and thus, this factor weighs strongly against cost shifting.

### 3. The Amount In Controversy Dwarfs The Cost Of Production

United's counterclaim seeks approximately $40 million in damages. On the other hand, Counterclaim Defendants have provided no credible evidence of any costs for review other than fees for attorney time. But, such fees are inappropriate for cost-shifting. *See, e.g.*, *United States ex rel. Guardiola v. Renown Health*, 2015 U.S. Dist. LEXIS 112511, at *10 (D. Nev. Aug. 25, 2015) ("[W]here cost-shifting

---

"[t]he sheer volume of information in the NexTech system renders it inaccessible" and on the other that "[t]he patient information is readily available from the NexTech system . . . ." Dkt 758 at 11 and 16. Either way, Counterclaim Defendants also repeatedly assert that attorney Brittany Whitman spent months printing documents from NexTech consisting of "all documents involved in this case," and that such documents were organized in notebooks and were part of the records seized from the government. As such, these organized records are among the 1,700 boxes and should be readily found. Yet, Counterclaim Defendants have made no indication that they have ever attempted to request these records from the government to review for production.

UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

is appropriate, only the costs of restoration and searching should be shifted.") (quoting *Zubulake II*, 216 F.R.D. at 290). In any event, Counterclaim Defendants fail to provide *any* substantiating evidence regarding even attorney-review time. They vaguely state without support that "United's requests involve hundreds of thousands if not millions of documents," Dkt. 758, Dean Decl. at ¶ 16. They also fail to provide any information regarding reasonable attempts to search or cull the documents for review, as is standard in civil discovery.

Counterclaim Defendants' only effort to establish the cost of review is by reference to two instances in which the government attempted "to review, catalogue, and organize the seized documents," which reportedly cost $3,450,000. Dkt. 758 at 24. But statements from Counterclaim Defendants' counsel are inadequate to establish the cost of review. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 47636, at *6 (D. Minn. June 5, 2009) (holding that an affidavit by an attorney, who was not an expert in document search and retrieval, was not compelling evidence that a search would be burdensome on the producing party). Nor can Counterclaim Defendants rely on the invoices that purportedly establish this expense because those were submitted *in camera* and, thus, are unavailable for United to review and assess. Even if this amount was reasonable—or the $1,750,000 they alternatively suggest—Counterclaim Defendants never explain the purpose of the government's review, and whether it in any way is similar to the review to be performed by Counterclaim Defendants for purposes of civil discovery. In addition, to the extent those documents overlap with the documents at issue in this case, it appears that counsel already reviewed those documents for privilege, and thus there is no need for further review. In any event, even assuming all of Counterclaim Defendants' assertions are true, the amount in controversy still dwarfs any claimed amount of attorney fees to review the documents at issue.

Counterclaim Defendants also continue to ignore and avoid ways to reduce

2:14-CV-03053-MWF (AFMx)

UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Joint Stipulation Page 60

any purported costs of reviewing and producing documents. Both the Court and United have repeatedly suggested that Counterclaim Defendants could reduce the burden and expense of discovery by entering into a clawback agreement, producing the documents believed to be relevant to United, or providing United access to review with a clawback provision for any document that may be protected by the attorney-client privilege. *See, e.g.*, Dkt. 462 at 1; Dkt. 516 at 8. If Counterclaim Defendants refuse to do so, that is their choice, but then the costs and fees for such review should not be borne by United and their motion for "cost-shifting" should be denied. *See Adair v. EQT Prod. Co.*, 2012 U.S. Dist. LEXIS 90250, at *13-14 (D. W. Va. June 29, 2012) ("[C]ost-shifting [is] unnecessary in this case because those costs could be mitigated by the use of electronic searching and production, together with the protections of the Protective and Clawback Order.").

### 4. There Is No Competent Evidence Establishing Counterclaim Defendants' Financial Resources

Despite never filing for bankruptcy, the corporate Counterclaim Defendants all claim they are out of business, and thus they do not have the financial resources to engage in civil discovery. But they have never provided any competent evidence establishing their financial resources, and in fact, they have never produced a single bank statement, cancelled check, tax return, or other financial record despite this Court's order compelling them to do so, Dkt. 462. Such self-serving representations are insufficient to demonstrate the need for cost shifting. *See Cochran v. Caldera Med., Inc.*, 2014 U.S. Dist. LEXIS 55447, at *6. Instead, and based on their prodigious briefing in this case and others,[12] the only cogent inference is that Counterclaim Defendants have the necessary resources to defend themselves in this case, including their participation in civil discovery. Counterclaim Defendants' representations about their financial resources are also

---

[12] *See, e.g.*, *Valley Surgical Center, LLC v. Cnty of Los Angeles, et al.*, No. 13-cv-2265 (C.D. Cal.)

curiously silent about the individual Counterclaim Defendants' financial resources. They are named parties in this case for their individual wrongdoing and in their capacity as alter egos to the corporate Counterclaim Defendants. As named parties, they have an obligation to participate in civil discovery.

## 5. United Has Attempted To Control Discovery Costs

Despite Counterclaim Defendants' failure to engage in any meaningful meet-and-confer discussions, United has repeatedly attempted to control discovery costs. Dkt. 441-2 at 6-8, 19-22. To the extent Counterclaim Defendants' complaint regarding the scope of discovery relates to patient notes, medical and billing records related to the approximately 1,300 patients at issue, United has always indicated that it remains willing to discuss with Counterclaim Defendants a discovery plan to manage such production. *Id.* But United cannot accept Counterclaim Defendants' refusal to provide *any* relevant medical and billing records save for the minimal earlier production made by Hooper Lundy that included a subset of documents responsive to just 15 patients.[13]

In addition, and despite Counterclaim Defendants' vague assertions as to the volume of documents at issue, United has not requested *all* documents relating to *all* 1,300 patients at issue in the counterclaim. As to the document requests at issue in the Court's March 22, 2017 Order, United narrowed certain requests, at least for an initial production, to documents or information relating to a limited set of 100 patients identified on Exhibit A accompanying the requests. *See* Dkt. 441-3, Ex. 1 (RFP #2), Ex. 2 (IROGs #2, #3 and #8). United's outstanding Fourth Set of Document Requests, is limited to specific types of documents (e.g., Patient Notes or "superbills") for a limited number of patients. Counterclaim Defendants have never once indicated how many documents are at issue for any of these patients and their

---

[13] This production did not include Patients Notes or Claims History files for *any* patients, and only a handful of insurance-verification forms.

claims regarding the time required to retrieve the relevant electronic records for each patient, print and review are both dubious and unnecessary—these electronic records could be easily copied and produced without printing or organizing. Moreover, Counterclaim Defendants have never demonstrated why such patient records need to be reviewed for attorney-client privilege.

As to the other requests for documents unrelated to patients, Counterclaim Defendants have not identified any information suggesting these requests are overbroad or unduly burdensome given the nature of the claims and amount at issue in this case. Nor have they at any time proposed any alternative ways of reasonably narrowing the requests. Counterclaim Defendants' lack of cooperation in conferring on discovery issues is alone a basis to deny their motion for cost-shifting.

In addition to the patient records, United repeatedly attempted to meet and confer with Counterclaim Defendants to see if there was a way to narrow or understand better what part of the 1,700 boxes and electronic files that have been seized by the government may contain responsive documents. Dkt. 601 at 15. Counterclaim Defendants, however, refused to provide the inventory listing to United or any other information regarding the contents of the seized records so that it could work with Counterclaim Defendants to perhaps narrow the scope of the documents to be copied and reviewed or prioritize. Counterclaim Defendants' failure to cooperate is fatal to their motion.

### 6. The Issues At Stake For Patients And Health Plans Favors Production

Under *Zubulake*, the Court weighs the importance of the litigation generally, though "this factor 'will only rarely come into play.'" *Zubulake II*, 216 F.R.D. at 289. Unlike the somewhat common discrimination claim at issue in *Zubulake*, United's counterclaim implicates more than 1,000 patients and many of their health plans. Though courts often consider this factor to be neutral, the breadth of Counterclaim Defendants' fraud make this case—and this factor—more important

than usual.

### 7. According To Counterclaim Defendants, Any Document Production Will Support Their Defenses

The last *Zubulake* factor considers the relative benefits to the parties of obtaining the information. This is the least important factor "because it is fair to presume that the response to a discovery request generally benefits the requesting party." *Zubulake I*, 217 F.R.D. at 323. But here, Counterclaim Defendants have repeatedly claimed that the requested patient records may actually *benefit* their position. For example, Counterclaim Defendants claim that it has evidence of United approving certain Lap Band procedures, and that such evidence contradicts United's fraud claim. Dkt. 758 at 25. United disputes this theory, but for purposes of the seventh *Zubulake* factor, when "production will also provide a tangible or strategic benefit to the responding party, that fact may weigh *against* shifting costs." *Id.*

### C. As A Last Resort, This Court Should Compel Counterclaim Defendants To Execute A Fed. R. Evid. 502(d) Agreement

Counterclaim Defendants ignore the obvious solution to their "it's too hard" argument: Produce everything to United, and rely on Fed. R. Evid. 502(b) for the return of any privileged materials. Indeed, this Court's original order granting United's motion to compel, contemplates this precise approach. Dkt. 462 at 1 ("Providers and their counsel should consider options for quick and efficient document production, including the possibility of allowing United access to documents in outside storage, with a claw-back provision for any privileged materials.").

## CONCLUSION

Based on the foregoing, this Court should deny Counterclaim Defendants' Motion for Protective Order and Cost Shifting, and award United its costs and fees

for opposing this motion.[14]

Dated: February 20, 2018


By: */s/ Bryan S. Westerfeld*
_____
Bryan S. Westerfeld
Nicole E. Wurscher
**WALRAVEN & WESTERFELD LLP**
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Telephone: (949) 215-1990
Facsimile: (949) 215-1999

*Attorneys for United Healthcare Services,*
*Inc. United Healthcare Insurance*
*Company, and OptumInsight, Inc.*

By:  */s/ Michelle S. Grant*
_____
Timothy Branson
Michelle S. Grant
Michael Rowe
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

---

[14] Counterclaim Defendants should bear United's costs and attorney fees related to their continued willful and deliberate discovery abuses. In the Related Action, Judge Fitzgerald has previously warned that "frivolous motions will subject Plaintiffs or their counsel to sanctions." Case No. 14-cv-2139, Dkt. 2057 at 11. Sanctions are appropriate here given Counterclaim Defendants' continued discovery abuse, failure to comply with the Court's March 22 2017, Order, and repeated violation of local rules including failing to meet and confer and following L.R. 37 for discovery motions. If granted, United will submit support of its costs and fees in a supplemental filing.

Kamille Dean, Esq.  #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL.,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITEDHEALTH GROUP, INC., ET AL.,<br><br>          Defendants.<br>_____<br><br>UNITED HEALTHCARE SERVICES, INC., ET AL.,<br><br>          Counterclaim Plaintiffs,<br>     v.<br><br>ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL.<br><br>          Counterclaim Defendants.<br>_____ | Case No: 2:14-cv-03053-MWF(AFMx)<br><br>**DECLARATION OF KAMILLE DEAN IN SUPPORT OF COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**<br><br>Hon. Magistrate Judge MacKinnon<br><br>TIME:    10:00 a.m.<br>DATE:    March __, 2018<br>PLACE:   Courtroom 780<br><br>Discovery Cut-off: Sept. 14, 2018<br>Pretrial Conference: Jan. 7, 2019<br>Trial Date: Jan. 29, 2019 |

DECLARATION OF KAMILLE DEAN

I, Kamille Dean, declare and say:

1.  I am an attorney at law admitted to practice before this Court, and I am counsel for Counter-defendants in the above-entitled action.  I submit the following declaration based on my own personal knowledge, and if called as a witness I would testify as follows.

2.  On February 5, 2018, Attorney Kamille Dean, Counsel for Counter-defendants, traveled to the Food and Drug Administration storage facility in San Clemente, California, to view the materials the government seized on June 4, 2014.  This viewing was Ordered by the Court on December 20, 2017, where the Court Ordered the government to make the materials available all documents it had seized on June 4, 2014, available for me to review and for me to obtain documents to produce which are responsive to United's discovery requests.  (12-20-17 Order Dkt. 674).  However, the viewing meeting was a facade where the government refused to permit me to take any notes, photos, or obtain copies regarding contents of the boxes I scheduled to view.  Rather, I was only able to look at the boxes and reconcile if the boxes matched the description on the inventory list, which they did not for a majority of the descriptions and boxes.

3.  The actual storage facility where the 1,700 boxes and 100 terabytes of information the government seized on June 4, 2014, is not located in San Clemente.  Rather, it is located in Los Angeles, and the government forced me to travel more than 100 miles round trip to view documents that were located in a facility in Los Angeles where the boxes are stacked one on top of another in total unorganized disarray.  The government's attorney, Ms. Kristin Williams, informed me that the government would only permit me to examine 20 to 25 boxes each time.  However, I requested 28 boxes.

4.  Attorney Steven Li, Special Agent for the Food and Drug Administration, monitored my inspection and informed me that of the 28 boxes I had requested, he brought what he could find.  Sixteen (16) of the boxes were the boxes I requested, where

twelve (12) were incorrect.  Forty-three percent (43%) of the boxes were the wrong boxes, and the mishandling of the examination turned the event into a fiasco.

5.  The examination of the materials was impossible, and there is no possible means by which I am able to access the information contained in 1,700 boxes and 100 terabytes of electronic data without extensive time, resources, and costs which was physically impossible.   For the government to then ask this court to heap on Counter-defendants an unjustified Protective Ordered is a violation of due process of law.  There is no justification for the government's request.

8.  At all times during my visit there was an attendant, Mr. Li, present who examined every move and activity in which I engaged.  I was not allowed to take any notes, photographs, or copies, and the government informed me that presence of the attendant was mandatory despite the fact the monitor's presence destroyed my ability to conduct the review.

7.  Many of the description on the labels on the boxes did not match the inventory. The labels do not match the contents, and most of the boxes contain many more items than the description on the inventory. Further the actual description on some of the evidence boxes is more detailed that the description on the inventory.  There were numerous documents showing attorney-client communication between company employees and Attorney's Alex Weiss and Konrad Trope regarding legal matters.   There were numerous correspondence to the clients by Attorney Brittany Whitman about amending the Complaint in this *Almont v. United* lawsuit, all of which were attorney client privileged, as were there other attorney-client communications too numerous to set forth.

8.  The disorganization of the materials was extensive.  Many of the materials and things inside the boxes did not coincide with the labels, and the inventory description and labels on the boxes were confusing, misleading, and/or incomplete.  A majority of the materials inside the box were in total disarray and not reasonably accessible because the pages were out of order, materials were bundled in an incomprehensible grouping, and

pages were missing from numerous documents.

9.  There was no index system available for me to utilize.  There was no means by which to determine the contents of the boxes.  The boxes were labeled at random with some patient records assembled in boxes in one box and then other records of the same patient in another box.

10.  The time consuming nature of the examination was unreasonable.  If I requested additional boxes, the one available attendant will have to retrieve them from stacks and stacks of boxes in the Los Angeles facility and transport them to the San Clemente facility.   It will be days or weeks before other boxes can be retrieved.  Any boxes which I might designate will be hit or miss and may or may not have relevant materials because the labeling is incomprehensible.

11.  The method and manner of storage of the boxes rendered them inaccessible.  The government's refusal to permit me to take notes, photographs, or photocopies, along with the haphazard manner of mixed boxes containing different subjects, rendered the entire effort futile.  Given the extraordinary amount of time to reprieve a box, inability to tell what boxes contained what materials, incomplete contents of the boxes, missing pages and documents from the boxes, the presence of a monitor that made it impossible to do any reasonable work, and the government's refusal to permit me to take notes, photos, or copies, the materials are inaccessible beyond a reasonable doubt.

12.  Prior to my arrival at the facility, the US Attorney demanded that I sign a protective Order or I would be prohibited from copying any of the materials which I might view. (Notably, AUSA Kristen Williams did not tell me that I could not take notes on what I viewed.) The proposed Protective Order provided that I and my clients would utilize the materials which might be copied solely for the *Almont v. United* proceeding, and I could not utilize any of the materials for any collateral litigation or any purpose other than the *Almont v. United* case.  I was prohibited from disclosing the information to any accountant, business associate, or other person outside the Almont v. United matter, and I could not utilize any document or information for any purpose such as tax matters or

to complain of the extreme violation of attorney-client privilege which was obvious from the correspondence between the client and Attorneys Weiss, Trope, and Whitman.

13. The proposed Protective Order was unreasonable, and the demands placed on me by the US Attorney and the Protective Order which the US Attorney demanded to be signed made the examination of materials at the facility impossible. I was not allowed to copy or photograph any of the materials. I could not utilize any of the information in any reasonable fashion because of the undue burden which the US Attorney placed on the me.

14. The Court's December 17, 2017, Order and the government's interference have prevented a reasonable examination of documents in the government's possession for purposes of conducting discovery in this case have created an impenetrable physical barrier that makes it impossible for me to fulfill my obligations to my clients. The sheer mass and volume of records involved in United's discovery request ranging into the millions of documents make it impossible for me to perform obligations required by the Court and my professional duties. I have no physical capacity to continue my engagement to serve my clients because of the undue burden which United has created regarding unreasonable discovery in this case without additional assistance and resource which the counter-defendants do not have.

15. The Court has also ordered that I review 1,200,000 documents that Sheppard Mullin produced to the government in response to subpoenas to non-parties in other proceeding, and that I produce to United any documents responsive to their discovery requests. (Dkt. 676). It is not physically possible for me to examine these documents, and my clients do not have the physical, financial, or manpower ability to undertake such an examination. Counter-defendants do not have the means of complying with the Court's discovery orders.

16. The unrebutted evidence demonstrates that it is impossible for me to continue my representation. The evidence shows that United's requests involve hundreds of thousands if not millions of documents and those documents are in the possession of the government due to their seizure on June 4, 2014. The government undertook a review and

cataloguing of the documents with two (2) contractors at the cost of $3,450,000 and failed to fulfill the job because the burden was too great, and the tasks were never completed. (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9).  See also Dkt. 57 in 2:13-cr-00739 at 15, n. 16).

17.  The evidence shows that prior to the government's June 4, 2014, seizure of the documents Attorney Brittany Whitman along with two (2) full time assistants took almost eight months to print out from the NexTech computer system all documents involved in this case in Counter-defendants possession, custody, and control.  These documents were on the 8th Floor of 9100 Wilshire Boulevard on June 4, 2018, when the government seized them.  While these documents remain in the NexTech system which is owned by Imperium Medical Services, which is not a party to this case, it is physically impossible for me to devote eight (8) months of effort along with the help of two (2) full time assistants to gather these documents, and I, nor my clients, have the manpower or the resources to undertake such efforts.   My corporate clients are out of business and none of my clients have the ability to undertake such an effort.

18.  The evidence is overwhelming and unrebutted that it took Attorney Whitman almost eight (8) months to print out, collate, and organize the materials from the NexTech system.  Whether I be required to examined documents in the government's possession or be able to have them printed out form the NexTech system, it will take a similar effort to comply with United's discovery requests.  I am not able to undertake that effort without additional physical and financial resources, and my clients do not have the resources to undertake that effort.  The burden in this case is undue, oppressive, and so extensive that there is no possible means that I can comply with United's excessive discovery requests.

19.  This litigation is not a charade or game to force me into the unreasonable position of being unable to comply with the Court's Order.  I must withdraw from representation because I cannot carry out the employment effectively without additional physical and financial resources. The unrebutted evidence of the overwhelming nature of the undue burden and extreme cost United's fishing expedition and useless discovery

requests require I seek Mandatory Withdrawal.

20.  I do not wish to withdraw from this case.  Were the Court to enter a Protective Order requiring United to pay for its discovery requests in this case, I would not withdraw, and I could hire additional assistance to carry out the tasks, including the irrelevant and overly burdensome tasks if United paid for it.  However, in the absence of a fee shifting Order, my clients and I cannot comply with the unreasonable discovery requests and Orders in this case because of my and my clients' physical inability to comply.  Aside from the issue of whether my clients' have possession, custody, or control of the NexTech system, which they do not, any order that I comply with the discovery requests would result in an injustice and inability on my and my clients' behalf to comply.

21.  On January 31, 2018, I notified each of my clients of my intention to seek Mandatory Withdrawal from this proceeding.  I have also given notice to all other parties who have appeared in the action.  AUSA Kristen Williams takes no position. United has not responded.  By this Motion I give further notice of the requirements I seek Mandatory Withdrawal in this action.

22. It also appears AUSA Kristen Williams has done a bait and switch on me.  The Proposed Protective order filed with the Court as Exhibit 6 to the USA's Application for Protective Order allows Counterclaim Defendants to use the materials for "any criminal case the government may file against any of the Counterclaim Defendants". However, this was never proposed to me, nor did I previously see this protective order filed with the court.  \

23.  I have met and conferred with United's attorney, Michelle Grant, at least a dozen times in the past 60 days regarding my demand that United pay reasonable costs for United's discovery request.  These meeting are far too numerus and detailed to recount to the Court.  My requests have been met with a flat refusal, and any further meeting and conferring with United would be futile.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed this 9th day of February, 2018, at Los Angeles, California.


Dated: February 9, 2018


*/s/ Kamille Dean*

Kamille Dean

DECLARATION OF KAMILLE DEAN

**PROOF OF SERVICE**

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On February 8, 2018, I served the documents described as:

**DECLARATION OF KAMILLE DEAN**

upon the interested parties in this action as follows:

_____x_____ (By ECF) The foregoing document was served via the ECF of the Court.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 8, 2018 at Los Angeles, California.


/s/ Kamille Dean
_____
KAMILLE DEAN ESQ.

Kamille Dean, Esq. #234468
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Telephone (602) 252-5601
kamille@kamilledean.com
Attorney for Counterclaim Defendants

BRYAN WESTERFELD (S.B. # 218253)
bwesterfeld@calemployerlaw.com
NICOLE E. WURSCHER (S.B # 245879)
nwurscher@calemployerlaw.com
WALRAVEN & WESTERFELD LLP
101 Enterprise, Suite 350
Aliso Viejo, CA 92656
Telephone:  (949) 215-1997
Facsimile:   (949) 215-1999

TIMOTHY BRANSON (MN ID #174713)
branson.tim@dorsey.com
MICHELLE S. GRANT (MN ID #0311170)
grant.michelle@dorsey.com
MICHAEL ROWE (MN ID #0392598)
rowe.michael@dorsey.com
*Admitted pro hac vice*
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:   (612) 340-2868

Attorneys for Counterclaim Plaintiffs
United Healthcare Services, Inc.; UnitedHealthcare
Insurance Company; and OptumInsight, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL., <br><br> Plaintiffs, <br> v. <br><br> UNITEDHEALTH GROUP, INC., ET AL., <br><br> Defendants. | Case No: 2:14-cv-03053-MWF(AFMx) <br><br> **JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER FOR SHIFTING DISCOVERY COSTS** |

|  | ) | Hon. Magistrate Judge MacKinnon |
|--|---|--|
|  | ) |  |
| UNITED HEALTHCARE SERVICES, INC., ET AL., | ) | TIME:      10:00 a.m. |
|  | ) | DATE:     March 13, 2018*[1] |
|                Counterclaim Plaintiffs, | ) | PLACE:   Courtroom 780 |
|        v. | ) |  |
|  | ) |  |
| ALMONT AMBULATORY SURGERY CENTER, LLC, ET AL. | ) | Discovery Cut-off: Sept. 14, 2018 |
|  | ) | Pretrial Conference: Jan. 7, 2019 |
|                Counterclaim Defendants. | ) | Trial Date: Jan. 29, 2019 |

The following is the Joint Stipulation re: Counterclaim Defendants' Motion for Protective Order for Shifting Discovery Costs filed pursuant to Rule 37-2 of the Local Rules of the U.S. District Court, Central District of California.


Dated:  February 27, 2018

/s/Kamille Dean

By:

_____

KAMILLE DEAN
Attorney for Counterclaim Defendants

---

*Counsel for Counterclaim Defendants has requested the Counter-Claimants agree to move said hearing to March 19, 2018 at 1:30 p.m.

Dated:  February 26, 2018


By: _____          By: _____

Bryan S. Westerfeld                    Timothy Branson
Nicole E. Wurscher                     Michelle S. Grant
**WALRAVEN & WESTERFELD LLP**          Michael Rowe
101 Enterprise, Suite 350              **DORSEY & WHITNEY LLP**
Aliso Viejo, CA 92656                  50 South Sixth Street, Suite 1500
Telephone:  (949) 215-1990             Minneapolis, MN 55402-1498
Facsimile:  (949) 215-1999             Telephone:  (612) 340-2600
                                       Facsimile:  (612) 340-2868

*Attorneys for United Healthcare Services,*
*Inc. United Healthcare Insurance Company,*
*and OptumInsight, Inc.*

JOINT STIPULATION TABLE OF CONTENTS

Almont Counter-Defendants' Notice of Motion and Motion for Protective Order ............ 3

Almont Counter-defendants' Table of Contents .................................................. 6

Almont Counter-defendants' Table of Authorities ............................................... 8

Almont Counter-defendants' Memorandum in Support of Protective Order ................... 12

United Counter-Claimant Opposition to Motion for Protective Order ........................... 38

United Counter-Claimants' Table of Contents ................................................... 39

United Counter-Claimants' Table of Authorities ................................................. 40

United Counter-Claimants' Memorandum in Opposition to Protective Order ................. 42

## COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER FOR SHIFTING DISCOVERY COSTS

**TO UNITED STATES OF AMERICA ("USA"), UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, INC., ANDOPTUMINSIGHT, INC., AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 13, 2018*[2], at 10:00 a.m. in Courtroom 780 of the above-entitled court located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable Magistrate Alexander MacKinnon, Counterclaim Defendants will move the Court for a Protective Order permitting the assessment of reasonable costs to be determined upon billings for services as they are completed for compliance with Counterclaimants' discovery requests in the above-entitled action.  Counter-defendants' Motion will be made pursuant to Rule 26 of the Federal Rules of Civil Procedure and based on the following:

(1) The Court should issue a Protective Order and shift the costs of discovery to United because the documents requested are inaccessible and the undue burden United's discovery requests have created;

(2)  The volume of United's requests and the availability of the information from more convenient sources require the Court to shift the costs of production to United to avoid an undue burden and prejudicially oppressive result cost to Counter-defendants;

(3)  In the absence of a Protective Order to require United to pay the reasonable costs of production, Counter-defendants' Counsel, Ms. Kamille Dean, will be forced to withdraw from representation because the unnecessary and overly burdensome discovery obligations create an unreasonably oppressive physical inability to comply with discovery requests thereby mandating her withdrawal.

This Motion is made after Counter-defendants' counsel, Kamille Dean, has met and

---

* Counsel for Counterclaim Defendants has requested the Counter-Claimants agree to move said hearing to March 19, 2018 at 1:30 p.m.

conferred with United's attorney, Michelle Grant, at least a dozen times in the past 90 days regarding Counter-defendants' demand that 1) United admit that it already has the documents it is compelling; 2) United is attempting to gain a windfall from Counter-defendants' previous counsel, Mark Jubelt, failing to substantively respond and appropriately provide objections on behalf of the counter-defendants, to the Motion to Compel; and 3) United pay reasonable costs for United's discovery request due to the unnecessary disclosures in addition to the fact that the requested information is creating an undue burden and oppressive result to counter-defendants. These meetings are far too numerous and detailed to recount to the Court. Counter-defendants' requests have been met with a flat refusal, and any further meeting and conferring with United would be futile.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities submitted in Support of the Motion, the Declaration of Kamille Dean, such other evidence as may be presented prior to the hearing on this matter, and all of the records, papers, and pleadings on file with the Court.

*Respectfully Submitted*,
this 9th day of February, 2017

By: *s/ Kamille Dean*
_____

KAMILLE DEAN, ESQ. *for*

**LAW OFFICES OF
KAMILLE DEAN**

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION .................................................................................................. 1

    A.   Statement of the Case .......................................................................... 1

        1.   Ms. Dean inspected the government's facility as the Court Ordered.................................................................................... 1

        2.   Examination of the materials was impossible....................... 2

        3.   The disorganization of the materials was extensive ............. 3

        4.   The government's demand for a Protective Order was unreasonable......................................................................... 4

    B.   Basis for Motion for Protective Order ................................................. 5

        1.   United's claims and demands for discovery create an undue burden................................................................................... 5

        2.   The evidentiary showed the documents are inaccessible ...... 6

        3.   Ms. Dean must withdraw because of the undue burden ....... 8

II.  THE COURT SHOULD ISSUE A PROTECTIVE ORDER AND SHIFT THE COSTS OF DISCOVERY BECAUSE THE DOCUMENTS REQUESTED ARE INACCESSIBLE AND THE UNDUE BURDEN UNITED HAS CREATED .......................................................................... 9

    A.   United's Discovery Requests Have Created an Undue Burden..................... 9

        1.   The documents United seeks are inaccessible ..................... 9

        2.   The volume of United's requests makes the information inaccessible ....................................................................... 11

        3.   Most information is readily available from a convenient source ....... 13

    B.   The Court Should Require United to Pay Reasonable Expenses.................. 14

        1.   The cost of discovery compliance is undue and overwhelming......... 14

        2.   Counter-defendant have satisfied the Rowe factors for fee shifting ................................................................................ 16

            a.   Rowe Factor No. 1 - United seeks excessive documents......... 17

            b.   Rowe Factor No. 2 - the information sought is non-critical..... 19

            c.   Rowe Factor  No. 3 - information available from other sources ............................................................................. 21

TABLE OF CONTENTS: (continued)                                    Page(s)

      d.     Rowe Factor No. 4 - purposes that date was maintained .........22

      e.     Rowe Factor No. 5 - relative benefit to obtaining the information ...................................................................................22

      f.     Rowe Factor No. 6 - the total cost associated with production ...................................................................................24

      g.     Rowe Factor No. 7 - ability of each party to control costs.......24

      h.     Rowe Factor No. 8 - resources available to each party ............25

III.    CONCLUSION....................................................................................25

DECLARATION OF KAMILLE DEAN.......**ERROR! BOOKMARK NOT DEFINED.**

PROOF OF SERVICE ....................................................................................27

# TABLE OF AUTHORITIES

## **Cases**

*Adair v. EQT Prod. Co.*,
   2015 U.S. Dist. WL 505650 (W.D. Va. Feb. 6, 2015) ................................... 12

*Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*,
   2017 WL 80248 (D. Haw. Jan. 9, 2017)........................................................ 13, 18

*Ameristar Jet Charter v. Signal Composites, Inc.*,
   244 F.3d 189 (1st Cir.2001) ........................................................................ 10

*Baker v. Gerould*,
   2008 WL 850236 (W.D.N.Y. Mar. 27, 2008) .............................................. 15

*Baker v. State Bar*,
   49 Cal. 3d 804 (1989) .................................................................................. 8

*Benham v. Rice*,
   238 F.R.D. 15 (D.D.C. 2006)....................................................................... 21

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
   2007 U.S. Dist. LEXIS 7580, 2007 WL 333987 (D. Min. Feb. 1, 2007) ................... 11

*Bottoms v. Liberty Life Assurance Company of Boston*,
   2011 WL 6181423 (D. Colo. Dec. 13, 2011) .............................................. 12

*Chen v. AMPCO System Parking*,
   2009 WL 2496729 * *2–3 (S.D.Calif. Aug.14, 2009) ................................ 18

*Chen v. Hewlett-Packard Co.*,
   2005 WL 1388016 (E.D. Pa. June 8, 2005)................................................ 21

*Cochran v. Caldera Med., Inc.*,
   2014 U.S. Dist. LEXIS 55447, 2014 WL 1608664 (E.D. Pa. Apr. 22,
   2014) ...................................................................................................... 6, 14

*Crosby v. La. Health Serv. & Indem. Co.*,
   647 F.3d 258 (5th Cir.2011) ................................................................... 10, 11

*Edwards v. Gordon & Co.*,
   94 F.R.D. 584 (D.D.C. 1982)....................................................................... 17

*Ford v. Wildey*,
   No. 1:10–cv–01024 LJO SAB (PC), 2014 WL 4354600 (E.D.Cal. Sept. 2,
   2014) ...................................................................................................... 17

*Freese v. FDIC*,
   837 F. Supp. 22 (D.N.H. 1993)................................................................... 18

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
   898 F.Supp.2d 171 (D.D.C.2012)............................................................... 15

<u>TABLE OF AUTHORITIES</u>: (continued)                                                    <u>Page(s)</u>

*Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*,
   222 F.R.D. 594 (E.D. Wis.2004) ................................................................. 14

*In re General Instrument Corp. Securities*,
   1999 WL 1072507 (N.D. Ill. Nov. 18, 1999) ........................................... 20

*Jackson v. Unisys, Inc.*,
   No. 08-3298, 2009 U.S. Dist. LEXIS 121716 (E.D. Pa. Dec. 31, 2009) ..................... 18

*McPeek v. Ashkroft*,
   202 F.R.D. 31 (D.D.C. 2001)...................................................................... 14

Midwest Gas Servs. Inc. v. Ind. Gas Co. Inc.,
   2000 WL 760700 (S.D. Ind. Mar. 7, 2000) ............................................. 18

*Moore v. Morgan Stanley & Co., Inc.*,
   2008 WL 4681942 (N.D.Ill. May 30, 2008)............................................. 18

*Murphy v. Deloitte & Touche Grp. Ins. Plan*,
   619 F.3d 1151, 1163 (10th Cir.2010) ...................................................... 10

*Nehad v. Mukasey*,
   535 F.3d 962 (9th Cir. 2008) .................................................................... 8

*Nicholas v. Wyndham Int'l, Inc.*,
   373 F.3d 537 (4th Cir.2004) ..................................................................... 10

*Oklahoma v. Tyson Foods, Inc.*,
   2006 WL 2862216 (N.D.Okla.2006).......................................................... 18

*OpenTV v. Liberate Technologies*,
   219 F.R.D. 474 (N.D. Cal.2003)................................................................ 14

*Payne v. Howard*,
   75 F.R.D. 465 (D.D.C.1977)...................................................................... 19

*Playboy Enterprises, Inc. v. Welles*,
   60 F. Supp. 2d 1050 (S.D. Cal. 1999)........................................................ 23

*Pulsecard, Inc. v. Discover Card Servs., Inc.*,
   1995 WL 526533 (D. Kan. 1995) ............................................................. 22

*Quezada v. Lindsey*,
   No. 1:10–cv–01402 AWI SAB (PC), 2014 WL 5500800 (E.D.Cal. Oct.
   30, 2014) ....................................................................................................17

*Regan–Touhy v. Walgreen Co.*,
   526 F.3d 641 (10th Cir.2008) .................................................................... 12

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.*,
   205 F.R.D. 421 (S.D.N.Y.2002) ............................................................... 16

<u>TABLE OF AUTHORITIES</u>: (continued)                                                    <u>Page(s)</u>

*S. Ute Indian Tribe v. Amoco Prod. Co.*,
   2 F.3d 1023 (10th Cir.1993) ................................................................. 12, 15

*S.T. Hudson Int'l, Inc. v. Glennon*,
   1988 WL 115808 (E.D. Pa. Oct. 28, 1988) ........................................... 22

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
   305 F.R.D. 225 (S.D. Cal. 2015) ...................................................... passim

*United States v. Legal Svcs. for New York City*,
   249 F.3d 1077 (D.C. Cir. 2001) ............................................................ 12

*United.  U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240
   (S.D. Cal. 2015) ...................................................................................... 6

*Valenzuela v. Smith*,
   No. S 04–cv–0900 FCD DAD P, 2006 WL 403842 (E.D.Cal. Feb.16,
   2006) ...................................................................................................... 17

*Washington v. Essex*,
   2015 WL 814527 (E.D. Cal. Feb. 25, 2015) ............................... 17, 19, 20

*Wiginton v. CB Richard Ellis, Inc.*,
   229 F.R.D. 568 (N.D. Ill.2004) .............................................................. 14

*Wollam v. Wright Medical Group, Inc.*,
   2011 WL 1899774 (D. Colo., 2011) ...................................................... 18

*Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda*, LLC,
   2007 WL 674893 (D.R.I. Mar. 1, 2007) ........................................... 21, 22

*Zeller v. S. Cent. Emergency Med. Servs.*,
   2014 U.S. Dist. LEXIS 68940, 2014 WL 2094340 (M.D. Pa. May 20,
   2014) .................................................................................................. 6, 14

*Zubulake v. UBS Warburg, L.L.C.*,
   216 F.R.D  280 (S.D.N.Y. 2003) ....................................................... 14, 16

 **Other Authorities**

7A Cal. Jur. 3d Attorneys at Law
   § 318 (2016) ............................................................................................ 7

C. Wright & A. Miller, Federal Practice & Procedure, Civil
   § 2008.1 (3d ed.) .................................................................................... 13

E. Younger & D Bradley, Younger on California Motions,  Mandatory
   Withdrawal—Inability to Proceed
   §17:4. (2d ed. 2017) ................................................................................ 7

Shira A. Scheindlin & Daniel J. Capa,
   Electronic Discovery and Digital Evidence 314 (2009) ...................... 6, 14

TABLE OF AUTHORITIES: (continued)                                              Page(s)

**Rules**

California Rules of Professional Conduct,
    Rule 3-700(B) ...................................................................................................7

Federal Rules of  Civil Procedure,
    Rule 26(b)(2)(B) ...........................................................................................15

Federal Rules of Civil Procedure
    Rule 26(b)(2)(C)(i) .......................................................................................10

Federal Rules of Civil Procedure
    Rule 26(b)(2)(C)(ii) ......................................................................................10

Federal Rules of Civil Procedure
    Rule 26(b)(2)(C)(iii) .....................................................................................10

Federal Rules of Civil Procedure,
    Rule 16(b)(2).................................................................................................15

Federal Rules of Civil Procedure,
    Rule 26(b)(2)(c) ............................................................................................10

Federal Rules of Civil Procedure,
    Rule 26(b) .....................................................................................................10

Federal Rules of Civil Procedure,
    Rule 26(b)(1).........................................................................................12, 23

Federal Rules of Civil Procedure,
    Rule 26(b)(2).................................................................................................10

Federal Rules of Civil Procedure,
    Rule 26(b)(2)(C) ..........................................................................................13

Federal Rules of Civil Procedure,
    Rule 26(c)......................................................................................................10

Federal Rules of Civile Procedure,
    Rule 26(c)(1).................................................................................................10

# I.    INTRODUCTION

Counter-defendants submit this Memorandum in Support of their Motion for Protective Order against the discovery issued by United Healthcare Group, Inc., and the Court's December 17, 2017, Order.  Counter-defendants' Motion is based on the following:

(1) The Court should issue a Protective Order and shift the costs of discovery to United because the documents requested are inaccessible and the undue burden United's discovery requests have created;

(2)  The volume of United's requests and the availability of the information from more convenient sources require the Court to shift the costs of production to United to avoid an undue burden and prejudicially oppressive result cost to Counter-defendants;

(3)  In the absence of a Protective Order to require United to pay the reasonable costs of production, Counter-defendants' Counsel, Ms. Kamille Dean, will be forced to withdraw from representation because the unnecessary and overly burdensome discovery obligations create an unreasonably oppressive physical inability to comply with discovery requests thereby mandating her withdrawal.

## A.    Statement of the Case

### 1.    Ms. Dean inspected the government's facility as the Court Ordered

On February 5, 2018, Attorney Kamille Dean, Counsel for Counter-defendants, traveled to the Food and Drug Administration storage facility in San Clemente, California, to view the materials the government seized on June 4, 2014.  This viewing was ordered by the Court on December 20, 2017, where the Court Ordered the government to make available the materials it had seized on June 4, 2014, for Ms. Dean to review, and for Ms. Dean to obtain documents to produce which are responsive to United's discovery requests.  (12-20-17 Order Dkt. 674).  However, not only was the viewing a facade where the government refused to permit Ms. Dean to take any notes, photos, or obtain copies, but also upon viewing the materials, Ms. Dean confirmed it is physically and financially

impossible for Ms. Dean or Counter-defendants to comply with the Court's Order.

The actual storage facility where the 1,700 boxes and 100 terabytes of information the government seized on June 4, 2014, is not located in San Clemente.  Rather, it is located in Los Angeles, and the government forced Ms. Dean to travel more than 100 miles round trip to view documents that were located in a facility in Los Angeles where the boxes are stacked one on top of another in total unorganized disarray.  The government's attorney, Ms. Kristin Williams, informed Ms. Dean that the government would only permit her to examine 20 to 25 boxes each time.  Nevertheless, Ms. Dean requested 28 boxes.

Attorney Steven Li, Special Agent for the Food and Drug Administration, monitored Ms. Dean's inspection and informed her that of the 28 boxes Ms. Dean had requested, the government had not been able to locate all of them.  He therefore brought what he could find.  He brought only 16 of the correct boxes, and he brought 12 incorrect boxes from the wrong inventory which did not match Ms. Dean's request.  However, nearly all of the 12 boxes contained materials not described on the inventories which Counter-defendants were forced to pick from in requesting access to the materials seized by the government.   Forty-three percent (43%) of the boxes were not the boxes counter-defendants requested to view.

### 2.    Examination of the materials was impossible

There was no possible means by which Ms. Dean was able to access the information contained in 1,700 boxes and 100 terabytes of electronic data without extensive time, resources, and costs which is physically impossible.   Ms. Dean and her clients do not have the physical ability or resources to examine these materials or to provide the information the Court has ordered.

The government has made the information inaccessible for all practical purposes because at all times, there was an attendant, Mr. Li, present who examined every move and activity in which Ms. Dean engaged.  Ms. Dean was accompanied by Attorney Okorie

JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Okorocha, Counsel for Imperium Medical Services, Inc., and it was impossible to hold any discussions or otherwise communicate with Mr. Okorocha because of the constant presence of the attendant.  Ms. Dean was not allowed to take any notes, photographs, or copies, and the government informed Ms. Dean that the presence of the attendant was mandatory despite the fact the monitor's presence destroyed Ms. Dean's ability to conduct the review.

Most of the descriptions on the labels on the boxes do not match the inventory.  The labels do not match the contents, and the boxes contain numerous items than the description.  There were numerous documents showing attorney-client communication between company employees and Attorney's Alex Weiss and Konrad Trope regarding legal matters.   There was numerous correspondence to the clients by Attorney Brittany Whitman about amending the Complaint in this *Almont v. United* lawsuit, all of which were attorney client privileged.

### 3.	The disorganization of the materials was extensive

The labeling of the boxes was useless.  Many of the materials and things inside the boxes did not coincide with the labels, and the labels were confusing, misleading, and incomplete.  Many of the materials inside the box were in total disarray and not reasonably accessible because the pages were out of order, materials were bundled in an incomprehensible grouping, and pages were missing from numerous documents.

There was no index system available for Ms. Dean to utilize.  There was no means by which to determine the contents of the boxes.  The boxes were labeled at random with some patient records in one box and then other records of the same patient in another box.

The time consuming nature of the examination was unreasonable.  If Ms. Dean requests additional boxes, the one designated attendant will have to retrieve them from stacks and stacks of boxes in the Los Angeles facility and transport them to the San Clemente facility.   It will be days or weeks before other boxes can be retrieved and made available to Counter-defendants' counsel.  Any boxes which Ms. Dean might designate will be hit or miss where 43% of the retrieved boxes will likely be wrong, and they may or

may not have relevant materials because the labeling is incomprehensible.     The method and manner of storage of the boxes rendered them inaccessible.  The government's refusal to permit Ms. Dean to take notes, photographs, or photocopies, along with the haphazard manner of mixed boxes containing different subjects, rendered the entire effort futile. Given the extraordinary amount of time to retrieve the boxes and have the boxes made available to Ms. Dean, the inability to tell what boxes contained what materials, the incomplete contents of the boxes, the missing pages and documents from the boxes, the presence of a monitor that made it impossible to do any reasonable work, and the government's refusal to permit Ms. Dean to take notes, photos, or copies, the materials are inaccessible beyond a reasonable doubt.

### 4.   The government's demand for a Protective Order was unreasonable

Prior to Ms. Dean's arrival at the facility, the US Attorney demanded that she sign a protective Order, or she would be prohibited from copying any of the materials which she might view.  The proposed Protective Order provided that Ms. Dean would utilize the materials which might be copied solely for the *Almont v. United* proceeding, and she could not utilize any of the materials for any collateral litigation or any purpose other than the *Almont v. United* case[3].  Ms. Dean was prohibited from disclosing the information to any accountant, business associate, or other person outside the *Almont v. United* matter, and she could not utilize any document or information for any purpose, such as other collateral matters with the United patients in other ongoing civil litigation, tax matters or

---

[3] Notably, AUSA Kristen Williams played bait and switch on Counterclaim Defendants. The protective order AUSA Williams proposed to Counterclaim Defendants was not the same one the USA filed with this Court for consideration as Exhibit 6 to the USA's Ex Parte Application for Protective Order.  The USA filed a different protective order which Counterclaim Defendants had not previously seen. The new protective order that was never seen previously by Counterclaim Defendants allows Counterclaim Defendants to use the materials for "any criminal case the government may file against any of the Counterclaim Defendants".

to complain of the extreme violation of attorney-client privilege which was obvious from the correspondence between the client and Attorneys Weiss, Trope, and Whitman.  (See Opposition to Ex Parte Application for Protective Order Dkt 743).

The demands placed on Ms. Dean by the US Attorney made the examination of materials at the facility impossible.  Ms. Dean was not allowed to copy or photograph any of the materials.  She could not utilize any of the information in any reasonable fashion because of the undue burden which the US Attorney placed on her.

### B.    Basis for Motion for Protective Order

####    1.    United's claims and demands for discovery create an undue burden

The Court's December 17, 2017, Order requiring Ms. Dean to examine the materials in the government's possession is unreasonable and an undue burden.  The Court has also ordered that Ms. Dean review 1,200,000 documents that Sheppard Mullin produced to the government in response to subpoenas to non-parties in other proceeding, and that counter-defendants produce to United any documents responsive to their discovery requests. (Dkt. 676).  It is not physically possible for Ms. Dean to examine these documents, and the counter-defendants'[4] do not have the physical, financial, or manpower ability to undertake such an examination.  Counter-defendants do not have the means of complying with the Court's discovery orders.

The Court now has under consideration United's 2-21-17 Motion to Compel responses to its discovery requests (Dkt. 441).  The counter-defendants' attorney, Kamille Dean and litigation coordinator, Brian Oxman submitted declarations indicating the document were in the custody and control of Imperium, or the government.

At United's request and claim counter-defendants had control and possession of

---

[4] The individual Counter-defendants, Michael, Julian and Cindy Omidi, have invoked their Fifth Amendment Right and refuse to provide discovery.  This Honorable Court cannot default or compel them while there is an active criminal investigation occurring. Clearly, the criminal investigation is turning into a future case based on AUSA Kristen Williams' indication that the documents gathered and reviewed that were seized from the government can be used in a criminal case.

JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Imperium' records, the Court held an evidentiary hearing in November and December,
2017, and the parties have submitted proposed Findings of Fact and Conclusions of Law
regarding the Counter-defendants lack of access to NexTech.  (Dkt.725 and 726).  In the
meantime, the Court has also required Counter-defendants' Attorney Ms. Dean examine
the government's storage facility (in addition to reviewing over 1,200,000 documents
from government subpoenas to non-parties to this proceeding (Dkt 676)), and it is now
unquestionable that it is physically impossible for Counter-defendants to gather, review
and produce documents from the government or from non-parties to this proceeding.

Counter-defendants have submitted Objections to the Proposed Findings of Fact
and Conclusions of Law.  (Dkt. 734 to -37).   These Objections are highly relevant to
Counter-Defendants' current Motion for Protective Order because they demonstrate that
none of the Counter-defendants have possession, custody, or control over the NexTech
system.  That system is owned and controlled by Imperium Medical Services, who is not a
party to this proceeding.  While both Imperium and Counter-defendants are willing to
utilize NexTech to provide discovery in this case, they can only do so with reasonable
compensation which the Court should both understand and mandate. *United.  U.S. ex rel.
Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("'Cost-shifting is
available even for accessible data based on the proportionality factors set forth in Rule
26(b)(2)(C).'") (*quoting* Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and
Digital Evidence 314 (2009), and *citing Zeller v. S. Cent. Emergency Med. Servs.*, 2014
WL 2094340, at *9 n. 6 (M.D. Pa. May 20, 2014); *Cochran v. Caldera Med., Inc.*, 2014
U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014)).

## 2.    The evidence at the evidentiary hearings demonstrated the documents are inaccessible

Counter-defendants recognize the Court stated it did not call for Objections to the
Findings of Fact.  However, these Objections demonstrate the improper nature of the
discovery demand which United has sought in this case, and Counter-defendants request
the Court, as a part of this Motion for Protective Order, to examine each of those

objections.  (Dkt  734-37).  There is no ignoring the fact that the discovery is an undue burden, that United has most, if not all, of the requested information in its own possession and control, and that Counter-defendants have no possession, custody, or control over the NexTech system which belongs to Imperium Medical Services.  It is also clear the government seized over 1700 boxes and terabytes upon terabytes of information.   It is also clear United's discovery requests are meant to annoy and harass the Counter-defendants with the unnecessary examination and production of several million documents.

United's accusation that Counter-defendants parted with the NexTech system on May 1, 2014, to defeat or interfere with discovery is without merit and lacks evidence. There is no denying that Counter-defendants retained Attorney Brittany Whitman print out from the NexTech system all documents related to United, its Plan Members, and every claim ever made to United in any manner.  Ms. Whitman did this with two (2) full time assistants for almost eight (8) months prior to the filing of the lawsuit back in April, 2014.  Hundreds of binders and boxes were stacked up on the 8th floor of 9100 Wilshire Boulevard with information readily available for this lawsuit, only to experience the government seizing them on June 4, 2014, followed by their refusal to return them.  Now the government is making a farce of their examination and preventing reasonable access while demanding Counter-defendants spent an enormous amount of money to get back the documents they need to defend this matter and respond to discovery.

There was no effort by Counter-defendants to hinder discovery because the government seizure was unforeseeable, and the transfer to Imperium occurred prior to the government seizure.  The accusation from United not only lacks evidence but ignores the obvious effort to preserve all documents Attorney Whitman printed out from NexTech. Attorney Whitman printed out and stored every relevant document regarding United claims.  Each of the Counter-defendants' Objections (Dkt 734-37) are incorporated into this Motion for Protective Order because of the undue burden United has created with its unreasonable discovery requests and improper accusation.

### 3.    Ms. Dean must withdraw because of the undue burden

Counter-defendant cannot comply with United's discovery request because the documents United seeks are inaccessible.  The physical, financial, and unreasonable burden created by the discovery requests and the Court's 12-17-17 Order have placed Ms. Dean in the untenable position of being unable to comply with the Court's Order.  She does not have the ability to meet United's discovery request or the Court's Order of reviewing 1700 boxes, terabytes upon terabytes of information and reviewing 1,200,000 documents.  Not only are these court's demands unreasonable but Ms. Dean cannot physically get this accomplished.  She does not have the resources to hire more staff and there are not enough hours in the day to complete this request by the Court in addition to Ms. Dean's other obligations.

California Rules of Professional Conduct, Rule 3-700(B) provides:

A member representing a client before a tribunal shall withdraw from employment with the permission of the tribunal, if required by its rules, and a member representing a client in other matters shall withdraw from employment, if: "....

"(2) The member knows or should know that continued employment will result in violation of these rules or of the State Bar Act;…"

United's gamesmanship has placed Ms. Dean in a position requiring her mandatory withdrawal from this case because Ms. Dean knows that continued representation of Counter-defendants because of the above cited rules of professional Conduct.  It is improper for the Court to place Ms. Dean in this position. The undue burden United has created is destroying Ms. Dean's ability to represent her clients because she cannot comply with the Court's Orders regarding discovery.  She does not have the physical, financial, or manpower capacity to comply with the discovery obligation, and her further representation of Counter-defendants is not possible.  *Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008). ("the rule provides that a lawyer must withdraw if the lawyer's '[]condition renders it unreasonably difficult to carry out the employment effectively.'

Cal. Rules of Prof'l Conduct R. 3–700(B)(3)").

This litigation should not be a charade or game to force Ms. Dean into the unreasonable position of being unable to comply with the Court's Order. *Baker v. State Bar*, 49 Cal. 3d 804, 816 (1989) ("The rule also requires an attorney to withdraw from employment if a []condition make it unreasonably difficult to carry out the employment effectively"). Ms. Dean must withdraw from representation because she cannot physically complete the court's orders and the lack of assistance makes it impossible to carry out the representation of counterclaim defendants effectively. Ms. Dean and Counter-defendants' physical inability is not a pretense, and the unrebutted evidence of the overwhelming nature of the undue burden from the examination of millions of documents and extreme cost caused by United's fishing expedition and useless discovery requests demand a Protective Order be implemented.

In the absence of an Order shifting the costs of discovery compliance to United, Ms. Dean must withdraw from her representation of Counter-defendants, and she is preparing to file a Motion with the Court requesting relief because of the undue burden discovery and the Court has ordered. The Court should not permit open-season on Counter-defendants' attorneys because of unreasonable discovery requests. This is an appropriate case for the Court to enter a protective Order shifting the cost of compliance with United's unreasonable and unnecessary requests. The information sought is inaccessible to Ms. Dean and Counter-defendants, and the physical burden of production is so extreme as to mandate a Protective Order.

## II. THE COURT SHOULD ISSUE A PROTECTIVE ORDER AND SHIFT THE COSTS OF DISCOVERY BECAUSE THE DOCUMENTS REQUESTED ARE INACCESSIBLE AND THE UNDUE BURDEN UNITED HAS CREATED

### A. United's Discovery Requests Have Created an Undue Burden

#### 1. The documents United seeks are inaccessible

United's discovery requests have placed an extreme and undue burden on Counter-defendants, and neither the counter-defendants or the Counter-Defendants' attorney Ms.

Dean are physically or financially able to access the documents or comply with the

discovery requests.5  Not only is the information at the US government's facility

inaccessible to Counter-defendants (as there is no resources or means to review 1700

boxes and terabytes upon terabytes of information), but also the NexTech system is

inaccessible as well due to the lack of resources and means to provide discovery on over

30,000 claims. .  Counter-defendants do not have possession, custody, or control of any of

this information, and the undue burden on them in complying with United's discovery

requests renders the information inaccessible.  *U.S. ex rel. Carter v. Bridgepoint Educ.,

Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (where discovery request is unduly

burdensome the Court should shift the costs of compliance).

   The Court may issue a Protective Order regarding discovery for any one of three

reasons: "the discovery sought is unreasonably cumulative or duplicative;"; it is

"obtainable from some other source that is more convenient, less burdensome, or less

extensive"; or "the burden or expense of the proposed discovery outweighs the likely

benefit." Fed. R. Civ. P., Rule 26(b)(2)(C)(i) - (iii); *see also, e.g., Nicholas v. Wyndham

Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir.2004) (citing the factors enumerated in Rule

26(b)(2) and adding, "[t]he simple fact that requested information is discoverable under

Rule 26(a) does not mean that discovery must be had"); *Ameristar Jet Charter v. Signal

Composites, Inc.*, 244 F.3d 189, 193 (1st Cir.2001) (once more quoting Rule 26(b)(2) and

adding, "[t]he district court has the discretion to limit discovery")."  "In determining

whether an "undue burden" exists, a court must consider "the needs of the case, the

amount in controversy, the parties' resources, the importance of the issues at stake in the

---

5 While this Court has inferred that the individual Counter-defendants can assist counsel,
to have the individual Counter-defendants go to the government facility and experience
the charade Ms. Dean experienced is improper. Further, the individuals Counterclaim
Defendants have invoked the Fifth Amendment Rights.  The Court also indicated that
counsel should obtain additional help. Counsel is also not able to retain additional help
because her clients, the counterclaim defendants, are out of business with no ability to
provide additional help.

action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P., Rule 26(b)(2)(c); *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir.2011). Rule 26(c) also authorizes strictures on discovery's extent for "good cause" and so as "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P., Rule 26(c)(1). "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."  *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir.2010)."

The evidence is overwhelming that (1) United is a large solvent company where Counter-defendants are out of business; (2) there are 1,200,000 documents belonging to other businesses the Court has ordered Ms. Dean to review; (3) the NexTech system contains millions of documents; and (4) Attorney Whitman and two (2) full time assistants spent almost eight (8) months to print out, collate, and organize the materials from the NexTech system.  It will take a similar effort to comply with United's discovery requests. The testimony is unrebutted that the government attempted to review the seized materials at the expense of $3,450,000, and failed, and that at least one-half of these materials are requested in United's discovery leading to a cost of $1,750,000, which the Counter-defendants do not have.  (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9).  Counter-defendants and their attorney, Ms. Dean, are not physically or financially able to undertake that effort.  The burden in this case is undue, oppressive, and so extensive that there is no possible means of Ms. Dean complying with United's discovery requests.

### 2.    The volume of United's requests makes the information inaccessible

The sheer volume of information in the NexTech system renders it inaccessible. The 1,200,000 documents the Court ordered Ms. Dean to review are inaccessible because of their sheer volume.  This Court has unrebutted testimony and evidence that it will cost $1,750,000 to provide United with the information it seeks in its discovery requests, and it will take Ms. Dean far longer than the eight (8) months Attorney Whitman expended to do only a portion of the discovery United has requested.  The undue burden on Counter-

defendants of complying with United's requests is extreme, and it is not possible to go through the enormous volumes of documents to meet the discovery requests. *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 2007 U.S. Dist. LEXIS 7580, at *2, 2007 WL 333987, at *1 (D. Min. Feb. 1, 2007) (affirming magistrate judge's decision that ESI sought by plaintiff was not "reasonably accessible" because of undue burden and cost); *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 239 (S.D. Cal. 2015) (undue burden and cost renders information sought in discovery reasonably inaccessible).

While many documents may be discoverable, "in determining whether a [particular] discovery request is overly costly or burdensome in light of its benefits, ... [a] court ... [must] ... consider the necessity of discovery," *Crosby*, 647 F.3d at 258, "properly encouraged to weigh the expected benefits and burdens posed by particular discovery requests (electronic other otherwise)," *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir.2008); *see also S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (discussing both the old presumption and the courts' powers to grant protection against "undue burden and expense" by shifting costs of discovery to the requesting party as a condition of discovery). The balancing approach encoded in Rule 26(b)(2) thus applies regardless of a document's original medium, whether it is code or pulp.[6]

The discovery requests in this case are unduly burdensome. *United States v. Legal Svcs. for New York City*, 249 F.3d 1077, 1084 (D.C. Cir. 2001) (requests are deemed unduly burdensome where "compliance threaten[s] to unduly disrupt or seriously hinder

---

[6] Much of United's discovery requests are unnecessary to prosecute its Counterclaim. The documents in the government's control contain payroll, contract records, financial records, and hundreds of thousand, if not millions of items that are unrelated to this case. NexTech. NexTech contains most, but not all, of the patient records. Some patient records were not completely scanned into the NexTech system. All of these irrelevant documents must be examined to comply with discovery requests. The examination will be extremely time consuming and require an extensive amount of costs and resources. The nature of discovery in this case requires a Protective Order.

normal operations [of a business,]" or in this case, a small government agency).  The documents in question are unavailable by their sheer volume.  *Adair v. EQT Prod. Co.*, 2015 U.S. Dist. WL 505650, at *5 (W.D. Va. Feb. 6, 2015) ("defendants have advanced compelling arguments that the burden and expense of further discovery would not be justifiable.").  A Protective Order shifting the cost of discovery is appropriate.

### 3.    Most information is readily available from a convenient source

The improper nature of the Court ordering Ms. Dean to rummage through 1,200,000 documents belonging to non-parties, alone with 1,700 boxes and 100 terabytes of information in the possession of the US government is overwhelming in the undue burden it creates on Ms. Dean and Counter-defendants.  *Bottoms v. Liberty Life Assurance Company of Boston*, 2011 WL 6181423, at *4 (D. Colo. Dec. 13, 2011) (Rule "places an obligation on the trial court to limit the frequency or extent of discovery otherwise permitted by Rule 26(b)(1) based on a balancing analysis" that is "written in mandatory terms.").  United has most if not all of the patient information and the remaining patient information requested is readily available through the NexTech system upon the payment of reasonable expenses to Imperium Medical Services.  Imperium will undertake the effort upon payment of reasonable expenses.  Instead of doing that and fulfilling its obligations created under Rule 45 when United subpoenaed Imperium, United has asked the Court enforce an extreme burden on Ms. Dean who does not have the resources from her own firm or from the counter-defendants that she has been forced to ask this Court for leave to withdraw from the case.

Instead of entertaining the acrobatics of forcing Ms. Dean to go through inaccessible, disorganized, and massive boxes to obtain the materials United has requested, all that is required is that this Court 1) order that the Counter-defendants do not have disclose any documents and information already in United's custody and possession and 2) order payment of reasonable expenses where Counter-defendants will pay Imperium for the documents, which is the same payment United should make were Counter-defendants to do the NexTech search themselves.  *Am. Auto. Ins. Co. v. Hawaii*

*Nut & Bolt, Inc.*, 2017 WL 80248, at *2 (D. Haw. Jan. 9, 2017) ("District courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)."). There is no basis to force the extreme burden on Ms. Dean and Counter-defendants in the face of the disproportional ease of obtaining the information with the payment of reasonable expenses or from a subpoena with reasonable expense payment. 8 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 2008.1 (3d ed.) ("In general, it seems that the proportionality provisions should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for counsel to undertake complex analysis.").

B.     **The Court Should Require United to Pay Reasonable Expenses**

1.     **The cost of discovery compliance is undue and overwhelming**

The costs and burden that United's discovery requests have placed on Ms. Dean and Counter-defendants cannot be reasonably justified, and it is essential that the Court order the costs and fees be shifted on to the requesting party. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("'Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C).'") (*quoting* Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009), and *citing Zeller v. S. Cent. Emergency Med. Servs.*, 2014 WL 2094340, at *9 n. 6 (M.D. Pa. May 20, 2014); *Cochran v. Caldera Med., Inc.*, 2014 U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014)). Ms. Dean cannot comply with the onerous and oppressive discovery requests United has made, and the undue burden it has created has forced Ms. Dean to request the Court relieve her as counsel rather than force her into a position of not being able to comply with the Court's orders. This is an appropriate case to shift the costs and fees of discovery because of United's extreme and unduly burdensome requests

Where the information sought in discovery creates an undue burden on the

responding party, not only is the material thereby reasonably inaccessible, but also shifting the cost of production to the requesting party has been considered appropriate. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 239–40 (S.D. Cal. 2015) (fee shifting appropriate where undue costs and burden exists); *Zubulake v. UBS Warburg, L.L.C.*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 477–78 (N.D. Cal.2003) (relying on *Zubulake*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003). To obtain this ESI at the other's expense, the requesting party must demonstrate need and relevance that outweigh the costs and burdens of retrieving and processing this provably inaccessible information. The Sedona Principles at 139; accord, *e.g., Wiginton v. CB Richard Ellis, Inc*., 229 F.R.D. 568, 577 (N.D. Ill.2004) (splitting costs, with plaintiffs responsible for 75% of the discovery cost of restoring the tapes, searching the data, and transferring it to an electronic data viewer); *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp*., 222 F.R.D. 594, 601 (E.D. Wis.2004) ("A number of district courts have recognized the unique burden of producing documents stored on backup tapes and, by invoking Rule 26(c) to fashion orders to protect parties from undue burden or expense, have conditioned production on payment by the requesting party."); *McPeek v. Ashkroft*, 202 F.R.D. 31, 34 (D.D.C. 2001) ("The more likely it is that the backup tape contains information that is relevant to a claim or defense, the fairer it is that ... [the requested party] search at its own expense."). In fact, though rooted in case law, this approach is now compelled by Rule 26(b)(2)(B), which recognized a whole new category of discoverable ESI that is "not reasonably accessible because of undue burden or cost," Fed. R. Civ. P, Rule 26(b)(2)(B); *FTC v. Boehringer Ingelheim Pharm., Inc*., 898 F.Supp.2d 171, 174 (D.D.C.2012), and embraced the logic in *Zubulake* and *Rowe*, see Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendments ("Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible...."); *Baker v. Gerould*, 2008 WL 850236, at *2 (W.D.N.Y. Mar. 27, 2008) (construing Fed. R. Civ. P., Rule 16(b)(2), *Zubulake*, and *Rowe* together in elaborating a party's obligation to produce inaccessible data).

This is an appropriate case for the Court to Order fees and costs to be shifted on to United. *S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (courts have the power to grant protection against "undue burden and expense" by shifting costs of discovery to the requesting party as a condition of discovery).

### 2.    Counter-defendant have satisfied the Rowe factors for fee shifting

Counter-defendants have presented unrebutted evidence that United's discovery requests seek information that will cost $1,750,000 to produce and already took Attorney Whitman and two (2) full-time assistants almost eight (8) months to produce.   The patient information is readily available from the NexTech system with the payment of reasonable costs rather than the inappropriate exercise of forcing Ms. Dean to rummage through 1,200,000 million documents owned by non-parties, and 1,700 boxes containing millions of documents in the government's possession. Even with the use of the NexTech system, the cost of producing the documents United seeks is excessive, oppressive, and an undue burden which requires fee shifting where United should pay for the reasonable costs of its discovery requests. Further, United already has most if not all non-patient information as well from their third-party subpoenas.

In *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225 (S.D. Cal. 2015), the Court found that the eight (8) factors identified in *Rowe Entertainment, Inc. v. William Morris Agency, Inc*., 205 F.R.D. 421, 431 (S.D.N.Y.2002), are relevant for this shifting analysis: "(1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 238 (S.D. Cal. 2015), *citing Rowe*, 205 F.R.D. at 429).

The *Rowe* factors were refined in *Zubulake v. UBS Warburg, L.L.C.*, 217 F.R.D. 309, 322 (S.D.N.Y.2003), to expanded *Rowe's* fourth factor and evaluated production

JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

costs in relation to the specific parties' resources rather than objectively or absolutely. The *Zubulake* Court noted that "of the handful of reported opinions that appl[ied] *Rowe* or some modification thereof, all of them have ordered the cost of discovery to be shifted to the requesting party." *Zubulake*, 217 F.R.D. at 320. This standard says nothing as to whether the ESI at issue is discoverable but rather seeks to apportion the costs for the production of ESI already discoverable under the language of Rule 26(b). In cases governed by this rule's pragmatism, therefore, upon the requesting party lies the burden of first showing the ESI's discoverability and then, depending on the circumstances, the requested party showing their physical inability for its recovery or production. Relevance remains the touchstone for discoverability, but it is not the sole determinant of the rightful cost bearer's identity.

An analysis of the eight (8) Rowe factors shows this is an appropriate case in which to shift on to United the undue burden of complying with its discovery requests.

### a.    Rowe Factor No. 1 - United seeks excessive documents

The first Row factor is the specificity of the discovery request, and in this case United has engaged in an excessive request for documents. Many of the documents United seeks are already in United's possession.

Every time Counter-defendants submitted claims to United the claims were accompanied by the supporting medical records. United has played an improper game with this Court and counter-defendants of refusing to acknowledge that most, if not ***all***, of the medical records they have requested are already in their possession, custody, and control, and that the gamesmanship being played is an illegitimate attempt to seek excessive discovery.

In *Washington v. Essex*, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015), the Court stated:

> "Nor will the court order the defendant to produce documents that are equally accessible to plaintiff in his medical or central file. *See, e.g., Quezada v. Lindsey*, No. 1:10–cv–01402 AWI SAB (PC), 2014 WL 5500800 at *3 (E.D.Cal. Oct. 30, 2014) ("Since any ordinances and laws governing health and safety are public

documents, which are equally available to Plaintiff, Defendants cannot be compelled to produce them."); *Ford v. Wildey*, No. 1:10–cv–01024 LJO SAB (PC), 2014 WL 4354600 at \*4 (E.D.Cal. Sept. 2, 2014) ("Defendant indicates that any such documents are located in his central file for which Plaintiff has equal access. This response complies with Rule 34 of the Federal Rules of Civil Procedure ...."); *Valenzuela v. Smith*, No. S 04–cv–0900 FCD DAD P, 2006 WL 403842 at \*2 (E.D.Cal. Feb.16, 2006) (defendants will not be compelled to produce documents that are "equally available to plaintiff in his prison medical file or in the prison law library.").

Not only has United made no showing that that counter-defendants have control over the documents United seeks (and clearly counter-defendants do not, as the documents are in the custody and control of Imperium and the government).

United has also not indicated that they do not have access to the medical and billing records they seek. Every time a patient was billed, the medical records accompanied the billing, and United has every single patients' medical records in its possession. Under these circumstances, the court should not compel counter-defendants to produce further documents in response to these discovery requests.

United's RFP #1 requests an excel spreadsheet listing all claims, amounts received, date of service, CPT code, billed charge, provider's name, provider's tax id number and group plan, etc. United's Appendix I and Appendix II to the Third Amended Counterclaim (TACC) already includes an excel spreadsheet and includes all of this information other than payment. United already knows the payment information paid by United, therefore, the only issue remaining is how much the patient paid. United has the tax id numbers for each provider and there is no reason to provide this information again.

United's RFP #2 requests all documents for billing records, medical records, claim records, scheduling records, patient sign in logs, benefit coverage, request for authorization, patient assignments, correspondence, email, call recording and transcripts, settlement or compromises, etc. United has most, if not all, of this information in their possession. Prior to this Court forcing Counter-defendants to pay again to provide discovery that is already in United's possession, Counter-defendants request this Court

JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

issue a protective order and require United to pay for this overly burdensome and request meant to harm and harass the counter-defendants.

Further, United has served subpoenas on numerous third-parties, including Banks, in this matter. Therefore, United's RPPs #14-16 and IROGs 4 request compensation and bank account information are overly burdensome and are already in United's possession and control. There is absolutely no just reason for counter-defendants to review 1700 boxes in the government's possession to produce to United without United compensating counter-defendants for doing so.   Due to the government seizure, United has more bank account information from statements they received from serving these third-party subpoenas than the Counter-Defendants have.  The majority of the incorrect boxes the government made available to Counter-defendants' attorney were numerous pages of bank account and bookkeeping records.

**b.    Rowe Factor No. 2 - the information sought is non-critical**

United's request for information is an extreme fishing expedition having little to do with the issues of this case. *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982) ("[d]iscovery thus should be confined to developing facts underlying the plaintiffs claim or claims and not used as a 'fishing expedition ....").  United's requests are an unreasonable invasion seeking financial information (Requests Nos. 13, 15, 16) from individuals which has nothing to do with this litigation.  Courts have routinely denied access to personal financial records in civil discovery . . ." *Freese v. FDIC*, 837 F. Supp. 22, 24 (D.N.H. 1993), vacated as moot,  70 F.3d 1252 (1st Cir. 1994).  *See American Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, 2017 WL 80248, at *7–8 (D. Haw. Jan. 9, 2017) (a company's financial information was not discoverable until requesting party has made a showing of entitlement to punitive damages).  As one example, United's request for tax returns and 1099's for individuals is a useless fishing expedition because the tax returns will show nothing relevant to this litigation. *Jackson v. Unisys, Inc.*, 2009 U.S. Dist. LEXIS 121716, at *4-5 (E.D. Pa. Dec. 31, 2009) (court denied production of tax returns finding there was no showing of need for the returns or that any issue would be

determined by the contents of tax returns).   United's request for compensation to contractors is also a fishing expedition, unless United wants to include the indispensable parties, the physicians, into this lawsuit. Other requests re also clearly non-relevant and a fishing expedition and information sought by the government and not required for this civil litigation.

United's cloned piggy backed request for documents produced in government investigations (Request Nos. 17-18)  are not only irrelevant, but also a useless fishing expedition. *Midwest Gas Servs. Inc. v. Ind. Gas Co. Inc.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("Cloned discovery", requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial"); *id*. at *1 (S.D. Ind. Mar. 7, 2000) (if the requesting party is interested in the contents of the documents from a criminal investigation, it must "do [its] own work and request the information [it] seek[s] directly.").

In *Wollam v. Wright Medical Group, Inc*., 2011 WL 1899774, at *1 (D. Colo., 2011), the Court stated:

> "I agree with the many courts that have considered the question and have held that cloned discovery is not necessarily relevant and discoverable.  *See Chen v. AMPCO System Parking*, 2009 WL 2496729 * *2–3 (S.D.Calif. Aug.14, 2009) (denying motion to compel production of all discovery taken in state court cases without a sufficient showing of relevance); *Moore v. Morgan Stanley & Co., Inc*., 2008 WL 4681942 * *2, 5 (N.D.Ill. May 30, 2008)(holding that "[a] party's requested discovery must be tied to the particular claims at issue in the case" and that "just because the information was produced in another lawsuit ... does not mean that it should be produced in this lawsuit"); *Oklahoma v. Tyson Foods, Inc*., 2006 WL 2862216 * *1–2 (N.D.Okla.2006)(denying motion to compel production of documents made available "in a similar poultry waste pollution lawsuit previously brought in this Court" absent a showing of more than "surface similarities" between the cases); *Midwest Gas Services Inc. v. Indiana Gas Co., Inc.,* 2000 WL 760700 *1 (S.D.Ind. March 7, 2000 (in a private antitrust action, refusing to compel production of documents provided to the United States in response to a civil investigation demand absent a showing of relevance); and *Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C.1977)(stating that "[w]hether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit is far from clear" and that such a determination requires consideration of "the nature of the

claims, the time when the critical events in each case took place, and the precise involvement of the parties, among other considerations").

There is no utility, relevance, or relationship between United's cloned discovery request for irrelevant investigations and this case.  The information which United seeks is non-critical.  It also has little to no relevance in this case.

An examination of all of United's requests reveal the extreme fishing expedition and the undeniable fact that United has in its own possession all documents relating to patient billing, medical records, Forms 1500, and all information relating to patients. *Washington v. Essex*, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015) ("Nor will the court order the defendant to produce documents that are equally accessible to plaintiff in his medical or central file.").  The following requests are not critical to this case in any manner: patient information, billing codes utilized , a spread sheet of patients who were billed to United, (Request No. 1); patient sign in logs, copies of Form CMS 1500 (Request No. 2); amounts paid by United (Request No. 3); organizational structure of counter-defendants (Request No. 4); contracts with attorneys and nurses (Request No. 5); corporate formation documents (Request No. 6); communications with attorneys and nurses (Request No. 7); independent contractor agreements (Request No. 8); communications with advertisers and budgets (Request No. 9); tax returns for individuals (Request No. 13); compensation to attorneys and nurses (Request No. 15); communications to financial institutions (Request No. 16); subpoenas form government authorities (Request No. 17); documents produced in a government investigation (Request no. 18); communications with Allergen (Request No. 19); documents intended to be relied upon at trial (Request No. 20).

c.      **Rowe Factor No. 3 - information available from other sources**

Not only does United have in its own possession, custody, and control all of the patient and billing information the Requests for Documents seeks, but most all of the patient specific records United seeks are available and accessible through the

JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

computerized NexTech system owned and Imperium Medical Services. United has subpoenaed these records, but refuses to pay the reasonable costs for their production. United is engaged in an improper game which led the Court to force Counter-defendants to go through 1,200,000 documents, along with 1,700 boxes held by the government, when the NexTech system is equally accessible to the parties through the payments of reasonable expenses to Counter-defendants or to Imperium. *Washington v. Essex*, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015) (court will not require production of documents equally accessible to the requesting party).

### d. Rowe Factor No. 4 - purposes that data was maintained

Counter-defendants formerly maintained most, if not all, of the records sought by United in the NexTech system. Attorney Brittany Whiteman and two (2) full time assistants printed out those records during an approximately eight (8) month period prior to April, 2014, to be utilized for this litigation. Those documents were seized by the government on June 4, 2014, and the government refuses to return them.

While the government has offered to let Counter-defendants' attorney, Ms. Dean, to inspect the records, it turned the inspection into a fiasco and has mandated she sign an unduly restrictive Protective Order. It is impossible for Ms. Dean to undertake this effort which will take at least eight (8) months full time and likely cost $1,750,000, which is the unrebutted testimony in this case. (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9). The attorney's time to review and examine the documents is also a reasonably compensable expense in this case. *In re General Instrument Corp. Securities*, 1999 WL 1072507, at *6 (N.D. Ill. Nov. 18, 1999).

### e. Rowe Factor No. 5 - relative benefit to obtaining the information

The relative benefits of obtaining the information weighs heavily for Counter-defendants. United's request for a spreadsheet of patients, their sign in logs, and CMS 1500 forms is irrelevant. (Requests Nos. 1 & 2). United has the information in its possession to make its own spreadsheet and United's spreadsheets attached to the TACC

have the majority, if not all, of the information United seeks.  The request for the amount paid by United is improper because United already knows that amount.  (Request No. 3).

This is a case involving United's claim for billing fraud.  Contracts with attorneys and nurses (Request No. 5), and communications with attorneys and nurses (Request No. 7, have nothing to do with this case.  *Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda*, LLC, 2007 WL 674893, at *2 (D.R.I. Mar. 1, 2007) (discovery may not be used as a fishing expedition to request irrelevant materials.

United's request No. 1 for a spread sheet requires Counter-defendants to create a document which is an improper request for a non-existent document.  Request No. 2 seeks "all documents and communications relating to such claims" in Request No. 1.  However, the overbroad request asks Counter-defendants to create a spreadsheet that does not now exist and then produce the work-product documents used to create it.  *Benham v. Rice*, 238 F.R.D. 15, 19 (D.D.C. 2006) on reconsideration in part, 2007 WL 8042488 (D.D.C. Sept. 14, 2007)(request for "All documents relating to the incidents" is vague, overbroad, and no sufficient to warrant discovery; "All documents relating to employment decisions" is vague, overbroad, and not capable of a response)

The relative benefit of these useless documents weighs heavily for Counter - defendants.  United's requests are overbroad and irrelevant.  There is no basis for United to request all communications to financial institutions (Request No. 15, subpoenas form government authorities (Request No. 17), and irrelevant documents produced in government investigations (Request No. 18), all of which have nothing to do with this case.  *Chen v. Hewlett-Packard Co.*, 2005 WL 1388016, at *1 (E.D. Pa. June 8, 2005) (interrogatory requesting "all communications . . . related to power supply problems" was "hopelessly over-broad"); *Pulsecard, Inc. v. Discover Card Servs., Inc*., 1995 WL 526533, at *4 (D. Kan. 1995) (interrogatory requesting all communications with persons from whom responding party received advice was overly broad on its face); *S.T. Hudson Int'l, Inc. v. Glennon*, 1988 WL 115808, at *1 (E.D. Pa. Oct. 28, 1988) (interrogatory seeking all communications with an individual was "overly broad").

**f.    Rowe Factor No. 6 - the total cost associated with production**

The costs associated with production weigh heavily in Counter-defendants' favor. The unrebutted testimony is that the government twice attempt to review, catalogue, and organize the seized documents with two (2) contractors for $3,450,00, and was unable to do so.  It will cost $1,750,000 to undertake the same review pursuant to the United Requests.  (Oxman 11-3-17 Dec., Dkt. 589, pp. 19-20 ¶¶ 5-9).

The unrebutted testimony in this case is that Ms. Dean has no ability to review the 1,200,000 documents belonging to non-parties or to review 1700 boxes and terabytes upon terabytes of information without additional assistance and resources, which the counter-defendants are unable to provide.  Attorney Whitman expended almost (8) months with two (2) full time assistants to print out, catalogue, and organize the NexTech documents relating to United.  The cost of such an effort is enormous.  Given the fact that each of the Counter-defendants are out of business and have no ability to undertake such a review, United's requests constitute an extreme physical and financial burden which cannot be fulfilled. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (where discovery requests are unduly burdensome the Court should shift the costs of compliance).

**g.    Rowe Factor No. 7 - ability of each party to control costs**

United is engaged in an unmitigated fishing expedition of irrelevant and improper requests such as creating a spreadsheet of all patients who were United related and then producing any possible document relating to that spreadsheet.  *Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda, LLC*, 2007 WL 674893, at *2 (D.R.I. Mar. 1, 2007) ("If this Court permitted discovery on this flimsy showing, then [Counter-claimants] would be entitled to limitless discovery regarding communications between [defendants] and any past or current business associate. Such a fishing expedition is not permitted under Fed. R. Civ. P. 26(b)(1)."). United has the exclusive ability to control the costs because its requests are overbroad and useless.  United seeks to impose unreasonable costs on Counter-defendants which they cannot possibly meet, and a protective Order to prevent

such an abuse is essential.

**h.**     **Rowe Factor No. 8 - resources available to each party**

Each of the Counter-defendants' companies are out of business and have no employees.  United has spent unlimited money on specious claims that they have no truth or validity to them.  United claims that its insurance policies never covered the LapBand, yet Counter-defendants have produced four (4) samples of United approving LapBand surgery for its members, and those samples are among dozens upon dozens of additional approvals in United's possession. (Dean 10-16-17 Dec., Dkt 559-2).

Each of the Counter-defendants' companies are out of business and have no employees.  United is a multi-billion dollar business, whose stock has soared approximately 40% in the last year, that has spent unlimited money on specious claims which have no truth or validity.  United claims involve the assertion that its insurance policies never covered the LapBand, and yet Counter-defendants have produced four (4) samples of United approving LapBand surgery for United members, and those samples are among dozens upon dozens of additional approvals in United's possession. (Dean 10-16-17 Dec., Dkt 559-2).  The disparity of resources and overwhelming burden of United's discovery requests require a Protective Order requiring United to pay reasonable costs to Counter-defendants.  *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1058 (S.D. Cal. 1999) (party requesting unduly burdensome  and expensive information should pay the responding party's costs of production of such information).

**III.     CONCLUSION**

For the foregoing reasons, Counter-defendants request their Motion for Protective Order be granted.

*Respectfully Submitted*,

this 9th day of February, 2017          *By*:  *s/ Kamille Dean*
_____

KAMILLE DEAN, ESQ. *for*

**LAW OFFICES OF
KAMILLE DEAN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PROOF OF SERVICE

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On February 27, 2018, I served the documents described as:

**JOINT STIPULATION RE: COUNTERCLAIM DEFENDANTS' MOTION FOR A PROTECTIVE ORDER FOR SHIFTING DISCOVERY COSTS**

upon the interested parties in this action as follows:

_____x_____ (By ECF) The foregoing document was served via the ECF of the Court.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 27, 2018 at Los Angeles, California.


/s/ Kamille Dean
_____

KAMILLE DEAN ESQ.

**PROOF OF SERVICE**

I am employed and a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On February 27, 2018, I served the documents described as:

EXHIBIT 2 TO DEAN DECLARATION

**COUNTER-DEFENDANTS' REPLY TO UNITED'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER; DECLARATION OF KAMILLE DEAN**

upon the interested parties in this action as follows:

_____x_____ (By ECF) The foregoing document was served via the ECF of the Court.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on Feberuary 27, 2018.

/s/ Kamille Dean
_____
KAMILLE DEAN ESQ.